INTHE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| JOSHUA DUNN, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action Number: |
| v. | ) | |
| | ) | 2:14-cv-00601-MHT-TFM |
| JEFFERSON DUNN, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' MOTION TO COMPEL ADEQUATE SITE INSPECTIONS BY EXPERTS AND REQUEST FOR EXPEDITED RESOLUTION OF THIS MATTER BY THE DISTRICT COURT JUDGE (OPPOSED)**

# TABLE OF CONTENTS

**PROCEDURAL BACKGROUND……………………………………………….3**

**I. REQUEST FOR EXPEDITED REVIEW BY THE DISTRICT COURT…………………………………………………………………6**

**II. PLAINTIFFS' EXPERTS ARE ENTITLED TO CONDUCT INSPECTIONS CONSISTENT WITH THEIR PROFESSIONAL JUDGMENT TO OBTAIN THE INFORMATION NEEDED…....10**

**A. The Experts Should Be Permitted to Review Documents Showing the Relevant Operations of the Facilities…………………..……12**

**B. The Experts Should Be Permitted to Speak with Prisoners They Choose……………..…………………………………………………17**

C. **The Experts Should Be Permitted to Speak with Correctional and Healthcare Staff………………………………………………..21**

**CONCLUSION……………………………………………………….…..25**

Plaintiffs respectfully move the Court for an order compelling Defendants to permit Plaintiffs' experts to conduct site inspections without limitations that will unreasonably prevent them from obtaining adequate information. Plaintiffs further request that this Motion be heard by the District Court Judge in conjunction with the Objections to the Magistrate Judge's Order on Plaintiffs' Motion to Compel Documents Regarding Non-Plaintiffs, Doc. 146, and on an expedited basis. Plaintiffs request this because some of the issues raised herein are the same as those raised in the Objection and because the first expert visits are scheduled for the weeks of May 11 and 18, 2015. As grounds for this motion, Plaintiffs show as follows:

## PROCEDURAL BACKGROUND

Plaintiffs began to work with Defendants on scheduling site visits for Plaintiffs' experts on January 20, 2015, starting with Plaintiffs' expert on programmatic issues relating to the Americans with Disabilities Act. Plaintiffs told Defendants at that time that they would send a formal notice once the parties worked through the scheduling issues. *See* Email exchange between J. Patrick Hackney and G. John Smith, attached hereto as Exhibit 1. No agreement was reached on the scheduling for the first expert whose inspection was requested.

In early March, 2015, Plaintiffs informed Defendants that another expert, Plaintiffs' security expert Eldon Vail, wanted to inspect three facilities prior to

writing his class certification declaration. Plaintiffs again stated that they would serve the formal request upon working through the scheduling issues. In that email, Plaintiffs indicated that the expert would want to speak with inmates.

Defendants provided dates that were not available and suggested days that might work, "provided [the parties] are able to come to an agreement on the parameters of the visits." *See* Email exchange between Latasha McCrary and John Smith, attached hereto as Exhibit 2.

On March 13, 2015, Defendants informed Plaintiffs that during upcoming site visits by Plaintiffs' experts, communications with Corizon or MHM personnel should occur only in the presence of counsel for Corizon and MHM. Plaintiffs' counsel were directed to call Defense counsel Lunsford for any issues arising during the site visits that required input or information from Corizon or MHM employees. *See* Email from Bill Lunsford, attached hereto as Exhibit 3.

On March 18, 2015, Defendants proposed the parties discuss the scope of site visits. On March 20, 2015, the parties met and conferred regarding the scope of expert site inspections.[1] Plaintiffs' counsel explained that there would be additional experts, and that, like Mr. Vail, they would want to speak confidentially with named Plaintiffs and putative class members. Plaintiffs' counsel also stated

[1] The Parties agreed that whether Plaintiffs' experts would be permitted to review documents relating to non-Plaintiffs would be determined by the outcome of the Motion to Compel that is the subject of Plaintiffs' Objection. *See* Doc. 146.

that the experts would want to speak with staff of ADOC, Corizon and MHM, though those conversations would not be confidential.

Defendants objected. They stated that they would agree to Plaintiffs' experts and counsel meeting confidentially with the named Plaintiffs and with prisoners Plaintiffs' counsel have a pre-existing relationship. Defense counsel took the position that they would not permit Plaintiffs' experts to meet with prisoners with no previous relationship with Plaintiffs' counsel, nor would the experts be permitted to speak with any staff, regardless of whether Defense counsel were present. Defendants objected that conversations with staff would be the equivalent of testimony by the staff.

