IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | |
|---|---|
| JOSHUA DUNN, et al.,<br>    Plaintiffs,<br><br>v.<br><br>JEFFERSON DUNN, in his official capacity as Commissioner of the Alabama Department of Corrections, et al.,<br><br>    Defendants. | Civil Action No. 2:14-cv-00601-MHT-TFM |

**PLAINTIFFS' SUPPLEMENTAL BRIEF OPPOSING DEFENDANTS' PARTIAL MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED CLASS ACTION COMPLAINT**

The Alabama Department of Corrections ("ADOC") discriminates against prisoners in violation of the American with Disabilities Act ("ADA") and §504 of the Rehabilitation Act of 1973 ("§504"). ADOC fails to provide suitable accommodations, programs, benefits and services as required by federal law. Such discrimination substantially harms prisoners while incarcerated and disparately impacts their ability to successfully reenter society upon release. This discrimination, in addition to societal barriers that persons with disabilities generally face, creates a real and substantial threat that prisoners with disabilities will reenter the ADOC once released. If readmitted, the plaintiff prisoners in this action will be subject to the same discriminatory practices challenged in this case. Therefore, despite being conditionally released from the ADOC, plaintiffs serving the remainder of their sentences on probation or parole

1

maintain a personal stake in the outcome of this litigation and should not be dismissed as plaintiffs in this suit.

## FACTUAL BACKGROUND

Plaintiffs Pearson and Naylor are persons with disabilities who were recently incarcerated in the Alabama Department of Corrections. During their incarceration, they were denied reasonable accommodations for their disabilities. Doc. 99 at 18. Pursuant to the ADA and §504, they seek relief from this Court to enjoin ADOC from further subjecting prisoners with disabilities to discriminatory policies and practices that violate federal law. *Id.* at 136.

Plaintiff Bradley Pearson is a 38-year-old male who is hearing impaired. He has a disability as defined in 42 U.S.C. § 12102 and 29 U.S.C. §705(9)(A) and (B) and requires a sign language interpreter to communicate with persons who do not have a hearing impairment. He was most recently incarcerated in the ADOC while serving a 15-year split sentence. Doc. 140-1.[1] While incarcerated, he was discriminated against by ADOC due to his disability. For example, he was denied the opportunity to participate in work release because he was deaf. Doc. 99 at 39. He was also denied a sign language interpreter which he needed to effectively engage in a G.E.D. program. Doc. 99 at 365. He remained in the G.E.D. program for 2 months, but could not complete the course. He was unable to understand the material without a qualified interpreter. *Id.* When requesting to go to trade school, he was barred from participating because he had not obtained his G.E.D. *Id.* When taking ADOC's mandatory pre-release program, he was again denied a qualified sign language interpreter. *Id.*

Plaintiff Zerrick Naylor is a 37-year-old male who is legally blind. He has a disability as defined in 42 U.S.C. § 12102 and 29 U.S.C. §705(9)(A) and (B). He was recently incarcerated

---

[1] A split sentence is described as a sentence where a convicted defendant is confined in prison for a portion of his sentence, followed by a period of probation. *See* Code of Alabama (1975) §15-18-8(a)(1). Pearson's sentence required him to serve two years in the ADOC. Doc. 140-1.

in the ADOC while serving a 15-year split sentence.[2] *(*Doc. 140-2*)*. During his incarceration, he was discriminated against by the ADOC due to his disability. For example, he was housed in a facility where there were no programs for prisoners who are blind. Doc. 99 at 375. There were also no provisions for written materials in alternative formats such as books on tape. Doc. 99 at 390. When Naylor requested to participate in the G.E.D. program, he was told by staff that they would "check into it," but he never received a response. *Id*. He was also denied work release because he was blind. Doc. 99 at 377.

On June 14, 2014, Plaintiffs Pearson and Naylor and the other Plaintiffs in this matter filed a complaint against the ADOC based on their failure to provide Plaintiffs with reasonable accommodations for their disabilities. Doc. 1.[3] Since the complaint was filed, both Pearson and Naylor completed the initial portions of their split sentences and have been conditionally released on probation. Doc. 140 at 3-4. If the conditions of their release are not met, they will be readmitted to the ADOC and incarcerated for a period of 13 years. *Id.*

Defendants seek to have Plaintiffs Pearson and Naylor dismissed as plaintiffs in this suit. Doc. 127. Plaintiffs oppose. Doc. 140.

