IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
JOSHUA DUNN, et al.,           )
                               )
     Plaintiffs,               )
                               )     CIVIL ACTION NO.
     v.                        )      2:14cv601-MHT
                               )          (WO)
JEFFERSON S. DUNN, in his      )
official capacity as           )
Commissioner of the            )
Alabama Department of          )
Corrections, et al.,           )
                               )
     Defendants.               )
```

OPINION AND ORDER

The plaintiffs in this class-action lawsuit are more than 40 state prisoners and the Alabama Disabilities Advocacy Program. The prisoners intend to represent a putative class of all prisoners in the state system. If a class is certified, the litigation could affect over 25,000 prisoners in approximately 29 facilities. The defendants are the Alabama Department of Corrections (ADOC), its Commissioner, and its Associate Commissioner of Health Services.

The plaintiffs assert the following claims: inadequate medical and mental-health treatment in Alabama prison facilities; denial of due process for involuntary mental-health treatment; failure to accommodate prisoners with disabilities; and retaliation against the plaintiffs for communicating with counsel in order to challenge these conditions of their confinement. They rely on the First, Eighth, and Fourteenth Amendments (as enforced through 42 U.S.C. § 1983); the Americans with Disabilities Act (42 U.S.C. §§ 12101 et seq.); and § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794). They seek declaratory and injunctive relief. Jurisdiction is proper under 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights).

This litigation is before the court on the defendants' partial motion to dismiss. The defendants seek the dismissal of the claims of two named plaintiffs, Zerrick Naylor and Bradley Pearson, who have been released from prison since the case was

2

filed.   The defendants argue that these two plaintiffs lack standing and, alternatively, that their claims are moot.   For the reasons set forth below, the defendants' motion will be denied with respect to standing.   With respect to mootness, the motion will be reserved, and a hearing will be set to take additional evidence and hear further argument.


## I.   BACKGROUND

Plaintiffs Naylor and Pearson are both disabled: Naylor is blind, and Pearson is hearing-impaired and communicates by sign language.   They claim that they have been denied reasonable accommodations for their disabilities.   Both also claim that, because of their disabilities, they have been denied access to certain programs, benefits, and services available to other prisoners.   Other blind and deaf prisoners are also plaintiffs in this suit, but, Naylor and Pearson contend, no other plaintiffs were denied reasonable

accommodations or programming in the same ways as they were.

This lawsuit was filed in June 2014.  At that time, Naylor and Pearson were both in prison based on 'split' sentences.  Under Alabama law, with certain crimes excepted, a court may 'split' a sentence of 20 years or less by requiring the defendant to serve a period of time in prison, suspending the remainder of the sentence, and requiring the defendant to serve a term of probation.  <u>See</u> 1975 Ala. Code § 15-18-8(a)(1). Upon finding a violation of probation, the court may revoke the probation and require the defendant to serve the remainder of his original sentence in prison, less any time already served, or, depending upon the circumstances, impose a lesser prison sentence, modify the conditions of probation, or continue the defendant on probation.  <u>See generally</u> 1975 Ala. Code § 15-18-8; <u>Dixon v. Alabama</u>, 912 So. 2d 292 (Ala. Crim. App. 2005).

**4**

In February 2015, more than seven months after this lawsuit was filed, Naylor and Pearson were released from ADOC custody and began to serve probation on split sentences. Naylor had served three years in prison, and Pearson, two years. Naylor will remain on probation and subject to conditions of release for three years; Pearson will remain on supervised probation for, at least, five years.[1] If they do not meet their conditions of probation, they could face a return to prison.

Since filing the original complaint, the plaintiffs have amended their pleadings several times. Naylor and Pearson were released from prison after the first amended complaint was filed; the second amended

---

1. Although Naylor and Pearson submitted a court order from Naylor's case purporting to place him on unsupervised probation for the remainder of his 15-year sentence, Alabama law provides that the maximum period of probation is five years. See 1975 Ala. Code § 15-22-54(a) ("[I]n no case ... shall the maximum probation period of a defendant guilty of a felony exceed five years."). Accordingly, it is unclear whether he will actually remain on probation for more than five years.

5

complaint, which added a new named plaintiff and some more-detailed factual allegations,[2] reflected these changes in their status.

