# Exhibit 54

**Expert Report of Gina Hilberry, AIA**

*Joshua Dunn, et al. v. Jefferson Dunn*, et al., 2:14-cv-00601-MHT-TFM (Middle District of Alabama)

April 4, 2016

Submitted by:

Gina Hilberry, AIA

Cohen Hilberry Architects, Inc.
4941 McPherson Ave.
St. Louis, MO 63108
April 4, 2016

## REPORT CONTENTS

1.0    Introduction

2.0    Executive Summary

3.0    Regulatory Overview

4.0    Accessibility of Alabama Department of Corrections Facilities

General Allegations

Specific Allegations

5.0    Qualifications

6.0    Resources

## 1.0    Introduction

I have been retained by the firm of Balch & Bingham LLP to provide expert opinions relating to the physical accessibility of correctional facilities which are operated by the Alabama Department of Corrections.  In particular, I have been retained to evaluate the facilities in light of allegations brought as part of *Joshua Dunn, et al. v. Jefferson Dunn (Dunn v. Dunn)*, et al., 2:14-cv-00601-MHT-TFM and in light of the requirements of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12181 *et seq*.

The correctional facilities that I visited and that are the subject of my report are:

| Facility | Address | | Date Visited |
|---|---|---|---|
| Bibb Correctional Facility | 565 Bibb Lane | Brent, AL 35034 | February 16, 2016 |
| Bullock Correctional Facility | P.O. Box 5107 | Union Springs, AL 36089-5107 | January 17, 2016 |
| Donaldson Correctional Facility | 100 Warrior Lane | Bessemer, AL 35023-7299 | February 9, 2016 |
| Easterling Correctional Facility | 200 Wallace Drive | Clio, AL 36017-2615 | July 6, 2015 |
| Elmore Correction Facility | 3520 Marion Spillway Rd. | Elmore, AL 36025 | February 17, 2016 |
| Fountain Correctional Facility | Fountain 3800 | Atmore, AL 36503-3800 | December 18, 2015 |
| Holman Correctional Facility | Holman 3700 | Atmore, AL 36503-3700 | December 18, 2015 |
| Kilby Correctional Facility | P.O. Box 150 | Mt. Meigs, AL 36057 | July 8, 2016 |
| Limestone Correctional Facility | 28779 Nick Davis Rd | Harvest, AL 35749 | February 10, 2016 |
| St Clair Correctional Facility | 1000 St. Clair Road | Springville, AL 35146 | February 8, 2016 |
| Staton Correctional Facility | P.O. Box 56 | Elmore, AL 36025 | July 7, 2015 |
| Ventress Correctional Facility | P.O. Box 767 | Clayton, AL 36016-0767 | July 5, 2015 |

These 12 facilities represent 80% of the major correctional facilities in the Alabama Department of Corrections (ADOC). I did not visit any of the community based facilities/community work centers.

**2.0   Executive Summary**

The ADOC operates 28 correctional facilities of various types in 17 counties throughout Alabama (Alabama Prison Transformation Initiative, Information Paper (APTI), 2016, at page 3). 15 of these are major correctional facilities; 13 are community based facilities or community work centers. All 28 correctional facilities are covered under the requirements of title II of the Americans with Disabilities Act (ADA, 28 C.F.R. part 35) and Section 504 of the Rehabilitation Act (section 504, 29 U.S.C. § 794).

Of the 15 existing major facilities, 14 were built prior to the enactment of the ADA and were therefore built without benefit of the Standards published with the ADA. However, ADOC has pursued ADA compliance through both programmatic responses and through multiple renovations and constructions projects since the 1990s. (See pages 11-12, part 4.0, b of this Report; see also, e.g., Administrative Regulation 431 Inmate Telephone System, ADOC106448-106452; Administrative Regulation 705 Hearing Impaired Inmates, ADOC106622-106627; Hamilton Inmate Orientation, ADOC033345-ADOC033346; Standard Operating Procedure for Hearing Impaired Inmates, HAIC 705-1 ADOC033355-ADOC033356; Hamilton A&I Inmate Grievance Form for Alleged Disability Discrimination or Accommodation, ADOC033355-ADOC033356; Hamilton ADA Grievance Appeal Log, ADOC033357; April 10, 2007 Memo re: Americans Disabilities Act, ADOC033358; Hamilton A&I Standard Operating Procedure regarding American Disabilities Act Inmate Grievance Procedure, ADOC033359-ADOC033363; Limestone Correctional Facility Standard Operating Procedure G-25 Inmate Access to Telephones, ADOC033364-ADOC033368; Tutwiler Standard Operating Procedure Number 13-15 American Disabilities Act Inmate Grievance Procedure, ADOC033369-ADOC033380).

Title II requires that "no qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." (28 C.F.R. § 35.130). This applies to all programs irrespective of the initial construction date of the facility.

In an architectural setting, title II does not "necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities." (28 C.F.R. § 35.150 (a)(1)). Each *program* is required to be accessible, not each facility. Moreover, when the facilities are required to be accessible due to program requirements, the scope of coverage is limited to "fixed or built-in elements of buildings, structures, site improvements, and pedestrian routes." (28 C.F.R. § 35.151 (c)(5)).

Addressing allegations concerning barriers in the ADOC corrections facilities depends first on a clear understanding of the difference between programmatic accessibility and environmental accessibility. In this context, environmental barriers to accessibility are physical conditions which prevent a person with a disability from fully participating in activities they would otherwise be able to access; programmatic barriers to accessibility are conditions,

features, policies, or practices which prevent a person with a disability from participating in activities which are open to other people in the same classification. Thus, an analysis of ADOC facilities access requires simultaneous consideration of programs and environmental barriers. Accessible physical features in the ADOC facilities are relevant to this report only as related to the programmatic impact (if any) resulting from those barriers.

In many cases, ADOC facilities have multiple dorms, restrooms and other elements that are identical programmatically and the same architecturally except for some accessible features. Where allegations concern a specific barrier in a specific space in a facility, access to these areas must be considered within the limited context of the correctional facility programs and whether or not the same program is available in an accessible space at the same location. In some cases, it is appropriate to look beyond a single location and consider whether or not a program is accessible elsewhere in the ADOC system (all locations).   As a result, evaluation of environmental barriers is not simple. Since all but one of the facilities predate the ADA, the presence of environmental barriers is to be expected. The barriers are only relevant when affecting inmate access to programs.

It should be noted that this report does not address remediation of environmental barriers or make proposals concerning programmatic actions. This report considers only the specific physical barriers noted in *Dunn v. Dunn*. Addressing the ADA requirement is complicated by the fact that the majority of the facilities addressed in this report may be removed from service in the coming years. As recognized by the Governor of Alabama in his February 2, 2016 State of the State Address, the existing correctional facilities in the State are outdated and have approximately $90 million in deferred maintenance outstanding. (APTI at page 3). The Initiative currently under consideration proposes demolition of 13 of the major correctional facilities and the construction of 4 large scale, state-of-the-art regional correction facilities in an effort to "ensure a safe, secure and humane environment moving forward." (APTI at page 3).

## 3.0   Regulatory Overview

In order to understand the requirements for accessibility at various sites, it is important to understand the history of the standards and the extent to which they apply to ADOC facilities and programs. There are two key federal statutes addressing the rights of individuals with disabilities and access to the courts: Section 504 of the Rehabilitation Act (29 U.S.C. § 794) and the ADA.

