IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| JOSHUA DUNN, et al.,                )<br>                                    )<br>    Plaintiffs,                    )<br>                                    )<br>    v.                              )<br>                                    )<br>JEFFERSON S. DUNN, in his           )<br>official capacity as                )<br>Commissioner of                     )<br>the Alabama Department of           )<br>Corrections, et al.,                )<br>                                    )<br>    Defendants.                     ) | CIVIL ACTION NO.<br>2:14cv601-MHT<br>(WO) |

PHASE I OPINION AND ORDER ON NEED
FOR APPOINTMENT OF GUARDIAN AD LITEM

In the course of preliminarily approving the settlement of the Phase 1 claims in this case, see Phase 1 Prelim. Approval Order (doc. no. 532), the court ordered the parties to address "whether the court should appoint a guardian ad litem [GAL] to represent at the fairness hearing the interests of class members who are incompetent or otherwise unable to understand or comment on the terms of the settlement agreement." Phase 1 Suppl. Briefing Order (doc. no. 534) at 1-2.

The parties have submitted briefs, both taking the position that appointment of a GAL is not necessary. The court agrees; this short opinion explains why.

Federal Rule of Civil Procedure 17(c) states that "the court must appoint a guardian ad litem--or issue another appropriate order--to protect a[n] ... incompetent person who is unrepresented in an action." GALs have traditionally been appointed in class actions involving the rights of institutionalized people when concerns have arisen regarding the capacity of named class representatives to protect adequately the interests of unnamed class members. See N.O. v. Callahan, 110 F.R.D. 637, 648 (D. Mass. 1986) (Saris, M.J.) (citing cases). In this case, there is no suggestion that any of the named class representatives in Phase 1 are incompetent or unable to advocate on behalf of other prisoners with disabilities.

The question here is, instead, whether the interests of those class members unable to comment will be adequately represented at the hearing. The court is

aware of no case law suggesting that a GAL cannot be appointed to represent the interests of incompetent class members, even though they are definitionally 'represented' by named plaintiffs. A finding that competent named plaintiffs are adequate representatives--for purposes of Federal Rule of Civil Procedure 23(a)(4)--of a class that includes some incompetent members is in no way inconsistent with a finding that a GAL should be appointed to advise the court as to whether those incompetent class members' interests will fairly be served by a proposed settlement agreement, just as a finding of Rule 23(a)(4) adequacy does not obviate the need for a fairness hearing at which competent class members--though 'represented' in one sense by named plaintiffs--can themselves be heard.

Although defendants contend, and the court has no reason to doubt, that class counsel will "represent and protect the interests of [those] putative class members ... who may have mental or cognitive

disabilities that could limit their ability to appreciate the import of the [settlement]," Defs.' Notice of Resp. (doc no. 531) at 1, there is authority to suggest that appointment of an independent GAL who "does not actively represent" class members in the litigation may sometimes be desirable in order to afford unsophisticated or incompetent class members "additional assurance that their interest will be adequately protected." In re Asbestos Litig., 90 F.3d 963, 972 (5th Cir. 1996), judgment vacated on other grounds sub nom. Flanagan v. Ahearn, 521 U.S. 1114 (1997); see also N.O., 110 F.R.D. at 650 (raising the "concern" that the proposed GAL had been "inextricably involved in the prosecution of" the case and would therefore "serve more in the capacity of another attorney than as a next friend of the attorney's clients"); but see Institutionalized Juveniles v. Sec'y of Pub. Welfare, 758 F.2d 897, 925-26 (3d Cir. 1985) (explaining that class counsel was appointed by the court to serve as a GAL and that "[t]his status was

4

conferred upon him to facilitate his communication with class members who were institutionalized and sometimes suffering from disabilities ... [and] not intended to confer additional duties upon him beyond his obligations as class counsel"). In some instances, then, appointment of a GAL might be warranted to ensure that members of a class unable to speak for themselves have a wholly independent mouthpiece, and that their particular concerns are presented squarely for the court's consideration in fulfilling its "'fiduciary duty' toward absent class members." William B. Rubenstein, Newburg on Class Actions § 13:40 (5th ed.) (discussing the appointment of adjuncts to assist the court in assessing the fairness of a class settlement).

