IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| JOSHUA DUNN, *et al.*,         )<br>                                )<br>         **Plaintiffs**,         )<br>                                )<br> **v.**                         )<br>                                )<br> JEFFERSON S. DUNN, *et al.*,   )<br>                                )<br>         **Defendants.**        ) | CIVIL ACTION NO.:<br>2:14-cv-00601-MHT-TFM |

**JOINT RESPONSE TO COURT'S SECOND SUPPLEMENTAL BRIEFING ORDER**

Plaintiffs and the Alabama Department of Corrections ("ADOC") submit this joint brief in response to this Court's Second Supplemental Briefing Order of June 20, 2014. (Doc. 539.)

> **Question 1**: Does the arbitrator contemplated by the Parties' Amended Settlement Agreement have authority to enforce his own orders? (*See* Doc. 539 at 2–3)

**Short Answer**: No. Any decision by the arbitrator must be enforced through this Court's contempt power. However, as explained below, the Parties believe that any contempt proceedings will be relatively straightforward.

> **Question 2**: Will the arbitrator's conclusions in resolving a dispute under Section VII of the Amended Settlement Agreement be binding on the Court in deciding a motion to terminate or extend under 18 U.S.C. § 3626(b)? (*See* Doc. 539 at 3.)

**Short Answer**: The doctrine of collateral estoppel should make the arbitrator's findings of fact binding upon the court. However, because the arbitrator's conclusions of law will rarely, if ever, involve the same legal issue or the same parties, the arbitrator's conclusions of law should not be binding.

1

## BACKGROUND

Phase 1 of this action involves claims that the Alabama Department of Corrections ("ADOC") violated § 504 of the Rehabilitation Act as well as the Americans with Disabilities Act ("ADA"). On May 25, 2016, the Parties reached an agreement to settle fully all claims asserted as part of Phase 1. The Parties submitted the Amended and Restated Settlement Agreement (Doc. 518) ("Amended Settlement Agreement") the very next day, May 26, 2016.

The Amended Settlement Agreement contains two provisions that are relevant here. First, Section VII creates a dispute resolution procedure.[1]  As part of this dispute resolution process, the Parties agree to submit disputes related to the Amended Settlement Agreement to an arbitrator for resolution. (Doc. 518 at 70.) If the dispute is one that involves 12 or fewer inmates, the Parties have agreed that the arbitrator's resolution of the dispute shall be final and binding. (*Id.* at 71.) If the dispute involves more than 12 inmates, then the arbitrator's decision may be appealed to this Court and will be reviewed under an abuse of discretion standard. (*Id.*)

Second, Section IX of the Amended Settlement Agreement permits early termination of the consent decree. (Doc. 518 at 73.) By its terms, the consent decree is to last six years and automatically terminate after that time.[2] However, ADOC is allowed to move to terminate the consent decree under 18 U.S.C. § 3626(b) after five years. Under the terms of the Amended Settlement Agreement, this Court can grant a motion for early termination only if it finds that ADOC is currently in substantial compliance with the terms of the Amended Settlement Agreement and has been in substantial compliance for the preceding 12 months. (*Id.* at 73.) Conversely if, after six years, the Plaintiffs believe that this Court's jurisdiction over the consent

---

[1] The parties are still working to memorialize the exact scope of the dispute resolution procedure.

[2] The Parties have previously agreed that this six year period does not violate the two-year sunset provision of the Prison Litigation Reform Act ("PLRA") (Doc. 560).

2

decree period should be extended, Plaintiffs may move for an extension. This Court may grant such an extension only if it finds that "based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation." 18 U.S.C. § 3626(b)(3).

On June 20, 2016, this Court asked the Parties to submit a joint brief in response to two questions about the above provisions. First, this Court asked whether the arbitrator would have authority to enforce his own orders. Second, this Court asked whether the arbitrator's findings would be binding upon the Court in deciding a motion to terminate or extend the duration of the consent decree. (Doc. 539 at 2–3.) This is the Parties' response.

