IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

JOSHUA DUNN, et al.,           )
                               )
      Plaintiffs,              )
                               )      CIVIL ACTION NO.
      v.                       )      2:14cv601-MHT
                               )          (WO)
JEFFERSON S. DUNN, in his      )
official capacity as           )
Commissioner of                )
the Alabama Department of      )
Corrections, et al.,           )
                               )
      Defendants.              )

PHASE 2 DISCOVERY OPINION AND ORDER

The plaintiffs in this putative class-action
lawsuit are dozens of state prisoners and the Alabama
Disabilities Advocacy Program.  The defendants are the
Alabama Department of Corrections, its Commissioner,
and its Associate Commissioner of Health Services.  In
Phase 2 of this case, with which this opinion is
concerned, plaintiffs assert the following claims:
constitutionally inadequate medical and mental-health
treatment in Alabama prison facilities, involuntary
medication without due process, and discrimination

against prisoners with mental disabilities.  They rely with respect to these claims on the Eighth and Fourteenth Amendments (as enforced through 42 U.S.C. § 1983), the Americans with Disabilities Act (42 U.S.C. §§ 12131-12134), and § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794).  Jurisdiction is proper under 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).

This case is currently before the court on plaintiffs' motion to compel supplementation of certain documents from defendants.  Upon consideration of the briefing submitted by both parties and the arguments offered orally at a status conference held on the record on July 20, 2016, and for the reasons below, this motion will be granted.

At issue are two categories of documents.  First, plaintiffs contend that they are entitled to production of certain peer-review documents pertaining to healthcare providers employed by the Department's medical contractor, Corizon Health, Inc.  Second,

2

plaintiffs contend that they should have received copies of, or at least the opportunity to review, mortality reviews produced by Corizon after three named plaintiffs died during the course of discovery.[1]

The court will address each issue in turn.

## I.   Peer-Review Documents

The crux of the first dispute is this: both parties agree that Corizon, the Department's medical contractor, has produced credentialing files related to three categories of healthcare providers it employs in Department facilties: physicians, mid-level providers,[2] and dentists.   Some of these credentialing files have contained peer-review documents, but others have not.

_____

1.   In addition, plaintiffs' motion to compel requested supplementation of medical charts or confirmation that production was complete.   As the parties have settled this matter, see Phase 2 Discovery Order (doc. no. 573) at 3-4, it need not be addressed by the court.

2.   Although the court is uncertain as to which providers are "mid-level," the parties do not appear to disagree on this point.

Plaintiffs argue that they are entitled to receive all peer-review documents related to these providers, whether they are contained in credentialing files or not. Defendants contend that, per the terms of the agreement between the parties and Corizon, Corizon was required to produce only those peer-review documents contained in credentialing files, and only if the peer-review files pertained to physicians or mid-level providers (not to dentists).

Plaintiffs requested peer-review documents and credentialing files in separate requests for production (RFPs)--95 and 246, respectively. Neither request was limited to certain categories of personnel. The parties and Corizon agreed that Corizon would produce the credentialing files of "physicians and mid-level providers" working in Department facilities, except that the production would omit reports from the National Practitioner Data Bank and documents related to malpractice insurance. Joint Report on the Status of Disc. Disputes (doc. no. 336) at 3. In an email

exchange, counsel for defendants and Corizon represented to plaintiffs' counsel that "the peer review documents are part of the credentialing files and will be produced." Correspondence of Counsel (doc. no. 570-1) at 2.

Then, Corizon produced credentialing files for a number of doctors, mid-level providers, and also dentists. None of the dentists' files included peer-review documents other than certifications that peer review had occurred; some of the physicians' and mid-level providers' files contained peer-review documents, while many others did not.[3]

The question whether the complete peer-review documents for physicians and mid-level providers should be produced is quite easy to resolve: plaintiffs reasonably relied on defense counsel's representation

---

3. Although defendants do not renew the argument that peer-review documents are privileged, the court notes that any such privilege has been waived by voluntary production of some of these documents.

(and apparent good-faith belief)[4] that these documents were contained within credentialing files, and believed that they would therefore be produced according to the parties' agreement.   They declined to pursue their separate request for peer-review documents any further based on the understanding that it was functionally subsumed within the request for credentialing files. Plaintiffs are entitled to these documents.

