**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF ALABAMA**
**NORTHERN DIVISION**

| | |
|---|---|
| **JOSHUA DUNN,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| **v.** | ) **CIVIL ACTION NO.:** |
| | ) **2:14-cv-00601-MHT-TFM** |
| **JEFFERSON S. DUNN,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**REPLY TO DEFENDANTS' OPPOSITION TO**
**PLAINTIFFS' MOTION FOR LEAVE TO FILE**
**[PROPOSED] FIFTH AMENDED COMPLAINT**

**INTRODUCTION**

Defendants' opposition to Plaintiffs' Motion to Amend the Fourth Amended
Complaint (hereinafter "Complaint") rests on this notion that Plaintiffs have added
new legal claims to the Complaint. They point in many directions to support this
proposition; yet, they have failed to point the Court to the location of these new
claims in the one place where the alleged claims should be found: the Proposed Fifth
Amended Complaint. They haven't been able to point to these new legal claims,
because they don't exist.  The only thing that has changed is that Plaintiffs have
gathered evidence through discovery that supports their existing claims, their
experts have formed opinions based upon that evidence, and Defendants are
unhappy about the result.

Plaintiffs legal claims in this case have been and will continue to be based on (1) Defendants' failure to provide adequate medical and mental health care, (2) Defendants' failure to provide due process prior to involuntarily medicating prisoners, and (3) Defendants' violations of the rights of prisoners with disabilities. With no "new" legal claims afoot, Defendants' arguments fall flat.

Plaintiffs have asserted no new causes of action, and have made no material changes in the causes of action asserted. Defendants have long been aware of the factual allegations regarding the impact that understaffing of correctional staff, prison overcrowding and physical plant deficiencies have on health care. The Court should grant Plaintiffs leave to file the Proposed Fifth Amended Complaint.

## Argument

### I. The Complaint—as pled—sufficiently put Defendants on notice of the claims that are supported by evidence of understaffing and overcrowding.

Plaintiffs legal claims have been, remain, and will continue to be: (1) inadequate medical care under the Eighth and Fourteenth Amendments, Doc. 549-1 ¶¶ 446-448, (2) inadequate mental health treatment under the Eighth and Fourteenth Amendments, *id.* at ¶¶ 449-451, (3) deprivation of due process prior to involuntarily medicating prisoners, *id.* at ¶¶ 452-454, (4) violations of the rights of prisoners with disabilities under the Americans with Disabilities Act and § 504 of the Rehabilitation Act.

In the currently operative Complaint (and, indeed, in its previous iterations), Plaintiffs asserted that Defendants' policies and practices impeded timely access to health care.  The understaffing of correctional officers and prison overcrowding are relevant to Plaintiffs' claims for unconstitutional medical and mental health treatment in this regard. *See e.g.,* Doc. 666 at 19 (stating that "the Complaint alleges that prisoners' access is impeded by correctional staff") (citing Doc. 549-1 ¶¶ 202, 204, 205, 287). When Plaintiffs alleged that Defendants "have a policy and practice of allowing correctional officers to deny or delay access to medical care," they put Defendants on notice that the policies and practices related to correctional staff would be relevant to Plaintiffs claims for inadequate medical and mental health treatment. Notice was also provided through numerous allegations regarding delays in access to medical or mental health care. *See, e.g.*, Doc. 549-1 ¶¶ 204-05, 287-88. Moreover, Plaintiffs sought relief in the form of requiring Defendants to provide "*timely access* to qualified and competent clinicians," "[p]olicies and practices that provide *timely access to health care*," "*timely* and competent responses to health care emergencies*,*" "*timely* . . . distribution of medications and supplies," "*[t]imely access* to competent care for chronic diseases," "basic sanitary conditions that do not promote the spread or exacerbation of diseases or infections," "*timely access* to necessary treatment . . . including medication, therapy, suicide prevention," and "regular assessment of . . . services, procedures, and activities designed to improve

outcomes, and *to identify and correct* errors or *systemic deficiencies*." Doc. 549-1 ¶ 462 (emphasis added.)  These allegations notified Defendants that Plaintiffs sought relief for policies and practices that impeded timely access to care and for conditions of confinement that contribute to the spread of diseases and infections.

Moreover, the facts asserted in the complaint concerning inadequate care received by individual named plaintiffs often included allegations of delays in receiving needed care. *See, e.g.*, Doc. 549-1 ¶¶ 204-05, 287-88. Named plaintiffs also spoke in their depositions about correctional officers impeding access to care. *See, e.g.*, Ex. 1 (Excerpt from Deposition of Joshua Dunn) at 161:10-163:11; Ex. 2 (Excerpt from Deposition of Robert "Myniasha" Williams) at 93:18-98:17. During the course of discovery, plaintiffs consistently sought to examine the issues of timely and effective access to care that were raised in the Complaint from the beginning of this case. They inquired about barriers to care in depositions, and obtained testimony from ADOC, Corizon and MHM employees that a lack of sufficient custody staffing to escort prisoners to receive care or to provide security for out of cell and group mental health treatment, for example, was a significant barrier that resulted in delays and failures to provide care. For example, Teresa Houser, Program Director of MHM, testified:

Q. It sounds like these issues that you raised of the structured out of cell time, the cuffing of inmates when they come out of their cells in the SU, and the adequacy of security are all very closely interrelated?

A. Yes.

Ex. 3 (Excerpts from April 22, 2016 deposition of Teresa Houser) at 70:6-11. *See generally* Ex. 3. These facts point to both understaffing of custody officers and overcrowding (too few officers to supervise too many prisoners).

Plaintiffs also requested documents from Defendants, many of which confirmed that overcrowding and understaffing, often as interacting factors, were a substantial contributor to impeding timely access to care. *See, e.g.*, Exs. 1-2 to Doc. 666 (filed under seal). In conducting inspections of facilities and reviewing documentation, Plaintiffs' experts also observed that conditions of overcrowding, understaffing and deficiencies in the facilities themselves contributed to the lack of timely access to care about which Plaintiffs complained. *See generally* Doc. 555-2; *see* Doc. 555-6 at 29-66.

Plaintiffs also directly alleged connections between prison overcrowding[1] and Defendants' unconstitutional provision of medical and mental health care. *See* Doc. 666 at 20 (noting, among other things, the Complaint allegations that state "the

---

[1]   Defendants have not addressed Plaintiffs' assertion that conditions of segregation are well pled in the Complaint. *See generally* Doc. 616. Plaintiffs maintain their position that Defendants policies and practices regarding the segregation of prisoners is relevant to Plaintiffs claims, as pled in the Complaint. *See, e.g.*, Doc. 666 at 20-21; Doc. 616 at 8-9.

conditions in the prisons make the spread of disease nearly inevitable. The prisons are *grossly overcrowded*. Prisoners in every facility report the presence of vermin, especially rats and spiders. The vermin live in the housing units and in the kitchens. In various prison units, birds enter and leave droppings") (citing Doc. 549-1 ¶¶ 6, 57 187) (emphasis added).

Rule 8 does not require more from Plaintiffs, and it certainly does not require that they amend their complaint whenever the process of discovery produces evidence in support of their claims. The Supreme Court has made clear that Rule 8 does not impose a heightened standard of fact pleading, but serves to prevent "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).   As Defendants' aptly note, the legal claims asserted here are supported by "more than 400 paragraphs" of allegations. Doc. 690 at 8; *see* Doc. 549-1 ¶¶ 1-460.

Defendants would apparently require Plaintiffs to either divine in advance of discovery what additional factual information may be relevant to their legal claims, or to amend their complaint whenever they discover those facts. *See* Defendants' Joint Response, Doc. 690 at 9 (citing to *Burger King v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999) and *Lord v. Fairway Elec. Corp.*, 223 F. Supp. 2d 1270, 1275-77 (M.D. Fla. 2002), cases that do not construe Rule 8). Yet, there is no legal ground for Defendants' purported standard; indeed, the Rule 8 pleading standard

was designed to give Plaintiffs a full and fair opportunity to present their case. *See, e.g.*, *Arthur v. Thomas*, 674 F.3d 1257, 1263 (11th Cir. 2012) (Rule 8 requires "only enough facts to state a claim to relief that is plausible on its face"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (Rule 8 does not require "heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face").

Certainly, as *Twombly* holds, a complaint must offer more than "labels and conclusions." *Twombly*, 550 U.S. at 555. It must contain "enough fact to raise a reasonable expectation that *discovery will reveal evidence*" in support of Plaintiffs' allegations. *Id.* at 556 (emphasis added). That is precisely the case here—Plaintiffs included many facts in their Complaint that alerted Defendants that Plaintiffs claimed the provision of unconstitutional care, that those claims included delays in receiving necessary care, and that they would seek to require Defendants to provide timely access to care. Discovery proceeded on those claims, and evidence was uncovered that demonstrated the policies, practices and actions of Defendants that underlie their failure to provide timely access to care. Those policies, practices and actions include a lack of adequate staffing that leaves prisoners unable to access care, overcrowded prisons that overburden the available staff and increase demand for the medical care that is available, and conditions that exacerbate the spread of diseases and infections.

Individual Plaintiffs alleged delays in their access to care, but as prison inmates, they have no way to know why timely access to care was a problem.  It was only through discovery that counsel for Plaintiffs was able to obtain that evidence. Two weeks after *Twombly,* the U.S. Supreme Court decided *Erickson v. Pardus*, 551 US 89 (2007), in which the plaintiff inmate alleged that a prison violated his constitutional rights by discontinuing his hepatitis C treatment after wrongly determining that he was using drugs.  The district court had dismissed his complaint, calling his allegations "conclusory." *Id.* at 92. The district court said that plaintiff failed to allege harm that was specifically caused by discontinuance of the treatment as opposed to the effects of the disease itself.  The Supreme Court reinstated the claim, finding that "[s]pecific facts are not necessary; the statement need only 'give the defendant fair notice of what the ... claim is and the grounds upon which it rests.'" *Id.* at 93 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). The many allegations of delays in access to care, and numerous demands for relief in the form of timely access to care, adequately notified Defendants that the causes of delays in access to care would be an area of inquiry, and that Plaintiffs would seek and use evidence in that regard.

**II.  Leave should be granted under Rule 15, because Plaintiffs have submitted the proposed, minimal changes in direct response to Defendants' accusations about two of Plaintiffs' proposed experts**

       **A. The proposed changes make no material changes to Plaintiffs' claims for relief**

As discussed above, Plaintiffs do not seek to assert any new causes of action in the Proposed Fifth Amended Complaint. Defendants fail to cite any paragraph in the Proposed Fifth Amended Complaint where Plaintiffs have alleged constitutional violations other than their claims for the inadequate provision of health care, or the prayers for relief to address the inadequate provision of health care, which have been extant since the filing of this case.[2] *See generally* Doc. 690; *see also* Doc. 666 at 2-3 (providing detail on the legal claims as presented in the original complaint and the ensuing amendments). If anything, the proposed amendments to the Complaint make clear that the legal claims in this case remain unchanged. Nowhere have Plaintiffs added a new legal basis for relief. *See generally* Doc. 666-1. The changes that have been made to the allegations, *see* Doc. 666-1 ¶¶ 181, 202, 294, serve only to enhance information already present therein. *See infra* at Section I. First, the amendments to Paragraph 181 of the Proposed Fifth Amended Complaint fall under Plaintiffs' allegations that Defendants are deliberately indifferent to Plaintiffs' serious medical needs, Doc. 549-1 Sec. I at 32, and the language added by Plaintiffs—"the overcrowding of ADOC facilities creates opportunities for rapid contagion"—reinforces information already stated in the Complaint. Doc. 549-1 ¶

---

[2]     Defendants appear to argue that Plaintiffs have alleged claims against them for unconstitutional conditions. *See, e.g.*, *Farmer v. Brennan*, 511 U.S. 825 (1994); *Gerstein v. Pugh*, 420 U.S. 103 (1975). Plaintiffs are **not** asserting claims against Defendants alleging that prisons conditions are an independent violation of Plaintiffs' legal rights. While the conditions of overcrowding and understaffing may well be separate violations of Plaintiffs' constitutional rights, those violations are not causes of action in this case. Instead, those conditions are relevant only to the extent they impact the provision of health care.

187 ("[T]he conditions in the prisons make the spread of disease nearly inevitable.

The prisons are grossly overcrowded."). Second, the amendments to Paragraph 202

of the Proposed Fifth Amended Complaint also come under Plaintiffs' allegations

that Defendants are deliberately indifferent to Plaintiffs' serious medical needs:

> The OFFICIAL CAPACITY DEFENDANTS have a policy and practice of allowing correctional officers to deny or delay access to medical care, whether by individual officer's affirmative actions or the systemic understaffing of custodial staff who are necessary to prisoners' access to treatment. The OFFICIAL CAPACITY DEFENDANTS have not adequately trained security and health care staff on how to handle health care emergencies, and as a result of this failure to respond properly and timely to emergencies, prisoners suffer avoidable harm and injuries, including unnecessary deaths. Correctional staff make critical initial decisions about the medical care needed. Understaffing of correctional staff by the OFFICIAL CAPACITY DEFENDANTS leads to prisoners missing off-site medical appointments and prisoners in segregation not receiving medical treatment.

Doc. 666-1 ¶ 202 (amendments underlined). These amendments enhance the

allegations regarding Defendants' policy and practice of "allowing correctional

officers to deny or delay access to medical care" by explicating ways in which those

policies and practices are an obstacle to treatment. Finally, the addition of paragraph

294, which comes under Plaintiffs' allegations that Defendants fail to provide

adequate mental health care, serves to explain how Defendants' policies and

practices of allowing correctional officers to deny access to care also apply to the denial of mental health treatment:

> 294. Prisoners on the mental health caseload are often denied access to mental health services because of DEFENDANTS' failure to adequately provide correctional staff. Understaffing of custody officers results in the cancellation of mental health programming, denial of access to mental health counseling, and inadequate mental health monitoring of individuals housed in segregation.

Doc. 666-1 ¶ 294.

Nor does the added language in Plaintiffs' prayer for relief make any material change to the relief Plaintiffs have been seeking since the filing of this action. Doc. 666-1 ¶ 462. The added language—"Medical, Mental Health, Dental and Correctional" as a modifier to "staffing"—merely reinforces that Defendants' policies and practices regarding correctional staffing are at issue in this action, as they relate to "timely access" to treatment. *Id.* As previously noted, Plaintiffs have always sought remedies that will ensure "timely access" to medical and mental health care. *See infra* Section I. Nothing about the Proposed Fifth Amended Complaint has changed that element of the Plaintiffs' Prayer for Relief.

### B. The Interests of Justice require this Court to provide leave to Plaintiffs to amend the Complaint in response to Defendants' allegations regarding pleading insufficiencies

Defendants seek to impose a higher standard than actually applies under Rule 15, which requires that timely amendments be "freely give[n]" when it is in the

interests of justice to do so. Fed. R. Civ. P. 15(a)(2); *Dussouy v. Gulf Coast Inv. Corp.*, 660 F.2d 594, 597 (5th Cir. 1981) ("[R]ule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires'. It evinces a bias in favor of granting leave to amend.").

As the Court is aware, Defendants' alleged concerns about the sufficiency of Plaintiffs' Complaint arose when Defendants filed their motion to strike Plaintiffs' proposed experts, Dr. Craig Haney and Mr. Eldon Vail. *See* Doc. 666 at 4-5. In the ensuing briefing, Defendants repeatedly asserted that Plaintiffs' submission of the expert reports by Dr. Haney and Mr. Vail effectively constitutes "cobbling together new causes of action that have never been asserted by Named Plaintiffs." Doc. 626 at 1-2. Yet, as has been amply noted, Plaintiffs have not and will not assert a new cause of action in this case.

Plaintiffs have already made clear that the reports by Dr. Haney and Mr. Vail elucidate how Defendants' understaffing of correctional staff and maintenance of overcrowded prisons are relevant to prisoners' lack of access to adequate medical and mental health care. Doc. 616 at 12-14. Not only did Defendants have an opportunity to object to these experts, *see id.* at 3 ("Defendants had 14 days (until July 19) to object to any expert report.") (citing Doc. 529), Defendants will soon be afforded a process to challenge the relevancy of Plaintiffs' proposed expert testimony. *See id.* at 12 (noting that under Rule 702 of the Federal Rules of

Evidence and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 591 (1993), the court will "examine whether the expert's reasoning or methodology . . . is relevant").

Nonetheless, Defendants seek to circumvent the appropriate process for challenging Dr. Haney and Mr. Vail by pointing in all directions—except to the Complaint—to assert that Plaintiffs have alleged new claims in this case. Based on Defendants' actions, therefore, the interests of justice require the Court to allow Plaintiffs to amend the Complaint to elucidate how the issues of understaffing of correctional staff and prison overcrowding do relate to and are supportive of Plaintiffs' legal claims, as pled in the Complaint.

Defendants' effort to fit what is actually an objection to Plaintiffs' proposed experts into a challenge to the sufficiency of Plaintiffs' pleadings is belied by the case law they raise in support of this argument. The cases cited by Defendants, *Maynard* and *Carruthers*, would be persuasive if Plaintiffs had actually added a new legal theory to the Complaint. *Maynard v. Bd. of Regents of Div. of Universities of Florida Dep't of Educ. ex rel. Univ. of S. Florida*, 342 F.3d 1281, 1286 (11th Cir. 2003). ("Maynard also appeals the denial of his motion to amend the complaint to (1) assert a retaliation claim under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–2; and (2) add Dr. Karl as a defendant."); *Carruthers v. BSA Advert., Inc.*, 357 F.3d 1213, 1217-18 (11th Cir. 2004) (the plaintiff, "[c]iting no

authority," sought leave to add a new claim to the complaint for retaliatory discharge six months after the court's deadline for amendments to the pleadings had passed). Yet, *Maynard* and *Carruthers* are inapposite, because inasmuch as Defendants would argue the Proposed Fifth Amended Complaint includes new legal claims, in fact, there are no new claims.

Because Plaintiffs have not made material changes to their legal claims or the prayer for relief—and because the amendments were prompted by Defendants—Rule 15 requires the Court to exercise its ample discretion to grant leave to amend the Complaint. *See, e.g.*, *Oakes v. United Home Life Ins. Co.*, No. 3:15CV242-MHT, 2015 WL 5234945, at *1 (Thompson, J.) (M.D. Ala. Sept. 8, 2015) (This Court granted, under the more stringent Rule 16 "good cause" standard, leave to amend after defendants raised objections to the plaintiffs' complaint and the plaintiffs "promptly sought to remedy the problem").

### C. The *Foman* factors favor granting leave to Plaintiffs to amend

As the Supreme Court emphasized in *Foman*, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." 371 U.S. 178, 182 (1962). Defendants lay claim to the *Foman* factors for denying leave to amend; as with their other arguments, their assertions in this vein are a lot of smoke without any fire.

### i.  There is no prejudice to Defendants

Moreover, and as Plaintiffs amply noted in the Motion to Amend the Complaint, Defendants have <u>long known</u> about the connection between correctional staffing and prisoners' lack of access to medical and mental health treatment. *See, e.g.* Doc. 666 at 15-18; Doc. 616 at 9-11 (noting evidence obtained from Defendants that discusses the varied and many impacts of understaffing of correctional staff on medical and mental health outcomes). They are also well aware, and have been for years, of the impact of prison overcrowding on medical and mental health treatment. *See, e.g.* Doc. 666 at 15-18; Doc. 616 at 6-8. Defendants would like to evade the abundant testimony by their own witnesses and documentary evidence in their possession by reverting to their allegation that Plaintiffs' Complaint didn't put them on notice that this connection would be at issue in the case. Doc. 690 at 10-11. As thoroughly discussed, they cannot evade their own deficiencies by pointing to pleading deficiencies that don't exist. *See infra* at Section I.

### ii.  There is no undue delay by Plaintiffs

As noted, Plaintiffs brought their motion to amend the Complaint in direct response to Defendants' allegations that Plaintiffs—by virtue of the expert reports submitted by Dr. Haney and Mr. Vail—had "cobbl[ed] together new causes of action" never previously asserted. Doc. 626 at 2.  Plaintiffs contend that the Complaint is proper as pled; however, they bring their motion to amend the

Complaint in response to Defendants' fervent assertions that there are deficiencies in the Complaint. Likewise, in *Oakes v. United Home Life Ins. Co.*, this Court granted the plaintiffs leave to file an *untimely* amendment to the complaint, under Rule 16, where the Defendants "did not raise their *Twombly* and *Iqbal* argument in opposition to the first amended complaint until after the time-to-amend-pleadings deadline had passed, and the [plaintiffs] promptly sought to remedy the problem with a proposed second amended complaint." 2015 WL 5234945, at *1. In contrast to the plaintiff in *Oakes*, Plaintiffs submitted the proposed amendments before the deadline issued in the Court's Pretrial Scheduling Order, *see* Doc. 666 at 5-6, within two weeks of Defendants' raising these concerns, and three days after the Court's directive to seek leave to amend.

Defendants cannot raise last-minute concerns about the sufficiency of the Complaint, and when Plaintiffs seek to address those concerns, state that Plaintiffs waited months to seek leave to amend.

### iii. **Defendants' improperly assert futility**

Throughout the Complaint as previously pled, without the proposed amendments, named Plaintiffs alleged that they had been denied care, or that necessary care had been delayed. They specifically alleged facts about the care they needed and the lengthy delays in receiving that care, if they received it at all. They also alleged that these conditions affected the class as a whole. They sought relief in

the form of requiring Defendants to address the failure to provide timely access to care. *See infra* Section I. Plaintiffs clearly have standing to assert these claims. Plaintiffs are incarcerated prisoners who, prior to the taking of discovery, were in no position to explain why Defendants failed to provide them with care in a timely manner. They were not required to explain Defendants' conduct in their Complaint, nor were they required to personally know and testify in deposition about the reasons for Defendants' conduct.

Defendants contend that Plaintiffs' "new claims" are not cognizable. It begs the question: were Plaintiffs to have proposed new claims that fail "as a matter of law," where would this Court look to excise the futile claims? *See, e.g.*, *Wedemeyer v. Pneudraulics, Inc.*, 510 F. App'x 875, 876–77 (11th Cir. 2013) (futility means that "as a matter of law an amended complaint would necessarily fail"). *See also Hall v. United Ins. Co. of Am.*, 367 F.3d 1255, 1262 (11th Cir. 2004) (upholding the district court's denial of leave to amend the complaint because the plaintiff's "second amended complaint contained no potentially meritorious claims"); *Moore v. Balkcom*, 716 F.2d 1511, 1527 (11th Cir. 1983) (upholding the district court's finding of futility where the plaintiff "sought to assert that the Georgia capital sentencing procedure violated the eighth and fourteenth amendments despite the Supreme Court's prior holding that the Georgia death penalty statute is on its face constitutional").

Surely, Defendants are not arguing the Complaint as a whole is futile. *Wedemeyer*, 510 F. App'x at 878 ("Denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."); *Hall*, 367 F.3d at 1263 ("This court has found that denial of leave to amend is justified by futility when the complaint as amended is still subject to dismissal."). Thus, their argument regarding futility fails under this framework: Plaintiffs have not proposed new legal claims, therefore, those nonexisting "new" claims cannot fail.

Because the interests of justice favor granting Plaintiffs leave to file the Proposed Fifth Amended Complaint, and Defendants will not be prejudiced by the non-material, marginal amendments contained therein, the Court should grant leave to Plaintiffs to file the Proposed Fifth Amended Complaint.

## CONCLUSION

For the reasons described herein and in Plaintiffs' Motion for Leave to File [Proposed] Fifth Amended Complaint, Plaintiffs request that the Court grant Plaintiffs' motion for leave to file the Proposed Fifth Amended Complaint.


Dated: August 26, 2016          Respectfully Submitted,
                                 */s/ Maria V. Morris*
                                 Maria V. Morris
                                 Attorney for Plaintiffs
                                 Southern Poverty Law Center
                                 400 Washington Avenue
                                 Montgomery, AL 36104

Rhonda Brownstein (ASB-3193-O64R)
Maria V. Morris (ASB-2198-R64M)
Ebony G. Howard (ASB-7247-O76H)
Latasha L. McCrary (ASB-1935-L75M)
Brooke Menschel (ASB-7675-Z61K)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL 36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
rhonda.brownstein@splcenter.org
maria.morris@splcenter.org
ebony.howard@splcenter.org
latasha.mccrary@splcenter.org
brooke.menschel@splcenter.org

Miriam Haskell* (FL. Bar No. 069033)
SOUTHERN POVERTY LAW CENTER
P.O. Box 370037
Miami, FL 33137
Telephone: (786) 347-2056
Facsimile: (786) 237-2949
miriam.haskell@splcenter.org
*admitted pro hac vice

Eunice Cho* (GA. Bar No. 632669)
SOUTHERN POVERTY LAW CENTER
1989 College Avenue NE
Atlanta, GA 30317
Telephone: (404) 221-5842
Facsimile: (404) 221-5857
eunice.cho@splcenter.org
*admitted pro hac vice

William Van Der Pol, Jr. (ASB-2112-114F)
J. Patrick Hackney (ASB-6971-H51J)
Glenn N. Baxter (ASB-3825-A41G)
Alabama Disabilities Advocacy Program

Box 870395
Tuscaloosa, AL  35487
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
wvanderpoljr@adap.ua.edu
jphackney@adap.ua.edu
gnbaxter@adap.ua.edu

William Glassell Somerville, III
Andrew Philip Walsh
Dennis Nabors
Patricia Clotfelter
Lisa Borden
Baker Donelson Bearman Caldwell & Berkowitz PC
420 20th Street North, Suite 1400
Birmingham, AL 35203
Telephone: (205) 250-8375
Facsimile: (205) 488-3775
wsomerville@bakerdonelson.com
awalsh@bakerdonelson.com
dnabors@bakerdonelson.com
pclotfelter@bakerdonelson.com
lborden@bakerdonelson.com

Gregory M. Zarzaur
Anil A. Mujumdar
Diandra S. Debrosse
Zarzaur Mujumdar & Debrosse
2332 2nd Avenue North
Birmingham, AL 35203
Telephone: (205) 983-7985
Facsimile: (888) 505-0523
gregory@zarzaur.com
anil@zarzaur.com
diandra@zarzaur.com

**ATTORNEYS FOR THE PLAINTIFFS**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 26th day of August, 2016, electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system, which will send a notice of electronic filing to the following:

David R. Boyd, Esq.
John G. Smith, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL 36101

William Richard Lunsford, Esq.
Melissa K. Marler, Esq.
Stephen Rogers, Esq.
Matthew B. Reeves, Esq.
Maynard, Cooper & Gale, P.C.
655 Gallatin Street
Huntsville, AL 35801

Anne Hill, Esq.
Elizabeth Anne Sees, Esq.
Joseph Gordon Stewart, Jr., Esq.
Alabama Department of Corrections
Legal Division
301 South Ripley Street
Montgomery, AL 36130

Michael Leon Edwards, Esq.
Susan Nettles Han, Esq.
John Eric Getty, Esq.
Steven C. Corhern, Esq.
Balch & Bingham LLP
Post Office Box 306
Birmingham, AL 35201

Mitesh Shah, Esq.
Mitchell David Greggs, Esq.
Bryan A. Coleman, Esq.
Evan P. Moltz, Esq.
Maynard, Cooper & Gale, PC
1901 6th Avenue North, Suite 2400
Birmingham, AL 35203

Deana Johnson, Esq.
Brett T. Lane, Esq.
MHM Services, Inc.
1447 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309

<u>/s/ Maria V. Morris</u>
Counsel for the Plaintiffs