IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| JOSHUA DUNN, et al.,              )<br>                                   )<br>     Plaintiffs,                  )<br>                                   )<br>     v.                           )<br>                                   )<br>JEFFERSON S. DUNN, in his         )<br>official capacity as              )<br>Commissioner of                   )<br>the Alabama Department of         )<br>Corrections, et al.,              )<br>                                   )<br>     Defendants.                  ) | CIVIL ACTION NO.<br>2:14cv601-MHT<br>(WO) |

PHASE 2 OPINION AND ORDER ON
DEFENDANTS' MOTION TO STRIKE PLAINTIFFS' EXPERT REPORTS
AND PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

The plaintiffs in this putative class-action lawsuit are dozens of state prisoners and the Alabama Disabilities Advocacy Program. The defendants are the Alabama Department of Corrections, its Commissioner, and its Associate Commissioner of Health Services. In Phase 2 of this case, with which this opinion is concerned, plaintiffs assert the following claims: constitutionally inadequate medical and mental-health treatment in Alabama prison facilities, involuntary

medication without due process, and discrimination against prisoners with mental disabilities.  They rely with respect to these claims on the Eighth and Fourteenth Amendments (as enforced through 42 U.S.C. § 1983), the Americans with Disabilities Act (42 U.S.C. §§ 12131-12134), and § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794).  Jurisdiction is proper under 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).

This case is currently before the court on (1) defendants' motion to strike the portions of the expert reports filed by two of plaintiffs' experts concerning the effects of overcrowding, understaffing of custodial officers, and segregation on the provision of medical and mental-health care to prisoners in Alabama, and (2) plaintiffs' motion for leave to amend their complaint to clarify that they allege that defendants' policies or practices of overcrowding, custodial understaffing, and segregation contribute to constitutionally inadequate medical and mental-health

care and constitute violations of the Eighth Amendment. For the reasons that follow, defendants' motion will be denied and plaintiffs' motion will be granted.

At issue are the reports of Dr. Craig Haney, who is a psychologist (and lawyer), and Eldon Vail, a former correctional administrator. Defendants object to the significant portions of Dr. Haney's report that address "the adverse psychological effects of overcrowding on prisons and prison systems" and "the harmful psychological effects of segregation." Haney Report (doc. no. 555-6) at 2-3. They also object to the significant portions of Vail's report opining that "Alabama prisons are severely overcrowded, resulting in living conditions that lead to increased levels of violence and increased demands from healthcare," and "severely understaffed, resulting in a dangerous environment for inmates as well as an inability of custody staff to successfully interact with and support

3

the healthcare objectives of the ADOC." Vail Report (doc. no. 555-2) at 2.[1]

In their motion to strike, defendants contend that these reports represent an effort by plaintiffs to assert--through a back door--new claims, not properly pleaded in their complaint. Plaintiffs, for their part, argue that the contentions contained in these reports merely use evidence obtained through discovery to flesh out the same basic claims their complaint has long raised, and that the complaint and the process of discovery itself put defendants on notice that they intended to present evidence showing that defendants' policies or practices regarding overcrowding, custodial understaffing, and segregation contribute to the harms they have alleged.

---

1. The adequacy of only custodial staffing levels is at issue in these motions. There is no dispute that plaintiffs have clearly raised claims, and are entitled to present evidence, that there are too few medical and mental healthcare providers in the prisons operated by defendants.

4

Some of these concerns are easily resolved.  As a preliminary matter, plaintiffs make abundantly clear that they are not--as defendants at points suggest--bringing freestanding claims that overcrowding, custodial understaffing, and segregation violate the Eighth Amendment rights of prisoners in and of themselves.  Instead, they challenge these alleged policies or practices only to the extent that they cause constitutionally inadequate medical or mental healthcare.

For example, Vail opines that overcrowded conditions have led to increased rates of prisoner-on-prisoner violence and increased rates of traumatic injury, and thereby increase demand for medical treatment--demand which the available supply of healthcare resources is inadequate to meet.  For the purpose of this case, plaintiffs do not claim that an elevated risk of injury is a per se violation of the

Eighth Amendment.[2]  Rather, they challenge defendants' policy or practice of overcrowding because it is, they allege, one factor contributing to the denial of constitutionally adequate healthcare.

Defendants also contend that the complaint fails to allege (as Dr. Haney opines) that they provide inadequate mental-health treatment to prisoners in segregation, and that their use of segregation itself exacerbates these prisoners' mental illnesses. Defendants' position is belied by the record.  As counsel for defendants himself acknowledged at a hearing on the motion to strike, plaintiffs have "alleged specific instances of segregation where they contest the level or extent of mental health treatment provided to those individuals who are in segregation";

---

    2. This certainly would constitute a cognizable Eighth Amendment claim.  See LaMarca v. Turner, 995 F.2d 1526, 1535 (11th Cir. 1993) (explaining that a prisoner can prevail on an Eighth Amendment claim by showing administrators' deliberate indifference to "unjustified constant and unreasonable exposure to violence").  The court agrees with the parties, though, that this claim is not presently before it.

6

counsel also "agree[d]" that plaintiffs had adequately alleged that "segregation can cause harm to the mentally ill."  Tr. of Aug. 15, 2016 Hr'g (doc. no. 668) at 88.

Whether plaintiffs' allegations regarding the effects of overcrowding and custodial understaffing on the provision of healthcare were adequate to allow their experts to opine on these subjects is a closer question.  For example, although plaintiffs did allege that defendants "have a policy and practice of allowing correctional officers to deny or delay access to medical care," they elaborated by discussing alleged deficiencies in training, and the fact that officers make initial decisions about what care is needed, rather than the contention that there are too few officers to provide prompt access to care.  Fourth Am. Compl. (doc. no. 611) at 65-66.  Although some of the factual allegations regarding delays in or denials of the named plaintiffs' access to care may implicate the unavailability of custodial staff who are stretched too

7

thin, the complaint did not make transparently clear that plaintiffs sought to place at issue defendants' alleged policy or practice of custodial understaffing.

As the preceding discussion reveals, defendants' motion to strike, though framed in terms of the admissibility of expert evidence, really concerns the scope of the allegations in the complaint--specifically, whether plaintiffs were improperly attempting to effectively amend their complaint by introducing additional theories of liability through the reports of their experts. The issues are, at heart: (1) whether plaintiffs need to amend their complaint in order to properly raise and be free to litigate claims regarding overcrowding and custodial understaffing, and also (2), if so, whether they should be granted leave to make such amendments.

In order to squarely evaluate whether plaintiffs should be permitted to raise these claims--and in order to focus the court's attention on the fairness of allowing plaintiffs' claims regarding overcrowding and

custodial understaffing to proceed to "determination ... on the merits," rather than on "a technical exercise in the fine points of pleading"--the court instructed the parties to brief whether plaintiffs should be granted leave to amend, while permitting plaintiffs to maintain their contention that no amendment was necessary. Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 598 (5th Cir. 1981). As the deadline for the parties to amend their pleadings had not yet passed, the liberal interests-of-justice standard was the appropriate one. Fed. R. Civ. P. 15(a) (stating that leave to amend "shall be freely given when justice so requires").[3]

---

3. Plaintiffs also argue that even if the deadline for amendment had passed, they would be entitled to amend under Rule 16's "good cause" standard. See Oakes v. United Home Life Ins. Co., 2015 WL 5234945, at *1 (M.D. Ala. Sept. 8, 2015) (Thompson, J.) (finding good cause when defendants objected to the complaint and plaintiffs "promptly sought to remedy the problem"); Remington v. Newbridge Sec. Corp., 2014 WL 505153, at *13 (S.D. Fla. Feb. 7, 2014) (finding good cause when the proposed amendments "addresse[d] concerns expressed by the Court in its Order Denying Motion for Class Certification" and plaintiffs responded promptly to it (continued...)

9

The amended complaint plaintiffs seek leave to file adds five substantive sentences or clauses to three paragraphs in nearly 150 pages.[4]  In each case, the

---

by seeking leave to amend).  However, since the Rule 15 standard does apply here, the court need not reach this argument.

4. In addition to these additions, the amended complaint added boilerplate language regarding a putative dental subclass and a few words to the prayer for relief.  Neither amendment is necessary, and both are therefore permissible.

With respect to the dental subclass, this case has, indisputably, long involved dental-care claims.  Plaintiffs have not added any new substantive allegations regarding dental care; having sought certification of a dental subclass, they simply intend for the class definitions in their complaint to mirror those in their motion.  Because plaintiffs are free to move for certification of a subclass without having specified its bounds in their complaint, this amendment has no effect.  (Indeed, it is not clear that defendants even oppose this portion of the amendment.  They remain free, of course, to oppose the certification of a dental subclass in their response to plaintiffs' motion.)

As for the prayer for relief, plaintiffs have added the following underlined language, about which defendants make considerable hay: "Staffing: <u>Medical, Mental Health, Dental and Correctional</u> staffing shall be sufficient to provide prisoner Plaintiffs and the Plaintiff Class with timely access to qualified and competent clinicians who can provide routine, urgent, (continued...)

amendment is fairly characterized as a specific clarification of a general allegation, rather than as a wholly new claim or theory of liability.  See Edwards v. City of Goldsboro, 178 F.3d 231, 243 (4th Cir. 1999) (holding that the district court abused its discretion in denying leave to amend, "even assuming arguendo that [the plaintiff] delayed in filing his motions to amend," because it was not clear that defendants would suffer prejudice (despite their contention to this effect), and "all of the allegations sought to be added ... derived from evidence obtained during discovery regarding matters already contained in the complaint in

---

emergent, and specialty health care." Fifth Am. Compl. (doc. no. 666-2) at 141. But because Federal Rule of Civil Procedure 54(c) states that a final judgment "should grant the relief to which each party is entitled, even if the party has not demanded that relief in its pleadings," "the prayer for relief does not determine what relief ultimately will be awarded," and changes to prayers for relief are "empty gesture[s]." Wright & Miller, 10 Fed. Prac. & Proc. Civ. § 2664 (3d ed.) (citation and internal quotation marks omitted). Instead, the "issues ... squarely presented and litigated at trial" determine the scope of relief. Cioffe v. Morris, 676 F.2d 539, 541 (11th Cir. 1982).

11

some form and ... merely sought to add specificity to those matters"). Notably, none of the amendments introduce new factual allegations specific to particular named plaintiffs.

In the first of these paragraphs, plaintiffs now allege not only that defendants lack an "effective system for preventing or managing infectious diseases," but also that the "overcrowding of ADOC facilities creates opportunities for rapid contagion."[5] Fifth Am. Compl. (doc. no. 666-2) at 60. In the second, plaintiffs elaborate that defendants allow correctional officers to deny or delay access to care "whether by individual officers' affirmative actions or the systemic understaffing of custodial staff who are necessary to prisoners' access to treatment." Fifth Am. Compl. (doc. no. 666-2) at 65. This paragraph now also specifies that custodial understaffing "leads to

---

5. Indeed, this amendment seems superfluous, since the previous complaint already alleged as follows: "[T]he conditions in the prisons make the spread of
(continued...)

12

prisoners missing off-site medical appointments and prisoners in segregation not receiving medical treatment." Id. In the third and final amended paragraph, plaintiffs elaborate on their prior allegation that defendants provide "almost no mental health treatment other than medication to mentally ill prisoners" by explaining one of the reasons that other forms of care are allegedly denied: "Prisoners on the mental health caseload are often denied access to mental health services because of defendants' failure to adequately provide correctional staff. Understaffing of custody officers results in the cancellation of mental health programming, denial of access to mental health counseling, and inadequate mental health monitoring of individuals housed in segregation." Fifth Am. Compl. (doc. no. 666-2) at 81, 87.

---

disease nearly inevitable. The prisons are grossly overcrowded." Fourth Am. Compl. (doc. no. 611) at 62.

After considering plaintiffs' proposed amendments--and their assertions that overcrowding and custodial understaffing are important factors which, they have learned through discovery, detrimentally impact the provision of healthcare to prisoners in Alabama--the court concluded, and explained to the parties, that it could not fairly and efficiently adjudicate the putative class claims raised in this case without hearing evidence regarding these issues.[6] As the court put it, it simply "cannot ... try this case and give the plaintiffs a fair shake without considering" these issues, and it also has a "concomitant obligation to make sure that the defendants can respond to those allegations." Tr. of Aug. 29, 2016 Conf. (doc. no. 786) at 4.

---

6. Of course, it may in the end turn out that class certification is not warranted, or that it is but that plaintiffs' evidence does not demonstrate a violation of the Eighth Amendment stemming from defendants' policies or practices of overcrowding or correctional understaffing.

14

To expand on this point: the parties, as well as the court, have already invested tremendous amounts of time and resources in litigating and adjudicating this major case, which potentially implicates the constitutional rights of tens of thousands of individuals.  It is therefore in the interest of judicial efficiency as well as the broader public interest to ensure that, to the extent reasonably possible, this case presents squarely for the court's merits determination the full constellation of systemic policies and practices by which defendants allegedly deny the putative class members adequate healthcare. The court is concerned that at multiple stages in the litigation, the omission of evidence regarding allegedly significant factors could impede the fair and efficient adjudication of the parties' claims and defenses and might result in wasteful duplication of the parties' and the court's efforts.

For example, at trial, both plaintiffs and defendants will portray the provision of healthcare to

prisoners as complex and affected by numerous factors; the court could receive a misleadingly incomplete picture of this system if evidence about a significant factor affecting its functioning is omitted. Additionally, were the court to find liability without hearing evidence and making findings regarding important contributing factors, it could be hampered in assessing the adequacy of remedies proposed by the parties or, if necessary, crafting its own. Overcrowding and custodial understaffing may or may not be causing or worsening an unconstitutional denial of adequate healthcare by defendants. But if they are, the exclusion of evidence about these issues will result only in unnecessarily protracted litigation, whether in this case or another one filed in the future.

In light of this conclusion, the court asked the parties to confer and propose an approach that would ensure that the court could "hear [the] evidence," and simultaneously "make sure the defendants have had an

16

adequate opportunity to respond to it." Tr. of Aug. 29, 2016 Conf. (doc. no. 786) at 4. Defense counsel requested and plaintiffs agreed to proceed as follows: plaintiffs would "identify those documents and identify those witnesses or persons they believe [have] knowledge relative to this claim," and then "at that point it [would] be incumbent upon [defense counsel] to sit down and look at these and say, okay. Is there any additional discovery that we need." Id. at 14; see also id. at 24 ("If they can identify the universe of documents that they're relying upon currently to support their claim, then we would ask that they provide those and then the defendants have a time to evaluate the information that we've been provided and determine whether we need additional discovery and whether our experts need the opportunity to evaluate that information and provide a rebuttal."). Defense counsel also requested, and the court agreed to, an extension of defendants' dispositive-motion deadline.

17

The court referred the parties to United States Magistrate Judge Ott, who has been appointed to mediate the claims in this case, to flesh out deadlines for this process. Following their conversations with him, the parties jointly proposed and the court adopted a new schedule, including a deadline for plaintiffs to make the supplemental disclosures requested by defendants, a deadline for defendants to respond or object to these disclosures, and a deadline for defendants' experts to supplement their reports to further address the issues of overcrowding and custodial understaffing. Defendants objected to the inclusion of the names of five individuals in plaintiffs' supplemental disclosures, but did not otherwise object or request any additional discovery. The court understands that their experts' supplemental reports are forthcoming.

Satisfied that any possible prejudice to defendants stemming from this amendment has now been mitigated,[7] the court will now assume without deciding that amendment was necessary and formally grant plaintiffs' motion for leave to amend; it will accordingly deny defendants' motion to strike.

Moreover, because the parties understood that leave to amend was forthcoming, and because defendants acknowledged in their motions for summary judgment that they would apply to the amended complaint, the court will construe these motions as refiled against the newly amended complaint.[8]  Cf. Meterlogic, Inc. v.

---

7. Plaintiffs' pursuit of these issues cannot in any event have come as a total surprise to defendants; as plaintiffs point out, defendants' own employees and experts have testified in their depositions and opined in their reports regarding these very issues.  The court notes that defendants' rebuttal experts did already respond to Dr. Haney's and Mr. Vail's opinions regarding overcrowding and custodial understaffing. The additional time to respond defendants have now been provided is certainly adequate to ensure that they have not been prejudiced.

8. As defendants themselves explain, plaintiffs' "allegations with respect to the medical and mental (continued...)

19

Copier Sols., Inc., 185 F. Supp. 2d 1292, 1297 (S.D. Fla. 2002) (Gold, J.) (explaining that the filing of an amended complaint moots dispositive motions filed against the previously operative complaint).

* * *

It is therefore ORDERED as follows:

(1) Defendants' motion to strike plaintiffs' experts' reports (doc. no. 599) is denied.

(2) Plaintiffs' motion for leave to amend their complaint (doc. no. 666) is granted.

The clerk of the court is DIRECTED to docket plaintiffs' fifth amended complaint (doc. no. 666-2).

DONE, this the 27th day of September, 2016.

                /s/ Myron H. Thompson
            UNITED STATES DISTRICT JUDGE

---

health care the individual Named Plaintiffs received"--which are the sole focus of defendants' motion for summary judgment with respect to plaintiffs' medical and mental healthcare claims--"remain unchanged." Defs.' Mem. of Law in Supp. of Mot. for Summ. J. (doc. no. 769) at 21 n.3.