```
IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

   MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


EDWARD BRAGGS, et al.,            )
                                  )
     Plaintiffs,                  )
                                  )     CIVIL ACTION NO.
     v.                           )        2:14cv601-MHT
                                  )           (WO)
JEFFERSON S. DUNN, in his         )
official capacity as              )
Commissioner of                   )
the Alabama Department of         )
Corrections, et al.,              )
                                  )
     Defendants.                  )
```

## TEMPORARY RESTRAINING ORDER REGARDING SETTLEMENT OF PHASE 2A MENTAL HEALTH ADA CLAIMS

This matter is before the Court on The Parties' Joint Motion for a Temporary Restraining Order. After considering the evidence and arguments submitted by the Parties, the Court hereby rules as follows:

**1.**     This Court has jurisdiction over the Parties and over the subject matter of this action. Venue is proper in this Court.

2.     On January 11, 2017, the Parties mutually agreed to the "Settlement Agreement Concerning Mental Health Claims Arising Under the Americans with Disabilities Act and § 504 of the Rehabilitation Act of 1973." (*See* Doc. 1100, the "Agreement.")

3. Section III.1. of the Agreement provides that:

"At the time of execution of this Agreement, some of the Parties are engaged in the trial of that portion of this Lawsuit denominated as Phase 2A. The Parties recognize that the trial of Phase 2A likely prevents them and the Court from completing, in an expeditious manner, the necessary preliminary and final approval filings, hearings and the like concerning this ADA Mental Health Settlement Agreement. Accordingly, the Parties consent to entry of a Temporary Restraining Order that requires the implantation of the requirements Section V. "Substantive Provisions" of this ADA Mental Health Settlement Agreement."

4. In accordance with that provision, the Parties jointly moved for a temporary restraining order implementing Section V. of the Agreement. Section V. of the Agreement is incorporated as if fully set forth herein, along with any other provision of the Agreement necessary so that all inmates covered by the Agreement are provided with the services and benefits detailed in Section V. during the pendency of the Court's preliminary and final approval of that Agreement.

5. Based upon a review of the documents presented to this Court, the Court finds that sufficient cause exists to grant the Parties' motion.

6. Specifically, this Court finds that:

**(i)**     The Plaintiffs are in imminent danger of suffering irreparable injury unless this Court enters a temporary restraining order requiring the implementation of Section V. of the Agreement;

**(ii)**    The Plaintiffs have no other adequate remedy at law, and require an injunction;

**(iii)**   The Plaintiffs appear likely to succeed on the merits of their claims covered by the Agreement;

**(iv)**    The balance of equities weighs in favor of immediately implementing Section V. of the Agreement because the Parties have already agreed to its implementation; and

**(v)**     There will be no adverse effect on the public interest – and indeed, that the public interest will be served – by requiring the implementation of Section V. of the Agreement.

**(vi)**    Based on the joint agreement of the Parties and the Court's independent assessment, the prospective relief contained in the Amended Agreement is narrowly drawn, extends no further than necessary to correct the violation of a Federal right, and is the least intrusive means necessary to correct the violation of a Federal right.

Accordingly, it is the **ORDER, JUDGMENT,** and **DECREE** of the court that the parties' joint motion (doc. no. 1123) for temporary restraining order is granted as follows:

1.  The Alabama Department of Corrections ("ADOC") shall immediately proceed with the implementation of the requirements of Section V. of the "Settlement Agreement Concerning Mental Health Claims Arising Under the Americans with Disabilities Act and § 504 of the Rehabilitation Act of 1973."

2.  Regarding the provisions of the Phase 1 Settlement Agreement, ADOC shall apply the provisions of the Phase 1 Consent Decree (Doc. 728) to the class of Inmates defined by Section II.4. of the ADA Mental Health Settlement Agreement (Doc. 1100) unless expressly indicated otherwise therein, provided however that the provisions of the Phase 1 Consent Decree (Doc. 728) shall not apply to inmates sentenced to death ("death row inmates") to the extent their claims were "carved out" of the Phase 1 Settlement Agreement and Consent Decree as expressed in the Parties' Joint Stipulation Concerning Revised Intellectual Testing of Death Row Inmates (Doc. 709), the Court's Phase 1 Final Settlement Approval Order and Opinion (Doc. 727 at 66-69), the Joint Stipulation of Dismissal without Prejudice of Claims Brought on Behalf of Death Row Inmates Concerning Intellectual

Disability Issues (Doc. 911), and the Court's Judgment Dismissing Claims related to Prisoners on Death Row (Doc. 925).

    **3.**    Regarding the provisions of the Adaptive Behavior/Life Skills Training:

        **i.**    **Adaptive Behavior/Life Skills Training.** ADOC shall provide Adaptive Behavior/Life Skills Training for the following individuals who are in ADOC's physical custody for a period of no less than 181 consecutive calendar days:

            a.    Any Inmate who is diagnosed as having an Intellectual Disability pursuant to the testing protocol described in the Phase 1 Consent Decree; or

            b.    Any Inmate who meets the IQ prong and the Adaptive Behavior prong as defined under the Phase I Consent Decree, but who does not meet the "age of onset" requirement of the DSM-V. This shall include Inmates who have developed a medical condition which substantially affects mental cognition and adaptive skills consistent with the standard set forth under the Phase 1 Consent Decree and whose primary care physician's assessment concludes that such programming will be beneficial to the Inmate. In that instance, the Inmate's primary care physician will prescribe programming specific to the Inmate's needs and abilities; or

            c.    Any other Inmate whom ADOC determines would substantially benefit from such training.

        **ii.**    **Frequency of Provision of Programming.**

            **a.**    Within six (6) months of identification of an Inmate meeting any of the above criteria, ADOC shall enroll an

5

    Inmate meeting the criteria described above into the "Adaptive Behavior/Life Skills Training Program" (the "Program") as described herein. All reasonable and necessary accommodations will be afforded such Inmate consistent with the terms of the Phase I Consent Decree and the Acts. Routinely, all such topics contained within the Program shall be completed within six (6) calendar months of enrollment, The time for completion may be extended where a specific Inmate has such profound limitations such that he or she cannot participate in the Program at the same pace as other Inmates within the Program. If such were to occur, ADOC will evaluate and modify the Program on an individual basis for such Inmate to ensure that such Inmate is able to receive the fundamental portions of the information.

**b.** The Program will be provided to Inmates regardless of their security classification. The Program may be provided by ADOC Psychological Associates or similarly situated and trained individuals employed by ADOC or any third party contractor (collectively or individually, the "Instructor"). The number of Inmates enrolled in a particular ADOC facility's Program will be small enough to ensure meaningful participation by affected Inmates, but in no event shall be greater than twenty (20) Inmates per class.

**c.** Thereafter, every other year, any such Inmates who remain within ADOC's physical custody shall undergo a refresher class covering the topics in the Program. The refresher course may be a repeat of the entire Program that had been provided (updated as appropriate) or an abbreviated version of such program so long as the

        abbreviated version returns the Inmate to the level of functioning he or she had attained at the completion of the initial Program.

- **iii.** **Transfer of Inmates While They are Enrolled in the Program.**

    - **a.** ADOC will attempt to minimize the transfer of Inmates while they are actively participating in the Program. If ADOC determines that an Inmate needs to be transferred to another ADOC facility while the Inmate is enrolled in the Program, then the sending institution will, within seven (7) working days of transfer, discuss in person, telephonically, or by email, with the receiving institution the current status, issues, and mental health needs of the transferring Inmate.

    - **b.** Inmates will be assigned a Case Manager at their assigned institution. This person's responsibility will be to evaluate and review what Program courses, if any, the Inmate has not completed. The Case Manager will enroll the Inmate into any Program courses the Inmate has not completed. The Case Manager will meet with the Inmate a minimum of once per year to assess remedial needs.
    - **c.** Transfer of an Inmate will not constitute a reason, on its own, for a failure to complete the Program within the allotted six (6) month period as described herein.

- **iv.** **Adaptive Behavior/Life Skill Programming Components.**

    - **a.** The initial Program shall be at least twenty-two (22) hours in total duration. Inmates will be provided instruction concerning the topics included within the Program in classes not to exceed ninety (90) minutes each. The Instructor of a class must assess whether participating Inmates have fully understood the materials presented in that class. If an Inmate is unable to understand and retain

7

the information provided during a class, appropriate steps must be taken to solve this issue, to include providing the Inmate with additional classes. Any additional class required as a result shall not count against the twenty-two (22) hour period.

**b.**  The following general topics and areas must be included within the Program:

   **A.**  **Decision Making.** The Program must include a topic to teach Inmates how to make good decisions, to identify skills and strategies to be employed in making such decisions, the existence, identity, and method to secure assistance when appropriate in making good decisions. The topic will cover how to avoid becoming a victim or being inappropriately influenced by other Inmates.

   **B.**  **Stress Management.** The Program will address this topic in order to alleviate and minimize stress within the prison context. This topic will be designed specifically for Inmates with limited cognitive abilities.

   **C.**  **Communication Skill Building.** This topic will consist of direct training regarding each method by which an Inmate may secure an accommodation, medical and mental health care, access to programming to include educational, vocational, and rehabilitative, other programming such as recreational, religious, and leisure (such as commissary). It also will include training on how an Inmate can stay informed about current regulations and any changes within the facility

8

      where the Inmate is housed. This topic must include a discussion of the Prison Rape Elimination Act ("PREA") and ADOC procedures for notifying the ADOC of a violation.

D.    **Risk Taking Consequences.** This topic shall consist of modules outlining various common forms of risk taking activities and a practical discussion of the consequences of such actions. It shall include a discussion of drug usage, sexual activity, and violation of facility rules and regulations.

E.    **Self Help.** This topic shall include a discussion of available methods by which an Inmate may develop necessary skills to become an independent self-advocate.

F.    **Accessing Prison Services.** This topic should be taught in conjunction with "Communication Skill Building," Section V.5(b)(iii), supra, and will consist of an overview of all available prison services both within the ADOC system generally and within the prison in which the Inmate is housed and how to access such available services.

G.    **Hygiene.** This topic is designed to teach basic hygiene and the medical and social reasons for proper hygiene. Additional subtopics will address healthy living, such as diet, diabetic issues, and weight.

H.    **Self-Direction.** This topic shall include a discussion and strategy designed to encourage an Inmate to make positive decisions and positively seek educational, vocational, and rehabilitative

9

        programming. The programming shall actively encourage Inmates to make the best use of their time, and to actively seek appropriate outlets, rather than merely pass the time, while within the custody of ADOC.

    **I.**    **Prison Rules.** This topic shall include an in-depth review of prison rules to ensure than Inmates are aware of the existence and consequence for violation prison rules and regulations.

**4.** Further, the Parties shall implement any other provision of the Agreement necessary so that all inmates covered by the Agreement are provided with the services and benefits detailed in Section V. during the pendency of the Court's preliminary and final approval of the Agreement.

It is further ORDERED, by the agreement of the parties as expressed in open court on January 19, 2017, that this temporary restraining order will remain in effect until the court finally approves or rejects the parties' Settlement Agreement Concerning Mental Health Claims Arising Under the Americans with Disabilities Act and § 504 of the Rehabilitation Act of 1973.

**DONE,** this the 19th day of January, 2017.

                                          /s/ Myron H. Thompson
                                    **UNITED STATES DISTRICT JUDGE**