IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| EDWARD BRAGGS, et al.,  )<br>  )<br>  Plaintiffs,  )<br>  )<br>  v.  )<br>  )<br>JEFFERSON S. DUNN, in his  )<br>official capacity as  )<br>Commissioner of  )<br>the Alabama Department of  )<br>Corrections, et al.,  )<br>  )<br>  Defendants.  ) | CIVIL ACTION NO.<br>  2:14cv601-MHT<br>  (WO) |

PHASE 2A HEARSAY OPINION AND ORDER

The plaintiffs in this class-action lawsuit are state prisoners and the Alabama Disabilities Advocacy Program (ADAP). The defendants are officials of the Alabama Department of Corrections (ADOC): the Commissioner and the Associate Commissioner of Health Services. They are sued in their official capacities only. The procedural history of the case is explained in earlier opinions of the court, most recently in the Phase 2A summary-judgment opinions and the class-certification opinion. See Braggs v. Dunn, 317

F.R.D. 634 (M.D. Ala. 2016) (class certification); <u>Dunn v. Dunn</u>, --- F.Supp.3d ----, 2016 WL 6949598 (M.D. Ala. Nov. 25, 2016) (granting summary judgment in part and denying in part); <u>Dunn v. Dunn</u>, --- F.Supp.3d ----, 2016 WL 6949585 (M.D. Ala. Nov. 25, 2016) (granting summary judgment in favor of ADAP's associational standing).  The case is now in the midst of the Phase 2A trial, which encompasses the Eighth Amendment and Fourteenth Amendment claims related to mental-health care.  The issue before the court is whether certain documents produced by MHM Correctional Services, Inc. (MHM), the contractor for mental=health care within ADOC facilities, are admissible under the business-records exception of the rule against hearsay.  These documents include MHM's Continuous Quality Improvement (CQI) meeting minutes, multidisciplinary staff meeting minutes, emails from MHM employees, psychological-reconstruction reports, major-occurrence reports, medication-error reports, reports of MHM's

2

contract-compliance reviews, and corrective-action plans.

Based on the evidence presented thus far at trial, the court finds that these documents are admissible under the business-records exception of Rule 803(6) of the Federal Rules of Evidence, subject to certain restrictions explained below.

Under Rule 803(6), a document is admissible under the business-records exception if the proponent can establish that:

> "(A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
>
> "(B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>
> "(C) making the record was a regular practice of that activity;
>
> "(D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>
> "(E) the opponent does not show that the source of information or the method or circumstances

of preparation indicate a lack of trustworthiness."

Fed. R. Evid. 803(6).

As the Eleventh Circuit Court of Appeals has summarized, the business-records exception applies if the proponent can show that "it was the business practice of the recording entity to obtain such information from persons with personal knowledge and ... to maintain records produced by the recording entity." United States v. Bueno Sierra, 99 F.3d 375, 379 (11th Cir. 1996).

Based on the evidence presented, the court finds that the four categories of documents that plaintiffs have sought to introduce--emails from MHM employees, MHM meeting minutes (from both CQI and multidisciplinary meetings), incident reports (including psychological-reconstruction reports, critical-occurrence reports, and medication-error reports), and audit documents (contract-compliance reports and corrective-action plans)--are admissible under the business-records exception. These records

were made at or near the time of the events by individuals with knowledge, or based on information transmitted by those with knowledge: MHM employees routinely share, in meetings and through email, incident reports and audit documents, information regarding both routine issues and critical incidents arising in the course of their delivery of mental-3health care to prisoners in Alabama. This information is then recorded shortly after the issue arises, based either on the personal knowledge of MHM employees or on information conveyed to them by an employee of MHM, ADOC, or Corizon (the contractor for medical care within ADOC facilities) who had such knowledge.

For example, Dr. Robert Hunter, the chief psychiatrist for MHM in Alabama, testified that he uses email daily to communicate with MHM employees and ADOC personnel in order to address issues arising from his job responsibility of overseeing psychiatric treatment within ADOC facilities. Dr. Hunter also testified that

he presides over quarterly CQI meetings, where meeting minutes are created, and that MHM employees rely on these minutes to respond to mental-health care updates and critical incidents.  Similarly, Sharon Trimble, a mental-health professional employed by MHM, testified that weekly multidisciplinary meetings are attended by MHM staff, ADOC staff, and Corizon staff at each facility in order to gather information pertinent to mental-health care for particular inmates; that staff rely on the meeting minutes for treatment or operational purposes; and that the meeting minutes are created and maintained each week.  In addition, MHM's proposal submitted with its 2013 bid for the current contract with ADOC states both that information sharing is a vital component of MHM's CQI process and that this sharing of information is achieved through staff meetings and email communications.  Pl. Ex. 644, MHM Proposal for Mental Health Services, re: RFP No. 2013-02, Aug. 7, 2013.

Reports of individual incidents, including psychological-reconstruction reports, critical-occurrence reports, and medication-error reports, also serve similar business purposes of information sharing and quality improvement in MHM and ADOC's regular course of business.  Dr. Hunter testified that, after each suicide, he creates psychological-reconstruction reports after investigating the inmate's mental-health history and personal history through medical records and interviews with staff, in order to understand the underlying factors contributing to the suicide.  In turn, ADOC and MHM staff are supposed to rely upon these reports for quality improvement.  Dr. Hunter also established the business record predicate for medication-error reports and critical-occurrence reports created by other MHM employees: he testified that they are created in the regular course of mental-health care delivery and that these reports serve the same function of recording the

nature of the incidents and communicating them to the rest of the MHM staff or ADOC staff.

Lastly, Associate Commissioner Ruth Naglich testified that, under ADOC's contract with MHM, MHM is required to provide a contract-compliance report every year based on its annual audit, and that ADOC's Office of Health Services is responsible for monitoring contract compliance partially based on MHM's contract-compliance reports. MHM also provides corrective-action plans as a response to their corporate audit and ADOC's request.

Defendants have not shown that the sources of the information contained in these records or the method of record-keeping lacks trustworthiness. While defendants argue that the meeting minutes at issue are not reliable because they are summaries and not verbatim transcripts, MHM staff testified that they rely on these minutes as part of their quality-improvement process and in delivering care on a daily basis. Moreover, multidisciplinary-meeting minutes and

8

CQI-meeting minutes are reviewed, corrected where necessary, and approved by the meeting attendees at the following meetings.  Taken together, MHM's protocols and routine reliance on these minutes indicate that they are sufficiently reliable to qualify under the business-records exception.[1]  See Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F. Supp. 2d 1350, 1354 (M.D. Fla. 2007) (Whittemore, J.) ("Meeting minutes may fall under the hearsay exception in Rule 803(6) of the Federal Rules of Evidence for records of regularly conducted activities, if the document is authenticated by the testimony of the custodian or other qualified witness.") (citing Lloyd v. Prof'l Realty Servs., Inc., 734 F.2d 1428, 1433 (11th Cir. 1984)).

---

1. The fact that any particular statement contained in one may be untrue does not necessarily make the entire document unreliable or inadmissible as a business record. See United States v. Keplinger, 776 F.2d 678, 694-95 (7th Cir. 1985) (finding that various inaccuracies in a document did not render the evidence unreliable, given other evidence of accurate recordkeeping practices).

Defendants also argue that the fact that emails are used for regularly conducted business activities does not render all emails admissible under the business-records exception. United States v. Parnell, 2015 WL 3447250, at *9 (M.D. Ga. May 28, 2015) (Sands, J.) (holding that emails may be treated as business records but noting that, "Just like all other business records, the mere fact that a business record was created for a business entity does not necessarily satisfy the requirements of Rule 803(6)(B) that 'the record was kept in the course of a regularly conducted activity of a business' and Rule 803(6)(C) that 'making the record was a regular practice of that activity'") (citing United States v. Cone, 714 F.3d 197 (4th Cir. 2013)). However, the emails that the plaintiffs have sought to admit for the truth contain business records such as audit results, instructions to subordinates, incident reports, and requests for assistance. Multiple witnesses have testified that their emails are

often the only record of these business activities and communications.

Having established that MHM's meeting minutes, employee emails, incident reports, and audit documents that plaintiffs have sought to admit are admissible business records, the court now turns to the scope of the business-records exception.  Courts have found that the business-records exception to the hearsay rule not only applies to the record itself, but also to statements contained in the record, if both the recorder of the statement and the source of the statement were acting in the course of a regularly conducted business activity.  See United States v. Turner, 189 F.3d 712, 719-20 (8th Cir. 1999) (holding that time cards and payroll documents were admissible business records, even though the entries in them came from different sources, since both the source and the recorder were engaging in a business activity).  In other words, if the source of the information contained in the business record was "himself acting in the

11

regular course of business," any double hearsay is excused. Rock v. Huffco Gas & Oil Co., Inc., 922 F.2d 272, 279 (5th Cir. 1991) (citing Fla. Canal Indus., Inc. v. Rambo, 537 F.2d 200, 202 (5th Cir. 1976)).

The evidence presented shows that statements by MHM employees memorialized in meeting minutes, emails, and reports are made for the purposes of addressing issues with mental-health care and conducting quality-improvement exercises, and that this communication is a regularly conducted business activity. Therefore, statements by MHM employees reported in MHM documents are admissible for the truth.[2] Similarly, Corizon and ADOC employees communicating to MHM about the mental-health needs of prisoners are

---

2. In contrast, any emails from MHM employees that discuss purely personal matters, rather than business activities, do not fall under the business-records exception and are therefore inadmissible. The court has not seen any such emails so far, nor did the parties identify any such emails when the issue was discussed during a telephone conference held on the record on January 6, 2017. That court stated during the trial that, if any such personal emails are offered in the future, the parties are to bring them to the court's attention.

12

acting in the regular course of their own business, which requires constant collaboration with MHM, based on the express terms of their contract, and their communications are requested, received, and relied upon by MHM in the regular course of its business.[3] Additionally, statements by ADOC employees reported in MHM documents are party admissions, and therefore fall within an additional hearsay exception. See Fed. R. Evid. 801(d)(2)(D).

---

3. See Schmutz v. Bolles, 800 P.2d 1307, 1313-14 (Colo. 1990) ("When information is provided as part of a business relationship between a business and outsiders, however, records containing the information have been considered admissible. See, e.g., Keplinger, 776 F.2d at 694; United States v. Flom, 558 F.2d 1179, 1182-83 (5th Cir. 1977). ... One or more of the following features are usually present in cases holding such records admissible: (1) the business had standardized forms to be filled out by outsiders; (2) outsiders provided information at the business' request; or (3) the document was of a type regularly relied upon by the business in making decisions. See United States v. Mendel, 746 F.2d 155, 166 (2d Cir. 1984). ... The business' reliance on the information in the records is a particularly important factor."). Here, information from Corizon and ADOC employees reflected in MHM documents is both provided at MHM's request and relied upon by MHM in making decisions.

On the other hand, if business records include statements made by individuals who were not engaging in a regularly conducted business activity, those statements amount to hearsay within hearsay. See, e.g., United States v. Ismoila, 100 F. 3d 380, 392-93 (5th Cir. 1996) (explaining that credit cardholders reporting certain information to banks are not acting in the regular course of business). Statements made by prisoners contained within these records are not admissible for the truth of the matter asserted, because the prisoners making the statements are not acting in the regular course of business, unless they fall within a separate hearsay exception.[4] However, plaintiffs have represented to the court that they are not offering reported statements by prisoners for the truth of the matter asserted. These statements are therefore being admitted for only the purpose of

---

    4. The court notes that many of these statements made by prisoners are probably admissible for the truth under the hearsay exceptions for present sense impressions or for statements made for the purposes of

showing notice--that is, whether MHM or defendants were on notice of the fact that a prisoner made such a statement, not whether what the prisoner reported is true.

***

For the above reasons, it is ORDERED as follows: defendants' hearsay objections to MHM Correctional Services, Inc.'s meeting minutes, employee emails, incident reports, and audit documents are overruled. To the extent that these documents contain hearsay within hearsay, the court finds that statements made by employees of MHM Correctional Services, Inc., Corizon, and the Alabama Department of Corrections are admissible under the business-records exception, because they were acting in the regular course of business when reporting to the recorders of that information. The court further finds statements made

---

medical diagnosis.  However, the court need not decide this issue at this time.

15

by prisoners reported in these documents are, based on the request of plaintiffs, admitted at this time for only the purpose of establishing notice--that is, that the prisoners made these statements and that those who participated in the meetings, email communications, incident reports, and audit documents (and those privy to the resulting documents) were aware of them.

DONE, this the 31st day of January, 2017.

                                          /s/ Myron H. Thompson  
                                      **UNITED STATES DISTRICT JUDGE**