# EXHIBIT B

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA

| | | |
|---|---|---|
| EDWARD BRAGGS, ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil Action Number |
| | ) | |
| v. | ) | 2:14-cv-00601-MHT-TFM |
| | ) | |
| JEFFERSON DUNN, ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

**DECLARATION OF ELDON VAIL REGARDING
DETERMINING ADEQUATE LEVELS OF CUSTODY STAFF**

I, Eldon Vail, declare as follows:

1. I am a former corrections administrator with nearly 35 years of experience working in and administering adult and juvenile institutions. Before becoming a corrections administrator, I held various line and supervisory level positions in a number of prisons and juvenile facilities in Washington State. I have served as the Superintendent (Warden) of three adult institutions, including facilities that housed maximum, medium and minimum-security inmates.

2. I served for seven years as the Deputy Secretary for the Washington State Department of Corrections (WDOC) and four years as the Secretary before retiring in 2011.

3. Since retiring as the Secretary of WDOC, I have served as an expert witness and correctional consultant for cases and issues over forty times in numerous states.

4. I was hired by Plaintiffs in *Braggs v. Dunn* to opine upon the impact that custody staff and security operations have on the delivery of mental health care to

inmates in ADOC's custody. I testified before this Court on December 22, 2016 and January 4, 2017 respectively.

5. My opinion is that ADOC is severely understaffed and dangerously overcrowded. At trial I testified that, in addition to my observations and interviews at ADOC prisons, I reviewed the staffing data provided by ADOC via its annual and monthly statistical reports as well as other documentation such as officer shift rosters. These sources of information all support my conclusion that ADOC has inadequate levels of custody staff.

6. Since testifying, I have learned that ADOC's Chief of Staff, Steve Brown, provided a chart (Def. Dem. Ex. 19) regarding correctional officer staffing that I did not have the opportunity to review before I testified.

7. I have reviewed the chart and it does not alter my opinion that ADOC is severely understaffed. The chart describes custody staff in terms of officer-to-inmate ratios. This is not an effective way to determine whether or not staffing levels are adequate.[1] The chart ignores issues such as living unit design, movement corridors within the prison, custody level of the inmates, program activities, the type of facility perimeter, the number of security control rooms, pickets or booths, etc.

8. Additionally, in my experience, staffing ratios should only count the correctional officers authorized or needed, not the number of correctional officers plus part-time and overtime assigned without any detail as to how they are being counted at individual prisons, which is absent in Def. Dem. Ex. 19. For example,

---

[1] As I testified at trial on December 22, 2016, the best method for determining adequate staffing levels is to perform a detailed staffing analysis. It has long been recognized in the field of corrections that relying on staffing ratios is problematic. See e.g. Exhibit B-1 (Barbara Krauth, *Staff-Inmate Ratios: Why It's So Hard to Get to the Bottom Line*. L.I.S.I. September 1988 reprinted September 2006). According to the National Institute of Corrections, "The process for determining adequate staffing for a jail facility, and make it defensible, is to conduct a staffing analysis on a facility by facility basis. There are simply too many variables such as physical plant design, level of security, level of programs and activities, state and local standard and statutes, etc. to recommend a specific officer to inmate ratio." http://nicic.gov/topics/5281-staffinmate-ratios-in-jails.

overtime should not be regularly relied upon as part of a staffing roster to fill mandatory correctional officer posts and I know of no prisons where this is the practice. Depending on detail that is missing from the exhibit, in some cases part time officers may be counted but that could not be determined without looking at the staffing rosters for each individual prison for each day and shift of a typical week.

9.   In addition to the aforementioned problems, there is not enough information in the chart to make it a useful document.  For example, the chart does not identify what data was used to identify the ratios. It does not specify whether all authorized positions are included or whether it only accounts for the number of correctional officers actually working.

10.   Finally, increasing officer ratios on paper without hiring additional officers is meaningless. I have received no information that the total numbers of correctional officers have been increased by the ADOC by hiring more officers. Absent an influx of new officers, the ADOC remains severely understaffed, creating a dangerous environment for inmates housed in their facilities.

Submitted by,

_E. V._____

Eldon Vail
February 9, 2017