IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:14cv601-MHT |
| | ) | (WO) |
| JEFFERSON S. DUNN, in his | ) | |
| official capacity as | ) | |
| Commissioner of | ) | |
| the Alabama Department of | ) | |
| Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

PHASE 2 OPINION AND ORDER ON MOTIONS TO STRIKE

The plaintiffs in this lawsuit are state prisoners
and the Alabama Disabilities Advocacy Program. The
defendants are the Alabama Department of Corrections,
its Commissioner, and its Associate Commissioner of
Health Services. In Phase 2 of this case, with which
this opinion is concerned, plaintiffs assert the
following claims: constitutionally inadequate medical
and mental-health treatment in Alabama prison
facilities, involuntary medication without due process,

and discrimination against prisoners with mental disabilities. They rely on the Eighth and Fourteenth Amendments (as enforced through 42 U.S.C. § 1983), the Americans with Disabilities Act (42 U.S.C. §§ 12131-12134), and § 504 of the Rehabilitation Act of 1973 (29 U.S.C. § 794). Jurisdiction is proper under 28 U.S.C. § 1331 (federal question) and § 1343 (civil rights).

This opinion addresses:

(1) **Defendants' first motion to strike** (doc. no. 751): They seek to exclude plaintiffs' supplemental disclosures of certain individuals.

(2) **Defendants' second motion to strike** (doc. no. 809): They seek to exclude certain declarations submitted by plaintiffs in support of their motion for class certification.

(3) **Plaintiffs' motion to strike** (doc. no. 838): They seek to exclude certain documents submitted by defendants in support of their motion for summary judgment and in opposition to class certification.

After oral argument on the record, the court previously entered an order (doc. no. 845) denying without prejudice plaintiffs' motion to strike (doc. no. 838) as to the following documents: the affidavit of Angie Baggett, the declaration of Dr. Robert Greifinger, and the 2016 MHM grievance policy and Teresa Houser's description of that policy in her declaration.[1]   The one part of plaintiffs' motion to strike left pending was their challenge to the declarations of previously undisclosed witnesses.

In order to provide guidance quickly to the parties, the court also entered an order (doc. no. 909) denying defendants' second motion to strike (doc. no.

_____

1. The court denied plaintiffs' motion as to these documents without prejudice; the court also ordered responsive briefing on the issues. After further consideration, the court sees no reason to revisit plaintiffs' challenge to the declarations of Dr. Greifinger or the grievance policy and Houser declaration. The court also sees no reason to revisit plaintiffs' argument that the Baggett affidavit should be stricken essentially because its content is inaccurate. However, the court will laddress plaintiffs' challenge to the Baggett affidavit on the (continued...)

3

809) and the remaining part of plaintiffs' motion to strike (doc. no. 838) (about the declarations of the previously undisclosed witnesses) to the extent that the declarations would not be stricken and defendants would be allowed to depose the challenged declarants.

The court now issues this opinion to explain fully its reasoning for and to resolve in their entirety defendants' second motion to strike (doc. no. 809) and plaintiffs' motion to strike (doc. no. 838). The court now also resolves defendants' first motion to strike (doc. no. 751).

## I.  GOVERNING LAW

Federal Rule of Civil Procedure 26(a) requires that a party provide an initial disclosure containing "the name and, if known, the address and telephone number of each individual likely to have discoverable information--along with the subjects of that

---

ground that she was not appropriately disclosed in discovery.

**4**

information--that the disclosing party may use to support its claims or defenses, unless the use would be solely for impeachment." Fed. R. Civ. P. 26(a)(1)(A)(i). Rule 26(e) requires a party to supplement Rule 26(a) disclosures "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed. R. Civ. P. 26(e)(1)(A).

Rule 37(c)(1) provides that, "If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). However, the rule also provides that, "in addition to or instead of" excluding the information or witness, a court "may order payment of

reasonable expenses, including attorney's fees, caused by the failure," or "impose other appropriate sanctions." Fed. R. Civ. P. 37(c)(1)(A) & (C).

## II.   PROCEDURAL BACKGROUND

Plaintiffs served their initial disclosures in October 2014; in those, plaintiffs listed as potential prisoner witnesses the 43 named plaintiffs and seven additional non-plaintiff prisoners.[2]  Then, in March 2016, six days before the discovery deadline, plaintiffs served a supplemental disclosure listing as potential prisoner witnesses 244 "[p]roposed class members" with discoverable information about plaintiffs' claims.   March Supplemental Disclosure (doc. no. 809-3 at 4).   At the end of this list, plaintiffs stated that they "further incorporate[d] additional prisoners and proposed class members within

_____

2. Defendants have not argued, and there is no indication, that plaintiffs at the time of their initial disclosures knew of the prisoners who are the subject of defendants' pending motions to strike.

6

the custody of the Alabama Department of Corrections ... whose names and identities have been disclosed by the Parties and their agents during the discovery process or in writing." Id. at 9. Defendants did not take issue with the adequacy of these disclosures until months later in the course of litigating the pending motions to strike.

In August 2016, plaintiffs filed their motion for class certification for Phase 2 of the case. As evidentiary support for the motion, plaintiffs submitted hundreds--if not thousands--of pages of deposition transcripts, expert reports, medical records, emails, and other documentary evidence; in addition, they filed declarations of the named plaintiffs and a group of 37 non-party prisoners.

In early September 2016, plaintiffs filed additional supplemental disclosures naming 87 individuals who had information as to the impact of overcrowding and understaffing on the provision of medical and mental-health care. While defendants did

7

not object to the vast majority of the disclosures, they filed their first motion to strike, seeking to exclude from plaintiffs' supplemental disclosures five non-party prisoners who had submitted declarations in support of class certification.

Later that month, defendants filed their Phase 2 motion for summary judgment, and their response to plaintiffs' Phase 2 motion for class certification. As evidentiary support for their summary-judgment motion and for their response to class certification, defendants, like plaintiffs, submitted numerous deposition transcripts, expert reports, declarations, and other types of documentary evidence.

Along with their response to class certification, defendants filed a second motion to strike, seeking to exclude the 37 declarations of non-party prisoners plaintiffs had submitted in support of their motion for class certification.

Plaintiffs later filed a motion to strike certain documents filed by defendants in support of summary

judgment and in opposition to class certification, seeking to exclude a number of declarations, including some made by previously undisclosed witnesses.

The court will first address defendants' second motion to strike and then their first motion to strike. Afterwards, the court will address plaintiffs' motion to strike.

### III.  DEFENDANTS' SECOND MOTION TO STRIKE

Defendants' second motion to strike seeks to exclude from consideration on class certification the declarations of 37 non-party prisoners.[3]  Defendants argue that Rule 37(c)(1) requires the exclusion of the challenged declarations because the prisoners were not appropriately disclosed as potential witnesses in accordance with Rule 26(a) or (e) during the discovery

---

3. Defendants initially moved to strike 38 declarants; two of the 38 had the same name. Plaintiffs clarified that the two declarants with the same name were actually the same person, so it is now clear that only 37 declarants are at issue.

period and the failure to disclose was not
substantially justified or harmless.

Plaintiffs responded that they formally disclosed
five of the challenged declarants--A.D., G.L., M.P.,
T.G., and T.P.[4]--in their March supplemental disclosure,
and that all but two[5] of the remaining declarants were
adequately made known to defendants in the course of
discovery. Plaintiffs argued that, even if the
disclosures were insufficient, the failure to disclose
them was both substantially justified and harmless.

The court will first analyze whether the five
declarants identified in the March disclosures were
sufficiently disclosed, and will then turn to the
remaining declarants.

---

**4**.  Because the declarants at issue are prisoners
with confidential medical issues, the parties and the
court have used their initials to protect their
privacy.

5. Plaintiffs conceded that two declarants, J.S.
and D.O., were not disclosed in any manner during the
discovery period.

## A. March Disclosures

Five of the declarants whom defendants now challenge were listed in plaintiffs' March supplemental disclosures.  In that document, plaintiffs listed 244 prisoners as persons with information upon which they might rely and described the subjects of the prisoners' information as follows: "Each individual has information concerning his/her healthcare, including mental health, medical and dental care ..., health care practices at the facilities at which he/she is or has been housed, his/her disabilities, practices regarding accommodations of disabilities at the facilities at which he/she is or has been housed."  Pls.' Suppl. Disclosures (doc. no. 809-3) at 3-4.

Defendants argue that these disclosures were insufficient for several reasons.  They argue that the timing of the disclosures--shortly before the close of discovery--was improper.  They further contend that the description given as to the prisoners' subjects of information was insufficient and that plaintiffs'

11

disclosure of hundreds of potential prisoner witnesses amounted to the type of impermissible 'laundry list' that a number of courts have found unacceptable.  See, e.g., Sender v. Mann, 225 F.R.D. 645, 650-655 (D. Colo. 2004) (Shaffer, M.J.) ("If a party is unwilling to conduct a reasonable inquiry in advance of making Rule 26(a)(1) disclosures, that party cannot defeat the purposes of Rule 26(a)(1) simply by providing a laundry list of undifferentiated witnesses.").

This court is not persuaded that the large number of potential witnesses disclosed alone necessarily renders the March disclosure inadequate.  In a case such as this one, involving the health care provided to and the accommodation of disabilities of thousands (indeed, perhaps tens of thousands) of prisoners, there may well be hundreds of prisoners who have not only discoverable, but highly pertinent, information which the parties "may use to support" their claims.  Fed. R. Civ. P. 26(a)(1)(A)(i).  Parties are not required to narrow down their final witness selections before the

close of discovery; indeed, they need not do so until their required witness list submissions.  See Fed. R. Civ. P. 26(a)(3).  However, to the extent that they have identified individuals with potentially discoverable information upon which they may rely, parties are under a clear obligation to disclose them in a timely manner.  And to the extent they know their prior disclosures are no longer accurate, parties must amend their disclosures in a timely manner.

Here, the timing of the plaintiffs' supplemental disclosures--coming six days before the close of discovery--is troubling.  Admittedly, this is not a typical case in which the focus of the litigation is a particular event and the parties know when the case begins who most of the potential witnesses are; here, given the wide scope of the case and the ongoing nature of the claims, it is unsurprising that plaintiffs learned the identities of many potential witnesses long after the start of the litigation and discovery.  Also, plaintiffs argued that defendants produced much of

13

their requested discovery very late in the discovery period, and that this delayed their identification of certain witnesses.  Given this delay in production, it is understandable if plaintiffs did not identify many of the disclosed potential witnesses until late in the discovery period.  However, plaintiffs have not shown that the production delay specifically impacted their disclosure of the five individuals in the disclosure whom defendants now challenge.  Indeed, plaintiffs represented that one of the individuals on the list, T.G., was interviewed by a plaintiff's expert in September 2015; given that timing, plaintiffs clearly should have disclosed him as a person with discoverable information well before March 2016.

In any case, the information disclosed about each prisoner was insufficient to comply with Rule 26. While plaintiffs were not required to describe in detail what each disclosed witness's testimony would be, their one-size-fits-all disclosure as to the 244 prisoners was plainly insufficient.  All that

14

plaintiffs disclosed was that each listed potential witness might be used to testify to any or all of the claims in the case.[6] Especially given the large number of persons being disclosed, plaintiffs should at least have narrowed for defendants the specific claim or claims on which each listed individual was being considered to testify. Because the March disclosure of the topics about which the five challenged declarants had discoverable information was too broad, the court finds that it was insufficient to comply with Rule 26.

### B. Remaining Declarants

Defendants also moved to strike the declarations of 32 declarants who were not included in the March disclosure.

Five of the 32 declarants were identified in plaintiffs' September supplemental disclosure. In that

---

6. It seems highly unlikely that plaintiffs were considering using every prisoner on the list on every single claim in the case: for example, presumably not (continued...)

document, plaintiffs disclosed 87 individuals with information upon which plaintiffs might rely regarding the impact of overcrowding or understaffing on the provision of medical and mental-health care.  This list included 13 prisoners, of whom eight were named plaintiffs.  Defendants challenge the remaining five prisoners. Defendants argue that their declarations should be stricken because the disclosures were made too late.  (Defendants did not object to the other potential witnesses and information contained in this disclosure.)

Plaintiffs conceded that one of the individuals identified in this disclosure, J.S., was not previously disclosed to defendants in either a formal disclosure or the course of discovery.  As to the four other declarants listed on the September disclosure, plaintiffs argue that the second motion to strike should be denied because the witnesses' identities had

every listed witness has a disability or knew about the treatment of prisoners with disabilities in the prison.

16

"otherwise been made known to the other parties during the discovery process." Fed. R. Civ. P. 26(e)(1)(A).

The remaining 27 of the 32 declarants were never identified in a formal disclosure. Plaintiffs conceded that one of the 27--D.O.--was never identified in any manner. As for the remainder, plaintiffs again argue that the second motion to strike should be denied because the witnesses' identities had 'otherwise been made known to the other parties during the discovery process.'

The court will first address the two declarants whom plaintiffs admit were never identified during the discovery process. Plaintiffs argue that the court may consider their declarations on class certification because the rules of evidence do not apply stringently in that context. See Hogan v. Allstate Beverage Co., No. 2:10CV390-MHT, 2012 WL 6027748, at *6 (M.D. Ala. Dec. 4, 2012) (internal citation and quotations omitted). The court agrees with defendants that the applicability of the rules of evidence is irrelevant to

17

the issue now before the court; whether to exclude the declarations under Federal Rule of Civil Procedure 37. In any case, the court did not consider the declarations of J.S. or D.O. in its Phase 2A class certification decision, so the issue is moot as to that decision.   The potential use of these declarations in Phase 2B will be addressed below.

As for the remainder of the challenged declarants, plaintiffs contend that these individuals were sufficiently made known to defendants during the course of discovery when plaintiffs' experts requested to interview them during inspections of the facilities.[7] In response, defendants argue that the expert requests were not sufficient to discharge plaintiffs' disclosure

---

7. They also point out that one of these witnesses--T.G.--was listed in the March disclosure; however, as discussed above, that disclosure was insufficient.

obligations because the experts spoke, confidentially, to hundreds of prisoners during the tours.[8]

As mentioned earlier, under Rule 26(e), "a party is under no duty to formally supplement its initial disclosures with information that has otherwise been made known to the opposing party in discovery.  The Advisory Committee Notes to Rule 26(e) provide that there is 'no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process, as when a witness not previously disclosed is identified during the taking of a deposition....' Similarly, Professors Wright and Miller explain that this provision 'recognize[s] that there is no need as a

---

8. Defendants further stated "upon information and belief" that five of the prisoners at issue were never interviewed by the experts during an inspection.  In their response brief, plaintiffs represented that four of these five were in fact interviewed, and they listed the facilities where the interviews occurred.  As the court's decision does not turn on whether they were in fact interviewed, the court need not resolve this dispute.

matter of form to submit a supplemental disclosure to include information already revealed by a witness in a deposition or otherwise through formal discovery.' 8 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2049.1." Brown v. Chertoff, No. 4:06CV002, 2009 WL 50163, at *5 (S.D. Ga. Jan. 7, 2009) (Edenfield, J.) (citation omitted), aff'd sub nom., Brown v. Napolitano, 380 F. App'x 832 (11th Cir. 2010). Moreover, "[d]istrict courts in this circuit ... generally will not strike the testimony of a witness whose role may not have been wholly revealed during the course of discovery. Rather, the focus is on whether the moving party is aware that the affiant is an individual with discoverable information." Ojeda-Sanchez v. Bland Farms, LLC, No. 6:08CV096, 2010 WL 2382452, at *2 (S.D. Ga. June 14, 2010) (Edenfield, J.) (citing cases). The court is not aware of, and the parties have not cited, a case that addresses the precise issue here: whether and when a medical expert's request to interview a prisoner during a discovery

inspection constitutes adequate disclosure under Rule 26(e) in a putative class action about adequacy of medical care.[9]

In order to determine whether plaintiffs sufficiently disclosed these witnesses during the course of discovery, the court examined how the inspections took place.  As part of formal discovery, and pursuant to a mediated agreement, plaintiffs' experts were allowed to tour various prisons and, upon request, to review medical records and interview certain prisoners during the tours under specific

_____

9. Defendants cited one somewhat similar case, Prism Technologies, LLC. v. T-Mobile USA Inc., No. 8:12CV124, 2015 WL 5693080 (D. Neb. Sept. 28, 2015) (Strom, J.).  In that case, the court struck a party's supplemental disclosure of two new witnesses more than a year after the close of fact discovery because the witness's testimony was not new to the party at the time of the disclosure.  Id. at *2.  The court also rejected the party's argument that the witnesses were disclosed in the course of discovery where they were interviewed as a basis for an expert witness's opinion or listed as authors relied upon by the expert.  As reasoning, the court stated only: "This is not the type of disclosure intended by the rules."  Id.  As the court provided no explanation for this conclusion, the case was not persuasive.

conditions.[10] Counsel for defendants was present during each tour. During the tours, experts identified to plaintiffs' counsel those prisoners whose medical or mental-health records they wanted to review and prisoners whom they wanted to interview. To obtain records for review, plaintiffs' counsel gave the name of the prisoner to one of defendants' counsel, who asked the prisoner to sign a HIPAA release, or asked plaintiffs' counsel to have the prisoner sign the release. Defense counsel or a member of the medical staff then brought the records for the expert to review in a central location. When experts identified prisoners to interview during the inspections, plaintiffs' counsel wrote down the prisoners' names and identification numbers and gave a list of the individuals to defense counsel. Defense counsel transmitted that information to prison personnel and sometimes accompanied custody staff to get the prisoner

---

10. These facts are taken from a declaration of an attorney for the plaintiffs, which was not rebutted by (continued...)

and deliver the prisoner to the expert to interview. Plaintiffs also emailed defendants before the inspections to arrange for interviews of certain prisoners. At the end of these inspection days, defense counsel occasionally asked for the name of a prisoner an expert had interviewed, and plaintiffs' counsel provided that information to defense counsel. Defense counsel apparently kept a list of the prisoners who were interviewed, as they produced what appeared to be that list as an exhibit to their second motion to strike.

This process likely provided significant information to the defendants about at least some of the declarants. Each of plaintiffs' experts has a different expertise, which the defendants knew or should have known. (One is an expert in correctional mental health, another a mental-health expert on the impact of solitary confinement, another is a medical expert, and a fourth is a dental expert.) As to those

---

any evidence from the defendants.

prisoners whose medical, dental, or mental-health records were requested and reviewed by an expert during an inspection, defendants learned that these prisoners had potentially discoverable information about the relevant type of care. Similarly, when an expert in a particular subject area requested a confidential interview with a prisoner, the request communicated that the expert had been interested enough in a particular prisoner to want to interview the prisoner; this likely meant that the expert had learned something about the prisoner that led him or her to believe that the prisoner would be able to provide useful information about the functioning or failures of the relevant aspect of the prison health care system. Thus, for example, when the medical expert asked for a confidential interview with a particular prisoner, it communicated to defense counsel that the prisoner likely had discoverable information that plaintiffs might use to support their claims about insufficient medical care in the prison system.

Nevertheless, the court does not have sufficient information to conclude that this process provided adequate disclosure as to any of the individual declarants. First, it is not clear that the process by which interviews were arranged and records requested always made clear to defendants which expert was interested in which prisoner; to the extent that this was not clear, the disclosure would have been insufficient to communicate anything about the subject of the information such a prisoner might have. Second, and perhaps most importantly, to the extent an expert reviewed a prisoner's records or talked to a prisoner and found nothing significant, plaintiffs at that point were unlikely to use that prisoner to support their claims, and the disclosure to defendants of that prisoner would have been overly broad or simply inaccurate. See Fed. R. Civ. P. 26(a) (requiring disclosure of potential witnesses "that the disclosing party may use to support its claims or defenses" (emphasis added)). At the very least, defendants were

entitled to exclusion of those prisoners who had no valuable information and those whom plaintiffs had no possible interest in using as witnesses.

## C. Appropriateness of Exclusion

As the disclosures were at least partially insufficient, the court must determine whether plaintiffs were substantially justified in not formally disclosing these individuals or whether the nondisclosure was harmless; if either of these conditions are met, exclusion is not appropriate. Fed. R. Civ. P. 37(c)(1) ("If a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless.").[11]

---

11. Citing Nance v. Ricoh Elecs., Inc., 381 F. App'x 919, 922 (11th Cir. 2010) (citing Fabrica Italiana Lavorazione Materie Organiche, S.A.S. v. Kaiser Aluminum & Chem. Corp., 684 F.2d 776, 780 (11th (continued...)

The court first assesses whether the failure to provide adequate disclosures was substantially justified. "'Substantial justification requires justification to a degree that could satisfy a reasonable person that parties could differ as to whether the party was required to comply with the disclosure request. The proponent's position must have a reasonable basis in law and fact.'" In re Denture Cream Prod. Liab. Litig., No. 09-2051-MD, 2012 WL 5199597, at *5 (S.D. Fla. Oct. 22, 2012) (Altonaga, J.) (citations omitted).

Plaintiffs have not demonstrated that their failure was substantially justified. As to the March disclosures, the plaintiffs were not substantially

---

Cir. 1982)), defendants argued that, in deciding whether to exclude the declarations, the court should consider "'the explanation for the failure to disclose the witness, the importance of the testimony, and the prejudice to the opposing party.'" Technically, the cited cases set forth the standard an appellate court should consider in determining whether a district court abused its discretion by excluding evidence. In any event, the quoted factors are relevant to this court's analysis.

27

justified in providing a one-size-fits-all disclosure
as to the five declarants disclosed as part of a list
of 244 prisoners.   Plaintiffs presumably knew the
particular subjects of information each individual had,
and Rule 26 required them to specify at least that
much.   As to the remaining witnesses, while disclosure
of witnesses during an expert inspection might in some
circumstance be sufficient to meet disclosure
obligations under Rule 26, plaintiffs have not
marshaled sufficient facts and law to convince the
court that they were substantially justified in
assuming that here.

However, the court is persuaded that the
nondisclosure was essentially harmless.   Defendants
argue that the insufficient disclosures were harmful
because the challenged declarations were critical to
plaintiffs' motion for class certification. To the
contrary, the court did not rely upon the challenged
declarations at all in resolving the plaintiffs' motion
for class certification on Phase 2A; as the opinion

reflects, the court's decision to grant class
certification rested on plaintiffs' expert evidence,
deposition testimony of the prison mental-health
providers and corrections officials and employees,
documentary evidence from the Department of Corrections
and the mental-health providers, and the declarations
of the named plaintiffs. See Braggs v. Dunn, 317
F.R.D. 634, 657 n.26 (M.D. Ala. 2016) ("The court notes
that, in addition to the expert evidence discussed
here, plaintiffs have offered evidence regarding care
they and a couple of dozen putative class members have
received, in order to further illustrate the
commonality of the policies and practices they
challenge. The evidence regarding the named plaintiffs
will be discussed below, in the context of the
typicality analysis. Although illustrative, the court
need not and does not base its decision regarding
commonality [the only issue to which the declarations
were significantly relevant] on the declarations of the
unnamed class members; plaintiffs' expert evidence is

more than sufficient."). Thus, even had the court granted defendants' motion to strike the declarations, the result of plaintiffs' motion for class certification for Phase 2A would have been the same. Put another way, defendants' second motion to strike declarations is essentially moot as to Phase 2A.

Second, even had the court considered the declarations in the resolution of class certification, any prejudice from the nondisclosure would have been significantly mitigated. Through their unfettered access to the medical, mental-health, and institutional records of the declarants and to staff who interact with the declarants, defendants were able to respond effectively and in detail to the prisoners' declarations.

The court's conclusion as to harmlessness is also based on its significant doubt that defendants would have deposed the declarants during the discovery period even had they then received sufficient disclosures. Defendants argue that the fact that they deposed the

named plaintiffs and three non-plaintiff prisoners who had information about the named plaintiffs shows that they also would have deposed the 37 challenged declarants during the discovery period. Tr. of Oct. 7, 2016 Telephone Conference (doc. no. 836) at 22:13-23:16. However, defendants' decision to depose these individuals proves little about their intent to depose non-parties with no information about the named plaintiffs.[12]   Indeed, defendants have offered no explanation for why they did not depose all seven of the non-plaintiff prisoners whom plaintiffs identified in their initial disclosures in 2014.

But what the court finds most telling is defendants' failure to do anything at all when served

_____

12. Defendants have repeatedly and plainly stated that their defense strategy focused in large part on proving the illegitimacy of the individual named plaintiffs' claims.  Their decision to depose only two groups of prisoners--the named plaintiffs and other prisoners with information about the named plaintiffs--is consistent with this strategy, and inconsistent with the position that they would have deposed non-parties with no information about named plaintiffs.

with the March disclosures. In March, when the plaintiffs provided their supplemental disclosures, the court was awash in discovery-related objections, motions, and briefs from both parties; the parties were before the court for hours of telephonic and in-person hearings on these motions. But when defendants received those supplemental disclosures listing 244 prisoners and notifying them that plaintiffs felt they had sufficiently disclosed the identifies of an untold number of other prisoners during the course of discovery, defendants evinced no concern and took no action. They did not raise any objection with plaintiffs or the court about the adequacy of the disclosures, ask plaintiffs to clarify the disclosures, ask them for the identities of the unnamed people plaintiffs believed had been sufficiently disclosed in discovery, or move to compel better responses; they also did not depose, or seek an extension of discovery period--which the court likely would have given--to depose any of the 244 listed prisoners.

This was consistent with how defendants proceeded at other points during the case. In their 2014 initial disclosures, plaintiffs identified as potential witnesses seven non-party prisoners. Yet defendants represented that during the discovery period they deposed only three prisoners who were not named plaintiffs. Tr. of Oct. 7, 2016, Telephone Conference (doc. no. 836) at 22:13-23:16. This selectivity could not have been due to any restriction on the number of depositions they could take; indeed, defendants had a lot of depositions left over at the end of the discovery period. In sum, the court finds that defendants made a strategic choice not to try to depose any other non-party prisoners during the discovery period.

Defendants did depose many (if not all) of the challenged declarants when given leave to do so in the month before the Phase 2A trial. However, this does not change the court's assessment of defendants' intentions during the discovery period. To be clear,

33

the court has no doubt that, had plaintiffs disclosed
during the discovery period that they would rely on the
37 challenged prisoners by submitting their
declarations in support of the motion for class
certification, defendants would have deposed those
prisoners. But, obviously, plaintiffs were under no
obligation to provide such a specific disclosure; they
needed only to identify all potential individuals with
information they might use to support their case, and
the general subjects of the individuals' knowledge.
Therefore, even had plaintiffs provided fully adequate
disclosures of the challenged declarants, defendants
still would have received disclosure of well over 244
non-party prisoners. Under these circumstances, it is
difficult to find any harm to defendants from the
non-disclosure.

Even were there some prejudice to defendants from
the use of the challenged declarations, the court would
not have excluded them as to Phase 2A. Contrary to
defendants' argument that exclusion is 'automatic,' the

court has the option of excluding evidence or imposing an additional or alternative sanction, such as imposition of attorneys' fees.  See Design Strategy, Inc. v. Davis, 469 F.3d 284, 298 (2d Cir. 2006) ("To the extent that the Advisory Committee Note calls Rule 37(c)'s exclusion of evidence "automatic," however, that characterization cannot be squared with the plain language of Rule 37(c)(1) itself.  Rule 37(c)(1) itself recognizes that '[i]n addition to or in lieu of this [preclusion] sanction, the court, on motion and after affording an opportunity to be heard, may impose other appropriate sanctions.'  Thus, the plain text of the rule provides that if an appropriate motion is made and a hearing has been held, the court does have discretion to impose other, less drastic, sanctions.")

Here, exclusion would be an inappropriate remedy. First, as discussed above, defendants had the means to mitigate or prevent any prejudice.  Defendants could have taken issue with plaintiffs' March disclosures when they first received them.  Furthermore, defendants

have had, throughout the case, unfettered access to the complete medical and mental-health records and institutional files of every prisoner; they also have had ready access to the prison staff who interacted with the declarants and to the providers of medical and mental-health care for these prisoners. When plaintiffs' experts singled individuals out for interviews during the inspections, defendants could have investigated the care these prisoners did or did not receive. As they knew plaintiffs' experts would be considering this information, defendants should have known that they needed to be prepared to analyze and rebut it, and there was nothing stopping them from doing so. Indeed, defendants have, in response to plaintiff's class-certification motion, carefully combed through those prisoners' files and used them effectively in an effort to rebut their statements.

Second, and most importantly, the court finds no evidence of bad faith by the plaintiffs. The court has required all parties to push forward at an extremely

36

demanding pace given the size, complexity, and breadth of the case.    The parties engaged in extensive discovery.    The court is of the impression that the parties have worked very hard to comply with the demands the court has placed upon them.    Under these circumstances, where the court finds no evidence of bad faith, the extreme sanction of exclusion would be unwarranted.

While the result in Phase 2A of plaintiffs' motion for class certification would have been the same regardless of whether the challenged declarations were used, the court and the parties have been put through the hassle of having had to litigate this issue, and thus this litigation has been unnecessarily prolonged. On the one hand, as the court has indicated, plaintiffs' disclosures were inadequate under Rule 26(a) and (e), and, on the other hand, defendants were not diligent in addressing plaintiffs' failure. While it might first appear that this is a wash, it is not: for the court itself has had to expend significant time

and resources in litigating this matter.  Nevertheless,
the court believes that the following result should be
imposed: to be sure, because the defendants share
significant responsibility for the court's unnecessary
expenditure of resources, they should not be able to
recover any fees or expenses from plaintiffs pursuant
to Rule 26.  But also, because the plaintiffs are
culpable for their inadequate disclosures, they should
not be allowed to recover attorneys' fees and expenses
(that they would otherwise be entitled to under the
fee-shifting statutes should they prevail) in
connection with the unnecessary litigation of
defendants' second motion to strike declarations and
with the taking of the challenged declarants'
depositions.

Of course, the court has not yet tackled
plaintiffs' class-certification motion as to Phase 2B
of the litigation--which addresses medical care.
Defendants will have ample time to depose the relevant
declarants, including D.O. and J.S., before resolution

of the motion, and, if they decide that additional briefing is necessary, they will have an opportunity to convince the court that re-briefing is required. Should the court decide that additional briefing is required in light of the depositions, the court will assess prejudice as to Phase 2B at that time, should defendants so request.

## IV.   DEFENDANTS' FIRST MOTION TO STRIKE

Defendants' first motion to strike focuses on plaintiffs' September 2016 supplemental disclosures of individuals who had information as to the impact of overcrowding and understaffing on the provision of medical and mental-health care.  The disclosures identified 87 individuals with information about the topic, of whom 13 were prisoners; 8 of the listed prisoners were named plaintiffs.  Defendants objected to and moved to strike the remaining five prisoners--T.G., T.C., J.E., L.T., and J.S.--on the ground that plaintiffs had not identified them as

39

potential witnesses during the discovery period. Defendants argued that, due to the failure to disclose these individuals during the discovery period, plaintiffs should be precluded from relying upon the witnesses' testimony or any testimony about them for any purpose.  As these individuals were also the subject of defendants' second motion to strike, there is considerable overlap in the analysis of both motions.

As mentioned earlier, plaintiffs have conceded that they failed to disclose J.S. as an individual with discoverable information and represented that they will not use him at trial.  (The court has already addressed the use of his declaration on class certification.) Accordingly, the motion to strike as to J.S. is moot.

As discussed earlier, none of the other four disclosures were sufficient to comply with Rule 26. Therefore, the court must analyze whether the nondisclosure was substantially justified or harmless,

and, if not, whether to exclude the evidence or impose some other sanction.

As with the second motion to strike, plaintiffs have not shown that the failure to disclose the four individuals was substantially justified.   However, the court is convinced that the nondisclosure was harmless. First, as discussed earlier, the court did not rely upon these individuals' declarations for Phase 2A class certification.   To the extent there theoretically could be harm to defendants as to the Phase 2B class-certification decision, the court has addressed it in the context of resolving the second motion to strike declarations.

As to the possibility that the challenged individuals might testify at trial, the defendants were allowed to depose the challenged individuals before the Phase 2A trial,[13] and will be allowed to do so well in advance of the Phase 2B trial.   Accordingly, the

---

13. As it turned out, none of the challenged individuals testified in the Phase 2A trial. (continued...)

nondisclosure was harmless, and exclusion is unwarranted.

## V. PLAINTIFFS' MOTION TO STRIKE

Plaintiffs moved to strike 15 declarations submitted by defendants in support of their motion for summary judgment and in opposition to class certification, on the ground that these declarants were not properly disclosed as potential witnesses as required by Rule 26.[14]   The court found plaintiffs' argument largely unconvincing.

Most of the declarations plaintiffs sought to strike were by people employed in the prisons as Health Services Administrators (HSAs), and were submitted to

---

14. Plaintiffs also asked the court to strike an affidavit, declarations, and a copy of a policy on other grounds.  The court previously denied the motion as to the other grounds without prejudice, but asked the defendants to respond to plaintiffs' argument. After carefully reviewing the briefing, the court sees no reason to revisit its denial of the motion as to those other grounds, and will deny the motion as to those items with prejudice.

authenticate medical records of the prisoners whose declarations plaintiff submitted in support of class certification. Defendants were not required to disclose the HSAs in order to submit their declarations for the sole purpose of authenticating records. See Smoot v. Smoot, No. CV 213-040, 2015 WL 2340822, at *6 (S.D. Ga. Mar. 31, 2015) (Wood, C.J.) (holding affidavits admissible in spite of nondisclosure of affiants because they were only used to authenticate documents at issue in the case). Furthermore, the HSAs and the general subjects of their knowledge were sufficiently disclosed to plaintiffs in the course of discovery, and, to the extent they were not, the failure was harmless.

Plaintiffs received significant information about the HSAs during the course of discovery. In response to an interrogatory from plaintiffs seeking the persons with primary responsibility for the provision of medical care at each major correctional facility, defendants disclosed the name, title, and facility

assignment of most of the challenged HSAs. Plaintiffs also learned about the role played by HSAs through their depositions of two HSAs and learned details about the challenged HSAs during the depositions of various other witnesses.

Admittedly, some of the challenged HSA declarants were not named in an interrogatory answer because they were hired as HSAs after the interrogatory was answered; defendants failed to supplement their interrogatory responses. While this failure to supplement was not substantially justified, it was harmless because plaintiffs had received sufficient information through discovery as to the role of the HSAs, and never indicated a desire to depose the HSAs from the facilities where the position changed hands. Thus, plaintiffs clearly suffered no harm from not having the updated names of the HSAs.

Plaintiffs also challenged three additional declarants who were not formally disclosed: Joy

McCracken, Angie Baggett[15], and Darryl Ellis. The challenge to McCracken's declaration was easily resolved: Defendants were not required to disclose her because she was used solely for impeachment of declarations that plaintiffs submitted with their motion for class certification. See Fed. R. Civ. P. 26(a)(1)(A)(i).

Plaintiffs' challenge to Baggett was also unavailing. While defendants claimed to have "timely disclosed the identity of Angie Baggett and the fact that she possessed discoverable information," Defs.' Resp. (doc. no. 891) at 52, they failed to explain how or when they disclosed her identity. In any case, assuming defendants failed to disclose her as a witness, this failure to disclose was likewise

---

15. As mentioned earlier, plaintiffs also moved to strike Baggett's affidavit based on alleged errors and inconsistencies in it and her alleged lack of knowledge of the subjects in it. The court previously denied without prejudice the motion to strike her affidavit on these grounds, and will not revisit that decision. In any case, these arguments for striking the declaration (continued...)

harmless.   Baggett's declaration merely summarized institutional records regarding the named plaintiffs. Plaintiffs surely were aware of those records before she summarized them because these records were disclosed directly, and there were many prison officials and staff with the ability to review and summarize prisoners' institutional records.   As a result, a written disclosure in regard to Baggett would not have provided any additional benefit to plaintiffs.

Plaintiffs' challenge to the declaration of Ellis, the Director of Nursing at Staton Correctional Facility, presents a closer question.   Ellis provided a declaration in which he discussed the orientation for prisoners to a grievance procedure at Staton; the operation of the grievance procedure; the use of grievances and sick call by Staton prisoners generally; the use of grievances and sick call by certain named plaintiffs; and the chronic care clinics.   Defendants

are unavailing; they go to the weight of the declaration, not whether it should be stricken.

46

did not identify Ellis as a potential witness with knowledge of any subject in their initial disclosures or in a written supplemental disclosure.

Defendants argued that Ellis's identity and the subjects of his discoverable information were sufficiently disclosed during the course of discovery. Defendants point to the fact that one plaintiff testified that Ellis was a registered nurse and gave testimony about the care Ellis provided. Defendants also point to one prisoner's testimony that Ellis was a "bigwig administrator" at Staton, Defs.' Resp. (doc. no. 891) at 45, and another person's testimony that Ellis had worked on the Staton medical staff "longer than anyone else." Id. at 46.

It is clear that Ellis's identity and role as a nurse, and accordingly his knowledge of the chronic care clinics and prisoners' use of sick call, were sufficiently disclosed through the process of discovery. The closer question is whether his identity

47

as a potential witness on the subject of defendants'
exhaustion defense was adequately disclosed.

The court declines to reach that question, for even
if the disclosure was insufficient, the failure to
disclose was largely harmless. Plaintiffs learned
through discovery that Ellis was a nurse at Staton who
had worked there a long time and who had administrative
responsibilities and accordingly was likely to have at
least some knowledge of the operation and use of the
grievance procedure there. However, to eliminate any
possible prejudice, the court will allow plaintiffs to
depose Ellis before the Phase 2B trial.

**\*\*\***

Accordingly, it is ORDERED that:

(1) Defendants' first motion to strike (doc. no.
751) is denied.

(2) The court reaffirms its order (doc. no. 909)
denying defendants' second motion to strike (doc. no.
809) and granting leave to depose the challenged
declarants, with the following clarification:

**48**

defendants will not recover any fees or expenses from plaintiffs pursuant to Federal Rule of Civil Procedure 26, and plaintiffs will not be allowed to recover attorneys' fees and expenses (that they would otherwise be entitled to under the fee-shifting statutes should they prevail) in connection with the litigation of defendants' second motion to strike (doc. no. 809) and with the taking of the challenged declarants' depositions.

(3) The court reaffirms its orders (doc. nos. 845 & 909) denying plaintiffs' motion to strike (doc. no. 838), but with prejudice, and with the following clarification: plaintiffs are granted leave to depose Darryl Ellis, the Director of Nursing at Staton Correctional Facility, at a time to be determined in the future.

DONE, this the 17th day of February, 2017.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE