# EXHIBIT B

**EN EL TRIBUNAL DE DISTRITO DE LOS ESTADOS UNIDOS DE AMÉRICA
PARA EL DISTRITO MEDIO DE ALABAMA
DIVISIÓN NORTE**

| | | |
|---|---|---|
| EDWARD BRAGGS, ET AL., | ) | |
| | ) | |
| Demandantes, | ) | |
| | ) | ACCIÓN CIVIL NÚMERO: |
| | ) | 2: 14-cv-00601-MHT-TFM |
| v. | ) | |
| | ) | |
| JEFFERSON DUNN, ET AL., | ) | |
| | ) | |
| Demandados. | ) | |


**ACUERDO DE CONCILIACIÓN SOBRE LOS RECLAMOS DE SALUD
MENTAL EN VIRTUD DE LA LEY DE AMERICANOS CON
DISCAPACIDADES Y §504 DE LA LEY DE REHABILITACIÓN DE 1973**

# TABLA DE CONTENIDOS

I.      INTRODUCCIÓN ......................................................................................................... 3

II.     DECLARACIÓN DE PARTES, PROPÓSITO E INTENCIÓN ................................. 4

III.    APROBACIÓN PRELIMINAR Y FINAL DEL ACUERDO DE ACCIÓN COLECTIVA........ 7

IV.     DEFINICIONES Y CLÁUSULAS ............................................................................. 8

V.      DISPOSICIONES SUSTANTIVAS ......................................................................... 12

      1. Introducción................................................................................................................. 12

      2. Fase 1 Decreto de consentimiento.............................................................................13

      3. Capacitación de comportamiento adaptativo/habilidades para la vida ..................... 13

      4. Frecuencia de disposición de programación ............................................................. 13

      5. Traslado de reclusos mientras están inscritos en el Programa..................................15

      6. Componentes de la programación del comportamiento adaptativo/habilidades de vida  ........ 15

VI.     AVISO.......................................................................................................................... 17

VII.    MONITOREO ............................................................................................................. 18

VII.    RESERVA DE JURISDICCIÓN Y APLICACIÓN ................................................. 19

VIII.   PROCESO DE RESOLUCIÓN DE CONTROVERSIAS ........................................ 19

IX.     RESERVA DE JURISDICCIÓN Y APLICACIÓN ................................................. 19

X.      TERMINACIÓN ......................................................................................................... 20

XI.     MODIFICACIONES.................................................................................................... 21

XII.    FINANCIAMIENTO ................................................................................................... 22

XIII.   HONORARIOS Y GASTOS DE ABOGADOS......................................................... 22

XIV.    PROVISIONES ADICIONALES ............................................................................... 24

## I.     INTRODUCCIÓN

1.     El 17 de junio de 2014, los Demandantes designados individualmente y el Programa de Defensa de las Personas con Discapacidades de Alabama ("ADAP") presentaron la demanda instantánea (la "Demanda") objetando, entre otras cosas, el cumplimiento por parte del Departamento Correccional de Alabama ("ADOC") con las disposiciones del Acta de norteamericanos con discapacidades, 42 USC Sección 12111, y sigs., incluyendo el Acta de Modificación de ADA de 2008, 42 USC 12001 y sigs., (colectivamente, el "ADA") y Sección 504 de la Ley de Rehabilitación de 1973, 29 USC Sección 701, y sigs. ("Ley de Rehabilitación") (el ADA y Ley de Rehabilitación se denominan conjuntamente en este documento como las "Leyes").

2.     El Tribunal de Distrito de EE.UU. para el Distrito Medio de Alabama (el "Tribunal") ha Determinados reclamos de los Demandantes que surgieron en virtud de las Leyes fueron resueltos, a nivel de toda la clase, por resolución del 9 de septiembre de 2016. Ver "Aprobación y resolución final de la Conciliación Fase 1" (doc. no. 727) ("Resolución final"). Sin embargo, específicamente excluidos y no resueltos en la Resolución final fueron los reclamos en virtud de las leyes de cualquier recluso actual o futuro con una discapacidad como se define en 42 U.S.C. § 12102 y 29 U.S.C. § 705(9)(B) que se relaciona únicamente con una enfermedad o defecto mental. (Doc. no. 727 en 114.) El Tribunal presentó un "Decreto de consentimiento relativo a los reclamos que se derivan de la Ley de americanos con discapacidades y §504 de la Ley de rehabilitación de 1973, y la Resolución de la Fase 1 de estas diligencias" (Doc. no. 728) ("Fase 1 Decreto de consentimiento") al ingresar la Resolución final.

3. Desde el ingreso de la Resolución final y la Fase 1 Decreto de consentimiento, las Partes han trabajado para resolver los reclamos restantes presentados por los Demandantes en virtud de las Leyes. Las Partes consideran que han alcanzado tal resolución y que, para evitar litigios adicionales prolongados, costosos e inciertos, ese n su mejor interés para resolver los asuntos pendientes no resueltos que surjan en virtud de las Leyes.

246932.7

4. En consecuencia, las Partes, mediante y a través de sus respectivos abogados, estipulan y acuerdan conjuntamente las siguientes disposiciones para resolver los reclamos pendientes presentados por los Demandantes en virtud de las Leyes que no fueron resueltas por la Resolución final y la Fase 1 Decreto de consentimiento.

## II.  DECLARACIÓN DE PARTES, PROPÓSITO E INTENCIÓN

1. El ADOC del Demandado designado es el organismo del Estado de Alabama a cargo de los centros de prisiones y de libertad provisional para permitir el trabajo operadas y de propiedad del estado de Alabama que en la actualidad o en el futuro pueden tener la custodia física de los demandantes nombrados individualmente.

2. Los demandantes nombrados individualmente están actualmente, o pueden estar en el futuro, bajo la custodia física de ADOC.

3. El Demandante ADAP demandante es la agencia de protección y defensa debidamente autorizada en el Estado de Alabama. Ha afirmado su posición de asociación para presentar reclamos en nombre de reclusos actuales o en el futuro dentro de la custodia física de ADOC que tienen discapacidades relacionadas con o que surgen de enfermedad o defecto mental.

4. Los demandantes nombrados individualmente buscan la certificación colectiva de sus demandas restantes, no resueltas, afirmadas en esta Demanda en virtud de las Leyes. Como parte de esta resolución acordada de los reclamos, ADOC consiente a la certificación, en virtud de la Norma federal de procedimiento civil 23, de una clase cuyos miembros (la "Clase") se definen como cualquier recluso actual o futuro en la custodia física de ADOC, que tiene una discapacidad como se define en 42 U.S.C. § 12102 y 29 U.S.C. § 705(9)(B) que se relaciona con o que surge de enfermedad o defecto mental". ADOC no da su consentimiento a la certificación colectiva para ningún otro propósito que no sea la solución de los reclamos de los Demandantes en virtud de las Leyes.

5. Los demandantes designados individualmente, la Clase y ADAP se denominan colectivamente en este documento como "Demandantes.

6.      Los Demandantes y ADOC se denominan colectivamente las "Partes".

7.      El propósito de este "Acuerdo de conciliación sobre las demandas de salud mental que surgen en virtud de la Ley de americanos con discapacidad y §504 de la Ley de rehabilitación de 1973" ("Acuerdo de conciliación de salud mental de ADA") es conciliar y resolver todas las cuestiones planteadas por los Demandantes en virtud de las Leyes que no fueron resueltas por la Resolución final (doc. no. 727) y la Fase 1 Decreto de consentimiento (doc. no. 728) y que no han sido descartadas antes de la fecha de este Acuerdo de conciliación de salud mental de ADA. Es intención de las Partes por este Acuerdo de conciliación de salud mental de ADA resolver y conciliar todos los reclamos pendientes presentados en esta Demanda en virtud de las Leyes, específicamente las planteadas en la Sección 4 de la Queja, en su versión modificada, que no han sido resueltas o descartadas.

8.      Partes no pueden usar este Acuerdo de conciliación de salud mental de ADA para ningún propósito en esta Demanda, excepto como evidencia de lo que ha sido o no resuelto por este Acuerdo de conciliación de salud mental de ADA.

9.      Nada en este Acuerdo de conciliación de salud mental de ADA será interpretado como una admisión por parte de ADOC de la violación de cualquier ley. Por el contrario, ADOC niega toda alegación material de la Demanda, en su versión modificada, y niega cualquier responsabilidad a los Demandantes. Este Acuerdo de conciliación de salud mental de ADA no constituye y no será interpretado como una admisión o evidencia de cualquier acto de indiferencia deliberada a los derechos constitucionales de cualquier Recluso, o de cualquier violación de las Leyes.

10.     Las Partes estipulan que nada en este Acuerdo de conciliación de salud mental de ADA se utilizará para cualquier propósito fuera de esta Demanda o contra cualquier Demandado en cualquier otro litigio que haya sido o pueda ser presentada contra cualquier Demandado nombrado. nada en este Acuerdo de conciliación de salud mental de ADA se interpretará para requerir que

246932.7

ADOC haga más de lo que es requerido por las Leyes, decisiones judiciales aplicando o interpretando las Leyes, o normas y regulaciones interpretando las Leyes.

11.    Las Partes consideran que este Acuerdo de conciliación de salud mental de ADA es justo, razonable y adecuado para proteger los intereses de todas las Partes en relación con las cuestiones contenidas en el presente documento. Las Partes firman conjuntamente este Acuerdo de conciliación de salud mental de ADA con el Tribunal y, como se discute más detalladamente a continuación, solicitan que el Tribunal inicie una orden de restricción temporal que haga cumplir las Disposiciones sustantivas de este Acuerdo de conciliación de salud mental de ADA y luego emitir una resolución dirigiendo el aviso a la Clase, estableciendo un período de objeción, y estableciendo una audiencia de imparcialidad para la aprobación preliminar, y que el Tribunal luego apruebe la Clase y la conciliación como final.

11.    Sin embargo, y en el caso de que este Acuerdo de conciliación de salud mental de ADA no sea aprobado por el Tribunal de tal manera que concilie y resuelva, en base a las clases, todas las cuestiones pendientes en esta Demanda a ser juzgadas en virtud de las Leyes, las Partes conservan todos sus derechos y defensas de litigio previo a la solución, incluyendo el derecho de ADOC a solicitar revisión interlocutoria de cualquier orden que otorgue la certificación de clase. Además, y en el caso de que este Acuerdo de conciliación de salud mental de ADA no sea aprobado por el Tribunal de tal manera que concilie y resuelva, en base a clases, todas las cuestiones pendientes en esta Demanda para ser juzgadas en virtud de las Leyes, para hacer cumplir cualquier disposición de este Acuerdo de conciliación de salud mental de ADA (incluyendo, pero no limitándose a cualquier orden de restricción temporal) será inmediatamente disuelto y retirado y las Partes regresarán al status quo ante la Demanda como si las Partes no hubieran celebrado este Acuerdo de conciliación de salud mental de ADA. Cualquier discusión, oferta o negociación asociada con este Acuerdo de conciliación de salud mental de ADA no podrá ser descubierto ni ofrecido como evidencia ni utilizado en la Demanda, ni en ninguna otra acción o procedimiento

246932.7

para ningún propósito, sin perjuicio del derecho de los Demandantes a solicitar la certificación colectiva, y el derecho de ADOC a oponerse a la certificación colectiva. En tal caso, todas las Partes se mantendrán en la misma posición que si este Acuerdo de conciliación de salud mental de ADA no hubiera sido negociado, hecho o presentado ante el Tribunal, y el Tribunal no hubiera emitido ninguna orden de restricción temporal para hacer cumplir la totalidad o parte de este Acuerdo de conciliación de salud mental de ADA.

## III.    APROBACIÓN PRELIMINAR Y FINAL DEL ACUERDO DE ACCIÓN COLECTIVA

1.    Presentación de Orden de restricción temporal. En el momento de la ejecución de este Acuerdo, algunas de las Partes están involucradas en el juicio de esa parte de la Demanda titulada como Fase 2A. Las Partes reconocen que el juicio de la Fase 2A probablemente les impide a ellos y a el Tribunal completar de manera expedita los documentos preliminares y finales de aprobación, audiencias y similares necesarios relacionados con este Acuerdo de conciliación de salud mental de ADA. En consecuencia, las Partes aceptan la entrada de una Orden de restricción temporal que requiere la aplicación de los requisitos de la Sección V. "Disposiciones sustantivas" de este Acuerdo de conciliación de salud mental de ADA. Dentro de los siete (7) días después de que todos los signatarios necesarios hayan firmado este Acuerdo de conciliación de salud mental de ADA, las Partes lo someterán a el Tribunal y solicitarán conjuntamente la Orden de restricción temporal descrita anteriormente.

2.    Aprobación preliminar. A más tardar catorce (14) días después de la finalización del testimonio en el juicio de la Fase 2A, las Partes presentarán conjuntamente este Acuerdo de conciliación de salud mental de ADA a el Tribunal para su aprobación preliminar, junto con una propuesta de orden de aprobación preliminar, propuestas de avisos de aprobación preliminar, un calendario para avisos, propuesta de avisos de aprobación preliminar, un calendario para un período de objeción, y una solicitud para una audiencia de imparcialidad conforme a la Regla 23(e) de las Reglas federales de procedimiento civil.

246932.7

3. Aprobación final. Dentro de sesenta (30) [*] días de la Aprobación preliminar del Acuerdo de conciliación de salud mental de ADA, las Partes presentarán ante el Tribunal cualquier acuerdo o acuerdos, que incluirá disposiciones de avisos, una propuesta de Resolución de aprobación final, y cumplir con todas las disposiciones de la Regla 23(e) de las Reglas federales de procedimiento civil, con el fin de que el Tribunal pueda, si lo considera apropiado, otorgar la aprobación final para este Acuerdo de conciliación de salud mental de ADA.

## IV. DEFINICIONES Y CLÁUSULAS

1. Adopción de definiciones de Fase 1 Decreto de consentimiento. A menos que se indique expresamente aquí dentro, todos los términos utilizados en este Acuerdo de conciliación de salud mental ADA tiene las mismas definiciones que se identifican y utilizan en la Fase 1 Decreto de consentimiento, todas las cuales son adoptadas como si fueran establecidas en su totalidad.

2. Demandado Naglich. Las Partes disponen que no existen reclamos individuales o colectivos, incluyendo reclamos putativos colectivos, en virtud de las Leyes contra la Demandada Ruth Naglich, nombrada en su calidad oficial como Comisionado asociado de servicios de salud para el Departamento de correcciones de Alabama.

3. Demandado en su capacidad oficial. Jefferson Dunn, en su capacidad oficial como Comisionado del Departamento de correcciones de Alabama, es actualmente un demandado nombrado en esta Demanda con respecto a los reclamos afirmadas en virtud de la Octava enmienda y Decimocuarta Enmienda de la Constitución de los Estados Unidos y es, en su capacidad oficial como Comisionado del Departamento de correcciones de Alabama, parte a la Fase 1 Decreto de consentimiento. Sin embargo, no es un demandado nombrado con respecto a los reclamos restantes planteadas en esta Demanda en virtud de las Leyes. Para evitar ciertos posibles problemas con este Acuerdo de conciliación de salud mental de ADA propuesto que resuelve todas las demandas restantes que se reivindican en esta Demanda en virtud de las Leyes, específicamente los reclamos que se afirman en la Sección 4 de la Queja, en su versión modificada, se acuerda:

246932.7

(a)      Que, sin la necesidad de una enmienda separada a la Queja, el Comisionado Dunn es, en su capacidad oficial como Comisionado del Departamento de correcciones de Alabama, añadido (1) como demandado a los reclamos tratados en este Acuerdo de conciliación de salud mental de ADA y, (2) como una parte nombrada a este Acuerdo de conciliación de salud mental de ADA.

(b)      Que, en caso este Acuerdo de conciliación de salud mental de ADA no es aprobado por el Tribunal, y ninguna aprobación es retirada o revocada posteriormente, esta disposición no tendrá fuerza ni efecto y se restaurará el *status quo* ante la condición de parte del Comisionado Dunn.

4.      PLRA.

(a)      La Ley de reforma de litigios penitenciarios ("PLRA", por sus siglas en inglés), establece que, en cualquier acción civil en la que un tribunal ordene una medida de alivio anticipado, dicho alivio anticipado podrá ser resuelto a petición de cualquier parte dos (2) años después de su ordenamiento. *Véase* 18 U.S.C. § 3626(b).

(b)      Las Partes acuerdan que, para efectos de resolver todos los reclamos restantes en la Sección 4 de la Queja, en su versión modificada, 18 U.S.C. § 3626(b) no requiere que este Tribunal resuelva una medida cautelar prospectiva después de dos (2) años. En su lugar, la Sección 3626(b) simplemente permite que una parte se mueva para que dicha medida sea terminada.

(c)      ADOC establece y acepta que es su derecho solicitar la rescisión en virtud de 18 U.S.C. § 3626(b) puede ser renunciado por consentimiento o acuerdo. *Véase Depriest v. Walnut Grove Corr. Auth.,* No. 3:10-CV-663-CWR-FKB, 2015 WL 3795020, en *6 (S.D. Miss. 10 de junio de 2015) ("No hay nada sobre el PLRA que prohíba que las partes acepten condiciones de terminación diferentes a las contenidas en el PLRA."). Esta disposición es coherente con el texto PLRA. Sección 3626(c) regula la aprobación de los decretos de consentimiento. *Véase* 18 U.S.C. § 3626(c).

246932.7

El inciso (c) de 18 U.S.C. § 3626 requiere que cualquier decreto de consentimiento debe cumplir con las disposiciones de 18 U.S.C. § 3626(a). es decir, la posible medida cautelar ordenada en un decreto de consentimiento debe estar estrictamente trazada, no debe extenderse más allá de los necesario para corregir la violación del derecho federal, y debe ser el medio menos intrusivo necesario para corregir la violación. *Véase* 18 U.S.C. § 3626(c) (1) (que requiere que cualquier decreto de consentimiento debe cumplir con los requisitos de la Sección 3626(a).) nada en las Secciones 3626(a) o (c) impide que las Partes acuerden limitar o alterar sus derechos en virtud de la Sección 3626(b).

(d)     En consecuencia, y en consideración a la conciliación de los reclamos resueltos por este Acuerdo de conciliación de salud mental de ADA, ADOC se compromete a no buscar terminar, en virtud de 18 U.S.C. § 3626(b), la orden judicial prospectiva impuesta por este Acuerdo de conciliación de salud mental de ADA hasta al menos sesenta (60) meses después de la fecha de la entrada de Fase 1 Decreto de consentimiento. Dicho de otro modo, ADOC renuncia por lo tanto a su derecho a la medida cautelar anticipada ordenada por este Acuerdo de conciliación de salud mental de ADA hasta por lo menos 60 meses después de la fecha de entrada de la Fase 1 Decreto de consentimiento.

(e)     Las Partes disponen y acuerdan que se trata de una renuncia que solo se aplicará a la medida cautelar prospectiva ordenada como parte de este Acuerdo de conciliación de salud mental de ADA. La renuncia es necesaria debido a las circunstancias de hecho únicas de este caso. Específicamente el plan correctivo establecido en este Acuerdo de conciliación de salud mental de ADA tardará más de dos (2) años en implementarse, lo cual estaría más allá de la disposición de puesta de sol de PLRA.

(f)     ADOC reconoce y acepta que puede buscar la terminación en virtud de la Sección 3626(b) entre sesenta (60) meses y setenta y dos (72) meses después de la fecha de entrada de Fase 1 Decreto de consentimiento. Tras una constatación de que ADOC ha cumplido sustancialmente con este Acuerdo de conciliación de salud mental de ADA durante los doce (12)

246932.7

meses antes de que se presente la solicitud de terminación, este Tribunal cancelará inmediatamente cualquier remedio anticipado.

(g)      ADOC reconoce y acepta que, a menos que este Tribunal haga los hallazgos específicos requeridos por 18 U.S.C. § 3626(b)(3), la reparación prospectiva requerida por este Acuerdo de conciliación de salud mental de ADAM terminará setenta y dos (72) meses después de la fecha de entrada de la Fase 1 Decreto de consentimiento.

(h)      Las Partes establecen y acuerdan una moción para terminar la posible orden judicial ordenada o acordada por este Acuerdo de conciliación de salud mental de ADA debe ser escuchada por el Tribunal y no puede ser escuchada o decidida por el árbitro que se describe en la Fase 1 Decreto de consentimiento.

(i)      Esta disposición es consistente con el lenguaje de PLRA. La Sección 3626(b)(3) establece que, en una moción de terminación, la medida cautelar anticipada "no se rescindirá [inmediatamente] **si el tribunal** hace constar por escrito que el posible alivio sigue siendo necesario para corregir una violación actual y en curso del derecho federal, no se extiende más allá de lo necesario para corregir la violación de derecho federal, y que la medida cautelar se limite y lo menos intrusivo significa corregir la violación." *Véase* 18 U.S.C. § 3626(b)(3) (sin cursivas en el original).

(j)      A los efectos de este Acuerdo de conciliación de salud mental de ADA, las Partes interpretan que esta disposición requiere que el Tribunal conozca cualquier moción presentada en virtud de 18 U.S.C. § 3626.

(k)      Además, la Fase 1 Decreto de consentimiento requiere que "Si, previa solicitud para la terminación, **el Tribunal** concluye que ADOC está en conformidad substancial con todos los términos y condiciones de este Acuerdo de conciliación, **el Tribunal** puede rescindir la

246932.7

jurisdicción de la porción o partes de este Acuerdo modificado, **el Tribunal** puede rescindir la jurisdicción de la parte o partes de este caso sujeto a este Acuerdo de conciliación." (Doc. 518 en 73) (sin negritas en el original). Las Partes adoptan expresamente este requisito como parte de este Acuerdo de conciliación de salud mental de ADA. Por lo tanto, las Partes no han delegado la decisión sobre la solicitud de terminación al árbitro y están de acuerdo en que será decidido por esta Corte.

5.      Reclamo desestimado. Ninguna disposición de este Acuerdo de conciliación de salud mental de ADA aplica, o tiene la intención de aplicarse, a la identificación, seguimiento o acomodación de cualquier discapacidad intelectual de cualquier Recluso actual o futuro, bajo la custodia de ADOC, bajo pena de muerte. Cualquier reclamo o reclamos fue o fueron específicamente excluidos de la Fase 1 Decreto de consentimiento y después despedido en esta Demanda, sin perjuicio, por moción conjunta de las Partes el 4 de noviembre de 2016. *Véase* doc. nos. 727, 911 y 925. Las Partes acuerdan que la intención de esta disposición es eliminar de la resolución de los reclamos. Los Demandantes han afirmado en virtud de las Leyes cualquier reclamo referente a la identificación, seguimiento y acomodación de cualquier discapacidad intelectual de cualquier recluso actual o futuro.

## V.      DISPOSICIONES SUSTANTIVAS

1.      Introducción. Las Partes han desarrollado y acordado conjuntamente ciertas disposiciones descritas a continuación que están diseñadas para proveer cuidado, servicios, acomodamientos, programas y actividades para los Reclusos, de acuerdo con los términos de este Acuerdo de conciliación de salud mental de ADA y las Leyes. Estas disposiciones tienen por objeto garantizar que los reclusos no estén expuestos a un daño sustancial en función de su discapacidad y que los reclusos no estén sujetos a discriminación por motivos de discapacidad.

2. Fase 1 Decreto de consentimiento. Las disposiciones de esa parte de la Fase 1 Decreto de consentimiento (doc. no. 728) titulada V. "Disposiciones sustantivas" se adoptan como se establece aquí en detalle y se aplican a los reclamos resueltos y conciliados por este Acuerdo de conciliación de salud mental ADA. Las Partes acuerdan además que este Acuerdo de conciliación de salud mental de ADA aplica las disposiciones de la Fase 1 Decreto de consentimiento a la Clase de Reclusos que se define en la Sección de este Acuerdo de conciliación de Salud Mental ADA, a menos que se indique expresamente lo contrario.

3. Capacitación de comportamiento adaptativo/habilidades para la vida. ADOC se compromete a proporcionar Capacitación de comportamiento adaptativo/habilidades para la vida a las siguientes personas que se encuentran bajo custodia física de ADOC por un período de no menos de 181 días consecutivos:

(a) Cualquier recluso a quien se le diagnostica una Discapacidad intelectual, de acuerdo con el protocolo de pruebas que se describe en la Fase 1 Decreto de consentimiento; o,

(b) Cualquier recluso que cumpla con la cláusula de IQ y la clave de Comportamiento adaptativo como se define en la Fase 1 Decreto de consentimiento, pero que no cumple con el requisito de "edad de inicio" de DSM-V. esto incluye a los reclusos que han desarrollado una condición médica que afecta sustancialmente la cognición mental y las habilidades adaptativas consistentes con la norma establecida en la Fase 1 Decreto de consentimiento y cuya evaluación del médico de atención primaria concluye que tal programación será beneficiosa para el Recluso. En ese caso, el médico de atención primaria del recluso recetará una programación específica para las necesidades y habilidades del recluso; o,

(c) Cualquier otro Recluso que ADOC determine que se beneficiaría sustancialmente de tal capacitación.

4. Frecuencia de disposición de programación.

246932.7

(a)    Dentro de los seis (6) meses siguientes a la identificación de que un Recluso cumpla con cualquiera de los criterios anteriores, ADOC inscribirá a un recluso en el "Programa de capacitación de comportamiento adaptativo/habilidades de vida" (el "Programa") como se describe aquí. Todos los arreglos razonables y necesarios serán otorgados a dicho Recluso de acuerdo con los términos de la Fase 1 Decreto de consentimiento y las Leyes. De forma rutinaria, todos los temas contenidos en el Programa se completarán dentro de los seis (6) meses calendario de la inscripción. El tiempo para completarse puede extenderse cuando un Recluso específico tiene tales limitaciones tan profundas que él o ella no pueden participar en el Programa al mismo ritmo que otros Reclusos dentro del Programa.

Si esto ocurriera, ADOC evaluará y modificará el Programa de manera individual para dicho Recluso para asegurar que dicho Recluso pueda recibir las partes fundamentales de la información.

(b)    El Programa será proporcionado a los Reclusos independientemente de su clasificación de seguridad. El Programa puede ser proporcionado por los Asociados psicológicos de ADOC o personas capacitadas y situadas empleadas por ADOC o cualquier contratista tercero (colectivamente o individualmente, el "Instructor"). El número de Reclusos inscritos en un determinado Programa de las instalaciones de ADOC será lo suficientemente pequeño como para asegurar la participación significativa de los Reclusos afectados, pero en ningún caso será mayor de veinte (20) reclusos por clase.

(c)    A partir de entonces, cada dos años, los Reclusos que permanezcan dentro de la custodia física de ADOC, serán sometidos a una clase de actualización que cubrirá los temas del Programa. El curso de actualización puede ser una repetición de todo el Programa que se haya proporcionado (actualizado según corresponda) o una versión abreviada de dicho programa, siempre y cuando la versión abreviada devuelva al Recluso al nivel de funcionamiento que había alcanzado al completarse el Programa inicial.

5. Traslado de Reclusos mientras están inscritos en el Programa.

(a) ADOC intentará minimizar el traslado de Reclusos mientras participan activamente en el Programa. Si ADOC determina que un Recluso necesita ser transferido a otro establecimiento de ADOC mientras que el Recluso está inscrito en el Programa, la institución de envío discutirá, dentro de los siete (7) días hábiles del traslado, en persona, por teléfono, o por correo electrónico, con la institución receptora, el estado actual, las cuestiones y las necesidades de salud mental del Recluso que se traslada.

(b) A los Reclusos se les asignará un Administrador de casos a su institución. La responsabilidad de esta persona será evaluar y revisar los cursos del Programa, en su caso, que el Recluso no haya completado. El Administrador de casos se reunirá con el Recluso un mínimo de una vez al año para evaluar las necesidades remediales.

(c) El traslado de un Recluso no constituirá una razón, por sí sola, por la falta de completar el Programa dentro del período de seis (6) meses, como se describe aquí.

6. Componentes de la programación del comportamiento adaptativo/habilidades de vida.

(a) El Programa inicial tendrá una duración de al menos veintidós (22) horas. Los Reclusos recibirán instrucción sobre los temas incluidos dentro del Programa en clases que no excedan noventa (90) minutos cada una. El instructor de una clase debe evaluar si los Reclusos participantes han comprendido completamente los materiales presentados en esa clase. Si un Recluso no es capaz de entender y retener la información proporcionada durante una clase, los pasos apropiados deben ser tomados para solucionar este problema, para incluir en clases adicionales. Cualquier clase adicional requerida como resultado no contará contra el período de veintidós (22) horas.

(b)     Los siguientes temas y áreas generales deben incluirse en el Programa:

(i)     Toma de decisiones.   El Programa debe incluir un tema para enseñar a los Reclusos cómo tomar buenas decisiones, identificar las habilidades y estrategias a emplear en la toma de tales decisiones, la existencia, identidad y método para obtener asistencia cuando sea apropiado para tomar buenas decisiones. El tema cubrirá cómo evitar ser víctima o ser influenciado inapropiadamente por otros Reclusos.

(ii)     Manejo de estrés.  El Programa abordará este tema con el fin de aliviar y minimizar el estrés dentro del contexto penitenciario. Este tema será diseñado específicamente para los Reclusos con habilidades cognitivas limitadas.

(iii)     Construcción de habilidades de comunicación.   Este tema consistirá en la capacitación directa con respecto a cada método por el cual un Recluso puede asegurar un acomodamiento, atención médica y mental, acceso a la programación para incluir programas educativos, vocacionales y de rehabilitación, tales como actividades recreativas, religiosas y de ocio. También incluirá capacitación sobre cómo un Recluso puede mantenerse informado sobre las normas actuales y cualquier cambio dentro del establecimiento donde se encuentra recluido. Este tema debe incluir una discusión de los procedimientos de la Ley de eliminación de la violación penitenciaria ("PERA") y de ADOC para notificar al ADOC de una violación.

(iv)     Consecuencias en la toma de riesgos.   Este tema consistirá en módulos que describen diversas formas comunes de actividades de toma de riesgos y un debate práctico sobre las consecuencias de tales acciones. Incluirá una discusión

sobre el uso de drogas, la actividad sexual y la violación de las reglas y normas del establecimiento.

(v)    Auto-ayuda.  Este tema incluirá una discusión de los métodos por los que un Recluso puede desarrollar las habilidades necesarias para convertirse en un auto-abogado independiente.

(vi)    Acceso a los Servicios penitenciarios.  Este tema debe ser impartido junto con "Construcción de las habilidades de comunicación", Sección Sección V.5(b)(iii), *supra,* y consistirá en una visión general de todos los servicios penitenciarios disponibles tanto dentro del sistema de ADOC en general, como dentro de la prisión donde se encuentra el Recluso y cómo acceder a dichos servicios disponibles.

(vii)    Higiene.  Este tema está diseñado para enseñar la higiene básica y las razones médicas y sociales para una higiene adecuada. Otros subtemas abordarán la vida saludable, como la dieta, problemas diabéticos y peso.

(viii)    Auto-dirección.  Este tema incluirá una discusión y estrategia diseñada para alentar a un Recluso a tomar decisiones positivas y buscar positivamente programas educativos, vocacionales y de rehabilitación. La programación animará activamente a los Reclusos a hacer el mejor uso de su tiempo, y a buscar activamente las salidas adecuadas, en lugar de simplemente pasar el tiempo, mientras están bajo la custodia de ADOC.

(ix)    Reglas penitenciarias.  Este tema incluirá una revisión a fondo de las reglas de la prisión para asegurar que los Reclusos son conscientes de la existencia y la consecuencia para la violación de las reglas y normas de la prisión.

**VI.    AVISO**

246932.7

1.      ADOC publicará las disposiciones de este Acuerdo de conciliación de salud mental de ADA en la biblioteca legal de cada establecimiento, o si no hay biblioteca legal, en el área donde está disponible otra información para los Reclusos en sus instalaciones de liberación de trabajo de la prisión. ADOC modificará los manuales de los reclusos para incluir las disposiciones de este Acuerdo de conciliación de salud mental de ADA. La sustancia de lo que se publicará en las bibliotecas y en los manuales de los Reclusos será redactada conjuntamente por ADOC y los Demandantes. Todos estos documentos estarán disponibles en formatos alternativos para incluir letra grade y Braille.

## VII.   MONITOREO

1.      Las Partes acuerdan que es necesario monitorear el cumplimiento de ADOC con los términos de este Acuerdo de conciliación de salud mental de ADA y que ADAP servirá como monitor. ADOC permitirá a ADAP un acceso razonable a las instalaciones, documentos, personal, procedimientos, registros, bitácoras, Reclusos y otras fuentes de información similares, a fin de asegurar el cumplimiento. ADAP tendrá derecho a realizar entrevistas con los Reclusos y el personal para evaluar el cumplimiento de los términos de este Acuerdo de conciliación de salud mental de ADA.

2.      ADAP acuerda a estar obligado por cualquier Orden de protección o del Tribunal presentada en esta Demanda para proteger la confidencialidad de los registros de los Reclusos y la información de seguridad sensible.

3.      ADAP preparará un informe escrito sobre los esfuerzos de ADOC para cumplir con los requisitos de este Acuerdo de conciliación de salud mental de ADA y cualquier plan para realizar sus términos al menos trimestralmente. Cada informe indicará todas las áreas en las que ADOC está, o no, en Cumplimiento sustancial. Dicho informe se proporcionará a ADOC y a todos los abogados de registro. Si ADAP considera que ADOC no está en Cumplimiento sustancial con los términos y disposiciones de este Acuerdo de conciliación de salud mental de ADA y cualquier

246932.7

plan para realizar sus términos, ADAP proporcionará recomendaciones por escrito de las acciones que considere necesarias para lograr el Cumplimiento sustancial con los términos de la disposición o disposiciones. ADOC tendrá entonces veinte (20) días para proporcionar comentarios, objeciones o planes de acción correctiva por escrito en respuesta. Las Partes se reunirán y tratarán de resolver las deficiencias identificadas por ADAP.

4.       El monitoreo continuará por un período consistente con el período de monitoreo expresado en la disposición "Monitoreo" de la Sección VI de la Fase 1 Decreto de consentimiento, independientemente si ADOC se haya comprometido a construir nuevas prisiones, pero no ha terminado esa construcción al 1 de enero de 2020, el monitoreo continuará hasta dos (2) años después de la finalización de las prisiones.

5.       Si ADAP encuentra evidencia de cualquier violación de la ley que no implique el objeto de este Acuerdo de conciliación de salud mental de ADA, está obligado a informar al Consejero general de ADOC, o su representante.

## VIII.   PROCESO DE RESOLUCIÓN DE CONTROVERSIAS

1.       Las Partes acuerdan resolver controversias que surjan en virtud de este Acuerdo de conciliación de salud mental de ADA a través del "Proceso de resolución de controversias" que se establece en la Sección VII, "Proceso de resolución de controversias" de la Fase 1 Decreto de consentimiento, como aclarado por ciertas estipulaciones y acuerdos establecidos en los docs. nos. 518, 563, 575, 638, y 696, todas ellas aprobadas por el Tribunal en la Resolución final, excepto en el caso de controversias relativas a la terminación de cualquier decreto de consentimiento que pueda ser presentado en este asunto discutido en la Sección IV .4 de este Acuerdo de conciliación de salud mental de ADA, *supra.*

## IX.   RESERVA DE JURISDICCIÓN Y APLICACIÓN

1.       Las Partes aceptan la reserve y el ejercicio de la jurisdicción por el Tribunal sobre las controversias entre las Partes y entre las Partes derivadas de este Acuerdo de conciliación de salud mental de ADA.

246932.7

2. A los efectos de la jurisdicción y la aplicación de este Acuerdo de conciliación de salud mental de ADA solamente, las Partes solicitan conjuntamente al Tribunal que resuelva que el mismo satisface los requisitos de 18 U.S.C. § 3626(a)(l)(A) en que esté estrechamente elaborado, que no se extiende más allá de lo necesario para corregir la violación de un derecho federal, y es el medio menos intrusivo necesario para corregir la violación de los derechos federales de los Demandantes.

3. El Tribunal mantendrá la jurisdicción para hacer cumplir los términos de este Acuerdo de conciliación de salud mental de ADA, una vez aprobado, hasta que el acuerdo sea terminado.

4. Este Acuerdo de conciliación de salud mental de ADA puede ser ejecutado solo por las Partes. Nada de lo contenido en este acuerdo pretende, o se interpreta, para evidenciar la intención de conferir o cualquier derecho de recurso sobre cualquier persona que no sea Parte.

## X. TERMINACIÓN

1. ADOC puede solicitar la terminación de sus obligaciones en virtud de este Acuerdo de conciliación de salud mental de ADA al encontrar que está en Cumplimiento sustancial con sus términos y ha mantenido el Cumplimiento sustancial por al menos doce (12) meses consecutivos. ADOC no podrá obtener la terminación de sus obligaciones en virtud de este acuerdo hasta cinco (5) años después de la fecha de la Resolución final.

2. Si el Tribunal concluye, a solicitud de terminación, que ADOC cumple con todos los términos y condiciones de este Acuerdo de conciliación de salud mental de ADA, el Tribunal puede terminar la jurisdicción de la parte o partes de este caso sujeto a este Acuerdo de conciliación de salud mental de ADA.

3. Las Partes trabajarán de buena fe para lograr el Cumplimiento sustancial con todos los términos y condiciones de este Acuerdo de conciliación de salud mental de ADA dentro de los parámetros de tiempo expresados. Si los Demandantes creen que ADOC no está en o progresando hacia el Cumplimiento sustancial con los términos y condiciones de este Acuerdo de conciliación

De salud mental de ADA, los Demandantes pueden solicitar una orden ampliando la jurisdicción sobre este asunto más allá del período máximo aquí contemplado. Para ampliar la jurisdicción, se requerirá a los Demandantes que establezcan pruebas sustanciales y el Tribunal determinará expresamente que ADOC no está en Cumplimiento sustancial con este Acuerdo de conciliación de salud mental de ADA o con cualquier Resolución subsiguiente establecida por el Tribunal.

## XI.    MODIFICACIONES

1.      De mutuo acuerdo, las Partes pueden cambiar los términos de este Acuerdo de conciliación de salud mental de ADA (excepto las disposiciones de Monitoreo que se expresan aquí), incluyendo, pero no limitándose a los calendarios para tomar acciones específicas, siempre que tales modificaciones sean conmemoradas por escrito, firmadas por las Partes o por su abogado, y aprobadas por el Tribunal.

2.      ADOC no puede hacer cambios sustanciales a ninguna política, procedimiento, regulación o norma que entre en conflicto con los términos de este Acuerdo de conciliación de salud mental de ADA. ADOC proveerá o pondrá a disposición del abogado de los Demandantes, cualquier política, procedimiento, regulación o norma que implemente las disposiciones de este acuerdo, para su revisión y comentario.

3.      Se espera que la Iniciativa de transformación penitenciaria de Alabama ("APTI") sea considerada durante o antes de la Asamblea general 2017 de la Legislatura de Alabama. En caso de que la Legislatura de Alabama apruebe la APTI antes de la conclusión del Período ordinario de asambleas de la Legislatura de Alabama de 2017, de tal manera que haya autorizado la autoridad para la construcción de nuevas instalaciones penitenciarias, las Partes acuerdan a reunirse y reevaluar los plazos aquí discutidos y en la Fase 1 Decreto de consentimiento. Si las Partes no pueden llegar a un acuerdo sobre plazos modificados o suplementarios para estas disposiciones, basados en la construcción de nuevas instalaciones autorizadas por la APTI, las Partes someterán

esas cuestiones al "Proceso de resolución de controversias" discutido en la Fase 1 Decreto de consentimiento.

4.     ADOC no puede aprobar ningún cambio en la política, procedimiento, regulación o norma por su proveedor de Servicios médicos y/o de salud mental que entra en conflicto con los términos de este Acuerdo de conciliación de salud mental de ADA.

## XII.   FINANCIAMIENTO

1.     Las Partes reconocen que la implementación de los términos de este Acuerdo de conciliación de salud mental de ADA y cualquier plan necesario para realizar sus términos están sujetos a la disponibilidad de fondos apropiados.

2.     Las Partes reconocen además que la falta de fondos no impide que el Tribunal presente una Orden para lograr el cumplimiento de este acuerdo que concuerda con las disposiciones aplicables de la Ley de reforma de litigios penitenciarios, 18 U.S.C.  § 3626, y con otra ley aplicable, siempre que ADOC se reserve el derecho de afirmar que la falta de fondos debe ser tenida en cuenta en cualquier orden correctiva.

3.     ADOC se compromete a hacer todos los esfuerzos posibles de buena fe para buscar todos los fondos necesarios para implementar los términos de este Acuerdo de conciliación de salud mental de ADA. En el caso de que las Partes no puedan llegar a un acuerdo sobre si hay fondos suficientes para implementar este acuerdo, las Partes se reunirán y concertarán, y si es necesario, consultarán con el Tribunal. En caso de que las Partes no pueden llegar a un acuerdo, cualquiera de las Partes podrá solicitar asistencia a el Tribunal.

## XIII.   HONORARIOS Y GASTOS DE ABOGADOS

1.     Honorarios y gastos legales. ADOC se compromete a pagar los honorarios legales y costos asociados para el abogado de los Demandantes, por la cantidad total de $250,000.00. Esta suma es adicional y complementaria de las sumas que ADOC ha pagado o aceptado pagar a los abogados de los Demandantes en la Fase 1 Decreto de consentimiento. Los Demandantes están de

246932.7

acuerdo en que ADOC puede pagar la suma en o antes de los treinta (30) días de la aprobación final de el Tribunal de este Acuerdo de conciliación de salud mental de ADA. Dichos pagos serán remitidos al bufete de abogados de Zarzaur Mujumdar & Debrosse. Se renuncia al interés sobre tales sumas. ADOC reconoce que el abogado de los Demandantes ha estado involucrado en el procesamiento de otros reclamos en este caso más allá de los resueltos por este Acuerdo de conciliación de salud mental de ADA. ADOC reconoce que el pago de la suma anterior es por trabajo y costos asociados a los reclamos resueltos en este documento y que los abogados de los Demandantes se reservan el derecho de solicitar honorarios y costos legales por reclamos no tratados en este Acuerdo de conciliación de salud mental de ADA.

2.      Honorarios y gastos de monitoreo. El monto de los honorarios que deben pagarse a los abogados de los Demandantes por los servicios de monitoreo relacionados con las obligaciones creadas por este Acuerdo de conciliación de salud mental de ADA será limitado y no excederá un total de las siguientes cantidades adicionales a las expresadas en la Fase 1 Decreto de consentimiento:

a.      Año uno: $12,000.00

b.      Año dos: $12,000.00

c.      Año tres: $12,000.00

d.      Año cuatro: $12,000.00

e.      Año cinco: $12,000.00

f.      Año seis: $12,000.00

Para los fines de describir los períodos antedichos, el tiempo comienza con la aprobación final de este Acuerdo de conciliación de salud mental de ADA por el Tribunal. El abogado de los Demandantes se compromete a no solicitar al Tribunal la concesión de honorarios y gastos por los servicios de monitoreo relacionados con las obligaciones creadas por este Acuerdo de conciliación

de salud mental de ADA mayor que las sumas anteriores. El abogado de los Demandantes proporcionará trimestralmente a ADOC las horas detalladas gastadas para estos servicios de monitoreo. ADOC se compromete a pagar una tarifa por hora de $195.00 por servicios prestados en el proceso de monitoreo. En caso de controversia sobre las sumas facturadas o pagadas por servicios de monitoreo, las Partes se reunirán y concertarán y tratarán de acordar el pago de los servicios de monitoreo prestados. En caso de que las Partes no puedan llegar a un acuerdo sobre el número razonable de horas gastadas, cualquiera de las Partes podrá solicitar la asistencia del árbitro o del Tribunal si las Partes no pueden ponerse de acuerdo.

3.     Los límites máximos anuales y las tarifas por hora que se describen en este document no se aplican a: (a) las mociones de los Demandantes para hacer cumplir los términos de este Acuerdo de conciliación de salud mental de ADA; y, (b) la oposición de los Demandantes a cualquier moción presentada por ADOC derivada de este acuerdo. No se pagarán honorarios y gastos legales de los Demandantes por tales mociones u oposiciones a menos que el Tribunal determine: (a) que la moción u oposición era necesaria para hacer valer derechos sustanciales en virtud de las Leyes; y, (b) que los Demandantes trataron de resolver el asunto y/o estrechar las cuestiones tanto como sea posible reuniéndose y conferenciando con ADOC, aprovechando la oportunidad de recurrir al proceso de mediación antes de presentar las cuestiones al Tribunal. El abogado de los Demandantes se compromete a no solicitar honorarios y costos legales por un monto de más de $200,000 por año en mociones para hacer cumplir los términos de la Fase 1 Decreto de consentimiento y este Acuerdo de conciliación de salud mental de ADA.

## XIV.  PROVISIONES ADICIONALES

1.     Este Acuerdo de conciliación de salud mental de ADA constituye el acuerdo complete entre las Partes en cuanto a todos los reclamos contenidos aquí. Cada parte representa que tiene plena autoridad legal para firmar y ejecutar este Acuerdo de conciliación de salud mental de ADA.

246932.7

2.      Este Acuerdo de conciliación de salud mental de ADA no podrá ser alterado o enmendado, excepto por escrito y firmado por todas las Partes o sus representantes.

3.      Este Acuerdo de conciliación de salud mental de ADA será vinculante para todos los sucesores, cesionarios, empleados, agentes, y todos los demás que trabajan en nombre de los Demandantes y ADOC.

4.      Este Acuerdo de conciliación de salud mental de ADA puede ser ejecutado en contrapartes y dichas contrapartes serán entregadas a todas las Partes inmediatamente después de su ejecución.

_Date:_ 12-29-16

Rhonda Brownstein    Fecha:
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama 36104
(334) 956.8200
rhonda.brownstein@splcenter.org
_Uno de los Abogados para los Demandantes_

_Date:_ 12/30/16

Maria V. Morris    Fecha:
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama 36104
(334) 956-8200
maria.morris@splcenter.org
_Uno de los Abogados para los Demandantes_

Date: 1/4/17

James A. Tuker, Executive Director          Fecha:
Programa de Defensa de Discapacidades de Alabama
Box 870395
Tuscaloosa, Alabama 35487

Date: 12/29/2016

J. Patrick Hackney          Fecha:
Programa de Defensa de Discapacidades de Alabama
Box 870395
Tuscaloosa, Alabama 35487
(205) 348-4928
jphackney@adap.ua.edu
*Uno de los Abogados para los Demandantes*

Date: 1-4-17

William Van Der Pol, Jr.          Fecha:
Programa de Defensa de Discapacidades de Alabama
Box 870395
Tuscaloosa, Alabama 35487
(205) 348-4928
wvanderpoljr@adap.ua.edu
*Uno de los Abogados para los Demandantes*

2469322 7

Date: 1-3-2017

Anil A. Mujumdar                                    Fecha:
Zarzaur Mujumdar & Debrosse – Abogados del Juicio
2332 2nd Avenue North
Birmingham, Alabama 35203
(205) 983-7985
anil@zarzaur.com
*Uno de los Abogados para el Demandante Alabama Disabilities Advocacy Program*

_____ Date: 1/6/17

William G. Somerville                    Fecha:
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
420 North 20th Street, Suite 1600
Birmingham, Alabama 35203-5202
(205) 250-8375
wsomerville@bakerdonelson.com
*Uno de los Abogados para los Demandantes*

246932.7

_David R. Boyd_      Date: __01 / 11 /17__

David R. Boyd      Fecha:
Balch & Bingham LLP
P.O. Box 78
Montgomery, Alabama 36101
(334) 834-6500
dboyd@balch.com
*Uno de los Abogados para el Demandado del Departamento Correccional de Alabama*

     Date: __1 / 11 /17__

John G. Smith      Fecha:
Balch & Bingham LLP
P.O. Box 78
Montgomery, Alabama 36101
(334) 834-6500
jgsmith@balch.com
*Uno de los Abogados para el Demandado del Departamento Correccional de Alabama*

245932.7

Date: _January 11, 2017_

Anne Hill, General Counsel                                Fecha:
Departamento Correccional de Alabama
301 South Ripley Street
Montgomery, Alabama 36130
(334) 353-3885
anne.hill@doc.alabama.gov
*Uno de los Abogados para el Demandado del Departamento Correccional de Alabama*

Date: _11 / Jan 2017_

Jefferson Dunn                                            Fecha:
En su carácter oficial de Comisionado
    de Departamento Correccional de Alabama
301 South Ripley Street
Montgomery, Alabama 36130

246932.1



**Translation Cloud LLC**
121 Newark Ave., 3rd Floor
Jersey City, NJ 07302
1 (800) 790-3680

Project Manager: Kavita Ramgahan
Document Translation
Translation from English to Spanish
March 1, 2017