# EXHIBIT C

# IN THE UNITED STATES DISTRICT COURT FOR THE MIDDLE DISTRICT OF ALABAMA NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | CIVIL ACTION NO.: |
| v. | ) ) | 2:14-cv-00601-MHT-TFM |
| JEFFERSON S. DUNN, *et al.*, | ) ) | |
| Defendants. | | |

# SETTLEMENT AGREEMENT CONCERNING MENTAL HEALTH CLAIMS ARISING UNDER THE AMERICANS WITH DISABILITIES ACT AND §504 OF THE REHABILITATION ACT OF 1973

# TABLE OF CONTENTS

I.   INTRODUCTION ...................................................... 3

II.  STATEMENT OF PARTIES, PURPOSE AND INTENT ........................................................................... 4

III. PRELIMINARY AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT .................................. 7

IV.  DEFINITIONS AND STIPULATIONS ................... 8

V.   SUBSTANTIVE PROVISIONS ........................... 12

    1. Introduction ....................................................... 12
    2. Phase 1 Consent Decree ................................... 12
    3. Adaptive Behavior/Life Skills Training ............. 13
    4. Frequency of Provision of Programming .......... 13
    5. Transfer of Inmates While They are Enrolled in the Program ................................................................ 15
    6. Adaptive Behavior/Life Skill Programming Components ................................................................ 15

VI.  NOTICE ................................................................ 17

VII. MONITORING ....................................................... 18

VIII.   DISPUTE RESOLUTION PROCESS ............... 19

IX.  RESERVATION OF JURISDICTION AND ENFORCEMENT ........................................... 19

X.   TERMINATION ..................................... 20

XI.  AMENDMENTS .................................... 21

XII. FUNDING ............................................ 22

XIII.   ATTORNEYS' FEES AND EXPENSES .......... 22

XIV.   ADDITIONAL PROVISIONS ........................... 24

246932.7

# I.   INTRODUCTION

1.   On June 17, 2014, the individually named plaintiffs and the Alabama Disabilities Advocacy Program ("ADAP") filed the instant lawsuit (the "Lawsuit") challenging, among other things, the compliance of the Alabama Department of Corrections ("ADOC") with the provisions of the Americans with Disabilities Act, 42 USC § 12111, *et seq.*, including the ADA Amendment Acts of 2008, 42 USC 12001 *et seq.*, (collectively, the "ADA") and §504 the Rehabilitation Act of 1973, 29 USC § 701, *et seq.* ("Rehabilitation Act") (the ADA and Rehabilitation Act are jointly referred to herein as the "Acts.")

2.   Certain of the Plaintiffs' claims arising under the Acts were resolved, on a class-wide basis, by order of September 9, 2016. See "Phase 1 Final Settlement Approval and Order" (doc. no. 727) ("Final Order.") However, specifically excluded from and not resolved by the Final Order were any claims under the Acts of any current of future Inmate with a disability as defined in 42 U.S.C. § 12102 and 29 U.S.C. § 705(9)(B) that relates solely to or arises solely from mental disease, illness, or defect. (doc. no. 727 at 114.) The Court entered a "Consent Decree Concerning Claims Arising Under the Americans with Disabilities Act and §504 of the Rehabilitation Act of 1973, and Resolving the Phase 1

246932.7

Trial of These Proceedings" (doc. no. 728) ("Phase 1 Consent Decree") upon the entry of the Final Order.

3.    Since the entry of the Final Order and Phase 1 Consent Decree, the Parties have worked to resolve the remaining claims brought by Plaintiffs under the Acts. The Parties believe that they have reached such a resolution and that, in order to avoid additional protracted, costly and uncertain litigation, it is in their respective best interests to resolve the remaining, unresolved issues arising under the Acts.

4.    Accordingly, the Parties, by and through their respective counsel, jointly stipulate and agree to the following provisions to resolve those pending claims

246932.7

brought by Plaintiffs under the Acts that were not resolved by the Final Order and Phase 1 Consent Decree.

## II. STATEMENT OF PARTIES, PURPOSE, AND INTENT

1.   Named defendant ADOC is the agency of the State of Alabama in charge of the state-owned and operated prisons and work release facilities in Alabama that currently or may in the future have physical custody of the individually named plaintiffs.

2.   The individually named plaintiffs are currently, or may in the future be, in the physical custody of ADOC.

3.   Plaintiff ADAP is the duly authorized protection and advocacy agency in the State of Alabama. It has

246932.7

asserted its associational standing to bring claims on behalf of current and future inmates within the physical custody of ADOC who have disabilities relating to or arising from mental disease, illness or defect.

4. The individually named plaintiffs seek class certification of their remaining, unresolved claims asserted in this Lawsuit under the Acts. As part of this agreed resolution of the claims, ADOC consents to the certification, under Federal Rule of Civil Procedure 23, of a class whose members (the "Class") are defined as "any current or future inmate in the physical custody of ADOC who has a disability as defined in 42 U.S.C. § 12102 and 29 U.S.C. § 705(9)(B) relating to or arising from mental disease, illness, or defect." ADOC does not consent to

246932.7

class certification for any purpose other than the settlement of Plaintiffs' claims under the Acts.

5.    The individually named plaintiffs, the Class, and ADAP are collectively referred to herein as "Plaintiffs."

6.    The Plaintiffs and ADOC are collectively referred to as the "Parties."

7.    The purpose of this "Settlement Agreement Concerning Mental Health Claims Arising Under the Americans With Disabilities Act and §504 of the Rehabilitation Act of 1973" ("ADA Mental Health Settlement Agreement") is to settle and resolve all issues brought by Plaintiffs under the Acts that were not resolved by the Final Order (doc. no. 727) and Phase 1 Consent Decree (doc. no. 728) and that have not been

246932.7

dismissed prior to the date of this ADA Mental Health Settlement Agreement.  It is the intent of the Parties by this ADA Mental Health Settlement Agreement to resolve and settle all remaining claims brought in this Lawsuit under the Acts, specifically those raised in Count 4 of the Complaint, as amended, that have not heretofore been settled or dismissed.

8.   The Parties may not use this ADA Mental Health Settlement Agreement for any purpose in this Lawsuit except as evidence of what has or has not been resolved by this ADA Mental Health Settlement Agreement.

9.   Nothing in this ADA Mental Health Settlement Agreement will be construed as an admission by ADOC of the violation of any law.  To the contrary, ADOC

246932.7

denies every material allegation of the Complaint, as amended, and denies any liability to the Plaintiffs. This ADA Mental Health Settlement Agreement does not constitute, and will not be construed as, an admission or evidence of any act of deliberate indifference to the constitutional rights of any Inmate, or of any violation of the Acts.

10. The Parties stipulate that nothing in this ADA Mental Health Settlement Agreement will be used for any purpose outside of this Lawsuit or against any named Defendant in any other litigation that has been or may be filed against any named Defendant. Nothing in this ADA Mental Health Settlement Agreement will be construed to require ADOC to do more than what is required by the

246932.7

Acts, court decisions applying or interpreting the Acts, or rules and regulations interpreting the Acts.

11.  The Parties believe that this ADA Mental Health Settlement Agreement is fair, reasonable, and adequate to protect the interests of all Parties concerning the issues contained herein.  The Parties jointly file this ADA Mental Health Settlement Agreement with the Court and, as discussed more fully below, ask that the Court enter a temporary restraining order enforcing the Substantive Provisions of this ADA Mental Health Settlement Agreement and thereafter issue an order directing notice to the Class, setting an objection period, and setting a fairness hearing for preliminary approval, conduct a

246932.7

fairness hearing, and that the Court then approve the Class and the settlement as final.

12.  However, and in the event that this ADA Mental Health Settlement Agreement is not approved by the Court such that it settles and resolves, on a class basis, all remaining issues in this Lawsuit to be tried under the Acts, the Parties retain all of their pre-settlement litigation rights and defenses, including ADOC's right to petition for interlocutory review of any order granting class certification.  Additionally, and in the event that this ADA Mental Health Settlement Agreement is not approved by the Court such that it settles and resolves, on a class basis, all remaining issues in this Lawsuit to be tried under the Acts,   any order entered by the Court to enforce any

246932.7

provision of this ADA Mental Health Settlement Agreement (including, but not limited to, any temporary restraining order) shall be immediately dissolved and withdrawn and the Parties shall return to the status quo ante in the Lawsuit as if the Parties had not entered into this ADA Mental Health Settlement Agreement. Any discussions, offers, or negotiations associated with this ADA Mental Health Settlement Agreement will not be discoverable or offered into evidence or used in the Lawsuit or any other action or proceeding for any purpose, without prejudice to Plaintiffs' right to seek class certification, and ADOC's right to oppose class certification. In such event, all Parties will stand in the same position as if this ADA Mental Health Settlement

246932.7

Agreement had not been negotiated, made or filed with the Court and the Court had not entered any temporary restraining order to enforce all or any portion of this ADA Mental Health Settlement Agreement.

## III. PRELIMINARY AND FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1.    Entry of Temporary Restraining Order. At the time of execution of this Agreement, some of the Parties are engaged in the trial of that portion of this Lawsuit denominated as Phase 2A. The Parties recognize that the trial of Phase 2A likely prevents them and the Court from completing, in an expeditious manner, the necessary preliminary and final approval filings, hearings and the like concerning this ADA Mental Health Settlement

246932.7

Agreement. Accordingly, the Parties consent to the entry of a Temporary Restraining Order that requires the implementation of the requirements Section V. "Substantive Provisions" of this ADA Mental Health Settlement Agreement. Within seven (7) days after all necessary signatories have executed this ADA Mental Health Settlement Agreement, the Parties will submit the same to the Court and will jointly request the Temporary Restraining Order described above.

2.    Preliminary Approval.   No later than fourteen (14) days following the completion of testimony in the Phase 2A trial, the Parties will jointly submit this ADA Mental Health Settlement Agreement to the Court for preliminary approval, along with a proposed order for

246932.7

preliminary approval, a schedule for notice, proposed notices of preliminary approval, a schedule for an objection period, and a request for a fairness hearing under Rule 23(e) of the Federal Rules of Civil Procedure.

3.   Final Approval.   Within sixty (30) days of Preliminary Approval of the ADA Mental Health Settlement Agreement, the Parties will file with the Court any additional agreement or agreements, which will include notice provisions, a proposed Final Approval Order, and comply with all provisions of Rule 23(e) of the Federal Rules of Civil Procedure so that the Court may, if it deems appropriate, grant final approval to this ADA Mental Health Settlement Agreement.

## IV. DEFINITIONS AND STIPULATIONS

1.    Phase 1 Consent Decree Definitions Adopted. Unless expressly stated herein, all terms used in this ADA Mental Health Settlement Agreement have the same definitions identified and used in the Phase 1 Consent Decree, all of which are adopted as if set out herein in full.

2.    Defendant Naglich.   The Parties stipulate that there are no individual or class claims, including putative class claims, under the Acts asserted against Defendant Ruth Naglich, named in her official capacity as Associate Commissioner of Health Services for the Alabama Department of Corrections.

3.    Official Capacity Defendant. Jefferson Dunn, in his official capacity as Commissioner of the Alabama

Department of Corrections, is currently a named defendant in this Lawsuit with respect to the claims asserted under the Eighth Amendment and Fourteenth Amendment of the United States Constitution, and is, in his official capacity as Commissioner of the Alabama Department of Corrections, a party to the Phase 1 Consent Decree. However, he is not a named defendant with respect to the remaining claims raised in this Lawsuit under the Acts. To avoid certain possible issues with this proposed ADA Mental Health Settlement Agreement that resolves all remaining claims asserted in this Lawsuit under the Acts, specifically, those claims asserted in Count 4 of the Complaint, as amended, it is hereby agreed:

246932.7

(a)   That, without the necessity of a separate amendment to the Complaint, Commissioner Dunn is, in his official capacity as Commissioner of the Alabama Department of Corrections, added (1) as a defendant to the claims addressed in this proposed ADA Mental Health Settlement Agreement and (2) as a named party to this proposed ADA Mental Health Settlement Agreement.

(b)   That, should this proposed ADA Mental Health Settlement Agreement not be approved by the Court, or any approval be later withdrawn or overturned, this provision shall be of no force or effect and the status quo ante restored with respect to Commissioner Dunn's party status.

4.   PLRA.

(a) The Prison Litigation Reform Act ("PLRA") provides that, in any civil action in which a court orders prospective relief, such prospective relief shall be terminable on motion of any party two (2) years after it is ordered. *See* 18 U.S.C. § 3626(b).

(b) The Parties agree that, for purposes of settling all remaining claims in Count 4 of the Complaint, as amended, 18 U.S.C. § 3626(b) does not require this Court to terminate prospective injunctive relief after two (2) years. Instead, Section 3626(b) merely allows a party to move to have such relief terminated.

(c) ADOC stipulates and agrees that its right to seek termination under 18 U.S.C. § 3626(b) may be waived by consent or agreement. *See Depriest v.*

246932.7

*Walnut Grove Corr. Auth.*, No. 3:10-CV-663-CWR-FKB, 2015 WL 3795020, at *6 (S.D. Miss. June 10, 2015) ("Nothing about the PLRA prohibits parties from agreeing to termination conditions different than those contained in the PLRA."). This stipulation is consistent with the plain text of the PLRA. Section 3626(c) governs the approval of consent decrees. *See* 18 U.S.C. § 3626(c). Subsection (c) of 18 U.S.C. § 3626 requires that any consent decree must comply with the provisions of 18 U.S.C. § 3626(a). That is, the prospective relief ordered in a consent decree must be narrowly drawn, extend no further than necessary to correct the violation of the federal right, and must be the least intrusive means necessary to correct the violation. *See* 18 U.S.C. §

246932.7

3626(c)(1) (requiring that any consent decree must satisfy the requirements of Section 3626(a).)  Nothing in Sections 3626(a) or (c) prevents the Parties from agreeing to limit or alter their rights under Section 3626(b).

(d)  Accordingly, and in consideration of the settlement of the claims resolved by this ADA Mental Health Settlement Agreement, ADOC agrees that it will not seek to terminate, under 18 U.S.C. § 3626(b), the prospective injunction mandated by this ADA Mental Health Settlement Agreement until at least sixty (60) months after the date of the entry of the Phase 1 Consent Decree. Put another way, ADOC hereby waives its right to terminate the prospective injunctive relief mandated by this ADA Mental Health Settlement Agreement until at

246932.7

least 60 months after the date of entry of the Phase 1 Consent Decree.

(e)   The Parties stipulate and agree that this is a narrow and limited waiver that shall only apply to the prospective, injunctive relief ordered as part of this ADA Mental Health Settlement Agreement. The waiver is necessary due to the unique factual circumstances of this case. Specifically, the remedial plan set forth in this ADA Mental Health Settlement Agreement will take more than two (2) years to implement, which would be beyond the two (2)-year sunset provision of the PLRA.

(f)   ADOC acknowledges and agrees that it may seek termination under Section 3626(b) between sixty (60) months and seventy-two (72) months after the

date of entry of the Phase 1 Consent Decree. Upon a finding that ADOC has been in substantial compliance with this ADA Mental Health Settlement Agreement for the twelve (12) months before the motion to terminate is filed, this Court shall immediately terminate any prospective relief.

(g)  ADOC acknowledges and agrees that, unless this Court makes the specific findings required by 18 U.S.C. § 3626(b)(3), the prospective relief required by this ADA Mental Health Settlement Agreement will terminate seventy-two (72) months after the date of entry of the Phase 1 Consent Decree.

(h)  The Parties further stipulate and agree that any motion to terminate the prospective, injunctive

246932.7

relief ordered or agreed upon by this ADA Mental Health Settlement Agreement must be heard by the Court and may not be heard or decided by the arbitrator described in the Phase 1 Consent Decree.

(i)     This stipulation is consistent with the language of the PLRA. Section 3626(b)(3) states that, upon a motion to terminate, prospective, injunctive relief "shall not [immediately] terminate **if the court** makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least

intrusive means to correct the violation." *See* 18 U.S.C. § 3626(b)(3) (emphasis added).

(j)   For the purposes of this ADA Mental Health Settlement Agreement, the Parties interpret this provision as requiring the Court to hear any motion to terminate brought under 18 U.S.C. § 3626.

(k)   Further, the Phase 1 Consent Decree requires that "If, upon request for termination, **the Court** concludes that the ADOC is in Substantial Compliance with all terms and conditions of this Amended Agreement, then **the Court** may terminate jurisdiction of the portion or portions of this case subject to this Amended Agreement." (Doc. 518 at 73) (emphasis added). The Parties expressly adopt this requirement as

part of this ADA Mental Health Settlement Agreement. Thus, the Parties have not delegated the decision on the request for termination to the arbitrator and agree that it would be decided by this Court.

5.   Dismissed Claim.   No provision of this ADA Mental Health Settlement Agreement applies, or is intended to apply, to the identification, tracking and accommodation of any intellectual disability of any current or future Inmate in the custody of ADOC under a death sentence.   Any such claim or claims was or were specifically excluded from the Phase 1 Consent Decree and thereafter dismissed from this Lawsuit, without prejudice, on joint motion of the parties on November 4, 2016.   *See* doc. nos. 727, 911 and 925. The Parties agree

that the intent of this provision is to remove from the resolution of the claims Plaintiffs have asserted under the Acts any claim concerning the identification, tracking and accommodation of any intellectual disability of any current or future Inmate in the custody of ADOC under a death sentence and does not allow for, create or provide any new or additional manner or method by which any such inmate could challenge his or her death sentence.

## V.   SUBSTANTIVE PROVISIONS

1.   Introduction.  The Parties have jointly developed and agreed upon certain provisions described below that are  designed  to  provide  for  care,  services, accommodations, programs, and activities for Inmates consistent with the terms of this ADA Mental Health

Settlement Agreement and the Acts. These provisions are intended to ensure that Inmates are not, on the basis of disability, exposed to substantial harm and that Inmates are not, on the basis of disability, subject to discrimination.

2.    Phase 1 Consent Decree. The provisions of that portion of the Phase 1 Consent Decree (doc. no. 728) entitled V. "Substantive Provisions" are adopted as of set forth herein at length and apply to the claims resolved and settled by this ADA Mental Health Settlement Agreement. The Parties further agree that this ADA Mental Health Settlement Agreement applies the provisions of the Phase 1 Consent Decree to the class of Inmates defined by Section II. 4. of this ADA Mental

Health Settlement Agreement unless expressly indicated otherwise herein.

3.    Adaptive Behavior/Life Skills Training.  ADOC agrees to provide Adaptive Behavior/Life Skills Training for the following individuals who are in ADOC's physical custody for a period of  no less than 181 consecutive calendar days:

(a)  Any Inmate who is diagnosed as having an Intellectual Disability pursuant to the testing protocol described in the Phase 1 Consent Decree; or

(b)  Any Inmate who meets the IQ prong and the Adaptive Behavior prong as defined under the Phase I Consent Decree, but who does not meet the "age of onset" requirement of the DSM-V. This shall include

246932.7

Inmates who have developed a medical condition which substantially affects mental cognition and adaptive skills consistent with the standard set forth under the Phase 1 Consent Decree and whose primary care physician's assessment concludes that such programming will be beneficial to the Inmate. In that instance, the Inmate's primary care physician will prescribe programming specific to the Inmate's needs and abilities; or

(c) Any other Inmate whom ADOC determines would substantially benefit from such training.

4.   Frequency of Provision of Programming.

(a) Within six (6) months of identification of an Inmate meeting any of the above criteria, ADOC shall enroll an Inmate meeting the criteria described

above into the "Adaptive Behavior/Life Skills Training Program" (the "Program") as described herein.   All reasonable and necessary accommodations will be afforded such Inmate consistent with the terms of the Phase 1 Consent Decree and the Acts.   Routinely, all such topics contained within the Program shall be completed within six (6) calendar months of enrollment. The time for completion may be extended where a specific Inmate has such profound limitations such that he or she cannot participate in the Program at the same pace as other Inmates within the Program.  If such were to occur, ADOC will evaluate and modify the Program on an individual basis for such Inmate to ensure that such

246932.7

Inmate is able to receive the fundamental portions of the information.

(b) The Program will be provided to Inmates regardless of their security classification. The Program may be provided by ADOC Psychological Associates or similarly situated and trained individuals employed by ADOC or any third party contractor (collectively or individually, the "Instructor"). The number of Inmates enrolled in a particular ADOC facility's Program will be small enough to ensure meaningful participation by affected Inmates, but in no event shall be greater than twenty (20) Inmates per class.

(c) Thereafter, every other year, any such Inmates who remain within ADOC's physical custody

shall undergo a refresher class covering the topics in the Program. The refresher course may be a repeat of the entire Program that had been provided (updated as appropriate) or an abbreviated version of such program so long as the abbreviated version returns the Inmate to the level of functioning he or she had attained at the completion of the initial Program.

5. Transfer of Inmates While They are Enrolled in the Program.

(a) ADOC will attempt to minimize the transfer of Inmates while they are actively participating in the Program. If ADOC determines that an Inmate needs to be transferred to another ADOC facility while the Inmate is enrolled in the Program, then the sending

institution will, within seven (7) working days of transfer, discuss in person, telephonically, or by email, with the receiving institution the current status, issues, and mental health needs of the transferring Inmate.

(b)  Inmates will be assigned a Case Manager at their assigned institution.  This person's responsibility will be to evaluate and review what Program courses, if any, the Inmate has not completed. The Case Manager will enroll the Inmate into any Program courses the Inmate has not completed.   The Case Manager will meet with the Inmate a minimum of once per year to assess remedial needs.

(c)  Transfer of an Inmate will not constitute a reason, on its own, for a failure to complete the Program

within the allotted six (6) month period as described herein.

6.    Adaptive Behavior/Life Skill Programming Components.

(a) The initial Program shall be at least twenty-two (22) hours in total duration.  Inmates will be provided instruction concerning the topics included within the Program in classes not to exceed ninety (90) minutes each. The Instructor of a class must assess whether participating Inmates have fully understood the materials presented in that class. If an Inmate is unable to understand and retain the information provided during a class, appropriate steps must be taken to solve this issue, to include providing the Inmate with additional

246932.7

classes.  Any additional class required as a result shall not count against the twenty-two (22) hour period.

(b)  The following general topics and areas must be included within the Program:

(i)  Decision Making.  The Program must include a topic to teach Inmates to how to make good decisions, to identify skills and strategies to be employed in making such decisions, the existence, identity, and method to secure assistance when appropriate in making good decisions.  The topic will cover how to avoid becoming a victim or being inappropriately influenced by other Inmates.

246932.7

(ii)  Stress Management.  The Program will address this topic in order to alleviate and minimize stress within the prison context.  This topic will be designed specifically for Inmates with limited cognitive abilities.

(iii) Communication   Skill   Building. This topic will consist of direct training regarding each method by which an Inmate may secure an accommodation, medical and mental health care, access to programming to include educational, vocational, and rehabilitative, other programming such as recreational, religious, and leisure (such as commissary).  It also will include training on how an Inmate can stay

informed about current regulations and any changes within the facility where the Inmate is housed.  This topic must include a discussion of the Prison Rape Elimination Act ("PREA") and ADOC procedures for notifying the ADOC of a violation.

(iv) Risk Taking Consequences.  This topic shall consist of modules outlining various common forms of risk taking activities and a practical discussion of the consequences of such actions.  It shall include a discussion of drug usage, sexual activity, and violation of facility rules and regulations.

246932.7

(v)  Self Help.  This topic shall include a discussion of available methods by which an Inmate may develop necessary skills to become an independent self-advocate.

(vi) Accessing Prison Services.   This topic should be taught in conjunction with "Communication Skill Building," Section V.5(b)(iii), *supra,* and will consist of an overview of all available prison services both within the ADOC system generally and within the prison in which the Inmate is housed and how to access such available services.

(vii)Hygiene.  This topic is designed to teach basic hygiene and the medical and social

reasons for proper hygiene. Additional subtopics will address healthy living, such as diet, diabetic issues, and weight.

(viii)    Self-Direction.    This   topic shall include a discussion and strategy designed to   encourage   an   Inmate   to   make   positive decisions   and   positively   seek   educational, vocational, and rehabilitative programming. The programming shall actively encourage Inmates to make the best use of their time, and to actively seek appropriate outlets, rather than merely pass the time, while within the custody of ADOC.

(ix) Prison   Rules.    This   topic   shall include an in-depth review of prison rules to

ensure than Inmates are aware of the existence and consequence for violation prison rules and regulations.

## VI. NOTICE

1.   ADOC will post the provisions of this ADA Mental Health Settlement Agreement in each institution's law library, or if there is no law library, the area where other Inmate information is made available in its prison and work release facilities.   ADOC will amend inmate handbooks to include the provisions of this ADA Mental Health Settlement Agreement. The substance of what will be posted in the libraries and in the inmate handbooks will be drafted by ADOC and Plaintiffs jointly.   All such

246932.7

documents will be available in alternative formats to include large print and Braille.

## VII. MONITORING

1.  The Parties agree that monitoring of ADOC's compliance with the terms of this ADA Mental Health Settlement Agreement is necessary and that ADAP will serve as the monitor. ADOC will allow ADAP reasonable access to facilities, documents, staff, procedures, logs, records, Inmates, and other similar informational sources in order to ensure that compliance. ADAP will be entitled to conduct interviews with Inmates and staff to assess compliance with the terms of this ADA Mental Health Settlement Agreement.

2.    ADAP agrees to be bound by any Protective or Court Orders entered in this Lawsuit to protect the confidentiality of Inmate records and sensitive security information.

3.    ADAP will prepare a written report on ADOC's efforts to meet the requirements of this ADA Mental Health Settlement Agreement and any plan to effectuate its terms at least quarterly.  Each report will indicate all areas in which the ADOC is, or is not, in Substantial Compliance.  Such report will be provided to ADOC and all counsel of record.  If ADAP believes that ADOC is not in Substantial Compliance with the terms and provisions of this ADA Mental Health Settlement Agreement and any plan to effectuate its terms, ADAP will provide

246932.7

written recommendations of actions that it believes necessary to achieve Substantial Compliance with the terms of the provision or provisions. ADOC will then have twenty (20) days to provide written comments, objections, or remedial action plans in response. The Parties will meet and confer to attempt to address deficiencies identified by ADAP.

4.   Monitoring will continue for a period consistent with the time period for monitoring expressed in the "Monitoring" provision of section VI. of the Phase 1 Consent Decree, regardless of whether ADOC does or does not build new prisons. In the event that ADOC has undertaken to build new prisons, but has not completed that construction as of January 1, 2020, monitoring will

continue until two (2) years after the completion of the prisons.

5.   If ADAP finds evidence of any violation of law which does not involve the subject matter of this ADA Mental Health Settlement Agreement, it is obligated to report that to the ADOC General Counsel, or her designee.

## VIII.   DISPUTE RESOLUTION PROCESS

1.   The Parties agree to resolve disputes arising under this ADA Mental Health Settlement Agreement through the "Dispute Resolution Process" outlined in section VII., "Dispute Resolution Process" of the Phase 1 Consent Decree, as clarified by certain stipulations and agreements set forth in doc. nos. 518, 563, 575, 638, and

696, all approved by the Court in the Final Order, except for disputes concerning the termination of any consent decree that may be entered in this matter discussed in Section IV.4 of this ADA Mental Health Settlement Agreement, *supra*.

## IX. RESERVATION OF JURISDICTION AND ENFORCEMENT

1.   The Parties consent to the reservation and exercise of jurisdiction by the Court over disputes between the Parties and among the Parties arising out of this ADA Mental Health Settlement Agreement.

2.   For purposes of jurisdiction and enforcement of this ADA Mental Health Settlement Agreement only, the Parties jointly request the Court to find that the same

246932.7

satisfies the requirements of 18 U.S.C. § 3626(a)(1)(A) in that it is narrowly drawn, extends no further than necessary to correct the violation of a federal right, and is the least intrusive means necessary to correct the violation of the federal rights of the Plaintiffs.

3.   The Court will retain jurisdiction to enforce the terms of this ADA Mental Health Settlement Agreement, once approved, until the agreement is terminated.

4.   This ADA Mental Health Settlement Agreement may be enforced only by the Parties hereto.  Nothing contained in this agreement is intended, or will be construed, to evidence an intention to confer any right or remedy upon any person other than the Parties hereto.

## X.  TERMINATION

1.   ADOC may seek a termination of its obligations under this ADA Mental Health Settlement Agreement upon a finding that it is in Substantial Compliance with its terms and has maintained Substantial Compliance for at least twelve (12) consecutive months.  ADOC may not obtain a termination of its obligations under this agreement until five (5) years following the date of the Final Order.

2.   If, upon request for termination, the Court concludes that the ADOC is in Substantial Compliance with all terms and conditions of this ADA Mental Health Settlement Agreement, then the Court may terminate jurisdiction of the portion or portions of this case subject to this ADA Mental Health Settlement Agreement.

3.     The Parties will work in good faith to achieve Substantial Compliance with all terms and conditions of this ADA Mental Health Settlement Agreement within the its expressed  time parameters.  If Plaintiffs believe that ADOC is not in or progressing toward Substantial Compliance with the terms and conditions of this ADA Mental Health Settlement Agreement, Plaintiffs may move for an order extending jurisdiction over this matter beyond the maximum time period contemplated herein.  To extend jurisdiction, Plaintiffs will be required to establish by substantial evidence and the Court will expressly find that ADOC is not in Substantial Compliance with this ADA Mental Health Settlement Agreement or any subsequent Order entered by the Court.

246932.7

# XI. AMENDMENTS

1.   By mutual agreement, the Parties may change terms of this ADA Mental Health Settlement Agreement (except for the Monitoring provisions expressed herein), including but not limited to the timetables for taking specific actions, provided that such modifications are memorialized in writing, signed by the Parties or through their counsel, and approved by the Court.

2.   ADOC may not make any substantial changes to any policy, procedure, regulation, or rule that conflicts with the terms of this ADA Mental Health Settlement Agreement.   ADOC will supply or make available to Plaintiffs' counsel any policies, procedures, regulations,

246932.7

or rules implementing the provisions of this agreement for their review and comment.

3.   The Alabama Prison Transformation Initiative ("APTI") is expected to be considered during or before the 2017 Regular Session of the Alabama Legislature. In the event the Alabama Legislature passes the APTI on or before the conclusion of the 2017 Regular Session of Alabama Legislature such that it has authorized bonding authority for the construction of new prison facilities, the Parties agree to meet and re-evaluate the deadlines discussed herein and in the Phase 1 Consent Decree.   If the Parties cannot agree upon amended or supplemental deadlines for these provisions, based on the construction of new facilities authorized by the APTI, the Parties will

246932.7

submit those issues to the "Dispute Resolution Process" discussed in the Phase 1 Consent Decree.

4.     ADOC may not approve any changes in policy, procedure, regulation, or rule by its Medical and/or Mental Health provider that conflicts with the terms of this ADA Mental Health Settlement Agreement.

## XII. FUNDING

1.     The Parties acknowledge that implementation of the terms of this ADA Mental Health Settlement Agreement and any plan necessary to effectuate its terms are subject to the availability and receipt of appropriated funds.

2.     The Parties further acknowledge that the lack of funding does not preclude the Court from entering an

Order to achieve compliance with this agreement that comports with the applicable provisions of the Prison Litigation Reform Act, 18 U.S.C. § 3626, and with other applicable law, provided that ADOC reserves the right to assert that the lack of funding should be taken into account in any remedial order.

3.   ADOC agrees to make all possible good faith efforts to seek all necessary funding to implement the terms of this ADA Mental Health Settlement Agreement.  In the event that the Parties are unable to agree as to whether there is sufficient funding to implement this agreement, the Parties will meet and confer, and if necessary, consult with the Court.  In the

246932.7

event that the Parties remain unable to agree, any of the Parties may seek assistance of the Court.

## XIII.    ATTORNEYS' FEES AND EXPENSES

1.    Attorney Fees and expenses. ADOC agrees to pay attorneys' fees and associated costs to counsel for the Plaintiffs in the total amount of $250,000.00. This sum is in addition to, and in supplement of, those sums ADOC has paid or agreed to pay to Plaintiffs' counsel in the Phase 1 Consent Decree. Plaintiffs agree that ADOC may pay this sum on or before thirty (30) days of the Court's final approval of this ADA Mental Health Settlement Agreement.  Such payments will be remitted to the law firm of Zarzaur Mujumdar & Debrosse.  Interest on such sums is waived.  ADOC acknowledges that counsel for

246932.7

Plaintiffs have been involved in the prosecution of other claims in this case beyond those resolved by this ADA Mental Health Settlement Agreement. ADOC acknowledges that payment of the above sum is for work and associated costs on the claims resolved herein and that Plaintiffs' counsel reserve the right to seek additional attorneys' fees and costs for claims not addressed by this ADA Mental Health Settlement Agreement.

2. Monitoring fees and expenses. The fee amounts to be paid to Plaintiffs' counsel for monitoring services related to obligations created by this ADA Mental Health Settlement Agreement will be capped at, and not exceed, a total of the following amounts that are in addition to those expressed in the Phase 1 Consent Decree:

246932.7

    a.    Year One: $12,000.00

    b.    Year Two: $12,000.00

    c.    Year Three: $12,000.00

    d.    Year Four: $12,000.00

    e.    Year Five: $12,000.00

    f.    Year Six: $12,000.00

For purposes of describing the above periods, the time commences upon final approval of this ADA Mental Health Settlement Agreement by the Court. Plaintiffs' counsel agrees that they will not seek nor petition the Court for an award of fees and expenses for monitoring services related to the obligations created by this ADA Mental Health Settlement Agreement greater than the above sums. Plaintiffs' counsel will provide ADOC

246932.7

itemized hours expended for these monitoring services on a quarterly basis. ADOC agrees to pay an hourly rate of $195.00 for services rendered in the monitoring process. In the event of any dispute concerning the sums billed or to be paid for monitoring services, the Parties will meet and confer and attempt to agree upon payment for monitoring services rendered. In the event that the Parties are unable to agree upon the reasonable number of hours expended, either party may seek assistance of the arbitrator or the Court if the Parties remain unable to agree.

3.   The annual caps and hourly rates described herein do not apply to: (a) Plaintiffs' motions to enforce the terms of this ADA Mental Health Settlement

246932.7

Agreement; and (b) Plaintiffs' opposition to any motions filed by ADOC arising out of this agreement. No fees and expenses will be awarded to Plaintiffs' counsel for such motions or oppositions unless the Court finds: (a) that the motion or opposition was necessary to enforce substantial rights under the Acts; and (b) that Plaintiffs attempted to resolve the matter and or narrow the issues as much as possible by meeting and conferring with ADOC, taking full opportunity of recourse to the mediation process before presenting the issues to the Court. Plaintiffs' counsel agree that they may not seek attorneys' fees and costs totaling more than $200,000 per year on motions to enforce the terms of the Phase 1 Consent Decree and this ADA Mental Health Settlement Agreement.

246932.7

# XIV.    ADDITIONAL PROVISIONS

1.    This ADA Mental Health Settlement Agreement constitutes the entire agreement among the Parties as to all claims contained herein.  Each party represents that it has full legal authority to enter into and execute this ADA Mental Health Settlement Agreement.

2.    This ADA Mental Health Settlement Agreement may not be altered or amended, except in writing signed by all Parties or their representatives.

3.    This ADA Mental Health Settlement Agreement will be binding on all successors, assigns, employees, agents, and all other working on behalf of Plaintiffs and ADOC.

246932.7

4.    This ADA Mental Health Settlement Agreement may be executed in counterparts and such counterparts will be provided to all Parties immediately upon execution.

246932.7

_____     Date: _____

Rhonda Brownstein
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama  36104
(334) 956.8200
rhonda.brownstein@splcenter.org
*One of the Attorneys for Plaintiffs*

_____     Date: _____

Maria V. Morris
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama  36104
(334) 956-8200
maria.morris@splcenter.org
*One of the Attorneys for Plaintiffs*

246932.7

_____  Date: _____
James A. Tucker, Executive Director
Alabama Disabilities Advocacy Program
Box 870395
Tuscaloosa, Alabama  35487


_____  Date: _____
J. Patrick Hackney
Alabama Disabilities Advocacy Program
Box 870395
Tuscaloosa, Alabama  35487
(205) 348-4928
jphackney@adap.ua.edu
*One of the Attorneys for Plaintiffs*


_____  Date: _____
William Van Der Pol, Jr.
Alabama Disabilities Advocacy Program
Box 870395
Tuscaloosa, Alabama  35487
(205) 348-4928
wvanderpoljr@adap.ua.edu
*One of the Attorneys for Plaintiffs*

246932.7

_____          Date: _____
Anil A. Mujumdar
Zarzaur Mujumdar & Debrosse – Trial Lawyers
2332 2nd Avenue North
Birmingham, Alabama  35203
(205) 983-7985
anil@zarzaur.com
*One of the Attorneys for Plaintiff Alabama Disabilities*
*Advocacy Program*

246932.7

_____      Date: _____

William G. Somerville

Baker, Donelson, Bearman, Caldwell & Berkowitz, PC

420 North 20th Street, Suite 1600

Birmingham, Alabama  35203-5202

(205) 250-8375

wsomerville@bakerdonelson.com

*One of the Attorneys for Plaintiffs*

246932.7

_____     Date: _____
David R. Boyd
Balch & Bingham LLP
P.O. Box 78
Montgomery, Alabama  36101
(334) 834-6500
dboyd@balch.com
*One of the Attorneys for Defendant Alabama Department of Corrections*


_____     Date: _____
John G. Smith
Balch & Bingham LLP
P.O. Box 78
Montgomery, Alabama  36101
(334) 834-6500
jgsmith@balch.com
*One of the Attorneys for Defendant Alabama Department of Corrections*

246932.7

_____     Date: _____
Anne Hill, General Counsel
Alabama Department of Corrections
301 South Ripley Street
Montgomery, Alabama  36130
(334) 353-3885
anne.hill@doc.alabama.gov
*One of the Attorneys for Defendant Alabama Department*
*of Corrections*


_____     Date: _____
Jefferson Dunn
In His Official Capacity as Commissioner
of the Alabama Department of Corrections
301 South Ripley Street
Montgomery, Alabama  36130

246932.7