# Exhibit A

## To

# Joint Motion for Preliminary Approval and Notice of Proposed Settlement

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| EDWARD BRAGGS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Civil Action Number: |
| v. | ) | |
| | ) | 2:14-cv-00601-MHT-TFM |
| JEFFERSON DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**SETTLEMENT AGREEMENT CONCERNING
<u>INVOLUNTARY MEDICATION CLAIMS</u>**

This SETTLEMENT AGREEMENT (the "Agreement") is entered into as of this 5th day of May, 2017, by and between JEFFERSON DUNN ("Commissioner"), in his official capacity as Commissioner of the Alabama Department of Corrections (the "Alabama Department of Corrections" or "ADOC"), the ALABAMA DISABILITIES ADVOCACY PROGRAM ("ADAP"), and Plaintiff QUANG BUI ("Bui" and together with ADAP and ADOC, the "Parties"), by and through counsel and in his capacity as a class representative under Rule 23(b) of the FEDERAL RULES OF CIVIL PROCEDURE.

## R E C I T A L S

WHEREAS, Bui and ADAP filed the instant lawsuit (the "Litigation") challenging the certain policies and procedures of the Alabama Department of Corrections related to involuntarily medicating inmates pursuant to ADOC Administrative Regulation 621;

WHEREAS, on November 25, 2016, the Court certified a class with respect to "the policy or practice of denying procedural due process to prisoners subject to involuntary medication orders" consisting of "all persons with a serious mental health disorder or illness who are now, or will in the future be subject to defendants' formal involuntary medication policies and practices" (the "IVM Class"). Doc. 1013 at 10;

WHEREAS, the Court specifically declined to certify a class with respect to substantive due process challenges both "to the policy or practice of requiring involuntary medication without a recent finding of dangerousness" and "to the policy and practice of obtaining consent [to involuntary medication] through coercion" but did acknowledge ADAP's ability to bring these substantive due process claims through its associational standing on behalf of unnamed prisoners subject to these policies and practices.  Doc. 1013 at 10-11;

WHEREAS, the Parties submitted evidence related to these claims during the Phase 2A trial which occurred from December 5, 2016 through February 4, 2017;

WHEREAS, the monitoring and the notice provisions described herein apply to inmates housed in the following ADOC facilities[1]: Bibb Correctional Facility, Bullock Correctional Facility, Donaldson Correctional Facility, Draper Correctional Facility, Easterling Correctional Facility, Elmore Correctional Facility, Fountain Correctional Facility, Hamilton Aged & Infirmed Correctional Facility, Holman Correctional Facility, Kilby Correctional Facility, Limestone Correctional Facility, St. Clair Correctional Facility, Staton Correctional Facility, Tutwiler Prison for Women, and Ventress Correctional Facility (collectively, the "Major Facilities");

WHEREAS, the Parties conducted multiple mediations before United States Magistrate Judge John E. Ott since August of 2016 in a good faith effort to resolve all issues pertaining to the process of and policies related to involuntarily medicating inmates within the ADOC's custody, reached an agreement for resolving these issues, and enter into this Agreement for that purpose;

WHEREAS, the Parties desire to avoid the burdens and risks of further litigation and, for this reason, have agreed to settle the Litigation as stated below;

WHEREAS, the Parties desire to fully and finally settle the Litigation and enter into this Agreement in order to completely resolve all disputed claims asserted in the Litigation pertaining to the process of and policies related to involuntarily medicating inmates within the ADOC's custody;

---

[1] The monitoring and notice provisions described herein do not apply to inmates housed in ADOC's work release facilities.

WHEREAS, it is the intention of the Parties that this Agreement shall become effective when the proposed Stipulated Order (the "Stipulated Order", attached hereto as Exhibit A) is, in substance, approved and adopted by the Court; and

WHEREAS, it is the Parties' intention that the terms of this Agreement will remedy all disputed issues pertaining to the process of and policies related to involuntarily medicating inmates within the ADOC's custody and any and all claims arising from such processes and/or policies, including, but not limited to all procedural and substantive due process claims which were brought and/or could have been raised in the Litigation.

## TERMS AND CONDITIONS

NOW THEREFORE, in exchange for the mutual promises contained herein, and for other valuable consideration, the Parties collectively agree as follows:

1.      **Revised Involuntary Medication Policy.**   The Commissioner hereby agrees to adopt and implement the revised Administrative Regulation ("AR") No. 621 attached hereto as Exhibit B, which shall also be attached as Exhibit 1 to the Stipulated Order (attached hereto as Exhibit A).

2.      **Dismissal of Bui's Involuntary Medication Claim.**   As reflected in the Stipulated Order, the Parties shall jointly move for the dismissal *with prejudice* of any and all claims asserted by Bui regarding the involuntary medication policies and/or practices.

3.      **No Admission of Liability.**   Nothing in this Agreement will be construed as an admission by the ADOC, Commissioner Dunn, or Associate Commissioner Ruth Naglich of the violation of any law.   To the contrary, ADOC, Commissioner Dunn, and Associate Commissioner Naglich deny every material allegation of the Complaint, as amended, in this case and deny any

liability to the Plaintiffs.  This Agreement does not constitute, and will not be construed as, an admission or evidence of any act or omission of any kind.

The Parties further stipulate that nothing in this Agreement will be used for any purpose outside of the above-captioned matter or against the ADOC and/or any of its officials, officers, representatives, agents or employees.  Nothing in this Agreement will be construed to require ADOC to do more than what is required by law within the Eleventh Circuit.

Nothing herein shall be considered as evidence or an admission of any kind to be utilized and/or relied upon by the Court in its evaluation of liability as to any other claim asserted in the Fifth Amended Complaint or any subsequent evaluation by the Court of any proposed remedial scheme.

4.      **Non-Approval.**  In the event that this Agreement and the Stipulated Order are not approved by the Court in the exact manner proposed to the Court herein, then the Parties retain all of their pre-settlement litigation rights and defenses, including those presented in the Phase 2A trial of this matter.  Additionally, the Parties shall return to the *status quo ante* in the Litigation as if the Parties never entered into this Agreement. Any discussions, offers, or negotiations associated with this Agreement are and shall remain strictly confidential pursuant to the rules applicable to the court-ordered mediation and will not be discoverable or offered into evidence or used in the Litigation or any other action or proceeding for any purpose.

5.      **Preliminary and/or Final Approval.**  The Parties will jointly seek preliminary approval and final approval of this Agreement and the Stipulated Order by the Court.  The Parties will submit to this Court a Joint Motion for Preliminary Approval, this Agreement, the Stipulated Order, the proposed class notice and any other documentation as directed by the Court to finalize the terms and conditions of this Agreement. Moreover, the entry of any additional orders by the

Court regarding any other claims asserted in the Litigation shall not serve to alter, amend, negate, novate or otherwise modify in any way the terms or conditions of this Agreement or the Stipulated Order.

6.      **Placement of Agreement in Law Libraries.**  The ADOC will place a copy of this Agreement in the law library at every ADOC Major Facility. Because the monitoring and notice provisions of this Agreement do not apply to inmates housed at ADOC work release facilities, copies of the Agreement will not be placed at ADOC work release facilities.

7.      **Provision of Mental Health Records to ADAP.**

a.      Starting on the fifth (5th) day of the second (2nd) month after Final Approval of this Agreement, ADOC shall provide to ADAP a roster of all inmates who participated in an involuntary medication hearing, whether initial or renewal during the prior month.  The roster shall include the following information: (i) the name of each inmate, (ii) each inmate's AIS #, (iii) each inmate's current facility assignment as of the date of the involuntary medication hearing, (iv) the current DSM-V diagnosis for each inmate, (v) the name of the medication administered on an involuntary basis for each inmate, and (vi) whether the subject hearing was a "new" or "renewed" request for each inmate.  Within five (5) days of production of said roster, Plaintiffs' counsel may designate up to four (4) inmates whose mental health records shall be produced by ADOC to ADAP.  Within fourteen (14) days of receipt of notification, ADOC shall provide the following documents from the four (4) inmates' medical and mental health records:

(1)     all documents reviewed by the Involuntary Medication Committee in connection with the prior month's involuntary medication hearing for each of the four inmates;

(2)     all documents generated by the Involuntary Medication Committee or any appeal therefrom with regard to the prior month's involuntary medication hearings for each of the four inmates;

    (3)     the notices of the most recent involuntary medication hearings issued to the four inmates;

    (4)     any notices issued to the four inmates regarding the opportunity to appeal the decision regarding their most recent involuntary medication proceedings;

    (5)     the documents containing the final decision upon any appeal from any of the four inmates regarding the prior month's involuntary medication proceedings; and

    (6)     any other documents provided to any of the four inmates by the Involuntary Medication Committee or regarding the prior month's involuntary medication hearings.

In addition to the foregoing, the ADOC will also produce for each of the four (4) selected inmates the last seven (7) months of their medical records included in the records tabbed as: Mental Health, IVM, Orders and Labs and the current Master Problem List.

    b.     ADAP may prepare and submit to ADOC a written, monthly report regarding ADOC's efforts to meet the requirements of this Agreement, specifically its efforts to comply with the revised AR 621. *See* Ex. B. Any such report shall be limited to ADOC's efforts to comply with the Agreement. Under no circumstances shall this Agreement be construed as granting and/or permitting ADAP the authority to oversee and/or review anything other than the ADOC's compliance with the Agreement. ADAP's review and reporting shall be limited to oversight of the ADOC's compliance with the revised Administrative Regulation No. 621 attached hereto as Exhibit B. Each monthly report may indicate all areas in which the ADOC is, or is not, in substantial compliance with the Agreement. This monthly report may be provided to the Commissioner via his counsel of record. If ADAP believes that ADOC is not in substantial compliance with the terms and provisions of this Agreement, ADAP may provide written recommendations of actions that it believes necessary to achieve substantial compliance with the terms of the provision or provisions. ADOC will then have thirty (30) days to provide written

comments, objections, or remedial action plans in response to the monthly report. In the event of any disagreement among the parties related to any remedial actions, the Parties will meet and confer within ten (10) days of ADOC's written response to attempt to resolve any such disagreement.

        c.      The provision of records as set forth in this provision will continue under these terms from the date of Final Approval of this Agreement for a period of twenty-four (24) months thereafter. For this twenty-four (24) month period, neither ADAP nor Plaintiffs' counsel will be compensated for their services beyond the compensation found under ¶ 8 *infra* entitled "Attorneys' Fees and Expenses," except for any attorneys' fees necessary to enforce the terms of this Agreement in a Court proceeding in which the Court determines the Plaintiffs prevail or the Parties agree to the payment of attorneys' fees accrued in the course of such proceedings.

        d.      ADAP, their counsel and any monitor conducting this review, agree to be bound by any Protective or Court Orders entered in this Litigation to protect the confidentiality of inmate records and sensitive security information.

        8.      **Attorneys' Fees and Expenses.**  The Alabama Department of Corrections shall remit to counsel for Plaintiffs payment in the amount of Two Hundred Thirty-Thousand and No/100 Dollars ($230,000.00), which shall constitute payment for any and all attorneys' fees and expenses incurred, charged and/or otherwise generated by counsel for the IVM Class from the inception of the Litigation through the final conclusion of this matter. The Parties further agree that the above-referenced sum shall be paid by the ADOC no later than sixty (60) days after the Final Approval of this Agreement and that such payment shall be made payable to "The Southern Poverty Law Center." The Parties acknowledge and agree that the payments reflected in this paragraph constitutes payment in full for any and all attorneys' fees and expenses claimed by Bui,

ADAP and/or any other party to the Litigation for the claims resolved herein. Excluding the payment of attorneys' fees and expenses provided herein and any attorneys' fees or expenses recoverable in any action to enforce the terms of this Agreement, Bui, ADAP and their respective counsel hereby voluntarily, completely and unconditionally waive any and all right to seek the recovery of any monies of any kind from any Defendant in this Litigation for any and all attorneys' fees and/or expenses incurred, charged and/or otherwise generated by counsel for the IVM Class after the date of this Agreement for the claims resolved herein.  Moreover, nothing in this Agreement requires ADOC to remit payment to any Party for the recovery of attorneys' fees inconsistent with the limitations imposed under the Prison Litigation Reform Act or the restrictions imposed within the United States District Court for the Middle District of Alabama.

9.     **Disposition of Claims.**  In exchange for the promises, covenants, terms and conditions set forth herein, the IVM Class, Bui and ADAP represent and agree that this Agreement is intended to resolve any and all claims for prospective injunctive relief which were asserted in the "Third Cause of Action: Deprivation of Due Process Prior to Involuntarily Medicating Prisoners" of the Fifth Amended Complaint (Doc. No. 805) and/or which could have been raised in this action related to the process of involuntarily medicating any individual in the custody of the ADOC.  As such, no member of the IVM Class shall assert any procedural due process claims seeking prospective injunctive relief under the Fourteenth Amendment against the Alabama Department of Corrections, the ADOC Commissioner in his official capacity, the ADOC Associate Commissioner for Health Services in her official capacity, the ADOC's agents, employees, representatives, vendors and/or contractors of any kind during the term of this Agreement.  Furthermore, Bui shall not assert any substantive due process claims seeking prospective injunctive relief under the Fourteenth Amendment against the Alabama Department

of Corrections, the ADOC Commissioner in his official capacity, the ADOC Associate Commissioner for Health Services in her official capacity, the ADOC's agents, employees, representatives, vendors and/or contractors of any kind during the term of this Agreement.

**OTHER TERMS AND CONDITIONS**

1.      **No Monetary Compensation.**   The Parties acknowledge that, excluding the payment of attorneys' fees and costs to Plaintiffs' Counsel in this action, nothing contained in this Agreement and/or the Stipulated Order creates, mandates or constitutes any obligation of any Defendant, the State of Alabama and/or the Alabama Department of Corrections to compensate, pay or otherwise provide any monetary payment of any kind to any inmate formerly housed, currently housed or housed in the future in any correctional facility operated by or at the direction of the ADOC.   Moreover, nothing in this Agreement or the Stipulated Order creates any basis for any purported or actual member of the IVM Class to seek any financial recovery or monetary benefit of any kind from any Defendant, the State of Alabama and/or the ADOC.

2.      **No Appeal.**   All Parties shall waive all rights to seek any appeal from and/or appellate review of any stipulated final order entered by the Court.

3.      **Court's Retention of Jurisdiction.**   The Parties agree that they will jointly submit this Agreement to the Court with a request that the Court: (1) provide for appropriate notice to the IVM Class, submissions of objections, and hearing, pursuant to Rule 23(e), FED. R. CIV. P.; (2) following a hearing, adopt the Agreement in the form of a Stipulated Order, if the Court deems the proposal fair, reasonable, and adequate; (3) administratively close the involuntary medication claim, Count III in the Fifth Amended Complaint, in the case in a manner consistent with the normal procedures of the United States District Court for the Middle District of Alabama; and (4) retain jurisdiction to enforce the Agreement and its Stipulated Order.

4.      **Expiration of Agreement.**  Unless otherwise agreed in writing by the Parties or extended by Order of the Court or unless a motion to extend the term of the Agreement is then pending, this Agreement shall expire by its own terms at 12:00 p.m. (Central Daylight Savings Time) on the Seven Hundred Thirtieth (730th) Day after the entry of Final Approval.

5.      **No Waiver of Privilege.**  Nothing in this Agreement or undertaken pursuant to this Agreement constitutes or is intended to constitute a waiver of any applicable privilege of any kind.

6.      **Stipulation Pursuant to 18 U.S.C. § 3626(a).**  The Parties stipulate and agree, and will jointly ask the Court to find, that the prospective relief in this Agreement is narrowly drawn, extends no further than necessary to correct the violations of federal rights as alleged in the Litigation, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system. Accordingly, the Parties agree and represent that the Agreement complies in all respects with the provisions of 18 U.S.C. § 3626(a).  Nothing contained in this Agreement shall be construed as an admission of any kind by the State of Alabama, any Defendant and/or any agent, employee, officer and/or representative of the Alabama Department of Corrections, except as expressly stated in this document and the Stipulated Order.  The Parties acknowledge and understand that the Commissioner elected to enter into this Agreement based upon the particular and individualized facts and circumstances present at the time of execution of this Agreement.  The Parties further agree that this document shall not be construed as an admission with respect to any particular individual and that the ADOC is not entering into this agreement with any individual member of any class.

7.      **Dispute Resolution.**   In the event of any dispute related to the terms and conditions of the Stipulated Order and/or this Agreement between the Parties, the Parties shall submit to mediation before United States Magistrate Judge John E. Ott prior to filing any document with the Court related to the alleged matters which are the subject of the dispute.  To the extent that any party files any such motion or pleading with the Court without first submitting the matter to mediation, any such filing shall be dismissed *without prejudice* pending the outcome of mediation.

8.      **Modification of Agreement.**  The Agreement of the Parties and the terms of the Stipulated Order in this matter shall be limited to the terms set forth in the written agreement executed by the Parties.  The Parties agree that none of the Parties will seek any Court-ordered modification of the final agreement among the Parties or the stipulated final agreement, other than seeking to extend the term of the Agreement as set forth above.  The Parties further agree that this Agreement may not be modified except in writing, signed by all Parties.  In the event that the United States District Court for the Middle District of Alabama determines that alterations, amendments or changes to the terms and conditions of the final order are necessary, any such alterations, amendments or changes shall not be construed in any way as stipulated terms or conditions.  All Parties reserve any and all rights or privileges that they may otherwise be entitled as a result of any revisions, alterations or amendments by the United States District Court for the Middle District of Alabama to any stipulation among the Parties.

9.      **No Additional Employment Obligations.** Nothing in this Agreement or the Stipulated Order shall be construed in any way as creating any obligation of any kind upon any Defendant, the State of Alabama or the Alabama Department of Corrections to hire, retain and/or employ any consultant, advisor, correctional officer, medical professional or other individuals of

any kind.   Nothing in this paragraph shall excuse or negate any obligation of the ADOC to comply with Administrative Regulation No. 621 attached hereto as Exhibit B.

10.     **No Violation of Other Applicable Court Orders.**   Nothing in this Agreement or the Stipulated Order is intended to create any obligation or requirement which would result in the violation of any other currently existing order entered by a Court of competent jurisdiction.

11.     **Governing Law and Severability.**   This Agreement was entered into in the State of Alabama and shall be construed and interpreted in accordance with the laws of that state, other than issues on which federal law governs.   Wherever possible, each provision of this Agreement shall be interpreted in such a manner as to be effective and valid under applicable law.   However, if any provision of this Agreement shall be prohibited by or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity; all remaining provisions shall be enforceable to the full extent permitted by law.

12.     **Merger.**   This Agreement contains the entire understanding and agreement of the Parties with respect to the facilities identified above.   Furthermore, all Parties acknowledge that there are no other representations and no other obligations that relate to the facilities identified above.

13.     **Counterparts and Facsimile Signatures.**   This Agreement may be executed in counterparts, and all such counterparts when so executed shall together constitute the final agreement as if one document had been signed by all of the Parties.   Any final agreement may be executed by facsimile copy and each signature thereto shall be and constitute an original signature, again as if all the Parties had executed a single original document.

## [SIGNATURE PAGES TO FOLLOW]

Date: 5/5/17

Maria V. Morris
Southern Poverty Law Center
400 Washington Avenue
Montgomery, Alabama  36104
(334) 956-8200
maria.morris@splcenter.org
*One of the Attorneys for Plaintiffs*

Date: 4/27/17

Quang Bui

Date: _____

James A. Tucker, Executive Director
Alabama Disabilities Advocacy Program
Box 870395
Tuscaloosa, Alabama  35487

Date: May 4, 2017

Anil A. Mujumdar
Zarzaur Mujumdar & Debrosse – Trial Lawyers
2332 2nd Avenue North
Birmingham, Alabama  35203
(205) 983-7985
anil@zarzaur.com
*One of the Attorneys for Plaintiff Alabama Disabilities Advocacy Program*

Date: _May 5, 2017_

William G. Somerville
Baker, Donelson, Bearman, Caldwell & Berkowitz, PC
420 North 20th Street, Suite 1600
Birmingham, Alabama 35203-5202
(205) 250-8375
wsomerville@bakerdonelson.com
*One of the Attorneys for Plaintiffs*

_____     Date: _5 May 2017_____

Jefferson Dunn
In His Official Capacity as Commissioner
   of the Alabama Department of Corrections
301 South Ripley Street
Montgomery, Alabama  36130

# Exhibit A

## To

# Settlement Agreement Concerning Involuntary Medication Claims

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

EDWARD BRAGGS, *et al.*,            )
                                    )
    Plaintiffs,            )
                                    )   Civil Action Number:
v.                                  )
                                    )   2:14-cv-00601-MHT-TFM
JEFFERSON DUNN, *et al.*,           )
                                    )
    Defendants.            )

## PROPOSED STIPULATED ORDER

This matter, having come before the Court on the Joint Motion for Approval of the Parties' Settlement Agreement and Entry of Stipulated Order, having further ordered the provision of adequate notice to members of the Plaintiff Class of the terms of this Order, having received and considered the written objections from members of the Plaintiff Class related to the contents of this Order, having held a fairness hearing on _____, 2017, commencing at --:--- a.m., having reviewed the filings, document, orders and/or admissible evidence which are currently filed of record with the Court, and having considered the arguments of counsel for the Parties and the other premises herein, it is hereby ORDERED and ADJUDGED, for the reasons set forth in the Opinion accompanying this Order, as follows:

1.      **Notice Pursuant to Rule 23(e)(1).** Reasonable notice of the proposed settlement was provided to the Plaintiff class in the manner directed by the Court by separate Order.   Members of the Plaintiff class were then afforded an opportunity to submit comments and objections to the Court concerning the proposed settlement.   A fairness hearing pursuant to Fed. R. Civ. P. 23(e)(2) was held on _____, 2017, at which the Court heard arguments and testimony.

2.      **Rule 23(e)(2) Findings.** The Court, having considered the arguments and testimony at the hearing, the comments submitted by class members, and the entire record in this case, concludes that the settlement is fair, reasonable, and adequate.

3.      **Revised Involuntary Medication Policy.**   Pursuant to the terms and conditions of this Order and the process identified herein, the ADOC will implement a revised policy and practice regarding the involuntary medication of inmates with mental illnesses.   The Court finds the revisions in the applicable Administrative Regulation ("AR") No. 621, if fully implemented, extend no further than necessary to resolve the violations of federal due process rights alleged by Quang Bui, the Alabama Disabilities Advocacy Program ("ADAP"), and the Plaintiff Class in the Third Cause of Action in the Fifth Amended Complaint, including, but not limited to, Plaintiffs' allegations that:

a.      the ADOC failed to afford due process to those inmates who were subject to involuntary medication proceedings while in ADOC custody (<u>See</u> Doc. No. 805);

b.      the ADOC's prior involuntary medication process "f[e]ll far short of what due process requires" (Doc. No. 805, ¶ 4);

c.      the ADOC and its mental health vendor allegedly maintained a "policy and practice of medicating mentally ill prisoners against their will without providing due process to determine whether the individuals can be forced to take medication" (Doc. No. 805, ¶ 190);

d.      "[t]he widespread and pervasive practice is that many prisoners in ADOC custody are denied due process" (Doc. No. 805, ¶ 453);

e.      the ADOC allegedly violated the "due process rights [of prisoners in its custody] by involuntarily medicating prisoners in violation of the Fourteenth Amendment to the U.S. Constitution" (Doc. No. 805, ¶ 453);

f.      the ADOC's involuntary medication process failed to include the necessary due process protections found to be constitutional in *Washington v. Harper*, 494 U.S. 210 (1999) (Doc. No. 888, pp. 162-163); and

g.      "Plaintiffs Bui, Hartley, Dillard, Terrell, and McCoy's due process rights have been violated by Defendants' policies and practices of

providing either constitutionally inadequate due process or no process at all with regard to involuntary medication." (Doc. No. 888, p. 164).

A true and correct copy of the revised Involuntary Medication policy, AR 621, is attached as Exhibit 1 hereto.

4. **Dismissal of Bui's Involuntary Medication Claim.** The Parties' joint motion for the dismissal *with prejudice* of any and all claims asserted by Bui regarding the involuntary medication policies and/or practices is hereby GRANTED.

5. **No Admission of Liability.** Nothing in the Parties' Settlement Agreement (the "Agreement") or this Order will be construed as an admission by the ADOC, Commissioner Dunn, or Associate Commissioner Naglich of the violation of any law. To the contrary, ADOC, Commissioner Dunn, and Associate Commissioner Naglich deny every material allegation of the Complaint, as amended, in this case and deny any liability to the Plaintiffs. Neither the Agreement nor this Order constitute, nor will be construed as, an admission or evidence of any act or omission of any kind. Nothing in the Agreement or this Order will be used for any purpose outside of the above-captioned matter or against the ADOC and/or any of its officials, officers, representatives, agents or employees. Nothing in the Agreement or this Order will be construed to require ADOC to do more than what is required by law within the Eleventh Circuit.

Nothing herein shall be considered as evidence or an admission of any kind to be utilized and/or relied upon by the Court in its evaluation of liability as to any other claim asserted in the Fifth Amended Complaint or any subsequent evaluation by the Court of any proposed remedial scheme.

6.     **Provision of Mental Health Records to ADAP.**

a.     Starting on the fifth (5th) day of the second (2nd) month after Final Approval of the Agreement, ADOC shall provide to ADAP a roster of all inmates who participated in an involuntary medication hearing, whether initial or renewal during the prior month.   The roster shall include the following information: (i) the name of each inmate, (ii) each inmate's AIS #, (iii) each inmate's current facility assignment as of the date of the involuntary medication hearing, (iv) the current DSM-V diagnosis for each inmate, (v) the name of the medication administered on an involuntary basis for each inmate, and (vi) whether the subject hearing was a "new" or "renewed" request for each inmate.  Within five (5) days of production of said roster, Plaintiffs' counsel may designate up to four (4) inmates whose mental health records shall be produced by ADOC to ADAP. Within fourteen (14) days of receipt of notification, ADOC shall provide the following documents from the four (4) inmates' medical and mental health records:

(1)     all documents reviewed by the Involuntary Medication Committee in connection with the prior month's involuntary medication hearing for each of the four inmates;

    (2)    all documents generated by the Involuntary Medication Committee or any appeal therefrom with regard to the prior month's involuntary medication hearings for each of the four inmates;

    (3)    the notices of the most recent involuntary medication hearings issued to the four inmates;

    (4)    any notices issued to the four inmates regarding the opportunity to appeal the decision regarding their most recent involuntary medication proceedings;

    (5)    the documents containing the final decision upon any appeal from any of the four inmates regarding the prior month's involuntary medication proceedings; and

    (6)    any other documents provided to any of the four inmates by the Involuntary Medication Committee or regarding the prior month's involuntary medication hearings.

In addition to the foregoing, the ADOC will also produce for each of the four (4) selected inmates the last seven (7) months of their medical records included in the records tabbed as: Mental Health, IVM, Orders and Labs and the current Master Problem List.

    b.    ADAP may prepare and submit to ADOC a written, monthly report regarding ADOC's efforts to meet the requirements of the Agreement, specifically its efforts to comply with the revised AR 621.  *See* Ex. 1.  Any such report shall be limited to ADOC's efforts to comply with the Agreement. Under no circumstances shall the Agreement or this Order be construed as granting and/or permitting ADAP the authority to oversee and/or review anything other than the ADOC's compliance with the Agreement.  ADAP's review and reporting shall be

limited to oversight of the ADOC's compliance with the revised Administrative Regulation No. 621 attached hereto as Exhibit 1.  Each monthly report may indicate all areas in which the ADOC is, or is not, in substantial compliance with the Agreement.  This monthly report may be provided to the Commissioner via his counsel of record.  If ADAP believes that ADOC is not in substantial compliance with the terms and provisions of the Agreement or this Order, ADAP may provide written recommendations of actions that it believes necessary to achieve substantial compliance with the terms of the provision or provisions.  ADOC will then have thirty (30) days to provide written comments, objections, or remedial action plans in response to the monthly report.  In the event of any disagreement among the parties related to any remedial actions, the Parties will meet and confer within ten (10) days of ADOC's written response to attempt to resolve any such disagreement.

   c. The provision of records as set forth in this provision will continue under these terms from the date of this Order for a period of twenty-four (24) months thereafter.  For this twenty-four (24) month period, neither ADAP nor Plaintiffs' counsel will be compensated for their services beyond the compensation found under ¶ 7 *infra* entitled "Attorneys' Fees and Expenses," except for any attorneys' fees necessary to enforce the terms of this Order in a Court proceeding

in which the Court determines the Plaintiffs prevail or the Parties agree to the payment of attorneys' fees accrued in the course of such proceedings.

      d.    ADAP, their counsel and any monitor conducting this review, shall be bound by any Protective or Court Orders entered in this action to protect the confidentiality of inmate records and sensitive security information.

      7.    **Attorneys' Fees and Expenses.**[1]  The Alabama Department of Corrections shall remit to counsel for Plaintiffs payment in the amount of Two Hundred Thirty-Thousand and No/100 Dollars ($230,000.00), which shall constitute payment for any and all attorneys' fees and expenses incurred, charged and/or otherwise generated by counsel for the Plaintiff IVM Class from the inception of the action through the final conclusion of this matter.  The Parties further agree that the above-referenced sum shall be paid by the ADOC no later than sixty (60) days from the date of this Order and that such payment shall be made payable to "The Southern Poverty Law Center."  The Parties acknowledge

---

[1] The Court has independently evaluated the reasonableness of the attorneys' fees and expenses agreed upon by the Parties.  After considering (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases, the Court finds that the agreed-upon fees set forth herein are reasonable.

and agree that the payments reflected in this paragraph constitute payment in full for any and all attorneys' fees and expenses claimed by Bui, ADAP and/or any other party to the Litigation for the claims resolved herein. Excluding the payment of attorneys' fees and expenses provided herein and any attorneys' fees or expenses recoverable in any action to enforce the terms of the Agreement or this Order, Bui, ADAP and their respective counsel hereby voluntarily, completely and unconditionally waive any and all right to seek the recovery of any monies of any kind from any Defendant in this action for any and all attorneys' fees and/or expenses incurred, charged and/or otherwise generated by counsel for the Plaintiff IVM Class after the date of the Agreement for the claims resolved herein. Moreover, nothing in the Agreement or this Order requires ADOC to remit payment to any Party for the recovery of attorneys' fees inconsistent with the limitations imposed under the Prison Litigation Reform Act or the restrictions imposed within the United States District Court for the Middle District of Alabama.

8.     **Resolution of All Involuntary Medication Claims.**  In exchange for the promises, covenants, terms and conditions set forth in the Parties' Agreement and described herein, the IVM Class, Bui and ADAP agreed that this Order resolves any and all claims for prospective injunctive relief which were asserted in the "Third Cause of Action: Deprivation of Due Process Prior to Involuntarily

Medicating Prisoners" of the Fifth Amended Complaint (Doc. No. 805) and/or which could have been raised in this action related to the process of involuntarily medicating any individual in the custody of the ADOC.  As such, no member of the IVM Class shall assert any procedural due process claims seeking prospective injunctive relief under the Fourteenth Amendment against the Alabama Department of Corrections, the ADOC Commissioner in his official capacity, the ADOC Associate Commissioner for Health Services in her official capacity, the ADOC's agents, employees, representatives, vendors and/or contractors of any kind during the term of this Agreement.  Furthermore, Bui shall not assert any substantive due process claims seeking prospective injunctive relief under the Fourteenth Amendment against the Alabama Department of Corrections, the ADOC Commissioner in his official capacity, the ADOC Associate Commissioner for Health Services in her official capacity, the ADOC's agents, employees, representatives, vendors and/or contractors of any kind during the term of the Agreement and this Order.

9.    **Placement of Agreement in Law Libraries.**  The ADOC will place a copy of the Parties' Agreement in the law library at every ADOC facility where one exists.

10.    **No Monetary Compensation.**  Excluding the payment of attorneys' fees and costs to Counsel for the Plaintiff Class in this action, nothing contained in

this Order creates, mandates or constitutes any obligation of any Defendant, the State of Alabama and/or the Alabama Department of Corrections to compensate, pay or otherwise provide any monetary payment of any kind to any inmate formerly housed, currently housed or housed in the future in any correctional facility operated by or at the direction of the Alabama Department of Corrections. Moreover, nothing in this Order creates any basis for any purported or actual Class Member to seek any financial recovery or monetary benefit of any kind from any Defendant, the State of Alabama and/or the Alabama Department of Corrections.

11.    **No Appeal.**  All Parties have waived all rights to seek any appeal from and/or appellate review of this Order.

12.    **Court's Retention of Jurisdiction to Enforce the Order.**  Upon the entry of this Order, the Circuit Clerk for the United States District Court for the Middle District of Alabama is hereby directed to administratively close the involuntary medication claim, Count III in the Fifth Amended Complaint, in this case in a manner consistent with the normal procedures of the United States District Court for the Middle District of Alabama, but the Court shall retain jurisdiction to enforce this Order.

13.    **Expiration of Order.**  Unless otherwise agreed in writing by the Parties or extended by Order of the Court or unless a motion to extend the term of this Order is then pending, this Order shall expire by its own terms at 12:00 p.m.

(Central Daylight Savings Time) on _____, 2019.  In the event that any such pending motion identified above (as of _____, 2019) is denied, this Order shall expire on the date on which such motion is denied by the Court.

14.  **No Waiver of Privilege.**  Nothing in this Order or undertaken pursuant to this Order constitutes or is intended to constitute a waiver of any applicable privilege of any kind.

15.  **Findings Pursuant to 18 U.S.C. § 3626(a).**  The Court specifically finds that the prospective relief in this Order is narrowly drawn, extends no further than necessary to correct the violations of federal rights as alleged by the Plaintiff Class in the Third Cause of Action, alleging substantive and procedural due process violations in the involuntary medication of mentally ill prisoners, in the Fifth Amended Complaint, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system. Accordingly, this Order complies in all respects with the provisions of 18 U.S.C. § 3626(a).

16.  **Dispute Resolution.**  In the event of any dispute related to the terms and conditions of any final stipulated order and/or any final agreement between the Parties, the Parties shall submit to mediation before United States Magistrate Judge John E. Ott prior to filing any document with the Court related to the alleged matters which are the subject of the dispute.  To the extent that any party files any

such motion or pleading with the Court without first submitting the matter to mediation, any such filing shall be dismissed without prejudice pending the outcome of mediation.

17.     **No Additional Employment Obligations.** Nothing in the Parties' Agreement or this Order shall be construed in any way as creating any obligation of any kind upon any Defendant, the State of Alabama or the Alabama Department of Corrections to hire, retain and/or employ any consultant, advisor, correctional officer, medical professional or other individuals of any kind.  Nothing in this paragraph shall excuse or negate any obligation of the ADOC to comply with Administrative Regulation 621.

18.     **No Violation of any Other Applicable Orders.**  Nothing in this Order is intended to create any obligation or requirement which would result in the violation of any other currently existing order entered by a Court of competent jurisdiction.

IT IS SO ORDERED, this _____ day of _____, 2017.


_____

UNITED STATES DISTRICT JUDGE
MYRON H. THOMPSON

13

# <u>Exhibit 1</u>

## To

## Proposed Stipulated Order



**State of Alabama**

# Alabama Department of Corrections

301 S. Ripley
P. O. Box 301501
Montgomery, AL 36130



**KAY IVEY**
GOVERNOR

**JEFFERSON DUNN**
COMMISSIONER

May 5, 2017

ADMINISTRATIVE REGULATION                    OPR:  Office of Health Services
NUMBER 621

**ADMINISTRATIVE REVIEW FOR**
**INVOLUNTARY PSYCHOTROPIC MEDICATION(S)**

## I.    GENERAL

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes the responsibilities, policies and procedures for administrative review for involuntary psychotropic medication.

## II.    POLICY

The recommendation to involuntarily treat an inmate with psychotropic medication will be considered only after less restrictive/intrusive attempts have been exhausted and were unsuccessful.  The Institutional Psychiatrist and other members of the inmate's treatment team will evaluate the inmate, and the Involuntary Medication Review Committee will review their recommendation. In no instance shall an inmate be threatened by any individual associated with ADOC, including its employees and/or independent contractors, with the use of force or a threat of disciplinary actions such as segregation, loss of privileges, or loss of good time, as a means to coerce the inmate to accept psychotropic medications; however, nothing herein shall restrict the authority of a person providing current mental health care from notifying an inmate regarding the events which might transpire in the event that he or she refuses psychotropic medication, including initiation of the involuntary psychotropic medication process.

## III.    DEFINITION(S) AND ACRONYM(S)

Refer to AR 602 for definitions of the following terms used in this AR:

Seriously Mentally Ill (SMI)

Treatment Team

Involuntary Medication Review Committee

Intensive Psychiatric Stabilization Unit (SU)

Residential Treatment Unit (RTU)

## IV.   RESPONSIBILITIES

A.   The Institutional Psychiatrist and other members of the inmate's treatment team are responsible for evaluation of the inmate and submitting their recommendation to the Involuntary Medication Review Committee.

B.   The Involuntary Medication Review Committee is responsible for reviewing the treatment team's recommendation, notifying the inmate of a hearing date, evaluating evidence/testimony, and making and documenting their decision.

## V.   PROCEDURES

A.   Prior to consideration of involuntary medication, the inmate must be transferred to an Intensive Psychiatric Stabilization Unit for aggressive and intensive mental health treatment. The lack of effectiveness of treatment measures that are less intrusive than involuntary medication must be documented.

B.   Before involuntary psychotropic medication(s) is authorized for an inmate, he/she must:

1.   Have been diagnosed with a serious mental illness, and

2.   Have been transferred to an Intensive Psychiatric Stabilization Unit (SU) for less intrusive treatment; and

3.   Have, as a result of the serious mental illness, a current high likelihood of serious harm to self, others or property, or be unable to successfully perform basic, life-sustaining activities of daily living such as eating or drinking, or manifest severe deterioration in routine functioning, such as repeated and escalating loss of cognitive or volitional control over personal actions; and

4.   Refuse voluntary treatment.

5.   In assessing the current risk of harm, the Committee may consider evidence of past serious harm to self, others and property.  If the Committee considers such evidence of past conduct in determining current likelihood of harm, it must document the evidence considered in ADOC Form MH-028, and must document the basis for the determination that these past events support a finding of an ongoing, current serious risk of harm that could present in the current environment

6.   The Committee must find that the administration of the contemplated psychotropic medication is in the inmate's best medical interest.

C.      After deciding to pursue the authorization for involuntary medication, the inmate's treatment team will complete an ADOC Form MH-029, Involuntary Medication Request form. The documentation will include:

   1.      Psychiatric evaluation of inmate's current mental health condition.

   2.      Diagnosis in accordance with DSM 5 or the latest subsequent version thereof.

   3.      Indication that the inmate presents a current substantial likelihood of serious physical harm towards self or others, a substantial likelihood of significant property damage or who is incapacitated to the extent that he/she is unable to perform basic, life sustaining functions such as eating and drinking or manifests severe deterioration in routine functioning by repeated and escalating loss of cognitive or volitional control over personal actions as a result of the serious mental illness. In assessing the current risk of harm, the Committee may consider evidence of past serious harm to self, others and property.  If the Committee considers such evidence of past conduct in determining current likelihood of harm, it must document the evidence considered in ADOC Form MH-028, and must document the basis for the determination that these past events support a finding of an ongoing, current serious risk of harm that could present in the current environment.

   4.      Description of the methods used to motivate the inmate to accept medication and the inmate's responses to these efforts.

   5.      Consideration and rejection of less intrusive alternatives.

   6.      Any recognized religious objection to the medication.

   7.      Proposed type, dosage range, and route of administration of the psychotropic medication, including injectable and oral alternatives.

   8.      Any history of side effects, including severity, from the proposed involuntary medication.

   9.      Statement that the patient-specific goals anticipated from the proposed medication outweigh potential risks or side effects.

   10.     Statement that the administration of the contemplated psychotropic medication is in the inmate's best medical interest.

D.      If less intrusive measures are unsuccessful, the Institutional Psychiatrist and the inmate's treatment team will document recommendations on ADOC Form MH-028, Involuntary Medication Request.  After completion, the form is submitted to the Involuntary Medication Review Committee Chair. The review process will be

conducted in accordance with the <u>Washington v. Harper</u> decision. The use of involuntary medication as a punitive measure is strictly prohibited.

E.     The Involuntary Medication Review Committee consists of one Psychiatrist (Chair), one licensed psychologist, and either a master's level in psychology, Social Worker, Nurse Practitioner or Registered Nurse.  No member of the committee, no person assigned any appeal from the granting of an Involuntary Medication Order, can be currently assigned as the primary mental health provider or primary psychiatric provider for the inmate. "Primary mental health provider" is defined as a professional who, in the last six (6) months has provided treatment, group or individual counseling, medication or medication management, or regularly scheduled care or follow up care.  It does not include isolated instances of medication for emergency purposes or consultation for purpose of suicidality or mental health or suicide watch status.  This committee will:

1.     Meet within one working day of receipt of the Involuntary Medication Request for a preliminary review.

2.     Provide the inmate with ADOC Form MH-029, Notice of Involuntary Medication Hearing, at least one working day prior to the hearing, during which time the inmate may not be medicated.  Such Notice shall include:

   a.     The tentative diagnosis;

   b.     Diagnostic criteria currently met by the patient in support of the diagnosis listed;

   c.     The reasons why the staff believes medication is necessary;

   d.     The inmate's rights at the hearing, including the right to call, examine and cross-examine witnesses, the right to an advisor who has not been involved in the inmate's case and who understands the psychiatric issues involved, the right to receive a copy of the minutes of the hearing, the right to appeal the decision administratively and through judicial review, the name of the advisor, and a means to contact the advisor

3.     Obtain the inmate's signature to acknowledge receipt, and maintain the signed notice with documentation of the hearing process.  If the inmate refuses or is unable to sign or acknowledge receipt, then two mental health staff members will sign the form and the inmate's refusal will be documented in a progress note.

4.     Provide a copy of the signed notice to the inmate and to the Warden of the institution.

5.     Assign an advisor not currently involved in the inmate's treatment to facilitate the inmate's understanding of the hearing process prior to and during the hearing.  The person assigned as the inmate advisor must be

independent and knowledgeable in the provision of mental health care based on education and/or training.

F.    During the Involuntary Medication Hearing, the inmate:

    1.    Will be advised of his/her hearing process rights through review of ADOC Form MH-029.

    2.    May be permitted to be present, provide testimony, or have witnesses testify on their behalf, but the Chair may limit testimony from a witness or witnesses who are cumulative or redundant.

    3.    May choose of their own free will not to participate in the hearing, or may be removed from the hearing if, after repeated warnings, the inmate continues to interrupt the proceedings inappropriately.

    4.    Members of the treatment team and other relevant institutional staff will provide evidence relevant to the request for involuntary medication.

    5.    The inmate will be permitted to question witnesses supportive of involuntary medication.

    6.    The inmate may call as a witness any treating professional who is or has been active in their treatment, who presents an alternate therapy to involuntary medication.

    7.    The mental health professionals who initially sought or are currently pursuing an involuntary medication request shall be available in person, or via video, to testify and be questioned by the inmate at the hearing.

    8.    Minutes of the hearing will be documented.

G.    The Chair of the Involuntary Medication Review Committee may limit the inmate's right to be present at the hearing or limit the inmate's right to present testimony and question witnesses at the hearing if, after repeated warnings, the inmate continues to interrupt the proceedings inappropriately, or there are documented concerns related to institutional security and order.

    1.    If the inmate chooses not to participate in the hearing or is precluded from attendance by the Chair, the advisor will exercise the rights of the inmate on the inmate's behalf.

    2.    If the inmate chooses not to be present at the hearing or is precluded from attending by the Chair, if testimony presented by the inmate or his/her witnesses is substantially limited or disallowed, the Chair will document reasons for the absence of the inmate or restrictions in testimony and questioning as part of the final decision.

H.    The decision to medicate the inmate requires a majority of the committee, with the Psychiatrist among the majority, and remains in effect for ninety days.

I.    Documentation of the decision made by the Involuntary Medication Review Committee will include:

    1.    Each member explaining his/her decision on ADOC Form MH-040, Progress Notes, and signing ADOC Form MH-030, the Record of Involuntary Medication Review in the inmate's medical file.

    2.    The Chair explaining the rationale for the Committee's decision on ADOC Form MH-028, Involuntary Medication Request.

    3.    Copies of ADOC Form MH-030 will be sent to the Warden and the inmate within one working day of the committee's decision.

    4.    Notification to the inmate, concerning his/her option to appeal the decision within one working day after receipt.

    5.    Maintenance of the original documentation in the inmate's medical record, with copies forwarded to the Office of Health Services.

J.    The advisor will assist the inmate in submitting an appeal if the inmate desires to do so. An inmate's appeal will be reviewed and the decision rendered in writing by a designated psychiatrist within one working day of its receipt.  The designated psychiatrist may not be a member of the inmate's Involuntary Medication Committee. The inmate shall be informed of the right to appeal any decision to a court of appropriate jurisdiction.

K.    An inmate may voluntarily accept medication without invalidating an existing involuntary medication order.

L.    If the treating psychiatrist recommends continuation of the involuntary medication for longer than ninety days, he/she will complete a new ADOC Form MH-028 and submit it to the Chair of the Involuntary Medication Review Committee at least two working days before the previous authorization expires.

M.    The same Involuntary Medication Review Committee, which considered the initial involuntary medication request, will consider the treating Psychiatrist's recommendation on or before the day the prior authorization expires, utilizing the procedures outlined in V.E. through J.

N.    If the second Involuntary Medication Hearing decides that involuntary medication should be continued, the authorization will be in effect for 180 days.

O.    Continuation of the authorization for involuntary medication will be re-evaluated after the initial 180-day order to continue to involuntarily medicate the inmate expires.  An inmate will be given a thirty (30) day respite at the completion of the initial 180 day order to involuntarily medicate. The inmate's ability to be self-

directed with medication compliance will be evaluated within this time period. Should an inmate choose to miss three consecutive doses at any time within the thirty (30) day respite or show signs of deterioration in his/her mental health, the treating psychiatrist may order a continuation of the authorization for involuntary medication for a second 180 day interval.

P.     The procedures outlined within Section V: subsections C through J are to be followed prior to any reauthorization of involuntary medication for an inmate who has had orders to involuntary medicate for a total of 365 cumulative days within a consecutive sixteen (16) month period of time.

Q.     The psychiatrist's order for involuntary psychotropic medication will include a note of "Involuntary medication."

R.     The nurse transcribing the Psychiatrist's involuntary medication order for an inmate will note "Involuntary medication" within the medication administration record/system.

S.     If an inmate refuses involuntary medication or does not appear for a psychotropic medication noted on the medication administration record as "involuntary medication," the nurse administering the medication will immediately notify the facility supervising health authority.

T.     The Supervising Psychologist of the Intensive Psychiatric Stabilization Units (SU) and Residential Treatment Units (RTU) will complete and submit ADOC Form MH-031, Mental Health Unit (RTU/SU): Inmates Receiving Involuntary Medication, with monthly Mental Health Services reports.

## VI.   DISPOSITION

See AR 601, Mental Health Forms and Disposition.

## VII.   FORMS

Refer to AR 601, Mental Health Forms and Disposition for:

A.     ADOC Form MH-028, Involuntary Medication Request

B.     ADOC Form MH-029, Notice of Involuntary Medication Hearing

C.     ADOC Form MH-030, Record of Involuntary Medication Review

D.     ADOC Form MH-031, Mental Health Unit (RTU/SU): Inmates Receiving Involuntary Medication

E.     ADOC Form MH-040, Progress Notes

**VIII.**   **SUPERSEDES**

This AR supersedes all prior versions of AR 621 and 621-1 dated September 20, 2004 and March 14, 2005, respectively.

**IX.**   **PERFORMANCE**

This administrative regulation is published under the authority of:

A.   National Commission on Correctional Health Care: Standards for Health Services in Prisons, 2014

B.   The Code of Alabama 1975, Section 22-50-11.

# Exhibit B

To

# Settlement Agreement Concerning Involuntary Medication Claims





## State of Alabama
## Alabama Department of Corrections

301 S. Ripley
P. O. Box 301501
Montgomery, AL 36130

**KAY IVEY**
GOVERNOR

**JEFFERSON DUNN**
COMMISSIONER

May 5, 2017

ADMINISTRATIVE REGULATION                OPR:  Office of Health Services
NUMBER 621

### ADMINISTRATIVE REVIEW FOR
### INVOLUNTARY PSYCHOTROPIC MEDICATION(S)

I.      **GENERAL**

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes the responsibilities, policies and procedures for administrative review for involuntary psychotropic medication.

II.     **POLICY**

The recommendation to involuntarily treat an inmate with psychotropic medication will be considered only after less restrictive/intrusive attempts have been exhausted and were unsuccessful.  The Institutional Psychiatrist and other members of the inmate's treatment team will evaluate the inmate, and the Involuntary Medication Review Committee will review their recommendation. In no instance shall an inmate be threatened by any individual associated with ADOC, including its employees and/or independent contractors, with the use of force or a threat of disciplinary actions such as segregation, loss of privileges, or loss of good time, as a means to coerce the inmate to accept psychotropic medications; however, nothing herein shall restrict the authority of a person providing current mental health care from notifying an inmate regarding the events which might transpire in the event that he or she refuses psychotropic medication, including initiation of the involuntary psychotropic medication process.

III.    **DEFINITION(S) AND ACRONYM(S)**

Refer to AR 602 for definitions of the following terms used in this AR:

Seriously Mentally Ill (SMI)

Treatment Team

Involuntary Medication Review Committee

Intensive Psychiatric Stabilization Unit (SU)

Residential Treatment Unit (RTU)

## IV.   **RESPONSIBILITIES**

A.   The Institutional Psychiatrist and other members of the inmate's treatment team are responsible for evaluation of the inmate and submitting their recommendation to the Involuntary Medication Review Committee.

B.   The Involuntary Medication Review Committee is responsible for reviewing the treatment team's recommendation, notifying the inmate of a hearing date, evaluating evidence/testimony, and making and documenting their decision.

## V.   **PROCEDURES**

A.   Prior to consideration of involuntary medication, the inmate must be transferred to an Intensive Psychiatric Stabilization Unit for aggressive and intensive mental health treatment. The lack of effectiveness of treatment measures that are less intrusive than involuntary medication must be documented.

B.   Before involuntary psychotropic medication(s) is authorized for an inmate, he/she must:

1.   Have been diagnosed with a serious mental illness, and

2.   Have been transferred to an Intensive Psychiatric Stabilization Unit (SU) for less intrusive treatment; and

3.   Have, as a result of the serious mental illness, a current high likelihood of serious harm to self, others or property, or be unable to successfully perform basic, life-sustaining activities of daily living such as eating or drinking, or manifest severe deterioration in routine functioning, such as repeated and escalating loss of cognitive or volitional control over personal actions; and

4.   Refuse voluntary treatment.

5.   In assessing the current risk of harm, the Committee may consider evidence of past serious harm to self, others and property.  If the Committee considers such evidence of past conduct in determining current likelihood of harm, it must document the evidence considered in ADOC Form MH-028, and must document the basis for the determination that these past events support a finding of an ongoing, current serious risk of harm that could present in the current environment

6.   The Committee must find that the administration of the contemplated psychotropic medication is in the inmate's best medical interest.

C.   After deciding to pursue the authorization for involuntary medication, the inmate's treatment team will complete an ADOC Form MH-029, Involuntary Medication Request form. The documentation will include:

1.   Psychiatric evaluation of inmate's current mental health condition.

2.   Diagnosis in accordance with DSM 5 or the latest subsequent version thereof.

3.   Indication that the inmate presents a current substantial likelihood of serious physical harm towards self or others, a substantial likelihood of significant property damage or who is incapacitated to the extent that he/she is unable to perform basic, life sustaining functions such as eating and drinking or manifests severe deterioration in routine functioning by repeated and escalating loss of cognitive or volitional control over personal actions as a result of the serious mental illness. In assessing the current risk of harm, the Committee may consider evidence of past serious harm to self, others and property.  If the Committee considers such evidence of past conduct in determining current likelihood of harm, it must document the evidence considered in ADOC Form MH-028, and must document the basis for the determination that these past events support a finding of an ongoing, current serious risk of harm that could present in the current environment.

4.   Description of the methods used to motivate the inmate to accept medication and the inmate's responses to these efforts.

5.   Consideration and rejection of less intrusive alternatives.

6.   Any recognized religious objection to the medication.

7.   Proposed type, dosage range, and route of administration of the psychotropic medication, including injectable and oral alternatives.

8.   Any history of side effects, including severity, from the proposed involuntary medication.

9.   Statement that the patient-specific goals anticipated from the proposed medication outweigh potential risks or side effects.

10.  Statement that the administration of the contemplated psychotropic medication is in the inmate's best medical interest.

D.   If less intrusive measures are unsuccessful, the Institutional Psychiatrist and the inmate's treatment team will document recommendations on ADOC Form MH-028, Involuntary Medication Request.  After completion, the form is submitted to the Involuntary Medication Review Committee Chair. The review process will be

conducted in accordance with the <u>Washington v. Harper</u> decision. The use of involuntary medication as a punitive measure is strictly prohibited.

E.    The Involuntary Medication Review Committee consists of one Psychiatrist (Chair), one licensed psychologist, and either a master's level in psychology, Social Worker, Nurse Practitioner or Registered Nurse.  No member of the committee, no person assigned any appeal from the granting of an Involuntary Medication Order, can be currently assigned as the primary mental health provider or primary psychiatric provider for the inmate. "Primary mental health provider" is defined as a professional who, in the last six (6) months has provided treatment, group or individual counseling, medication or medication management, or regularly scheduled care or follow up care.  It does not include isolated instances of medication for emergency purposes or consultation for purpose of suicidality or mental health or suicide watch status.  This committee will:

1.    Meet within one working day of receipt of the Involuntary Medication Request for a preliminary review.

2.    Provide the inmate with ADOC Form MH-029, Notice of Involuntary Medication Hearing, at least one working day prior to the hearing, during which time the inmate may not be medicated.  Such Notice shall include:

    a.    The tentative diagnosis;

    b.    Diagnostic criteria currently met by the patient in support of the diagnosis listed;

    c.    The reasons why the staff believes medication is necessary;

    d.    The inmate's rights at the hearing, including the right to call, examine and cross-examine witnesses, the right to an advisor who has not been involved in the inmate's case and who understands the psychiatric issues involved, the right to receive a copy of the minutes of the hearing, the right to appeal the decision administratively and through judicial review, the name of the advisor, and a means to contact the advisor

3.    Obtain the inmate's signature to acknowledge receipt, and maintain the signed notice with documentation of the hearing process.  If the inmate refuses or is unable to sign or acknowledge receipt, then two mental health staff members will sign the form and the inmate's refusal will be documented in a progress note.

4.    Provide a copy of the signed notice to the inmate and to the Warden of the institution.

5.    Assign an advisor not currently involved in the inmate's treatment to facilitate the inmate's understanding of the hearing process prior to and during the hearing.  The person assigned as the inmate advisor must be

independent and knowledgeable in the provision of mental health care based on education and/or training.

F.   During the Involuntary Medication Hearing, the inmate:

1.   Will be advised of his/her hearing process rights through review of ADOC Form MH-029.

2.   May be permitted to be present, provide testimony, or have witnesses testify on their behalf, but the Chair may limit testimony from a witness or witnesses who are cumulative or redundant.

3.   May choose of their own free will not to participate in the hearing, or may be removed from the hearing if, after repeated warnings, the inmate continues to interrupt the proceedings inappropriately.

4.   Members of the treatment team and other relevant institutional staff will provide evidence relevant to the request for involuntary medication.

5.   The inmate will be permitted to question witnesses supportive of involuntary medication.

6.   The inmate may call as a witness any treating professional who is or has been active in their treatment, who presents an alternate therapy to involuntary medication.

7.   The mental health professionals who initially sought or are currently pursuing an involuntary medication request shall be available in person, or via video, to testify and be questioned by the inmate at the hearing.

8.   Minutes of the hearing will be documented.

G.   The Chair of the Involuntary Medication Review Committee may limit the inmate's right to be present at the hearing or limit the inmate's right to present testimony and question witnesses at the hearing if, after repeated warnings, the inmate continues to interrupt the proceedings inappropriately, or there are documented concerns related to institutional security and order.

1.   If the inmate chooses not to participate in the hearing or is precluded from attendance by the Chair, the advisor will exercise the rights of the inmate on the inmate's behalf.

2.   If the inmate chooses not to be present at the hearing or is precluded from attending by the Chair, if testimony presented by the inmate or his/her witnesses is substantially limited or disallowed, the Chair will document reasons for the absence of the inmate or restrictions in testimony and questioning as part of the final decision.

H.      The decision to medicate the inmate requires a majority of the committee, with the Psychiatrist among the majority, and remains in effect for ninety days.

I.      Documentation of the decision made by the Involuntary Medication Review Committee will include:

   1.      Each member explaining his/her decision on ADOC Form MH-040, Progress Notes, and signing ADOC Form MH-030, the Record of Involuntary Medication Review in the inmate's medical file.

   2.      The Chair explaining the rationale for the Committee's decision on ADOC Form MH-028, Involuntary Medication Request.

   3.      Copies of ADOC Form MH-030 will be sent to the Warden and the inmate within one working day of the committee's decision.

   4.      Notification to the inmate, concerning his/her option to appeal the decision within one working day after receipt.

   5.      Maintenance of the original documentation in the inmate's medical record, with copies forwarded to the Office of Health Services.

J.      The advisor will assist the inmate in submitting an appeal if the inmate desires to do so. An inmate's appeal will be reviewed and the decision rendered in writing by a designated psychiatrist within one working day of its receipt.  The designated psychiatrist may not be a member of the inmate's Involuntary Medication Committee. The inmate shall be informed of the right to appeal any decision to a court of appropriate jurisdiction.

K.      An inmate may voluntarily accept medication without invalidating an existing involuntary medication order.

L.      If the treating psychiatrist recommends continuation of the involuntary medication for longer than ninety days, he/she will complete a new ADOC Form MH-028 and submit it to the Chair of the Involuntary Medication Review Committee at least two working days before the previous authorization expires.

M.      The same Involuntary Medication Review Committee, which considered the initial involuntary medication request, will consider the treating Psychiatrist's recommendation on or before the day the prior authorization expires, utilizing the procedures outlined in V.E. through J.

N.      If the second Involuntary Medication Hearing decides that involuntary medication should be continued, the authorization will be in effect for 180 days.

O.      Continuation of the authorization for involuntary medication will be re-evaluated after the initial 180-day order to continue to involuntarily medicate the inmate expires.  An inmate will be given a thirty (30) day respite at the completion of the initial 180 day order to involuntarily medicate. The inmate's ability to be self-

directed with medication compliance will be evaluated within this time period. Should an inmate choose to miss three consecutive doses at any time within the thirty (30) day respite or show signs of deterioration in his/her mental health, the treating psychiatrist may order a continuation of the authorization for involuntary medication for a second 180 day interval.

P.    The procedures outlined within Section V: subsections C through J are to be followed prior to any reauthorization of involuntary medication for an inmate who has had orders to involuntary medicate for a total of 365 cumulative days within a consecutive sixteen (16) month period of time.

Q.    The psychiatrist's order for involuntary psychotropic medication will include a note of "Involuntary medication."

R.    The nurse transcribing the Psychiatrist's involuntary medication order for an inmate will note "Involuntary medication" within the medication administration record/system.

S.    If an inmate refuses involuntary medication or does not appear for a psychotropic medication noted on the medication administration record as "involuntary medication," the nurse administering the medication will immediately notify the facility supervising health authority.

T.    The Supervising Psychologist of the Intensive Psychiatric Stabilization Units (SU) and Residential Treatment Units (RTU) will complete and submit ADOC Form MH-031, Mental Health Unit (RTU/SU): Inmates Receiving Involuntary Medication, with monthly Mental Health Services reports.

## VI.   DISPOSITION

See AR 601, Mental Health Forms and Disposition.

## VII.   FORMS

Refer to AR 601, Mental Health Forms and Disposition for:

A.    ADOC Form MH-028, Involuntary Medication Request

B.    ADOC Form MH-029, Notice of Involuntary Medication Hearing

C.    ADOC Form MH-030, Record of Involuntary Medication Review

D.    ADOC Form MH-031, Mental Health Unit (RTU/SU): Inmates Receiving Involuntary Medication

E.    ADOC Form MH-040, Progress Notes

**VIII.** **SUPERSEDES**

This AR supersedes all prior versions of AR 621 and 621-1 dated September 20, 2004 and March 14, 2005, respectively.

**IX.** **PERFORMANCE**

This administrative regulation is published under the authority of:

A.     National Commission on Correctional Health Care: Standards for Health Services in Prisons, 2014

B.     The Code of Alabama 1975, Section 22-50-11.