# IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
## MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:14cv601-MHT |
| | ) | (WO) |
| JEFFERSON S. DUNN, in his | ) | |
| official capacity as | ) | |
| Commissioner of | ) | |
| the Alabama Department of | ) | |
| Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## DAUBERT OPINION
## AS TO PHASE 2A EIGHTH AMENDMENT CLAIM

The plaintiffs in this phase of this class-action lawsuit are seriously mentally ill state prisoners and the Alabama Disabilities Advocacy Program (ADAP). The defendants are officials of the Alabama Department of Corrections (ADOC)--Commissioner Jefferson Dunn and Associate Commissioner of Health Services Ruth Naglich--who are sued in only their official capacities.

In Phase 2A of the case, the plaintiffs claim that the defendants have failed to provide constitutionally adequate mental-health care to ADOC prisoners with serious mental-health needs, in violation of the Eighth and Fourteenth Amendments (as enforced through 42 U.S.C. § 1983).[1] The court has jurisdiction of the claim pursuant to 28 U.S.C. § 1331 (federal question) and § 1343(a)(3) (civil rights).

Beginning in December 2016, the court presided over a two-month bench trial concerning this claim. At trial, the parties presented evidence from five expert

---

[1] This case has been divided into three parts for administrative convenience. The claims in Phase 1, which the parties settled with a consent decree approved by the court, are under the Americans with Disabilities Act (ADA), 42 U.S.C. § 12131 et seq., and the Rehabilitation Act, 29 U.S.C. § 794, alleging discrimination on the basis of physical disabilities and failure to accommodate those disabilities. See Dunn v. Dunn, 318 F.R.D. 652 (M.D. Ala. 2016) (Thompson, J.). Phase 2A involves mental-health care. The parties settled claims regarding involuntary medication and violations of the ADA and the Rehabilitation Act pending approval by this court, and the trial proceeded on only the Eighth Amendment claim. The claims in Phase 2B challenge the adequacy of medical and dental care under the Eighth Amendment and will be addressed later in the litigation.

witnesses, some of whom the parties had objected to prior to trial. The parties did not object to any of the experts' qualifications, but the plaintiffs asserted objections under Daubert v. Merrell Dow Pharm., Inc., 509 U.S. 579 (1993), to portions of Dr. Raymond Patterson's testimony and to the methodology underlying Robert Ayers's opinion, and the defendants asserted Daubert objections against Dr. Kathryn Burns's and Eldon Vail's methodologies. The court recently issued an opinion finding that the plaintiffs prevailed on their Eighth Amendment claim in the Phase 2A trial. Braggs v. Dunn, --- F. Supp. 3d ---, 2017 WL 2773833, 2:14cv601-MHT (M.D. Ala. June 27, 2017) (Thompson, J.). In tandem with that opinion, the court entered an order overruling all Daubert objections and promised that an opinion explaining why would follow later. This is the promised Daubert opinion.

## I.  PROCEDURAL BACKGROUND

Well before the trial, the court entered a Phase 2 scheduling order setting forth its requirements for the parties should they wish to bring _Daubert_ challenges. The court made clear that, if the parties wished the court to consider any _Daubert_ challenges at trial, "including any unresolved challenges previously raised by either party in litigation on dispositive and class certification motions," they had to address those _Daubert_ challenges in their trial briefs detailing proposed findings of facts and conclusions of law, and that, "[a]bsent exceptional circumstances," separate _Daubert_ motions would not be entertained.  Phase 2 Pretrial and Motion Deadlines Order (doc. no. 529) at 4-5; _see also_ New Phase 2A Scheduling Order (doc. no. 748) at 4 (affirming deadlines in doc. no. 529).

Both sides challenged expert testimony under _Daubert_.  In their opposition to the plaintiffs' motion for class certification, the defendants challenged Dr. Burns's methodology under _Daubert_ and stated that Vail

was not qualified under Daubert and Federal Rule of
Evidence 702 because he did not visit every ADOC
facility.    The plaintiffs asserted Daubert challenges
to the testimony of Ayers and the methodology of Dr.
Patterson's audits in their summary judgment briefing.[2]

The court overruled the defendants' Daubert
objection against Burns in the class-certification
opinion, but did not find it necessary to resolve the
remaining Daubert objections before trial.    Braggs v.
Dunn, 317 F.R.D. 634, 645-49 (M.D. Ala. 2016)
(Thompson, J.).

The plaintiffs reasserted their Daubert challenges
in their pre-trial brief, as required by the court in
order to raise their objections at trial.    The
defendants stated in their pre-trial brief: "The State
believes that restating its position on the
admissibility of the expert witnesses is unnecessary

---

2.    The plaintiffs also challenged the testimony of
Dr. Robert Morgan on Daubert grounds.    Pls.' Pre-Trial
Brief (doc. no. at 966) at 269.    However, because the
defendants did not call Morgan to testify at trial, the

here and relies upon the extensive briefing already submitted on these issues." Defs.' Pre-Trial Br. (doc. no. 992) at 196 n.893.


## II. LEGAL STANDARD

The Federal Rules of Evidence govern the admissibility of expert testimony. See <u>Daubert v. Merrell Dow Pharm., Inc.</u>, 509 U.S. 579 (1993). Rule 702 provides:

> "A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
>
> a. The expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> b. The testimony is based on sufficient facts or data;
>
> c. The testimony is the product of reliable principles and methods; and

---

plaintiffs' <u>Daubert</u> challenge to his opinion is due to be denied as moot.

d.  The  expert  has  reliably  applied
        the  principles  and  methods  to  the
        facts  of  this  case."

Fed.  R.  Evid.  702.  The  trial  court  must  serve  a

"gatekeeping  role"  for  expert  witness  testimony,

Daubert,  509  U.S.  at  597,  by  considering  three

requirements:  "First,  the  expert  must  be  qualified  to

testify  competently  regarding  the  matter  he  or  she

intends  to  address;  second,  the  expert's  methodology

...  must  be  reliable  ...;  and  third,  the  expert's

testimony  must  assist  the  trier  of  fact  through  the

application  of  expertise  to  understand  the  evidence  or

determine  a  fact  in  issue."  Adams  v.  Laboratory  Corp.

of  America,  760  F.3d  1322,  1328  (11th  Cir.  2014)

(internal  quotation  and  citation  omitted).  Doing  so

requires  the  court  to  make  both  "relevance"  and

"reliability"  determinations,  disallowing  expert

testimony  that  is  either  unreliable  or  unhelpful  to  the

trier  of  fact.  Daubert,  509  U.S.  at  587-90.  The

burden  is  on  the  proponent  of  expert  testimony  to

establish  the  admissibility  by  a  preponderance  of  the

evidence.  **McCorvey v. Baxter Healthcare Corp.**, 298
F.3d 1253, 1256 (11th Cir. 2002).

In **Daubert**, the Supreme Court provided a
non-exclusive list of factors to consider when
examining a challenge to the methodology underlying an
expert's testimony, including: whether a theory or
technique can be or has been tested; whether a theory
or technique has been subjected to peer review or
publication; whether a theory or technique has gained
widespread acceptance within the relevant community of
experts, or, rather, has been unable to garner more
than minimal support; and the known or potential rate
of error of a technique. **Daubert**, 509 U.S. at 593-94.
These factors are not a "definitive checklist," but are
considerations that may shape the trial judge's
flexible inquiry under Rule 702. **Id**. at 593-94. "[T]he
question of whether **Daubert**'s specific factors are, or
are not, reasonable measures of reliability in a
particular case is a matter that the law grants the
trial judge broad latitude to determine."  **United**

States v. Brown, 415 F.3d 1257, 1268 (11th Cir. 2005) (internal quotation omitted).

Two additional considerations in conducting a Daubert inquiry are relevant here. First, Daubert's reliability and relevance inquiry is not supposed to "supplant the adversarial system," meaning that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK Ltd., 326 F.3d 1333, 1341 (11th Cir. 2003) (citing Daubert, 509 U.S. at 596). Second, the Daubert barriers to admissibility are more relaxed in a bench trial, "where the judge is serving as factfinder," and the court need not be "concerned about dumping a barrage of questionable scientific evidence on a jury." Brown, 415 F.3d at 1268 (internal quotation and citation omitted).

## A. Dr. Kathryn Burns

While the defendants did not object to Dr. Burns's qualification as a correctional mental-health expert, they objected to the methodology she employed to assess the adequacy of mental-health care within ADOC.[3] The court previously addressed the defendants' <u>Daubert</u> objection regarding Burns in the class-certification opinion. <u>Braggs v. Dunn</u>, 317 F.R.D. 634 (M.D. Ala. 2016) (Thompson, J.). In that opinion, the court found that Burns's methodology of evaluating the adequacy of mental-health care within ADOC facilities was sufficiently reliable to overcome a <u>Daubert</u> challenge, dismissing the defendants' contentions that her sample size was too small and that her non-random sampling rendered her analysis unreliable. <u>Id</u>. at 645-49. The court also found that her expert analysis of the

_____

3. As a procedural matter, the plaintiffs argue that the defendants have waived their objection to Burns's testimony by failing to address it in their pre-trial brief. The court does not reach this issue

mental-health care system was helpful to the trier of fact. Id. at 649-51. With its previously entered Daubert order, the court reached the same findings on the defendants' objections at trial--that Burns's testimony was admissible because her methodology was reliable and conclusions helpful to the trier of fact.

In their post-trial brief, the defendants raised two additional grounds for objecting to Burns's testimony under Daubert. First, the defendants argued that Burns failed to identify during her trial testimony specific prisoners whose experience supported her conclusions and that she therefore "improperly extrapolated." Defs.' Post-Trial Filing (doc. no. 1283) at 14. This objection is simply a different iteration of the defendants' previous argument that Burns's methodology was unreliable because it did not include a sufficient number of data points to make conclusions on a systemic level. The court finds this argument unconvincing. As noted in the

_____

because the defendants' objection is overruled on the

class-certification opinion, Burns provided an
extensive report that identified sources of her
observations and conclusions, including names of
prisoners and specific documents based on which she
evaluated ADOC policies and practices.  See Joint Ex.
460, Burns Expert Report (doc. no. 1038-1044); see also
Jama v. Esmor Corr. Servs., Inc., 2007 WL 1847385,
97-3909, at *26-27 (D.N.J. June 25, 2007) (Debevoise,
J.) (finding a limited sampling method in a prison
health-care case reliable, especially because the
analysis incorporated reviews of other documents that
enabled the expert to "draw general conclusions").

     Furthermore, the court has already found that
Burns's conclusions are based on a sufficient quantity
of data and range of sources to be admissible under
Daubert.   See Braggs v. Dunn, 317 F.R.D. at 645-49
(finding that non-random sampling was an accepted and
reliable method among prison experts, that Burns's
sample size was sufficient, and that she had other

merits.

sources of information, such as internal documents).

Once a court has found that the expert testimony is
based on sufficient data and that the underlying
methodology is sound, the strength of conclusions drawn
from the expert's analysis and the weight due to those
conclusions is for the finder of fact to decide through
the adversarial system.  Daubert, 509 U.S. at 594–95
("The focus [of the Rule 702 inquiry] ... must be
solely on principles and methodology, not on the
conclusions that they generate.").  To the extent Burns
during her trial testimony did not identify a specific
prisoner or example for every single observation or
conclusion drawn from her interviews, document reviews,
and site visits, the court considered those factors in
considering the weight of her testimony, rather than
its admissibility.

The defendants' second contention is that Burns's
opinion as to the adequacy of individual care does not
establish an Eighth Amendment violation.  This is not a
Daubert objection at all: establishing legal liability

is not a requirement under the Daubert analysis. It is the factfinder's job to evaluate competing expert opinions, in conjunction with all other admissible evidence, to decide whether there has been a violation. In sum, Burns's testimony was sufficiently reliable to survive a Daubert challenge.

## B. Eldon Vail

The defendants objected under Daubert to the testimony and expert report offered by Vail, the plaintiffs' correctional administration expert, asserting that he is not "qualified" to testify under Daubert and Federal Rule of Evidence 702 to offer an opinion as to facilities that he did not visit. Defs.' Opp. to Pls.' Motion to Certify a Class (doc. no. 810) at 8 n.3.

Vail's expert testimony is admissible. First, as explained in the class-certification opinion with regards to Burns's testimony, the case law indicates that an expert on prison conditions is not

14

categorically required to visit every single facility in order to offer an opinion on systemic issues. Braggs v. Dunn, 317 F.R.D. at 645-49. How many facilities an expert should visit in order to offer a reliable opinion depends on the issues and circumstances presented. Second, for the facilities that he did not visit, Vail reviewed internal and public documents of ADOC, including vulnerability analyses, monthly statistical reports, standard operating procedures, local institutional policies, meeting minutes, transcripts of ADOC officials' depositions, and incident reports. Vail Testimony at 1-24, 1-65. As with Burns's analysis of mental-health care delivery within ADOC, Vail cites documentary evidence to support his conclusions about ADOC facilities.[4] In fact, Vail's overall conclusion--that

---

4. For that reason, Vail's testimony is distinguishable from cases the defendants cite where experts connected existing data to the opinion by only the "ipse dixit of the expert," without other supporting evidence. Hendrix v. Evenflo Co., Inc., 609 F. 3d 1183, 1201 (11th Cir. 2010) (internal quotation and citation omitted). Similarly, Vail's testimony is

ADOC facilities are overall overcrowded and understaffed, with some variances across facilities--is essentially undisputed: ADOC Commissioner Dunn himself called the two problems a "two-headed monster" facing the Department. Dunn Testimony at 2-45. To the extent that Vail was not familiar with the minutiae of everyday operations of the facilities that he did not visit, or the exact magnitude of understaffing at each facility, such shortfalls go to the weight of his testimony, rather than admissibility. See United States v. Ala. Power Co., 730 F.3d 1278, 1288 (11th Cir. 2013) (holding that the availability of a "more

---

distinguishable from another case that the defendants cite, Loeffel Steel Prods., Inc. v. Delta Brands, Inc., 387 F. Supp. 2d 794 (N.D. Ill. 2005). In that case, the trial court excluded an expert's damages estimate because it was based on the financial performance of a corporation that was not comparable to the plaintiff corporation. Also, there was no evidence derived from the plaintiff corporation or any connection between the comparator corporation and the plaintiff corporation. In contrast, here, Vail based his overall conclusion on his site visits of select facilities, as well as voluminous documentary evidence from the facilities that he did not visit, all of which are operated by the defendants. In other words, these cases are simply not comparable.

thorough, more complex" methodology does not necessarily render a less precise methodology inadmissible under Daubert). The court therefore found in the Daubert order that Vail's testimony was admissible.


C. Dr. Raymond Patterson's Audit Results

The plaintiffs challenged as unreliable Patterson's testimony and his report about an ADOC medical-records audit that he and other defense experts performed. In particular, the plaintiffs argued that the audit methodology was unreliable, and, even if the methodology were sound, the defense experts carried out the audit in an unreliable manner. Based on Patterson's testimony regarding the methodology and the audit process, the court, with the previously entered Daubert order, found that the audit results were admissible.

According to Patterson, he and other defense experts designed the audit tools in May 2016 to measure

patients' access to an appropriate level of care in high-risk and high-volume areas of mental-health care. The resulting audit tools targeted timeliness of care in six areas: mental-health evaluation at intake and after referrals; suicide risk assessments; treatment planning; and three types of side-effect monitoring for psychotropic medications. The defense experts then spent three days in six facilities going through medical records along with ADOC employees. Patterson included the findings in his expert report and testified during the trial regarding the methodology and conclusions that he drew from the audit.

Patterson's testimony regarding the methodology established sufficient reliability to overcome a Daubert challenge. Patterson testified that he has done hundreds of similar audits to evaluate a prison mental-health care system, for both litigation and non-litigation purposes. He explained that, although the audit measured only six high-impact and high-volume areas, it was a part of his systemic evaluation of

18

mental-health care within ADOC, complementing his document reviews. Furthermore, he testified that the audit results are replicable, because another team can verify the audit results if given the underlying data--the medical records--that his team used to conduct the audit. In other words, he attested that the audit methodology is generally accepted in evaluating a health-care system and can be tested and replicated, both of which are indicia of reliability under Daubert.

The plaintiffs, during their cross examination of Patterson, appropriately raised issues regarding the limited nature of the audits and what the results do not show. For example, the audit results, as Patterson conceded, do not show what providers did in response to side-effect monitoring test results. Furthermore, in some cases, the audit results were inconclusive because of the limited number of patients who required a certain type of side-effect monitoring in that facility. However, these shortfalls of a study are

"more appropriately considered an objection going to the weight of the evidence rather than its admissibility." Rosenfeld v. Oceania Cruises, Inc., 654 F.3d 1190, 1193-94 (11th Cir. 2011) (internal quotation and citation omitted) (allowing expert testimony based on methods that the opponent challenged as "imprecise and unspecific," because the criticisms of the study go to the weight, rather than admissibility). In other words, these inadequacies in the audit methodology were appropriately addressed by the adversarial system of cross-examination and presentation of contrary evidence, rather than by precluding the related expert testimony from being presented during the trial.

As for the implementation of the audit, the plaintiffs contended that the audit tools changed throughout the process, and that the audit process did not sufficiently safeguard against irregularities in pulling audit samples or ensure that the audit data entries accurately reflected the underlying data.

However, as with the limitations of the audit results discussed above, these limitations or shortfalls in the audit process go to the weight of the audit results, rather than admissibility, since Daubert requires the methodology to be only "sufficiently reliable" and "not without foundation," rather than faultless or even persuasive. Maiz v. Virani, 253 F.3d 641, 665-66 (11th Cir. 2001); see also Quiet Tech. DC-8, Inc., 326 F.3d at 1341 ("[I]t is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence" under Daubert). Indeed, the plaintiffs were able to point out errors on the audit forms and raise doubts about the accuracy of audit results during the cross examination of Patterson. Therefore, with the previously entered Daubert order, the court found that the audit-implementation issues raised by the plaintiffs were properly addressed through the adversarial system, rather than by excluding the results from consideration by the

factfinder, and that Patterson's testimony regarding the audit results was admissible.


## D. Robert Ayers

The plaintiffs initially challenged defense expert Ayers's methodology under Daubert, arguing that relying primarily on interviews with staff to formulate an opinion about the quality of mental-health care is unreliable. See Pls.' Opposition to Defs.' Motion for Summary Judgment (doc. no. 888) at 250-64. In their post-trial brief, however, the plaintiffs conceded that their objection should be overruled. Given that Ayers's methodology--site visits, document review, and staff interviews--did not deviate significantly from the methodology employed by other experts in this case whose methodology was found reliable, the court, with the previously entered Daubert order, found that Ayers's methodology was sufficiently reliable. The court further found that the limited nature of his supporting data and his testimony that he did not have

sufficient time to investigate certain issues bore on only the weight of his expert opinion, rather than admissibility. Therefore, the plaintiffs' initial objection against Ayers's methodology was overruled in the Daubert order.

* * *

For the foregoing reasons, the court in its order of June 27, 2017 (doc. no. 1284) denied the plaintiffs' motion to exclude Ayers's testimony and portions of Patterson's testimony (doc. no. 888) and the defendants' motions to exclude Burns and Vail's testimony (doc. nos. 807 & 810).

DONE, this the 13th day of July, 2017.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE