IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al., | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:14cv601-MHT |
| | ) | (WO) |
| JEFFERSON S. DUNN, in his | ) | |
| official capacity as | ) | |
| Commissioner of | ) | |
| the Alabama Department of | ) | |
| Corrections, et al., | ) | |
| | ) | |
|     Defendants. | ) | |

**PHASE 2A OPINION AND ORDER ON MOTION TO REDACT**

The issue the court confronts in this extended litigation is whether to redact the trial testimony of a witness.

Beginning in December 2016, the court conducted a two-month bench trial concerning the constitutionality of mental-health care in the Alabama Department of Corrections (ADOC). See Braggs v. Dunn, --- F. Supp. 3d ---, 2017 WL 2773833 (M.D. Ala. June 27, 2017) (Thompson, J.) (finding liability based on trial testimony and other evidence). The defendants have now

moved to redact the transcript of the trial testimony of Dr. David Tytell, the chief psychologist of ADOC. The plaintiffs oppose this motion. The court finds that the defendants have failed to show good cause warranting redaction of this particular information from Dr. Tytell's testimony.

A "strong common law presumption of public access" applies to trial records. Wilson v. Am. Motors Corp., 759 F.2d 1568, 1571 (11th Cir. 1985). This common-law right of access, however, may be overcome by a showing of good cause, which requires "balancing the asserted right of access against the other party's interest in keeping the information confidential." Romero v. Drummond Co., 480 F.3d 1234, 1246 (11th Cir. 2007). Whether good cause exists depends on "the nature and character of information in question." Id. Factors to consider include: "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will

be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents." Id.

The portions that the defendants seek to redact are general descriptions of prisoners who committed suicide while in segregation, referred to by their initials, including their history of suicide attempts, housing arrangements, suicide method, and whether they were receiving any mental-health care at the time. The defendants argue that good cause exists for redacting this information because "it includes sensitive medical and mental health information surrounding the deaths of identifiable inmates." Def. Br. (doc. no. 1314) at 2.

Based on its review of the information in Dr. Tytell's testimony, the court finds that any privacy interest in the information at issue is minimal, and that any harm that would arise from public access is unlikely. First, much of the information relating to three of the six suicides included in Dr. Tytell's

3

testimony was already reported by various media outlets, minimizing any harm that may arise from this particular testimony being public. Second, the prisoners whose suicides are at issue have no privacy interests because they are deceased. See Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 168–69, (2004) ("[Privacy] right may in some cases be itself violated by improperly interfering with the character or memory of a deceased relative, but it is the right of the living, and not that of the dead, which is recognized.") (quoting Schuyler v. Curtis, 147 N.Y. 434, 447 (1895)). And the defendants have not shown that surviving family members have asserted their privacy interests "in the character and memory of the deceased" with regards to the information in Dr. Tytell's testimony. Id. (explaining the nature of the privacy interests held by surviving family members in the FOIA context). Lastly, the information the defendants seek to redact is not comparable to the medical and mental-health information that has been

subject to previous protective orders in this case: medical records of prisoners, and their testimony about their mental-health symptoms, diagnoses, and treatment. Dr. Tytell's testimony regarding prison suicides is much less detailed and sensitive, due to the level of generality with which Dr. Tytell spoke, and the otherwise publicly available information regarding the same incidents.

On the other hand, the portion of Dr. Tytell's testimony at issue involves a public concern that is "at the heart of the interest protected by the right of access: the citizen's desire to keep a watchful eye on the workings of public agencies and the operation of government." Romero, 480 F.3d at 1246 (internal quotation omitted) (citing Nixon v. Warner Commc'ns, Inc., 435 U.S. 589, 598 (1978)). The nature and consequences of the defendants' segregation practices, including suicides within segregation units, are a major part of the court's liability findings in this case; the public has a strong interest in learning of

these practices and their consequences, as reflected in these suicides, as well as an interest in reviewing the factual basis for the court's findings. Braggs, --- F.Supp.2d at ---. 2017 WL 2773833, at *45-52. Given the weight of the public concern at stake, the minimal privacy interests articulated by the defendants do not constitute good cause for restricting public access of the trial record.

* * *

Accordingly, it is ORDERED that the defendants' motion to redact portions of Dr. David Tytell's transcript (doc. no. 1314) is denied.

DONE, this the 25th day of August, 2017.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE