IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| **EDWARD BRAGGS, et al.,** | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:14cv601-MHT |
| | ) | (WO) |
| **JEFFERSON S. DUNN, in his** | ) | |
| **official capacity as** | ) | |
| **Commissioner of** | ) | |
| **the Alabama Department of** | ) | |
| **Corrections, et al.,** | ) | |
| | ) | |
| Defendants. | ) | |

**PHASE 2A INVOLUNTARY MEDICATION CONSENT DECREE**

This matter having come before the court on the Joint Motion for Approval of the Parties' Settlement Agreement and Entry of Stipulated Order; the court having ordered the provision of adequate notice to members of the plaintiff class of the terms of this order, having received and considered the written objections from members of the plaintiff class related to the contents of this order, having held a fairness hearing on August 23, 2017, having reviewed the filings, documents, orders and/or admissible evidence

which are currently filed of record with the court, and having considered the arguments of counsel for the parties and the other premises herein; and for the reasons to be set forth in a separate opinion, it is ORDERED, ADJUDGED, and DECREED as follows:

1. **Notice Pursuant to Rule 23(e)(1).** Reasonable notice of the proposed settlement was provided to the plaintiff class in the manner directed by the court by separate order. Members of the plaintiff class were then afforded an opportunity to submit comments and objections to the court concerning the proposed settlement. A fairness hearing pursuant to Fed. R. Civ. P. 23(e)(2) was held on August 23, 2017, at which the court heard arguments and testimony.

2. **Rule 23(e)(2) Findings.** The court, having considered the arguments and testimony at the hearing, the comments submitted by class members, and the entire record in this case, concludes that the settlement is fair, reasonable, and adequate.

3. <u>Revised Involuntary Medication Policy.</u>

Pursuant to the terms and conditions of this order and the process identified herein, the Alabama Department of Corrections ("ADOC") will implement a revised policy and practice regarding the involuntary medication of inmates with mental illnesses. The court finds the revisions in the applicable Administrative Regulation ("AR") No. 621, if fully implemented, extend no further than necessary to resolve the violations of federal due process rights alleged by Quang Bui, the Alabama Disabilities Advocacy Program ("ADAP"), and the plaintiff class in the third cause of action in the fifth amended complaint, including, but not limited to, plaintiffs' allegations that:

    a. The ADOC failed to afford due process to those inmates who were subject to involuntary medication proceedings while in ADOC custody. (<u>See</u> Fifth Amended Complaint (doc. no. 805));

b. The ADOC's prior involuntary medication process "f[e]ll far short of what due process requires" (doc. no. 805, ¶ 4);

c. The ADOC and its mental health vendor allegedly maintained a "policy and practice of medicating mentally ill prisoners against their will without providing due process to determine whether the individuals can be forced to take medication" (doc. no. 805, ¶ 190);

d. "The widespread and pervasive practice is that many prisoners in ADOC custody are denied due process" (doc. no. 805, ¶ 453);

e. The ADOC allegedly violated the "due process rights [of prisoners in its custody] by involuntarily medicating prisoners in violation of the Fourteenth Amendment to the U.S. Constitution" (doc. no. 805, ¶ 453);

f. The ADOC's involuntary medication process failed to include the necessary due process protections found to be constitutional in

4

*Washington v. Harper*, 494 U.S. 210 (1999) (doc. no. 888, at 162-163); and

g. "Plaintiffs Bui, Hartley, Dillard, Terrell, and McCoy's due process rights have been violated by Defendants' policies and practices of providing either constitutionally inadequate due process or no process at all with regard to involuntary medication" (doc. no. 888, p. 164).

A true and correct copy of the revised Involuntary Medication policy, AR 621, is attached as Exhibit 1 hereto.

4. **Dismissal of Bui's Involuntary Medication Claim.** Pursuant to the provision in the parties' settlement agreement (doc. no. 1248-1) for the dismissal with prejudice of any and all claims asserted by Bui regarding the involuntary medication policies and/or practices, these claims are dismissed with prejudice.

5. **No Admission of Liability.** Nothing in the parties' settlement agreement (the "Agreement") or this

5

order will be construed as an admission by the ADOC, Commissioner Dunn, or Associate Commissioner Naglich of the violation of any law. To the contrary, ADOC, Commissioner Dunn, and Associate Commissioner Naglich deny every material allegation of the complaint, as amended, in this case and deny any liability to the plaintiffs. Neither the Agreement nor this order constitute, nor will be construed as, an admission or evidence of any act or omission of any kind. Nothing in the Agreement or this order will be used for any purpose outside of the above-captioned matter or against the ADOC and/or any of its officials, officers, representatives, agents or employees. Nothing in the Agreement or this order will be construed to require ADOC to do more than what is required by law within the Eleventh Circuit. Nothing herein shall be considered as evidence or an admission of any kind to be utilized and/or relied upon by the court in its evaluation of liability as to any other claim asserted in the fifth

amended complaint or any subsequent evaluation by the court of any proposed remedial scheme.

6. **Provision of Mental Health Records to ADAP.**

    a. Starting on the fifth day of the second month after final approval of the Agreement, ADOC shall provide to ADAP a roster of all inmates who participated in an involuntary medication hearing, whether initial or renewal during the prior month. The roster shall include the following information: (i) the name of each inmate, (ii) each inmate's AIS #, (iii) each inmate's current facility assignment as of the date of the involuntary medication hearing, (iv) the current DSM-V diagnosis for each inmate, (v) the name of the medication administered on an involuntary basis for each inmate, and (vi) whether the subject hearing was a "new" or "renewed" request for each inmate. Within five days of production of said roster, plaintiffs' counsel may designate up to

four inmates whose mental health records shall be produced by ADOC to ADAP.  Within 14 days of receipt of notification, ADOC shall provide the following documents from the four inmates' medical and mental health records:

(1) all documents reviewed by the Involuntary Medication Committee in connection with the prior month's involuntary medication hearing for each of the four inmates;

(2) all documents generated by the Involuntary Medication Committee or any appeal therefrom with regard to the prior month's involuntary medication hearings for each of the four inmates;

(3) the notices of the most recent involuntary medication hearings issued to the four inmates;

(4) any notices issued to the four inmates regarding the opportunity to appeal the

decision regarding their most recent involuntary medication proceedings;

(5) the documents containing the final decision upon any appeal from any of the four inmates regarding the prior month's involuntary medication proceedings; and

(6) any other documents provided to any of the four inmates by the Involuntary Medication Committee or regarding the prior month's involuntary medication hearings.

In addition to the foregoing, the ADOC will also produce for each of the four selected inmates the last seven months of their medical records included in the records tabbed as: Mental Health, IVM, Orders and Labs and the current Master Problem List.

b. ADAP may prepare and submit to ADOC a written, monthly report regarding ADOC's efforts to meet the requirements of the Agreement, specifically its efforts to comply with the revised AR 621. See Ex. 1. Any such report shall be limited to

ADOC's efforts to comply with the Agreement. Under no circumstances shall the Agreement or this order be construed as granting and/or permitting ADAP the authority to oversee and/or review anything other than the ADOC's compliance with the Agreement. ADAP's review and reporting shall be limited to oversight of the ADOC's compliance with the revised Administrative Regulation No. 621 attached hereto as Exhibit 1. Each monthly report may indicate all areas in which the ADOC is, or is not, in substantial compliance with the Agreement. This monthly report may be provided to the Commissioner via his counsel of record. If ADAP believes that ADOC is not in substantial compliance with the terms and provisions of the Agreement or this order, ADAP may provide written recommendations of actions that it believes necessary to achieve substantial compliance with the terms of the

provision or provisions. ADOC will then have 30 days to provide written comments, objections, or remedial action plans in response to the monthly report. In the event of any disagreement among the parties related to any remedial actions, the parties will meet and confer within 10 days of ADOC's written response to attempt to resolve any such disagreement.

c. The provision of records as set forth in this provision will continue under these terms from the date of this order for a period of 24 months thereafter. For this 24-month period, neither ADAP nor plaintiffs' counsel will be compensated for their services beyond the compensation found under ¶ 7 <u>infra</u> entitled "Attorneys' Fees and Expenses," except for any attorneys' fees necessary to enforce the terms of this order in a court proceeding in which the court determines the plaintiffs prevail or

the parties agree to the payment of attorneys' fees accrued in the course of such proceedings.

d. ADAP, their counsel and any monitor conducting this review, shall be bound by any protective or court orders entered in this action to protect the confidentiality of inmate records and sensitive security information.

7. **Attorneys' Fees and Expenses.**[1] The Alabama Department of Corrections shall remit to counsel for plaintiffs payment in the amount of Two Hundred Thirty-Thousand and 0/100 Dollars ($ 230,000.00), which shall constitute payment for any and all attorneys' fees and expenses incurred, charged and/or otherwise generated by counsel for the Plaintiff IVM Class from the inception of the action through the final conclusion of this matter. The parties further agree that the above-referenced sum shall be paid by the ADOC no later than 60 days from the date of this order and

---

1. The court has independently evaluated the reasonableness of the attorneys' fees and expenses agreed upon by the parties, and as will be explained in a separate opinion, finds the fees reasonable.

that such payment shall be made payable to "The Southern Poverty Law Center." The parties acknowledge and agree that the payments reflected in this paragraph constitute payment in full for any and all attorneys' fees and expenses claimed by Bui, ADAP and/or any other party to the litigation for the claims resolved herein. Excluding the payment of attorneys' fees and expenses provided herein and any attorneys' fees or expenses recoverable in any action to enforce the terms of the Agreement or this order, Bui, ADAP and their respective counsel voluntarily, completely and unconditionally waive any and all right to seek the recovery of any monies of any kind from any defendant in this action for any and all attorneys' fees and/or expenses incurred, charged and/or otherwise generated by counsel for the Plaintiff IVM Class after the date of the Agreement for the claims resolved herein. Moreover, nothing in the Agreement or this order requires ADOC to remit payment to any party for the recovery of attorneys' fees inconsistent with the limitations

imposed under the Prison Litigation Reform Act or the restrictions imposed within the United States District Court for the Middle District of Alabama.

8. **Resolution of All Involuntary Medication Claims.** In exchange for the promises, covenants, terms and conditions set forth in the parties' Agreement and described herein, the IVM Class, Bui and ADAP agreed that this order resolves any and all claims for prospective injunctive relief which were asserted in the "Third Cause of Action: Deprivation of Due Process Prior to Involuntarily Medicating Prisoners" of the fifth amended complaint (doc. no. 805) and/or which could have been raised in this action related to the process of involuntarily medicating any individual in the custody of the ADOC. As such, no member of the IVM Class shall assert any procedural due process claims seeking prospective injunctive relief under the Fourteenth Amendment against the Alabama Department of Corrections, the ADOC Commissioner in his official capacity, the ADOC Associate Commissioner for Health

Services in her official capacity, the ADOC's agents, employees, representatives, vendors and/or contractors of any kind during the term of this Agreement. Furthermore, Bui shall not assert any substantive due process claims seeking prospective injunctive relief under the Fourteenth Amendment against the Alabama Department of Corrections, the ADOC Commissioner in his official capacity, the ADOC Associate Commissioner for Health Services in her official capacity, the ADOC's agents, employees, representatives, vendors and/or contractors of any kind during the term of the Agreement and this order.

9. **Placement of Agreement in Law Libraries.** The ADOC will place a copy of the parties' Agreement in the law library at every ADOC facility where one exists.

10. **No Monetary Compensation.** Excluding the payment of attorneys' fees and costs to counsel for the plaintiff class in this action, nothing contained in this order creates, mandates or constitutes any obligation of any defendant, the State of Alabama

and/or the Alabama Department of Corrections to compensate, pay or otherwise provide any monetary payment of any kind to any inmate formerly housed, currently housed or housed in the future in any correctional facility operated by or at the direction of the Alabama Department of Corrections.  Moreover, nothing in this order creates any basis for any purported or actual class member to seek any financial recovery or monetary benefit of any kind from any defendant, the State of Alabama and/or the Alabama Department of Corrections.

11. <u>No Appeal.</u>  All parties have waived all rights to seek any appeal from and/or appellate review of this order.

12. <u>Court's Retention of Jurisdiction to Enforce the Order.</u>  Upon the entry of this order, the clerk of court for the United States District Court for the Middle District of Alabama is to administratively close the involuntary medication claim, Count III in the fifth amended complaint, in this case in a manner

consistent with the normal procedures of the United States District Court for the Middle District of Alabama, but the court shall retain jurisdiction to enforce this order.

13. **Expiration of Order.** Unless otherwise agreed in writing by the parties or extended by order of the court or unless a motion to extend the term of this order is then pending, this order shall expire by its own terms at 12:00 p.m. (Central Daylight Savings Time) on September 6, 2019. In the event that any such pending motion identified above (as of September 6, 2019) is denied, this order shall expire on the date on which such motion is denied by the court.

14. **No Waiver of Privilege.** Nothing in this order or undertaken pursuant to this order constitutes or is intended to constitute a waiver of any applicable privilege of any kind.

15. **Findings Pursuant to 18 U.S.C. § 3626(a).** The court specifically finds that the prospective relief in this order is narrowly drawn, extends no further than

necessary to correct the violations of federal rights as alleged by the plaintiff class in the third cause of action, alleging substantive and procedural due process violations in the involuntary medication of mentally ill prisoners, in the fifth amended complaint, is the least intrusive means necessary to correct these violations, and will not have an adverse impact on public safety or the operation of a criminal justice system. Accordingly, this order complies in all respects with the provisions of 18 U.S.C. § 3626(a).

16. <u>Dispute Resolution.</u>  In the event of any dispute related to the terms and conditions of any final stipulated order and/or any final agreement between the parties, the parties shall submit to mediation before United States Magistrate Judge John E. Ott prior to filing any document with the court related to the alleged matters which are the subject of the dispute.  To the extent that any party files any such motion or pleading with the court without first submitting the matter to mediation, any such filing

shall be dismissed without prejudice pending the outcome of mediation.

17. **No Additional Employment Obligations.** Nothing in the parties' Agreement or this order shall be construed in any way as creating any obligation of any kind upon any defendant, the State of Alabama or the Alabama Department of Corrections to hire, retain and/or employ any consultant, advisor, correctional officer, medical professional or other individuals of any kind.  Nothing in this paragraph shall excuse or negate any obligation of the ADOC to comply with Administrative Regulation 621.

18. **No Violation of any Other Applicable Orders.** Nothing in this order is intended to create any obligation or requirement which would result in the violation of any other currently existing order entered by a court of competent jurisdiction.

DONE, this the 6th day of September, 2017.

                                          /s/ Myron H. Thompson
                                   **UNITED STATES DISTRICT JUDGE**