IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al., | ) | |
| | ) | |
|     Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:14cv601-MHT |
| | ) | (WO) |
| JEFFERSON S. DUNN, in his | ) | |
| official capacity as | ) | |
| Commissioner of | ) | |
| the Alabama Department of | ) | |
| Corrections, et al., | ) | |
| | ) | |
|     Defendants. | ) | |

**PHASE 2A OPINION AND ORDER REGARDING PLAINTIFFS' SECOND REQUEST TO PRESENT ADDITIONAL EVIDENCE ON SEGREGATION**

This cause, in which the court held that the defendants are liable for violating the Eighth Amendment of the United States Constitution, *see Braggs v. Dunn*, 257 F. Supp. 3d 1171 (M.D. Ala. 2017) (Thompson, J.), is before the court on plaintiffs' second motion to present limited additional evidence on segregation remedy, specifically regarding an alleged inmate suicide. For the reasons below, the motion will be granted, with the proviso that the evidence on the

Phase 2A Eighth Amendment segregation remedy will thereafter be closed, and that future evidence pending the issuance of any remedial order will not be heard absent extraordinary circumstances.

## I. BACKGROUND

On February 28, 2018, the court stated that the evidence in the segregation remedial trial was closed, with the exception of certain additional evidence regarding the Bibb County Correctional Facility. *See* Order (doc. no. 1689) (recognizing that evidence was closed with that exception). Subsequently, on March 29, the plaintiffs filed a motion to present limited additional evidence regarding the segregation remedy ("first motion"). *See* Pls.' Request to Present Limited Additional Evidence Regarding Segregation (doc. no. 1719). The motion sought to introduce evidence about an alleged suicide that was committed in a segregation unit at Holman Correctional Facility on February 27 by an inmate who was on the mental-health caseload but not

identified by the defendants as having a serious mental illness (SMI). The defendants responded to the motion. *See* Defs.' Response in Opposition to Pls.' Request to Present Limited Additional Evidence (doc. no. 1727). After hearing oral argument during an on-the-record conference call, the court granted the first motion and set an evidentiary hearing for April 23, 2018. *See* Order (doc. no. 1733).

A few days later, the plaintiffs submitted the pending second motion to present evidence regarding an additional alleged suicide ("second motion"), which is said to have been committed on March 31 by an inmate in segregation at St. Clair Correctional Facility. *See* Pls.' Second Request to Present Limited Additional Evidence Regarding Segregation (doc. no. 1747). The inmate allegedly was not on the caseload when he entered segregation, but after a prolonged period in segregation was subsequently placed on the caseload, although never identified as having an SMI. The court held an on-the-record conference call to discuss the

3

motion on April 6, and then allowed the defendants time to respond in writing. *See* Defs.' Response in Opposition to Pls.' Second Request to Present Limited Additional Evidence (doc. no. 1753).

## II. DISCUSSION

The plaintiffs' second motion argues that "[e]vidence relating to the recent suicides in segregation is directly relevant to the segregation remedies the Court has yet to order," because it will "show that addressing understaffing and removing people with serious mental illnesses from segregation--the two main components of Defendants' proposed remedial plan--will not alone be sufficient to remedy the ongoing constitutional violations the Court found with regard to segregation." Pls.' Second Request to Present Limited Additional Evidence Regarding Segregation (doc. no. 1747) at 2. It further explains that plaintiffs have been approved for a visit with likely witnesses for April 10 and anticipate being able

to identify their testifying witnesses for defendants during the week of April 9. *Id.* at 3. In addition, the plaintiffs assured the court during the April 6 conference call that, if the motion were granted, they would be prepared to put on the evidence during the April 23 hearing already scheduled on the first motion.

The defendants raised several objections during the April 6 conference call and in their subsequent written response: (1) the proposed additional evidence is irrelevant to the issue of segregation remedy, and would be more appropriately heard during the remedy hearing on suicide prevention, currently scheduled for September 10, 2018; (2) the additional evidence is cumulative, and hearing it would undermine judicial economy; (3) the defendants would be unfairly prejudiced because none of the witnesses have yet been identified, and so introduction of the evidence amounts to "trial by ambush"; and (4) the plaintiffs' continued submission of "and-one-more-thing" type requests admits

of no logical end point. The court addresses each of these objections in turn.

With regard to relevance, the plaintiffs argue--as with their first motion--that an alleged suicide by an inmate who was on the mental-health caseload, but who was *not* identified as having as having an SMI, tends to show that the defendants' proposed remedial plan fails to address sufficiently the violations found with regard to non-SMIs. That is, the alleged decompensation and suicide of a prisoner not identified as having an SMI tends to support the plaintiffs' position that the defendants' plan focuses primarily on inmates with SMIs, but affords little relief to (1) inmates who are on the caseload but do not have SMIs, (2) inmates who are not on the caseload but who have unidentified serious mental-health needs, and (3) inmates who enter segregation without serious-mental health needs but subsequently pass into the plaintiff class by developing those needs as a result of placement in segregation. *See* Pls.' Response to Defs.'

Proposed Segregation Remedial Plan (doc. no. 1546) at 43-46. Secondarily, the plaintiffs also argued on the conference call that the proposed evidence is relevant because it tends to show that the current monitoring and suicide-proofing of cells are insufficient, and by extension that a plan that does not swiftly address these ongoing problems is inadequate. The defendants did not substantially rebut these arguments, but rather repeated the fact, which both parties acknowledge, that the court had previously closed evidence with respect to segregation remedy with the possible exception of Bibb County Correctional Facility, and that the proposed evidence does not relate to Bibb. Without reaching the merits of the plaintiffs' contentions regarding the proposed segregation remedy, or whether the proposed evidence *will* in fact support those contentions when heard, the court is satisfied that the evidence is relevant for these reasons.

As to the defendants' suggestion that the second motion's proposed evidence should be heard during the

September 10 hearing on suicide prevention, the court is, as an initial matter, concerned about putting off for several months evidence that appears to relate squarely to both issues (that is, segregation and suicide prevention), and which is of so serious a nature. Indeed, as the plaintiffs' first motion to present additional evidence noted, twice during the remedial hearing on segregation the court asked to hear about any suicides in the defendants' custody. *See* Pls.' Request to Present Limited Additional Evidence Regarding Segregation (doc. no. 1719) at 1 (citing transcripts). However, even assuming for the sake of argument that the fact of the alleged second suicide is irrelevant to the segregation remedy or better suited for the September hearing, there remains the alleged decompensation of the inmate in segregation independent of his suicide--that is, both his initial decompensation to the point that he was placed on the caseload, and his subsequent decompensation to the point of committing suicide. When asked on-the-record

8

why *this* evidence was not relevant or better suited for the hearing on suicide prevention, counsel for the defendants was, simply put, at a loss. Accordingly, the court concludes that the proposed evidence is relevant to the segregation remedy, regardless of any additional relevance to the later issue of suicide prevention.

Second, the defendants argue that the additional evidence is cumulative, and would undermine judicial economy by taking up the time and resources of the parties, the court, and the potential witnesses. Given the alleged facts of the incident, and the proposed schedule for hearing the evidence, the court is convinced otherwise. Perhaps the defendants are prepared to concede that suicides in their segregation units continue to be such a common occurrence that the proposed evidence of an additional suicide would merely be expected or cumulative. In any event, while the plaintiffs are already to present evidence regarding the alleged suicide that occurred on February 27, there

9

are a number of potentially distinguishing circumstances surrounding the second alleged incident that would provide the court with additional information: the second alleged suicide was committed at a different facility, and by an inmate who allegedly entered segregation while not on the caseload, but was subsequently placed on the caseload. As to the matter of judicial economy, the plaintiffs have stated that they are prepared to put on the additional evidence during the existing hearing on April 23, so there is no need to set a separate hearing, require the counsel to arrange separate travel to the courthouse, and so on. Further, the plaintiffs have stated that they anticipate that the proposed evidence, and the evidence of the first alleged suicide, will each take approximately one-half day to put on. There are therefore no significant concerns of judicial economy that outweigh the value of hearing the proposed evidence.

Third, the defendants state they would be unfairly prejudiced by granting the plaintiffs' motion, because the witnesses have yet to be identified and they will not have sufficient time to prepare.  However, the motion explains that plaintiffs' counsel had already been approved for a meeting with potential witnesses on April 10, and would be able to identify the testifying witnesses by the end of that week.  Given the discrete and urgent nature of the issue raised, and the fact that the defendants have (and in fact, control) access to the potential witnesses, the court is satisfied that defendants will not be unfairly prejudiced by being notified of the potential witnesses, at the latest, approximately one-and-a-half weeks in advance.  In any event, should it become clear during the proceedings that the defendants need an additional opportunity to respond, the court will provide such an opportunity.  The bottom line is the court will make sure that the defendants are not unfairly prejudiced.

Finally, the defendants object that the plaintiffs' second motion suggests that they will continue to seek to introduce evidence despite the record being "closed," with no logical endpoint. This a legitimate concern, for the parties and the court both have an interest in finality. That concern is bolstered by the plaintiffs' resistance on the conference call to proposing any limiting principle or endpoint to their ability to present further evidence. However, this interest in finality is not absolute, but--when not otherwise barred by a rule of evidence--must be balanced against the tendency of the additional evidence to aid the court in arriving at a fair and just disposition of the case. *Cf.* Fed. R. Civ. P. 60(b)(5) (permitting courts to modify a final judgment or order, among other instances, where "applying it prospectively is no longer equitable"). In addition, the defendants' concern about finality is mitigated here by the fact that the procedural history in this case suggests a natural cutoff after granting the

instant motion: the evidence regarding the first alleged suicide is coming in, among other reasons, because of its urgent and central nature to the issue of segregation remedy, and because the incident apparently occurred prior to the parties' agreement to close evidence and without defendants informing plaintiffs of the issue at that time. With that hearing already set, and for the reasons above, the court is granting plaintiffs' motion to present evidence regarding the second incident. However, apart from the evidence regarding these two incidents, the record on segregation remedy will be closed. Further evidence on this issue will not be heard prior to the entry of any remedial order absent extraordinary circumstances, and the fact of an additional suicide alone will not satisfy that standard.

***

Accordingly, it is ORDERED as follows:

(1) Plaintiffs' second request to present limited additional evidence regarding segregation (doc. no.

13

1747) is granted. That evidence is to be heard at the hearing on April 23, 2018, regarding the first alleged suicide.

(2) Plaintiffs are, by April 13, 2018, to identify to defendants any witnesses they anticipate calling on this issue.

(3) Upon hearing the above evidence, the evidence regarding segregation remedy will be closed until the entry of any remedial order. Additional evidence will not be heard by the court absent extraordinary circumstances, as described in this opinion and order.

DONE, this the 11th day of April, 2018.

/s/ Myron H. Thompson
**UNITED STATES DISTRICT JUDGE**