IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
EDWARD BRAGGS, et al.,          )
                                )
      Plaintiffs,               )
                                )   CIVIL ACTION NO.
      v.                        )     2:14cv601-MHT
                                )        (WO)
JEFFERSON S. DUNN, in his       )
official capacity as            )
Commissioner of                 )
the Alabama Department of       )
Corrections, et al.,            )
                                )
      Defendants.               )
```

PHASE 2A OPINION AND ORDER ON DEFENDANTS'
ORAL MOTION FOR CLARIFICATION

Previously this court found that the State of Alabama provides inadequate mental-health care in its prisons in violation of the Eighth Amendment's prohibition against cruel and unusual punishment. *See Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1267 (M.D. Ala. 2017) (Thompson, J.). "[S]evere shortages" of mental-health care staff have contributed to these constitutional violations. *Id.* at 1268. The court issued an Understaffing Remedial Order that established deadlines by which the Alabama

Department of Corrections (ADOC) was to increase its mental-health staffing. *See* Phase 2A Understaffing Remedial Order (doc. no. 1657) at 4. Subsequently, in a motion to require defendants to show cause why they should not be held in contempt, plaintiffs alleged that defendants have failed to meet these deadlines. At the contempt hearing, defendants orally moved for clarification as to what staffing increases the remedial order required.

In this opinion and order, the court addresses defendants' oral motion for clarification and explains that the deadlines required exactly what the plain language of the Understaffing Remedial Order--and an ADOC contract referred to in it--say they required: defendants were to ensure that all of the mental-health staffing positions listed in the contract's "minimum staffing requirements" were filled by July 1, 2018.

## I. Procedural History

Plaintiffs in this class-action lawsuit include a group of mentally ill prisoners in the custody of ADOC. Defendants are ADOC Commissioner Jefferson Dunn and ADOC Associate Commissioner of Health Services Ruth Naglich, who are both sued in only their official capacities. In a liability opinion entered on June 27, 2017, this court found that ADOC's mental-health care for prisoners in its custody was, simply put, "horrendously inadequate." *Braggs*, 257 F. Supp. 3d at 1267. The court laid out seven factors contributing to the Eighth Amendment violations, in addition to an eighth overarching factor that permeates all of the others: the "persistent and severe shortages of mental-health staff and correctional staff." *Id.* at 1267-68.

The court divided the remedial phase along the lines of the eight identified factors contributing to the Eighth Amendment violations, to be addressed one after another. Because of the centrality of understaffing to ADOC's mental-health care failings, it was determined

that "this issue must be addressed at the outset and that the earlier the problem is attacked the better." *Braggs v. Dunn*, 2018 WL 985759, at *1 (M.D. Ala. Feb. 20, 2018) (Thompson, J.) (internal quotation marks omitted).

On February 20, 2018, the court issued an Understaffing Remedial Opinion, *id.*, and an accompanying Understaffing Remedial Order, (doc. no. 1657). The order mandated the following deadlines for remedying mental-health staffing:

"(a) By April 1, 2018, ADOC's new mental-health vendor shall begin providing mental-health services.

"(b) By May 1, 2018, ADOC's new mental-health vendor, shall, in addition to continuing to fill those positions in place at the time of this order, fill at least 65 % of the additional mental-health staffing positions provided for in the contract.

"(c) By June 1, 2018, ADOC's new mental-health vendor, shall, in addition to continuing to fill those positions in place at the time of this order, fill at least 75 % of the additional mental-health staffing positions provided for in the contract.

"(d) By July 1, 2018, ADOC's new mental-health vendor, shall fill the mental-health staffing positions consistent with the contract."

*Id.* at 4. The July 1, 2018, staffing requirement is to remain in effect until November 2019, when new staffing ratios will be implemented. *See id.* at 5.

On July 2, 2018--after all relevant deadlines in the Understaffing Remedial Order had passed--plaintiffs filed a notice of non-compliance and motion for an order to show cause why defendants should not be held in contempt for violating the order. The court granted the motion and set a hearing, finding that plaintiffs had adequately alleged that defendants had failed to meet the staffing deadlines. On September 19, 2018, the second day of the contempt hearing, defendants orally moved for clarification as to what the order's staffing deadlines required. The court ultimately suspended resolution of plaintiffs' show-cause motion for a reason unrelated to the issue now before the court.

## II. Discussion

The dispositive question here is what staffing increases the Understaffing Remedial Order required

defendants to make by the third deadline, on July 1, 2018.[1] The parties dispute the increases that deadline required. Essentially, the parties disagree on the meaning of the phrase "consistent with the contract" in the order, which stated that, by July 1, 2018, defendants "shall fill the mental-health staffing positions *consistent with the contract*." Understaffing Remedial Order (doc. no. 1657) at 4 (emphasis added).

Plaintiffs contend that the contract and court order "require 263.2 FTE [(full-time equivalent)] mental-health staff by July 1, 2018." Contempt Motion (doc. no. 1916) at 10. The route to this conclusion is straightforward. "[T]he contract" mentioned in the order refers to the Healthcare Services Agreement that ADOC signed with its vendor Wexford Health Sources, Inc. for

---

[1]. The third deadline is dispositive because defendants admit that they "failed to meet" the first two deadlines (May 1 and June 1) by which the court ordered them to increase their mental-health staff. Defendants' Response (doc. no. 1936) at 5. Furthermore, the staffing increases required by the July 1 deadline remain in effect until November 2019 and are higher than those required by the May 1 and June 1 deadlines.

the latter to provide healthcare services to inmates in ADOC's custody. This contract expressly incorporates the Request for Proposal for Comprehensive Inmate Healthcare Services (RFP) issued by ADOC in July 2017, pursuant to which ADOC ultimately selected Wexford. *See* ADOC-Wexford Contract (doc. no. 1936-1) at 23-24. The RFP, in turn, specifies that: "Minimum staffing levels at both the facility and regional management levels are outlined as Appendix F to this RFP." RFP (doc. no. 1936-1) at 146. Appendix F, titled "Minimum Staffing Requirements," lists 25 different types of mental-health "positions" to be filled. *Id.* at 246-48. These positions include "Psychiatrist," "Program Director," "Psychologist (PhD)," "RN," "Observer," and "Mental Health Clerk," among others. *Id.* at 247-48. Appendix F further provides the number of staff for each type of position that must be filled at each facility, as well as at the "Alabama Central Office." *Id.* at 249-59. The numbers of required staff for each type of position at the facilities and central office are measured in terms of FTEs. For

example, Appendix F lists 1.0 FTE mental-health program director at the central office, 0.75 FTE psychiatrists and 1.0 FTE psychologist at the Limestone facility, 2.0 FTE licensed mental-health professionals (MHPs) and 5.0 FTE observers at the Holman facility, and 1.0 FTE mental-health clerk at the St. Clair facility. *See id.* Adding up all the FTEs for each of the 25 types of mental-health positions at the facilities and central office, the "Total FTE's" are "263.20." *Id.* at 259. Therefore, according to plaintiffs, the order to "fill the mental-health staffing positions consistent with the contract" meant that defendants had to ensure that all 263.2 mental-health FTEs, by position types and locations as set forth in Appendix F, were filled by July 1, 2018.

By contrast, defendants invoke a "staffing paybacks" provision in the contract to argue that the order did not require them to fill all of the 263.2 mental-health FTEs by July 1, 2018. Under the staffing-paybacks provision, Wexford must pay a penalty to ADOC if it fails to fill at an 85 % rate certain staff positions enumerated in the

"Minimum Staffing Requirements." *Id.* at 147-48.[2] Defendants claim that the 85 % threshold for triggering penalties on their vendor Wexford means that the order does not require filling 100 % of the 263.2 mental-health FTEs.

For the reasons outlined below, plaintiffs' interpretation is correct and defendants' is unreasonable.

### A. The Order Requires Defendants to Ensure that All of the Mental-Health Positions Are Filled

That the order requires the filling of all assigned FTEs for all 25 of the different types of mental-health positions at all designated locations--and thus the filling of all 263.2 FTEs--is made clear by the terms of the ADOC-Wexford contract, and confirmed by ADOC Associate Commissioner of Health Services Naglich's unequivocal testimony about the contract's meaning.

---

2. Certain staff positions are exempt from the staffing-paybacks provision, including, among others, the mental health clerk, receptionist, and administrative assistant positions. *See id.* at 147.

To start, a plain reading of the term "Minimum Staffing Requirements" in the contract shows that the order requires filling all 263.2 FTEs listed for the 25 positions. *Id.* at 246-259. As discussed above, Appendix F of the contract, titled "Minimum Staffing Requirements," lists how many FTE staff for each of the 25 positions must be placed at the central office and each facility. The word "minimum" means "the smallest acceptable or possible quantity in a given case." *Minimum, Black's Law Dictionary* (10th ed. 2014). The word "requirement" means "[s]omething that must be done..."; "an imperative command." *Requirement*, *Black's Law Dictionary* (10th ed. 2014). Therefore, by providing in the "Minimum Staffing Requirements" the specific numbers of FTEs needed for each position at each facility, the contract creates an "imperative command" that the number of FTEs listed for each position at each facility--amounting in total to 263.2 FTEs--is the "smallest acceptable ... quantity" of FTEs. Failing to

fill all 263.2 of the FTEs listed for the 25 types of positions is unacceptable.

Perhaps more importantly, defendants' argument that the staffing payback provision's 85 % threshold means that the order requires less than 100 %--and as low as 85 %--of the 263.2 FTEs to be filled conflicts in two fundamental ways with how the contract says the staffing-payback provision actually functions.

First, the contract establishes that payback penalties are imposed based on whether the required FTEs for *a particular position* at a *particular facility* are filled at an 85 % rate during a set period, not on whether *globally* 85 % of all 263.2 FTEs are filled. *See* ADOC-Wexford Contract (doc. no. 1936-1) at 32; RFP (doc. no. 1936-1) at 148. Given that the 85 % threshold in the payback provision applies to only a particular position at a particular facility, the court struggles to see how anyone could reasonably interpret the order to require 85 % of *all* 263.2 FTEs to be filled, as defendants now suggest.

Relatedly, reading the court order to require filling only 85 % of the 263.2 FTEs would lead to the absurd result that defendants could be deemed in compliance with the order, even though none of the 11.95 FTE psychiatrists and 7.5 FTE psychologists required by the contract were employed by Wexford. Defendants could maintain 92.6 % compliance without any such professionals providing mental-health care to inmates. In reality, of course, failing to employ any psychologists or psychiatrists would violate the order, as it would mean that two of the 25 position types were unfilled.

Second, the contract explicitly states[3]--and Associate Commissioner Naglich confirmed[4]--that whether Wexford meets the 85 % threshold is calculated based on the number of hours worked during a period, *not* the number of FTE staff that are employed to fill the positions at each facility. This fact is fatal to defendants' argument: the order to "fill the mental-health staffing positions consistent with the contract" cannot mean to fill 85 % of the FTEs required for the 25 types of positions, given that the contract's 85 % threshold refers to the percentage of hours worked, not the percentage of required staff that is employed.

---

3. The contract provides that: "The monthly calculation of staffing requirements will compare the required number of FTE's by eligible position, multiplied by eight (8) hours per day, multiplied by the number of week days in the calendar month at the required threshold percentage ... to the total of all hours paid for an individual position classification at each assigned facility. ... The sum of the hours required for the time periods ... will be compared to the total of actual hours worked for that same time period." ADOC-Wexford Contract (doc. no. 1936-1) at 32.

4. "That's 85 percent of hours worked. That doesn't mean 85 percent of positions filled." Naglich Testimony, Nov. 29, 2017 (doc. no. 2035) at 40.

Indeed, the contract indicates that the 15 % leeway allowed by the 85 % threshold for triggering penalties is intended to "accommodate[] Vendor's staff vacation time, sick time, holidays or paid time off (PTO)." RFP (doc. no. 1936-1) at 148; *see also* Naglich Testimony, Nov. 29, 2017 (doc. no. 2035) at 41 ("[T]hey've got to take days off and they have to have holidays, and that's where [you get] that 15 percent."). Crucially, this language in the contract shows that the purpose of the 85 % rate is to allow Wexford to avoid penalties due to *employed* staff missing work for legitimate reasons, not to mean that Wexford complies with the contract even if it employs only 85 % of the required staff.

In addition to the contradictions between the terms of the contract and defendants' proposed interpretation, ADOC Associate Commissioner Naglich's testimony directly confirms that the contract--and thus order--requires filling all of the 263.2 FTEs listed in the contract's "Minimum Staffing Requirements." Prior to issuing the remedial order, on November 29, 2017, the court asked

Naglich whether the minimum staffing numbers in the RFP "have to be met up to 85 percent, or do they have to be met absolutely?" *Id.* at 39. She responded: "All numbers put out have to be--absolutely, Your Honor. You're looking for 100 percent staffing. ... I think it's confusing that people think we're just asking that they fill at 85 percent. That's not what we're asking. We're asking at 100 percent." *Id.* at 39. Naglich reaffirmed this understanding of the contract when she testified at the contempt hearing on September 18, 2018.

It is hard to accept defendants' argument that the payback provision's 85 % threshold means that filling all 263.2 FTEs is not required, when Naglich, ADOC's Associate Commissioner of Health Services, has twice told the court exactly the opposite.

To summarize, defendants' contention that the order to "fill the mental-health staffing positions consistent with the contract" allows Wexford to fill fewer than 263.2 FTEs is belied by a plain reading of the term "Minimum Staffing Requirements" in the contract, as well

as the fact that the contract provides--and Naglich confirmed--that the 85 % threshold (1) is assessed on a position-by-position rather than global basis and (2) measures hours worked--*not* the number of FTE staff that are employed to fill the positions at each facility. Accordingly, the court formally declares that the Understaffing Remedial Order required that, by July 1, 2018, defendants were to have filled all 263.2 of the mental-health FTEs.


## B. Measuring Compliance

The next question is how to determine whether all 263.2 mental-health FTEs for the 25 types of positions are filled, in compliance with the order. The answer, in broad strokes, is that Wexford must employ the 263.2 FTEs enumerated in the "Minimum Staffing Requirements."  Two more specific points are worth highlighting here.

First, in assessing compliance, the inquiry is not whether 263.2 mental-health FTEs of any kind are employed; rather, it is whether the FTE requirements for

each position at each facility are met.  In other words, defendants are not in compliance if Wexford employs 263.2 FTE mental-health clerks.  To comply, Wexford must employ 0.50 FTE psychiatrists and 2.80 FTE licensed MHPs at the Easterling facility, and 2.0 FTE observers for the Bibb facility, and so forth, as enumerated by the "Minimum Staffing Requirements."[5]

Second, determining whether Wexford employs all 263.2 FTEs is *not* a head count, that is, does not mean 263.2 individual employees.  Instead, the contract indicates that one FTE equals 40 hours worked per week. *See* ADOC-Wexford Contract (doc. no. 1936-1) at 32. Therefore, to determine whether Wexford is employing the 2.0 FTE psychiatrists at the Bullock facility (excluding outpatient) that the contract requires, the court assesses whether, adding together all the hours per week

---

5. The parties have mentioned Wexford's use of subcontractors, sometimes referred to as "locums." The contract provides that "all persons assigned and performing the work requirements of the" contract must be "employees of Vendor or authorized subcontractors, and hold all required licenses to perform the work required herein."  RPF (doc. no. 1936-1) at 154.

(or month) specified in Wexford's contracts with psychiatrists hired to work at Bullock, they amount to 2.0 FTEs.[6] That is, the court evaluates whether Wexford has entered into contracts with psychiatrists to work at Bullock 80 (2 x 40) hours per week, or 320 (2 x 160) hours per month, etc., depending on what the appropriate measuring time period is.[7]

## C. All Reasonable Efforts Standard

If, at a contempt proceeding, plaintiffs prove that defendants have not complied with the order's requirement

---

6. Clearly, ADOC would not be in compliance with the order if the 263.2 FTE staff employed by Wexford to fill the minimum staffing requirements were actually working substantially fewer hours than those required under their contracts with Wexford. If confronted with evidence of such a problem, the court could assess whether at least 85 % of the contracted hours for each position, at each facility, were being worked, as is required by the contract's staffing-payback provision. Of course, the court understands that employed staff will miss work for legitimate reasons such as "staff vacation time, sick time, holidays or paid time off (PTO)." RFP (doc. no. 1936-1) at 148.

7. However, the court is not suggesting what the appropriate measuring time (week, month, or whatever) should be for a particular purpose.

to fill all 263.2 mental-health FTEs, defendants may raise the defense of an inability to comply. The "inability to comply is a complete defense to a contempt citation." *Newman v. Graddick*, 740 F.2d 1513, 1525 (11th Cir. 1984). In raising the inability-to-comply defense, "the defendant has a burden of production." *United States v. Rylander*, 460 U.S. 752, 757 (1983). "To satisfy this burden a contemnor must offer proof beyond the mere assertion of inability." *Chairs v. Burgess*, 143 F.3d 1432, 1436 (11th Cir. 1998). "Instead, a contemnor 'demonstrate[s] an inability to comply only by showing that [he has] made 'in good faith all reasonable efforts to comply.'" *Id.* (quoting *United States v. Ryan*, 402 U.S. 530, 534 (1971)).

Thus, if defendants claim they are unable to comply, they would have to show that they made all reasonable efforts to ensure that Wexford employed all 263.2 mental-health FTEs, as required by the order. "The showing required by the rigorous 'all reasonable efforts to comply' standard is a substantial one." *United States*

*v. Roberts*, 858 F.2d 698, 702 (11th Cir. 1998). The Eleventh Circuit Court of Appeals "construe[s] this requirement strictly." *Combs v. Ryan's Coal Co., Inc.*, 785 F.2d 970, 984 (11th Cir. 1986). "Even if the efforts [the contemnor] did make were substantial, diligent or in good faith, ... the fact that he did not make all reasonable efforts establishes that [the contemnor] did not sufficiently rebut the ... prima facie showing of contempt." *United States v. Hayes*, 722 F.2d 723, 725-26 (11th Cir. 1984) (internal quotation marks omitted).

*** 

Accordingly, it is ORDERED that defendants' oral motion to clarify, made in open court on September 19, 2018, is granted to the extent that it is DECLARED that the Phase 2A Understaffing Remedial Order (doc. no. 1657)--and the ADOC contract referred to in it--required that defendants were to ensure that all 263.2

mental-health FTEs listed in the contract's "minimum
staffing requirements" were filled by July 1, 2018.

DONE, this the 29th day of October, 2018.

___/s/ Myron H. Thompson___
UNITED STATES DISTRICT JUDGE