IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | Case No. 2:14-cv-00601-MHT-GMB |
| v. | ) | |
| | ) | District Judge Myron H. Thompson |
| JEFFERSON DUNN, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

**THE STATE'S INITIAL BRIEF REGARDING APPLICATION
OF THE PLRA'S NEED-NARROWNESS-INTRUSIVENESS
REQUIREMENTS TO THE PHASE 2A REMEDIAL ISSUES**

Pursuant to the Court's Order (Doc. No. 2427), Defendants JEFFERSON

DUNN ("Commissioner Dunn") and RUTH NAGLICH ("Naglich" and, collectively

with Commissioner Dunn, the "State") hereby submit an initial brief regarding "what

the substantive law is" relating to the need-narrowness-intrusiveness requirements

of the Prison Litigation Reform Act of 1995 ("PLRA"), 42 U.S.C. § 1997e *et seq.*,

and "how to proceed" in determining whether the Phase 2A remedial orders and

Stipulations comply with those requirements.  (Doc. No. 2427 at 5).

## INTRODUCTION

During Phase 2A of this matter, the Parties reached numerous Stipulations

regarding remedial issues before the Court.  With the exception of the pending

Stipulations relating to hospital-level care and disciplinary sanctions, the Court

entered orders adopting the Parties' Stipulations.  The PLRA requires the Court to find that any remedial order regarding the Alabama Department of Corrections ("ADOC") be "narrowly drawn, extend no further than necessary to correct the [constitutional] violation …, and [constitute] the least intrusive means necessary to correct the violation…."  18 U.S.C. § 3626(a)(1)(A).  The Court has not yet made any findings with regard to whether the Parties' Phase 2A Stipulations comply with the PLRA's "need-narrowness-intrusiveness" criteria.

As discussed more fully below, the Court should adopt the State's proposal, as stated herein, for evaluating the PLRA's criteria to the Phase 2A Stipulations and any additional relief for at least the following three (3) reasons:

(1)     The PLRA's need-narrowness-intrusiveness requirements apply to each and every obligation contained in each remedial order;

(2)     The State cannot agree, at this time, that all previously-approved Remedial Stipulations meet the PLRA's requirements; and

(3)     The State proposes a reasonable, straightforward process for determining whether all remedial relief meets the PLRA's requirements.

The State, therefore, respectfully requests that the Court apply the PLRA's need-narrowness-intrusiveness requirements to all Phase 2A remedial orders and Stipulations and adopt the State's proposal for making the necessary findings pursuant to the PLRA as outlined herein.

2

## BACKGROUND

The remedial period of Phase 2A began almost two (2) years ago, when the Court issued its Liability Opinion and Order as to Phase 2A Eighth Amendment Claim (Doc. No. 1285, the "Liability Opinion") on June 27, 2017.  As detailed in the Liability Opinion, the Court found the State liable for providing constitutionally inadequate mental-health care in seven (7) areas:

(1)   Identification and classification of inmates with serious mental-health needs;

(2)   Failing to provide "individualized treatment plans";

(3)   Failing to provide "psychotherapy by qualified and properly supervised mental-health staff and with adequate frequency and sound confidentiality";

(4)   Provision of "insufficient out-of-cell time and treatment to those who need residential treatment … and failing to provide hospital-level care to those who need it";

(5)   Suicide prevention;

(6)   Disciplining mentally ill inmates "for symptoms of their mental illness" and "without regard for the impact of sanctions on prisoners' mental health"; and

(7)   Placing inmates with a serious mental illness ("SMI") in restrictive housing "without extenuating circumstances and for prolonged periods of time"; placing inmates "with serious mental-health needs in" restrictive housing without adequately considering the impact of that housing on their mental health; and "providing inadequate treatment and monitoring in" restrictive housing.

(Id. at 300-301).  The Court also found that "shortages of mental-health staff and

3

correctional staff, combined with chronic and significant overcrowding," constituted "overarching issues" permeating the seven (7) areas of mental-health care identified as inadequate in the Liability Opinion.  (Id. at 301).  The Court directed the State to submit remedial plans pursuant to a schedule set by the Court to address the issues of correctional and mental-health staffing and the seven (7) areas of mental-health care identified as inadequate in the Liability Opinion.[1]  (Doc. Nos. 1296, 1357, 1524).

At the outset of the remedial phase, the Parties attempted to reach a global resolution of all Phase 2A remedial issues through mediation, but they were unable to do so.  Consequently, pursuant to the Phase 2A remedial schedule, the State submitted a series of remedial plans to address the concerns expressed in the Court's Liability Opinion. (Doc. Nos. 1374, 1514, 1533, 1594, 1830, 1951, 2048, 2115, 2222).  Beginning with the evidentiary hearing regarding correctional and mental-health staffing held from November 29 to December 15, 2017, the Court held evidentiary hearings with respect to a variety of remedial issues.  However, the

---

[1] In February of 2019, the Court issued a supplemental liability opinion and found the State liable for failing "to provide adequate periodic mental-health assessments" of inmates in restrictive housing.  (Doc. No. 2332, the "Supplemental Liability Opinion," at 64).  The Court did not issue a remedial scheduling order related to the liability findings in Supplemental Liability Opinion.  For the reasons set forth in the State's Notice in Response to the Court's Phase 2A Briefing Order on Remedies for Violations in the Supplemental Liability Opinion (Doc. No. 2397), the State's remedial plans and the Phase 2A remedial orders previously entered by the Court render it unnecessary for the Court to enter any additional remedy addressing the liability findings in the Supplemental Liability Opinion.

Parties entered into piecemeal Stipulations regarding most of the remedial issues.

The Stipulations submitted by the Parties did not stipulate that the Phase 2A Remedial Stipulations complied with the PLRA.  In fact, the State intentionally and expressly excluded any language in the Stipulations waiving the PLRA's requirement for the Court to make the need-narrowness-intrusiveness findings with respect to the Stipulations' provisions.  The Court adopted the Parties' Stipulations as court orders, but the orders did not include any findings with respect to whether the Stipulations complied with the PLRA's need-narrowness-intrusiveness requirements.[2]  The following remedial issues, either in full or in part, remain for the Court to address: restrictive housing; residential treatment units and stabilization units; suicide prevention; and compliance oversight (or monitoring).[3]

---

[2] The Phase 2A remedial orders entered by the Court adopting the Parties' Stipulations include the following: Phase 2A Order Re: Segregation Remedy (Doc. No. 1720); Phase 2A Order and Injunction Re: Bibb Segregation Remedy (Doc. Nos. 1751, 1751-1); Phase 2A Order and Injunction on Mental-Health Identification and Classification Remedy (Coding) (Doc. Nos. 1792, 1792-1); Phase 2A Order and Injunction on Mental-Health Identification and Classification Remedy (Intake) (Doc. Nos. 1794, 1794-1); Phase 2A Order and Injunction on Segregation Remedy (Pre-Placement, Mental-Health Rounds, Periodic Evaluations) (Doc. Nos. 1815, 1815-1); Phase 2A Order and Injunction on Mental-Health Identification and Classification Remedy (Referral) (Doc. Nos. 1821, 1821-1, 1821-2); Phase 2A Order and Injunction on Segregation Remedy (Stopgap Measures for Removing Inmates with Serious Mental Illness from Segregation) (Doc. Nos. 1861, 1861-1); Phase 2A Order and Injunction on Mental-Health Individualized Treatment Planning Remedy (Doc. Nos. 1865, 1865-1); Phase 2A Order and Injunction on Mental-Health Psychotherapy and Confidentiality (Doc. Nos. 1899, 1899-1); Phase 2A Order and Injunction on Confidentiality (Doc. Nos. 1900, 1900-1); and Phase 2A Order and Injunction on Mental-Health Understaffing (Doc. Nos. 2301, 2301-1).

[3] The Parties entered into Stipulations (Doc. Nos. 2384, 2384-1, 2384-2, 2433, 2433-1) regarding hospital-level care and disciplinary sanctions, but the Court has not yet entered orders adopting those Stipulations.

On February 7, 2019, during a hearing on the Parties' Stipulations regarding hospital-level care and disciplinary sanctions, the Court asked whether the Parties agreed that the Stipulations at issue complied with the PLRA's need-narrowness-intrusiveness requirements.  (Hrg. Tr. (Rough Draft), Feb. 7, 2019, at 74:21-75:4). The Court also asked whether the prior Remedial Stipulations approved by the Court and entered as orders complied with the PLRA.  (Id. at 75:17-76:1).  Plaintiffs stated that the Parties' Stipulations regarding hospital-level care and disciplinary sanctions, as well as all of the other Phase 2A Stipulations adopted as remedial orders by the Court, complied with the PLRA's need-narrowness-intrusiveness requirements.  (Id. at 75:17-76:14).  Counsel for the State indicated that the State would need to deliberate further before it could inform the Court whether the Remedial Stipulations, including those relating to hospital-level care and disciplinary sanctions, complied with the PLRA.  (Id. at 76:2-20).

In a February 11, 2019, order, the Court subsequently directed the State to state whether it agreed "that all of the remedial stipulations previously approved and adopted by the court meet the PLRA's 'need-narrowness-intrusiveness' requirements."  (Doc. No. 2333 at 1).  The State responded that "[a]t this time, the State cannot agree that all of the remedial stipulations meet the [PLRA's] 'need-narrowness-intrusiveness requirements....'"  (Doc. No. 2382 at 1).  The State continued to assert that it could not evaluate whether any remedial provision

6

complied with the PLRA's requirements until the State learned the full scope of remedial relief, including the scope of compliance oversight. (Id. at 1-5). In light of the State's position, the Court set a briefing schedule and a hearing for May 14, 2019, regarding the substantive law relating to the PLRA's need-narrowness-intrusiveness requirements and how to proceed in determining whether the Phase 2A remedial orders and Stipulations comply with those requirements. (Doc. No. 2427).

## DISCUSSION

### I.   THE SUBSTANTIVE LAW REGARDING THE PLRA'S NEED-NARROWNESS-INTRUSIVENESS REQUIREMENTS.

#### A.   THE PLRA'S NEED-NARROWNESS-INTRUSIVENESS REQUIREMENTS APPLY TO EACH REQUIREMENT OF EACH REMEDIAL ORDER.

Even before Congress enacted the PLRA, courts recognized that "[a] federal court, when fashioning a remedy to redress constitutional violations in a prison, must recognize that it is ill-equipped to involve itself intimately in the administration of the prison system." Newman v. Ala., 683 F.2d 1312, 1320 (11th Cir. 1982). "Because of th[e] inherent limitation upon federal judicial authority, federal-court decrees exceed appropriate limits if they are aimed at eliminating a condition that does not violate the Constitution …." Milliken v. Bradley, 433 U.S. 267, 281-82 (1977) ("The well-settled principle that the nature and scope of the remedy are to be determined by the violation means simply that federal-court decrees must directly relate to the constitutional violation itself."). Congress enacted the PLRA to codify

7

this "hands-off" approach.  Gilmore v. Calif., 220 F.3d 987, 991 (9th Cir. 2000) ("It is clear that Congress intended the PLRA to revive the hands-off doctrine."); Inmates of Suffolk Cnty. Jail v. Rouse, 129 F.3d 649, 655 (1st Cir. 1997) ("Congress passed the PLRA in an effort, in part, to oust the federal judiciary from day-to-day prison management.")

As the Court is aware, the PLRA imposes clear and significant limitations upon the scope and extent of any prospective relief following entry of the Liability Order.  The PLRA states:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. ***The court shall not grant or approve any prospective relief unless*** the court finds that such relief is ***narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right***.  The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A) (emphasis added).[4]  Courts refer to these requirements as the "need-narrowness-intrusiveness findings."  U.S. v. Sec'y, Fla. Dep't of Corr.,

---

[4] Moreover, a defendant "shall be entitled to the immediate termination of any prospective relief if the relief was approved or granted in the absence" of the court making findings that the relief satisfied the need-narrowness-intrusiveness criteria.  18 U.S.C. § 3626(b)(2).  Notwithstanding the legal effect of this principle for the Phase 2A remedial orders entered by the Court, the State continues to seek to provide mental-health care to the inmates in its custody consistent with the Phase 2A remedial orders, pending resolution of the PLRA question.  (See Hrg. Tr. (Rough Draft), Mar. 29, 2019, at 52:22-55:9 (Dr. Edward Kern testifying to ADOC's efforts to provide care consistent with the remedial orders)).

778 F.3d 1223, 1227-28 (11th Cir. 2015). The need-narrowness-intrusive criteria mean that the prospective relief must not be tailored to best practices, national standards, or other industry-created norms, but instead must narrowly address only the issues identified in the Liability Opinion.

A court imposing relief must make "'particularized findings … that each requirement imposed by the [relief] satisfies the need-narrowness-intrusiveness criteria.'" Sec'y, Fla. Dep't of Corr., 778 F.3d at 1227-28 (quoting Cason v. Seckinger, 231 F.3d 777, 785 (11th Cir. 2000)) (addressing identical language in Section 3626(b)(3)). "It is not enough to simply state in conclusory fashion that the requirements of the [relief] satisfy those criteria. Particularized findings, analysis, and explanations should be made as to the application of each criterion to each requirement imposed by" the relief. Id. (quoting Cason, 231 F.3d at 785). The PLRA's need-narrowness-intrusiveness requirements apply to *all* aspects of relief, including compliance oversight. (See Doc. Nos. 2214, 2221); U.S. v. Sec'y, Fla. Dept. of Corr., Case No 12-22958-CIV, 2015 WL 4768247, at *4 (S.D. Fla. Aug, 12, 2015) (subjecting monitoring provisions to need-narrowness-intrusiveness requirements and narrowing provisions regarding monitors' access to facilities because plaintiffs' proposal exceeded requirements); Benjamin v. Fraser, 343 F.3d 35, 48-49 (2d Cir. 2003) (noting that it would be "problematic" if monitoring were not considered prospective relief subject to need-narrowness-intrusiveness

requirements, because a monitor's "substantial responsibilities permit no easy distinction between relief itself and the monitoring of relief").

Accordingly, the Court must make particularized written findings that each aspect of the Phase 2A relief, including compliance oversight, meets the PLRA's need-narrowness-intrusiveness requirements.

### B. THE STATE CANNOT AGREE, AT THIS TIME, THAT ALL PREVIOUSLY-APPROVED REMEDIAL STIPULATIONS MEET THE PLRA'S REQUIREMENTS.

As the State previously informed the Court, the State cannot currently agree that all of the previously-approved Stipulations meet the PLRA's need-narrowness-intrusiveness requirements. (Doc. No. 2382). The State is unable to evaluate compliance with the PLRA's need-narrowness-intrusiveness requirements until the remedial process is complete. Most critically, the State cannot agree that the Remedial Stipulations meet the PLRA's need-narrowness-intrusiveness requirements until the Court specifies the compliance oversight obligations that will apply to the remedial orders. Thus, entry of an order with respect to all Phase 2A remedial relief, including compliance oversight, is a condition precedent to the State determining whether to agree that the remedial orders meet the PLRA's need-narrowness-intrusiveness requirements.

Finality of the Phase 2A remedial process is necessary. Without finality regarding all Phase 2A relief, the State cannot understand and evaluate the full scope

of relief.  For example, the State cannot determine whether a particular Stipulation complies with the PLRA without considering the impact of subsequent remedial relief or the compliance, partial compliance, and non-compliance percentages that will apply during the compliance oversight process.  The State therefore cannot, as a practical or legal matter, agree at this time to waive the PLRA's need-narrowness-intrusiveness requirements as to any or all of the Remedial Stipulations, and it is patently unreasonable for Plaintiffs to demand the State waive that important right now, especially in light of the State's position regarding the PLRA in negotiating and entering into the Stipulations.

## II.   THE STATE'S PROPOSAL FOR DETERMINING WHETHER THE STIPULATIONS MEET THE PLRA'S REQUIREMENTS.

A straightforward path exists to resolve whether the Phase 2A Remedial Stipulations reached by the Parties and the remedial orders entered by the Court meet the PLRA's need-narrowness-intrusiveness requirements.  The State proposes that the Court proceed with completing the remedial process contemplated, outlined, and initially followed by the Court after the entry of its Liability Opinion, thereby addressing the remedial measures pertaining to all areas of contention identified in the Liability Opinion.[5]  Thus, the Court would enter remedial orders adopting any pending Remedial Stipulations and, to the extent necessary, resolving remedial

---

[5] The State continues to maintain the position that it is not necessary for the Court to enter additional remedial orders beyond recognizing and approving the State's remedial proposals.

issues on which the Parties did not reach stipulations.  The full array of remedial orders would provide the Parties with clarity, specificity, and a complete picture of the remedial structure enacted by the Court as to Phase 2A of this matter, including the scope of compliance oversight.

Following entry of the remaining Phase 2A remedial orders, if any, the State proposes that the Court direct the Parties to mediate with Magistrate Judge John Ott regarding whether the Phase 2A Remedial Stipulations reached by the Parties and the remedial orders entered by the Court meet the PLRA's need-narrowness-intrusiveness criteria.  The State requests that the Court allow the Parties at least thirty (30) days to attempt to resolve this issue through mediation, with the option of requesting additional time if the Parties appear to be making progress in the mediation.  To the extent that the State cannot agree after mediation that any portion of the Phase 2A Remedial Stipulations or remedial orders entered by the Court meet the PLRA need-narrowness-intrusiveness requirements, the Court can schedule an evidentiary hearing to consider whether the disputed provisions of any Phase 2A Remedial Stipulation or order satisfies the PLRA.  Proceeding in this manner will obviously allow the Court to avoid days or weeks of unnecessary testimony on numerous issues that the Parties, after seeing and evaluating all Phase 2A remedial relief, could stipulate satisfy the PLRA's need-narrowness-intrusiveness requirements.  To proceed in any other way will obligate the Court and Parties to

expend valuable resources over several weeks on a fool's errand and blatantly invites an appeal by the State.

The record before the Court bears out the State's concern that the interconnected nature of the remedial issues prevents the Court from evaluating whether a particular remedial provision, standing alone, complies with the PLRA. For instance, Dr. Kathryn Burns testified that suicide prevention is necessarily related to a correctional department's broader mental-health program.  (Hrg. Tr. (Rough Draft), Apr. 8, 2019, at 119:8-120:3).  Similarly, Dr. Burns testified that she and Dr. Mary Perrien assumed that all of the Phase 2A remedial orders were in effect when they completed their suicide prevention assessment of ADOC.  (Hrg. Tr. (Rough Draft), Apr. 9, 2019, at 18:19-19:7).  Directing the Parties to mediate the PLRA question *after* entry of any remaining Phase 2A remedial orders provides the best opportunity for the Parties to amicably resolve this issue.

## CONCLUSION

The Court must apply the PLRA's need-narrowness-intrusiveness requirements to all Phase 2A remedial orders and Stipulations.  By waiting until after all Phase 2A remedial relief has been entered, and allowing the Parties sufficient time to mediate, the Parties may be able to resolve all or some of the Court's PLRA-related obligations.  At the very least, this process will reduce the burden on the Court and the Parties from an evidentiary perspective, permitting any evidentiary

hearing to be focused on any remaining areas of disagreement.  For these reasons, the State respectfully requests that the Court to adopt the State's proposal, as stated herein, for applying the PLRA's criteria to the Phase 2A Stipulations and any additional remedial relief.

Dated: May 1, 2019.

/s/ William R. Lunsford

William R. Lunsford
*Attorney for the Commissioner and Associate Commissioner*

William R. Lunsford
Matthew B. Reeves
Melissa K. Marler
Stephen C. Rogers
Alyson L. Smith
Melissa C. Neri
**MAYNARD, COOPER & GALE, PC**
655 Gallatin Street
Huntsville, AL 35801
Telephone: (256) 512-5710
Facsimile: (256) 512-0119
blunsford@maynardcooper.com
mreeves@maynardcooper.com
mmarler@maynardcooper.com
srogers@maynardcooper.com
asmith@maynardcooper.com
mneri@maynardcooper.com

Luther M. Dorr, Jr.
**MAYNARD, COOPER & GALE, PC**
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203
Telephone: (205) 254-1178
Facsimile: (205) 714-6438

rdorr@maynardcooper.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this the 1st day of May, 2019:

Maria V. Morris
J. Richard Cohen
Caitlin J. Sandley
Grace Graham
Jonathan Blocker
David C. Washington
**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
maria.morris@splcenter.org
richard.cohen@splcenter.org
cj.sandley@splcenter.org
grace.graham@splcenter.org
jonathan.blocker@splcenter.org
david.washington@splcenter.org

Gregory M. Zarzaur
Anil A. Mujumdar
Denise Wiginton
**ZARZAUR MUJUMDAR & DEBROSSE**
2332 2nd Avenue North
Birmingham, AL 35203
Telephone: (205) 983-7985
Facsimile: (888) 505-0523
gregory@zarzaur.com
anil@zarzaur.com
denise@zarzaur.com

William Van Der Pol, Jr.
Glenn N. Baxter
Barbara A. Lawrence
Andrea J. Mixson
Ashley N. Austin
**ALABAMA DISABILITIES ADVOCACY PROGRAM**
University of Alabama
500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
Telephone: (205) 348-6894
Facsimile: (205) 348-3909
wvanderpoljr@adap.ua.edu
gnbaxter@bama.ua.edu
blawrence@adap.ua.edu
amixson@adap.ua.edu
aaustin@adap.ua.edu

Andrew P. Walsh
William G. Somerville III
Patricia Clotfelter
Lisa W. Borden
**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**
420 20th Street North
Suite 1400
Birmingham, Alabama 35203
Telephone:  (205) 244-3863
Facsimile:  (205) 488-3863
awalsh@bakerdonelson.com
wsomerville@bakerdonelson.com
pclotfelter@bakerdonelson.com

15

lborden@bakerdonelson.com

John G. Smith
David R. Boyd
**BALCH & BINGHAM LLP**
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (866) 316-9461
jgsmith@balch.com
dboyd@balch.com

Deana Johnson
Brett T. Lane
**MHM SERVICES, INC.**
1447 Peachtree Street NE
Suite 500
Atlanta, GA 30309
Telephone: (404) 347-4134
Facsimile: (404) 347-4138
djohnson@mhm-services.com
btlane@mhm-services.com

Steven C. Corhern
**BALCH & BINGHAM LLP**
Post Office Box 306
Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 488-5708
scorhern@balch.com

Lonnie J. Williams
**ALABAMA DISABILITIES ADVOCACY PROGRAM**
P. O. Box 870395
Tuscaloosa, AL 35487
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
lwilliams@adap.ua.edu

Gary L. Willford, Jr.
Joseph G. Stewart
Stephanie L. Smithee
**ALABAMA DEPARTMENT OF CORRECTIONS**
Legal Division
301 South Ripley Street
Montgomery, Alabama 36130
Telephone (334) 353-3884
Facsimile (334) 353-3891
gary.willford@doc.alabama.gov
joseph.stewart@doc.alabama.gov
stephanie.smithee@doc.alabama.gov

*/s/ William R. Lunsford*
Of Counsel

16