# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:14-cv-00601-MHT-GMB |
| | ) | Judge Myron H. Thompson |
| JEFFERSON DUNN, in his official | ) | |
| capacity as Commissioner of the | ) | |
| Alabama Department of Corrections, | ) | |
| et al. | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' REPLY BRIEF FOR UPCOMING ORAL ARGUMENT ON MAY 14, 2019

Pursuant to the March 15, 2019 Phase 2A Revised Remedy Scheduling Order, Doc. 2427, Plaintiffs submit this brief in response to Defendants' initial brief on the substantive law regarding the Prison Litigation Reform Act ("PLRA"), 18 U.S.C. § 3626, and how the Court should proceed in light of Defendants' current position on the PLRA, Doc. 2521 (Defs. Initial Br. Regarding Application of PLRA's Need-Narrowness-Intrusiveness Requirements to Phase 2A Remedial Issues).

**INTRODUCTION**

Plaintiffs' priority is to obtain critical relief for prisoners in ADOC's custody as soon as possible. Defendants' position on the PLRA issue amounts to a request for the Court to delay finalizing this relief unnecessarily. Their request should be denied. The Court need not and should not: define "substantial compliance" at this stage of the litigation, wait for Defendants to agree to PLRA findings or refer the Parties to mediate the PLRA issue, or make PLRA findings about every single term or obligation in each of the stipulated remedial orders. For the reasons stated in Plaintiffs' opening brief (Doc. 2520) and the reasons stated herein, Plaintiffs request that the Court follow Plaintiffs' proposal regarding next steps instead.

**ARGUMENT**

**I.    THE COURT CAN MAKE PLRA FINDINGS WITHOUT DETERMINING THE FULL SCOPE OF RELIEF, DETERMINING A MONITORING STRUCTURE, OR DEFINING "SUBSTANTIAL COMPLIANCE"**

Defendants agreed to comply with the stipulated remedial orders and remaining stipulations as they were submitted to the Court – not to comply with some of them or a portion of them, nor to comply with them only if there were no additional remedial orders later. Yet now, Defendants assert they cannot agree to

be bound by the remedial orders they previously asked the Court to enter as enforceable orders until they know:

> 1) All Phase 2A remedial relief;
>
> 2) What "compliance oversight" consists of; and
>
> 3) What percentage of what they agreed to do they will actually be required to do.

Doc. 2521 at 11-12.

### A. The Court Can Make PLRA Findings for the Remedial Orders and Stipulations Without Waiting Until All Relief Has Been Ordered

There is no need for the Court to wait until all Phase 2A remedial relief is ordered. As Defendants themselves point out, each remedial provision must satisfy the PLRA on its own. *Id*. at 8-10. This Court has already found that certain remedial requirements satisfy the PLRA without all Phase 2A remedies being in place. *See* Doc. 1656 (Phase 2A Understaffing Remedial Op.) at 32-37; Doc. 2525 (Phase 2A Remedial Op. on Immediate Relief for Suicide Prevention) at 85-176. Further, courts can and do change the ordered relief, whether because a remedy is no longer needed or because further remedies are required to address the constitutional violation. *See, e.g.*, *Coleman v. Schwarzenegger*, No. CIV S-90-0520LKKJFMP, 2007 WL 1521567 (E.D. Cal. May 23, 2007) (ordering additional remedies in light of the state's failure to resolve certain constitutional violations);

*Ruiz v. Johnson*, 154 F. Supp. 2d 975, 988-1001 (S.D. Tex. 2001) (ordering some relief to continue and other relief to terminate, based on the then-current needs). There is no basis for the argument that whether PLRA requirements are met can be determined only once all the relief that ever will be ordered is ordered.

Moreover, even in this litigation, Defendants have agreed that certain remedies met the PLRA requirements while other remedies remained outstanding. The parties reached an agreement on the Americans with Disabilities Act ("ADA") claim that applied only to discrimination and non-accommodation relating to physical disabilities. Doc. 727 (Phase 1 Final Settlement Approval Op. and Order) at 2 n.1. The agreement carved out ADA claims alleging discrimination on the basis of and non-accommodation of mental health disabilities. *Id.* Yet Defendants agreed that the settlement met the PLRA requirements. *Id.* at 108.

Additionally, as noted in Plaintiffs' initial brief, Defendants' argument is further undercut by the fact that they have asserted in each of their proposed plans for addressing constitutional violations that the relief they proposed would satisfy the PLRA. Doc. 2520 at 3. Defendants were able to assess whether the PLRA requirements were met with regard to their piecemeal remedial proposals.  The

Court can similarly make this assessment, based on the evidence, for each of the provisions of each of the remedial orders and remaining stipulations.[1]

## B. What Monitoring Entails Does Not Affect Satisfaction of the PLRA Requirements

Nor is there any basis for Defendants' argument that "the full scope of … any compliance oversight or monitoring obligations" must be determined prior to a decision on whether the stipulated remedial orders and remaining stipulations meet the PLRA requirements.  *See* Doc. 2382 (Defs. Statement Regarding PLRA's "Need-Narrowness-Intrusiveness" Requirements) at 3-4; Doc. 2521 at 6-7, 10-11. Whether or not the Court ultimately decides that monitoring requirements must by supported by the PLRA need-narrowness-intrusiveness findings, monitoring is not substantive relief. Monitoring is how the Court and the Parties know whether Defendants are complying with the substantive relief ordered. Defendants fail to explain how the degree of monitoring affects whether the remedial provisions meet the PLRA requirements. *See generally* Doc. 2382, 2521.

---

[1] To the extent the Court accepts Defendants' argument that it is not possible to determine whether the relief ordered meets the need-narrowness-intrusiveness requirements until the full scope of relief is ordered, the issue is nearly resolved. The only remaining issue to be tried is the suicide prevention remedies that require a longer time to implement.  All other areas have been resolved through agreement or have been fully briefed, tried, and submitted to the Court for resolution.

The only apparent impact monitoring has on how necessary, narrow, or intrusive the agreed-upon and ordered remedies are is whether failures to comply will be discovered. In other words, if monitoring is ineffective, Defendants can fail to comply with the orders without detection. In such a situation, the remedies would certainly be narrower and less intrusive, but would fail to remedy the constitutional violations. Monitoring must be sufficient to determine whether Defendants are complying with the remedial orders. However, the specific contours of monitoring are irrelevant to whether the stipulated remedial orders and remaining stipulations meet the PLRA requirements.

### C.   The Court Should Not Define "Substantial Compliance" at This Stage and Can Make PLRA Findings Without Doing So

The Court must make PLRA findings with respect to the remedial orders and stipulations as they have been presented to the Court. As argued in Plaintiffs' initial brief, the Court does not need to define "substantial compliance" in order to make PLRA findings on any of the remedial orders and stipulations. *See* Doc. 2520 at 17-20. Defendants' argument to the contrary is unsupported by law and, if followed, would defeat the purposes of those orders and stipulations.

The stipulated remedial orders are consent decrees.[2] The prospective provisions of a consent decree "operate as an injunction." *R.C. ex rel. Ala. Disabilities Advocacy Program v. Walley*, 390 F. Supp. 2d 1030, 1043 (M.D. Ala. 2005) (quoting *Vanguards of Cleveland v. City of Cleveland*, 23 F.3d 1013, 1017 (6th Cir. 1994)). "[A]ll orders and judgments of courts must be complied with promptly." *Reynolds v. Ala. Dep't of Transp*., 10 F. Supp. 2d 1263, 1273 (M.D. Ala. 1998) (Thompson, J.) (quoting *Jim Walter Res., Inc. v. Int'l Union, United Mine Workers of Am*., 609 F.2d 165, 168 (5th Cir. 1980)).[3]

Court orders are subject to reasonable interpretation. *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1296 (11th Cir. 2002). Interpretation must be based on the language of the order. *See, e.g.*, *Thomas v. Bryant*, 614 F.3d 1288, 1322-23 (11th Cir. 2010) (overruling objections to an injunction because they were based on an interpretation of the injunction that was not supported by the language of the injunction). An interpretation of an order that renders it meaningless is not a reasonable one. *See F.T.C. v. Leshin*, 618 F.3d 1221, 1234 (11th Cir. 2010). "As a

---

[2] If the Court enters the Hospital-Level Care and Disciplinary Process Stipulations (Docs. 2383, 2383-1, 2383-2, 2384, 2384-1, 2384-2) as orders, those agreements will likewise be consent decrees.

[3] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding precedent in the Eleventh Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

general matter, the rules [courts] use to interpret a consent decree are the same ones [courts] use to interpret a contract—since a consent decree is a form of contract." *Reynolds v. Roberts*, 202 F.3d 1303, 1312 (11th Cir. 2000) (citing *Jacksonville Branch, NAACP v. Duval Cty. Sch. Bd.*, 978 F.2d 1574, 1578 (11th Cir. 1992)).   "Because consent decrees have 'many of the attributes of ordinary contracts [and] . . . should be construed basically as contracts,' the doctrine of substantial compliance, or substantial performance, may be employed." *Jeff D. v. Otter*, 643 F.3d 278, 283-84 (9th Cir. 2011) (alteration and omission in original) (quoting *United States v. ITT Cont'l Baking Co.*, 420 U.S. 223, 236 (1975)). In contract law, and in the interpretation of consent decrees:

> Substantial compliance is: simply a doctrine to assist the court in determining whether conduct should, in reality, be considered the equivalent of compliance under the contract. Judge Cardozo, in the seminal substantial compliance case of *Jacob & Youngs, Inc. v. Kent*, concluded that performance of a contract will not be considered in substantial compliance of the contract if the deviation from the contract requirements in any real substantial measure frustrates the purpose of the contract. Thus, the touchstone of the substantial compliance inquiry is whether Defendants frustrated the purpose of the consent decree – *i.e.* its essential requirements.

*R.C.*, 390 F. Supp. 2d at 1044 (internal alterations, quotation marks, and citations omitted) (quoting *Joseph A. ex rel. Wolfe v. N.M. Dep't of Human Servs.*, 69 F.3d 1081, 1085-86 (10th Cir. 1995)).

The question of what degree of performance is substantial compliance becomes relevant only after relief has been entered and compliance is being evaluated, primarily in the context of a motion to terminate a consent decree or consideration of contempt.  *See, e.g.*, *Rouser v. White*, 825 F.3d 1076, 1081 (9th Cir. 2016) (concluding that district court improperly terminated the consent decree because "[t]he district court didn't evaluate whether defendants substantially complied with each of the 2011 [Consent] Decree's terms"); *Benjamin v. Shriro*, No. 75 Civ. 3073(HB), 2009 WL 3464286 (S.D.N.Y. Oct. 26, 2009) (granting motion to terminate based on conclusion that, "while there remain some issues with regard to Defendants' compliance [with the remedial orders at issue], the record reflects that [the New York City Department of Corrections] has substantially complied with its obligations"); *see also Hallett v. Morgan*, 296 F.3d 732, 749-51 (9th Cir. 2002) (on appeal of contempt order, affirming district court's ruling that prison substantially complied with provisions of consent decree requiring facility to provide proper mental-health and dental services but reversing holding that prison substantially complied with other medical care provisions).

As explained by this Court in *R.C.*, "'Substantial Compliance' is not subject to rigid application, nor 'susceptible of a mathematically precise definition.'" *R.C.*, 390 F. Supp. 2d at 1044 (quoting *Joseph A.*, 69 F.3d at 1085).  Similarly,

considering whether a state agency was in contempt, the First Circuit explained: "[N]o particular percentage of compliance can be a safe-harbor figure, transferable from one context to another. Like 'reasonableness,' 'substantiality' must depend on the circumstances of each case, including the nature of the interest at stake and the degree to which noncompliance affects that interest." *Fortin v. Comm'r of Mass. Dep't of Pub. Welfare*, 692 F.2d 790, 795 (1st Cir. 1982). Where "the interest at stake … is great, the consequences of failure to comply [are] quite serious." *Id*. (internal citations omitted).

Yet Defendants seek to use the concept of substantial compliance exactly in this way, as a safe harbor, determined with mathematical precision at the beginning of the remedial phase. Defendants claim they cannot determine whether a particular stipulation complies with the PLRA without knowing what "compliance, partial compliance, and non-compliance percentages . . . will apply during the compliance oversight process." Doc. 2521 at 11. They seek advance assurance from the Court that they will be held to be in compliance with the remedial orders if they do 85% of what the orders require on their face. *See* Doc. 2115 (Defs. Phase 2A Proposed Remedial Plan on Compliance Oversight) at 18.

Defendants' demand that the Court establish a safe harbor prior to finalization of relief is without support in law. What is required of Defendants is

compliance with the orders. Once Defendants make their best efforts to comply, and believe they have substantially complied, they can present their performance to the Court for the Court to determine whether Defendants' conduct "should, in reality, be considered the equivalent of compliance." *R.C.*, 390 F. Supp. 2d at 1044 (quoting *Joseph A.*, 69 F.3d at 1086).

To give Defendants a safe harbor would be to frustrate the purpose of the remedial orders and stipulations. In the instant case, where lives are at stake, Defendants' position must be rejected. The Court should not define substantial compliance at this stage in the remedial process.

## II.   THE COURT DOES NOT NEED DEFENDANTS' AGREEMENT TO MAKE PLRA FINDINGS WITH RESPECT TO THE REMEDIAL ORDERS AND STIPULATIONS

Although Defendants' brief focuses on finding a path toward Defendants' agreement on any PLRA findings, Doc. 2521 at 10-13, the Court does not need Defendants to agree on any PLRA findings in order to enter them.

Contrary to Defendants' characterization, the question of whether Defendants could or should waive the PLRA requirements is not before the Court. Plaintiffs do not "demand the State waive" any rights with respect to the PLRA. *Id.* at 11. Indeed, the statutory language makes clear that the need-narrowness-intrusiveness requirements cannot be waived. § 3626(a)(1)(A) ("The court shall not

grant or approve *any* prospective relief *unless* the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." (emphases added)). Defendants certainly may agree that the stipulated remedial orders and remaining stipulations meet the need-narrowness-intrusiveness requirements. *See Cason v. Seckinger*, 231 F.3d 777, 785 n.8 (11th Cir. 2000). They have refused to do so. *See, e.g.*, Doc. 2521 at 10-11.

The question before the Court is how the Court should proceed in light of Defendants' tactic of agreeing to present a dozen remedial orders and stipulations for entry as enforceable orders, but refusing to agree that any of those orders or stipulations are necessary, narrowly drawn, or the least intrusive means to address Defendants' constitutional violations. Defendants need not agree that the stipulated remedial orders and remaining stipulations meet the PLRA requirements in order for the Court to now find that they do. In the absence of Defendants' agreement on the PLRA requirements, the Court may, and must, proceed to make PLRA findings after receiving sufficient evidence. *See* Doc. 2520 at 21-24.

The Court already has most, if not all, of the evidence it needs to make the PLRA findings. As explained by the Court in the recent Phase 2A Remedial Opinion on Immediate Relief for Suicide Prevention, "where, as here, the

provisions of relief ordered by a court are adopted from an agreement jointly drafted and reached by the parties, it is compelling evidence that the provisions comply with the needs-narrowness-intrusiveness criteria." Doc. 2525 at 91 (citing *Morales Feliciano v. Calderon Serra*, 300 F. Supp. 2d 321, 334 (D.P.R. 2004) ("The very fact that the defendants chose to join the plaintiffs in selecting this remedy would seem to mean – and must be taken to mean – that they understood it to be precisely tailored to the needs of the occasion, that it is narrowly drawn and least intrusive – in fact not intrusive at all."); *Benjamin v. Fraser*, 156 F. Supp. 2d 333, 344 (S.D.N.Y. 2001) (reasoning that an agreement between the parties that is incorporated into an order "constitutes strong evidence" of compliance with the need-narrowness-intrusiveness requirement); *Cason*, 231 F.3d at 785 n.8 ("Of course, we do not mean to suggest that the district court must . . . enter particularized findings concerning any facts or factors about which there is no dispute.")). The Court has received significant evidence of Defendants' failure to comply with the stipulated remedial orders, demonstrating that the remedies remain necessary. *See, e.g.*, Pls. Dem. Exs. 196, 197, 200; Doc. 2525 at 11-46; Dr. Kathryn Burns, Dec. 7, 2018 Trial. Tr., at 117:2-119:22; 126:23-131:18; 132:13-150:20; 169:13-187:23; 190:7-196:6. And the Court has heard expert testimony that the orders are necessary, narrowly drawn, and the least intrusive means of

remedying the constitutional violations found by the Court. *See* Doc. 2520 at 23 n.6.

Moreover, the Court should not order the Parties to mediate whether the stipulated remedial orders and pending stipulations meet the PLRA requirements. Defendants request that, "[f]ollowing entry of the remaining Phase 2A remedial orders, if any, . . . the Court direct the Parties to mediate with Magistrate Judge John Ott regarding whether the Phase 2A Remedial Stipulations reached by the Parties and the remedial orders entered by the Court meet the PLRA's need-narrowness-intrusiveness criteria." Doc. 2521 at 12. Each of the stipulations was already the result of lengthy negotiations. Following Defendants' proposal to have the Parties mediate this issue would allow Defendants to demand renegotiation of remedies they already agreed to implement. The Court should not permit Defendants this opportunity. Because the Parties have been unable to agree on whether the stipulated remedial orders and remaining stipulations meet the PLRA requirements, it is now a matter for the Court to decide.

## III.   THE COURT SHOULD MAKE PLRA FINDINGS WITH RESPECT TO EACH SET OF OBLIGATIONS IN EACH OF THE REMEDIAL ORDERS AND STIPULATIONS; IT NEED NOT INDIVIDUALLY ADDRESS EACH AND EVERY TERM OF THE ORDERS

The PLRA requires that a district court "engage in a specific, provision-by-provision examination of the consent decrees, measuring each requirement against

the statutory criteria" – namely, whether each requirement is narrowly drawn, extends no further than necessary to correct the violation of a federal right, and is the least intrusive means of correcting that violation. *Cason*, 231 F.3d at 785. In *Cason*, the Eleventh Circuit did not indicate the level of specificity for determining what is a provision. *Id*.

In *Thomas v. Bryant*, the Eleventh Circuit demonstrated the level of specificity needed. It affirmed injunctive relief that was issued without separate need-narrowness-intrusiveness findings as to each obligation imposed on the Florida Department of Corrections. 614 F.3d at 1323-26. In the underlying case, the district court ordered final injunctive relief that imposed multiple obligations on the defendants. *Thomas v. McNeil*, No. 3:04–cv–917–J–32JRK, 2009 WL 605306, at *2-3 (M.D. Fla. Mar. 9, 2009), *aff'd sub nom. Thomas v. Bryant*, 614 F.3d 1288. For example, the district court required that: (1) if the plaintiffs were housed in a particular unit, chemical agents not be used on them non-spontaneously without prior consultation with mental-health staff; (2) a notice be placed in plaintiffs' security, medical, and mental-health file, and posted as necessary; (3) any non-spontaneous application of chemical agents to the plaintiffs be videotaped; and (4) if the plaintiffs were transferred to the specified housing unit, the court and plaintiffs' counsel be notified. *Id.* Although the district court

generally explained the factual bases for relief ordered, it did not make explicit need-narrowness-intrusiveness findings as to each of these obligations. Rather, it made the findings as to the relief as a whole – addressing the single issue of the department's non-spontaneous use of chemical agents on these mentally ill prisoners. *See id.* at \*2. The defendants appealed, challenging the necessity, narrowness, and intrusiveness of the relief. *Thomas*, 614 F.3d at 1318. The Eleventh Circuit rejected these arguments and affirmed the district court's holding, demonstrating that the district court's approach to making PLRA findings was sufficient. *Id*. at 1318-26.

The Eleventh Circuit's requirement of particularized need-narrowness-intrusiveness findings on a provision-by-provision basis does not require discrete, detailed findings for every single obligation imposed by an injunction. Such a requirement would be excessive, as explained by the district court in *Benjamin v. Fraser* which, after assuming that the PLRA requires a "provision-by-provision needs-narrowness-intrusiveness analysis," defined the parameters of its analysis:

> The court defines a "provision" for purposes of the "provision-by-provision" analysis as the paragraph or paragraphs of the April 26 Order that concern a specific environmental condition—i.e., sanitation, temperature, ventilation, heating, lighting, noise, and clinical and medical areas. *A particular requirement does not lack for sufficient findings if the provision of which it is a part is amply supported. The PLRA provides only that "prospective relief" requires factual findings. It does not dictate that for every action required by a*

> *court (no matter how minor) there be a concomitant factual finding, nor is there any reason to believe that Congress intended such an onerous burden.* Requiring factual findings for each type of relief is consistent with the language of the PLRA and satisfies Congress' desire that courts account for the necessity of the relief they order. Further, to conclude otherwise would either condition the adequacy of a court's findings upon the paragraph structure of the remedial order, or, at its logical extreme, force the court into the absurd position of having to make a separate analysis for every word in the order.

156 F. Supp. 2d at 343-44 (emphasis added). Under this definition of "provision," the district court proceeded to make a series of need-narrowness-intrusiveness findings on a provision-by-provision basis, with many provisions including multiple obligations. *Id.* at 345-55. Relying on the district court's factual findings and tacitly approving its approach, the Second Circuit affirmed much of the injunctive relief. *See Benjamin v. Fraser*, 343 F.3d 35, 52-55 (2d Cir. 2003), *overruled on other grounds*, *Caiozzo v. Koreman*, 581 F.3d 63 (2d Cir. 2009.

Defendants correctly assert that the Court must conduct a provision-by-provision analysis to determine if the relief ordered meets the PLRA's need-narrowness-intrusiveness requirements. However, what they consider to be a "provision" is far from clear.

In its recent opinion on immediate suicide prevention remedies, the Court struck an appropriate balance – making findings for each area of relief provided in the remedial order, but not delving into the details of each remedy. *See, e.g.*, Doc.

2525 at 150-56 (discussing the findings for the remedy of "Preventing Discharge from Suicide Watch to Segregation").  The Court should take a similar approach to its findings for the remaining remedial orders and stipulations.

## CONCLUSION

Prisoners with serious mental-health needs are suffering in Alabama prisons and need relief as soon as possible. The Court should not delay in making PLRA findings for each of the stipulated remedial orders or remaining stipulations. The Court need not and should not define substantial compliance at this stage of the litigation. The Court should not wait for Defendants to agree to PLRA findings or refer the Parties to mediation to give Defendants an opportunity to renegotiate the relief to which they have already agreed. Finally, the Court need not make PLRA findings for every single term of the stipulated remedial orders or stipulations; the Court may make the findings provision-by-provision as it recently did in the Phase 2A Remedial Opinion on Immediate Relief for Suicide Prevention (Doc. 2525). For the reasons stated in Plaintiffs' opening brief (Doc. 2520) and the reasons stated herein, Plaintiffs request that the Court follow Plaintiffs' proposal regarding how to proceed with making PLRA findings.

Dated: May 8, 2019                        Respectfully Submitted,

                                          */s/ Maria V. Morris*
                                          Maria V. Morris

One of the Attorneys for Plaintiffs
Southern Poverty Law Center
400 Washington Avenue
Montgomery, AL 36104

Maria V. Morris (ASB-2198-R64M)
Grace Graham (ASB-3040-A64G)
Jonathan Blocker (ASB-6818-G19I)
Caitlin J. Sandley (ASB-5317-S48R)
David Clay Washington (ASB-6599-Y42I)
SOUTHERN POVERTY LAW CENTER
400 Washington Avenue
Montgomery, AL  36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
maria.morris@splcenter.org
grace.graham@splcenter.org
jonathan.blocker@splcenter.org
cj.sandley@splcenter.org
david.washington@splcenter.org

Lisa W. Borden (ASB-5673-D57L)
William G. Somerville, III (ASB-6185-E63W)
Andrew P. Walsh (ASB-3755-W77W)
Patricia Clotfelter (ASB-0841-F43P)
BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ PC
420 20th Street North, Suite 1400
Birmingham, AL 35203
lborden@bakerdonelson.com
wsomerville@bakerdonelson.com
awalsh@bakerdonelson.com
dnabors@bakerdonelson.com
pclotfelter@bakerdonelson.com

*/s/ Anil A. Mujumdar*
Anil A. Mujumdar (ASB-2004-L65M)
One of the Attorneys for Plaintiffs

Alabama Disabilities Advocacy Program
2332 2nd Avenue North
Birmingham, AL 35203

Gregory M. Zarzaur, Esq. (ASB-0759-E45Z)
Anil A. Mujumdar, Esq. (ASB-2004-L65M)
Denise Wiginton, Esq. (ASB-5905-D27W)
ZARZAUR
2332 2nd Avenue North
Birmingham, AL 35203
Telephone: (205) 983-7985
Facsimile: (888) 505-0523
gregory@zarzaur.com
anil@zarzaur.com
denise@zarzaur.com

William Van Der Pol, Jr., Esq. (ASB-2112-114F)
Glenn N. Baxter, Esq. (ASB-3825-A41G)
Lonnie Williams, Esq.
Barbara A. Lawrence, Esq.
Andrea J. Mixson, Esq.
Ashley N. Austin, Esq. (ASB-1059-F69L)
ALABAMA DISABILITIES
ADVOCACY PROGRAM
Box 870395
Tuscaloosa, AL 35487
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
wvanderpoljur@adap.ua.edu
gnbaxter@adap.ua.edu
lwilliams@aadap.ua.edu
blawrence@adap.ua.edu
amixson@adap.ua.edu
aaustin@adap.ua.edu


**ATTORNEYS FOR THE PLAINTIFFS**

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this 8th day of May, 2019 electronically filed the foregoing with the clerk of court by using the CM/ECF system, which will send a notice of electronic filing to the following:

David R. Boyd, Esq.
John G. Smith, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL 36101-0078
dboyd@balch.com
jgsmith@balch.com

Steven C. Corhern, Esq.
Balch & Bingham LLP
Post Office Box 306
Birmingham, AL 35201-0306
scorhern@balch.com

Joseph G. Stewart, Jr., Esq.
Gary L. Willford, Jr., Esq.
Stephanie Lynn Dodd Smithee
Alabama Department
Of Corrections
Legal Division
301 South Ripley Street
Montgomery, AL 36104
joseph.stewart@doc.alabama.gov
gary.willford@doc.alabama.gov
stephanie.smithee@doc.alabama.gov

Philip Piggott, Esq.
Starnes Davis Florie LLP
100 Brookwood Place – 7th Floor
Birmingham, AL 35209
ppiggott@starneslaw.com

William R. Lunsford, Esq.
Matthew Reeves, Esq.
Melissa K. Marler, Esq.
Stephen C. Rogers, Esq.
Alyson L. Smith, Esq.
Melissa C. Neri, Esq.
Maynard, Cooper & Gale, P.C.
655 Gallatin Street, SW
Huntsville, AL  35801
blunsford@maynardcooper.com
mreeves@maynardcooper.com
mmarler@maynardcooper.com
srogers@maynardcooper.com
asmith@maynardcooper.com
mneri@maynardcooper.com

Luther M. Dorr, Jr., Esq.
Maynard, Cooper & Gale, P.C.
1901 6th Avenue North, Suite 2400
Birmingham, AL  35203
rdorr@maynardcooper.com

Deana Johnson, Esq.
Brett T. Lane, Esq.
MHM Services, Inc.
1447 Peachtree Street, N.E., Suite 500
Atlanta, GA  30309
djohnson@mhm-services.com
btlane@mhm-services.com

*/s/ Maria V. Morris*
One of the Attorneys for Plaintiffs