IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

EDWARD BRAGGS, et al.,          )
                                )
        Plaintiffs,             )
                                )        CIVIL ACTION NO.
        v.                      )        2:14cv601-MHT
                                )            (WO)
JEFFERSON S. DUNN, in his       )
official capacity as            )
Commissioner of                 )
the Alabama Department of       )
Corrections, et al.,            )
                                )
        Defendants.             )

OPINION AND ORDER

This court previously found that severe
correctional understaffing contributes to
constitutionally inadequate mental-health care in
Alabama prisons. Consequently, the court ordered the
defendants to increase correctional staffing. To this
end, the court required the defendants to implement
recommendations for recruitment and retention contained
in an expert report by the firm Warren Averett (WA).
The plaintiffs moved to unseal redacted portions of the
WA report, including the recommended

correctional-officer compensation increases. The plaintiffs contended that the public has a strong interest in accessing them, given that they could impact significant government spending. By contrast, the defendants argued that unsealing the redacted sections would undermine their ability to implement recommended compensation increases. Last month, the court granted the plaintiffs' motion to unseal the entire report, explaining that the public's interest in accessing the redacted portions of the report outweighs the defendants' interest in confidentiality. This opinion elaborates on the reasons for unsealing the report.

## I.   PROCEDURAL HISTORY

The plaintiffs in this class-action lawsuit include a group of mentally ill prisoners in the custody of the Alabama Department of Corrections (ADOC). The defendants are the ADOC Commissioner and Associate Commissioner of Health Services, who are both sued in

only their official capacities.  In a liability opinion entered in June 2017, this court found that ADOC's mental-health care for prisoners in its custody was, simply put, "horrendously inadequate." *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1267 (M.D. Ala. 2017) (Thompson, J.).  The court laid out seven factors contributing to the Eighth Amendment violation.  *Id.* at 1267-68. Additionally, it found that "persistent and severe shortages of mental-health staff and correctional staff" constitute an "overarching issue[ ] that permeate[s] each of the ... contributing factors of inadequate mental-health care." *Id.* at 1268.

The court subsequently issued a remedial opinion on understaffing, *see Braggs v. Dunn*, 2018 WL 985759, at *1 (M.D. Ala. Feb. 20, 2018) (Thompson, J.), along with a remedial order, *see Braggs v. Dunn*, 2018 WL 7106346, at *1 (M.D. Ala. Feb. 20, 2018) (Thompson, J.).  The order required the defendants to increase correctional staffing.  *See id.*; Savages' Report (doc. no. 1813-1). The order also adopted the defendants' proposal that

they employ two consultants--Dr. Stephen Condrey and the firm WA--to determine how to recruit, hire, and retain more correctional officers. *See Braggs*, 2018 WL 985759 at *4. The defendants had already retained those two consultants prior to the order. *See id.*

The order required Dr. Condrey to submit to ADOC recommendations related to correctional officer "compensation and benefits," and for the defendants to file the recommendations with the court by April 2, 2018. *Braggs*, 2018 WL 7106346 at 1. It also required the firm WA to submit recommendations to ADOC related to correctional officer "recruitment and retention," and for defendants to file the recommendations with the court by November 2, 2018. *Id.* By December 1, 2018, ADOC was required "to implement" the recommendations of consultants Dr. Condrey and WA, as modified by any agreement between the parties or orders of the court. *See id.*

On March 31, 2018, the defendants publicly filed Dr. Condrey's recommendations, including recommended

compensation increases.  *See* Condrey Report (doc. no. 1725-1).  On November 2, 2018, the defendants filed the WA report.  *See* Redacted WA Report (doc. no. 2150-1). Unlike Dr. Condrey's recommendations, portions of the WA report--including the recommended compensation increases--were filed under seal.  *See id.*  The plaintiffs moved to unseal the WA report in its entirety.  *See* Motion to Unseal (doc. no. 2157).

## II. DISCUSSION

The public has a common-law right to inspect and copy judicial records and documents.  *See Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978); *see also Newman v. Graddick*, 696 F.2d 796, 802-04 (11th Cir. 1983) (applying the common-law right to access judicial records in a class action brought by Alabama prisoners).  The "test for whether a judicial record can be withheld from the public is a balancing test that weighs the competing interests of the parties to determine whether there is good cause to deny the

public the right to access the document." *F.T.C. v. AbbVie Prods., LLC*, 713 F.3d 54, 62 (11th Cir. 2013) (internal quotation marks omitted). This balancing test weighs "the public interest in accessing court documents against a party's interest in keeping the information confidential." *Romero v. Drummond Co.*, 480 F.3d 1234, 1246 (11th Cir. 2007). On the public's side of the scale is the "presumption ... in favor of public access to judicial records." *Nixon*, 435 U.S. at 602.[*]

The defendants conceded that certain portions of the report that they originally redacted no longer need

---

[*] The factors courts consider in applying the test include, among others, "whether allowing access would impair court functions or harm legitimate privacy interests, the degree of and likelihood of injury if made public, the reliability of the information, whether there will be an opportunity to respond to the information, whether the information concerns public officials or public concerns, and the availability of a less onerous alternative to sealing the documents," *Romero*, 480 F.3d at 1246, as well as "whether the records are sought for such illegitimate purposes as to promote public scandal or gain unfair commercial advantage, whether access is likely to promote public understanding of historically significant events, and whether the press has already been permitted substantial access to the contents of the records," *Newman*, 696 F.2d at 803.

to remain under seal. Those portions include data concerning correctional staffing levels at ADOC facilities, as well as current and past salaries for correctional staff.

The redacted portions of the report that remain in dispute fall into three categories. The first category is comprised of the WA report's recommended compensation increases for correctional officers, including salaries and bonuses. The second includes comparisons between ADOC correctional officers' current compensation and that of similar jobs in the public and private sectors. The third includes WA's estimated costs of implementing the recommended compensation increases.

For each category, the dispositive question is whether the public's interest in accessing the information outweighs the defendants' interest in keeping it confidential. As explained below, the answer is yes for each category. The court will begin its analysis with the first category--recommended

7

compensation increases--which has been the primary focus of the defendants' arguments, and thus this dispute.

A. First Category: Recommended Compensation Increases

1. The Public's Interest

The public has an enormous interest in accessing the WA report's recommended compensation increases. To start, if ADOC follows this court's order, the recommendations will have a large impact on how taxpayer dollars are spent. This is because the understaffing remedial order *mandates* that ADOC implement WA's recommended compensation increases. The understaffing remedial order states: "By December 1, 2018, ADOC is to implement the recommendations of consultants Condrey and the firm Warren Averett, as modified by any agreements between the parties or orders of this court." *Braggs*, 2018 WL 7106346 at 1. The WA recommendations, in defense counsel's own words, call for "arguably the largest reform in the benefit

and pay structure that's ever been done to the Department of Corrections." Dec. 6, 2018, Trial Tr. (doc. no. 2254) at 18-19. Accordingly, the recommendations, if implemented, will greatly impact Alabama government spending. As this court and others have recognized, the public has a powerful interest in overseeing government spending. *See Braggs v. Dunn*, 2019 WL 78949, at *3-4 (M.D. Ala. Jan. 2, 2019) (Thompson, J.) (recognizing this interest in granting motion to unseal correctional staffing numbers); *Kelly v. Wengler*, 979 F. Supp. 2d 1243, 1244-46 (D. Idaho 2013) (Carter, J.) (reasoning, in granting a motion to unseal, that "Idaho taxpayers pay CCA to operate one of their prisons. With public money comes a public concern about how that money is spent."); *cf. News-Press v. U.S. Dep't of Homeland Sec.*, 489 F.3d 1173, 1196 (11th Cir. 2007) (holding, in a Freedom of Information Act (FOIA) case, that "the public interest in determining whether FEMA has been a proper steward

of billions of taxpayer dollars is undeniable and powerful").

As detailed below, at a hearing this April, the defendants indicated that they were currently seeking pay raises for correctional staff that are materially smaller than those recommended in the WA report. Even if--consistent with these representations at the April hearing--the defendants do not implement the WA report's recommendations, the public would still have a compelling interest in accessing them. In overseeing government spending, a key piece of information for the public to know is whether ADOC is paying correctional staff the amount that its own retained expert recommended to effectively address understaffing. Moreover, the public has a strong interest in overseeing ADOC's compliance with court orders, especially those aimed at remedying constitutional violations. *Cf. Storm v. Twitchell*, 2014 WL 4926119, at *14 (D. Idaho Sept. 29, 2014) (Dale, M.J.) ("Whether conditions at the county jails violate the Eighth

10

Amendment of the United States Constitution is important information for the general public to know."). To evaluate whether ADOC is complying with court orders, the public needs to be able to compare the WA recommendations the court ordered ADOC to implement with the compensation increases that ADOC ultimately seeks to enact.

## 2. The Defendants' Interests

On the other side of the scale, the defendants asserted three central interests in keeping the recommended compensation increases sealed. All three are part of their overarching contention that unsealing the recommendations would impede ADOC's ability to comply with court orders to increase correctional compensation and staffing levels.

First, the defendants argued that unsealing the recommended compensation increases would undermine their efforts to obtain the necessary approvals for implementing them. ADOC cannot unilaterally increase

correctional officer compensation. *See* Dunn Decl. (doc. no. 2187-2) at 3. Implementing WA's compensation recommendations will require passing legislation to secure adequate funding. Lawley Decl. (doc. no. 2187-3) at 4-5. Commissioner Jefferson Dunn also testified that in addition to approving funding, the legislature also must approve the salary increases. Dunn Nov. 26, 2018 Trial Tr. (doc. no. 2250) at 215-16. After obtaining the required legislative approvals, "ADOC will need to secure approvals from the Alabama Department of Finance and work with representatives from the State Personnel Department and State Personnel Board to implement the proposed changes to pay grades and compensation rates." Lawley Decl. (doc. no. 2187-3) at 5.

Commissioner Dunn asserted that, in working with these other government branches and agencies and attempting to secure their approvals, ADOC "must preserve the right to control the manner and timing of when it discloses the full details of Warren Averett's

recommendations to these third parties so as to most
effectively address the recommendations with the third
parties." Dunn Decl. (doc. no. 2187-2) at 5. Full
disclosure of the report "at this juncture could
unnecessarily complicate ADOC's discussions with these
third parties," he said. *Id.* Specifically, the
defendants maintained that publicizing the recommended
raises for ADOC correctional staff would cause
personnel from other State agencies to also seek
raises. *See, e.g.*, Graham Decl. (doc. no. 2212-1) at
6.

Second, the defendants argued that unsealing the
recommendations would disadvantage them with respect to
competitor employers in the labor market. They argued,
for example, that, if the recommended compensation
increases became public, "other law enforcement and
correctional employers would enjoy a head start on ADOC
in competing for employees." Defendants' Response
(doc. no. 2187) at 7.

Third, the defendants contended that unsealing the recommendations would risk hurting correctional officer morale--and thus contributing to staff departures--because it would create unrealistic expectations that compensation would be immediately increased. According to Commissioner Dunn, morale would decline if ADOC cannot timely implement salary increases. *See* Dunn Decl. (doc. no. 2187-2) at 6.

All three of the defendants' asserted interests in confidentiality are severely diminished by the fact that they have already voluntarily disclosed to the public information indicating that they will increase compensation for correctional officers. Last year, in March 2018, the defendants *publicly* filed the expert report by Dr. Condrey, which recommends compensation increases for correctional staff similar to those recommended by WA. For example, Dr. Condrey's report proposes that a Correctional Officer Trainee's annual pay be increased from $28,516.80 to $36,489.60. *See* Condrey Report (doc. no. 1725-1) at 9. Like the WA

report, the defendants are also ordered to implement Dr. Condrey's report.

Additionally, an ADOC document publicly available online states that it is requesting from the legislature increased funding for its 2020 Fiscal Year Budget to account for a "20 % pay raise" for correctional staff. Pls Ex. 2735. Along those lines, in January 2019, Commissioner Dunn told legislators at a budget hearing that ADOC was requesting funding for a 20 % increase in pay for security staff, according to a media report on AL.com that linked to the ADOC budget document. *See* Pls. Ex. 2736.

In short, by publicly filing Dr. Condrey's report and announcing the 20 % pay increase in its budget request, ADOC already disclosed that it is planning to increase compensation significantly for correctional officers. This disclosure would already have triggered all three of the harms that the defendants claimed would result from unsealing the WA report. Informed of the planned compensation increases, (1) personnel from

other state agencies would have already sought an equal raise for themselves, (2) competitor employers in the labor market would have tried to undercut ADOC, and (3) ADOC staff would have expectations of raises that, if unfulfilled, could damage morale. In other words, if, as the defendants claimed, the sky was going to fall upon unsealing the WA report, it already should have started falling with the publication of Dr. Condrey's report and ADOC's announcement of the 20 % pay increases.

One additional argument, raised by the defendants at the April hearing, remains. At the hearing, the defendants presented attorneys from the State Personnel Department. The attorneys represented to the court that their department and ADOC had agreed to pursue compensation increases for correctional staff in the next fiscal year that are significantly lower than the WA and Condrey reports' recommendations and the 20 % increase announced in the budget document. Defense counsel did not dispute the existence of this agreement

between ADOC and the State Personnel Department. To the contrary, defense counsel argued that the agreement--and its approval by the legislature--would be endangered by unsealing the report. *See* Apr. 15, 2019 Hrg. Tr. (doc. no. 2498) at 55 ("[T]he real risk here, Your Honor, is you will let this out, and an agreement that exists going forward with [the] [S]tate [P]ersonnel [Department] and others may fall apart, and we may not get the approval of the legislature.").

This argument is not persuasive. The court is troubled by the prospect of selectively concealing judicial documents in the hope of achieving a legislative outcome. Hiding such documents from the public in order to impact legislative deliberations strikes the court as an improper exercise of judicial power.

Furthermore, defense counsel's representations indicating that ADOC is not currently seeking to implement the WA report's recommended compensation increases provides further grounds for unsealing them.

As previously mentioned, the court ordered that, by December 1, 2018, ADOC was required to implement the recommendations, "as modified by any agreements between the parties or orders of this court." *Braggs*, 2018 WL 7106346 at 1. The court has not modified the recommendations and is not aware of any agreements between the parties to do so either. Therefore, as of December 1, 2018, the WA report's recommendations became, in effect, requirements. Defense counsel's representations indicating that they are not implementing those requirements raises an issue of possible noncompliance with court orders. The defendants have very little--if any--legitimate interest in keeping confidential any such noncompliance.

### 3. Weighing the Interests

For the reasons outlined above, the public's enormous interest in accessing the recommended compensation increases outweighs the defendants'

interest in confidentiality--an interest that is
weakened by the public disclosures ADOC has already
made. This is true regardless of whether ADOC
ultimately implements the WA report's recommendations.
The question is not even close.

### B. Second and Third Categories: Compensation Comparisons and Costs of Recommended Increases

Because the defendants devoted very little of their
argument to keeping the second and third categories of
information sealed, the court will briefly dispose of
those issues.

As previously mentioned, the second category of
information includes comparisons of *current* ADOC
correctional officer compensation to compensation for
similar jobs in the private and public sectors. *See*
Redacted WA Report (doc. no. 2150-1) at 80-82. The
public has a strong interest in accessing the
comparisons, as it provides crucial context for the WA
report's recommended compensation increases. Accessing
both pieces of information serves the public's interest

19

in overseeing government spending. By contrast, the defendants have a minimal interest in keeping the comparisons confidential. Much--if not all--of the information is already public; the defendants conceded that "someone could go and research" the information for themselves. Apr. 15, 2019 Hrg. Tr. (doc. no. 2498) at 11-12. Nevertheless, the defendants essentially argued that the comparisons should remain confidential because they consolidate the information in a "neatly packaged and easily digestible" way. *Id.* at 9-10. The court rejects this argument. Whatever interest the defendants have in keeping confidential the packaging of otherwise-accessible information is outweighed by the public's compelling interest in accessing the comparisons. This is especially true given that a key takeaway from the comparisons is already publicly available in another part of the report, which states that ADOC correctional officer pay "is below other law enforcement agencies requiring similar qualifications." Redacted WA Report (doc. no. 2150-1) at 33.

The third and final category of information pertains to the costs of implementing the WA report's recommended compensation increases. *See id.* at 83-84. Obviously, knowing the estimated costs of the recommended increases is critical for evaluating the propriety of the recommendations. The public thus has a significant interest in accessing the estimated costs. The court is not aware of any specific arguments made by the defendants for why the costs of the recommendations should remain sealed. Nor can the court conceive of any convincing arguments, particularly since the court has already decided to unseal the recommended compensation increases. Accordingly, the public's interest in accessing the cost information outweighs the defendants' interest in keeping it confidential.

***

Based on the reasons detailed above, the court granted the plaintiffs' motion to unseal the Warren

21

Averett report in its entirety.  *See* Unsealing Order (doc. no. 2489).

DONE, this the 13th day of May, 2019.

     /s/ Myron H. Thompson     
UNITED STATES DISTRICT JUDGE