IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:14cv601-MHT |
| | ) | (WO) |
| JEFFERSON S. DUNN, in his | ) | |
| official capacity as | ) | |
| Commissioner of | ) | |
| the Alabama Department of | ) | |
| Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

PHASE 2A OPINION AND ORDER ON
A PROCESS TO IDENTIFY FUNCTIONAL SEGREGATION

The plaintiffs have twice asked this court, as part of both the segregation remedial trial and the suicide-prevention remedial trial, to extend relief to units that allegedly function as segregation, even though the defendants do not formally label them as such. While this court explained in its liability opinion that segregation "generally refers to the correctional practice of keeping a prisoner in a cell for 22.5 hours or more a day," *Braggs v. Dunn*, 257 F.

Supp. 3d 1171, 1235 (M.D. Ala. 2017), calculating the amount of out-of-cell time has proven more difficult than the definition might suggest. As a result, during a subsequent on-the-record hearing on December 6, 2019, the court asked both parties how to determine whether a cell or unit is functioning as segregation. *See* Dec. 6, 2019 Status Conference Tr. (doc. no. 2686) at 88:21-25.

The plaintiffs and defendants each argued that the court should adopt their expert's recommendations. *See id*. at 88:21-90:12 (plaintiffs' argument), 92:11-16 (defendants' argument). During the suicide-prevention trial, both plaintiffs' expert Dr. Burns and defendants' expert Dr. Perrien agreed with the court's use of a functional definition of segregation based on the amount of out-of-cell time a person receives. *See* Apr. 9, 2019 Rough Draft (R.D.) Trial Tr. at 165:20-166:7.* As the court pointed out, both experts

---

\* The court has previously cited to rough drafts of transcripts not yet docketed, including this

also jointly recommended that the court extend certain relief to units functioning as segregation, even if not formally labelled as such. In response to questions about where to apply their recommendation for "30-minute custody rounds in segregation," Immediate Relief Recommendations (doc. no. 2416-4) at 4, the plaintiffs' expert explained that such rounds "should happen in any place that's functioning as a segregation unit or a segregation-like unit," Apr. 9, 2019 R.D. Trial Tr. at 193:6-11. The defendants' expert agreed that her "understanding was [that their recommendation

---

particular rough draft of testimony from the suicide-prevention remedial trial. *See, e.g., Braggs v. Dunn*, 383 F. Supp. 3d 1218, 1229 (M.D. Ala. 2019) (citing the same rough draft of the April 9, 2019 testimony). As a general matter, the rough drafts cited in this opinion and order and throughout this litigation accurately reflect the court's independent memory of the testimony. Further, both the plaintiffs and the defendants have also specifically cited to rough drafts of the suicide-prevention trial and do not contest their accuracy. *See, e.g.* Pls.' Br. on Segregation-Like Units (doc. no. 2645) at 3 (citing the same rough draft of the April 9, 2019 testimony); Defs.' Br. Regarding 'Segregation-Like' Issue (doc. no. 2646) at 9 (citing rough drafts of testimony from April 4, 5, 10, and 12, 2019).

applied to] units that are segregation or functioning as segregation." *Id*. at 193:13-14. In Dr. Perrien's view, the two experts made this joint recommendation in order to address the acute risk of suicide in these settings. *See id*. at 193:17-194:1.

Following the suicide-prevention trial, the court ordered the defendants to conduct security checks every 30 minutes in formal segregation, *see Braggs v. Dunn*, 383 F. Supp. 3d 1218, 1273-74 (M.D. Ala. 2019), but reserved the issue of whether to extend such relief to functional segregation, for the simple reason that if the court were to extend relief to certain cells or units functioning as segregation, there would need to be a process for how to identify such cells or units, *see id*. at 1228. To that end, the court notes several significant methodological disagreements that, as a preliminary matter, would need to be resolved to develop such a process. For example, since the court initially suggested that the defendants could use the *average* amount of out-of-cell time per day as a way to

4

identify functional segregation, *see* Order (doc. no. 2282) at 2 n.* (emphasis added), there has been a question whether the average should be calculated over the course of a week, month, quarter, or some other period of time, *see, e.g.* Defs.' Br. on 'Segregation-Like' Issue (doc. no. 2646) at 20. Further, although the defendants initially represented that "[d]etermining the average out-of-cell time would require ADOC to review the duty post logs for each individualized cell for the relevant period of time," Defs.' Mot. for Recons. (doc. no. 2300) at 14, they later challenged the plaintiffs' reliance on duty post logs as evidence of out-of-cell time, pointing to Warden Christopher Gordy's testimony that "there's several logs, other logs, that are attached to the duty post logs that reflects inmates' out-of-cell time," Apr. 5, 2019, R.D. Trial Tr. at 224:16-22. Finally, the parties also disagreed about whether to count time spent in all out-of-cell activities or only particular out-of-cell activities. The experts disagreed too, at

5

least in part. Based on their testimony, the court understands that Dr. Burns would not count activities such as showers, haircuts, pill call, sick call, diabetic finger sticks, the taking of vital signs, or the picking up of meal trays as out-of-cell time. *See* Apr. 8, 2019 R.D. Trial Tr. at 118:2-119:2; *see also* Apr. 10, 2019 R.D. Trial Tr. at 143:12-19. In contrast, the court understands that Dr. Perrien would, at least if it were practical to do so. *See* Apr. 10, 2019 R.D. Trial Tr. at 143:20-25.

Because Dr. Burns and Dr. Perrien suggested that they would count out-of-cell time differently, the plaintiffs proposed that the court give the defendants an opportunity to come up with a complete process to determine when a cell or unit is functioning as segregation; the defendants agreed to that idea and that Dr. Perrien should be allowed to develop the proposal. *See* Dec. 6, 2019 Status Conference Tr. (doc. no. 2686) at 90:17-24 (plaintiffs' proposal), 95:15-17 (defendants' acceptance), 95:22-23 (plaintiffs'

6

acceptance).  As Dr. Perrien herself explained, "there needs to be a way to track who received what ... out-of-cell time."  Apr. 10, 2019 R.D. Trial Tr. at 143:23-24.  With that understanding, and with the parties' agreement, the court will give Dr. Perrien an opportunity to find a way.

To be clear, the court is interested in a methodological proposal for how to determine which cells or units function as segregation, not an evaluation of the specific evidence presented during the suicide-prevention trial.  For example, the proposal could address on which form defendants should record out-of-cell activities, for which types of cells or units, and with what specificity.  In addition, the proposal could distinguish between out-of-cell activities based on the length of the activity (brief versus extended), as was discussed during the latest status conference, *see* Dec. 6, 2019 Status Conference Tr. (doc. no. 2686) at 91:22-92:2, as well as the frequency of the activity (regular versus irregular),

the purpose of the activity (social or not), or some other characteristic of the activity.

More generally, regardless of the specifics, the proposal should address how it balances the importance of identifying cells or units for which relief may be appropriate with the goals of creating a manageable, not overly burdensome, and yet objectively verifiable process.

***

Accordingly, it is ORDERED that the defendants are to file with the court, by noon on Friday, January 24, 2020, a report by Dr. Perrien proposing a process for the defendants to determine when a cell or unit is functioning as segregation, accompanied by any commentary the defendants deem appropriate. The plaintiffs are to respond by noon on Friday, February 7, 2020.

DONE, this the 19th day of December, 2019.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE