# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, *et al.*, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:14-cv-00601-MHT-JTA |
| | ) | Judge Myron H. Thompson |
| JEFFERSON DUNN, in his official | ) | |
| capacity as Commissioner of the | ) | |
| Alabama Department of | ) | |
| Corrections, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## JOINT STATEMENT IN SUPPORT OF PROPOSED MODIFICATION

### INTRODUCTION

Rule 23(e) of the Federal Rules of Civil Procedure provides that: the claims of a certified class may be settled or compromised only with the Court's approval; the Court must direct notice in a reasonable manner to all class members who would be bound by the proposal; class members must be given the opportunity to object to the proposal; and the Court may approve the proposal only after a hearing and on finding that it is fair, reasonable, and adequate. *See* Fed. R. Civ. P. 23(e); *see generally Bennett v. Behring Corp.*, 737 F.2d 982, 985-86 (11th Cir. 1984); *Laube v. Campbell*, 333 F. Supp. 2d 1234, 1238 (M.D. Ala. 2004).

The Plaintiffs and the Alabama Department of Corrections ("ADOC", and collectively, the "Parties") respectfully submit that the proposed modifications to the Phase 1 Americans with Disabilities Act ("ADA") Consent Decree in this case are fair, reasonable, and adequate, and compare favorably with the remedial order the Plaintiffs could reasonably expect to have obtained through adversarial proceedings. The proposed modifications guarantee the Class Members all the relief they sought in this lawsuit concerning physical remediation of facilities by ensuring that ADOC's facilities, as a system, comply with the architectural requirements of the ADA and the Phase 1 ADA Consent Decree.

## PROCEDURAL HISTORY

On June 17, 2014, the individually named Plaintiffs and the Alabama Disabilities Advocacy Program filed this class action lawsuit on their own behalf and on behalf of several subclasses of prisoners who are now, or may be in the future, in the physical custody of ADOC. This lawsuit alleged, among other things, violations of the rights of a subclass of prisoners under the ADA and the ADA Amendments Acts of 2008 (collectively the "ADA"), and Section 504 of the Rehabilitation Act of 1973 (collectively the "Acts"). In particular, this lawsuit claimed that ADOC failed to comply with key provisions of the Acts and improperly discriminated against prisoners with disabilities in violation of the Acts.

On March 15, 2016, the Parties submitted their "Joint Motion for Preliminary

Approval of a Class Action Settlement Concerning Claims Arising Under the Americans with Disabilities Acts and § 504 of the Rehabilitation Act of 1973, and Resolving the Phase I Trial of These Proceedings." Doc. 376-1.   The proposed settlement included the creation of a "plan" which would outline how to provide for care, services, accommodations, programs, and activities for prisoners with disabilities. *Id.*   The Court conducted a hearing on the Joint Motion on March 17, 2016.   On March 18, 2016, the Court ordered the Parties to submit the "Plan" contemplated in the Agreement. Doc. 394.   On May 26, 2016, the Parties filed the "Amended and Restated Settlement Agreement Concerning Claims Arising under the Americans with Disabilities Act and § 504 of the Rehabilitation Act of 1973, and Resolving the Phase 1 Trial of These Proceedings." Doc. 518.   The Parties also filed a "Second Joint Motion for Preliminary Approval of a Class Action Settlement Concerning Claims Arising under the Americans with Disabilities Act and § 504 of the Rehabilitation Act of 1973" on May 31, 2016. Doc. 520.

On June 13, 2016, the Court entered a "Phase I Preliminary Settlement Approval Order," approving the form and content of Notice to the Class and the method of delivery of the Notice. Doc. 532.   Three separate fairness hearings were held to allow the Court to hear video testimony from individuals who had submitted comments concerning the settlement agreement. Doc. 727.   The Court granted final approval of the settlement agreement and entered it as a Consent Decree on

September 9, 2016.  *Dunn v. Dunn*, 318 F.R.D. 652 (M.D. Ala. 2016).

As the Parties worked through the process of evaluating ADOC facilities and allowing an architect to help ADOC develop a plan to address architectural barriers, it became apparent to the Parties that the work to be completed was vast and would require most of ADOC's facilities to be at least partially remediated.  The Parties also discovered numerous areas within ADOC's facilities which were functionally impractical to remediate without enormous cost.  Keeping in mind real-world limitations, along with the possibility that ADOC may build new facilities which would allow ADOC to close existing facilities, the Parties crafted an ADA alteration plan to remediate ADOC's facilities in as expeditious a manner as was realistically possible.

On September 5, 2019, the Parties filed a "Joint Notice Regarding the Agreed Upon Implementation Schedule for the ADA Alterations" (hereinafter "Joint Notice") that outlined the timeline and process necessary to complete remediation of ADOC facilities as required under the Consent Decree. Doc. 2605.  Following the Joint Notice, the Court issued the Phase 1 Alterations Order (Doc. 2617) with questions for the Parties. The Parties responded to those questions in their "Joint Statement Regarding Phase 1 ADA Alterations" (hereinafter "Joint Statement"). Doc. 2617.  The Court held an on-the-record hearing on October 21, 2019 to discuss the Court's concerns.  Following the on-the-record hearing, the Court took the Joint

4

Notice and Joint Statement as an oral motion to modify the Phase 1 Consent Decree. Doc. 2637.  Following submission of the Joint Statement, the Parties submitted the ADA Consultant's Report under seal to the Court so the Court could see the substantial work involved and be able to understand the timeline needed to complete remediation in light of understaffing and overcrowding concerns. Doc. 2635-1.

The Court preliminarily granted the proposed modification on December 2, 2019, based on review of the Joint Notice, Joint Statement, and on-the-record hearings conducted September 6, 2019 and October 21, 2019. Doc. 2671.  The Court then ordered the Parties to submit a comprehensive document outlining the proposed modifications. Doc. 2674.  The Parties submitted this summary to the Court on December 5, 2019. Doc. 2678.   The Court held an on-the-record hearing on December 6, 2019 and ordered a process for the Parties to submit to the Court a draft of the notice, an explanation of the proposed notice process, a comment form and a proposed length for comment period, and a proposed date for the Fairness Hearing. Doc. 2685.  Final versions of the documents and the notice process were approved on January 22, 2020. Doc. 2740.  Due to the partial closure of Holman Correctional Facility, the Parties jointly requested further modifications for the summary of proposed modification, the notice, and the comment form. Doc. 2751.  The Court approved the use of the modified forms and changed the dates proposed for the comment period following this request but maintained all other dates previously

ordered. Doc. 2753.  The most recent summary of proposed modifications are set out in Doc. 2752, while the notice and comment forms to be used are available as Doc. 2753-1 and Doc. 2753-2, respectively.

## I.    NOTICE TO THE CLASS WAS ADEQUATE AND REASONABLE.

Rule 23(e) requires that notice to the class be provided "in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e). "[T]he court must ensure that all class members are informed of the agreements and have the opportunity to voice their objections." *Austin v. Hopper*, 28 F. Supp. 2d 1231, 1236 (M.D. Ala. 1998) (Thompson, J.).

Here, notice of the proposed modifications was accomplished in a manner that ensured every Class Member was fully informed about the terms of the proposed modifications, and had ample opportunity to voice their objections. The Court's Order  provided that copies of the proposed modification summary be available in the law library and notice posted throughout the facilities. Doc. 2740; Doc. 2753. Additionally, the Parties agreed ADOC would hand-deliver the notices to every prisoner in restrictive housing, infirmaries, crisis cells, and death row units who reported vision or mobility impairments per the Office of Health Services's Special Needs Report. Doc. 2740.  Prisoners who had difficulties accessing the proposed modifications could request the document from ADOC Staff. *Id.*  Following posting of the notice, any prisoner who wished to object or comment on the proposed

modifications was given thirty days to submit a comment to be considered by the Court. Doc. 2753.

Notice to the class in this case was plainly reasonable and adequate. *See Laube*, 333 F. Supp. 2d at 1241 (holding that posting notice in public areas and providing settlement information to prisoners on death row or in segregation together with class counsel's meetings with class members constituted adequate notice). Notice was posted throughout major facilities and work releases in public areas. Notice was also hand-delivered to prisoners in movement-restricted housing who the Parties believed would have the most stake in the proposed modifications due to mobility or vision impairments. Further information on the proposed modifications was available for review in law libraries, or similar locations, to prisoners with freedom of movement. To those prisoners unable to access the law library, modifications could be requested from ADOC staff.

## II. THE PROPOSED MODIFICATIONS SET SPECIFIC AND REALISTIC TIMELINES FOR COMPLETION OF ARCHITECTRUAL REMEDIATION AS REQUIRED BY THE CONSENT DECREE.

The proposed modifications to the original Phase 1 ADA Consent Decree operationalizes the requirement that ADOC bring its facilities, taken as a system, into compliance with the ADA. While the requirement of architectural remediation has been a requirement of the ADA for decades, at present, ADOC does not have a single facility that meets these requirements. The original Consent Decree set out a

7

timeframe for remediation that was not realistic in light of the scope of work and limitations of constructing in aging facilities.  The proposed modifications along with the ADA Consultant's Report identify the areas and items which must be remediated to bring ADOC's facilities into compliance with the ADA.  The proposed modifications also take into account the possibility that ADOC may obtain funding for new facilities while attempting to be judicious with the spending of taxpayer money for architectural remediation.

## III.    THE AGREEMENT IS FAIR, ADEQUATE, AND REASONABLE.

Federal Rule of Civil Procedure 23(e) states that a class action shall not be dismissed or compromised without the approval of the court, and "[if] the proposal would bind class members, the court may approve it only after a hearing and on finding that it is fair, reasonable and adequate."  Fed. R. Civ. P. 23(e).  The purpose of this rule is to protect class members from an unjust or unfair settlement.  *Amchem Product, Inc. v. Windsor*, 521 U.S. 591, 594 (1997) ("the Rule 23(e) inquiry protects unnamed class members from unjust or unfair settlements agreed to by faint-hearted or self-interested class representatives").  A proposed settlement is usually entitled to an initial presumption of fairness if the settlement is recommended by class counsel after arm's length bargaining.  Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*, § 11.42 (4th ed. 2002).

This Court previously discussed the factors to be considered in deciding

whether to approve proposed class action settlements:

> Judicial policy favors voluntary settlement of class-action cases. *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977). However, "the settlement process is more susceptible than the adversarial process to certain types of abuse and, as a result, a court has a heavy, independent duty to ensure that the settlement is 'fair, adequate, and reasonable.'" *Paradise v. Wells*, 686 F. Supp. 1442, 1444 (M.D. Ala. 1988) (Thompson, J.); accord Fed. R. Civ. P. 23(e)(1)(C) ("The court may approve a settlement, voluntary dismissal, or compromise that would bind class members only after a hearing and on finding that the settlement is fair, reasonable, and adequate."). Court review is "essential to assure adequate representation of class members who have not participated in shaping the settlement." Fed. R. Civ. P. 23(e) advisory committee's note. In addition to analyzing the fairness of the proposed settlement, the court must assure that it is not illegal or against public policy. *Piambino v. Bailey*, 757 F.2d 1112, 1119 (11th Cir. 1985); *Paradise*, 686 F. Supp. at 1448. The court must also determine whether notice to the class was adequate, Fed. R. Civ. P. 23(e), and must examine the class members' comments and objections, *Paradise*, 686 F. Supp. at 1444, and the judgment of counsel, id. at 1446.

*Gaddis v. Campbell*, 301 F. Supp. 2d 1310, 1313 (M.D. Ala. 2004).

As this Court previously explained, "[t]o determine whether a proposed settlement is fair, adequate, and reasonable, the 'first place a court should look is to the views of the class itself.'" *Laube*, 333 F. Supp. 2d at 1241 (quoting *Paradise*, 686 F. Supp. at 1444). Even when only a fraction of the members of a class object to a proposed settlement, however, a Court should not necessarily

> assume that silence from the remaining class members indicates support for the settlement agreements. Particularly in prison litigation, where members of the class may have lower literacy levels or may not feel entirely free to submit objections, "the court must look beyond the numbers to the total reality of the circumstances presented and from those circumstances attempt to extrapolate some picture of the true

9

support for the [settlement]."

*Id.* (quoting *Reynolds v. King*, 790 F. Supp. 1101, 1109 (M.D. Ala. 1990) (Thompson, J.)).

The Parties further submit that the proposed modification to the Phase 1 ADA Consent Decree is fair considered in the light of potential remedies after trial on the merits or a contempt proceeding.  Inherent in any hearing is the possibility that the Court may not rule fully, or even partially, on behalf of plaintiffs.  After trial, even if the Court were to agree with Plaintiffs on all the subject matter issues in Plaintiffs' complaint, such a resolution necessarily carries the risk that Defendants may seek appellate review.  Moreover, had Plaintiffs pursued enforcement of the Phase 1 ADA Consent Decree rather than voluntarily agreeing to the modification now before the Court, Defendants similarly could have availed themselves of appellate review had the Court ruled in Plaintiffs' favor.

Settlement is "generally favored as a means of resolving class-action lawsuits."  *See, e.g.*, *Williams v. Nat. Sec. Inc. Co.*, 237 F.R.D. 685, 694 (M.D. Ala. 2006) (Thompson, J.).  The Court, in determining whether to accept the proposed class action settlement, must consider "(1) the complexity, expense and likely duration of the litigation; (2) the probability of the plaintiff's success on the merits; (3) the range of possible recovery; (5) the existence of fraud or collusion behind the settlement; and (6) the opinions of class counsel, class representatives, and the

substance and amount of opposition to the settlement." *Id.* at 695.

Considering each of these factors, the Parties submit that the proposed modifications to the Phase 1 ADA Consent Decree is preferable to protracted litigation. If this matter were to proceed to trial rather than be settled, it is unclear when, if at all, relief regarding architectural modification would become available to prisoners in ADOC custody. This could be further delayed as any decision would likely be appealable to the Eleventh Circuit, either as to liability or remedy. Finally, the trial in itself would be complex, expensive, and divert resources from the Parties and the Court that could benefit furthering progress in other areas of *Braggs v. Dunn* litigation.

The Parties have diligently worked on crafting a Transition Plan for more than two years. This work was led by an outside consulting architect. The consulting architect has many decades of experience in creating a workable remediation plan and has produced transition plans for implementation within a correctional setting. The proposed modification to the Consent Decree was reached only after months of negotiations, and with the extensive assistance of United States Chief Magistrate Judge John E. Ott.

Finally, the Parties submit that there is no hint of collusion in the Parties' agreement to the modification. The sheer magnitude of the work completed by the Parties, the fact that the process was led by an independent expert architect, the

vigorous nature of the negotiations over the terms of the modification, the expense incurred, and the experience and reputation of Counsel on both sides all belie any reasonable concern of collusion between counsel.  Class Counsel believe that the modification to the Phase 1 ADA Consent Decree is fair, adequate, and reasonable in light of the totality of the circumstances.  Finally, the Parties believe that comments received raise no material issues suggesting that the proposed modifications are not fair, adequate, or reasonable.

## IV.   RESPONSE TO PRISONER COMMENTS

Approximately sixty comments from prisoners were received regarding the proposed modification of the Consent Decree.  A spreadsheet summarizing the content of the comments are attached as Exhibit A.   The Parties submit that the lack of comments suggests that the modification is not viewed by the class as problematic.[1] In general, the comments that were pertinent to the question posed fit into two categories: 1) The modifications are going to take too long,  and 2) ADOC cannot be trusted to accomplish the requirements of the Consent Decree.  With regard to the first category, the facility remediations included in the ADA Consultant's Report are substantial and will take several years. *See* Doc. 2635-1. The Parties have negotiated and proposed a timeline that is realistic and as expeditious as possible in light of substantial amount of remediations required.  As

---

[1] The Phase 1 ADA Consent Decree drew more than 550 comments from prisoners.

to the second category of relevant comments, the Parties negotiated the Phase 1 ADA Consent Decree and the proposed modification in good faith.  Moreover, the Consent Decree and proposed modification provide for monitoring for a period of one year beyond the completion of all required remediation to ensure compliance with the Consent Decree.

In addition, many of the comment forms were blank or concerned issues that are not germane to the Court's consideration in granting or denying the modification. For instance, there are several comments concerning access to adequate medical or mental health care, issues concerning criminal convictions, and parole.  While these comments may or may not be significant, they are not pertinent to the current question before the Court of whether the proposed modifications are fair, adequate, and reasonable to the Class.

The Parties agree that one problem arose with the comments that were discovered by Counsel when the comment boxes were opened on March 27, 2020. First, Bibb Correctional Facility inadvertently sent the "ADA" box for collecting ADA requests for accommoodations instead of the "ADA Comment Box."  The Parties were able to video conference with the warden at Bibb to watch the correct box being opened.  The box contained no comments.  In addition to the issue at Bibb, Plaintiffs expressed concern to Defendants over the comments received from Donaldson Correctional Facility (hereinafter "Donaldson"). Plaintiffs believe there

was an issue  regarding the provision of the comment form in its entirety.  The original comments did not contain the front page, which includes the name of the person submitting the comment, a short synopsis of the purposes of the form, contact information for Counsel, and instructions for submission.  The comments from Donaldson are located at Doc. 2787-8 and 2787-9.  As the front page was missing, five (5) comments from Donaldson do not bear the name of the prisoner or any way to identify who provided the comment.  Four (4) of five (5) such comments indicate that the prisoner wished to be considered for testimony, while the fifth bears no notation concerning whether or not the individual wished to testify.

A close review of the actual comments from Donaldson led Plaintiffs to believe that  that prisoners may not have been aware of the terms of the proposed modifications or the purposes of the comment forms.  None of the comments refer to the proposed changes to the Consent Decree.  After raising the issue with Defendants, the Parties understood the process used at Donaldson and agreed that the warden at Donaldson would sign an affidavit specifically identifying what forms were provided to the prisoners housed in those units.  Warden Givens's affidavit is attached as Exhibit B.

## V. THE PARTIES AGREE THAT THE PROPOSED MODIFICATIONS SATISFY THE PRISON LITIGATION REFORM ACT.

"Because this case involves a challenge to prison conditions, the court must also determine whether the [proposed modifications to the Phase 1 ADA Consent

Decree] is subject to the requirements of the Prison Litigation Reform Act (PLRA), 18 U.S.C.A. § 3626, and, if so, whether those requirements have been met." *Laube*, 333 F. Supp. 2d at 1238.  The PLRA provides that a "court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A). The Court must also "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id.*

Here, the Parties agreed that the Phase 1 ADA Consent Decree satisfies the PLRA's need-narrowness-intrusiveness requirement.  *Dunn*, 318 F.R.D. at 682 (noting the Parties' agreement and that, "[b]ased on the court's independent review of the settlement agreement, the court agrees").  The Parties also agree that the proposed modifications to the timelines in the original consent decree satisfy the PLRA's need-narrowness-intrusiveness requirement.  The Parties stipulate to the PLRA need-narrowness-intrusiveness findings.  *See Cason v. Seckinger*, 231 F.3d 777, 785 n.8 (11th Cir. 2000) ("Of course, we do not mean to suggest that the district court must conduct an evidentiary hearing about or enter particularized findings concerning any facts or factors about which there is not dispute. The parties are free to make any concessions or enter into any stipulations they deem appropriate.").  The

Parties also submit that the terms of the Phase 1 ADA Consent Decree"will not have an adverse impact on public safety or the operation of the criminal justice system." 18 U.S.C. § 3626(a)(1)(A).  The Court's own familiarity with the facts of this case, a review of the comments provided by Class Members, and a full Fairness Hearing will allow the Court to independently confirm that the Phase 1 ADA Consent Decree the Parties offer for the Court's approval are "narrowly drawn, extends no further than necessary to correct the violation" of the Plaintiffs' and Class Members' rights under the ADA, and is "the least intrusive means necessary" to correct the violation of such rights.

## CONCLUSION

The proposed modifications to the Phase 1 ADA Consent Decree satisfy the goals of this litigation and compare favorably with any contested remedial order that the Court might have entered to address claims asserted by Plaintiffs.  Moreover, it accomplishes the goals of the Plaintiff Class without the substantial risks of further litigation and possible appeal by the ADOC after a contested trial and/or final remedial order.  The proposed modifications proposed by the Parties are a fair, adequate, and reasonable compromise weighing the requirements of the ADA and the difficulties surrounding construction in correctional settings. The Parties believe the proposed modifications to the Phase 1 ADA Consent Decree should be approved by the Court.  In light of the comments of the Class, the Parties do not find that oral

comments by the Class are necessary.

Dated:  March 30, 2020

   /s/ Ashley N. Austin
Ashley N. Austin
*One of the Attorneys for Plaintiffs*

William Van Der Pol, Jr.
Glenn N. Baxter
Lonnie Williams
Barbara A. Lawrence
Andrea J. Mixson
Ashley N. Austin
**ALABAMA DISABILITIES**
**ADVOCACY PROGRAM**
Box 870395
Tuscaloosa, AL 35487
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
wvanderpoljur@adap.ua.edu
gnbaxter@adap.ua.edu
lwilliams@adap.ua.edu
blawrence@adap.ua.edu
amixson@adap.ua.edu
aaustin@adap.ua.edu

Ebony Howard
Caitlin J. Sandley
Lynnette K. Miner
Jaqueline Aranda Osorno
Jonathan Barry Blocker
Brock Boone
**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
ebony.howard@splcenter.org

cj.sandley@splcenter.org
lynnette.miner@splcenter.org
jackie.aranda@splcenter.org
jonathan.blocker@splcenter.org
brock.boone@splcenter.org

Lisa W. Borden
William G. Somerville, III
Patricia Clotfelter
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ PC**
420 20th Street North, Suite 1400
Birmingham, AL 35203
Telephone: (205) 328-0480
Facsimile: (205) 322-8007
lborden@bakerdonelson.com
wsomerville@bakerdonelson.com
pclotfelter@bakerdonelson.com

   /s/ Anil A. Mujumdar
Anil A. Mujumdar
*One of the Attorneys for Alabama
Disabilities Advocacy Program*

Gregory M. Zarzaur
Anil A. Mujumdar
Denise Wiginton
**ZARZAUR**
2332 2nd Avenue North
Birmingham, AL 35203
Telephone: (205) 983-7985
Facsimile: (888) 505-0523
gregory@zarzaur.com
anil@zarzaur.com
denise@zarzaur.com

   /s/ Matthew B. Reeves
Matthew B. Reeves
*One of the Attorneys for the Commissioner*

18

*and Associate Commissioner*

William R. Lunsford
Matthew B. Reeves
Melissa K. Marler
Stephen C. Rogers
Dustin D. Key
**MAYNARD, COOPER & GALE, PC**
655 Gallatin Street
Huntsville, AL 35801
Telephone: (256) 512-5710
Facsimile: (256) 512-0119
blunsford@maynardcooper.com
mreeves@maynardcooper.com
mmarler@maynardcooper.com
srogers@maynardcooper.com
dkey@maynardcooper.com

Luthor M. Dorr, Jr.
**MAYNARD, COOPER & GALE, PC**
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203
Telephone: (205) 254-1178
Facsimile: (205) 714-6438
rdorr@maynardcooper.com

John G. Smith
David R. Boyd
**BALCH & BINGHAM LLP**
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (866) 316-9461
jgsmith@balch.com
dboyd@balch.com

Steven C. Corhern
**BALCH & BINGHAM LLP**
Post Office Box 306

Birmingham, AL 35201-0306
Telephone: (205) 251-8100
Facsimile: (205) 488-5708
scorhern@balch.com

Gary L. Willford, Jr.
Joseph G. Stewart
Stephanie L. Smithee
**ALABAMA DEPARTMENT OF CORRECTIONS**
Legal Division
301 South Ripley Street
Montgomery, Alabama 36130
Telephone (334) 353-3884
Facsimile (334) 353-3891
gary.willford@doc.alabama.gov
joseph.stewart@doc.alabama.gov
stephanie.smithee@doc.alabama.gov