IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
EDWARD BRAGGS, et al.,        )
                              )
     Plaintiffs,              )
                              )    CIVIL ACTION NO.
     v.                       )    2:14cv601-MHT
                              )        (WO)
JEFFERSON S. DUNN, in his     )
official capacity as          )
Commissioner of               )
the Alabama Department of     )
Corrections, et al.,          )
                              )
     Defendants.              )
```

PHASE 1 OPINION APPROVING
PROPOSED MODIFICATIONS TO 2016 CONSENT DECREE

The individual plaintiffs in Phase 1 of this
lawsuit are prisoners with disabilities in the custody
of the defendants, the Alabama Department of
Corrections (ADOC) and Commissioner Jefferson Dunn.
The Alabama Disabilities Advocacy Program (ADAP),
Alabama's protection and advocacy organization for
people with disabilities, is also a plaintiff. The
plaintiffs initially claimed that ADOC had violated
both Title II of the Americans with Disabilities Act

(ADA), codified at 42 U.S.C. § 12131 *et seq.*, and § 504 of the Rehabilitation Act of 1973, codified at 29 U.S.C. § 794 (together, the Acts).  In 2016, the court approved a consent decree after the parties came to a voluntary agreement settling these claims and the putative class members were provided an opportunity for notice, comment, and hearing.  *See generally Dunn v. Dunn*, 318 F.R.D. 652 (M.D. Ala. 2016) (Thompson, J.). In 2019, the parties jointly orally moved to modify the 2016 consent decree.  The case is now before the court for final approval of the proposed modifications to the consent decree.  For the reasons that follow, the parties' joint oral motion will be granted.

## I.    PROPOSED MODIFICATIONS

As part of the 2016 consent decree, the defendants agreed, in relevant part, to (1) initially complete "[a]n architectural survey of its major prison and work release facilities"; (2) subsequently "complete a Transition Plan "designat[ing] whether architectural barriers are to be removed, or remediated, or new

2

facilities built, or if policy changes will be implemented to overcome any architectural barrier in each instance for each Facility"; and (3) finally "complete[] all architectural barrier removal or remediation or construct sufficient new facilities to accommodate Inmates with Disabilities."  Consent Decree (doc. no. 728) at 12-13 ¶¶ C.1, D, G.   The architectural survey was supposed to have been completed "[w]ithin twelve (12) months" after the court approved the consent decree.  *Id*. at 12 ¶ C.  The Transition Plan was supposed to have been completed "[w]ithin fifteen (15) months."  *Id*. at 13 ¶ D. The removal, remediation, or construction of new facilities, which the court will refer to collectively as "remediation," were supposed to have been completed "[w]ithin thirty-two (32) months."  *Id*. at 13 ¶ G. Because the court approved the consent decree in September 2016, ADOC was supposed to have completed all remediation by May 2019.  However, because of delays with the survey and Transition Plan, ADOC did not

3

actually begin any remediation until October 2019.  *See*
Notice (doc. no. 2753-1) at 2 (explaining this).  As a
result, the remediation has not yet been completed.

The parties' primary proposed modification of the
2016 consent decree is to extend ADOC's deadline for
remediation for approximately eight years, until
November 1, 2027.  *See* Updated Joint Summary of ADA
Modifications (doc. no. 2752) at 4-5 § B.  The
remediation would occur in three phases, with the first
phase's remediation of an initial group of facilities
to be completed by 2023, and the second and third
phases' remediation of facilities to be completed by
November 2027.  Other proposed modifications include
the related extension of monitoring by ADAP from 2022
until one year after the remediation is completed, and
associated monitoring fees.  All proposed modifications
are detailed in the parties' Updated Joint Summary of
Modifications (doc. no. 2752) and summarized in the
parties' notice (doc. no. 2753-1).

**4**

Previously, this court preliminarily granted the parties' joint motion to modify the 2016 consent decree based on the entire record before the court, including the parties' joint notice seeking modification of the consent decree (doc. no. 2605), the parties' joint statement clarifying the requested modifications (doc. no. 2629), and the parties' joint brief on the substantive standard for modification (doc. no. 2641), as well as on-the-record hearings on September 6 and October 21, 2019. *See* Order (doc. no. 2671). The court granted *preliminary* approval of the proposed modifications, rather than final approval, in part in order to provide an opportunity for class notice and comment given the significance of the proposed modifications. That process is now complete, with approximately 60 comments received.

## II.    STANDARDS FOR MODIFICATION

The ordinary substantive standard for modification of a consent decree is set forth in *Rufo v. Inmates of Suffolk Cty. Jail*, 502 U.S. 367 (1992). Because this

5

is a prison conditions case, a more general standard for ordering relief also applies, as set forth in the Prison Litigation Reform Act (PLRA), 18 U.S.C. § 3626(a)(1)(A), and as interpreted by Eleventh Circuit Court of Appeals in such cases as *Cason v. Seckinger*, 231 F.3d 777 (11th Cir. 2000). Further, because of the significance of the proposed modifications to the 2016 consent decree, the court has decided to apply the related substantive standard for approval of a consent decree in the first instance, as set forth in Federal Rule of Civil Procedure 23 and as interpreted by this court in *Laube v. Campbell*, 333 F. Supp. 2d 1234 (M.D. Ala. 2004) (Thompson, J.). Finally, for the same reason, notice has been provided to the class to ensure due process.

In the section that follows, the court will first describe (1) the procedural standard for notice; then (2) the substantive standards for modification in this instance; and finally (3) the limitations on relief in a prison conditions case.

6

*Notice*: Because of the significance of the proposed modifications, "[t]he court must ensure that all class members are informed of the [proposed modifications] and have the opportunity to voice their objections." *Laube*, 333 F. Supp. 2d at 1240 (*citing* Fed. R. Civ. P. 23(e)); *see also Dunn v. Dunn*, 318 F.R.D. 652, 668 (M.D. Ala. 2016) (Thompson, J.) (applying this standard).

*Modification*: Second, based on the United States Supreme Court's decision in *Rufo*, the court "must establish that a significant change in facts or law warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance." *Id*. at 393.

The court may determine that there has been a significant change in facts in at least three circumstances: (1) "when changed factual conditions make compliance with the decree substantially more onerous;" (2) "when a decree proves to be unworkable because of unforeseen obstacles;" or (3) "when

enforcement of the decree without modification would be detrimental to the public interest." *Id.* at 384.

Further, when evaluating whether the proposed modification is suitably tailored to the changed circumstance, the court should consider at least the following matters: (1) "a modification must not create or perpetuate a constitutional violation;" (2) "modification should not strive to rewrite a consent decree so that it conforms to the constitutional floor;" and (3) "[f]inancial constraints ... are appropriately considered in tailoring a consent decree modification." *Id.* at 391-393.

In this specific instance, the court also has "a heavy, independent duty to ensure that the [modifications] are 'fair, adequate, and reasonable.'" *Laube*, 333 F. Supp. 2d at 1238 (*quoting* Fed. R. Civ. P. 23(e)(2), additional citation omitted). This additional Rule 23 standard is appropriate because the proposed modifications are so significant as to amount to a new consent decree. The additional standard also

**8**

fits comfortably within the *Rufo* framework because a proposed modification of a consent decree cannot be "suitably tailored" if it takes what once was a "fair, adequate, and reasonable" consent decree and makes it either unfair, inadequate, or unreasonable, regardless of the changed circumstance.

*Prison Litigation Reform Act*: Third, in any "civil action with respect to prison conditions," the PLRA provides that a "court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of a Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). In conducting this "need-narrowness-intrusiveness" inquiry, the court is required to "give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief." *Id*. However, "[t]he parties are free to make any concessions or

enter into any stipulations they deem appropriate," and the court does not need to "conduct an evidentiary hearing about or enter particularized findings concerning any facts or factors about which there is not dispute." *Cason*, 231 F.3d at 785 n.8.

### III.   DISCUSSION

In light of these various legal standards, the court will first assess the adequacy of the notice provided and then assess the propriety of the proposed modifications in light of both the parties' reasons for the modifications and any class members' objections to the modifications.  As discussed later in the opinion, the court does not make any particularized findings with regard to the proposed modifications' compliance with the PLRA in light of the parties' stipulation to the same effect.

For the reasons that follow, the court finds that "all class members [were] informed of the [proposed modifications] and ha[d] the opportunity to voice their objections." *Laube*, 333 F. Supp. 2d at 1240 (*citing*

10

Fed. R. Civ. P. 23(e)).   The court also finds that there was both "a significant change in facts [that] warrants revision of the decree and that the proposed modification is suitably tailored to the changed circumstance."   *Rufo*, 502 U.S. at 393.   For the same reasons, the court finds, pursuant to Rule 23(e)(2), that the proposed modifications "are 'fair, adequate, and reasonable.'" *Laube*, 333 F. Supp. at 1238 (*quoting* Fed. R. Civ. P. 23(e)(2), additional citation omitted).

### a.   Notice

The court "grant[ed] preliminary approval of the proposed modification[s] to provide an opportunity for class comment."   Order (doc. no. 2671) at 3.   The court then ordered essentially the same procedures for notice to and comments from the class as it previously ordered when preliminarily approving the 2016 consent decree. *Compare* Phase 1 Order for Notice, Comment, and Hearing Regarding Proposed Modifications to ADA Settlement (doc. no. 2740) *and* Phase 1 Order Updating Notice, Comment, and Hearing Process for ADA Modifications

(doc. no. 2753), *with* Phase 1 Preliminary Settlement Approval Order (doc. no. 532). As a result, the court has little trouble finding that the notice process is similarly satisfactory.

Substantively, as before, the three-page notice form included an explanation of why the settlement was being modified and a concise summary of the proposed modifications. *See* Notice (doc. no. 2753-1). Additionally, the notice included directions for obtaining a copy of the original settlement agreement and a copy of the proposed modifications; contact information for class counsel along with an invitation for prisoners to inquire about the proposed modifications; an announcement of the fairness hearing; and instructions for prisoners to exercise their right to comment about or object to the proposed modifications. *See id*.

Similarly, as before, the notice form was posted in each dormitory and library within the prison system, and copies of the comment form were made available in

the libraries and shift commanders' offices. *See* Phase 1 Order for Notice, Comment, and Hearing Regarding Proposed Modifications to ADA Settlement (doc. no. 2740) at 5 ¶ 5. Copies of both the 2016 consent decree and the proposed modifications to it were made available for viewing in the law library or another location within each facility and were provided upon request to any prisoners lacking access to that location. *See id.* at 4-5 ¶¶ 3-4. For prisoners who were not housed in dormitories, the notice form was generally posted next to the shower area. *See id.* at 5-6 ¶ 6*; see also* Givens Affidavit (doc. no. 2791-2) (explaining that a notice was "provided [to] each inmate" in segregation at Donaldson Correctional Facility, either instead of or in addition to being posted next to the shower area). Further, specifically for inmates with a mobility or vision impairment, the notice was hand-delivered. *See id.* at 5-6 ¶ 6. Finally, ADOC informed all prisoners of the notice and opportunity to object or comment by means of a

statement placed within the newsletter at each facility. *See id*. at 6-7 ¶ 7.

The notice and comment forms and copies of the proposed modifications were again made available in Spanish, Braille, and large print. *See id*. at 3-4 ¶ 2. Upon request, prisoners were to receive assistance in reading the documents and in writing comments. *See id*.

Secured and clearly labeled comment boxes were again placed in each facility for prisoners to submit forms, and defendants' staff were designated to collect comment forms from prisoners lacking the freedom to move about their facilities. *See id*. at 7-8 ¶¶ 8-9. Prisoners were also given the option to submit comments by mail directly to the clerk of court. *See* Notice (doc. no. 2753-1); Comment Form (doc. no. 2753-2).

Prisoners were given about a month after notice of the proposed modifications were posted to submit comments. *See* Phase 1 Order Updating Notice, Comment, and Hearing Process for ADA Modifications (doc. no. 2753) at 2 ¶¶ 1-2. After the comment boxes and forms

were transmitted to ADOC's general counsel, counsel for ADOC arranged with class counsel a time to meet in order to open the boxes and scan the comments. *See* Phase 1 Order Updating Process for Docketing of ADA Modification Comments (doc. no. 2773).

Two matters concerning the notice process warrant additional discussion. First, the parties mistakenly transmitted the wrong comment box from Bibb Correctional Facility to ADOC's general counsel. However, the parties were able to confirm via video conference among themselves that the correct comment box at Bibb did not contain any comments. *See* Joint Statement (doc. no. 2791) at 13. Second, five of the comments received from Donaldson Correctional Facility were missing the first page of the comment form, which included the name of the person who submitted the comment, a short summary of the purpose of the comment form, contact information for counsel, and instructions for submission. The first page of the comment form was never provided to at least some prisoners at Donaldson.

15

*See id.* at 13-14; *see also* Givens Affidavit (doc. no. 2791-2) at 2 (confirming that inmates in segregation at Donaldson received "at least the second page of the comment form"). While unfortunate, the first page of the comment form first was simply a summary of the notice form, which was made available to use the comment form. *See* Joint Statement (doc. no. 2791) at 13-14; *see also* Givens Affidavit (doc. no. 2791-2) at 2 (explaining that a notice form was provided to each inmate in segregation at Donaldson).

b. Modification of Consent Decree

The court preliminarily granted approval of the proposed modifications in light of the parties' joint statement clarifying the modifications, which included the disclosure of the latest Transition Plan, and the parties' joint brief identifying why the proposed modifications meet the *Rufo* standard. The court's preliminary order made clear that final approval would be subject to "review by the court of any objections to

16

or comments about its terms submitted by class members." Order (doc. no. 2671) at 2.

About 60 prisoners submitted comments to the court. *See* Comments Mailed (First Collection) (doc. no. 2769); Comments Mailed (Second Collection) (doc. no. 2774); Comments From Facilities (doc. no. 2787); Comments Mailed (Third Collection) (doc. no. 2794); *see also* Exhibit A to Joint Statement (doc. no. 2791-1) (summary of comments). Although many of the comments were not related to the proposed modifications, two groups of comments were relevant.

One group of comments focused on the ability of ADOC to comply with the consent decree or federal law. These comments, to the extent they suggest that the current delay in remediation is not justified, go to whether there are sufficient changed circumstances to support the proposed modifications. Another group of comments focused on the proposed extension of the deadline for remediation. Some of these comments suggested different deadlines, such as November 1,

17

2024, or November 1, 2025, instead of November 1, 2027; to that extent, they go to whether the specific extension is suitably tailored to the changed circumstances. Alternatively, both set of comments can be understood as questioning the fairness, adequacy, or reasonableness of the delay and resulting proposed modifications.

After the court received comments from the class, the parties jointly responded. *See* Joint Statement in Support of Proposed Modification (doc. no. 2791) at 12-14. The parties also made clear that the proposed modifications not only satisfy the *Rufo* standard but also Rule 23 and are "fair, adequate, and reasonable." *Id*. at 16. While the court has carefully considered the objections, the court agrees that none call into serious question the propriety of the proposed modifications.

The court also agrees with the parties that there has been a significant change of circumstance to justify the delay. Specifically, the 2016 consent

decree has "prove[n] to be unworkable because of unforeseen obstacles." *Rufo*, 502 U.S. at 393.

In general, the consent decree anticipated that up to only half of ADOC facilities would need to be remediated to achieve system-wide compliance with the ADA. *See, e.g.*, Joint Brief (doc. no. 2641) at 6; *see also* Consent Decree (doc. no. 728) at 18 ¶ 3 (requiring only that "ADOC must survey at least fifty percent ... of its facilities"). Only after the architectural survey was completed did it become clear that almost every facility would need to be at least partially remediated in order to achieve system-wide compliance. *See, e.g.*, Joint Brief (doc. no. 2641) at 7-8. As the parties explain, this was for a few reasons. First, the survey revealed that "large areas within ADOC's current facilities cannot be reasonably modified" absent "exorbitant expense." *Id.* at 6 n.4. *Rufo* explicitly makes clear that that "[f]inancial constraints ... are appropriately considered in tailoring a ... modification." 502 U.S. at 392-393.

Second, many educational, rehabilitative, and vocational programs are unique to a single facility. *See* Joint Brief (doc. no. 2641) at 6-7 n.5. As a result, these facilities require modification in order to make the programs available to all prisoners without regard to disability status. *See id*. Third, many specialized housing units are also located only at a subset of facilities or a single facility, and thus require modification for the same reason. *See id*. at 7 n.6.

The court also agrees that the proposed modifications are suitably tailored to the unforeseen circumstances. The proposed modifications primarily involve changes in the timeline for remediation to accommodate the unforeseen magnitude of necessary remediation. The new proposed deadlines are suitably tailored to the changed circumstance in light of the latest Transition Plan, which catalogs the significant ADA compliance issues across ADOC's facilities. *See* ADA Consultant's Report (doc. no. 2635) (sealed); *see*

*also* Joint Statement (doc. no. 2629) at 4 n.3 (explaining that "[t]he ADA Consultant's Report is a Transition Plan"). Further, the modifications do not defeat the purpose of the consent decree because the modifications do not substantively alter the ADOC's obligations.

For the same reasons, the court also agrees with the parties that the proposed modifications are fair, adequate, and reasonable.

c.  Prison Litigation Reform Act

The parties cite to authority that the court does not need to "conduct an evidentiary hearing about or enter particularized findings concerning any facts or factors about which there is not dispute." *Cason v. Seckinger*, 231 F.3d 777, 785 n.8 (11th Cir. 2000); *see also* Joint Statement in Support of Proposed Modifications (doc. no. 2791) at 15 (citing this). That is because the parties here "agree that the proposed modifications ... satisfy the PLRA's need-narrowness-intrusiveness requirements." Joint

Statement in Support of Proposed Modifications (doc. no. 2791) at 15. In case there is any ambiguity, the parties expressly "stipulate to the PLRA need-narrowness-intrusiveness findings." *Id*. at 15 (emphasis added). The parties also "submit that the terms ... 'will not have an adverse impact on public safety or the operation of the criminal justice system.'" *Id*. at 16 (*quoting* 18 U.S.C. § 3626(a)(1)(A)). Accordingly, the court does not make specific findings PLRA here about each proposed modification. However, based on the court's independent review of the proposed modifications, the court agrees with the parties that the proposed modifications satisfy the PLRA. *Cf. Dunn v. Dunn*, 318 F.R.D. 652, 682 (M.D. Ala. 2016) (Thompson, J.) ("In this case, the parties agree that the consent decree satisfies the need-narrowness-intrusiveness requirements of 18 U.S.C. § 3626(a)(1)(A). They so stipulate in the settlement agreement. Based on the

court's independent review of the settlement agreement,

the court agrees.").

***

An appropriate judgement will be entered.

DONE, this the 12th day of May, 2020.

      /s/ Myron H. Thompson
      UNITED STATES DISTRICT JUDGE