IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:14cv601-MHT |
| | ) | (WO) |
| JEFFERSON S. DUNN, in his | ) | |
| official capacity as | ) | |
| Commissioner of | ) | |
| the Alabama Department of | ) | |
| Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

PHASE 2A OPINION AND ORDER ON NEXT STEPS
FOR A PROCESS TO IDENTIFY FUNCTIONAL SEGREGATION

After an on-the-record hearing on December 6, 2019,
this court solicited the views of defense expert Dr.
Mary Perrien about how "to determine when a cell or
unit is functioning as segregation." *Braggs v. Dunn*,
No. 2:14-cv-601, 2019 WL 7041620, at *2 (M.D. Ala. Dec.
19, 2019) (Thompson, J.).  At the time, the court
"note[d]   several   significant   methodological
disagreements that, as a preliminary matter, would need
to be resolved to develop such a process."  *Id*.  In
short,   these   disagreements   were   about   (1)   how

out-of-cell time should be documented; (2) how out-of-cell time should be averaged; and (3) whether certain out-of-cell activities should be excluded from the calculation. *See id*.

Dr. Perrien's proposal (doc. no. 2772-1) clearly addresses two of the three significant methodological disagreements. In short, as to (1), how out-of-cell time should be documented, Dr. Perrien proposes that the Alabama Department of Corrections (ADOC) create a written schedule of planned out-of-cell time in a unit, and have officers document deviations from the schedule; and, as to (2), how out-of-cell time should be averaged, she proposes to determine the average weekly out-of-cell time for the unit over the course of a quarter. A unit providing less than an average of 11 hours per week of out-of-cell time would be determined to be functioning as segregation. Dr. Perrien's proposal does not specifically address (3), whether certain out-of-cell activities should be excluded from the calculation. However, Dr. Perrien previously

2

explained that she would count any out-of-cell activity, if it were practical to do so. *See Braggs*, 2019 WL 7041620, at *2 (citing to the suicide-prevention trial).

The court also sought the views of both the plaintiffs and the defendants as to Dr. Perrien's proposal. The plaintiffs agree with the premise of the proposal but ask this court specifically to modify it in part. *See, e.g.,* Pls.' Response (doc. no. 2805) at 2 ("The premise of Dr. Perrien's proposal is that celled housing units should adhere to out-of-cell time schedules to ensure that such units do not function as segregation.... Plaintiffs agree with this concept and find it to be consistent with expert testimony."). As to (1), how out-of-cell time should be documented, the plaintiffs agree with Dr. Perrien's proposal of a weekly schedule of planned out-of-cell activity. However, the plaintiffs request that the documentation specifically include a count of the number of inmates who participate and who refuse to participate in each

3

activity.   As  to  (2),  how  out-of-cell  time  should  be averaged,  the  plaintiffs  request  that  the  average weekly out-of-cell time be averaged over a month rather than  a  quarter.   And,  as  to  (3),  whether  certain out-of-cell  activities  should  be  excluded  from  the calculation,  the  plaintiffs  request  that  certain activities, such as showers, haircuts, pill calls, sick calls,  diabetic  finger  sticks,  vital  sign  checks,  and picking  up  meal  trays  not  be  counted,  given  the  prior testimony of the plaintiff expert Dr. Kathryn Burns.

Beyond       the      preliminary      methodological disagreements,  the  plaintiffs  additionally  propose  to apply  this  measurement  process  to  any  units  that plaintiffs "in  good  faith  believe  to  be  operating  as segregation."   Pls.'  Response  (doc.  no.  2805)  at  9. Further,  while  Dr.  Perrien  proposes  that  any  relief provided for units found to be operating as segregation be  determined  on  a  unit-by-unit  basis  by  ADOC "with input   from   the   External   Compliance   Team,"   Perrien Report  (doc.  no.  2772-1)  at  4  n.2,  the  plaintiffs

**4**

instead "ask the Court to order relief for
segregation-like units that is consistent with relief
that has already been ordered for officially designated
segregation units ... and ... re-assert their request
for additional segregation relief that remains pending
before the Court."  Pls.' Response (doc. no. 2805) at
11.

     The defendants view Dr. Perrien's proposal as "an
acceptable process in large measure," though they did
not comment on its specifics.  Defs.' Notice Regarding
Proposal (doc. no. 2772) at 7-8 ¶ 8.  Nonetheless, the
defendants ask this court to deny the plaintiffs'
request to extend relief to units that allegedly
function as segregation, for reasons which will be
discussed later.

     The court is cognizant of the fact that the
scheduled oral argument on this issue was continued
generally.  In order to continue moving forward on this
issue in the interim, and for the reasons that follow,
the court will order limited additional briefing prior

to the oral argument to clarify the pending proposal as
it relates to the methodological disagreements
discussed above. The court will also deny the
defendants' broad request to deny *any* relief to units
found to be functioning as segregation, regardless of
the specific process for tracking out-of-cell time.
The court will address the *extent* of appropriate relief
as part of the pending segregation opinion, which will
encompass relief for units that are both formally
labelled as segregation and found to be functionally
operating as segregation.


I.  DR. PERRIEN'S PROPOSAL AND PLAINTIFFS' RESPONSE

    The court will first detail the plaintiffs'
requests to adopt in part and modify in part Dr.
Perrien's proposal, explaining the views that motivate
the order for additional briefing.

A.   Documentation of Out-of-Cell Time

In order to calculate the amount of out-of-cell time provided per week, Dr. Perrien has proposed that "ADOC will develop a schedule for all Contested Units with celled housing that provides for at least two (2) hours of out-of-cell activity per inmate per day," or 14 hours of out-of-cell activity per inmate per week. Perrien Report (doc. no. 2772-1) at 2. "At the end of each shift, the unit officer [would] note any deviations from the unit's scheduled activities" by "sign[ing] [the] daily schedule." *Id.* at 2-3 & n.1. Because "[t]he signatures of officers [would] mean that the activity, unless otherwise noted, occurred," *id.* at 2-3 n.1, the documentation would allow ADOC to calculate the "weekly provided out-of-cell time" for each unit as the "sum of [scheduled] activity hours minus program shutdown activity hours." *Id.* at 3. "Program shutdown activity hours" are presumably the hours for which an activity was scheduled but did not occur.

7

The plaintiffs ask this court to require additionally that the officer "document how many prisoners participated in [each] activity and how many refused," Pls.' Response (doc. no. 2805) at 8, for two distinct reasons.  First, the plaintiffs are concerned that not all scheduled activities may be offered to all prisoners in a unit.  For example, "in some celled housing units," according to the plaintiffs, "activities like yard are not offered to the entire unit at once but rather to a portion of the unit (also known as a 'tier' or 'side,' depending on the unit)." *Id*. at 7.  Second, the plaintiffs are concerned that even if activities are offered to all prisoners in a unit, they may be "offered at times or in manners that discourage participation."  *Id*.

While these concerns are valid, the court does not believe that such additional documentation is necessary.  As the court has previously noted, any system to identify function segregation must "balance[] the importance of identifying cells or units for which

8

relief may be appropriate with the goals of creating a manageable, not overly burdensome, and yet objectively verifiable process." *Braggs*, 2019 WL 7041620, at *2. Dr. Perrien balanced these goals by proposing a system that is focused on the unit-level, however that is defined, rather than the individual-level. The court is unwilling to upset that balance, particularly at this stage. The plaintiffs' concern about the manner in which activities are offered would be better addressed as part of a broad monitoring scheme rather than transforming Dr. Perrien's proposal into a requirement for very detailed paperwork. Otherwise, the court would risk enmeshing itself in the operation of ADOC and overburdening the defendants.

On a practical level, the additional documentation would also not affect the proposed calculation of the "weekly provided out-of-cell time" for each unit, which is the "sum of [scheduled] activity hours minus program shutdown activity hours." Perrien Report (doc. no. 2772-1) at 3. Neither the number of persons who

participate in an activity nor the number of persons
who refuse are factored into the number of scheduled
avidity hours or the number "program shutdown activity
hours." Importantly, the plaintiffs do not disagree
with this proposed method. *See* Pls.' Response (doc.
no. 2805) at 2 ("The premise of Dr. Perrien's proposal
is that celled housing units should adhere to
out-of-cell time scheduled.... Plaintiffs agree with
this concept."); *id.* at 3 ("Plaintiffs agree with Dr.
Perrien that compliance with and deviation from the
posted schedule should be documented with officers'
signatures on the schedules, along with a written
explanation for any deviation."); *id.* at 4 ("Plaintiffs
agree with Dr. Perrien that out-of-cell time ... should
be documented daily and calculated weekly.").

Nonetheless, the court agrees with the plaintiffs'
first concern that not all scheduled activities may be
offered to all prisoners in a unit to the extent it is
alternatively understood as a concern that the unit may
not always be the right level of measurement for

10

identifying functional segregation. Instead, some
units may be better tracked as separate tiers. Dr.
Perrien's proposal, while sparse, does not suggest it
would be appropriate to count time offered to one tier
as time for the entire unit. Instead, it suggests that
the scheduled activities are intended to be offered to
each inmate. *See* Perrien Report (doc. no. 2772-1) at 3
("It will not be necessary to track out-of-cell hours
by inmate because the schedule's purpose is to provide
sufficient hours for each inmate within the unit.").
As a result, the court believes that a more practical
way to accommodate the plaintiffs' concern would be to
make explicit that scheduled activities in Dr.
Perrien's proposal are required to be offered to each
inmate and that, as a result, tracking tiers separately
will be necessary when different tiers receive
different access to out-of-cell activities.

Finally, Dr. Perrien also stated that, "To the
extent that the schedule deviates from [the] goal of 11
or more hours of out-of-cell time per week, there may

need to be alternative or additional documentation."
*Id*. at 3.   This does not warrant a different outcome.
First, the plaintiffs did not address Dr. Perrien's
statement.   Second, it is not clear what Dr. Perrien
meant by the statement.   In general, the court is
concerned about any resulting uncertainty about the
documentation of out-of-cell time, particularly in
light of the parties' previous dispute about whether
duty logs were a comprehensive source of out-of-cell
time.   *See, e.g.*, Defs.' Notice (doc. no. 2772) at
4 ¶ 3 ("Plaintiffs offered nothing more than criticisms
of the thoroughness of ADOC's documentation.").


    B.  Averaging of Out-of-Cell Time

    Dr. Perrien proposes that the defendants average
the amount of out-of-cell time each week "over the
course of a quarter," Perrien Report (doc. no. 2772-1)
at 3, such that there is a determination about whether
or not a unit is functioning as segregation four times
a year.   In contrast, the plaintiffs propose averaging

**12**

the amount of out-of-cell time each week over the
course of a month, such that there is instead a
determination about whether a unit is functioning as
segregation twelve times a year. *See* Pls.' Response
(doc. no. 2805) at 4-5.

Dr. Perrien has offered no explanation for
selecting quarters as her proposed period of
measurement. Further, the plaintiffs have only pointed
to the need to remove persons with serious mental
illnesses (SMI) from segregation-like settings as soon
as possible to justify the alternative monthly measure.
*See id.* at 5. But this is only a partial
justification, as the plaintiffs' requested relief is
much broader than extending protections for SMIs. *See
id.* at 10-11 (plaintiffs' request for relief).


C. Counting of Out-of-Cell Activities

In prior testimony, plaintiff expert Dr. Burns
explained that she would not count activities such as
showers, haircuts, pill call, sick call, diabetic

finger sticks, the taking of vital signs, or the picking up of meal trays as out-of-cell time. *See Braggs*, 2019 WL 7041620, at *2 (citing to the suicide-prevention trial). In contrast, the defendants' expert Dr. Perrien explained that she would count these activities, *if it were practical to do so*. *See id.* (emphasis added). Dr. Perrien's proposal, however, does not address whether or not it would be practical to do so. As a result, the plaintiffs ask this court to credit Dr. Burns' prior testimony and find that these brief activities "should not be counted," regardless of whether it is practical to do so. Pls.' Response (doc. no. 2805) at 7.

The plaintiffs, however, are *presuming* that the defendants believe it would be practical to count such activities and intend to do so. But the defendants did not comment on Dr. Perrien's proposal with such specificity as to know how they intend to implement it.

**14**

D.   Nomination of Housing Units for Time-Tracking

The court solicited the above-discussed proposal from Dr. Perrien in order to determine whether a cell or unit should be covered by remedial orders related to ADOC's use of segregation. *See generally Braggs*, 2019 WL 7041620.   The court thus intended for the proposal to be flexible enough to be applied during the duration of any relief ordered.

As the plaintiffs point out, "units within ADOC's major facilities frequently change purpose and use, and segregation-like units are created, moved, and eliminated at Defendants' sole discretion."   Pls.' Response (doc. no. 2805) at 9.   In anticipation of this, the plaintiffs ask this court to "permit them to request time-tracking of any additional units that Plaintiffs in good faith believe to be operating as segregation."   *Id.*

Dr. Perrien's proposal, however, does not clearly address how the plaintiffs should nominate a unit for time-tracking.   On the one hand, Dr. Perrien's proposal

15

explicitly "only addresses" those housing units alleged by the plaintiffs to function as segregation during the suicide-prevention trial.   Perrien Report (doc. no. 2772-1) at 2.   On the other hand, the proposal is also forward-looking,   explaining   that   it   generally "addresses a process to identify housing units that may function like restrictive housing units (RHUs) based upon limited out-of-cell time."   *Id*.   Relatedly, the proposal explains that "ADOC will develop a schedule for all Contested Units *with celled housing*."   *Id*. (emphasis added).   Because the court understands that each of the units currently identified as "Contested Units" are celled housing, the additional language appears   to   contemplate   future   allegations   about additional units.   The proposal also specifies that it would apply only to celled housing units and not to either the mental-health units or "any cell or housing unit   used   for   purposes   of   medical isolation/quarantine."   *Id*. at 4.

16

Because the plaintiffs agree that the inquiry
should be limited in this way,* they suggest that "the
universe of units that could be segregation-like is

---

   * The plaintiffs agree with Dr. Perrien that the
inquiry would be limited to celled housing units and
will not apply to units already designated by ADOC as
formal segregation. *See* Perrien Report (doc. no.
2772-1) at 4 (process "does not apply to any housing
unit designated as a formal RHU"); Pls.' Response (doc.
no. 2805) at 3 ("Plaintiffs agree ... that [process]
should not apply to formally designated segregation").
The process would also not apply to mental-health
units, which are already required to provide a minimum
amount of out-of-cell time; units used for purposes of
medical isolation/quarantine, at least as long as
medical isolation does not become commonplace during
COVID-19; and crisis cells, which will be subject to a
different arrangement. *See* Perrien Report (doc. no.
2772-1) at 4 (process "does not apply to ... any
housing unit for which ADOC may otherwise be required
to provide a minimum of out-of-cell time, for example
the Stabilization Units, Residential Treatment Units,
or the Structured Living Unit," and, further, "inmates
housed in crisis cells or medical cells/infirmary ...
will be provided appropriate out of cell activity after
72 hours unless contraindicated"); Pls.' Response (doc.
no. 2805) at 3-4 ("Plaintiffs agree ... that [process]
should not apply to ... medical isolation/quarantine,
stabilization, residential treatment, and structured
living units"); *id.* at 3 n.5 ("Plaintiffs reserve the
right to reassess whether medical isolation cells
should be subject to segregation remedies if prolonged
medical isolation becomes a more common practice within
ADOC" given COVID-19); *id.* at 4 ("Plaintiffs agree ...
that it is appropriate to provide out-of-cell time to
people in crisis ... cells after 72 unless a clinical
contraindication is documented").

relatively small."   Pls.' Response (doc. no. 2805) at
12 n.10.    The court, however, does not have a
sufficient factual record to verify this.


    E.   Remedy

    Dr. Perrien proposes that if a housing unit is
considered functional segregation, then it "may become
subject to *some* of the requirements applicable to
[formal segregation] as determined on a unit-by-unit
basis."   Perrien Report (doc. no. 2772-1) at 3-4
(emphasis added).     However, "many of the ...
requirements might not be applicable to certain types
of housing units or cells." *Id*. at 4 n.2. Ultimately,
the "ADOC, with input from the External Compliance
Team," would "determine which requirements might be
appropriate on a unit-by-unit basis." *Id*.

    Because "there is currently no External Compliance
Team ... in place," the plaintiffs "request that any
unit-by-unit exceptions be approved by Dr. Perrien and

... Dr. Kathryn Burns." Pls.' Response (doc. no. 2805) at 4.

But the plaintiffs also "ask the Court to order relief for segregation-like units that is consistent with relief that has already been ordered for officially designated segregation units ... and ... re-assert their request for additional segregation relief that remains pending before the Court." *Id*. at 11.

It is not exactly clear to the court how the plaintiffs' multiple requests are compatible with one another or what would constitute "consistent" relief.

Further, the court is concerned though that not all remedial relief for segregation already ordered or pending before the court would be appropriate for all segregation-like units, primarily because such units can change their status over time, transforming from functional segregation in one month or quarter to providing enough out-of-cell time the next month or quarter.

19

Finally, the court is also cognizant about the different nature of the evidence presented during the liability trial as to formal and functional segregation. During the liability trial, this court reviewed evidence on the "risks of decompensation created by segregation *in general* and by ADOC's segregation units *in particular*." *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1240 (M.D. Ala. 2017) (Thompson, J.) (emphasis added). The risks of decompensation by segregation in general would apply to both formal and functional segregation because the risks flow form the shared lack of out-of-cell time. But the risks of decompensation by ADOC's segregation units in particular may only be directly relevant to formal segregation.

## II. DEFENDANTS' OBJECTIONS TO RELIEF

In general, the defendants object to extending any relief to units functioning as segregation, regardless of the ultimate process for tracking out-of-cell time.

The defendants offer five arguments, none of which are persuasive: (1) the lack of evidence in the suicide-prevention trial; (2) the lack of a "current, ongoing constitutional violation"; (3) the "justified reasons for limiting inmates' out-of-cell time"; (4) the fact that the plaintiffs "cannot rewrite the remedial stipulations and orders regarding restrictive housing"; and (5) the "conflict[] with the PLRA's need-narrowness-intrusiveness requirements," because of the lack of a liability finding.  *Id*. at 3 ¶ 2.

The defendants' first two claims are both related to the evidence presented at the suicide-prevention trial.  First, the defendants claim that "[t]he evidence before the Court *disproved* Plaintiffs' allegations concerning the allegedly 'segregation-like' settings."  Defs.' Notice (doc. no. 2772) at 3 ¶ 2.a, 3 ¶ 3 (emphasis added).  Second, the defendants claim that the plaintiffs "fail to show a current, ongoing constitutional violation" because "the record contains no evidence regarding the *current* use or conditions

within the Contested Units." *Id*. at 3 ¶ 2.b, 4 ¶ 4
(emphasis added). But both related arguments
misconceive the role of the evidence previously
presented. During the suicide-prevention trial "both
experts ... jointly recommended that the court extend
certain relief to units functioning as segregation,
even if not formally labelled as such." *Braggs*, 2019
WL 7041620, at *1. The evidence presented thus
provided the foundation for further inquiry into
precisely how to best determine when and where units
are *currently* operating as functional segregation. In
fact, when the court solicited Dr. Perrien's proposal,
it explained that it was "interested in a
methodological proposal for how to determine which
cells or units function as segregation, *not an
evaluation of the specific evidence presented during
the suicide-prevention trial*." *Braggs,* 2019 WL
7041620, at *2 (emphasis added). Because the
determination of whether or not a unit is functioning
as segregation will be based on the time-tracking

method proposed by Dr. Perrien, the defendants'
argument about the evidence or lack of evidence
presented during the suicide-prevention trial is not a
basis for denying all relief.

The defendants' third, fourth, and fifth claims all
relate to the potential relief. The defendants' third
claim is that that any relief would be "overly broad"
because it would "ignore the necessary, justified
reasons for limiting inmates' out-of-cell time," such
as when an inmate is "placed on suicide watch or other
crisis placement" or is "subject to restrictions and
observation by members of the medical staff." *Id.* at
3 ¶ 2.c, 5 ¶ 5. Fourth, the defendants claim that
applying "the remedial stipulations and orders
regarding restrictive housing" to segregation-like
settings would be inappropriate because the defendants
"never agreed that the ... [s]tipulations applied to
the Contested Units or any other allegedly
'segregation-like' setting." *Id*. at 3 ¶ 2.e, 6—7 ¶ 7.
Fifth, the defendants claim that "[t]he relief sought

23

by the Plaintiffs related to the Contested Units conflicts with the PLRA's need-narrowness-intrusiveness requirements" because "the Court made no liability finding with respect to the Contested Units."  *Id*. at 3 ¶ 2.d, 6 ¶ 6.

Both the third and fourth claims are now moot. Both Dr. Perrien and the plaintiffs have agreed that cells or units used for suicide watch, crisis placement, or medical isolation will *not* be considered functional segregation, regardless of the lack of out-of-cell time, for the reasons cited by the defendants.  *See supra note **.   Further, the plaintiffs have clarified that "[t]he stipulated segregation remedies apply only to units ADOC has officially designated as segregation units" and that they "do not now seek to undermine [the remedial stipulations] by asking that they be read to include segregation-like units."   Pls.' Response (doc. no. 2805) at 10 & n.8.   Instead, the plaintiffs "ask the [c]ourt to order relief for segregation-like units that

is consistent with relief that has already been ordered
for officially designated segregation units" and
"re-assert their request for additional segregation
relief that remains pending before the [c]ourt... which
should apply to both segregation and segregation-like
units." *Id*. at 11. As a result, the defendants'
concerns, as reflected in their third and fourth
arguments, are adequately addressed and are not a basis
for denying relief.

The flaw with the defendants' fifth claim related
to the PLRA is that it misconceives the nature of the
violation found in the liability opinion. This court
found that one of the factors contributing to the
Eighth Amendment violation was the State's use of
segregation, including "[p]lacing seriously mentally
ill prisoners in segregation without extenuating
circumstances and for prolonged periods of time;
placing prisoners with serious mental-health needs in
segregation without adequate consideration of the
impact of segregation on mental health; and providing

inadequate treatment and monitoring in segregation." *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1268 ¶ 7 (M.D. Ala. 2017) (Thompson, J.). It is true that the appropriate relief for units functioning as segregation may be different than for units formally designated as segregation, because the violation found in the liability opinion stemmed from both the general lack of out-of-cell time and the particular conditions of formal segregation units. Nonetheless, "[t]he court heard significant evidence that extended segregation—*even absent consideration of the conditions at ADOC*—poses a substantial risk of harm to all mentally ill prisoners." *Id.* at 1245 (emphasis added). The court cannot be at the mercy of defendants' nomenclature as to what is and what is not segregation. As a result, determining whether units function as segregation—based on the limited amount of out-of-cell time provided—is necessary to remedying one of the factors that contributed to the Eighth Amendment violation. Nonetheless, the court will consider the extent of

appropriate relief in light of both its liability finding and the PLRA.

***

Accordingly, it is ORDERED as follows:

(1)   As to the documentation of out-of-cell time, the court needs the following additional information:

    (a)   Dr. Perrien is to clarify whether the "provided activity hours" are actually the scheduled activity hours and whether the "program shutdown activity hours" are the hours for which an activity was scheduled but did not occur.   Perrien Proposal (doc. no. 2772-1) at 1.   The court believes it would benefit from an example.

    (b)   Dr. Perrien is to address additionally (1) whether scheduled activities are required to be offered to each inmate and (2) whether, as a result, tracking tiers separately will be necessary when different tiers receive

27

different access to out-of-cell activities.  If
scheduled activities are not required to be
offered to each inmate, Dr. Perrien is to also
address (3) how such a system will ensure that
there are "sufficient [out-of-cell] hours for
each inmate within the unit."   *Id.* at 1.
Again, the court believes it would benefit from
an example of a possible schedule.

(c)   Dr. Perrien is to finally clarify what she
meant by the statement that, "To the extent
that the schedule deviates from [the] goal of
11 or more hours of out-of-cell time per week,
there may need to be alternative or additional
documentation," *id*. at 3, in light of the
parties' previous dispute about whether duty
logs were a comprehensive source of out-of-cell
time.

(d)   The defendants may address Dr. Perrien's
response in their commentary.  The plaintiffs
need not address this issue further.

(2)    As to the averaging of out-of-cell time, the
court needs the following additional information:

    (a)    Dr. Perrien is to explain the basis for
    her decision to use a quarterly measure.

    (b)    The plaintiffs are to explain the basis
    for their decision to propose a monthly
    measure, beyond the basis already provided.

    (c)    Both Dr. Perrien and the plaintiffs are
    also to address whether a monthly measure may
    be appropriate for enforcing protections for
    SMIs while a quarterly measure may be
    appropriate for other forms of relief.

    (d)    The defendants may also address this in
    their commentary.

    (e)    Finally, the defendants are to explain
    whether they agree or disagree with the
    plaintiffs' proposal that (1) a warden should
    be responsible for calculating the average
    amount of out-of-cell time and that (2) these

numbers should be provided to plaintiffs within a specified period of time.

(3)   As to the counting of out-of-cell activities, the court needs the following additional information:

(a)   The defendants are to explain whether they intend to schedule showers, haircuts, pill call, sick call, diabetic finger sticks, the taking of vital signs, or the picking up of meal trays as out-of-cell time when implementing Dr. Perrien's proposal.

(b)   If the defendants do intend to schedule any of these activities as out-of-cell time, the defendants are to additionally explain precisely how they will implement Dr. Perrien's proposal and fulfill its purpose of "provid[ing] sufficient [out-of-cell] hours for each inmate within the unit," Perrien Proposal (doc. no. 2772-1) at 3, particularly if the activities will not be offered to every inmate.

For example, while showers presumably are offered to each inmate, diabetic finger sticks are not.  The court believes it would benefit from an example about the out-of-cell activities that the defendants intend to schedule.

(4)   As to the nomination of future units for time-tracking, the court needs the following additional information:

   (a)   Dr. Perrien is to address the plaintiffs' counter-proposal.

   (b)   If Dr. Perrien does not agree with the plaintiffs' counter-proposal, Dr. Perrien is to additionally propose an alternative method by which the plaintiffs will be able to nominate additional units for future time-tracking.

   (c)   Further, in order to evaluate the scope of the plaintiffs' counter-proposal, the defendants are to supply this court with information on the universe of celled housing

31

units which are not officially designated as
restrictive housing units, residential
treatment units, stabilization units, or
structured living units, including the number
of such units; the number of cells in such
units; and, for comparison purposes, the number
of total units and number of total cells across
ADOC's major facilities.   The defendants may
choose to rely on information previously
gathered as part the Savages' staffing
analysis, if relevant.

(d)   The defendants may also address the
plaintiffs' counter-proposal or Dr. Perrien's
response in their commentary.

(e)   The plaintiffs need not address this issue
further.

(5)   As to the remedy, the court needs the following
additional information:

(a)   The plaintiffs are to address how the
request that "any unit-by-unit exceptions be

approved by Dr. Perrien ... and Dr. Kathryn
Burns," Pls.' Response (doc. no. 2805) at 4, is
compatible with their "[ask]ing the Court to
order relief for segregation-like units that is
consistent with relief that has already been
ordered for officially designated segregation
units ... and ... re-assert[ing] their request
for additional segregation relief that remains
pending before the Court." *Id*. at 11.   The
plaintiffs are to additionally clarify what
would constitute "consistent" relief.

(b)   The plaintiffs are also to address why
each aspect of the relief that has either
already been stipulated to for formal
segregation units or that remains pending
before the court for the segregation opinion
under submission is appropriate for units found
to be functioning as segregation, in light of
two factors: (1) segregation-like units can, by
definition, change their status over time,

33

transforming from functional segregation in one
month or quarter to providing enough
out-of-cell time the next month or quarter; and
(2) while the court made findings in its
liability opinion about the risks of
decompensation created by both the practice of
segregation in general and ADOC's formal
segregation units in particular, only the
former may be relevant here. The court is
particularly interested in whether each aspect
of the requested relief is justified in light
of these facts and whether some forms of relief
should be prioritized over others, such as
enforcing protections for SMIs or implementing
security checks.

(c) The defendants may address this in their
commentary.

(6) The defendants are to file with the court, by
noon on July 13, 2020, a response by Dr. Perrien to
the portion of court's order directed towards her,

**34**

along with any commentary the defendants deem appropriate.

(7)   The defendants are to additionally file with the court, by noon on July 13, 2020, a response to the portion of the court's order directed towards them.   The defendants may include these responses along with their commentary or separate from their commentary, whichever they prefer.

(8)   The plaintiffs are to file with the court, by noon on July 13, 2020, a response to the portion of court's order directed towards them.

(9)   If the court desires any counter-responses, the court will let the parties know at a later date.

DONE, this the 1st day of June, 2020.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE