IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:14cv601-MHT |
| | ) | (WO) |
| JEFFERSON S. DUNN, in his | ) | |
| official capacity as | ) | |
| Commissioner of | ) | |
| the Alabama Department of | ) | |
| Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

PHASE 2A ORDER TO MEDIATE ON ISSUE OF
CORRECTIONAL STAFFING

This court previously expressed its concern about
the trend in correctional staffing. *See* Phase 2A Order
on Correctional Staffing Trend (doc. no. 2834). The
subsequent responses by both the defendants (doc. no.
2838) and the plaintiffs (doc. no. 2847), as well as
the representations made on the record during a status
conference on June 24, 2020, raised a range of related
issues that this court may ultimately need to resolve.
However, the court will first order the parties to
mediate their dispute with Magistrate Judge John Ott.

*See* **Phase 2A Understaffing Remedial Opinion (doc. no. 1656) at 12 ("All parties agree that any dispute related to the Savages' recommendations should first be put before United States Magistrate Judge John Ott for mediation."); *see also* Phase 2A Understaffing Remedial Order (doc. no. 1657) (companion order); Order on Reappointment of Judge Ott as Mediator (doc. no. 2852). While this mediation may cover any of the related staffing issues, such as whether the Savages' staffing recommendations represent a floor or a ceiling, at this juncture the mediation must specifically address how the defendants will (1) update the information included in the quarterly staffing reports such that this court can accurately track the defendants' progress with this court's remedial order (doc. no. 1657); and (2) obtain the experts' assessment of their progress to date, as further detailed below.**

2

## I.   QUARTERLY STAFFING REPORTS

This court initially ordered the defendants to submit quarterly correctional staffing reports with particular information, including (a) the number of correctional staff assigned to each ADOC facility; (b) the number of correctional staff employed by each facility at the end of each quarter; (c) the turnover rate; (d) the retention rate; and (e) the vacancy rate. *See* Phase 2A Understaffing Remedial Order (doc. no. 1657) at 7-9.  Since their first quarterly report, which was submitted before the Savages had completed their staffing analysis, *see* Q4-2017 Correctional Staffing Report (doc. no. 2325-1) at 2 & 2 n.1 (explaining this), the defendants have reported the Savages' recommendations for 3,326 full-time equivalent correctional staff and 500 full-time equivalent supervisors as (a) the number of correctional staff that should be assigned to each facility.  *See* Defs.' Response (doc. no. 2838) at 5 (confirming this).

3

The court used these quarterly staffing reports to assess the defendants' progress in meeting the Savages' recommendations.    In   response   to   the   court's comparisons of (a) the Savages' recommendations with (b) the actual number of actual correctional staff employed, the defendants pointed out that the Savages' recommendations "rely on full-time equivalents ... as opposed to a physical headcount of actual persons." *Id*. at 4.   As the defendants explained, a full-time equivalent, or FTE, "may be filled in a variety of ways, including, for example, through part-time and overtime."  *Id*.  As a result, the defendants suggested that comparing (a) the Savages' recommendations to (b) the defendants' actual number of staff was "futile." *Id*.

The court, however, must be able to assess the defendants' progress towards complying with its order that, "[b]y February 20, 2022, the defendants shall have fully implemented the Savages' correctional staffing recommendations," regardless of whether those

**4**

recommendations are set forth in terms of actual persons or full-time equivalents. *See* Phase 2A Understaffing Remedial Order (doc. no. 1657) at 3 ¶ (e).  For this reason, the court will order the parties to mediate about how to best satisfy the plaintiffs' request for the quarterly staffing reports to be modified to include (1) "FTE equivalents" and (2) "an explanation for how [defendants] are calculating FTEs for correctional staff."  Pls.' Reply (doc. no. 2847) at 6.  Importantly, the quarterly staffing reports must be modified both historically and prospectively in order to permit the court to assess staffing progress over time.

Further, the defendants pointed out that the observed decline in supervisors over time was attributable, in part, to a change in the classification of K-9 staff members. *See* Defs.' Response (doc. no. 2838) at 3.  In short, the defendants previously counted members of the K-9 staff as supervisors but no longer do so.  It is not clear

5

whether K-9 staff are now counted as officers or not counted at all.  In light of this, the court will order the parties to mediate on the classification of K-9 staff in order to confirm that the parties are in agreement and to consider whether the quarterly staffing reports should be modified, if at all.  As above, it is important that any modification be made both historically and prospectively.


## II. EXPERT ASSESSMENT OF PROGRESS-TO-DATE

Beyond distinctions between actual persons and FTEs, or supervisors and K-9 staff, the defendants also detailed their relevant marketing efforts, compensation efforts, and retention efforts to increase the number of correctional staff.  In general, the defendants represented that they have so far "effectively executed the plan"; that they "continue[] to implement and follow the recommendations" of their experts; and that they "remain[] optimistic" that they will be able to meet this court's February 20, 2022, deadline for

6

staffing.  Defs' Response (doc. no. 2838) at 1, 7, 21.
For their part, the plaintiffs believe that the
defendants have actually "made dangerously little
progress toward complying with their own plan."  Pls.'
Reply (doc. no. 2847) at 2.  As a result, and for the
same reasons this court previously articulated when it
reviewed the correctional staffing trend to date, the
court will order the parties to come up with a means to
solicit from the relevant experts whether (1) the
defendants' efforts so far are in fact having the
expected impact; (2) whether the defendants are on
track to meet this court's deadline; and (3) whether
any modifications in the defendants' plans or approach
need to be made.


***

    Accordingly, it is ORDERED as follows:

    (1)    The parties are to mediate immediately with
           Magistrate Judge John Ott on the issue of

correctional staffing, including but not limited to the specific issues detailed above.

(2)     The parties are to file a brief, either jointly or separately, by noon on Monday, July 27, 2020, updating the court as to (a) which disputes, if any, have been resolved and, if so, how; and (b) which disputes, if any, remain for this court to address.

DONE, this the 2nd of July, 2020.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE

8