# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:14-cv-00601-MHT-JTA |
| | ) | Judge Myron H. Thompson |
| JEFFERSON DUNN, in his official | ) | |
| capacity as Commissioner of the | ) | |
| Alabama Department of | ) | |
| Corrections, et al. | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PLAINTIFFS' REPLY TO DEFENDANTS' RESPONSE TO THE COURT'S QUESTIONS REGARDING NEXT STEPS FOR A PROCESS TO IDENTIFY FUNCTIONAL SEGREGATION

Plaintiffs submit this reply to Defendants' and Dr. Mary Perrien's Responses, Docs. 2867, 2867-1, to the questions set forth by the Court in the Phase 2A Opinion and Order on Next Steps for a Process to Identify Functional Segregation, Doc. 2824.

As a general matter, Plaintiffs agree with Defendants' request for an evidentiary hearing on this issue. *See* Doc. 2867 at 17. However, any evidentiary hearing on this issue should not include presenting additional evidence on whether any particular units in the Alabama Department of Corrections ("ADOC") facilities

are currently functioning as segregation. Rather, the hearing should be limited to the process for identifying functional segregation and the relief that should apply to functional segregation units. Plaintiffs are prepared to present expert testimony regarding Plaintiffs' requested relief and proposed modifications to Dr. Perrien's Proposal Regarding a Process to Identify When a Unit Is Functioning as Restrictive Housing ("Proposal"). Doc. 2772-1.

Plaintiffs provide the following responses regarding (1) documenting out-of-cell time, (2) averaging out-of-cell time, (3) counting out-of-cell activities, (4) nominating additional units to track, and (5) the Prison Litigation Reform Act ("PLRA").

## I. Documenting Out-of-Cell Time

The Court posed three sets of questions to Dr. Perrien regarding the documentation of out-of-cell time. Doc. 2824 at 27-28. Plaintiffs provide the following limited responses regarding (1) tracking out-of-cell time for tiered units, and (2) documentation of deviations from scheduled activity hours.

First, the Court has already contemplated that "some units may be better tracked as separate tiers," *id.* at 11, and Dr. Perrien's Response demonstrates that this is the appropriate approach to take. Plaintiffs agree with Dr. Perrien that scheduled activity hours should apply to all prisoners in a unit and that the provided out-of-cell time should be "balanced across tiers (e.g., one tier should not receive 20

hours out-of-cell while the other receives 8 hours)." Doc. 2867-1 at 3.[1] However, because of the possibility that actual out-of-cell time could differ across tiers, out-of-cell time should be tracked and reported at the tier level for tiered units. Dr. Perrien's sample schedule shows how such an imbalance could occur across tiers. *See id.* at 9 (showing 19 hours for Tier A and 18 hours for Tier B).[2] Likewise, the number of program shutdown activity hours could vary by tiers. Thus, out-of-cell time should be averaged and reported separately by tier for tiered units.

Dr. Perrien's Response does not address how out-of-cell time should be averaged or how relief should be implemented if one tier has an average of less than 11 hours per week and another tier has an average of 11 or more hours per week. *See id.* at 3 ("If both tiers in a unit are above 11 hours of out-of-cell time per week, the hours can be averaged and reported as a unit or reported separately by tier."). Plaintiffs believe the Court would benefit from receiving further information on whether relief in this scenario should be implemented by tier or by unit.

---

[1] Where internal pagination conflicts with ECF pagination, Plaintiffs refer to the latter.

[2] Dr. Perrien's sample schedule does not reflect what actual out-of-cell time would look like for prisoners in the hypothetical unit since it does not account for the time it would take for staff to incrementally accompany prisoners out of and back to their cells. *See, e.g.*, Warden Christopher Gordy, Apr. 5, 2019 Trial Tr., at 205:11-206:14 (testifying that the length of time it takes to get people from Y Unit at Donaldson Correctional Facility to the yard can vary, and that people going from Y Unit to the yard must be individually cuffed); Cheryl Price, Apr. 12, 2019 R.D. Trial Tr., at 154:7-14 (testifying that yard for death row at Holman Correctional Facility is done in groups).

3

Second, the Court should order ADOC to document deviations from scheduled activity hours, and to do so in a consistent format. In her initial Proposal, Dr. Perrien indicated that correctional staff "will note any deviations from the unit's scheduled activities." Doc. 2772-1 at 3. To the extent that Dr. Perrien's Response deviates from this prior recommendation and makes such documentation optional, *see* Doc. 2867-1 at 2 ("anticipat[ing]" that ADOC "will require the correctional staff to document any deviation from the scheduled activity hours"); *id.* at 3 ("ADOC may instruct its employees to provide supplemental information and/or documentation . . . ."), Plaintiffs disagree. The Court should make clear that ADOC must document any deviations from scheduled activity hours. *See* Doc. 2805 at 3.

Neither Dr. Perrien nor Defendants clarify how this documentation should occur. They state that this must be determined on a unit-by-unit, deviation-by-deviation basis without providing any specificity regarding any of the Contested Units. *See* Doc. 2867 at 5-6; Doc. 2867-1 at 3-4. Further, Defendants provide no explanation for how "the reasons why deviation from the schedule for out-of-cell activities occurred" would constitute factors for "what types of documentation may be necessary to explain why scheduled out-of-cell activities did not occur." Doc. 2867 at 5. The Court and the Parties must be able to see documentation of out-of-cell time and reasons for deviations from scheduled activity hours in a consistent format. Otherwise, there may be confusion and a need for additional follow-up (by

4

the Parties and/or the Court).

## II. Averaging Out-of-Cell Time

The Court posed several questions to Dr. Perrien and Defendants regarding how to average out-of-cell time. Plaintiffs provide the following limited responses regarding (1) how a monthly measure remains more appropriate than a quarterly measure, and (2) who should calculate out-of-cell time.

First, none of the rationales provided for a quarterly measure of out-of-cell time withstand scrutiny—and, more importantly, none of the rationales prioritize the well-being of prisoners. Dr. Perrien and Defendants argue that a quarterly measure would "allow for a unit to show a trend of behavior or activities," Doc. 2867-1 at 4; *see* Doc. 2867 at 6, but a monthly measure would inherently show any trends with more detail. There is no basis for the Court to conclude that "medical or mental health emergencies, searches for contraband, and lockdowns for other operational and security concerns" are as isolated as Defendants suggest. *See* Doc. 2867 at 6. Any fluctuation caused by these or other lockdown periods should be tracked monthly so that ADOC can adjust to provide adequate out-of-cell time and the necessary relief. While it is true that certain lockdown periods would produce some month-to-month variation in out-of-cell time, this "skew[ing]" of monthly data, Doc. 2867-1 at 4, reflects the fact that people are kept isolated in their cells. A quarterly measure could also mask important trends, such as if ADOC provided little-to-no

5

out-of-cell time for two months and then significantly more out-of-cell time for two weeks. Prisoners kept in the cells would suffer from the harms of segregation in the meantime. *See* Doc. 2868 at 4.

Dr. Perrien's second rationale for a quarterly measure—that "the unit should change its daily operations to reflect any new activities and/or duties because of being designated 'functional restrictive housing' or removed from that status," Doc. 2867-1 at 4—would not be relevant to the tracking period until a unit first becomes designated as a functional segregation unit and ADOC must implement relief in the unit. Even then, to the extent Dr. Perrien and Defendants anticipate it would take longer to implement certain relief over others, under Plaintiffs' proposal, Defendants may seek an exception from Dr. Kathy Burns and Dr. Perrien or (when it is in place) the External Compliance Team.

Second, Plaintiffs agree that captains may perform the out-of-cell calculations. *See* Doc. 2867 at 9; Doc. 2867-1 at 4-5. In the absence of any recommendation as to who should perform the calculations in Dr. Perrien's Proposal, "Plaintiffs propose[d] that a warden conduct this review and report the review and any conclusions to the Deputy Commissioner of Operations (or whoever is currently performing the duties previously assigned to that position) or Deputy Commissioner of Women's Services and the Associate Commissioner of Health Services or her designee within the Office of Health Services." Doc. 2805 at 6.

6

Plaintiffs agree it would be appropriate for captains to conduct the review before reporting the results to a warden and the officials indicated above.

## III.  Counting Out-of-Cell Activities

Defendants represent that "the State does not currently anticipate counting 'showers, haircuts, pill call, sick call, diabetic finger sticks, the taking of vital signs, or the picking up of meal trays' toward the scheduled out-of-cell time as a general matter." Doc. 2867 at 11 (quoting Doc. 2824 at 30). To enforce this plan, Plaintiffs ask that the Court prohibit these activities from counting toward out-of-cell time. Plaintiffs agree that yard time and dayroom time may count toward out-of-cell time, as indicated in Dr. Perrien's sample schedule. Doc. 2867-1 at 9. However, Plaintiffs disagree with Defendants' Response regarding counting out-of-cell activities in two ways.

First, Defendants state that Kilby Correctional Facility's P Unit cells may be excepted from this general approach, Doc. 2867 at 11, but give no indication as to how the listed activities would be any more meaningful as out-of-cell time for people in these cells than for people in other units. It is inapposite that ADOC would track the listed activities on an individual basis, *see id.*—they should not be counted at all because these activities are too short to ameliorate the harms of isolation. *See* Doc. 2702 at 6 (noting Dr. Burns would not count these activities as out-of-cell time) (citing Apr. 8, 2019 R.D. Trial Tr. at 118:2-119:2; Apr. 10, 2019 R.D. Trial Tr. at

7

143:12-19); *see also* Doc. 2805 at 6-7. None of these activities constitute meaningful opportunities for social interaction.

In addition, "whether the Court will permit Plaintiffs to nominate additional housing units for time-tracking or whether ADOC may be required to track out-of-cell time for individual inmates," Doc. 2867 at 10, is irrelevant to whether these activities constitute meaningful out-of-cell time, *see* Doc. 2805 at 6-7. If "the State does not currently anticipate counting" the delineated activities "toward the scheduled out-of-cell time" for the Contested Units, Doc. 2867 at 11, there is no reason why ADOC should not take the same approach for any additional units that it may need to track in the future.

## IV.  Nominating Additional Units to Track

Defendants mischaracterize Plaintiffs' efforts to obtain relief for people who are kept in segregation-like conditions. *See id.* at 12-14. The ability to nominate additional units for ADOC to track is the necessary result of the harms created by keeping people in a cell for 22.5 hours a day or more, *see, e.g.*, Doc. 2868 at 3-4; the fact that units are created, moved, and eliminated at Defendants' sole discretion,[3]

---

[3] For example, Defendants intend to transfer prisoners currently kept in one of the Contested Units—death row at Holman—to a unit formerly used for formal segregation, underlining the importance of flexibility in the Court's approach to tracking functional segregation units. *See Holman Correctional Facility Decommissioning Status Updates*, http://www.doc.state.al.us/UpdatingNews (last visited July 15, 2020).

8

*see, e.g.*, Doc. 2805 at 9; and the imbalance of access to information in Defendants' favor. Although Dr. Perrien clarifies that she did not intend for her Proposal to apply to units beyond the Contested Units,[4] Doc. 2867-1 at 5-6, the Court made clear that it "intended for the proposal to be flexible enough to be applied during the duration of any relief ordered," Doc. 2824 at 15. Any nominations to track additional units would be in consultation with Plaintiffs' correctional staffing expert, Eldon Vail. If the Court wishes, the Court could require Mr. Vail to weigh in on the basis for any nomination to Defendants.

## V. Prison Litigation Reform Act

Contrary to what Defendants suggest, *see* Doc. 2867 at 4 n.5, the process for identifying functional segregation units does not constitute relief subject to the PLRA's need-narrowness-intrusiveness requirement, *see* 18 U.S.C. § 3626(a)(1)(A). The tracking process is a mechanism used to determine whether additional relief should apply to the tracked unit.[5]

However, if the Court determines that the PLRA applies to the tracking process, the tracking process (as proposed by Dr. Perrien and modified by Plaintiffs) would comply with the PLRA. The tracking process is necessary to determine

---

[4] Plaintiffs do not dispute that the tracking process would only apply to celled housing, not dormitory housing. *See* Doc. 2867-1 at 6 & n.3.

[5] As previously argued, the requested relief for functional segregation units satisfies the PLRA. *See* Doc. 2805 at 11-13; Doc. 2868 at 19-20.

whether units are functioning as segregation so that people kept in those units can obtain necessary relief. The tracking process is narrowly drawn and the least intrusive means necessary to address the constitutional violations identified by the Court because (1) it is largely based on the recommendations of Defendants' own consultant; (2) it is only to be used for a small universe of ADOC's units—the four Contested Units and any additional units that Plaintiffs, in consultation with their expert, believe in good faith to be operating as segregation; and (3) it offers Defendants the ability to seek exceptions from any remedial requirements that would otherwise apply once a unit is designated as functional segregation. For these reasons, if the Court determines that the tracking process is subject to the PLRA, the Court should conclude that it satisfies the PLRA.

Dated: July 17, 2020                        Respectfully Submitted,

                                             /s/ Lynnette K. Miner
                                            One of the Attorneys for Plaintiffs
                                            Southern Poverty Law Center
                                            400 Washington Avenue
                                            Montgomery, AL 36104

Ebony Howard
Lynnette K. Miner
Jaqueline Aranda Osorno
Jonathan Barry-Blocker
Brock Boone
**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, Alabama 36104

10

Telephone: (334) 956-8200
Facsimile: (334) 956-8481
ebony.howard@splcenter.org
lynnette.miner@splcenter.org
jackie.aranda@splcenter.org
jonathan.blocker@splcenter.org
brock.boone@splcenter.org

Lisa W. Borden
William G. Somerville, III
Patricia Clotfelter
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ PC**
420 20th Street North, Suite 1400
Birmingham, AL  35203
Telephone: (205) 328-0480
Facsimile: (205) 322-8007
lborden@bakerdonelson.com
wsomerville@bakerdonelson.com
pclotfelter@bakerdonelson.com

William Van Der Pol, Jr.
Glenn N. Baxter
Lonnie Williams
Barbara A. Lawrence
Andrea J. Mixson
Ashley N. Austin
**ALABAMA DISABILITIES
ADVOCACY PROGRAM**
Box 870395
Tuscaloosa, AL  35487
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
wvanderpoljr@adap.ua.edu
gnbaxter@adap.ua.edu
lwilliams@adap.ua.edu
blawrence@adap.ua.edu
amixson@adap.ua.edu
aaustin@adap.ua.edu

11

/s/ Anil A. Mujumdar
Anil A. Mujumdar
One of the Attorneys for Plaintiffs
Alabama Disabilities Advocacy Program
2170 Highland Avenue, Suite 250
Birmingham, AL 35213

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue, Suite 250
Birmingham, AL 35213
Telephone: (205) 729-8445
Facsimile: (205) 809-7899
anil@dagneylaw.com

Gregory M. Zarzaur
Denise Wiginton
**ZARZAUR**
2332 2nd Avenue North
Birmingham, AL 35203
Telephone: (205) 983-7985
Facsimile: (888) 505-0523
gregory@zarzaur.com
denise@zarzaur.com

**ATTORNEYS FOR THE PLAINTIFFS**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this <u>17th</u> day of <u>July</u>, 2020 electronically filed the foregoing with the clerk of court by using the CM/ECF system, which will send a notice of electronic filing to the following:

David R. Boyd, Esq.
John G. Smith, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL  36101-0078
dboyd@balch.com
jgsmith@balch.com

Steven C. Corhern, Esq.
Balch & Bingham LLP
Post Office Box 306
Birmingham, AL  35201-0306
scorhern@balch.com

Joseph G. Stewart, Jr., Esq.
Gary L. Willford, Jr., Esq.
Stephanie L. Smithee, Esq.
Alabama Department
Of Corrections
Legal Division
301 South Ripley Street
Montgomery, AL  36104
joseph.stewart@doc.alabama.gov
gary.willford@doc.alabama.gov
stephanie.smithee@doc.alabama.gov

Philip Piggott, Esq.
Webster Henry
Two Perimeter Park South
Suite 445 East
Birmingham, AL  35243
ppiggott@websterhenry.com

William R. Lunsford, Esq.
Matthew Reeves, Esq.
Melissa K. Marler, Esq.
Stephen C. Rogers, Esq.
Dustin D. Key, Esq.
Kenneth S. Steely, Esq.
Maynard, Cooper & Gale, P.C.
655 Gallatin Street, SW
Huntsville, AL  35801
blunsford@maynardcooper.com
mreeves@maynardcooper.com
mmarler@maynardcooper.com
srogers@maynardcooper.com
dkey@maynardcooper.com
ksteely@maynardcooper.com

Luther M. Dorr, Jr., Esq.
Maynard, Cooper & Gale, P.C.
1901 6th Avenue North, Suite 2400
Birmingham, AL  35203
rdorr@maynardcooper.com

Deana Johnson, Esq.
Brett T. Lane, Esq.
MHM Services, Inc.
1447 Peachtree Street, N.E., Suite 500
Atlanta, GA  30309
djohnson@mhm-services.com
btlane@mhm-services.com

/s/ Lynnette K. Miner
One of the Attorneys for the Plaintiffs