IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| EDWARD BRAGGS, et al., | ) | |
| | ) | |
|    Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
|    v. | ) | 2:14cv601-MHT |
| | ) | (WO) |
| JEFFERSON S. DUNN, in his | ) | |
| official capacity as | ) | |
| Commissioner of | ) | |
| the Alabama Department of | ) | |
| Corrections, et al., | ) | |
| | ) | |
|    Defendants. | ) | |


PHASE 2A OPINION AND ORDER REGARDING LONG-TERM SUICIDE
PREVENTION STIPULATIONS

Before the court is the defendants' motion to
terminate certain stipulations that were originally
entered without the 'need-narrowness-intrusiveness'
findings required by the Prison Litigation Reform Act
(PLRA). *See generally* Motion to Terminate (doc. no.
2924); *see also* 18 U.S.C. § 3626(a)(1)(A). The parties
will soon start discovery on the motion to terminate.
Before this begins, the court has determined that it is
necessary to clarify one aspect of the scope of the

motion: its application to the order regarding the long-term suicide-prevention stipulations.

Of the 15 orders identified by the defendants in their motion to terminate, 13 explicitly enjoined the defendants from failing to comply with their provisions.[1] One of the two that did not contain an express injunction nonetheless specifically ordered the defendants to undertake certain actions, such as maintaining a designation system for inmates with serious mental illness and providing training on the system to appropriate staff. *See* Phase 2A Order re: Segregation Remedy (doc. no. 1720) at 1-3. But the other identified by the defendants--the order regarding the long-term

_____

1.  *See* Understaffing Remedial Order (doc. no. 1657) at 1; Bibb Segregation Remedy (doc. no. 1751) at 2; Mental Health Coding Order (doc. no. 1792) at 2; Mental Health Intake Order (doc. no. 1794) at 2; Segregation Pre-Placement Order (doc. no. 1815) at 2; Mental Health Referral Order (doc. no. 1821) at 2; Treatment Planning Order (doc. no. 1865) at 2; Psychotherapy Order (doc. no. 1899) at 2-3; Confidentiality Order (doc. no. 1900) at 2; Mental Health Understaffing Order (doc. no. 2301) at 2; Mental Health Staffing Remedy (doc. no. 2688) at 2-3; Hospital-Level Care Order (doc. no. 2717) at 3); Mental Health Consultation Order (doc. no. 2718) at 3.

suicide-prevention stipulations--was entered without an injunction and ordered no action by the defendants. *See Order Approving Suicide-Prevention Agreement* (doc. no. 2699) at 1-2. As explained below, that order, unlike all of the other orders at issues in the termination proceedings, was never intended to be, and has never been, enforceable by the court, and it contains no provision for court enforcement. As such, the defendants' motion to terminate that order is improper and will be denied.

## I. BACKGROUND

The PLRA requires that a court entering prospective relief regarding prison conditions make findings on the record that the relief is "narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). This is generally referred to as the 'need-narrowness-intrusiveness' test. The defendants

3

are empowered by the statute to move at any time to
terminate orders entered "in the absence of" such a
finding.  *Id.* § 3626(b)(2).  After such a motion, the
relief will terminate unless the court determines that a
"current and ongoing violation" of federal law exists and
that the relief meets the need-narrowness-intrusiveness
test as to that ongoing violation.  *Id.* § 3626(b)(3).

In this case, over the course of two or three years,
the parties agreed to a series of stipulations resolving
significant aspects of the litigation's sprawling
remedial disputes.  At the request of the parties, the
court entered these stipulations as orders.  However,
these orders generally did not contain findings about
whether the provisions of the stipulations met the
need-narrowness-intrusiveness requirements of 18 U.S.C.
§ 3626(a)(1)(A).

In February 2019, the defendants raised as an issue
that these orders did not have PLRA findings.  The court
then scheduled an evidentiary hearing to determine
whether the stipulations met the need-narrowness-

**4**

intrusiveness requirements. In the meantime, by agreement of the parties, the court found that each of the orders "temporarily satisf[ied] the requirements of the PLRA" pending a final determination after the scheduled hearings. *See* Phase 2A Opinion and Interim Injunction (doc. no. 2716) at 4. These hearings were continued multiple times due to COVID-19 and efforts at mediation. They were eventually scheduled to begin on September 14, 2020, with the duration of the temporary PLRA findings extended no longer than December 30, 2020. *See* Phase 2A Order and Interim Injunction (doc. no. 2793) at 3; Phase 2A Revised Remedy Scheduling Order (doc. no. 2914) at 7.

In their pretrial brief, the defendants indicated an intent to move to terminate some or all of the orders scheduled for consideration. Defs.' Pretrial Br. (doc. no. 2908) at 55-57. In a subsequent motion to terminate in response to the court's request for clarification, the defendants identified various orders slated for consideration at the PLRA hearings, seeking termination

of these orders under 18 U.S.C. § 3626(b)(2) and (b)(1).
*See generally* Motion to Terminate (doc. no. 2924).  The
court is currently proceeding on this motion.

## II. LEGAL STANDARD

As the Eleventh Circuit has explained, "[t]he PLRA
altered the landscape of prison reform litigation in two
primary respects." *Cason v. Seckinger*, 231 F.3d 777, 780
(11th Cir. 2000).  First, it limits the "prospective
relief" that a district court may impose to only what is
"necessary to correct the violation of the Federal right
of a particular plaintiff or plaintiffs."  18 U.S.C.
§ 3626(a)(1)(A).  This requires the court to make
findings that the relief is "narrowly drawn, extends no
further than necessary ... and is the least intrusive
means necessary to correct the violation of the Federal
right."  *Id*.  The prospective relief limited by this
subsection includes court-enforceable consent decrees.
*See id.* § 3626(c)(1), (g)(1), (g)(6).

6

Second, the PLRA limits the continuation of such relief.  If prospective relief is ordered "in the absence of a finding by the court that the relief" meets the need-narrowness-intrusiveness test set forth in § 3626(a)(1)(A), a defendant may move to terminate the relief immediately.   18 U.S.C.  § 3626(b)(2). Alternatively, defendants may move to terminate relief ordered with such findings after two years, and then again one year after any denial of a motion to terminate. *See id*. § 3626(b)(1)(A).

Subsections (b)(1)(A) and (b)(2) are both limited by § 3626(b)(3).   That provision requires that the prospective relief "shall not terminate if the court makes written findings based on the record that prospective relief remains necessary to correct a current and ongoing violation of the Federal right, extends no further than necessary to correct the violation of the Federal right, and that the prospective relief is narrowly drawn and the least intrusive means to correct the violation."  *Id*. § 3626(b)(3).

7

The issue that the court planned to take up at the PLRA hearings was whether the stipulations entered in this case comply with the need-narrowness-intrusiveness test of § 3626(a)(1)(A).  *See* Phase 2A Order and Interim Injunction with Regard to Thirteen Stipulations (doc. no. 2793) at 1-3.  Throughout the lead-up to the hearings, the defendants maintained that § 3626(a)(1)(A) incorporates the current-and-ongoing violation requirement applicable to motions to terminate, making the standard under that provision identical to the standard under § 3626(b)(3).  The court has now held that subsection (a)(1) contains no such requirement.  *See generally Braggs v. Dunn*, 2020 WL 5517262 (M.D. Ala. Sept. 14, 2020) (Thompson, J.) (discussing the current-and-ongoing-violation standard).  Because the statutory provisions that apply to motions to terminate do require a showing of a current-and-ongoing violation, *see* 18 U.S.C. § 3636(b)(3), the court must determine whether the order regarding the long-term suicide-prevention stipulations is subject to a motion

**8**

to terminate and thus subject to that requirement.   The
court holds that it is not.

### III. SUICIDE-PREVENTION STIPULATIONS

Unlike the other orders identified by the defendants,
the parties' suicide-prevention stipulations are not
currently terminable for a simple reason: They are not
now and have never been subject to court enforcement.

Nearly all of the orders being considered at this
stage of the litigation were entered with identical
language.  In every case, the orders attached a set of
agreed-upon remedial provisions and issued an express
order that Defendants Dunn and Naglich "are ENJOINED and
RESTRAINED from failing to comply with the attached
provisions."  *See* Understaffing Remedial Order (doc. no.
1657) at 1 (referring to the defendants' "remedial plan"
rather than the "attached provisions," but otherwise
duplicating this language); Bibb Segregation Remedy (doc.
no. 1751) at 2 (using the above language); Mental Health
Coding Order (doc. no. 1792) at 2 (same); Mental Health

9

Intake Order (doc. no. 1794) at 2 (same); Segregation Pre-Placement Order (doc. no. 1815) at 2 (same); Mental Health Referral Order (doc. no. 1821) at 2 (same); Treatment Planning Order (doc. no. 1865) at 2 (same); Psychotherapy Order (doc. no. 1899) at 2-3 (same, but referring to the "stipulations" instead of the "attached provisions"); Confidentiality Order (doc. no. 1900) at 2 (using the above language); Mental Health Understaffing Order (doc. no. 2301) at 2 (same); Mental Health Staffing Remedy (doc. no. 2688) at 2-3 (same); Hospital-Level Care Order (doc. no. 2717) at 3) (same, but referring to the "stipulation"); Mental Health Consultation Order (doc. no. 2718) at 3 (same).

Of the two orders that did not replicate this language, one nonetheless included a series of actions that the defendants were ordered to take. That order, the Segregation Remedy, directed the defendants to modify its system for designating inmates with serious mental illness and to develop and provide training to relevant mental-health staff on the application of the modified

10

system.   *See* Phase 2A Order re: Segregation Remedy (doc. no. 1720) at 1-3.

The order regarding the long-term suicide-prevention stipulations, however, is quite different.   Unlike the other orders, it neither issued an injunction nor otherwise demonstrated the imposition of relief. Although this difference is apparent on the face of the order, the course of litigation leading to its entry further illuminates its distinct nature and lack of court-enforceability at this time.

In May 2019, the court issued an opinion and order imposing various requirements on the defendants related to suicide prevention.   *See generally Braggs v. Dunn*, 383 F. Supp. 3d 1218 (M.D. Ala. 2019) (Thompson, J.).   This opinion included provision-by-provision findings under the PLRA.   *See, e.g.*, *id.* at 1254.   Soon thereafter, the parties entered a short-term agreement on the subject and requested that the court stay its mandates and impose the stipulated short-term remedy instead.   *See* Joint Motion to Stay (doc. nos. 2560, 2560-1).   The court did so,

adopting temporary PLRA findings stipulated by the parties for that agreement. *See* Order (doc. no 2569); Order (doc. no. 2698). The short-term agreement is currently in effect, and the defendants have not moved to terminate it.

The parties later reached a separate agreement on long-term suicide relief. *See* Joint Filing of Agreements on Suicide Prevention Measures and Mental Health Staffing (doc. nos. 2606, 2606-1). The parties submitted that agreement to the court, and the court issued an order approving the stipulations. *See* Phase 2A Order Approving Suicide-Prevention Agreement (doc. no. 2699) at 1-2. However, in contrast to past practice, the court did not issue an associated injunction. *Id.* Instead, the enforceability of the order was put on hold and conditioned on the entry of final PLRA findings. *See id*. Indeed, on the record during the hearing to discuss whether to approve the long-term stipulations, the plaintiffs *explicitly* requested that the stipulations not be entered as an enforceable order until PLRA findings

could later be made, and the court agreed.  *See* Sept. 6,
2019, Rough Draft (R.D.) Hr'g Tr. at 33:11-34:24.  In the
meantime, the short-term stipulations and associated
temporary PLRA findings would remain in place as the
operative and enforceable agreement.  *See* Phase 2A
Revised Remedy Scheduling Order (doc. no. 2914) at 6
(noting that the short-term agreement is "[i]n effect
until court enters opinion regarding compliance of" the
long-term stipulations with the PLRA).

It is the long-term stipulations that the defendants
now seek to terminate.  *See* Motion to Terminate (doc. no.
2924) at 12, 16-17, 19, 21.  But because the court has
not yet issued an opinion about the compliance of these
stipulations with the PLRA, the long-term agreement has
never been entered as an enforceable consent decree, or
as any other form of court-mandated "prospective relief."
*See* 18 U.S.C. § 3626(a)(1)(A), (c)(1), (g)(1).[2]  As such,

---

2. Defense counsel has expressed confusion about
the implications of the court's styling of the order
approving the long-term stipulations as "order[ing]"
their approval.  *See* Defs.' Response to the Court's Order

the defendants are not currently empowered by the statute to move to terminate it.[3]

The defendants' motion will therefore be denied as to the suicide-prevention stipulations, for, as explained above, there is no enforceable relief yet to terminate.

Accordingly, it is ORDERED that the motion to terminate will be denied as to the order on the long-term suicide-prevention stipulations (doc. nos. 2699 & 2699-

---

(doc. no. 2970) at 5. While the court does not think there is any confusion with regard to whether the long-term stipulations are enforceable at this time, the court now makes unequivocal that its intent was not to impose remedial obligations, but merely to indicate approval of the stipulated agreement pending PLRA findings. *Cf. Spates v. Manson*, 619 F.2d 204, 209 n.3 (2d Cir. 1980) (Friendly, J.) (holding that "nothing turns on the use of the word 'judgment'" and that an order's finality as a remedial mandate "turns on what has been ordered, not on how it has been described").

3. The court notes that a separate provision of the PLRA, § 3626(c)(2), governs agreements between the parties that are not subject to court enforcement, and it expressly condones such agreements regardless of whether they comply with the need-narrowness-intrusiveness requirements of § 3626(a)(1)(A). Nothing in the statutory text entitles a defendant to use the vehicle of the PLRA's termination provisions to seek relief from such agreements.

14

1).   The court will determine at a later date how and when to make PLRA findings on those stipulations under § 3626(a)(1)(A).

DONE, this the 23rd day of September, 2020.

_____/s/ Myron H. Thompson_____
UNITED STATES DISTRICT JUDGE