IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| EDWARD BRAGGS, et al.,            ) | |
| )  | |
|     Plaintiffs,            ) | |
| )  | CIVIL ACTION NO. |
|     v.            ) | 2:14cv601-MHT |
| )  | (WO) |
| JEFFERSON S. DUNN, in his            ) | |
| official capacity as            ) | |
| Commissioner of            ) | |
| the Alabama Department of            ) | |
| Corrections, et al.,            ) | |
| )  | |
|     Defendants.            ) | |

PHASE 2A OPINION AND ORDER ON GOOD CAUSE

The defendants have filed a motion to terminate certain stipulated remedial orders entered in this case that were originally put in place without the 'need-narrowness-intrusiveness' findings required by the Prison Litigation Reform Act (PLRA). *See generally* Motion to Terminate (doc. no. 2924); *see also* 18 U.S.C. § 3626(a)(1)(A). The PLRA imposes a mandatory stay of any prospective relief 30 days after a motion to terminate that relief is filed, continuing until the motion is resolved. *See* 18 U.S.C. § 3626(e)(2)(A)(i).

The defendants initially indicated their intent to seek termination of the stipulated remedial orders in a brief filed August 31, 2020, so the court assumes the mandatory stay should be scheduled to take effect on September 30. *See* Defs.' Pretrial Br. (doc. no. 2908) at 55-57. The court may postpone this automatic stay for up to 60 days for good cause, as long as the postponement is not made to accommodate "general congestion of the court's calendar." 18 U.S.C. § 3626(e)(3).

Now before the court is the plaintiffs' motion for a postponement. *See generally* Pls.' Motion to Postpone Stay (doc. no. 2980). For the reasons below, the court finds that good cause exists to postpone the operation of the automatic stay for 60 days. The stay set to begin on September 30 will start on November 29 instead.

## I.  BACKGROUND

Over the course of several years, the parties in this longstanding class action agreed to a series of stipulations to resolve significant aspects of the

2

litigation's sprawling remedial dispute. At the request of the parties, the court entered these stipulations as orders. The court assumed that the parties agreed that these stipulations complied with the PLRA. However, the orders entered before February 2019 generally did not contain findings as to whether the provisions of the stipulations met the 'need-narrowness-intrusiveness' test established by 18 U.S.C. § 3626(a)(1)(A). The PLRA gives defendants the right to move to terminate orders entered without such findings at any time. *See* 18 U.S.C. § 3626(b)(2).

The court scheduled an evidentiary hearing to determine whether these entered stipulations met the need-narrowness-intrusiveness requirement of the PLRA. At the close of the defendants' pretrial brief, they exercised their rights under the PLRA and moved to terminate many or all of the remedial orders that were scheduled for consideration at the PLRA hearings. *See* Defs.' Pretrial Br. (doc. no. 2908) at 55-57.

3

The court asked the defendants to provide a motion to terminate separate from the pretrial brief to clarify which orders or provisions they sought to terminate and under what statutory provisions they sought termination. In their subsequent motion, they identified various provisions of each of the stipulations slated for consideration at the PLRA hearings and sought termination of these provisions. *See generally* Motion to Terminate (doc. no. 2924). The defendants have vacillated repeatedly about whether the lists of provisions identified in their motion are exhaustive, returning intermittently to a position asserted in the pretrial brief that their intent is to terminate all of the stipulated remedial orders in their entirety. *See* Defs.' Response to the Court's Order (doc. no. 2970) at 4 (noting intent to seek termination of every provision of every order, including provisions not mentioned in the motion to terminate). *But see, e.g.*, Motion Hearing Tr. (doc. no. 2955) at 51-52 (stating the opposite); Motion to Terminate (doc. no. 2924) at 8 (indicating that the

4

motion to terminate "provides a list of all provisions ... that [the State] currently believes must be terminated or modified").

The motion to terminate remains pending. The remedial orders identified therein are thus subject to the automatic stay mandates of 18 U.S.C. § 3626(e) until the court resolves the motion.

## II. LEGAL STANDARD

As mentioned above, the PLRA permits district courts to postpone the operation of the automatic stay mandated by 18 U.S.C. § 3626(e)(2)(A) for up to 60 days "for good cause." 18 U.S.C. § 3626(e)(3). There is little case law interpreting this provision, but what exists suggests that the threshold for finding good cause is not high.

The Supreme Court has called the 'good cause' standard of § 3626(e)(3) "relatively generous." *Miller v. French*, 530 U.S. 327, 340 (2000). Moreover, Judge Bybee of the Ninth Circuit, dissenting from a case that upheld the imposition of a lengthy notice requirement on

5

defendants before filing a motion to terminate because of the burden of preparing to defend against such motions, still found that good cause should be all but presumed in labyrinthine class actions like the present litigation.  *See Plata v. Brown*, 754 F.3d 1070, 1082 (9th Cir. 2014) (Bybee, J. dissenting).  As Judge Bybee wrote: "Good cause presumably exists in unusually complex cases like this one."  *Id.*

### III. GOOD CAUSE

The court finds that good cause exists in this case to postpone the operation of the automatic stay for 60 days.  The evidentiary burden on the plaintiffs to compose a defense of these orders, the breadth and complexity of the remedial relief on which the plaintiffs must now seek discovery, and the compressed schedule the PLRA sets forth--compressed further by the uncertainty regarding the intended scope of the defendants' motion--convince the court that the circumstances here

meet the "relatively generous" good cause threshold of § 3626(e)(3).

The plaintiffs first received notice of the defendants' motion to terminate in the state's pretrial brief on the eve of a series of hearings on a separate PLRA issue, hearings for which the parties had spent more than a year preparing. *See* Phase 2A Revised Remedy Scheduling Order (doc. no. 2537) at 3-4 (initially scheduling the hearings for July 2019). The court recognizes that this put the plaintiffs in the difficult position of not only having to turn the ship around, but to get going almost instantly in another direction. The plaintiffs were required to end their preparation for those hearings, reassess their arguments under a different legal standard, *see generally Braggs v. Dunn*, 2020 WL 5517262 (M.D. Ala. Sept. 14, 2020) (discussing the "current and ongoing violation" standard that governs motions to terminate), conceive a discovery plan to meet the newly applicable standard, and ready themselves to defend a substantial part of the case's remedial scheme

7

from being wiped clean. The plaintiffs indicated on the record at a hearing on September 9 that they would need significant discovery as to current conditions in ADOC facilities to be fairly prepared to present their defense. *See* Motion Hr'g Tr. (doc. no. 2955) at 76-77 ("[I]t would be akin to essentially redoing a lot of the liability trial over again."). This is, simply put, a task that takes more than the 30 days the PLRA permits by default.

The default deadline has been made all the more infeasible as the plaintiffs continue to labor under confusion about exactly which provisions or orders the state is moving to terminate. The defendants' pretrial brief appeared to express an intent to seek wholesale termination of all of the orders. *See* Defs.' Pretrial Br. (doc. no. 2908) at 57. The defendants' motion to terminate, at several points, suggested the opposite. *See, e.g.*, Motion to Terminate (doc. no. 2924) at 8 ("Below, the State provides a list of all provisions by categorical objection that it currently believes must be

8

terminated or modified."). Perhaps most puzzlingly, when asked about this ambiguity on the record at the September 9 status conference, defense counsel told the court in no uncertain terms that the defendants were moving to terminate only specified provisions of orders, not all of the orders in their entirety. *See* Motion Hr'g Tr. (doc. no. 2955) at 51-52. The court conducted the following exchange with defense counsel during that conference:

> "THE COURT: Just some clarification, Mr. Lunsford. With your motion to terminate, are you seeking to terminate all orders or just portions of orders?
>
> "MR. LUNSFORD: Your Honor, mostly what we're moving to terminate is the portions of the orders that we've identified in the motion to terminate. There are some orders in their entirety that we believe should not be finalized or carried further, and so that--there are some discrete orders we've identified, but for the most part it is discrete parts.
>
> "THE COURT: Okay. So, then, you're seeking to terminate some whole orders and some parts of orders?
>
> "MR. LUNSFORD: That's correct, but mostly parts. Just a few orders in their entirety.
>
> "THE COURT: Okay. Very good. That helps a lot. And you've identified that for us; right?

9

>MR. LUNSFORD: Yes, sir, we have. We identified all those sections to the extent we could in the--in our motion to terminate."

*Id.*

At the September 17 and 18 status conferences, less than two weeks before the default date for the automatic stay, the defendants purported to clarify that in fact they sought to terminate all of the remedial orders in their entirety.  *See, e.g.*, Sept. 18, 2020, Motion Hr'g R.D. Tr. at 3:16-4:2.  But at a subsequent status conference on September 23, the defendants seemed to advance yet another position on which orders or provisions are at issue, indicating that they intended to terminate in their entirety the remedial orders entered more than two years ago--the majority, but not all, of the orders identified in the motion to terminate--and only certain provisions from the more recent orders.  *See* Sept. 23, 2020, Motion Hr'g R.D. Tr. at 14:16-19, 17:19-21, 19:6-20.

In another twist, the defendants have indicated that they may only seek to modify, rather than terminate, some

10

orders or provisions they identify as having been made unworkable by the coronavirus pandemic.  But they have said they won't be able to clarify for the court or the plaintiffs what orders they seek only to modify or how they seek to modify them until the close of business on September 29, one day before the stay is scheduled to go into effect.  *See id.* at 5:15-6:11, 24:21-25:12.  Even if it were true, as the defendants argue, that the extent of the necessary discovery does not alone provide a basis for good cause, *see* Defs.' Rule 26(f) Report (doc. no. 2976) at 1 n.2,[1] the defendants' persistent mercuriality since filing their motion about which orders or

---

1.  The court finds it difficult to square this argument with the Eleventh Circuit's repeated insistence that a district court abuses its discretion by failing to provide plaintiffs an evidentiary hearing and adequate opportunity to supplement the record when faced with a motion to terminate.  *See Cason v. Seckinger*, 231 F.3d 777, 782-83 (11th Cir. 2000); *Loyd v. Ala. Dep't of Corrs.*, 176 F.3d 1336, 1342 (11th Cir. 1999).  Following the defendants' argument would seem particularly problematic in the circumstances of this case, where the coronavirus pandemic presents a new and significant issue on which plaintiffs have never had discovery.

11

provisions they seek to terminate and the plaintiffs' fair confusion on that question would still justify postponing the stay.[2]

The plaintiffs additionally note that courts have found good cause based on indicia in the existing record of continuing constitutional violations. *See* Pls.' Motion to Postpone Stay (doc. no. 2980) at 1-2. The parties disagree about how fulsome such indicia must be to support a finding of good cause. They cite a smattering of mostly unreported cases in which district courts across the country have articulated various views of the requirements for a finding of good cause based on evidence of ongoing constitutional violations: for instance, as requiring only "allegations" of

---

2. The ongoing coronavirus pandemic will likely make the plaintiffs' task of developing evidence even more difficult because of the complications it has created for legal visitors attempting to enter prisons and interview prisoners. Indeed, the defendants have argued that the risks caused by the pandemic should prevent the plaintiffs' expert from conducting any facility inspections whatsoever in preparation for the termination hearings. *See* Defs.' Rule 26(f) Report (doc. no. 2976) at 1 n.2.

12

constitutional deficiency, see *Skinner v. Uphoff*, 410 F. Supp. 2d 1104, 1112 (D. Wyo. 2006) (Brimmer, J.), "evidence arguably supporting" such allegations, see *Lancaster v. Tilton*, 2007 WL 4145963, at *1 (N.D. Cal. Nov. 19, 2007) (Alsup, J.), a "strong indication in the record that a constitutional violation persists," *Balla v. Idaho State Bd. of Corrs.*, 2019 WL 9831023, at *1 (D. Idaho Mar. 28, 2019) (Winmill, J.) (quoting 3 Michael B. Mushlin, *Rights of Prisoners* § 17:10 (5th ed. 2018)), or, most stringently, that the record already demonstrates "widespread constitutional violations," see *Merriweather v. Sherwood*, 235 F. Supp. 2d 339, 344 (S.D.N.Y. 2002) (McMahon, J.).³

---

3. Although the court takes no position today on which (if any) of these formulations accurately characterizes the necessary showing for good cause based on evidence of current violations, the district court's dictum in *Merriweather* appears incompatible both with the Eleventh Circuit's mandate that plaintiffs must be allowed an opportunity to develop a record of current violations before determinations are made regarding a motion to terminate, see *Cason*, 231 F.3d at 782-83; *Loyd*, 136 F.3d at 1342, and with the Second Circuit's position at the time *Merriweather* was decided that the good cause postponement provision exists in part to "provide

As recently as September 2, 2020, the court observed that "ADOC has *still* not adequately monitored its provision of mental-health care," that "ADOC has been unable or unwilling to take necessary steps to monitor its own practices," and that "external monitoring is *necessary* to address ongoing constitutional violations." *Braggs v. Dunn*, -- F. Supp. 3d ---, 2020 WL 5231302, at *21, *27-28 (M.D. Ala. Sept. 2, 2020) (emphases in original). But the court sees no need to rule on whether the existing evidence of ongoing constitutional violations provides an independent basis for good cause in light of the extraordinary complexity of the issues on which the parties must prepare to present evidence and the continuing opacity about what orders or provisions are being challenged.

---

plaintiffs with 'an opportunity to present evidence showing the need for continuation of prospective relief,'" see *Merriweather*, 235 F. Supp. 2d at 344 (quoting *Benjamin v. Jacobson*, 172 F.3d 144, 166 (2d Cir. 1999)).

14

As other courts contemplating motions to terminate in complex cases like this one have noted, the mandate of § 3626(b)(3) that the plaintiffs must show a "current and ongoing violation" of federal law and that each order "remains necessary to correct" that violation tends to require the development of "substantial evidence" and a "detailed factual inquiry." *See Plata v. Brown*, 2013 WL 654996, at *1 (N.D. Cal. Feb. 21, 2013) (Henderson, J.). In light of the nigh-insurmountable difficulty that the 30-day default deadline places on parties preparing for such hearings when the remedial disputes are as expansive and nuanced as those presented here, Congress created the 60-day extension to allow the parties enough time to put together a fair and adequate case while still ensuring that the court rules promptly on termination motions. *See Plata*, 754 F.3d at 1082 (Bybee, J., dissenting). A default schedule that would at best be implausible was here made impossible by the frequent changes in the defendants' position about precisely what relief they sought to terminate. Granting an extension today

15

appropriately recognizes the immensity of the task that the court and the parties face at this juncture.

For all of these reasons, pursuant to 18 U.S.C. § 3626(e)(3), the court finds good cause to postpone for 60 days the automatic stay of the remedial orders identified in the defendants' motion to terminate.

Accordingly, it is ORDERED that:

(1) The plaintiffs' motion to postpone the stay (doc. no. 2980) is granted.  The automatic stay of the orders identified in the defendants' motion to terminate (doc. no. 2924) will be postponed by 60 days under 18 U.S.C. § 3626(e)(3).

(2) The orders that are identified in the motion to terminate and that are properly subject to that motion will be stayed on November 29, 2020, unless the court finds before then that the relief meets the requirements of 18 U.S.C. § 3626(b)(3).

DONE, this the 24th day of September, 2020.

                               /s/ Myron H. Thompson
                              UNITED STATES DISTRICT JUDGE