# **<u>EXHIBIT F</u>**



# State of Alabama
# Department of Corrections

Alabama Criminal Justice Center
301 South Ripley Street
P. O. Box 301501
Montgomery, AL 36130-1501
(334) 353-3883



**KAY IVEY**
GOVERNOR

**Jefferson Dunn**
COMMISSIONER

August 20, 2020

ADMINISTRATIVE REGULATION          OPR:  HEALTH SERVICES
NUMBER     640

## ADVANCED INPATIENT MENTAL HEALTHCARE

**I.**       <u>GENERAL</u>

This Alabama Department of Corrections (ADOC) Administrative Regulation (AR) establishes the responsibilities, policies, and treatment procedures for inmates whose mental health treatment needs exceed the capabilities available within the prison system.  Neither this Administrative Regulation nor anything contained in this Administrative Regulation shall be construed to create or recognize any liberty or property interest in advanced inpatient mental healthcare or any other terms, condition, or provisions in this Administrative Regulation.

**II.**       <u>POLICY</u>

It is ADOC's policy, by means of its contracted health services vendor, to appropriately diagnose, treat, and manage inmates with serious mental health needs in a humane, safe environment that is sensitive and responsive to each inmate's mental health needs. When the mental health needs of an inmate require an advanced inpatient level (or "hospital-level") care, ADOC will secure such care at a mental health inpatient treatment center.

**III.**       <u>DEFINITION(S) AND ACRONYM(S)</u>

Refer to AR 602 (amended) *Mental Health Definitions and Acronyms*.

     A.    **<u>ADOC Director of Psychiatry (DOP)</u>:**  A board-certified psychiatrist within the ADOC Office of Health Services, whose responsibilities include oversight of mental health treatment services provided to persons incarcerated within the ADOC system.

     B.    **<u>Diagnostic and Statistical Manual of Mental Health Disorders (DSM)</u>:** The widely-used diagnostic classification system published by the American Psychiatric Association.  ADOC uses the most recent version (the DSM-5).  Some older records may reference the previous version (the DSM-IV).

C.  **Facility Medical Director (FMD):** An Alabama licensed physician (medical doctor or doctor of osteopathy), employed by ADOC's contracted health services vendor, who acts as the primary treating physician for all inmates housed within an ADOC facility and who is designated as the "Health Authority."

D.  **Imminent Danger:** The existence of a substantial likelihood that the inmate will act to harm herself / himself or others in the immediate foreseeable future.

E.  **Stabilization Unit (SU):** A mental health inpatient treatment center designed to provide intensive treatment to inmates experiencing acute mental health problems when brief crisis interventions at other ADOC institutions have been unsuccessful in assisting the inmate in achieving prior levels of functionality.

F.  **Mental Health Inpatient Treatment Center (MHITC):** A licensed ADOC or private mental health inpatient treatment center, with the capability to provide comprehensive mental health treatment (including hospital-level care) to inmates in ADOC's custody.

G.  **Qualified Mental Health Professional (QMHP):** Licensed psychiatrists, psychologists, licensed counselors, psychiatric social workers, psychiatric nurses, and others who by virtue of their education, credentials, and experience are permitted by law to evaluate and care for the mental health needs of patients.

H.  **Residential Treatment Unit (RTU):** A specialized housing placement for treating inmates with mental illness who are at risk for psychiatric deterioration in a less restrictive setting.  This may be a short-term residential placement for inmates to resolve crises, or may be a long-term residential placement for those inmates with chronic limitations in their mental functioning.

I.  **Serious Mental Illness (SMI):** Psychotic Disorders, Bipolar Disorders, and Major Depressive Disorder; any diagnosed mental disorder (excluding substance use disorders) currently associated with serious impairment in psychological, cognitive, or behavioral functioning that substantially interferes with the person's ability to meet the ordinary demands of living and requires an individualized treatment plan by a qualified mental health professional(s). (American Correctional Association, *Restrictive Housing Expected Practices, January, 2018*)

J.  **Structured Living Unit (SLU):** An outpatient diversionary unit that provides an alternative to a Restrictive Housing Unit (RHU) for inmates flagged as having a SMI.  Inmates who are clinically determined to require a higher level of mental health care (RTU or SU) are not eligible for the SLU.

K.  **Director of Psychiatric Services (DPS):** An Alabama licensed physician who is board certified in the healthcare specialty of psychiatry, employed by ADOC's contracted health services vendor.

## IV.     RESPONSIBILITIES

A.     The DOP is responsible for potentially confirming the need for advanced inpatient mental health treatment, performing the annual assessment of beds for advanced inpatient mental health care, and reviewing inmates at a MHITC.

B.     The mental health vendor, including its DPS, FMD, and treating psychiatrists, are responsible for confirming the need for advanced inpatient mental health treatment, pursuing admission of inmates to a MHITC, complying with the pre- and post-transfer and post-discharge requirements, and quality improvement review and tracking procedures.

C.     The MHITC is responsible for providing advanced inpatient mental health care and other goods and services consistent with this Administrative Regulation and its contract with ADOC.

## V.      PROCEDURES

A.     **Access to Advanced Inpatient Hospital-Level Care**

1.     Advanced Inpatient Hospital-Level of Care. Advanced inpatient mental health treatment represents the most intensive level of psychiatric care. A multidisciplinary assessment and multimodal intervention is provided within a 24-hour skilled, secure, protected, and psychiatrically supervised treatment environment. Twenty-four (24) hour skilled psychiatric nursing care, daily medical care, and structured treatment milieu are provided. The goal of advanced inpatient mental health care is to stabilize inmates who display acute psychiatric disorders associated with a relatively sudden onset and a short, severe course, or a marked exacerbation of symptoms associated with a more persistent, recurring psychiatric disorder. Typically, the inmate poses an imminent danger to herself / himself or others, or displays a severe psychological dysfunction. Additionally, the inmate has been evaluated by a psychiatrist, demonstrated symptomology consistent with her or his DSM diagnosis, and can be reasonably expected to respond to therapeutic intervention.

2.     Current Access to MHITC. An inmate with a SMI occasionally requires advanced inpatient mental health care. ADOC secured advanced inpatient mental health care at one (1) or more MHITCs.

3.     Obligations on ADOC's Contracted MHITC. ADOC's contracted MHITC will (among other things):

a.     Collaborate with the inmate's current mental health provider and treatment team in its initial evaluation;

b.     Provide all appropriately licensed program and treatment staff necessary to provide advanced inpatient mental health services and treatment programs;

c. Provide all mental health services and treatments found to be appropriate by the treatment team;

d. Provide all necessary facilities, equipment, materials, and supplies necessary for the advanced inpatient mental health care;

e. Administer all medications prescribed to the inmate;

f. Perform standard medical and psychiatric diagnosis procedures;

g. Supervise inmate's movement;

h. Provide basic housekeeping and food services;

i. Contact the FMD if an inmate develops a medical condition after admission to the MHITC; and

j. Collaborate with the FMD to evaluate the assessment, diagnosis, and treatment of inmate while at the MHITC.

k. Notwithstanding Sections a. through i. above, ADOC's contracted MHITC may resolve medical emergencies without collaboration with the FMD, provided, however, that ADOC's contracted MHITC must report the medical emergency, explain the medical care provided, the inmate's diagnosis and prognosis, and provide all medical records evidencing the emergency medical care within twenty-four (24) hours of the onset of the medical emergency.

l. If the transfer of an inmate from the MHITC is necessary to provide a level of medical care that cannot be provided at the MHITC, then the FMD must be contacted for approval and disposition of the case.

m. If the medical condition affecting the inmate interferes with her or his psychiatric care, the inmate must be discharged to ADOC's contracted medical provider assigned by ADOC to resolve the medical condition.

4. Annual Reassessment of Need for Additional MHITC or Advanced Inpatient Beds. ADOC (through its DOP and others) will annually reassess its need for MHITCs and/or beds for advanced inpatient mental health care at existing MHITCs for inmates in ADOC's custody. ADOC's reassessment will include a consideration of, among other things, the frequency of use and vacancy of beds, the timeliness or delay associated with an admission to a MHITC or advanced inpatient mental health care facility, the refusal of admission to any MHITCs, and the types of services and treatment options available for ADOC inmates. The assessment and considerations shall be in writing. If ADOC determines that its needs have changed for MHITCs and/or advanced inpatient beds at existing MHITCs, then ADOC will revise or pursue an agreement with the new or existing MHITCs. Notwithstanding the foregoing, for the period of at least two (2)

years from the date of this AR, ADOC will have at least fourteen (14) dedicated beds for ADOC inmates.

5.  Admission to Additional MHITCs or Advanced Inpatient Beds. ADOC may admit inmates for advanced inpatient mental health care to facilities in addition to those it currently possesses a contract with, provided that the facility meets the requirements contained in this AR.

6.  Involuntary Commitment. Notwithstanding anything to the contrary in this AR, ADOC hereby reserves the right to and may initiate involuntary commitment proceedings pursuant to Administrative Regulation 634 (as amended by Administrative Regulation 634-1) and Alabama Code § 22-52-1.1, *et seq.*

**B.  Evaluation and Confirmation of Need**

1.  Evaluation of Inmate's Need. In evaluating an inmate's need for advanced inpatient mental health care, a treating and/or consulting psychiatrist will evaluate the existence or occurrence of one or more of the following events and/or conditions:

    a.  An inmate housed in a SU who (consistent with the timeframes and processes set out in Section 4.1.3 of the Psychotherapy Order [Doc. No. 1899-1]) has not stabilized sufficiently to be transferred to a RTU or general population;

    b.  An inmate presents a sustained, imminent danger to herself / himself or others due to acute psychosis or other psychiatric symptoms or dysfunction that does not respond to intervention within ADOC's mental health treatment venues;

    c.  An inmate requires continuous skilled observation, evaluation, and/or treatment available only in an advanced inpatient environment;

    d.  An inmate requires intensive treatment, protection, and a safe therapeutic environment for herself / himself and/or the protection of others;

    e.  An inmate expresses suicidal ideations, engages in repeated self-mutilation, or engages in assaultive threats or behavior with risk of escalation or future repetition;

    f.  An inmate experiences persistent command hallucinations directing harm to himself /herself or others;

    g.  An inmate engages in disordered or bizarre behavior or psychomotor agitation that interferes with the activities of daily living to such a degree that the inmate cannot function at a less intensive level of care;

h.  An inmate demonstrates disorientation or memory impairment, which is due to a DSM diagnosis, that endangers the welfare of himself / herself or others; or

i.  An inmate experiences severe side-effects of atypical complexity from using therapeutic psychotropic drugs warranting continuous monitoring while undergoing titration of medication before initiation of new medication therapy.

j.  Notwithstanding Sections a. through i. above, the evaluation of an inmate's need for, and decision to transfer that inmate to advanced inpatient mental health care relies upon the clinical judgment of the treating and/or consulting psychiatrist.

2.  <u>Confirmation of Inmate's Need.</u> The DPS and/or treating psychiatrist will confirm that the inmate meets the needs for admission to a MHITC. To do so, the DPS and/or treating psychiatrist will, at a minimum, review the inmate's medical and mental health record, conduct a clinical face-to-face interview with the inmate, and document the basis for the decision to transfer the inmate to a MHITC on Form MH-078.

**C.  Admission Decisions**

1.  The DPS and/or the inmate's treating psychiatrist will identify inmates on the mental health caseload and with a mental health diagnosis housed within a SU (consistent with the timeframes and processes set out in Section 4.1.3 of the Psychotherapy Order [Doc. No. 1899-1]), RTU, or SLU who may benefit from advanced inpatient mental health care.

2.  For any inmate identified who may benefit from advanced inpatient mental health care, the inmate's treating psychiatrist will:

a.  Complete a psychiatric evaluation in conformance with Administrative Regulation 615 (as amended by Administrative Regulation 615-1); and

b.  Complete ADOC Form MH-078, including documenting the evaluating psychiatrist's findings, and place the original, completed ADOC Form MH-078 in the inmate's medical record and send a copy to the DOP within one (1) working day of completion.

3.  Within seventy-two (72) hours of receipt of a complete ADOC Form MH-078, the DPS will review the inmate's medical record and assessment.

4.  The DPS will determine if admission to a MHITC is in the best interest of the inmate and, within eight (8) hours of her or his review, prepare a request for admission to a MHITC or document a recommendation of postponement of admission for an additional forty-eight (48) hours.

5.  If the DPS defers a decision pending further review, then his or her decision to either admit the inmate to a MHITC (and the preparation of an order for admission to a MHITC) or to deny the inmate admission to a MHITC (and documentation of that decision) must be made within forty-eight (48) hours of the recommendation to hold pending further review. A decision to hold pending further review shall be documented, including the clinical reason for the decision to hold pending further review.

## D.  Pre-Transfer Requirements

1.  Between the time when an inmate presents for consideration of a transfer to a MHITC and a decision is made, and during any wait pending transfer to a MHITC, an inmate will have access to psychotherapy consistent with the *Braggs v. Dunn* Phase 2A Order and Injunction on Mental Health Psychotherapy and Confidentiality Remedy (Doc. No. 1899-1) and treatment team meetings and plans consistent with the *Braggs v. Dunn* Phase 2A Order and Injunction on Mental Health Individualized Treatment Planning Remedy (Doc. No. 1865-1).

2.  Before transferring an inmate to a MHITC and/or advanced inpatient mental health care facility, the DPS and inmate's treating physician will collaborate with the FMD to assess the inmate's current medical needs and treatment to obtain a medical clearance for transfer to a MHITC.

3.  An inmate determined by ADOC's mental health vendor to need advanced inpatient mental health care at a MHITC will be transported to a MHITC within three (3) business days of such determination by the DPS and/or treating psychiatrist. A decision to admit an inmate to a MHITC will be made by the MHITC, relying solely on the MHITC's determination of the inmate's clinical need. If a MHITC decides not to admit an inmate, then the MHITC must explain in writing the rationale for its decision and identify all admission criteria that the inmate fails to meet. A copy of the MHITC's denial of admission will be placed in the inmate's mental health record. For any denial of admission due to an error in paperwork alone, ADOC will provide the corrected paperwork to the MHITC expeditiously, but in no case longer than eight (8) hours after ADOC is notified of the error.

4.  Prior to transfer to a MHITC, the DPS and the inmate's treating psychiatrist will ensure pertinent medical records, including, for example, psychological evaluations, psychological evaluation updates, treatment plans, treatment plan reviews, progress notes, psychotropic medication reports, and a transfer note (consistent with Section 3.2 of the Treatment Planning Order [Doc. No. 1865-1]), are collected, copied, and sent to the MHITC prior to the inmate's arrival or at the time of transport to ensure the continuity of medical and mental health care upon transfer to an MHITC.

E.   **Post-Transfer Requirements**

1.   An inmate admitted to a MHITC may not be transferred to a different MHITC or another advanced inpatient mental health care facility, unless a clinically significant reason exists for the transfer. All clinically significant reasons for an inmate's transfer to a different MHITC or another advanced inpatient mental health care facility must be documented in the inmate's chart.

2.   If an inmate refuses to take his or her medications, then a MHITC that does not possess an involuntary medication process similar to the notice and hearing obligations contained in the Phase 2A Involuntary Medication Consent Decree (Doc. No. 1354), or otherwise possess a procedure compliant with *Washington v. Harper*, 494 U.S. 210 (1990), will either (i) discharge and return the inmate to a ADOC facility to complete the process contained in the *Braggs v. Dunn* Phase 2A Involuntary Medication Consent Decree, or (ii) complete the process contained in the Phase 2A Involuntary Medication Consent Decree at the MHITC. Any inmate discharged to ADOC custody who remains in need of advanced inpatient mental health care will be readmitted to a MHITC or another advanced inpatient mental health care facility after completing the IVM process.

F.   **Post-Discharge Requirements**

1.   Following an inmate's discharge from MHITC placement, the DPS and the inmate's treating psychiatrist will:

   a.   Ensure pertinent medical records for treatment obtained while at a MHITC, including, for example, psychological evaluations, psychological evaluation updates, treatment plans, treatment plan reviews, progress notes, psychotropic medication reports, and a discharge note (consistent with Section 3.11(e) of RFP No. 2018-04]), are copied, and sent with the inmate at the time of return to an ADOC facility or as soon as possible thereafter to ensure the continuity in care;

   b.   Assist the inmate with reintroduction into an ADOC facility; and

   c.   Facilitate the continuity of all medical and mental health care after the inmate is reintroduced to an ADOC facility.

2.   For a period of ninety (90) days after an inmate returns from a MHITC, the inmate must continue to receive the same medications prescribed on the date of discharge from the MHITC, including any non-formulary medications, so long as the inmate is clinically stable. An inmate's medication may be changed, as clinically appropriate, after such 90-day period with the clinical rationale for the decision documented in the inmate's chart. The clinical rationale for a medication change after the initial 90-day period may not

consider if the currently prescribed medication is formulary or non-formulary.

**G.    Quality Improvement and Tracking**

1.    The DPS or her / his designee will gather statistical data for each inmate admitted to a MHITC and prepare a monthly report to include the following information for each inmate:

    a.    the date of the submission of ADOC Form MH-078;

    b.    the admission diagnoses;

    c.    the date of admission to a MHITC;

    d.    the length of stay at a MHITC; and

    e.    the date of discharge from a MHITC.

2.    The monthly report will be maintained by ADOC's contracted health care services vendor and provided to the DOP and ADOC's Associate Commissioner of Health Services or their designee.

3.    The DOP and DPS will, at a minimum, meet quarterly to review the status of each inmate at an MHITC, review her or his treatment, identify any issues of concern, and communicate any issues of concern with ADOC's contracted MHITC.

4.    The DOP and/or Associate Commissioner of Health Services may designate additional QMHPs to attend the quarterly meetings and provide input as to an inmate's assessment, diagnosis, and treatment at an MHITC.

**VI.    DISPOSITION**

Refer to AR 601 (as amended) *Mental Health Forms and Disposition*.

**VII.    FORMS**

Refer to AR 601 (as amended) *Mental Health Forms and Disposition* for any ADOC Form(s) used in this Administrative Regulation.

**VIII.    SUPERCEDES**

This is a new Administrative Regulation and, therefore, it does not supersede any other Administrative Regulation.

IX.    **PERFORMANCE**

This Administrative Regulation is published under the authority of the National Commission of Correctional Health Care: Standards for Health Services in Prisons 2015 (MH-D-05, MH-D-09) and the Health Insurance Portability and Accountability Act of 1996 (HIPAA).

_____
Jefferson Dunn,
Commissioner