Realizing that the parties would not be able to resolve the disputes informally and would therefore need to bring the matter to the Court, Plaintiffs then served the inspection requests, although the timing and details had not been agreed upon. Plaintiffs served by mail and email on March 24, 2015.

The parties discussed possible avenues for resolving the disputes raised in Plaintiffs' Objection during a meeting on April 16, 2015. During that discussion, Plaintiffs explained that Plaintiffs' experts would need to look at log books in the medical and other areas during the inspections. Defendants stated that Plaintiffs' experts would not be permitted to do so because they would be looking for the "bad cases" and thus would "manipulate" the data on the practices in the ADOC.

The response for the requests for inspections by Dr. Todd Wilcox, Dr. Kathryn Burns and Eldon Vail were due on April 27, 2015. The response for the request for inspection by Dr. Peter Blanck was due on April 28, 2015.[2] Defendants have not responded to Plaintiffs' requests for inspection.[3]

The parties have agreed to dates for a first set of inspections. Dr. Burns, Eldon Vail, Dr. Blanck, Dr. Wilcox and Dr. Shulman each will be inspecting two or more facilities between May 13, 2015 and May 20, 2015.

To enable the experts to conduct the site inspections and obtain the information they seek to help the Court in making its determinations about the adequacy of care and accommodations, Plaintiffs request that the Court order Defendants to permit the inspections as requested.

## I. REQUEST FOR EXPEDITED REVIEW BY THE DISTRICT COURT

Assignment of particular duties, including hearing discovery disputes, to a magistrate judge is discretionary. 28 U.S.C. 636(b); *Mathews v. Weber*, 423 U.S. 261, 268 (1976). The purpose of permitting magistrate judges to perform rule on discovery and other matters is to "increase[e] the overall efficiency of the Federal

[22] A request for inspection by Dr. Jay Shulman was served by hand on April 14, 2015. The deadline for response has not yet passed.

[3] Where a party does not respond in writing to a request under Fed. R. Civ. P. 34 within 30 days, all objections are normally waived. *Wynmoor Cmty. Council, Inc. v. QBE Ins. Corp*., 280 F.R.D. 681, 685 (S.D. Fla. 2012*); Coker v. Duke & Co*., 177 F.R.D. 682, 685 (M.D. Ala. 1998). Plaintiffs nonetheless bring this motion to resolve the objections Defendants have raised in conversations to ensure orderly inspections and avoid disputes arising once the experts are in the facilities.

judiciary . . . ." *Id*. at 268. The district judge retains "ultimate responsibility for decision making in every instance." *Id*. at 270, citing House Hearings 73 (testimony of Sen. Tydings regarding 28 U.S.C. 636) and Senate Report 12 at 127 (testimony of the Asst. Deputy Atty. Gen. Finley regarding 28 U.S.C. 636).

Here, in the interest of efficiency, judicial economy, and avoiding inconsistent rulings, Plaintiffs request that the instant motion be heard initially by the District Court Judge and that it be heard, together with the pending Objection to the Magistrate Judge's Order Granting Plaintiffs' Motion to Compel Production of Documents Relating to Non-Plaintiffs ("Objection"), Doc. 146, on an expedited schedule.

Several of the issues raised in this motion are inextricably intertwined with the issues in the Objection. Plaintiffs have objected to the provision in the Magistrate Judge's Order requiring a HIPAA release prior to the review of any medical records of persons other than the named Plaintiffs. Plaintiffs have also objected to Magistrate Judge's Order for limiting discovery relating to non-Plaintiffs to only individual medical records. These two challenged provisions of the Magistrate Judge's Order are directly at issue in the question of what documents experts can review while inspecting the facility.

If the Magistrate Judge were to rule on these issues prior to the District Court ruling on the Objection, both the Magistrate Judge and the District Court

would be required to analyze and write an opinion on these two issues. Moreover, having the Magistrate Judge decide the instant Motion while this Court decides the Objection risks inconsistent results on the same issue in the same case. Courts routinely exercise their discretion relate cases or transfer venue "[b]ased on considerations of efficiency, judicial economy, the risk of inconsistent rulings on common questions, the burden on the parties and the court, and the relative expense of proceeding separately versus together, consolidation of these actions would plainly streamline these proceedings and eliminate unnecessary repetition and confusion." *Caytrans BBC, LLC v. Equip. Rental & Contractors Corp.*, No. CIV.A. 08-0691-WS-B, 2009 WL 3248044, at *2 (S.D. Ala. Oct. 6, 2009); *see also Goldsby v. Ash*, No. 2:09-CV-975-TFM, 2010 WL 1658703, at *5 (M.D. Ala. Apr. 22, 2010) (agreeing to transfer venue because "these actions clearly should be consolidated for the purposes of adjudication in order to promote judicial economy, preserve judicial resources, and avoid inconsistent rulings and judgments"). Here, the considerations are the same, though in a much more limited context that will have a much smaller impact on the litigants. Plaintiffs therefore request that the District Court Judge exercise his discretion and hear this motion together with the Objection.

Plaintiffs further request that this Motion and the Objection be heard on an expedited basis. As discussed above, Plaintiffs attempted without success for

several months to schedule expert visits prior to serving the requests and conferred with Defendants regarding the scope of such requests. Plaintiffs had told Defendants that the requests would be sent once the dates were agreed. Ultimately, the parties did not agree to a schedule prior to service, and Plaintiffs went ahead and served anyway.

The dates for inspections have now been agreed to. The first inspections are scheduled to occur the May 13-15 and May 19-20, 2015. Defendants informally objected to the requests on March 20 and April 16, 2015. Responses to the inspection requests for Plaintiffs' experts Todd Wilcox, Kathryn Burns and Eldon Vail were due on April 27, 2015. A response to the inspection request for Plaintiffs' expert Peter Blanck was due on April 28, 2015. Defendants did not respond to these inspection requests. Upon expiration of the time for Defendants to respond, Plaintiffs promptly filed this Motion.

If the Motion and Objection are not ruled on prior to the experts' inspection tours, these tours will be of limited value. They will create the burden on Defendants of accompanying the experts through the facilities, without providing the discovery sought by Plaintiffs and to which Plaintiffs are entitled. This would result in delays in the litigation if Plaintiffs' experts cannot obtain the information they need to complete their declarations in support of class certification.

## II. PLAINTIFFS' EXPERTS ARE ENTITLED TO CONDUCT INSPECTIONS CONSISTENT WITH THEIR PROFESSIONAL JUDGMENT TO OBTAIN THE INFORMATION NEEDED

Plaintiffs here seek information that will provide evidence of the systemic failures to provide adequate healthcare and reasonable accommodations to them. The expert site inspections at issue in this motion will provide information about whether practices and procedures alleged by Plaintiffs are common throughout the ADOC system. Defendants object to Plaintiffs' experts reviewing records of relevant operations in the facilities, such as medical log books, sick call slips, logs of requests for accommodations. Defendants also object to the experts speaking with prisoners with whom Plaintiffs' counsel do not have a relationship with on the grounds that this could create a security hazard. Finally, Defendants object to the experts speaking with staff of ADOC, Corizon and MHM on the grounds that the conversations would be evidence in the case.

Discovery rules are to be "broadly construed." *Nat'l Serv. Indus., Inc. v. Vafla Corp*., 694 F.2d 246, 250 (11th Cir. 1982). Absent an express court order to the contrary, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" *See* Fed. R. Civ. P. 26(b)(1). The Court may limit discovery of relevant, non-privileged information only where: (i) the requested information is unreasonably cumulative or duplicative, or is

obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had the opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, and the importance of the proposed discovery in resolving issues. Fed.R.Civ.P. 26(b)(2). The burden is on the party resisting discovery to provide evidence of specifically how the objected-to request is unreasonable or otherwise unduly burdensome. *Coker v. Duke & Co*., 177 F.R.D. 682, 686 (M.D. Ala. 1998).

Parties can request "entry onto designated land or other property possessed or controlled by the responding party, so that the requesting party may inspect, measure, survey, photograph, test, or sample the property or any designated object or operation on it." Fed. R. Civ. P. 34. In cases involving conditions in prisons, Plaintiffs' experts routinely inspect prisons and aspects of their operations, including the provision of medical and mental health care. Plaintiffs' experts here have requested to inspect operations relating to the provision of health care and the accommodation of disabilities. According to their professional judgment, inspecting the operations in a manner that will provide the information necessary to form opinions includes reviewing documents that show the systemic strengths and weaknesses of the practices for providing health care and accommodating

disabilities. It also includes conversations with the people receiving, providing, facilitating, and overseeing health care and disability accommodations. *See* Declaration of Todd Randall Wilcox, M.D., M.B.A., C.C.H.P.-A, attached hereto as Exhibit 4; Declaration of Dr. Peter Blanck, Ph.D., J.D., attached hereto as Exhibit 5; Declaration of Eldon Vail, attached hereto as Exhibit 6; *see also* Doc. 146-2.

In this case, Defendants have not objected to the inspections themselves. The objections expressed in discussions relate only to the scope of the inspections, specifically to the experts reviewing records, other than the individual medical records of persons from whom Plaintiffs' counsel have a HIPAA release, or speaking with prisoners and custody, medical and mental health staff.

**A. The Experts Should Be Permitted to Review Documents Showing the Relevant Operations of the Facilities.**

Absent an express court order to the contrary, "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense[.]" *See* Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2) describes the limits a court can impose on discovery and the considerations for imposing such limitation. Under Rule 37, a party may move for an order compelling an inspection where the

opposing party "fails to permit inspection as requested under Rule 34." Fed.R.Civ.P. 37(a)(3)(B)(iv).

Comprehensive expert inspections are integral to prison or jail conditions litigation. *See, e.g., United States v. Erie County*, 09-CV-849S, 2010 U.S.Dist. LEXIS 25646 (W.D.N.Y. Mar. 17, 2010); *Coleman v. Wilson*, 2:90-CV-00520, 2007 U.S.Dist. LEXIS 99928 (E.D.Cal. Oct. 25, 2007); *Morales v. Turman*, 59 FRD 157 (E.D.Tx. 1972). Inspections that include review of log book and other materials, interviews with prisoners and, questions in the presence of opposing counsel to staff are routine. Ex. 6 at ¶¶ 10-11. The ability to review documents and speak with people – prisoners and staff – is critical to an understanding of the operations in a prison. Id. at ¶¶ 7-8.

As explained by Plaintiffs' medical expert, Dr. Todd Wilcox, the review of a range of documents is crucial to the process of assessing systemic issues in prison health care. He looks "to see if there are patterns of similar serious problems at different locations, both through reviewing documents at particular facilities, and through looking at the care provided to individuals at different facilities over time. *See* Ex. 4 at ¶6. He looks "at whether those problems are of a system-wide nature, caused by deficits in organizational structure, staffing, and quality assurance measures that are not the responsibility of individual prisons to develop. *Id*. He does this analysis by "review[ing] a significant number of patient records, as well

as reviewing lab reports, diagnostic test logs, and Health Needs Requests. *Id*. at ¶8. Dr. Wilcox does "not review a random sample." *Id*. at ¶3. Rather, he looks at files of specific types of prisoners with particular conditions. He does this because when "evaluating a healthcare delivery system, it is not generally as helpful to examine care for healthy people as it is to look at the treatment of sick people, particularly those with complex or chronic conditions that require coordination, communication, and judgment. *Id*. He locates the records to review for a robust assessment by asking for a sample of records of people being treated for certain condition and by looking "through lab reports, diagnostic test logs, and Health Needs Requests on site at each facility to identify patients who [have] objective findings that [are] concerning." *Id*. at ¶¶ 3, 7, 8.

Similarly, Plaintiffs' expert regarding dental care, Dr. Jay Shulman, reviews sick call logs and treatment logs to choose records to review and to assess the timeliness of dental care and the level of care provided. *See* Doc. 146-2 at ¶¶ 7-11. Plaintiffs' expert on the programmatic aspects of ADA compliance, Dr. Peter Blanck, reviews "relevant information and records on-site (and offsite), including log books and other documents, to ensure the reliability and validity (scientific robustness) of [his] findings" regarding whether and how entities are complying with the ADA and §504. Ex. 5 at ¶ 5. He reviews such documents "to determine the extent to which ADA disabilities are appropriately identified, monitored, and

accommodated within reason over time and during the length of an inmate's incarceration at ADOC facilities." Id. at ¶ 11.

Eldon Vail, Plaintiffs' expert regarding correctional practices and security, has served as an expert or correctional consultant in more than twenty cases in more than ten states. Ex. 6 at ¶ 3. Prior to that, he was a correctional administrator for nearly 35 years. Id. at ¶ 2. He has been in many positions in prison administration, from a first-line supervisor to a Warden to the Secretary of the Washington State Department of Corrections. Id. He has been present for numerous expert inspections, first in his role as an administrator of the prisons being inspected an expert or consultant, and later as an expert or consultant. Id. at ¶¶ 3, 9, 11. As an administrator he was accustomed to – and routinely allowed – expert inspections that included the review of log books. Id. at ¶¶ 8, 9, 11.

The process for inspections and document review described by these experts is similar to the review process described by experts in numerous cases. *See, e.g.*, Exhibit 7, Excerpt of Declaration of Ronald Shansky, M.D., in *Coleman v. Schwarznegger*, Civ S 90-0520 LKK-JFM P and *Plata v. Schwarznegger*, COl-1351 THE, at 3 (E.D. and N.D. Cal. Sept. 28, 2008)(" staff members at each prison were consistently cooperative, provided me with the files, logbooks, documents, records and data I requested, and ensured my full access to the facilities I wished to inspect."); Exhibit 8, Excerpt of Declaration of Marc F. Stern, MD, MPH, in

*Dockery v. Epps*, 3:13-cv-00326-WHB-JCG (S.D. Miss. June 16, 2014) , at 3 (describing documents reviewed); Exhibit 9, Excerpt of Declaration of Madeleine L. LaMarre MN, FNP-BC, in *Dockery v. Epps*, 3:13-cv-00326-WHB-JCG (S.D. Miss. June 16, 2014), at 3 (describing documents reviewed); Exhibit 10, Excerpt of Declaration of Eldon Vail, in *Dockery v. Epps*, 3:13-cv-00326-WHB-JCG (S.D. Miss. June 16, 2014) , at 5-28 (describing documents reviewed); Exhibit 11, Minute Order regarding terms of Expert Inspection Visits, *Hernandez v. County of Monterey*, 5:13-cv-02354-PSG (N.D. Cal. Mar. 13, 2015).

As discussed in the Objection, there is no basis for withholding access to the records pursuant to HIPAA. *See* Doc. 146 at 7-12. There is a HIPAA-qualified protective order in place. *See* Doc. 70. When there is a HIPAA-qualified protective order in place, documents otherwise protected by HIPAA are discoverable without notice to or consent from the individuals whose medical information is sought. *Murphy v. Dulay*, 768 F.3d 1360, 1370 (11th Cir. 2014); 45 C.F.R. § 164.512(e); *see also A.S. ex rel. Preston v. McNair*, No. 8:05-CV-1198 T23-EAJ, 2006 WL 4821450 (M.D. Fla. Nov. 22, 2006).

As noted above, Defendants did not formally object to the request that Plaintiffs' experts be permitted to review documents on site during inspections. The only objection made was made verbally during a discussion of other issues, in which Defendants stated that Plaintiffs' experts would not be permitted to review

logs and other records during the inspections because Defendants believe the experts do this to locate the "bad cases" and thus "manipulate" the evaluation of the care. This assertion about how evidence will be used is an argument that can be made at trial when determining whether evidence is admissible; it is not a basis for limiting discovery.

### B. The Experts Should Be Permitted to Speak with Prisoners They Choose

The role of the experts is to help the Court understand the evidence or to determine a fact in issue. Fed. R. Evid. 702. The expert must use reliable methods to facts of the case. *Id*. In this case, the experts will help the Court understand what the problems with healthcare and disability accommodation are, and how widespread they are. To do so, they need to be able to develop as complete an understanding of those problems as possible.

To understand what is happening in the prisons with regard to healthcare and accommodations, the experts have asked to inspect ADOC facilities. As part of the inspections, the experts have asked to speak with prisoners of their choosing. Dr. Wilcox explains that being able to speak with prisoners provides "a mechanism for confirming, and in some cases explaining issues that are not contained within the records. Interviews reveal, for example, obstacles to obtaining sick call slips as well as ways in which prisoners can overcome such obstacles." Ex. 4 at ¶9. Dr.

Wilcox further describes the type of evidence that can be gathered through the process of speaking with prisoners during an inspection and cross-checking the information provided with medical records on site. *Id*. at ¶¶ 10-11.

Similarly, Dr. Blanck relies on interviews with persons with disabilities in the facilities to develop an "understanding of how people with disabilities access programs and services and how they seek (and grieve for) accommodations for their disabilities." Ex. 5 at ¶ 14. This type of information is often not available from records and documents. *Id*.

Experts speaking with a broader cross-section of prisoners than those with relationships with Plaintiffs' counsel is proper and will provide information that will be helpful to the Court. Ex. 6 at ¶¶ 6-7. Last year, in *Dockery v. Epps*, a case in Mississippi regarding conditions in a prison, the experts toured the facility. They spoke with prisoners they selected, some in confidence and some not. *See* Exs. 8-10. The experts relied on their interviews in providing their assessments of the issues in the case. Id.

In *United States v. Erie County, NY*, 2010 WL 986505 (W.D.N.Y. Mar. 17, 2010), the Department of Justice had requested that its consultants be permitted to speak with prisoners at the county jail. The county objected, expressing concerns about security and that the prisoners were not parties, the same objections the Defendants have made here. The court recognized that the "inmates are non-party

witnesses, and as such, although the Justice Department could depose them under Rule 30, there is no requirement that it do so. An inmate, like any other non-party witness or potential witness, can be informally interviewed (if willing) by either party." *United States v. Erie Cnty., NY*, No. 09-CV-849S, 2010 WL 986505, at *3 (W.D.N.Y. Mar. 17, 2010). The court explained that "requiring that inmates be deposed (or interviewed) in the presence of County attorneys or employees would likely chill their willingness to speak to investigators or to speak candidly. This, of course, defeats the whole purpose of speaking to inmates in the first place." *Id*. The court ordered the county to permit the Department of Justice consultants to interview inmates who consented to be interviewed, and to do it outside the presence of county attorneys or employees. *Id*. at *4. To address the security concerns of the county, the court ordered that the county make available a room for the interviews where county employees could see the interviews, but could not hear them, and to ensure that there was adequate staffing in the facility on the days of the inspections. *Id*.

As in *Dockery* and *Erie County*, Plaintiffs' experts seek to speak with the individuals who experience the conditions at issue in the case – here, the healthcare system and system for accommodating disabilities. If the people who have the experience of these issues were not in prison, Plaintiffs' experts could interview them, outside the presence of opposing counsel, without making any sort of

discovery request. Because access to the individuals living with these systems is restricted by their being in prison, there is no way to access them without a discovery request. That should not, however, prevent the experts from being able to talk with those prisoners who consent to speak with the experts.

Defense counsel expressed particular concern about security if Plaintiffs' experts stay in dorms for lengthy periods speaking with prisoners. Plaintiffs' expert Eldon Vail, a former correctional officer and warden, has opined that interviews with prisoners during inspections is routine and should not pose any unreasonable security risk. Ex. 6 at ¶ 11. Other courts have also permitted experts to speak with prisoners they choose during the inspections. *See Coleman v. Schwarzenegger*, No. C01-1351 TEH, 2007 WL 3231706, at *4 (E.D. Cal. Oct. 30, 2007) ("Plaintiffs' experts shall be permitted to confer with prison staff and members of the plaintiff classes during their site inspections."); *Ruiz v. Johnson*, 37 F. Supp. 2d 855, 930 (S.D. Tex. 1999) , rev'd and remanded on other grounds sub nom. *Ruiz v. United States*, 243 F.3d 941 (5th Cir. 2001) (noting that plaintiffs' experts had interviewed prisoners during the inspection); *see also* Exs. 7-11. Further, both the Erie County and Hernandez courts issued orders addressing the prison officials' security concerns, but allowing for confidential communications with prisoners during the tours. *Erie Cnty.*, 2010 WL 986505, at *4; Ex. 11.

### C. **The Experts Should Be Permitted to Speak with Correctional and Healthcare Staff**

Plaintiffs' experts have also asked to speak with staff of ADOC, Corizon and MHM during their inspections. Such conversations will enable the experts to gain a better understanding of the processes in the prisons, and thus will enable the experts to be of more assistance to the Court. Among other things, communications allow the experts to confirm the accuracy of information provided by prisoners. *See* Ex. 4 at ¶¶ 4, 9; Ex. 5 at ¶ 14; Ex. 6 at ¶¶ 8-10.

As with the issue of speaking with prisoners who are not parties to the suit, courts have permitted such conversations in numerous cases. In *Coleman*, a case about the systemic inadequacies of mental healthcare in California prisons, Plaintiffs' experts requested site inspections during which they would " interview with the prison's Warden, Associate Warden for Health Care and the prison's highest ranking medical and mental health officers" and might "'confer with' prison staff and class members concerning access to medical and mental health care and 'as to issues of housing, programming, exercise and activities for class members.'" *Coleman*, 2007 WL 3231706, at *4. Defendants objected, saying that the experts could not speak with staff or prisoners. The court, recognizing that discovery rules are to be liberally construed, found that "questions by experts directed to prison employees and to class members concerning those matters

identified in plaintiffs' inspection requests are properly included as part of an inspection of "any operation" on the prison facilities to be inspected. *Id.* The court ordered defendants to allow the experts to ask prison employees questions and to interview Wardens, Associate Wardens for Health Care and/or the highest ranking medical and mental health care officers at prison facilities if these officials are, in the ordinary course of business, present at their respective prison facility during an expert inspection and reasonably available to meet with plaintiffs' experts during a scheduled site inspection. *Id*.

Similarly, the *Erie County* court held, over defendants' objections, that the Department of Justice consultants could "interview or question ECHC and other County employees as necessary during the course of the site inspection on the issues [raised in the matter]." *Erie Cnty.*, 2010 WL 986505, at *2-3. The court explained: "Reasonable access to employees is necessary for the consultants to form an understanding and opinion about the suicide practices and protocols at the ECHC." *Id*. The court also found that "there is no danger of prejudice or element of surprise to Defendants because their attorneys are permitted to accompany the consultants and advise County employees as they see fit." *Id*.

In both *Coleman* and *Erie County*, the defendants objected that any questions asked of people who worked in the prisons could only be asked at deposition. *Coleman*, 2007 WL 3231706, at *2; *Erie Cnty.*, 2010 WL 986505, at

*2. Both courts squarely rejected this argument. The *Coleman* court held that questions to employees and inmates concerning the issues listed in inspection requests were "properly included as part of an inspection of 'any operation' on the prison facilities to be inspected." *Coleman*, 2007 WL 3231706, at *2. The Erie County court similarly held that questions by experts or consultants were properly part of the inspection of operations. *Erie Cnty.*, 2010 WL 986505, at *2.[4]

Here, Plaintiffs' experts want to be able to talk with correctional and healthcare staff to develop an understanding and opinion of the practices and procedures relating to the provision of medical and mental health care and the accommodation of disabilities. See Ex. 6 at ¶ 6; Ex. 4 at ¶ 9; Ex. 5 at ¶ 14. For example, if an expert is shown the suicide watch cells, to understand the process for observing persons on suicide watch, the expert would want to know where the staff responsible to observing people on suicide watch are stationed. Ex. 6 at ¶ 7.

When Defendants first mentioned their recognition that experts might speak with Corizon and MHM staff, they did not object to this. Rather, they noted that Corizon and MHM "are represented by counsel as it relates to this litigation." Ex. 3. Defendants continued, "to the extent that Plaintiffs' counsel may come into contact with Corizon or MHM employees during the upcoming site visits, we

[4] The Erie County court held that questions to facility staff by Department of Justice attorneys, as opposed to the experts, could only be posed in a deposition. *Erie Cnty.*, 2010 WL 986505, at *2.

would request that Plaintiffs' counsel avoid any communications *outside the presence of counsel for Corizon and MHM* related to any matters raised in the pending action." *Id*. (emphasis added). Defendants directed Plaintiffs' counsel to contact Defense counsel Lunsford "[i]f any confusion or questions should arise during the course of the site visits that requires input or information from employees of Corizon or MHM." *Id*. With the protections that Defense counsel themselves proposed, there would be "no danger of prejudice or element of surprise to Defendants because their attorneys are permitted to accompany the consultants and advise [ADOC, Corizon and MHM] employees as they see fit." *See Erie Cnty.*, No. 09-CV-849S, 2010 WL 986505, at *2-3 (W.D.N.Y. Mar. 17, 2010). Experts have engaged in such communications in many systems cases. *See, e.g.*, Exs. 4 at ¶ 4, 5 at ¶¶ 3-5, 6 at ¶ 8, 11, 7 at 3, 8 at 2-3, 9 at 6.

Despite their prior acquiescence to communications with Corizon and MHM employees in the presence of counsel, when the parties met to discuss the scope of site visits by experts, Defendants took the position that there could be no communications at all with any personnel of ADOC, Corizon and MHM. Defendants indicated during the discussion of the terms of inspections that they believed such communications would become "testimony" and that questions should be posed in depositions rather than as part of an inspection by the experts. As recognized by the *Coleman* and *Erie County* courts, questions of persons

working in facilities to determine what the operations of the facilities are, are properly within the scope of a Rule 34 inspection and need not be confined to depositions.

To enable the experts to develop an adequate understanding and opinion of the practices and procedures at issue in this case, Plaintiffs' experts should be permitted to question ADOC, Corizon and MHM staff as necessary during the course of the site inspection on the issues of this case.

## CONCLUSION

Plaintiffs have requested to have their experts inspect a certain facilities in preparation for their initial reports. Defendants have indicated that Plaintiffs' experts will not be permitted to choose prisoners to request to interview, nor will they be allowed to speak with ADOC, Corizon or MHM staff, even in the presence of counsel. Because discovery is broad, security concerns can be accommodated, and counsel for Defendants, Corizon and MHM will be present, Defendants should be ordered to allow Plaintiffs' experts to meet confidentially with prisoners who are not named Plaintiffs and to speak with ADOC, Corizon and MHM.

Dated: April 30, 2015

Respectfully Submitted,

/s/ Maria V. Morris
Maria V. Morris

Rhonda Brownstein (ASB-3193-O64-R)
Maria V. Morris (ASB-2198-R64M)

Latasha L. McCrary (ASB-1935-L75M)
Valentina Restrepo (ASB-7422-I67Z)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
maria.morris@splcenter.org
ebony.howard@splcenter.org
latasha.mccrary@splcenter.org
valentina.restrepo@splcenter.org

Miriam Haskell* (FL. Bar No. 069033)
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037
Miami, FL 33137
Telephone: (786) 347-2056
Facsimile: (786) 237-2949
miriam.haskell@splcenter.org
**admitted pro hac vice*
William Van Der Pol, Jr. (ASB-2112-114F)
J. Patrick Hackney (ASB-6971-H51J)
Alabama Disabilities Advocacy Program
Box 870395
Tuscaloosa, AL 35487
Phone: (205) 348-4928
Fax: (205) 348-3909

Brent L. Rosen
Baker Donelson Bearman Caldwell & Berkowitz PC
614 S. Hull Street
Montgomery, AL 36104
Telephone: 334-223-3014
Facsimile: 334-263-0960
brosen@bakerdonelson.com

William Glassell Somerville, III
Andrew Philip Walsh
Baker Donelson Bearman Caldwell & Berkowitz

420 20th Street North; Suite 1400
Birmingham, AL 35203
Telephone: 205-250-8375
Facsimile: 205-488-3775
wsomerville@bakerdonelson.com
awalsh@bakerdonelson.com

Gregory M. Zarzaur
Anil A. Mujumdar
Diandra S. Debrosse
Zarzaur Mujumdar & Debrosse
2332 2nd Avenue North
Birmingham, AL 35203
Telephone: 205-983-7985
Facsimile: 888-505-0523
gregory@zarzaur.com
anil@zarzaur.com
diandra@zarzaur.com
**ATTORNEYS FOR THE PLAINTIFFS**

## EXHIBITS

Exhibit 1: Email exchange between Patrick Hackney and John Smith

Exhibit 2: Email exchange between Latasha McCrary and John Smith

Exhibit 3: Email from Bill Lunsford

Exhibit 4: Todd Randall Wilcox, MD, MBA, CCHP-A

Exhibit 5: Declaration of Dr. Peter Blanck, PhD, JD

Exhibit 6: Declaration of Eldon Vail

Exhibit 7: Excerpt of Declaration of Ronald Shansky, MD, in *Coleman v. Schwarznegger*, Civ S 90-0520 LKK-JFM P and *Plata v. Schwarznegger*, COl-1351 THE (E.D. and N.D. Cal. Sept. 28, 2008)

Exhibit 8: Excerpt of Declaration of Marc F. Stern, MD, MPH, in *Dockery v. Epps*, 3:13-cv-00326-WHB-JCG at 3 (S.D. Miss. June 16, 2014)

Exhibit 9: Excerpt of Declaration of Madeleine L. LaMarre MN, FNP-BC, in *Dockery v. Epps*, 3:13-cv-00326-WHB-JCG (S.D. Miss. June 16, 2014)

Exhibit 10, Excerpt of Declaration of Eldon Vail, in *Dockery v. Epps*, 3:13-cv-00326-WHB-JCG (S.D. Miss. June 16, 2014)

Exhibit 11, Minute Order regarding terms of Expert Inspection Visits, *Hernandez v. County of Monterey*, 5:13-cv-02354-PSG (N.D. Cal. Mar. 13, 2015).

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this 30th day of April, 2015, served a copy of the foregoing to all counsel of record, including the following opposing counsel and the mediator, by e-filing with the Court:

David Randall Boyd, Esq.
John Garland Smith, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL 36101

Michael Leon Edwards, Esq.
Balch & Bingham LLP
Post Office Box 306
Birmingham, AL 35201

Susan Nettles Han, Esq.
Balch & Bingham, LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203

William Richard Lunsford, Esq.
Maynard Cooper & Gale PC
655 Gallatin Street
Huntsville, AL 35801

Anne Hill, Esq.
Elizabeth Anne Sees, Esq.
Alabama Department of Corrections
Legal Division
301 South Ripley Street
Montgomery, AL 36130

Mitesh Shah, Esq.
Maynard, Cooper & Gale, PC
1901 6th Avenue North, Suite 2400
Birmingham, AL 35203

Gordon Douglas Jones
Jones & Hawley, P.C.
2001 Park Place; Suite 830
Birmingham, AL 35203

/s/ Maria V. Morris
Counsel for the Plaintiffs