## ARGUMENT

Plaintiffs Pearson and Naylor have been discriminated against by the ADOC and face a real threat that they will suffer similar discrimination in the future. Although they have been conditionally released to probation, there is a reasonable basis to believe that they will be subjected to the same discriminatory practices again. Therefore, they have a personal stake in the outcome of this case and remain proper litigants before the Court. Their claims against the

---

[2] Naylor's split sentence required him to be incarcerated for a period of three years. *Id.*

[3] The Complaint was subsequently amended. Docs. 45, 99, 210.

ADOC are not moot.[4]  *See Henderson v. Thomas*, 913 F. Supp. 2d 1267, 1285-86 (M.D. Ala. 2012) (where ADOC asserted that a prisoner's claims challenging HIV segregation at Tutwiler were moot because the prisoner was transferred to Montgomery Women's Facility, reasoning that "The only question, then, is whether [the prisoner] can expect to be subjected to the ADOC's practices at Tutwiler in the future. Transfers between Tutwiler and Montgomery Women's Facility are common… and as such, there is a more than reasonable basis to believe that she will be subjected to segregation in Tutwiler again).

> **I. THERE IS A REASONABLE LIKELIHOOD THAT PLAINTIFFS WILL BE READMITTED TO THE ADOC AND SUBJECTED TO THE ONGOING DISCRIMINATORY PRACTICES.**

Plaintiffs Pearson and Naylor suffered discrimination while incarcerated in the ADOC and face a real threat of future discrimination, despite being conditionally released.  If readmitted to the ADOC, they will be subject to the same discriminatory practices that they faced prior to release.  Although they were released from prison, they remain in state custody and will be subject to state supervised probation for many years.  If at any time, they fail to meet the conditions of probation, they will be returned to the ADOC.  Due to the barriers that persons with disabilities face, inadequate preparation for release, and high rates of recidivism for persons similarly situated, there is a reasonable basis to believe that Plaintiffs Pearson and Naylor will be readmitted to the ADOC and face future discrimination.

### A. Prisoners with Disabilities Face Significant Barriers Upon Release.

---

[4] In Plaintiffs' Opposition to Defendants' Partial Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint, the Plaintiffs provide arguments and cite case law to support their position that Plaintiffs Pearson and Naylor have an ongoing personal stake in the outcome of this litigation. Doc. 140 at 3-4.  Given that the Court's request for this supplemental brief is to provide the Court with evidence of whether Plaintiffs released on probation or parole have a reasonable basis for believing that they will be readmitted to the ADOC, Plaintiffs will not repeat arguments which it has previously made concerning the aforementioned point.

Prisoners with disabilities face many challenges when reentering society. Vocational Rehabilitation and Corrections. 35TH INSTITUTE ON REHABILITATION ISSUES at 15 (2010). http://ovr.ky.gov/NR/rdonlyres/CDCE5DB0-B703-4A27-95D7-EF3DFB2C1238/0/IRIVocationalRehabilitationandCorrections.pdf (last visited on July 8, 2015). Among other factors, common obstacles include unemployment, homelessness, lack of resources, and limited education. *Id.* at 23, 63.[5] Research indicates that one of the most important conditions for successful reentry is meaningful employment. *Id.* at 14. Obtaining such employment is often very difficult for ex-offenders generally, but particularly for ex-offenders with disabilities. In 2009, the U.S. Department of Labor Statistics reported that the unemployment rate for persons with disabilities was 5% higher than for persons without disabilities. *Id.* at 13-14. The rates were even higher for ex-offenders with disabilities. *Id.* Employment barriers include the stigma of a criminal record, unstable work histories, low education levels, low self-esteem, lack of social skills, limited understanding of workplace cultures, and physical and mental disabilities. *Id.* at 15, 17, 63. Difficulties obtaining employment often complicate and delay the rehabilitation process. *Id.* at 23, 65.

The decreased opportunities for finding employment have a significant impact on individuals released on probation or parole, like Plaintiffs Pearson and Naylor. A primary condition of probation and parole is generally that the probationer or parolee maintains a job. *Id.* at 1; Doc. 140 at 6. If this condition is not met, Plaintiffs Pearson and Naylor could have their probation revoked and be subject to re-incarceration in the ADOC.

---

[5]The inability to obtain and maintain adequate housing is one of the major barriers affecting the successful reentry for prisoners. *Id.* at 65. After release, prisoners often must rely on others for housing because they do not have the resources to obtain their own home. *Id.* at 64. Also, many landlords conduct background checks which often results in the denial of housing. *Id.* at 66. This plays an important role in the reentry process. Having a permanent address is extremely critical for job searching, because it shows stability to potential employers. *Id.* at 65. Adequate housing is also a factor that is often considered as a part of individuals' assessment for probation or parole.

The chances of Plaintiffs Pearson and Naylor finding employment are further complicated by their lack of education and vocational skills. Neither Pearson nor Naylor have obtained their G.E.D. Both Plaintiffs attempted to obtain their G.E.D. while incarcerated. However, Plaintiff Pearson was not provided with a sign language interpreter and Plaintiff Naylor was denied the opportunity altogether. In addition, Plaintiff Pearson requested a vocational trade but was denied because he could not complete the G.E.D course due to lack of accommodations for his disability. Such discrimination by the ADOC has a significant impact on the chances for rehabilitation for Plaintiffs Pearson and Naylor, as well as other Plaintiffs who are similarly situated. The fundamental purpose of prison educational and vocational programs is to facilitate rehabilitation. Vocational Rehabilitation and Corrections at 50.[6] The fact that Plaintiffs Pearson and Naylor were denied vocational and educational opportunities, due to their disabilities, decreases their ability to compete in the workforce and further obstructs their prospects for finding employment. *Id.* at 64, 68-69. Similarly, the fact that Plaintiffs Pearson and Naylor were denied work release, despite being eligible, also makes them less likely to obtain the employment that they need to satisfy their probation requirements and successfully transition back into society.[7]

**B. Prisoners Released on Probation or Parole Confront High Recidivism Rates.**

The recidivism rates for prisoners released on probation or parole are extremely high. According to the ADOC's 2014 Annual Report, within three years of release, one-third of

---

[6] Research suggests that the process for reentry should begin when an individual enters prison. The process for successful reentry includes providing prisoners with adequate opportunities for education, prison employment or vocational training, and appropriate treatment programs. *Id.* at 14, 45. Studies show that ex-offenders with higher education levels tend to have lower recidivism rates. *Id.* at 69.

[7] In 2003, a nationwide study of prisoner reentry programs found that work-release programs led to more successful outcomes because they assisted prisoners with proper training for the job search process. These programs also resulted in lower recidivism rates for those who participated. *Id.* at 71.

released prisoners were readmitted to the ADOC.  Alabama Department of Corrections, Annual Report Fiscal Year 2014 at 49, http://www.doc.state.al.us/docs/AnnualRpts/2014AnnualReport.pdf (last visited April 14, 2015).  The rate of recidivism is particularly high for individuals who are released on a split sentence, like Plaintiffs Pearson and Naylor.  ADOC reports that approximately 75% of all prisoners readmitted were those released to parole and those released to probation on a split sentence.  *Id.*  Nearly one-half of all prisoners readmitted were those who received a split sentence.  *Id.*

In the present case, the threat of re-incarceration faced by Pearson and Naylor are likely more alarming than suggested by these rates.  According to Dr. Peter Blanck, an expert on the ADA and the provision of reasonable accommodations, neither Plaintiff Pearson nor Naylor received effective accommodations for their disabilities while in the ADOC. Ex. 1, Decl. of Peter Blanck at 8-9.  As a result, they were unable to "appropriately, equally, and fully participate in, and benefit from, ADOC programs, services, and activities as would other inmates without disabilities in similar circumstances." *Id.*  Consequently, ADOC's failure to provide them with appropriate accommodations and services decreases the likelihood that they will successfully transition back into society and increases the likelihood that they will return to the ADOC. *Id.* at 14.

The critical impact of ADOC's failure to accommodate Plaintiffs Pearson's and Naylor's disability is illustrated by the discrimination that Plaintiff Pearson faced when taking the mandatory pre-release course.  Although the ADOC was aware that Plaintiff Pearson has a hearing impairment, he was not provided with a sign language interpreter to assist him with understanding the information that was offered during the course. Ex. 1 at 10.  Unfortunately, Plaintiff Pearson's experience is not an isolated incident.  According to Dr. Blanck, ADOC's

7

failure to provide accommodations to Plaintiffs Pearson and Naylor are only illustrations of the circumstances experienced by prisoners throughout the ADOC. Ex. 1 at 12.  That Plaintiffs Pearson's and Naylor's experience of the failure to accommodate their disabilities in the pre-release process is representative of ADOC's practice of discriminating against persons with disabilities is demonstrated through Plaintiff Donald Ray Turner.  Turner is a prisoner in the ADOC.  Like Plaintiff Pearson, he is also hearing impaired. Ex. 2, Decl. of Donald Turner at 1, 3.  Recently, he attended a three day pre-release course at Limestone Correctional Facility. *Id.* at 4.  He requested a sign language interpreter to assist him with understanding the material in the course but was denied. *Id.* at 6.  The course provided information via video, brochures, and guest speakers. *Id.* at 7-10.  Because he was not given access to an interpreter, he was unable to communicate with the guest speakers and could not ask questions that he had about the brochures. *Id.* at 9-11.  He also could not hear the videos and there was no closed caption for him to read what was being said. *Id.* at 8.  As a result, he was "unable to learn and obtain important release information." *Id.* at 7.

The experiences of Plaintiffs Pearson and Turner are most significant, because adequate preparation for release from prison is critical to successful reentry.  Vocational Rehabilitation and Corrections at 50.  The role that pre-release services play in the reentry process has long been recognized by the ADOC.  In 2008, ADOC sought to commence its Alabama Prisoner Reentry Initiative.[8]  In its request for proposals from community organizations, ADOC noted that, in 2007, more than 60% of Alabama's prisoners had been previously incarcerated in the

---

[8] Alabama Prisoner Re-entry Initiative (APRI) is a 2 week reentry program and 8 weeks of a pre-release substance abuse program prior to transfer to a community partner who provides 10 weeks of critical post release services. Participants are supervised by the Supervised Re-entry Program Division. *See* Alabama Department of Corrections 2013 Annual Report at 21. http://www.doc.state.al.us/docs/AnnualRpts/2013AnnualReport.pdf and ADOC Administrative Regulation 452.  The goal of the program is to reduce recidivism rates for offenders. Alabama Department of Corrections: Alabama Prison Reentry Initiative at 2. http://blog.al.com/bn/2008/10/rfp.pdf.

ADOC. *Id.*[9] Taking into account these rates, ADOC recognized that there was a clear "need for new strategies to be developed and implemented in preparing offenders for their reentry back into society and for reducing the overall prison population." *Id.* By 2013, ADOC had instituted four re-entry programs. Alabama Department of Corrections 2013 Annual Report at 21. The primary goal of these programs is to decrease prison overcrowding and recidivism rates. See Alabama Department of Corrections. "Re-Entry and Pre-Release Program." http://www.doc.state.al.us/Re-EntryInfo.aspx. Alabama Department of Corrections: Alabama Prison Reentry Initiative at 2.[10]

      Plaintiffs' Pearson's and Naylor's probationary status creates an inherent risk that they will be readmitted to the ADOC. Pearson and Naylor do not have to commit an unlawful act to violate the terms of their probation. Instead, it is likely that they will fail to meet certain technical requirements of their probation. In 2011, a study on recidivism conducted by the Pew Center on the States found that more people in Alabama return to prison for technical violations than those returning for new offenses. *See* The Pew Center on the States, *State of Recidivism: The Revolving Door of America's Prisons* at 14, http://www.michigan.gov/documents/corrections/Pew_Report_State_of_Recidivism_350337_7.p

---

[9] In its request for proposals, ADOC emphasized that "On an annual basis, the ADOC releases in excess of 10,000 offenders back into society. Many of these offenders are severely lacking the treatment services, aftercare, referral services, and financial, educational, and vocational resources necessary for successful transition into society." Alabama Department of Corrections: Alabama Prisoner Reentry Initiative at 1.

[10] Alabama's Re-Entry and Pre-Release Program offers information about life enrichment classes, community resources and reentry services that are available throughout the state. It provides an opportunity for inmates to gain basic living on how to successfully transition back into the community after release from corrections. Alabama Department of Corrections. "Re-Entry and Pre-Release Program." http://www.doc.state.al.us/Re-EntryInfo.aspx. Other areas covered by the program include: accessing immediate food, clothing and shelter; obtaining a driver's license or personal identification card; accessing faith based mentoring and support; obtaining medical and/or dental care; accessing substance abuse treatment and mental health services; looking for job placement, vocational training and career development, and re-establishing parental rights and child custody. *Id.*

df (last visited July 8, 2015).[11]  Similarly, in *Armstrong v. Davis*, the Ninth Circuit recognized that persons with disabilities are more likely to have their parole violated for minor infractions due to "false impressions of uncooperative behavior or lack of remorse," difficulties interacting with parole personnel, and difficulties explaining "innocent but non-conforming behavior." 275 F.3d 849, 867 (9th Cir. 2001).  These difficulties are demonstrated in the experience of Plaintiff Turner, although he has not yet been released.  When meeting with a parole representative at an ADOC facility, Plaintiff Turner did not have a sign language interpreter and could not adequately communicate with the representative. Ex. 2 at 13.  Once released, he does not know how he will communicate with his parole officer. *Id.*

## II.     PLAINTIFFS LEAVING PRISON FACE SPECIFIC DISCRIMINATION THAT WOULD EVADE REVIEW IF THEY WERE EXCLUDED FROM THE CLASS.

As discussed above, Plaintiffs Pearson and Naylor suffered discrimination in the pre-release programs.  Plaintiff Turner has recently suffered the same discrimination.  As each person with a disability that affects communication goes through the pre-release program, they suffer the same discrimination.  If, as Defendants assert, the individuals should be dismissed upon their release, the discrimination faced in the pre-release program would always evade review.  Because this is a systemic form of discrimination that will be suffered by a large portion of the ADA subclass, it is critical that Plaintiffs who have had this experience not be dismissed from the case upon their conditional release.

## CONCLUSION

---

[11] The Pew study examined recidivism rates for states during the periods of 1999-2002 and 2004-2007.  Of the 35% of offenders who returned to prison during both periods, 18% were returned for technical violations. *Id.* at 10.  The study found that states that have shorter periods of post-prison supervision tend to have lower rates of revocations for technical violators, because offenders only have to comply with supervision rules for shorter periods of time. *Id.* at 17-18.

Plaintiffs Pearson and Naylor have been discriminated against by the ADOC in violation of the ADA and §504. They currently remain in state custody and continue to face a real threat of future discrimination by the ADOC. Because there is a reasonable likelihood that they will be readmitted to the ADOC, they have an ongoing personal stake in the litigation and their cases are not moot. Additionally, Plaintiffs leaving prison face specific discrimination that would evade review if they excluded from the proposed class. Therefore, Plaintiffs respectfully request that this Court deny Defendants' Partial Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint.

RESPECTFULLY SUBMITTED this 8th day of July, 2015,

/s/ Latasha L. McCrary
Latasha L. McCrary

Maria V. Morris (ASB-2198-R64M)
Latasha L. McCrary (ASB-1935-L75M)
Ebony G. Howard (ASB-7247-O76H)
Valentina Restrepo (ASB-7422-I67Z)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
maria.morris@splcenter.org
latasha.mccrary@splcenter.org

Miriam Haskell* (Florida Bar No. 069033)
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037
Miami, FL 33137
Telephone: (786) 347-2056
Facsimile: (786) 237-2949
miriam.haskell@splcenter.org
*admitted pro hac vice

William Van Der Pol, Jr. (ASB-2112-114F)
J. Patrick Hackney (ASB-6971-H51J)
Alabama Disabilities Advocacy Program (ADAP)

11

Box 870395
Tuscaloosa, AL 35487
Phone: (205) 348-4928
Fax: (205) 348-3909

Brent L. Rosen
Baker Donelson Bearman Caldwell & Berkowitz PC
614 S. Hull St
Montgomery, AL 36104
334-223-3014
334-263-0960 (fax)
brosen@bakerdonelson.com

William Glassell Somerville, III
Andrew Philip Walsh
Baker Donelson Bearman Caldwell & Berkowitz
420 20th Street North; Suite 1400
Birmingham, AL 35203
205-250-8375
205-488-3775 (fax)
wsomerville@bakerdonelson.com
awalsh@bakerdonelson.com

**ATTORNEYS FOR THE PLAINTIFFS**

## EXHIBIT LIST

Exhibit 1     Declaration of Dr. Peter Blanck Regarding Increased Risk of Continuing and Future Post-Release Harm to Inmates with Disabilities Associated with the Lack of, or Ineffective Provision of, Reasonable Accommodations for ADOC Programs, Services, and Activities, While in Custody

Exhibit 2     Declaration of Donald Ray Turner

## CERTIFICATE OF SERVICE

      I hereby certify that on this 8th day of July, 2015, I served a copy of the foregoing to all Counsel of Record by e-filing with the Court:

David Randall Boyd, Esq.
John Garland Smith, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL 36101

Michael Leon Edwards, Esq.
Balch & Bingham LLP
Post Office Box 306
Birmingham, AL 35201

Susan Nettles Han, Esq.
Balch & Bingham, LLP
1901 Sixth Avenue North, Suite 1500
Birmingham, AL 35203

William Richard Lunsford, Esq.
Maynard Cooper & Gale PC
655 Gallatin Street
Huntsville, AL 35801

Anne Hill, Esq.
Elizabeth Anne Sees, Esq.
Alabama Department of Corrections
Legal Division
301 South Ripley Street
Montgomery, AL 36130

Mitesh Shah, Esq.
Maynard, Cooper & Gale, PC
1901 6th Avenue North, Suite 2400
Birmingham, AL 35203

                                            /s/    Latasha L. McCrary
                                            Counsel for the Plaintiffs