## II.  DISCUSSION

After the second amended complaint was filed, the defendants moved to have Naylor and Pearson dismissed. The defendants argue that, because these two plaintiffs had been released from custody, their claims are now moot and based on the second amended complaint, they no longer have standing to proceed.

Standing and mootness are related but separate issues.  "[T]he emphasis in standing problems is on whether the party invoking federal court jurisdiction has a personal stake in the outcome of the controversy

_____

2. The factual allegations regarding Naylor's treatment remained identical; the factual allegations regarding Pearson's treatment remained identical except for a new allegation that he suffered the discrimination he had experienced in other arenas of prison life in a class he was required to attend shortly before his release.

and whether the dispute touches upon the legal relations of parties having adverse legal interests." U.S. Parole Comm'n v. Geraghty, 445 U.S. 388, 397 (1980) (citations and internal quotation marks omitted). Once a party has established standing to invoke the jurisdiction of the court, the claim he asserts must remain "live" throughout the pendency of the lawsuit--that is, it cannot become moot. See Powell v. McCormack, 395 U.S. 486, 496 (1969).

Although the Supreme Court famously described mootness as "standing set in a time frame," it has emphasized that "there are circumstances in which the prospect that a defendant will engage in (or resume) harmful conduct may be too speculative to support standing, but not too speculative to overcome mootness." Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc., 528 U.S. 167, 190 (2000). Therefore, the fact that a plaintiff would not now have standing to initiate a challenge to a given practice

does not necessarily mean that a previously filed
challenge has become moot.

Here, there is no dispute that Naylor and Pearson
both had standing to bring suit when they filed their
original complaint in June 2014.; that, since then,
they have both been released; and that, when the
plaintiffs filed an amended complaint, they updated it
to reflect that change.   Whether Naylor and Pearson
retain their personal stake in the lawsuit thus comes
down to two questions: Did amending their complaint to
reflect their release defeat their standing? And did
their release moot their claims?   Because standing is
typically a preliminary determination, the court will
begin with it.


## A. Standing

As explained above, Naylor's and Pearson's claims
concern the alleged denial of reasonable accommodations
for their disabilities while in prison and the alleged
denial of access to certain programs, benefits, and

services on account of their disabilities.  There is no dispute that they had standing when the first complaint was filed.  Instead, the defendants argue that, because they had been released by the time the first amended complaint was filed, they no longer have standing.  The court disagrees.

The standing inquiry asks whether such a dispute exists at the <u>beginning</u> of the litigation, as compared to the mootness inquiry, which asks whether such a dispute <u>remains</u> throughout the litigation.  <u>See</u> <u>Focus on the Family v. Pinellas Suncoast Transit Auth.</u>, 344 F.3d 1263, 1275 (11th Cir. 2003) (standing is assessed "at the outset of the litigation" (citation omitted)); <u>see also Cleveland Branch, NAACP v. City of Parma</u>, 263 F.3d 513, 524 (6th Cir. 2001) ("[S]tanding does not have to be maintained .... Instead, it is to be determined as of the time the complaint is filed."); <u>Carr v. Alta Verde Indus., Inc.</u>, 931 F.2d 1055, 1061 (5th Cir. 1991) ("As with all questions of subject matter jurisdiction except mootness, standing is

9

determined as of the date of the filing of the complaint, and subsequent events do not deprive the court of jurisdiction.").

Normally, a case begins, for standing purposes, when the initial complaint is filed. However, in a case which the defendants rely on, the Eleventh Circuit Court of Appeals has recognized an exception to this rule of thumb, apparently in order to prevent litigants from trying to shoehorn standing for expired claims by amending them onto unrelated complaints. In Focus, 344 F.3d at 1275, it concluded that, when an amended complaint raises new allegations which do not relate back to a transaction or occurrence identified in the original complaint, standing (at least with respect to claims based on these new allegations) must be assessed as of the date of the amendment. In that case, the plaintiff initially alleged that it would suffer First Amendment injury because it was not permitted to advertise for a conference to be held on a certain future date; an amended complaint making the same

10

allegation was not filed until after the date of the conference had past.  Id.  Because the allegations were "identical" and thus "plainly relate[d] back" under Fed. R. Civ. P. 15(c), the court held that the plaintiff needed to show standing only as of the date its original complaint was filed.  Id.

Neither Focus nor any other precedent holds that standing is to be reassessed every time an amended complaint is filed.  Litigants routinely amend complaints for a wide variety of reasons, many of them not particularly substantive.  Absent an amendment which effectively begins the case anew by adding in unrelated allegations (or new plaintiffs), standing once established need not be reconsidered.[3]  This does

---

3.  The court also notes that, with respect to Naylor and Pearson, the second amended complaint functioned as a 'supplemental' rather than an 'amended' pleading.  Formal styling aside, the portion of the filing relevant to them did not add "facts or legal claims in existence at the time the original pleading was filed," as appropriate in an amendment, Manning v. City of Auburn, 953 F.2d 1355, 1360 n.8 (11th Cir. 1992) (citing Fed. R. Civ. P. 15(a)); rather, it "set
(footnote continued)

11

not, of course, leave defendants without recourse when a dispute evaporates after a case against them has begun; they can argue, just as defendants do here, that the plaintiffs' claims have become moot.

Here, Naylor and Pearson's allegations regarding the conditions of confinement in the defendants' prison facilities have likewise remained essentially the same; they certainly concern the same "conduct, transaction, or occurrence." Fed. R. Civ. P. 15(c)(1)(B). Just as

---

forth new facts in order to update the earlier pleading," as appropriate in a supplement, id. at 1359-60 (citing Fed. R. Civ. P. 15(d), other citations omitted); see also C. Wright & A. Miller, 3 Fed. Prac. & Proc. § 1504 ("[Amended pleadings] relate to matters that occurred prior to the filing of the original pleading and entirely replace the earlier pleading; [supplemental pleadings] deal with events subsequent to the pleading to be altered and represent additions to or continuations of the earlier pleadings.").

In substance, Naylor and Pearson's filing was an update as to the newly arisen fact of their release. Presumably, this supplement was folded for convenience into an amended pleading that had to be filed in order to add a new named plaintiff. Standing requirements imposed on amended complaints are inapposite where, as here, it would have been appropriate for the plaintiffs at issue--Naylor and Pearson--to instead file a supplemental pleading.

in <u>Focus</u>, the fact that their amended complaint reveals that they were subjected to these conditions in the past is irrelevant to the standing analysis.    Because their allegations plainly relate back to their original complaint, they need show standing only as of the date it was filed.    This they have done.    The defendants' contention that Naylor and Pearson no longer present a justiciable case or controversy is properly considered not as a question of standing, but rather as one of mootness.

## B. Mootness

Having established that Naylor and Pearson had standing to invoke the court's jurisdiction in the first place and that they maintain that standing now, the court turns to a distinct, and more fact-intensive question: Are their claims now moot?    In other words, do Naylor and Pearson maintain a personal, legally cognizable interest in the litigation, or must these plaintiffs and their claims be dismissed from the case?

13

Because more evidence is required for the court to resolve this issue, it is reserved pending an evidentiary hearing; nevertheless, this opinion will set out analytical guideposts.

"Attacks on subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1)[, such as in motions to dismiss on mootness grounds,] come in two forms. Facial attacks on the complaint require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion. Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." Lawrence v. Dunbar, 919 F.2d 1525, 1528-29 (11th Cir. 1990) (citations and internal quotation marks omitted). When a factual Rule 12(b)(1) motion is brought, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence

14

of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." <u>Id</u>.

Although the defendants' motion to dismiss was based in significant part on an undisputed fact that appeared on the face of the amended complaint--that is, that Naylor and Pearson had been released from prison--it also took issue with the plaintiffs' allegation regarding another critical fact, on which mootness might turn: whether Naylor and Pearson <u>in fact</u> "have a high risk of being readmitted to ADOC custody and facing the same discriminatory practices [they] faced prior to [their] release." <u>See</u> Defendants' Partial Motion to Dismiss Plaintiffs' Second Amended Class Action Complaint (doc. no. 127) at 8.  The motion argued that the plaintiffs had offered "no specific support ... [for this] pessimistic assertion[,]" and "ignore[d] the practical reality that the practices they complain of will not evade review."  <u>Id</u>.  Naylor and Pearson responded, attempting to answer with some

15

additional evidence, including statistics about the overall reincarceration rates of Alabama probationers on split sentences and Pearson's criminal record. Therefore, this court will treat the motion to dismiss as a factual attack.

"Because at issue in a factual 12(b)(1) motion is the trial court's jurisdiction--its very power to hear the case--there is substantial authority that the trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." Williamson v. Tucker, 645 F.2d 404, 412-13 (5th Cir. May 20, 1981).[4]  In considering such a factual attack, it is within "[t]he unique power of district courts to make factual findings which are decisive of jurisdiction ...."  Id. at 413.  The court will hold a hearing to inform its exercise of that power.

---

4. In Bonner v. Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

Somewhat different mootness analyses apply to individual claims and to claims brought on behalf of a putative class; hence, this discussion will proceed to consider both in turn, though the individual and class claims are substantively the same.

## 1. Plaintiffs' Contentions

In opposing the motion to dismiss, Naylor and Pearson suggest that, because there is a significant chance that they will be reincarcerated (more on this below), none of their claims has been mooted by their release and they remain free to proceed just as if they were still in prison. But this broad assertion is without support in relevant case law. They rely on an out-of-circuit case, Armstrong v. Davis, 275 F.3d 849 (9th Cir. 2001), abrogated on other grounds by Johnson v. California, 543 U.S. 499 (2005), that does not go so far as they suggest, and a district court decision, Hernandez v. Monterey, 70 F. Supp. 3d 963 (N.D. Cal.

2014) (Grewal, J.), that is inconsistent with Eleventh
Circuit precedent.

In Armstrong, 275 F.3d at 860-61, 865-67, the Ninth
Circuit held that disabled parolees had standing to
challenge on behalf of a class discrimination during
parole-revocation hearings.  As a preliminary matter,
this is a standing case, not a mootness case.  In any
event, the appeals court based its conclusion regarding
standing on extensive factual findings made by the
district court regarding the likelihood that the
plaintiffs would be placed into parole-revocation
proceedings (though not, it appears, regarding the
likelihood that their parole would in fact be revoked).
The court allowed the already paroled plaintiffs to
pursue claims regarding those hearings; however, it
nowhere suggested that they would have standing to
challenge any form of discrimination they might suffer

18

in prison if their parole were actually revoked.[5]
Compare McAlpine v. Thompson, 187 F.3d 1213, 1217-18
(10th Cir. 1999) ("[O]ther than (arguably) the Seventh
Circuit, our research indicates that every circuit to
consider the issue has decided that release to parole
moots a claim regarding prison conditions and
regulations, as opposed to parole procedures or
conditions and regulations that affect parole." (citing
opinions of the First, Third, Fourth, Fifth, Sixth,
Eighth, and D.C. Circuits)).

    Naylor and Pearson also cite Hernandez, 70 F. Supp.
3d at 969-72, 974-76, a jail-conditions suit seeking
prospective relief.  There, the court held that several
inmate plaintiffs who were not in incarcerated in the

---

    5. Notably, the Armstrong plaintiffs' claims
regarding parole-revocation hearings (as distinct from
claims regarding conditions of confinement more
generally) likely would have qualified for a mootness
exception--either the 'capable of repetition, yet
evading review' exception for individual claims, or the
'inherently transitory' exception for class claims--due
to the district court's findings regarding the
likelihood of recurrence and the brevity of such
hearings.

jail when the complaint was filed had standing to seek prospective relief. Id. at 976. The court based its holding on Armstrong v. Davis, reading the case to hold that, because these plaintiffs were under supervision and therefore "still subject to the disputed conditions of the jail," they had standing. However, as discussed above, Armstrong actually did not go so far as the Hernandez court said. Further, this holding of Hernandez conflicts with binding Eleventh Circuit precedent, which will be discussed below. Accordingly, this court cannot rely on it.

### 2. Individual Claims

"The general rule is that a prisoner's transfer or release from a jail moots his individual claim for declaratory and injunctive relief" regarding conditions of confinement. McKinnon v. Talladega Cnty., 745 F.2d 1360, 1363 (11th Cir. 1984). This is because "[p]ast exposure to illegal conduct does not in itself show a pending case or controversy regarding injunctive relief

if unaccompanied by any continuing, present injury or real and immediate threat of repeated injury." Cotterall v. Paul, 755 F.2d 777, 780 (11th Cir. 1985) (citation omitted).  See also McAlpine, 187 F.3d at 1215 ("[W]hen an inmate's claim for prospective relief regarding conditions of confinement becomes moot due to the inmate-plaintiff's release from confinement, the inmate's parole or supervised release status does not, absent some exceptional showing, bring that claim under the narrow 'capable of repetition, yet evading review' exception to the mootness doctrine.").

However, when a prisoner brings a claim that is 'capable of repetition, but evading review,' that claim is not moot even when the injury has, for now, ended, such as due to his or her release from custody.  For individual claims, "the 'capable of repetition, yet evading review' doctrine [is] limited to the situation where two elements combine[]: (1) the challenged action was in its duration too short to be fully litigated prior to its cessation or expiration, and (2) there

21

[is] a reasonable expectation that the same complaining party would be subjected to the same action again." Murphy v. Hunt, 455 U.S. 478, 482 (1982) (citations omitted).  To meet this second threshold, a plaintiff must allege more than a "mere physical or theoretical possibility" of recurrence; rather there must be a "reasonable expectation or a demonstrated probability that the same controversy will recur involving the same complaining party."  Id. (citation and internal quotation marks omitted); see also Honig v. Doe, 484 U.S. 305, 318 n.6 (1988) (explaining that the likelihood of recurrence need not be "established with mathematical precision" as long as the expectation of recurrence is reasonable, and that the question is "whether the controversy was capable of repetition and not ... whether the claimant had demonstrated that a recurrence of the dispute was more probable than not).

The court will require additional briefing and evidence as to both prongs of the test.  Naylor and Pearson should identify any specific claims that they

22

believe will evade review because they challenge conditions to which a prisoner is subjected for a brief period of time. They should submit evidence as to the durations of these conditions. They should also submit individualized evidence substantiating their assertions that, due to the conditions of their release, their disabilities, or any other reasons, they are especially likely to have their probation revoked and be reincarcerated. See, e.g., id. at 320 ("[T]he record is replete with evidence that Smith is unable to govern his aggressive, impulsive behavior. ... In the absence of any suggestion that respondent has overcome his earlier difficulties, it is certainly reasonable to expect, based on his prior history of behavioral problems, that he will again engage in classroom misconduct."); Armstrong, 275 F.3d at 867 (basing the conclusion that "a person with disabilities is more likely to be suspected of conduct that results in the revocation of parole than other parolees" on specific factual findings of the district court). To the extent

they allege that the very discrimination they have
experienced has increased their likelihood of
reincarceration, Naylor and Pearson should explain how
it has done so. Finally, they should explain to the
court why their reincarceration would necessarily
result in the reimposition of the conditions they have
identified as 'evading review.' The defendants should
submit any evidence to the contrary.


3. Class Claims

Of course, Naylor and Pearson do not distinguish in
their substantive allegations between 'individual' and
'class' claims--they make the same allegations on
behalf of themselves as they do on behalf of unnamed
putative class members who are similarly disabled and
are alleged to suffer similar discrimination. However,
the mootness analysis differs depending on whether the
court is considering the claims as brought on behalf of
individual plaintiffs or on behalf of a class. Because
these claims have been litigated as class claims from

the outset of the case, but no class has yet been
certified, the court must consider them under both
frameworks.

When a named plaintiff's claim becomes moot <u>after</u>
certification of the class, the claim remains
justiciable for Article III purposes. <u>Geraghty</u>, 445
U.S. at 403-04; <u>Franks v. Bowman Transp. Co.</u>, 424 U.S.
747, 753-54 (1976). By contrast, when a named
plaintiff's individual claim becomes moot <u>prior</u> to the
certification of a class, the class claim is normally
mooted. <u>Tucker v. Phyfer</u>, 819 F.2d 1030, 1033 (11th
Cir. 1987) (citing <u>Geraghty</u>, 445 U.S. at 404 & n.11).
However, a well-recognized exception exists: "where a
named plaintiff's claim is 'inherently transitory,' and
becomes moot prior to certification, a motion for
certification may 'relate back' to the filing of the
complaint." <u>Genesis Healthcare Corp., v. Symczyk</u>, 133
S. Ct. 1523, 1528 n.2 (2013) (citation omitted). <u>See
also</u> <u>Kremens v. Bartley</u>, 431 U.S. 119, 131 (1977)
(explaining that the Court had "adjudicated the merits

25

of [] class claims notwithstanding the mootness of the claims of the named parties" when "mootness was due to the inexorable passage of time"); <u>Zeidman v. J. Ray McDermott & Co., Inc.</u>, 651 F.2d 1030, 1045 (5th Cir. 1981) (explaining that while "a suit brought as a class action must as a general rule be dismissed for mootness when the personal claims of the named plaintiffs are satisfied and no class has properly been certified," "this general rule must yield when the district court is unable reasonably to rule on a motion for class certification before the individual claims of the named plaintiffs become moot").

The Supreme Court established this exception to mootness for 'inherently transitory' pre-certification class claims in a line of cases beginning with <u>Sosna v. Iowa</u>, 419 U.S. 393, 395-403 (1975). <u>Sosna</u> itself concerns post-certification mootness. Sosna, an Iowa resident who wanted a divorce but had resided in the state for less than a year, brought a class action challenging an Iowa durational-residency requirement

26

that limited state-court divorce jurisdiction to persons who had resided in the State for at least one year. The district court certified the class, but by the time her case was on appeal at the Supreme Court, Sosna had both resided in Iowa for more than a year and had already procured the divorce elsewhere. Although the Court noticed that Sosna's individual claim was moot, it did not dismiss her action and ruled on the merits of the class claims.

The Supreme Court's reasoning rested in part, and as relevant here, on the transitory nature of Sosna's claim. When "the issue sought to be litigated escapes full appellate review at the behest of any single challenger," the Court explained, the case "does not inexorably become moot by the intervening resolution of the controversy as to the named plaintiffs." Id. at 401. Rather, while the Court took care to "in no way detract[] from the firmly established requirement that the judicial power of Art. III courts extends only to 'cases and controversies,'" id. at 402, it set out a

27

flexible, case-specific approach to assessing mootness. "In cases in which the alleged harm would not dissipate during the normal time required for resolution of the controversy, the general principles of Art. III jurisdiction require that the plaintiff's personal stake in the litigation continue throughout the entirety of the litigation." <u>Id</u>. On the other hand, in cases such as the one brought by Sosna (where, due to the transitory nature of the claim, no particular "spokesman ... could retain a personal adversary position throughout the course of the litigation"), the Court shifted its focus to the ongoing controversy still "very much alive for the class of persons she has been certified to represent." <u>Id</u>. at 401 & n.9.

In keeping with this practical approach, the Court also issued a further instruction. While <u>Sosna</u>'s holding relied firmly on "the fact that a putative class acquires an independent legal status once it is certified under Rule 23," <u>Symczyk</u>, 133 S. Ct. at 1530, the Court noted that, "There may be cases in which the

28

controversy involving the named plaintiffs is such that it becomes moot as to them <u>before</u> the district court can reasonably be expected to rule on a certification motion." <u>Sosna</u>, 419 U.S. at 402 n.11 (emphasis added). "In such instances, whether the certification can be said to 'relate back' to the filing of the complaint may depend upon the circumstances of the particular case and especially the reality of the claim that otherwise the issue would evade review." <u>Id</u>.

Since then, the Court has affirmed and developed this pre-certification analysis. In particular, the Court expressly held in <u>County of Riverside v. McLaughlin</u> that the 'relation-back' doctrine applied even though "the class was not certified until after the named plaintiffs' claims had become moot" because the claims raised were inherently transitory.[6]   500 U.S.

---

6. Indeed, this is true even before a formal motion for certification has been made. As the Eleventh Circuit recently explained, "There is nothing in the [relevant caselaw] that suggests the relation-back doctrine turns on whether the named plaintiffs'
(footnote continued)

44, 52 (1991) (citations omitted).  As the Court has more recently explained, the "'inherently transitory' rationale was developed to address circumstances in which the challenged conduct was effectively unreviewable, because no plaintiff possessed a personal stake in the suit long enough for litigation to run its course."  <u>Symczyk</u>, 133 S. Ct. at 1531.

A claim is inherently transitory not only if there <u>exists</u> no plaintiff who could both establish standing at the outset of litigation and retain an active stake by the time class certification is decided, but also if

individual claims become moot before or after the plaintiffs move to certify a class.  Quite the contrary. ... [A] motion to certify, without more, does nothing that is significant on this issue.  The motion indicates that the named plaintiff intends to represent a class if allowed to do so, but the complaint itself announces that same intent; the motion is not needed for that purpose. ... The assertion that a motion fundamentally changes the legal landscape--indeed, that it impacts the constitutional prerequisites to jurisdiction under Article III--makes no sense.  What matters is that the named plaintiff acts diligently to pursue the class claims."  <u>Stein</u>, 772 F.3d at 707.  This case has been litigated by both parties and treated by the court as a putative class action from the outset.

it would be difficult to identify <u>which</u> prospective
plaintiff that would be at the time of filing.  As the
Court explained in <u>Gerstein v. Pugh</u>, a claim should be
considered inherently transitory when "<u>[i]t is by no
means certain</u> that any given individual, named as
plaintiff, would be in ... custody long enough for a
district judge to certify the class."  420 U.S. 103,
110 n.11 (1975) (emphasis added). Both the Second and
Seventh Circuits have held that, although "the ultimate
length of confinement does affect the applicability of
the 'inherently transitory' exception, the essence of
the exception is <u>uncertainty</u> about whether a claim will
remain alive for any given plaintiff long enough for a
district court to certify the class."  <u>Olson v. Brown</u>,
594 F.3d 577, 582 (7th Cir. 2010) (emphasis added);
<u>accord</u> <u>Zurak v. Regan</u>, 550 F.2d 86, 90-92 (2d Cir.
1977); <u>Thorpe v. District of Columbia</u>, 916 F. Supp. 2d
65, 67 (D.D.C. 2013) (Huvelle, J.).

Claims that derive from potentially imminent
release from custody are "a classic example of a

transitory claim." <u>Wade v. Kirkland</u>, 118 F.3d 667, 670
(9th Cir. 1997).   However, it is not clear whether
Naylor and Pearson are raising such claims.   <u>See</u> <u>id</u>.
(reversing and remanding for the district court to take
evidence on the average length of detention in a county
jail in order to determine whether the claims brought
on behalf of a class of inmates were "in fact
'inherently transitory'").

Again, the court requires additional briefing and
evidence.[7]   Should they seek to argue that their claims
are inherently transitory, Naylor and Pearson should
identify any specific claims that they believe are
inherently transitory as defined in the case law

---

7. Although <u>Sosna</u> and its progeny have recognized
the existence of the 'inherently transitory' exception
to class claims, its application in this circuit has at
times been confusing.   In particular, in <u>Tucker</u>, 819
F.2d at 1035, the Eleventh Circuit considered putative
class claims brought by a named plaintiff who had aged
out of the class he was attempting to represent
(juveniles confined in the county jail), but discussed
the applicability of the 'capable of repetition, yet
evading review' exception, not the 'inherently
transitory' exception.   The parties may wish to address
the relevance of <u>Tucker</u>'s analysis to this case.

discussed here.   They should submit evidence as to the average durations of these conditions, and any uncertainty regarding those durations.   They should also submit evidence demonstrating that it is certain that other persons similarly situated will be subjected to these conditions.   The defendants should submit argument and evidence to the contrary.

*   *   *

For the foregoing reasons, it is ORDERED as follows:

(1) The defendants' partial motion to dismiss (doc. no. 127) is denied as to standing.

(2) As to mootness, the motion is reserved and set for a hearing at 10:00 a.m. on December 16, 2015, in Courtroom 2FMJ of the Frank M. Johnson Jr. United States Courthouse Complex, One Church Street, Montgomery, Alabama.

(3) The plaintiffs are to submit a pre-hearing brief outlining the evidence they intend to present and explaining why that evidence supports their positions

on mootness no later than 21 days before the hearing; the defendants are to respond no later than 14 days before the hearing; and the plaintiffs may reply no later than seven days before the hearing.

DONE, this the 6th day of October, 2015.

<u>      /s/ Myron H. Thompson      </u>
**UNITED STATES DISTRICT JUDGE**