Section 504, enacted in 1973, prohibits discrimination on the basis of disability by programs that receive federal funds. (29 U.S.C. § 794(a)). Under section 504 requirements, programs that receive federal funding are required to evaluate their programs and policies and modify those found to discriminate against people with disabilities. (29 U.S.C. § 794).

As of July 26, 1990, the ADA added protection of the rights of people with disabilities in employment, access to state and local government services, places of public accommodation, and transportation. Specifically, title II (42 U.S.C. §§ 12131-12165, (2000)) extends the prohibition on discrimination established by section 504 to all activities of State and local governments, regardless of whether or not federal assistance is received. (29 C.F.R. part 35). On July 26, 1991, the Department of Justice (DOJ) issued rules implementing title II. (28 C.F.R. part 35). As title

II relates to facilities, the DOJ gave public entities the choice of complying with the Uniform Federal Accessibility Standards (UFAS) or the 1991 ADA Standards for Accessible Design. (1991 Standards, 28 C.F.R. part 36 app. A; 28 C.F.R. § 31.150). Facilities built or altered after July 26, 1992 were required to comply with one or the other of these standards for the design and construction of new and altered building and sites. (28 C.F.R. § 31.151).

Since the 1990 passage of the ADA, title II requirements affecting State and local governments have been revised. In particular, the Access Board published specific guidelines for State and local government facilities on January 13, 1998. (36 C.F.R. part 1191). These were incorporated into a revised edition of the ADA by the Access Board and published as guidelines July 23, 2004. These guidelines were used as the basis of the 2010 Standards for Accessible Design. (2010 Standards, 28 C.F.R. part 35.151). State and local governments are presently required to comply with the 2010 Standards (28 C.F.R. part 35.151 and the 2004 ADAAG at 36 C.F.R. part 119, appx. B & D) for newly constructed or altered facilities.

Thus, the standards for new construction, alterations, program accessibility, and barrier removal by the Alabama Department of Corrections (ADOC), can be summarized as follows:

| | |
|---|---|
| Prior to 1973 | None |
| 1973-July 1991 | Section 504 (programmatic, no architectural guidelines) |
| July 26, 1992 – September 15, 2010 | 1991 Standards (without the elevator exemption) or the UFAS* |
| September 15, 2010 – March 15, 2012 | 1991 Standards (without the elevator exemption), the UFAS, or the 2010 Standards.* |
| March 15, 2012 | 2010 Standards |

* "Departures from particular requirements of either standard by the use of other methods shall be permitted when it is clearly evident that equivalent access to the facility or part of the facility is thereby provided." (28 C.F.R. § 35.151 (c)(1,2)).

As previously noted, a majority of the ADOC facilities predate the ADA (see chart below). Bibb Correctional Facility is the only ADOC facility built since July 26, 1992. In addition, most of the alterations noted under part 4.0 of this report predate the effective date of the 2010 Standards. However, it should be noted that just because a facility was built when there were no requirements, or the requirements were not the same as current standards, does not mean that the facility is exempt from compliance with program accessibility. Title II requires that "no qualified individual with a disability shall, on the basis of disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any public entity." (28 C.F.R. § 35.130). This applies to all programs irrespective of the initial construction date of the facility.

Physical elements covered by title II that were newly constructed or altered between July 26, 1992 and   March 15, 2012, must be made accessible in accordance with either the 1991 Standards, UFAS, or the 2010 Standards. (28 C.F.R. § 35.151 (c)(5)).  New and altered facilities built after March 15, 2012 are required to comply with the 2010 Standards (28 C.F.R. part 31.151(c)).

Existing State and local government buildings constructed or altered prior to the enactment of the ADA (both editions) are not required to comply with new construction standards for accessibility.

> *General.* A public entity shall operate each service, program, or activity so that the service, program, or activity, when viewed in its entirety, is readily accessible to and usable by individuals with disabilities. *This paragraph does not—*
>
>> *(1) Necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities;*
>>
>> (2) Require a public entity to take any action that would threaten or destroy the historic significance of an historic property; or
>>
>> (3) Require a public entity to take any action that it can demonstrate would result in a fundamental alteration in the nature of a service, program, or activity or *in undue financial and administrative burdens.*

28 C.F.R. § 35.150 (emphases added).

Title II also spells out specific means for compliance:

> *General.* A public entity may comply with the requirements of this section through such means as redesign or acquisition of equipment, reassignment of services to accessible buildings, assignment of aides to beneficiaries, home visits, delivery of services at alternate accessible sites, alteration of existing facilities and construction of new facilities, use of accessible rolling stock or other conveyances, or any other methods that result in making its services, programs, or activities readily accessible to and usable by individuals with disabilities. *A public entity is not required to make structural changes in existing facilities where other methods are effective in achieving compliance with this section.* A public entity, in making alterations to existing buildings, shall meet the accessibility requirements of § 35.151. In choosing among available methods for meeting the requirements of this section, a public entity shall give priority to those methods that offer services, programs, and activities to qualified individuals with disabilities in the most integrated setting appropriate.
>
>> (i) *Safe harbor.* Elements that have not been altered in existing facilities on or after March 15, 2012, and that comply with the corresponding technical and scoping specifications for those elements in either the 1991 Standards or in the Uniform

1431315.1

> Federal Accessibility Standards (UFAS), Appendix A to 41
> CFR part 101–19.6 (July 1, 2002 ed.), 49 FR 31528, app. A
> (Aug. 7, 1984) are not required to be modified in order to
> comply with the requirements set forth in the 2010 Standards.

28 C.F.R. § 35.150 (emphasis added).

In summary, in an architectural setting, title II does not "necessarily require a public entity to make each of its existing facilities accessible to and usable by individuals with disabilities." (28 C.F.R. § 35.150 (a)(1)). Each *program* is required to be accessible, not each facility. In addition, when the facilities are required to be accessible due to program requirements, the scope of coverage is limited to "fixed or built-in elements of buildings, structures, site improvements, and pedestrian routes." (28 C.F.R. § 35.151 (c)(5)).

Also of note are two other title II provisions. First, ADOC is not required to take any action that "would result in a fundamental alteration in the nature of a service, program, or activity or in undue financial and administrative burdens." (28 C.F.R. § 35.150 (a)(3)). In a penological environment, the safety of inmates and correctional officers must be considered as various actions are taken. Second, by their nature, cells are constructed in such a way that renovations to their structures are expensive and sometimes technically infeasible. This is recognized in title II:

> Altered cells with mobility features shall be provided in each classification
> level. However, when alterations are made to specific cells, detention and
> correctional facility operators may satisfy their obligation to provide the
> required number of cells with mobility features by providing the required
> mobility features in substitute cells (cells other than those where
> alterations are originally planned), provided that each substitute cell—
>
> (i) Is located within the same prison site;
>
> (ii) Is integrated with other cells to the maximum extent feasible;
>
> (iii) Has, at a minimum, equal physical access as the altered cells
> to areas used by inmates or detainees for visitation, dining,
> recreation, educational programs, medical services, work
> programs, religious services, and participation in other programs
> that the facility offers to inmates or detainees; and,
>
> (iv) If it is technically infeasible to locate a substitute cell within
> the same prison site, a substitute cell must be provided at another
> prison site within the corrections system.

28 C.F.R. § 35.151 (k)(2).

Thus, given the age of the ADOC facilities, accommodations for cells at some facilities may be evaluated within the context of all the sites within the corrections system, not on a site-by-site basis.

1431315.1

**4.0     Accessibility of ADOC Correctional Facilities**

My evaluation of ADOC correctional facilities is specifically related to allegations in *Joshua Dunn, et al. v. Jefferson Dunn* and was performed using the 2010 Standards and the 1991 Standards as my initial measures. In addition, at each facility, I identified the programs provided to inmates and the locations for each of these activities. In some cases, there are specialized programs that are available only at specific facilities.

The 12 prisons I visited all had housing in single or double cells, food service (cafeteria and delivered), a chapel, group therapy of various kinds, mail services, shift office, laundry, law library, barbershop(s), hobby craft spaces (except as noted below), canteen, snack line or store, outdoor recreation, an honor/character based dorm, Native American grounds, and a visitation area. Most had housing in open dorm settings, additional educational programs, an infirmary/health care unit, dental services, segregation unit(s), pre-release, safe cell(s), wiccan grounds, and a prayer room. According to ADOC, as of Spring 2016, the special programs at various facilities include those below:

| Facility | Specialized Programs Provided | Programs not offered | Date(s) Opened |
|---|---|---|---|
| Bibb | Health Care Unit (HCU), Dental, one bay clusters older inmates, General Education Development/Adult Basic Education (GED/ABE), Substance Abuse Program (SAP), Crime Bill, Dannon project Reentry, ADOC Reentry, Transformational Ministries (TM) Program, AA/NA, Anger Management, Value Clarification, Stress Management, Film class at Auburn University at Montgomery (AUM), Art class AUM, Writing Class AUM, Toastmaster, Celebration Recovery, Outside-Inside Dad, True Measure of a Man | Vocational programs, limited educational classrooms, Hobby craft | 1997-98 |
| Bullock | Mental Health Unit (Residential Treatment Unit (RTU) and Stabilization Unit (SU)), Dental, GED/ABE, SAP, Crime Bill, Dannon project Reentry, ADOC Reentry, Transformational Ministries (TM) Program, AA/NA, Anger Management, Value Clarification, Stress Management, | Trade School, Industries, Therapeutic Community Drug Program | 1987, Mental Health wing built in 2006 |

| | | | |
|---|---|---|---|
| | Film class (Auburn University at Montgomery (AUM), Art class AUM, Writing Class AUM, Toastmaster, Celebration Recovery, Outside-Inside Dad, True Measure of a Man | | |
| Donaldson | Death Row (small), Open RTU, Closed RTU, Semi Closed RTU, Crime Bill, Laubach Classes, Special Services, ABE/GED | SU | 1982 |
| Easterling | Trade school, Additional Junior College programs and classes, Gym, HCU and infirmary | Substance Abuse Programs (SAP), | 1990, limited interior renovation in 2009 |
| Elmore | SAP, Relapse Program, After Care, ABE, Reentry Program, Stress Management, Anger Management, Reality Therapy | Vocational Programs, Elmore | 1981 |
| Fountain | Vocational programs, Agricultural Operations, HCU, Dental, SAP, Trade School, Individual Counseling, Aftercare, Pre-Treatment, Re-entry- Life skills, Family and Fatherhood, Institutional Pre- Release Program, AA/NA, Psychological Workshops | Matrix, Crime Bill | 1955 |
| Holman | Segregation Units, Dental, Death Row, GED, Stress & Anger Management, AA/NA, Celebrate Recovery, Restorative Justice Program | | 1969, segregation units built in 2000, 2007 remodel |
| Kilby | System-wide Intake, Dental, Medical, Hospital, NA/AA, GED/ABE, Printing Plant, Gardens, Video Phone (experimental program), Federal Courtroom | Trade schools | 1969, renovation of K dorm in 2013 |
| Limestone | Trade School Programs, Dental, SAP, After Care, AA/NA, ABE/GED, Pre-Release – Restart, Co-Occurring Program, Behavior Modification, Impact U Turn | | 1984 |
| St. Clair | Dialysis Services, Cancer and Medical Care, Dental, Therapeutic Community (TC), Trade School, | Crime Bill, SAP, College Courses, Matrix Pre-Release | 1983, Dialysis building is recent, approx. 2005-8 |

| | Industries (ACI), AA/NA, House of Healing | | |
|---|---|---|---|
| Staton | Vocational/Trade School Programs, Dental, Medical Observation Unit | | 1978 |
| Ventress | Crime Bill, Dental, SAP, AA/NA, Matrix, Dual Diagnosis, College Courses, ABE, Trade School | Hobby Craft | 1990 |

With the exception of Bibb Correctional Facility, the Segregation Wings at Holman, the Mental Health Unit at Bullock, the dialysis unit at St. Clair, and the recent alterations at Easterling and Kilby, all of the ADOC prison facilities that I visited predate the ADA. In addition, the construction of all of the single and double occupancy cells in the system, except those in the Bullock Mental Health wing, predate the publication of any federal standards for accessible cell design and construction. (Appendix A, Guidance and Analysis, Section 35.151(k)).

General Allegations

In *Dunn v. Dunn*, there are several allegations which make general statements about inaccessible physical features at the ADOC facilities. These are largely presented without reference to programs or program access and are therefore difficult to effectively evaluate. These allegations include:

a)      "With the exception of Hamilton A & I, every facility operated by ADOC contains architectural barriers for prisoners with mobility impairments." (Compl. ¶ 326).

As previously noted, ADOC is not required to remove architectural barriers at existing facilities so long as services, programs and activities are "readily accessible to and usable by individuals with disabilities." (28 C.F.R. § 35.150(a)). Also, as previously noted, all of the ADOC correctional facilities except Bibb existed prior to 1991 and clearly qualify as "existing". At these facilities, architectural barriers cannot be evaluated independent of program requirements and provisions. Because of this, a simplified catalog of possible barriers such as inaccessible bathroom fixtures is not helpful or pertinent. While there are barriers at every facility, their presence does not mean that programs are therefore inaccessible. Moreover, programmatic solutions to those environmental conditions that pose physical barriers must be considered as each instance is encountered.

There are some existing architectural barriers which occur in multiple facilities which pose special problems within the context of correctional facilities. The majority of these barriers fall into three general categories: some pose an administrative burden, some may be addressed as reasonable accommodations, and some are complicated by structural conditions which create technically infeasible conditions. Examples of these categories include:

- ADOC is responsible for maintaining an environment that is as safe as possible for inmates and correctional officers. There are some work items which must be considered on a case by case basis because of potential impact on security and operations. These can include installation of pipe guards at lavatories (which create hiding places), long phone cords and in some settings, long personal shower hoses.
- The leather shop and hobby craft rooms have assigned work desks and work areas that are set up for inmates using stools and working at raised surfaces. This may be appropriate to the tasks and to the individual preferences of each inmate, but is inaccessible. If an inmate in a facility participates in one of these programs needs a lowered work surface due to a disability, it is my understanding that those work surfaces will be provided as a reasonable accommodation.
- The last category includes elements that are technically infeasible, especially when considered within the context of undue financial burden. Cell doors and cell fixtures at most of the facilities and some ramps to chapel platforms fall within this group.

As a result, even where programs are affected, it is not possible to simply evaluate physical barriers using the same methods that would apply to a place of public accommodation. Just because an inaccessible feature exists at one or more facilities, does not automatically mean that there is a feature that is non-compliant with title II requirements.

b)      "ADOC has not removed architectural barriers that can be done with relative ease and at limited expense." (Compl. ¶ 325).

ADOC has removed architectural barriers at various facilities, including both those that can be done with relative ease and limited expense, and in some cases, those that require more extensive disruption to operations and increased expense. Examples of these items include:

Shower Renovations for Atmore Work Release, Atmore, Alabama: Specifications dated September 29, 2014 (ADOC036533-ADOC036792) and Drawings September 29, 2014 (ADOC036793-A036796).

Installation of two accessible showers at Donaldson Correctional Facility: proposal dated August 11, 2014 (ADOC061765).

Dormitory at Easterling Correctional Facility, H dorms Additions/Alterations: Drawings dated August 12, 2009 (ADOC034532-ADOC034553).

An accessible walking track and new ramp for the chapel at Hamilton A&I (ADOC061767-ADOC061778) .

A major renovation of K dorm at Kilby in 2013 including completed new restrooms with accessible toilet, lavatory and showers. Specifications are dated July 3, 2013 (ADOC037214-ADOC037503) and Drawings are dated June 20, 2013 (ADOC037209-ADOC037213). Certificate of substantial completion is dated April 4, 2014 (ADOC038485).

Tutwiler ADA Renovations, Wetumpka, Alabama, Specifications dated June 2, 2011 (ADOC037504-ADOC037989), Drawings dated June 2, 2011 (ADOC037990-ADOC038030).

Work at Tutwiler was outlined in a letter to the Regina Morgan, Investigator, Department of Justice and included revisions to parking (anticipated completion 12/31/10), front entrance ramp (anticipated completion 12/31/10), Front lobby restrooms (completed as of June 23, 2010), Receiving restroom – accessible toilet installed in holding cell (completed as of June 23, 2010), renovation of the toilet rooms by the dining hall (expected completion May 2012), renovation of the chapel restroom (expected completion July 1, 2010), dorms A, B, C, E, -I, J, N and O all to have accessible toilets and showers (anticipated completion June 2012) (ADOC061909-ADOC061917).

Installation of video phone technology on a trial basis at Kilby in 2015:



*Kilby, DSC07518.jpg (Video Phone, I dorm)*

c)      "Bathrooms throughout the ADOC system are not accessible. Toilets at some facilities are on raised platforms." (Compl. ¶ 327).

During my site visits, I saw toilets on raised platforms at only Kilby and Fountain.  At both sites, other dorms had toilets that were not on raised platforms.

The primary characteristics that are required for bathrooms to be accessible include an accessible route to the area and required clear floor space at toilets, lavatories and showers. Housing dorms and bays with toilet and shower facilities that are on accessible routes are provided at all the correctional facilities except Staton, Donaldson and Ventress.  Staton, Donaldson and Ventress all have dorms with restrooms having an accessible route and required clear floor spaces except for shallow "speed bump" style curbs at showers.



*Staton, DSC07057.jpg, "speed bump" shower curb, 1-1/2 inches tall*

Alabama Department of Corrections - 12

All facilities have some lavatories and showers with required clear floor spaces. All corrections facilities also have required clear floor space present at some toilets if privacy screens are selectively removed.

Where facilities have been renovated, access is provided:



*Easterling, H dorm, DSC06534.jpg, DSC06559. Jpg*



*Kilby, K dorm, DSC07615.jpg and DSC07635.jpg (right)*

Other accessible features, such as grab bars and faucet controls vary widely between facilities and between various existing restrooms. Apparently these features have been provided over past years on an "as needed" basis and the resulting work is tailored to the inmates who have needed the accommodations.

d)    "Some dormitories have only showers with controls at the very top of the shower head. Many bathroom areas have a low wall to go into the shower area." (Compl. ¶ 327).

All of the correctional facilities have at least one shower area that does not have a low wall. There are three (noted above) that have low "speed bump" curbs to contain water.  With the exception of Fountain, all correctional facilities have one or more shower with controls within reach ranges as required by the 1991 Standard.

e)      "[A]ccess to the outside in many facilities involves going down stairs." (Compl. ¶ 327).

All of the correctional facilities have at least one dorm with an accessible route to outdoor recreation spaces. While there are a few instances where stairs remain, alternate routes to outdoor areas are available. To my knowledge, no outdoor programs are inaccessible due to stairs. It should be noted that I did not visit every dorm at each facility, I visited a representative selection of dorms that were identified as typical for dorms of their type and program.

Specific Allegations & Notes by Facility:

**Bibb**

Bibb Correctional Facility opened in 1997 and is the only facility built after the ADA was enacted. My evaluation of the facility uses the 1991 Standard.

a)      At Bibb, Plaintiff John Maner claims that ADOC "has required him to choose between accessing programs and services and having necessary accommodations. He injured himself again in April 2014 after choosing to access programs and services." (Compl. ¶ 28).

In his deposition, Mr. Maner agrees that he has had no problem moving around at Bibb, Limestone, Hamilton, or Ventress (February 27, 2015 Deposition of John Maner ("Maner Dep.") 182:4-185:2). Mr. Maner's complaint is not apparently related to physical barriers in the facilities, but rather to his perception that he is denied programs because of his medical profiles. (Maner Dep. at 88:9-15).

Of the ADOC prison facilities, Bibb Correctional Facility is the newest and the most accessible. There are no work release or vocational programs offered at Bibb for any inmate regardless of any disability. Educational programs are offered in two locations on site, both of which can be reached without using stairs.

"Q. Not any ramps you have to go up? A. I wish there was. Q. Why do you wish there were? A. It would help me with physical therapy" (Maner Dep. At 182:21-25).

There is a ramp at Bibb, although access is limited to inmates participating in the educational programs provided in the trailer. Architectural barriers do not seem to be contributing Mr. Maner's inability to access various programs and services.

**Easterling**

Easterling Correctional Facility was built in 1990 and had interior remodeling work at interior restrooms in 2009. (ADOC034533). Both the original construction and the recent renovations were done during the period that the 1991 Standard was in use. My evaluation of this facility uses the 1991 ADA Standard.

Specific allegations concerning architectural barriers at Easterling Correctional Facility include:

a)      "At Easterling, the shower in the infirmary has 3-4 inch wall over which a person must step to enter the shower." (Compl. ¶ 330).

The infirmary shower does have a curb. The shower has seats and a shower head with a hose unit and is otherwise accessible. The curb is far enough from the wet area that removal of the curb may be possible or the curb may be lowered and the approach ramped. However, there may be a better location for this fixture and further study should be done.

b)    At Easterling, Plaintiff Roger Alan Moseley states that:

> A. In our dorm, H dorm, you have two handicap toilets. You have two handicap showers. And you have two handicap urinals. But the -- any inmate uses them. It's not just for handicapped, so, yes, it's kind of hard to use one that is being used or you have to wait, like if you have to use the bathroom and both of them is being used, you just have to wait. The rest of them are low to the ground as far as the toilets. And trying to get up off of them without a way to pull up off of them is hard. So, yes, it's, it's pretty hard to get a hold of one whenever you need to.
>
> Q. What about urinals?
>
> A. Urinals? Urinals are not quite as bad. I mean, you don't have any handrails on them to hold yourself up or anything like that, but you have -- their handicap urinals are shorter, they're down further on the wall. The rest of them are up higher. They are a little easier to use, but you have no way of holding yourself there if you have to. There's no rails or nothing on them.

(January 27, 2015 Deposition of Roger Alan Moseley ("Moseley Dep.") 139:19-140:17).

At least one shower at H dorm is fully accessible. The size, seat, grab bars, height of the shower spray, approach and transfer area all comply with the 1991 Standards (4.21.2-4.21.6), requirements. The showers do not have a hose or hand held shower, however these are not required in unmonitored facilities where vandalism is a consideration (4.21.6 Exception). A second shower is just as accessible with the exception of the approach area for transfer.



*Easterling, DSC06552 and DSC06558.jpg*



Hilberry Report – Alabama Department of Corrections - 15

1431315.1

Mr. Moseley's complaint concerns availability, not physical access. At bathing and shower facilities, "at least one accessible shower that complies with 4.21 shall be provided." (1991 ADA 4.23.8). H dorm bathing facilities comply with ADA requirements.

The ADA (both editions) does not require installation of grab bars at urinals. Again, H dorm facilities comply with ADA requirements.

c)      At Easterling, Plaintiff Dwight Hagood states that he is housed in E1 dorm (January 28, 2015 Deposition of Dwight Hagood ("Hagood Dep.")170:21) and:

> A. I'm in a dorm with no handicap facility. I go across the hall to get to a handicap facility and it's supposed to be handicap facility (Hagood Dep. 81:9-12).  I have to go across the hall. I have to ask the officer can I go take a shower? Can I go to the bathroom?

(Hagood Dep. at 81:17-19).

> Q. Once you are in the handicap toilet facilities in E two dorm, do you have any problem using them?
>
> A. No, sir.
>
> Q. Once you are to the handicapped shower facilities in E two dorm, do you have any problem using them?
>
> A. Sometimes I do and sometimes I don't.

(Hagood Dep. at 177:13-21).

> Q. Other than needing somebody that you say -- needing somebody to help you in the shower, do you have any other problems with using the shower facilities in E two dorm?
>
> A. No.
>
> Q. And if I'm hearing you, did you need somebody to help you stand up more than anything else?
>
> A. Yes, sir.
>
> Q. And to kind of help you and support you so you wouldn't fall?
>
> A. Yeah, and get me on the – they got a little platform built, like a table.
>
> Q. I see.

A. Go there and get on to shower, and then they got a -- I mean, they got it. I got to say, they got it nice.

Q. All right. Tell me how you mean "they got it nice."

A. They got a shower head, you can reach up here (indicating) and get it, adjust the water over here (indicating) and run it over you, however you need it.

(Hagood Dep. at 180:21-181:19).

To move from E dorm to E2 dorm, Mr. Hagood needs permission from a correctional officer. (Hagood Dep. at 185:23-186:8). It is clear that accessible facilities are available in the adjacent wing of E dorms, however for some reason, Mr. Hagood is bunked on the inaccessible side of the building. This seems to be a programmatic barrier, not an architectural barrier.

**Fountain**

Fountain Correctional Facility opened in 1955. Much of the facility has not been renovated. My evaluation of this facility uses the 1991 ADA Standards.

a)        "At the Fountain chapel, the only bathroom for prisoners has a very narrow door that a person in a wheelchair would not be able to go through." (Compl. ¶ 334). No major renovation projects have been done, although the old hospital wing was repurposed into offices, health care, libraries, therapy areas and similar uses.

The chapel restroom does have a narrow door. However, the walls of the room are full height concrete block on all sides and the room is not in a location that will allow for expansion of either the room or the door. Widening the door at the currently location is technically infeasible. It is my understanding that ADOC provides an alternate location for inmates as needed.

**Kilby**

Kilby Correctional Facility opened in 1969, and has had multiple renovations. Accessibility varies from dorm to dorm and from building to building. My evaluation of this facility uses the 1991 ADA Standards.

a)        "At Kilby, the infirmary bathroom has a purportedly accessible toilet at the end of a narrow area with toilets on one side and urinals on the other. Prisoners in wheelchairs must navigate between the toilets and urinals to reach the accessible toilet, and there is inadequate space to do so." (Compl. ¶ 332).



*Kilby, Infirmary Complex, DSC07775.jpg*

Thierry Report – Alabama Department of Corrections - 17

The walls which define this area are concrete glazed block and are full of various plumbing lines and connections. The clear space from the wall behind the toilet to the face of the urinals is roughly 5 feet. Widening this area is not technically feasible and reducing the fixture count (e.g. by removing urinals) is also not possible.

b)      Mr. Hagood is an inmate who uses a wheelchair full time. He cannot stand or walk, so accessible facilities are important to his ability to care for himself. Mr. Hagood was housed at Easterling at the time of his deposition. However, he was housed previously at Kilby. He made the following statements about the Kilby infirmary restroom:

> A. I mean, they got a shower head and a shower chair in the infirmary.
> They got a handicap commode in the infirmary.
> Q. Did you ever use those?
> A. Yes, sir.
> Q. And you told me you didn't have any problem using the sink, did you?
> A. Huh-uh.
> Q. Is that "no"?
> A. No, I didn't have a problem.
> Q. Didn't have a problem using the toilet there, did you?
> A. No, sir.
> Q. Didn't have any problem using the shower there, did you?
> A. No, sir.
> Q. Were you able to get around in the bathroom in the infirmary at Kilby?
> A. Yes, sir.
> Q. Maneuver your wheelchair around?
> A. Yes, sir.
> Q. How did you shower when you were at Kilby?
> A. They had -- the way the shower heads set up there or the way the
> shower is set up there, they got the shower head. Okay. Whenever they
> turn it on and they got a shower chair.
> Q. I see. Got you.
> A. And before they turn that water on, you better feel and make sure that
> you can stand it before you get under it. Because if you get under it, you
> ain't going to get out until you done burnt. I mean, if it's hot enough.

(Hagood Dep. at 203:16-205:25).

Several shower controls in the infirmary/hospital complex, are within reach range.



*Kilby, Infirmary Complex, DSC07752.jpg and DSC07745.jpg*

c)      At Kilby, "[t]he [infirmary] shower has an unstable chair, and several prisoners have reported falling while trying to get in and out of the shower chair." (Compl. ¶ 332).



*Kilby, DSC07748.jpg (grey chair); Kilby shower chair DSC07750.jpg*

        The white chair shown in the right photograph appears to be stable.  Additionally, the scope of ADA is limited to "fixed or built-in elements of buildings" (28 C.F.R. § 35.151 (c)(5)) and therefore shower chairs are not covered by the requirements of the ADA if they are loose furnishings.

d)      At Kilby, at the infirmary, "[t]he ramp to the yard is too steep, resulting in prisoners in wheelchairs being unable to control themselves going down and unable to mount the ramp to return to the infirmary from the yard" (Compl. ¶ 332).

        The ramp to the yard from the infirmary (P dorm) is sloped greater than 8.33% which is the maximum accessible slope allowed for an accessible ramp.

e)       "The Kilby infirmary also has several individual cells. The toilet and sink in the infirmary cells are a single unit with the sink directly above the toilet. The toilet and sink are also located in the corner of the cells. They are inaccessible to prisoners in wheelchairs." (Compl. ¶ 333).

There are a variety of different single occupancy cells in the Kilby hospital/infirmary area.  Toilet and sink fixtures vary widely between different locations and cell types.  The single occupancy cells include fixtures such as:

 

*Kilby, Infirmary single cell, DSC07708.jpg and DSC07727.jpg*



*Kilby, Infirmary single cell, DSC07784.jpg*

None of these comply with accessibility requirements.  However as previously noted, evaluating scoping for accessible cells is particularly difficult in existing buildings and may require analysis within the context of all the facilities, not just a single location such as Kilby. Door openings and plumbing fixtures at single and double occupancy cells can be technically infeasible to remodel.  When cell renovations are technically infeasible, "a substitute cell must be provided at another prison site within the corrections system." (28 C.F.R. § 35.151(k)(2)).  Thus,

requirements for a specific single or double occupancy cell may be satisfied by providing a substitute location within the system.

f)      At Kilby, "[t] here have been as many as 17 wheelchair users housed in Dormitory A at one time." (Compl. ¶ 333).  There is just one purportedly accessible toilet in the dorm.  Although the toilet has grab bars, it is not accessible because it is at the end of a narrow walkway with toilets on one side and sinks on the other, not leaving adequate room for maneuvering a wheelchair." (Compl. ¶ 333).

For compliance with the 1991 Standards, a restroom with multiple toilets and no stalls is required to have at least one accessible toilet (4.22.4, 1991 Standard).  Only one accessible toilet is required.



*Kilby, A dorm, location of accessible toilet, DSC07848.jpg*

This toilet has required clear floor space provided between the back wall and the front of the urinal, however this clear space does overlap the clear floor space required for the urinal. While this condition is permitted in the 1991 Standard (4.23.3), circulation space is constricted and access to the fixture is probably difficult when other fixtures are in use.  Relocation of either fixture is not possible without significant remodeling work or removal of urinals or toilets.

g)      Mr. Hagood stated that A dorm does not have an accessible shower head. (Hagood Dep. at 204:9-10).



*Kilby, A dorm Shower, DSC 07818.jpg and A dorm Shower Chair, DSC07817.jpg*

Kilby is an existing facility housing large numbers of inmates as they move through the intake process for ADOC. While it is physically possible to mount a shower head at 48 inches above the floor (4.21.6, 1991 Standard), it may reduce the number of heads available to standing inmates to a number which will affect operations.

h)      At Kilby, "[t]he bunks in Dormitory A are so close together that Mr. Hagood cannot maneuver easily through the aisles between the bunks." (Compl. ¶ 333).

Note: no photos available of open dorm areas due to the fact that they were occupied at the time of survey. However, not all bunks are required to be accessible. A minimum of 5% of the bunks are required to comply by the 2010 Standards. (28 C.F.R. part 35.151 (e)(1)).

i)      At Kilby, during evacuation of the prison, Mr. Hagood "could not evacuate directly from Dormitory B. He was required to push himself in his wheelchair farther into the prison, against the flow of evacuating prisoners, to get to Dormitory A, and then out through Dormitory A, because only Dormitory A has a ramp." (Compl. ¶ 356).

It is correct that A dorm has a ramp and that B dorm does not.



*Dorm A and B, Kilby, image from Site Plan*

However, for existing buildings, even the 2010 Standard recognizes an exception. "Means of egress shall comply with section … 1007 of the International Building Code (2003 edition) (207.1, 2010 Standard). Section 1007 includes an exception: "Accessible means of egress are not required in alterations to existing buildings." (IBC 2003, 1007.1, exception 1).

For egress purposes, A dorm is not required to have a ramp.

j)      Mr. Hagood was transferred to Dormitory B and states that it was not accessible. (Compl. ¶ 354).

Q. Let me ask you about dormitory B there at Kilby. Did it have a handicap accessible toilet?
A. No.
Q. Did it have a handicap accessible shower?
A. No.
Q. What did you do about going to the bathroom when you were in dormitory B?
A. I went to A.
Q. I'm sorry?
A. I went to A dorm.

(Hagood Dep. 198:23-199:9).

This is a programmatic issue. Not all dormitories are required to be accessible.

k)       At Kilby, Plaintiff Christopher Gilbert resided in H dorm at the time of his deposition in January 2015.  (January 29, 2015 Deposition of Christopher Shawn Gilbert ("Gilbert Dep.") 19:15-17). Gilbert states that "I get around pretty good" (Gilbert Dep. at 226:20-22).  In addition he states:

Q. Do you have any problems getting to the restroom?
A. No.
Q. Do you have any problems using the restroom when you get there?
A. No.
Q. Do you have any problems going to the showers?
A. No.
Q. Do you have any problems using the showers when you get there?
A. No.

(Gilbert Dep. at 227:12-23).

**Staton**

Staton Correctional Facility was built in 1978.  My evaluation of this facility uses the 1991 ADA Standards.

a)       "At Staton, prisoners with mobility impairments must make their way to the infirmary in order to bathe using the "accessible" shower. The shower in the infirmary consists of a small stainless steel cubicle with a plastic lawn chair in the middle and a hose that can be used for bathing. To make matters worse, a prisoner must step up about eight inches to enter the shower." (Compl. ¶ 331).

It is correct that the showers in the infirmary have a step at the shower curb and a hose.

At A dorm the curb is removed at one end of shower area and a shower chair is provided.

 

*Staton, A dorm shower, DSC06975.jpg (showing step free entry) and DSC06979.jpg*

**Ventress**

Ventress Correctional Facility was built in 1990. My evaluation of this facility uses the 1991 ADA Standards.

a)        "The dormitories in Ventress do not have grab bars in the showers, and Dormitory C does not have a shower chair to accommodate people with disabilities." (Compl. ¶ 328).



*Ventress, C dorm shower area, DSC06716*

As noted previously, shower chairs are not covered by the ADA. The shower area is open and on an accessible route. The floor area complies with roll-in shower requirements for the 1991 Standards.

b).       Mr. Sears used to be  housed in H dorm.[1]  A shower chair is available for his use. (May 5, 2015 Deposition of Timothy Sears ("Sears Dep.") 98:3-24).

---

[1] Timothy Sears recently was transferred to Bibb Correctional Facility from Ventress Correctional Facility.



*H dorm (shower chair not shown), DSC06754.jpg*

Q. Do you know of anything that would help you in the shower other than the shower chair?

A. Yes.

Q. What?

A. Rails.

Q. And how would rails help you?

A. They'd give you something to hold onto when you're standing. I mean, it's okay to be in the chair, to be able to raise your legs up to wash your legs. But when you're standing up, you got to have something to hold onto.

Q. Okay. Have any of the ADOC facilities you've been in had rails in any of the showers that you've used?

A. A few, yes.

Q. Are you aware of any shower facility here at Ventress having rails?

A. No.

(Sears Dep. at 247:16-248:10).

During my site visits, it seemed that grab bars have been installed at various locations throughout the 14 pre-ADA correctional facilities on an as-needed basis. Almost every dorm restroom has some combination of bars at one or more toilets.

c)      The infirmary at Ventress has "a shower chair, though no grab bars." (Compl. ¶ 328).

Grab bars have typically been installed at various locations throughout the 14 pre-ADA correctional facilities on an as-needed basis.

d)      Mr. Sears has difficulty standing for long periods at pill call. (Sears Dep. at 38:24-40:4). At Pill call, there are no seats. Inmates who are physically challenged have to stand around for hours at a time to get medication. And there is no regard for any profiles. (Sears Dep. at 152:17-21).

Furnishings are not covered under the physical requirements for facilities.

**5.0    Qualifications**

**Gina G. Hilberry, AIA LEED AP**

Ms. Hilberry is the principal architect of Cohen Hilberry Architects.  She provides architectural and consulting services related to historic preservation, renovation, conversion, new construction and accessibility.  Since beginning her professional career in the early 1980s, her personal emphasis has included accessibility, universal design, research and cost effective conversion and compliance techniques.  Ms. Hilberry provides expert consulting, design assistance, accessibility evaluations, compliance plans, construction administration and universal design services to fellow professionals, attorneys, local and regional jurisdictions, and owner's representatives. She consults, teaches and provides training seminars on the ADA, Fair Housing and Inclusive Design to public, professional and industry associations nationwide.

Education:     Bachelors of Architectural Technology, Washington University in St. Louis

Current positions:

1992 -        Cohen Hilberry Architects, Inc., Principal

2007 -        ANSI A117.1 Standards Development Committee, Vice Chair
              Principal Representative for United Cerebral Palsy Association
              Co-Chair, Wheeled Mobility Task Group
              Chair, Scoping Task Group

2011 -        Institute for Human Centered Design, Boston, Consultant/Architect

Professional Associations, Boards & Memberships:

                Registered Architect:  Missouri, Illinois, Arizona
                LEED Accredited Professional
                ICC Accessibility Inspector/Plans Examiner (ICC)
                Advisory Council to the Office on the Disabled, City of St. Louis, MO,  Chair
                American Institute of Architects (AIA), Past President, St. Louis Chapter
                International Code Council (ICC)
                Starkloff Disability Institute, Board Member

Past Positions:

1994 - 2014   Washington University in St. Louis, Adjunct Lecturer
1984 – 1992   John Cohen & Associates, Inc. & Helix Design Group, Inc.

Representative Projects and Current Work:

U. S. Department of Justice, Civil Rights Division, Housing and Civil Enforcement Section: Expert, multiple cases.

Missouri Attorney General & the Missouri Commission on Human Rights:   Expert and consultant on multiple cases including detention facilities, parks, restaurants, commercial properties and housing.   Included consulting services concerning state prison system requirements.

Office of State Courts Administrator, Missouri Supreme Court: Provided consulting services to the Missouri Supreme Court on courthouse and detention access throughout the state.

Corrections Division, City of St. Louis, Missouri: Expert consultant on MSI (medium security) and Justice Center (high) facilities including ADA title II compliance review, remediation planning and report, technical support.

Charlotte, North Carolina:  ADA Title II transition plan development including evaluation of all city facilities and public rights-of-way consulting services (with IHCD, Boston, MA).

City of St. Louis, Missouri:  Drafted and implemented Universal Design methods and criteria for affordable housing in the City.  Provided training for staff and participants on ANSI A117.1 and IBC requirements.  Consulting on ADA Title II requirements and transition plan.

Georgia Institute of Technology, Atlanta, Georgia:  ADA Title II transition plan development including facilities evaluations, outdoor environments, transportation systems, electronic access and coordination with Atlanta public rights-of-way requirements.  With IHCD, Boston MA.

National Park Service - Jefferson National Expansion Memorial (the Arch):  ABA and ADA title II accessibility and universal design consultant to the NPS and City Arch River 2015 project partners including Michael Van Valkenburg Associates, Cooper Robertson Architects and Trivers Associates.  Includes coordination with security and Park Ranger's facilities.

Missouri Department of Transportation (MoDOT): consulting   and   training   services   for pedestrian rights-of-way and implementation of design standards and requirements.

Washington University School of Medicine & Paraquad, Inc.: architect for series of research facilities including wheelchair skills courses, gait laboratory, exercise impact laboratory, assistive technology training center, and independent living center.

U. S. Access Board:   Public Rights-of-Way Access Advisory Committee (PROWAAC & PROTAM) 1999 – 2001; Participation in development of Wheeled Anthropometry research project 2001 – 2008.  Served on Editorial Committee & Illustrations Manager, Way finding & Signalization Subcommittee, Technical Assistance Manual, Author (one of many.

National Cooperative Highway Research Program (NCHRP): Advisory Panel for NCHRP Project 20-07/Task 167

St. Louis Cardinals - Busch Stadium:  consultant on design and operations issues related to security, fan access, universal design features and accessibility.

Missouri Botanical Garden:  Consultant since 2005:  Providing on-going Title II and III ADA consulting services concerning universal design and accessibility in public and private portions

of the complex and surrounding area.  Architectural services provided for facilities including the site and historic walls,  Climatron, Shoenberg Administration Bldg., CEBC, Japanese Gardens, Museum, Shaw Nature Reserve, Temperate House and others.

Garfield Place:   Renovation of abandoned St. Louis School into 25 apartments, offices, community center and recreation facility.   Apartments serve people experiencing chronic homelessness and mental illness.

Grove Headquarters: New construction of a mixed-use office and multi-family apartment building in the St. Louis Grove neighborhood.  Approximately 66,000 square feet.

Parker Building: Renovation of historic seven story mercantile building in downtown Davenport, IA.  Conversion to mixed mercantile, commercial and residential uses.

Recent lectures include:

- American Institute of Architects National Convention, 2011.  Designing for All:  Social Sustainability and Universal Design.

- American Institute of Architects:   Boston Chapter (Build Boston), Design of Safe Havens, 2010; Research and Evidence Based Practices (UD), 2011; Walkable and Livable Communities for All, 2012 and Innovation in Multi-Family Development – Green + Universal, 2012; A Quest for Balance: Designing for Sensory and Cognitive Diversity, 2013; Housing Concepts for Aging and Diversity, 2015.

- Institute for Human Centered Design:  Permanent Housing for Chronically Homeless Residents - Affordable, Accessible and Sustainable Design Solutions, April 2010; ADA Title II Requirements for Outdoor Spaces and Routes, 2014.

- American Institute of Architects:  St. Louis Chapter: ADAAG and Fair Housing, 2001 (Accessibility Regulations:  History, Rulemaking and Applications); Universal Design in Commercial and Public Spaces, 2006; Transition Plans Seminar, 2009; and on 2010 ADA Standards in 2010, 2011 and 2012.

- Barnes Jewish Hospital:  ADA 2010 Standards and Evidenced Based Healthcare Design Concepts, workshop series, 2012.

- Moscow Technical Institute, Perspectiva Inc., Moscow, Russia:  Accessible Design in Public Parks and Outdoor Spaces, 2014.

- Post-Polio Health International:   11th International Conference June 2014, Housing Design Requirements and Adaptations.

- Universal Design Summits I, II, III, IV and V:  September 2002, March 2006, May 2008, September 2010 and May 2013. Presenter:   Fair Housing Design Requirements, Universal Design Criteria for the Affordable Housing, Universal Design in Housing Rehabilitation, Universal Design in Transportation and Public Spaces, Universal Design

in Outdoor Public Spaces and Universal Design for Persons Experiencing Chronic Homelessness, and Design for Neuro and Sensory Diversity

- Washington University School of Medicine, Occupational Therapy Department:   ADA and Fair Housing Compliance Evaluation, 2013; Parking and Accessible Rights-of-Way, 2014

- City of Charlotte, NC:   Transition Plan Workshop – Current PROW Design Requirements and Problem Solving, September 2012 and December 2012

- TEAM Workshop (Missouri Department of Transportation):   Public Rights-of-Way Requirements (with Lois Thibault, Access Board and Melissa Anderson, MoDOT). 2012 and 2009.

- Lambert St. Louis Airport:   Engineering Staff Seminar.   Current ADAAG and ANSI A117 2003 requirements for Airport Public Spaces.   Coordination with security requirements.   October 2008.

- City of St. Louis Board of Public Service & Board of Public Safety – Building Inspector's and Plan Examiner's Seminar Series.   Basic Review of ANSI A117 1998, FHAAG and ADAAG requirements for Alterations and New Construction.   September 2008.   Two half-day (for inspectors) and one full day seminar (for plans examiners).   Summer 2009.

- City of St. Louis – Public Rights-of-Way Design Seminar.   Coordinated and co-taught two day workshop on PROW design.   December 2006. Presented half day seminars to BPS staff on current ADA and PROWAG requirements and enforcement issues in the public right-of-way.   August - September 2009.

- Metro St. Louis and the East West Gateway Coordinating Council:   a series of seminars and workshops on Design and Construction in the Public Right-of-Way.   2008 and 2009. A morning presentation on Accessible Pedestrian Signals and design for the blind, with Lukas Franck, Seeing Eye in February 2005.

- Construction Specifications Institute (April 2003) National Convention:   Accessibility - Integration into the Design and Documentation Process

- St. Louis Chapter, Construction Specification Institute (April 2003) Accessibility: Integration into the Design and Documentation Process.   Repeated at the Regional Convention, CSI, Kansas City 2004.

- The Specifier: *Accessibility: Design for Success*.   Published October, 2003.

- National ADA Symposium 2005, 2006 and 2008:  Presenter on Universal Design.

- Guest Lecturer:  Maryville University & Washington University School of Occupational Therapy:  Implementation of Universal Design and Current Accessibility Requirements.

- 8th Annual Access to Equal Justice Colloquium, Washington University School of Law (2008): FHAA and Disability Protections: panel discussion.

- Governor's Conference on Housing 2005, Panelist:  Fair Housing Act Compliance Strategies

- 2012 MoDOT Regional Conference and 2005 TEAM Transportation Fair:  Accessible Intersections and Site Design

Awards and recognition:

Accessibility and Universal Design Award:  United Cerebral Palsy Association, 2013
Architect and Designer Awards, St. Louis 2012 Second Place:  single family renovation.
Open Door Award:  Equal Housing Opportunity Council
Access to Participation Award: EMC, 2001
Most Enhanced Landmark:  Landmarks Association of St. Louis
                Government Pavilion
                Theresa School Lofts
                Mangrove Townhouse Apartments
                Garfield Place
St. Louis Design Awards 2007, First Place:  multifamily renovation, for Blu Condominiums.


Rates:

My hourly rate for consulting services is $175.00 per hour.  I invoice for travel expenses based on GSA per diem rates.  I charge the same hourly rate for study, site work and testimony.

 Depositions given in the past four years:

United States v. Noble Homes, Inc., et al, Case No. 5:13-CV-2659

United States v. Post Properties, Inc. et al., Case No. 1:10-CV-01866-RJL

Marla Kral, Plaintiff, vs. James D. Temperato, et al., Case No. 4:13-CV-1886

1431315.1

**6.0    Resources**

The information that I considered when developing the material in this report includes:

Third Amended Complaint, Class Action Complaint for Declaratory and Injunctive Relief in Joshua Dunn, et al. v. Jefferson Dunn, et al., 2:14-cv-00601-MHT-TFM (Middle District of Alabama

Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq*.

Americans with Disabilities Act, 28 C.F.R. part 35 (Title II) Nondiscrimination on the Basis of Disability in State and Local Government Services

Americans with Disabilities Act, 28 C.F.R., part 35, Appendix A to Part 35 – Guidance to Revisions to ADA Regulation on Nondiscrimination on the Basis of Disability in State and Local Government Services, September 15, 2010.

Americans with Disabilities Act, 28 C.F.R. part 35, Appendix B to the title II rule, the 1991 Section-by Section Analysis.

ADA Accessibility Guidelines for State and Local Government Facilities (C.F.R. part 1191)

Appendix A of the of the 1991 title III regulation containing the ADA Standards for Accessible Design as published in July 1991.

ADA and ABA Accessibility Guidelines for Buildings and Facilities, as published in the Federal Register July 1, 1994, 36 C.F.R. Parts 1190 and 1191.

ADA 2010 Standards for State and local governments including the Title II regulations at 28 C.F.R. 35.151 and the 2004 ADAAG at 36 C.F.R. part 1191, appendices B and D.

Alabama    Department    of    Corrections,    Facilities    page    on    the    website: http://www.doc.state.al.us/FacAddr.aspx

Alabama    Prison    Transformation    Initiative,    Information    Paper, http://www.doc.state.al.us/docs/Alabama%20Prison%20Transformation%20Initiative%2 0Information%20Paper.pdf

Carlson, Peter M., DPA, Prison and Jail Administration, Jones and Bartlett Learning, LLC**, 2015**

Deposition of John Warren Maner, II (February 27, 2015).

Deposition of Roger Alan Moseley (January 27, 2015).

Deposition of Christopher Shannon Gilbert (January 29, 2015).

Deposition of Dwight Hagood (January 28, 2015).

Deposition of Timothy Allen Sears (May 5, 2015).

Field notes and photographs taken during site visits.

International Building Code, 2003 edition, International Code Council.

Google Maps for aerial views of complexes.

Various maps of facilities provided by ADOC

Documents provided to me by counsel:

Shower Renovations for Atmore Work Release, Atmore, Alabama: Specifications dated September 29, 2014 (ADOC036533-ADOC036792) and Drawings September 29, 2014 (ADOC036793-A036796).

Installation of two accessible showers at Donaldson Correctional Facility: proposal dated August 11, 2014 (ADOC061765).

Dormitory at Easterling Correctional Facility, H dorms Additions/Alterations: Drawings dated August 12, 2009 (ADOC034532-ADOC034553).

Specifications for Repairs to Gymnasium, Easterling Correctional Facility, Clio, AL, July 6, 2012 (ADOC034344-ADOC034531)

Hamilton A&I Accessible walking track and new ramp (ADOC061767-ADOC061778) .

Renovation of K dormitory Kilby, Specifications dated July 3, 2013 (ADOC037214-ADOC037503), Drawings dated June 20, 2013 (ADOC037209-ADOC037213).

Kilby, H dormitory, Certificate of substantial completion, April 4, 2014 (ADOC038485).

Tutwiler ADA Renovations, Wetumpka, Alabama, Specifications dated June 2, 2011 (ADOC037504-ADOC037989), Drawings dated June 2, 2011 (ADOC037990-ADOC038030).

1431315.1