Plaintiffs point out that this court did not appoint a GAL to represent incompetent class members in a previous class action challenge regarding the State's mental health and mental retardation system. However, the court then explained, in line with its reasoning in this opinion, that "a court should be even more

5

circumspect about accepting a settlement where ... members of the plaintiff class are not themselves capable of assessing the settlement and voicing their views on whether it is fair, reasonable and adequate, and the court must therefore rely on comments from such secondary sources as public interest groups and organizations"; indeed, the court relied heavily on such input in deciding whether to approve the settlement. Wyatt ex rel. Rawlins v. Wallis, 1986 WL 69194, at *3 (M.D. Ala. Sept. 22, 1986) (Thompson, J.); see also William B. Rubenstein, The Fairness Hearing: Adversarial and Regulatory Approaches, 53 UCLA L. Rev. 1435, 1450-52 (2006) (discussing the related roles that public interest groups and court-appointed guardians can play in monitoring the fairness of class settlements).

That said, this is something of a special case because of the involvement of the Alabama Disabilities Advocacy Program (ADAP), Alabama's designated protection and advocacy organization (P&A). Under

6

federal law, P&As are afforded extensive investigatory and oversight powers, and also "have the authority to pursue legal, administrative, and other appropriate remedies or approaches to ensure the protection of, and advocacy for, the rights of such individuals within the State" with disabilities.  29 U.S.C. § 794e(f)(3) (disabilities generally); see also 42 U.S.C. § 15043(a)(2)(A)(i) (covering developmental disabilities); 42 U.S.C. § 10805(a)(1)(B) (covering mental illness).  In furtherance of its mandate, ADAP is a plaintiff in this case, and also serves as counsel to the individual named plaintiffs.  Moreover, if the court grants final approval of the settlement agreement, ADAP will be tasked with monitoring its implementation.  See Settlement Agreement (doc. no. 518) at 69-70.

Although it is an advocacy organization, ADAP does have a role separate from that of a GAL--indeed, the statutes empowering P&As at times require them to obtain consent from the "legal guardian, conservator,

7

or other legal representative" of a person with a disability in order to obtain access to his records. See 29 U.S.C. § 794e(f)(2); 42 U.S.C. § 15043(a)(2)(I); 42 U.S.C. § 10805(a)(4).

But this formal distinction aside, the court concludes that, practically speaking, ADAP is best placed to understand, articulate, and advocate vigorously for, the needs of prisoners with disabilities that make it difficult or impossible for them to advocate for themselves. As plaintiffs note, it would be extremely difficult for a GAL to consult with those prisoners with disabilities unable to understand or comment on the settlement agreement, because one of the very problems to be ameliorated by the settlement agreement is the Alabama Department of Corrections' present failure adequately to identify and track prisoners with disabilities. Given this reality, ADAP's close familiarity with the particular needs of incarcerated people with disabilities will prove critical in enabling it to explain to the court whether

8

the settlement agreement is fair with respect to the class members at issue, and to respond meaningfully to any questions or concerns that may arise.

In sum, the court concludes that appointment of a GAL is not necessary in light of ADAP's participation in this litigation.  However, the court will instruct ADAP that it is to file a brief setting forth in detail its position as to why the settlement agreement promotes the interests, and fairly resolves the claims, of prisoners with cognitive and communication-related disabilities so severe that they would likely be unable to understand the terms of the agreement or submit intelligible comments on them.


***

Accordingly, it is ORDERED as follows:

(1) The court will not appoint a guardian ad litem at this time in this litigation.

(2) By no later than August 17, 2016, plaintiff Alabama Disabilities Advocacy Program is to file a

9

brief setting forth in detail its position as to why the settlement agreement promotes the interests, and fairly resolves the claims, of prisoners with cognitive and communication-related disabilities so severe that they would likely be unable to understand the terms of the agreement or submit intelligible comments on them.

DONE, this the 7th day of July, 2016.

                                         /s/ Myron H. Thompson
                                  UNITED STATES DISTRICT JUDGE