## DISCUSSION

I. **The arbitrator would not have authority to enforce his own orders but would, instead, have to rely on the contempt power of this district court.**

The parties seek the entry of a consent decree that will have the force and effect of an injunction issued by this Court. In the Eleventh Circuit, a consent decree is enforced through the district court's contempt power. *See Reynolds v. McInnes*, 338 F.3d 1201, 1208 (11th Cir. 2003) (stating that "consent decrees, like all injunctions, are to be enforced through the trial court's civil contempt power"). The Eleventh Circuit has explained the procedures for enforcing a consent decree. First, a party must move the court to enter a show cause order why the offending party should not be held in contempt. *See Wyatt By & Through Rawlins v. Rogers*, 92 F.3d 1074, 1078 n.8 (11th Cir. 1996). If the court is satisfied that the moving party has established a violation, it should enter a show cause order and set a hearing. *Id.* The offending party would then have an opportunity to file a written response and explain why he or she should not be held in contempt.

*Id.*; *see Thomason v. Russell Corp.*, 132 F.3d 632, 634 n. 4 (11th Cir.1998) (describing contempt procedures); *Newman v. State of Ala.*, 683 F.2d 1312, 1318 (11th Cir. 1982) (same).

Assuming that the Court approves the Amended Settlement Agreement and enters the proposed consent decree, then that decree would have the same force and effect as an order of this Court. *See R.C. ex rel. Ala. Disabilities Advocacy Program v. Walley*, 390 F. Supp. 2d 1030, 1042-43 (M.D. Ala. 2005) ("A consent decree is a strange hybrid in the law. It is both a voluntary settlement agreement which could be fully effective without judicial intervention and a final judicial order placing the power and prestige of the court behind the compromise struck by the parties. A consent decree, therefore, is a settlement agreement subject to continued judicial policing. Once approved, the prospective provisions of the consent decree operate as an injunction.") (internal alterations, quotation marks, and citations omitted). In this case, the Amended Settlement Agreement provides that "[i]f the Parties are unable to resolve the issue(s) timely and satisfactorily, the Parties agree to present the issue(s) for binding arbitration" and that "[i]f the issue is one that impacts fewer than twelve (12) inmates, resolution through the arbitration process shall be the final resolution under the Amended Agreement." (*See* Doc. 518 at 70–71.) Assuming the Amended Settlement Agreement is approved and a final judgment entered, these provisions would have the effect of an injunction from this Court. Thus, if a party refused to obey the arbitrator, he or she would be in violation of an order of this Court. A party aggrieved by the noncompliance could move this Court for an order to show cause, and the offending party would have an opportunity to respond. This Court would then hold a show cause hearing. Upon a finding of noncompliance, this Court could enter an appropriate contempt sanction.

It is worth noting that the arbitrator's orders will presumably be clear and unambiguous. As such, this Court's inquiry at the show cause hearing will be straightforward in all but the most exceptional cases. The inquiry will be whether the allegedly offending party complied with the arbitrator's order. If this Court finds he has not, then that party would be in violation of Section VII of the Amended Settlement Agreement, which plainly requires the Parties to comply with the final decisions of the arbitrator.[3] It is also worth pointing out that, should the Parties disagree about what actions are sufficient to comply with the arbitrator's final decision, that dispute would itself be subject to arbitration under Section VII of the Amended Settlement Agreement. That will, of course, return the dispute to the very same arbitrator who issued the order in the first place and allow him to correct any ambiguities in his previous order. Therefore, few if any disputes will reach this Court without a clear directive from the arbitrator about what the offending party must or must not do.

Further, in any contempt proceeding, this Court would not have to consider whether the arbitrator's decision was wrong. The Federal Arbitration Act provides that a court may only review the decisions of an arbitrator "in very unusual circumstances."[4] *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 942 (1995). These grounds are specifically spelled out in the FAA: (1) corruption or fraud (2) evident partiality or corruption; (3) misconduct by the arbitrator in conducting the proceedings; or (4) where the arbitrator exceeds his powers or so imperfectly executes them such that a mutual, final, and definite award upon the subject matter submitted

---

[3] The Amended Settlement Agreement requires the Parties to comply with the decisions of the Arbitrator regardless of whether the decision affects 12 or more inmates. (Doc. 518 at 71.) The only caveat is that a decision affecting 12 or more inmates may be appealed to (and modified by) this Court. (*Id.*) Of course, if this Court modified the arbitrator's decision and a party refused to comply with this Court's modification, then it would necessarily follow that this Court could, after following the appropriate procedures, hold that party in contempt.

[4] The FAA applies here because the Amended Settlement Agreement is a written agreement to arbitrate that touches and concerns interstate commerce. *See* 9 U.S.C. § 1.

5

1463737.1

was not made. 9 U.S.C. § 10. As the Supreme Court has affirmed repeatedly, these exceptions are extremely narrow. *See Oxford Health Plans LLC v. Sutter*, 133 S. Ct. 2064, 2068 (2013). In fact, "*[i]t is not enough . . . to show that the [arbitrator] committed an error—or even a serious error.* Because the parties bargained for the arbitrator's construction of their agreement, an arbitral decision even arguably construing or applying the contract must stand, regardless of a court's view of its (de)merits." *Id.* (internal citations and quotation marks omitted). Accordingly, an offending party could not show "good cause" for refusing to comply by showing that the arbitrator made the wrong decision. As such, this Court's review at the show cause hearing should be straightforward.

II. **The doctrine of collateral estoppel should make the arbitrator's findings of fact binding on this Court but the arbitrator's conclusions of law would fail the first and fourth elements of the collateral estoppel analysis.**

The doctrine of collateral estoppel provides that an (1) identical issue that is (2) actually litigated and (3) is a critical and necessary part of the judgment is binding against a party that (4) had a full and fair opportunity to litigate that issue in the first action. *See Christo v. Padgett*, 223 F.3d 1324, 1339 (11th Cir. 2000). An arbitration order is entitled to the same collateral estoppel effect as a prior decision from a court. *See Blau v. Bill Heard Chevrolet Corp.-Orlando*, 422 B.R. 293, 304 (N.D. Ala. 2009) ("An arbitrator's order is just as binding on the parties as is a court order, that is, unless and until that order is set aside by a court of competent jurisdiction."); *Chorley Enterprises, Inc. v. Dickey's Barbecue Restaurants, Inc.*, 807 F.3d 553, 566 (4th Cir. 2015) ("Arbitration awards generally have the same preclusive effect as court orders . . . .").

Thus, assuming that the above requirements are met, issues that are decided by the arbitrator will be binding on this court. The Parties believe that issues of fact decided by the arbitrator will satisfy the above requirements in most situations. This conclusion depends on two assumptions: (1) the arbitrator will make only those factual findings that are critical and

6

necessary to his final decision and (2) the arbitrator will grant the parties a full and fair opportunity to be heard on all issues. If these assumptions are met, then an identical factual issue addressed in an earlier arbitration will be binding on this Court in deciding a motion to terminate.[5]

During the status conference on July 11, 2016, the Parties suggested that an example of a finding of fact that might be binding—specifically, that ADOC had failed to appoint an ADA Coordinator at a particular facility. However, this is an overly simplistic example which, as the Court pointed out, would essentially dictate the legal conclusion to be drawn from that factual finding. A better example would be a situation where an inmate alleged that the ADA Coordinator failed to perform a specific function as to that particular inmate. For example, the Amended Settlement Agreement provides that the ADA Coordinator for each facility shall "receive and respond to all ADA Request Forms for that facility." (Doc. 518 at 48.) In this example, an inmate, Mr. Jones, may allege that he submitted an ADA Request Form seeking a cane but that he received no response. The ADA Coordinator may argue that Mr. Jones never submitted an ADA Request Form. If this dispute is submitted to arbitration,[6] a finding by the arbitrator that Mr. Jones did not submit the form (or vice versa) would be binding on this Court.

It is important to note the limited effect of this factual finding. On a motion to terminate, both Plaintiffs and the ADOC will almost certainly rely on statistical evidence of system-wide compliance or noncompliance rather than evidence particular to a single inmate. For example,

---

[5] Collateral estoppel is an affirmative defense and must be raised. If the ADOC elected not to raise the defense of collateral estoppel in supporting a motion to terminate, then the defense could be deemed waived. In that situation, this Court potentially would be free to revisit the arbitrator's factual determinations.

[6] As discussed at the telephone conference on July 11, 2016, the Parties are still identifying the matters that should be submitted to arbitration. In using this example, the parties are not representing that this type of issue is one that must or should be submitted to arbitration. Instead, this example is merely intended to show how a factual issue might arise that would trigger the doctrine of collateral estoppel.

1463737.1

ADOC may argue that, system-wide, there were ten ADA Request Forms submitted and that ADOC successfully responded to all ten of them. Plaintiffs may counter that there were actually twenty ADA Request Forms submitted and that ADOC just ignored and/or did not report ten of them. In this situation, Plaintiffs would be collateral estopped from arguing that ADOC had ignored Mr. Jones' request because the arbitrator found that Mr. Jones did not actually submit one. However, Plainitffs could still argue that Mr. Jones is an inmate that was entitled to a cane under the ADA, that ADOC had an affirmative obligation to identify his disability and provide him with a cane, and that ADOC's failure to identify Mr. Jones' disability shows that ADOC was not in compliance with the terms of the Amended Settlement Agreement.[7] Additionally, the arbitrator's findings as to Mr. Jones would not prevent Plaintiffs from making the same argument as to other inmates (provided the arbitrator has not found that these other inmates also failed to submit ADA Request Forms).

Conversely, the Parties believe that the arbitrator's conclusions of law would not be binding under the doctrine of collateral estoppel for at least two reasons. First, in the above example, the arbitration involving Mr. Jones and the ADOC would not include the entire class. Mr. Jones, then, would be the only person who had a full and fair opportunity to litigate the legal questions in the arbitration, which would mean that element four would be lacking for the remaining class members.[8]

Second, the legal issues presented on a motion to terminate will almost always be different than the legal issue presented in an arbitration. The court's inquiry on a motion to

---

[7] ADOC does not agree that it would have an affirmative obligation to identify Mr. Jones' disability or that its failure to identify that disability and provide an appropriate accommodation would be a violation of the ADA. However, ADOC does agree that this argument would, in this situation, not be barred by the doctrine of collateral estoppel.

[8] A different result is reached for conclusions of fact because the other class members would lack standing to press Mr. Jones' claim that he did (or did not) submit the ADA Request Form.

1463737.1

terminate or extend would center on ADOC's present compliance with the ADA and Rehabilitation Acts for the Phase 1 claims and whether the consent decree extends no further than necessary to correct any existing violations. *See* 18 U.S.C. § 3626. For example, the issue might be: is ADOC currently violating the ADA and/or the Amended Settlement Agreement because the ADA Coordinators are refusing to consider properly submitted ADA Request Forms. The legal conclusion reached in Mr. Jones's arbitration—that there was no violation of the Amended Settlement Agreement or the ADA because Mr. Jones did not, in fact, submit a request form—would be a different legal issue and, therefore, would fail element one of the collateral estoppel analysis.

Finally, there is a possibility that the arbitrator's conclusions of fact would not satisfy the collateral estoppel analysis. For instance, in the example involving Mr. Jones, the arbitrator may find that the ADA Coordinator is fully trained and effective. Arguably, this finding would not be critical or necessary to the arbitrator's factual finding that Mr. Jones did not submit an ADA Request Form. In that situation, the arbitrator's findings of fact would not be binding on this Court. However, for the reasons discussed above, the Parties believe that such a situation will be the exception rather than the rule. Therefore, the Parties believe that the arbitrator's findings of fact will be binding on this Court in deciding a motion to terminate but that the arbitrator's conclusions of law will not.

Respectfully submitted, this the 15th day of July, 2016.

| | |
|---|---|
| */s/ John G. Smith* | */s/ William Van Der Pol (w/permission)* |
| One of the Attorneys for Alabama Department of Corrections | One of the Attorneys for Plaintiffs |

**OF COUNSEL**:

David R. Boyd
John G. Smith
John W. Naramore
BALCH & BINGHAM LLP
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (866) 316-9461
dboyd@balch.com
jgsmith@balch.com
jnaramore@balch.com

Michael L. Edwards
J. Eric Getty
Susan Nettles Han
Steven C Corhern
BALCH & BINGHAM LLP
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 488-5708
medwards@balch.com
egetty@balch.com
shan@balch.com
scorhern@balch.com

**OF COUNSEL:**

William Van Der Pol
J. Patrick Hackney
Glenn N. Baxter
ALABAMA DISABILITIES ADVOCACY PROGRAM
University of Alabama
500 Martha Parham West, Box 870395
Tuscaloosa, Alabama 35487-0395
wvanderpoljr@adap.ua.edu
jphackney@adap.ua.edu
gnbaxter@bama.ua.edu

**CERTIFICATE OF SERVICE**

      I hereby certify that on July 15, 2016, a copy of the above and foregoing was filed with the United States District Court for the Middle District of Alabama using the CM/ECF system which sent notification to all counsel of record.

Maria V. Morris
Ebony Glenn Howard
Latasha McCrary
Rhonda C. Brownstein
J. Richard Cohen
Brooke Menschel
Jaqueline Aranda Osorno
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, Alabama 36104
maria.morris@splcenter.org
ebony.howard@splcenter.org
latasha.mccrary@splcenter.org
rhonda.brownstein@splcenter.org
richard.cohen@splcenter.org
brooke.menschel@splcenter.org
jaqueline.aranda@splcenter.org

Miriam Haskell
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037
Miami, Florida 33137
miriam.haskell@splcenter.org

Eunice Cho
Southern Poverty Law Center
1989 College Ave. NE
Atlanta, Georgia 30317
eunice.cho@splcenter.org

William Van Der Pol
J. Patrick Hackney
Glenn N. Baxter
ALABAMA DISABILITIES ADVOCACY PROGRAM
University of Alabama
500 Martha Parham West, Box 870395
Tuscaloosa, Alabama 35487-0395
wvanderpoljr@adap.ua.edu
jphackney@adap.ua.edu
gnbaxter@bama.ua.edu

Andrew Philip Walsh
William Glassell Somerville III
Patricia Clotfelter
Lisa Wright Borden
BAKER DONELSON BEARMAN CALDWELL
& BERKOWITZ PC
420 20th Street North, Suite 1400
Birmingham, Alabama 35203
awalsh@bakerdonelson.com
wsomerville@bakerdonelson.com
pclotfelter@bakerdonelson.com
lborden@bakerdonelson.com

Brent L. Rosen
BAKER DONELSON BEARMAN CALDWELL
& BERKOWITZ PC
614 S. Hull Street
Montgomery, Alabama 36104
brosen@bakerdonelson.com

Anil A. Mujumdar
Gregory M. Zarzuar
Diandra S. Debrosse
ZARZAUR MUJUMDAR & DEBROSSE
2332 2nd Avenue North
Birmingham, Alabama 35203
anil@zarzaur.com
gregory@zarzaur.com
fuli@zarzaur.com

1463737.1

Deana Johnson
Brett T. Lane
Counsel for MHM Services, Inc.
1447 Peachtree Street NE
Suite 500
Atlanta, GA 30309
djohnson@mhm-services.com
btlane@mhm-service.com

William R. Lunsford
Matthew B. Reeves
Melissa K. Marler
Stephen C. Rogers
**MAYNARD COOPER & GALE PC**
655 Gallatin Street
Huntsville, AL 35801
blunsford@maynardcooper.com
mreeves@maynardcooper.com
mmarler@maynardcooper.com
srogers@maynardcooper.com

Michael L. Edwards
J. Eric Getty
Susan Nettles Han
Steven C Corhern
**BALCH & BINGHAM LLP**
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 488-5708
medwards@balch.com
egetty@balch.com
shan@balch.com
scorhern@balch.com

Joseph Gordon Stewart, Jr.
Alabama Department of Corrections
P.O. Box 301501
Montgomery, AL 36130
joseph.stewart@doc.alabama.gov

Anne Adams Hill
Elizabeth Anne Sees
Alabama Department of Corrections
301 South Ripley Street
Montgomery, AL 36104
anne.hill@doc.alabama.gov
elizabeth.sees@doc.alabama.gov

Mitesh B. Shah
Mitchell D. Gregg
Bryan A. Coleman
Evan P. Moltz
**MAYNARD COOPER & GALE PC**
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203
mshah@maynardcooper.com
mgreggs@maynardcooper.com
bcoleman@maynardcooper.com
emoltz@maynardcooper.com

David R. Boyd
John G. Smith
John W. Naramore
**BALCH & BINGHAM LLP**
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (866) 316-9461
dboyd@balch.com
jgsmith@balch.com
jnaramore@balch.com

*/s/ John G. Smith*
Of Counsel

12

1463737.1