The exclusion of dentists' peer-review files poses a closer question.   On the one hand, the court cannot avoid the conclusion that plaintiffs' counsel simply slipped up; they mistakenly agreed to production of credentialing files (including the peer-review

---

4.   The court takes pains to note that it does not suggest that counsel for defendants and Corizon acted improperly in making this representation; it seems that his understanding at the time was that peer-review documents would always be contained within the relevant credentialing files.   Indeed, during a discussion of this issue at a status conference held on the record on July 20, 2016, he stated to the court that he is uncertain why some peer-review documents are held separately from, and not included within, credentialing files.   Although his prior representation was by all (continued...)

documents they believed to be contained within them)
only for physicians and mid-level providers, and failed
to clarify that they also sought these files for
dentists.   On the other hand--and critically--it
appears very likely that defendants and Corizon did not
themselves intend the omission, as Corizon did in fact
produce the credentialing files for dentists along with
the files for physicians and mid-level providers.
There is certainly no indication anywhere in the record
or in the parties' representations that the exclusion
of dentists was the subject of any negotiation or even
discussion.

Indeed, confusion as to the scope of the term
"physicians" seems quite reasonable.   Although the
parties do not address the definitions of "physician"
and "dentist" under Alabama state law, the degree of
their overlap is less than clear, and the Alabama Code
alternately supports defendants' contention that the

---

accounts an honest mistake, plaintiffs cannot fairly be
penalized for relying on it.

7

category "physician" does not include the category "dentist" and plaintiffs' contention that it does. Although a "physician" is defined as a person "licensed to practice medicine" and a "dentist" is separately defined as a person "licensed to practice dentistry" for purposes of the section of the Code pertaining to medical-liability actions, 1975 Ala. Code § 6-5-481, another section of the Code, 1975 Ala. Code § 27-1-11, states that "[w]henever the terms 'physician' and/or 'doctor' are used in any policy of health or accident insurance ..., said terms shall include within their meaning those person licensed under and in accordance with Chapter 9 of Title 34 [pertaining to the licensure of dentists]." See also 42 U.S.C. § 1395x(r) (defining the term "physician," for purposes of Medicare, to mean "(1) a doctor of medicine or osteopathy legally authorized to practice medicine and surgery by the State in which he performs such function or action ..., [and] (2) a doctor of dental surgery or dental medicine

who is legally authorized to practice dentistry by the State in which he performs such function").

Although the language of the parties' agreement regarding credentialing files does not refer expressly to dentists, the court will order their production in light of the evidence suggesting that until the current dispute regarding peer-review documents arose, all involved drew no distinction between dentists and other providers. This decision is bolstered by the court's concern that the inadvertent exclusion of records pertaining to one category of providers could make it difficult to adjudicate putative class claims regarding dental care fairly, and might even hamstring the court in determining whether dental-care claims are common to a proposed class.

That said, the court finds that plaintiffs' inattentiveness to the details of their discovery agreement created the need for litigation of the issue whether dentists' records are to be produced. Therefore, the court will condition receipt of this

production on plaintiffs' payment to defendants of the costs of litigating this motion reasonably attributable to this portion of the dispute.

## II.  Mortality Reviews

The parties likewise identify two RFPs pertinent to the mortality reviews created after three of the named plaintiffs died.   First, in RFP 10, plaintiffs requested from defendants "all documents and communications relating to [the named] plaintiffs." Pls.' First Req. for Produc. of Docs. (doc. no. 87-3) at 10.   Second, in RFP 56, they requested from Corizon "all documents and communications relating to the ... mortality review process ... including but not limited to all minutes from the meetings regarding prisoners who have died between January 1, 2013 and the response date, the mortality and suicide reviews of their deaths, and all other death records."   Pls.' Mot. to Compel (doc. no. 362) at 4.

The parties and Corizon reached a mediated agreement with respect to RFP 56 (and numerous other discovery disputes). This agreement provided that plaintiffs would be permitted to select 25 names from a roster of prisoners who had died during the relevant time period, and would then be allowed to review, but not copy, the mortality reviews for these prisoners. See Ex. A to Mediation Agreement (doc. no. 362-5) at 2. The agreement did not address, or purport to resolve, RFP 10.  See Mediation Agreement (doc. no. 250-1).  The roster included the names of two of the three named plaintiffs at issue; the last one was still alive at the time.  Plaintiffs did not select either of the two deceased named plaintiffs, reportedly believing that their mortality reviews would be forthcoming separately, pursuant to RFP 10, because they were "documents ... relating to the named plaintiffs."[5]

---

5. Actually, by the time the agreement regarding RFP 56 was reached, these two deceased individuals had been dismissed as plaintiffs, because their claims for injunctive relief were now moot.  However, they were (continued...)

Subsequently, plaintiffs filed a motion to compel, contending that many of the 25 mortality reviews which had been produced for inspection were incomplete; this motion was resolved by agreement of the parties during a hearing.  <u>See</u> Mot. to Compel (doc. no. 362); Tr. of Hr'g on March 17, 2016 (doc. no. 401) at 97.

As for RFP 10, the parties memorialized no agreement in writing because, it seems, both believed they had no dispute regarding its scope: defendants agreed to "produce the non-privileged documents in its possession responsive to this Request."[6]  State's Objs. and Resps. to Pls.' First Req. for Produc. of Docs. (doc. no. 87-4) at 6-7.  Now, however, they disagree as

---

named plaintiffs at the time RFP 10 was served on defendants, and so plaintiffs apparently understood that defendants would produce any documents pertaining to them.

6.  Plaintiffs understood this to include documents in defendants' custody and control as well as those in their physical possession.  This understanding is reasonable, given that defendants would have no basis under Federal Rule of Civil Procedure 34(a)(1) for excluding documents not in their physical possession.

to whether mortality reviews relating to the deaths of named plaintiffs fall within the scope of this RFP.

Defendants first contend that plaintiffs failed specifically to request the named plaintiffs' mortality reviews; they point out that RFP 10 nowhere makes explicit reference to mortality reviews. Plaintiffs counter that defendants have, in response to this RFP and without objection, produced various sorts of documents referencing the named plaintiffs--such as medical records, incident reports, and inmate newsletters--even though these documents were likewise not enumerated in the general terms of the RFP. For example, plaintiffs were required to select a certain number of names from a list of prisoners who were treated at hospitals in order to view those prisoners' hospital records. This list included the names of some of the named plaintiffs, but plaintiffs did not select them for review; the named plaintiffs' hospital records were produced separately, pursuant to RFP 10. See Pls.' Reply (doc. no. 590) at 12. Hence, the court

concludes that these three mortality reviews were properly requested.

Defendants also argue that the mortality reviews do not fall within the scope of RFP 10 because they are privileged. This argument is unavailing: to the extent that defendants or Corizon have agreed to show a selection of these mortality reviews to plaintiffs' counsel and their experts, they have consented to a limited waiver of any privilege that might exist. Permitting review of three more files does not materially alter the scope of this disclosure. Furthermore, this court has already explained--in a lengthy opinion granting a motion to compel production of quality-assurance files maintained by another of the Department's contractors, MHM Correctional Services, Inc.--that Alabama's statutory peer-review privilege is inapplicable in this litigation.[7]   See Dunn v. Dunn, --

-------

7. The court also declined to recognize an analogous federal common-law privilege.

14

F. Supp. 3d --, 2016 WL 324990 (M.D. Ala. Jan. 27, 2016) (Thompson, J.).

Finally, defendants take issue with plaintiffs' alleged delay in raising this issue. However, given plaintiffs' stated belief that the mortality reviews at issue would be forthcoming, it appears to the court that they reasonably waited for the supplemental production of records related to the named plaintiffs they were promised--and received--in late May, before bringing this issue to the court's attention for mediation and then for adjudication.

The more troublesome question is whether, in resolving the request in RFP 56--for mortality reviews--defendants and Corizon put plaintiffs' counsel on notice that they were not planning separately to produce mortality reviews for deceased prisoners, such that plaintiffs' counsel should have recognized and raised this dispute at that time. Although the inclusion of the names of two deceased plaintiffs on the roster should have prompted diligent counsel to

clarify at that time whether defendants and Corizon intended to produce records of named plaintiffs' deaths even if they were not among the 25 names selected for review, the court cannot conclude that this failure represents a concession; instead, it appears to have been an oversight.

On balance, the court will exercise its "broad discretion in shaping the scope of discovery," Williams v. City of Dothan, 745 F.2d 1406, 1415 (11th Cir. 1984), to permit review--not copying--of these mortality reviews in light of (1) the significance of the evidence at issue to plaintiffs' case and (2) the importance of the civil-rights issues being litigated in this putative class action.

First, as plaintiffs explained during a status conference held on the record on July 20, 2016, this mortality-review evidence is potentially key to a portion of their case--they allege that the Department's inadequate systems for providing healthcare contribute to the deaths of prisoners

including their clients, and seek documents created by those responsible for that care identifying the causes of those deaths.  Because plaintiffs have substantially more evidence regarding the conditions suffered and treatment received by the named plaintiffs than they do for any other deceased prisoners, the mortality reviews for these particular prisoners are especially valuable.

Second, a liberal approach to adjudication of discovery disputes is warranted in cases like this one. This court has previously explained, in adjudicating another discovery dispute in this case, that the "'normally predominant principle of utilizing all rational means for ascertaining truth' ... is at its strongest in civil-rights cases." <u>Dunn</u>, 2016 WL 324990, at *8 (quoting <u>Adkins v. Christie</u>, 488 F.3d 1324, 1328 (11th Cir. 2007)).  "Federal policy favors broad discovery in civil rights actions.  <u>Kinoy v. Mitchell</u>, 67 F.R.D. 1, 12 (S.D.N.Y. 1975) [(Ward, J.)]. ...  [S]uits under 42 U.S.C. § 1983 should be resolved by a determination of the truth rather than a

determination that the truth shall remain hidden.  <u>Wood</u> <u>v. Breier</u>, 54 F.R.D. 7, 11 (E.D. Wis. 1972) [(Reynolds, J.)].   A most important fact to be considered in the determination as to whether particular evidence should be discovered is the importance of the evidence to the plaintiffs' case.  <u>Crawford v. Dominic</u>, 469 F. Supp. 260, 263 (E.D. Pa. 1979) [(Pollack, J.)].  ...  Mutual knowledge of all the relevant facts gathered by both parties is essential to proper litigation.  <u>Hickman v.</u> <u>Taylor</u>, 329 U.S. [495,] 507 [(1947)]."  <u>Inmates of Unit</u> <u>14 v. Rebideau</u>, 102 F.R.D. 122, 128 (N.D.N.Y. 1984) (Foley, J.).

However, the court finds that plaintiffs' failure to promptly clarify whether the mortality reviews of named plaintiffs would separately be produced created the need for litigation of this issue.  Therefore, the court will condition plaintiffs' ability to peruse these reviews on their payment to defendants of the costs of litigating this motion reasonably attributable to this portion of the dispute.

III.  Defendants' Possession, Custody, or Control

One final point requires some discussion.  Formally speaking, the pending motion to compel production was directed at defendants, and not at their contractor, Corizon.  The parties agree that the documents at issue were created by Corizon, and some of them may not be in the physical custody of defendants.  Defendants contend that these documents are not within their custody or control, but plaintiffs dispute this, pointing out that defendants appear to have a contractual right to obtain these files from Corizon.  See Pls.' Reply (doc. no. 590) at 4.

The court need not wade into the weeds on defendants' contractual rights, however, because defendants have manifested their ability to direct the production of the documents at issue, and indeed elided the distinction between the two entities for purposes of this discovery dispute.  The same lawyers represent Corizon and the Commissioner and Associate

19

Commissioner.   In their brief opposing this motion to
compel, defendants make representations on behalf of
Corizon ("The State and Corizon maintain that...");
describe the joint resolution of plaintiffs' requests
for production by defendants and Corizon ("[T]he State
and Corizon resolved..."); and explain that defendants
and Corizon jointly settled the dispute over and
produced the mortality reviews ("The State and Corizon
went to great cost..."; "[T]he State and Corizon only
agreed to a limited review..."). Defs.' Reply (doc.
no. 581) at 7 n.6, 9, 13, 15. Defendants even twice
describe the "self-critical analysis" and "quality
improvement reviews" in these documents as assessments
in which defendants and Corizon jointly engage. Id. at
17, 18. By the same token, Corizon produced
credentialing files in response to a request directed
at defendants, after the court previously made clear
that it was not interested in adjudicating
non-substantive disputes regarding whether requests or
subpoenas were properly directed to defendants or

Corizon.  Tr. of Hr'g on Feb. 8, 2016 (doc. no. 354) at 54 ("THE COURT: [I]t doesn't make any difference whether Corizon or ADOC has custody or control.  ...  I can just require that you [the plaintiffs] serve it [the request] on Corizon, but I would rather go ahead and just address the merits of any objection.").

* * *

Accordingly, it is ORDERED as follows:

(1) Plaintiffs' motion to compel (doc. no. 570) is granted as further set out below.

(2) By no later than August 3, 2016, defendants or non-party Corizon Health, Inc., are to produce all practitioner peer-review documents in their possession or control related to physicians, dentists, and mid-level providers, whether or not contained within a credentialing file, subject to the exceptions outlined in the parties' joint report (doc. no. 336 at 3), contingent on payment by plaintiffs' counsel of the attorneys' fees and costs of litigating the portion of

21

this motion pertaining to the inclusion of dentists. Defendants are allowed until August 17, 2016, to file a request for reimbursement pursuant to this paragraph.

(3) By no later than August 3, 2016, the parties and non-party Corizon are to confer and arrange a date and time prior to August 12, 2016, on which defendants or Corizon are to make available for review by plaintiffs' counsel and their experts the mortality reviews for the three formerly named plaintiffs who are now deceased, contingent on payment by plaintiffs' counsel of the attorneys' fees and costs of litigating the portion of this motion pertaining to mortality reviews. Defendants are allowed until August 17, 2016, to file a request for reimbursement pursuant to this paragraph.

DONE, this the 2nd day of August, 2016.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE