# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF ALABAMA
# NORTHERN DIVISION

| | |
|---|---|
| EDWARD BRAGGS, et al.<br><br>　　　　Plaintiffs,<br><br>v.<br><br>JEFFERSON DUNN, in his official capacity as Commissioner of the Alabama Department of Corrections, et al.<br><br>　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)　CIVIL ACTION NO.<br>)　2:14-cv-00601-MHT-JTA<br>)　Judge Myron H. Thompson<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' DAUBERT MOTION TO STRIKE THE TESTIMONY OF GREG SCHUMANN

Pursuant to *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 589 (1993), Plaintiffs move to strike the proposed testimony of Greg Schumann. The focus in the upcoming evidentiary hearing is whether the Plaintiffs' proposed Omnibus Remedial Order meets the requirements of the Prison Litigation Reform Act, as explained in Plaintiff's Pretrial Brief. Doc. 3220.

The Court entered an order adopting the Defendants' proposed plan as an understaffing remedy in 2018. One of the issues in the upcoming evidentiary hearing is whether Defendants are on schedule to achieve a result that is consistent with the staffing goals set by this Court for February 2022, which consist of fully implementing the Savages' correctional staffing recommendations, as modified by agreement or court order. Doc. 1656, at 3.

As stated on their witness list, Defendants intend to put forth Greg Schumann as an expert in this case despite his obvious lack of knowledge about the staffing issues within ADOC, and barely more than speculative opinions regarding ADOC's recruiting efforts. However, as explained in more detail below, Schumann does not meet the standards for experts pursuant to the federal rules. Even the most cursory review of Schumann's opinions quickly demonstrates serious methodological deficiencies and a complete absence of technical rigor. As such, Schumann should be precluded from testifying as an expert in this matter and at most, may be permitted to offer only fact testimony regarding his contractual agreements with ADOC whereby he assists with their efforts to increase correctional officer applications and hires.

## STATEMENT OF FACTS

Schumann has a bachelor's degree from Michigan State University's business school with a specialty in marketing, and admitted during his deposition that he has no formal degree or certifications in practices of employment recruitment and retention, let alone no prior experience in corrections or working with corrections professionals. Schumann Dep. at 12. Schumann describes his career as ranging from working on behalf of "lifestyle magazines to multimedia conglomerates," and that he has "worked for publicly-traded companies, privately-held companies, and [has] a fairly extensive twenty-seven-year-plus career in advertising, marketing, [] media and communication." *Id.* at 13.

Schumann purports to have formed opinions concerning three areas in this litigation: (1) recruitment and marketing efforts; (2) circumstances of the overall talent market; and (3) what ADOC has been doing in its efforts to drive correctional officer applications and hires. Schumann Dep. at 116. Schumann's key opinions are: (a) "during the time period in which Markstein became engaged in this work, [the company] has seen that the talent market . . . [is] very challenging and [] very competitive."; (b) the Department was establishing momentum with its recruitment efforts leading up to the pandemic, which is "quantified by the significant upticks with on-site turnout, overall lead volume, and the trajectory of actually hiring of applicants."; (c) the pandemic created a disruption that continues to be felt, and ADOC "did an admirable job at trying to adapt and adjust quickly," by implementing adjustments and pivots demonstrating that "the Department and its partners were working feverishly and diligently to try to navigate the recruitment ecosystem during [] the pandemic."; and (d) he remains "cautiously optimistic that the momentum that was being witnessed and seen for the period preceding the pandemic would return." *Id.* at 126-29.

## ARGUMENT

District courts are required to serve as gatekeepers "to insure speculative and unreliable opinions do not reach" the trier of fact. *McClain v. Metabolife Intern., Inc.*, 401 F.3d 1233, 1237 (11th Cir 2005). Under Rule 702, expert testimony is admissible only if the proponent of the testimony demonstrates: (1) the witness is

qualified as an expert for the opinions he intends to offer; (2) the testimony is sufficiently reliable; and (3) the testimony will help the trier of fact in resolving the dispute. *Daubert v. Merrell Dow Pharma., Inc.*, 509 U.S. 579, 589 (1993). The proponent of expert testimony bears the burden to show that these requirements are met by a preponderance of the evidence.

**I.   Greg Schumann Is Not Qualified to Testify as an Expert on Correctional Staffing within the Alabama Department of Corrections ("ADOC").**

To qualify as an expert, a witness must possess the "knowledge, skill, experience, training or education" relevant to the evidence at issue. Fed. R. Evid. 702. Defendants have produced nothing that demonstrates Schumann's qualifications related to recruitment and retention of staff within correctional departments. As stated above, his academic credentials are minimal. Schumann acknowledges that he has no formal degree in any Human Resources field, nor in the recruitment and retention of staff for any business or government agency. His career has varied but does not appear to have included any work on corrections issues – or even anything similar – before this case. Schumann Dep. at 13. Schumann described working on "talent recruitment" in his prior work responsibilities, yet nothing in his prior experience is in any way germane to assessing staffing within a completely different field that has unique challenges – the Alabama correctional system. *See Lewis-Smith Corp. v. Chattahoochee Bay R.R., Inc.*, 2021 WL 1155249, at *2 (M.D. Ala. 2012) (finding expert unqualified to competently testify about matters of meteorology

because expert was, by his own admission, not an expert in the topic and only had minimal training which he obtained while earning an amateur's pilot's license).

Schumann himself admitted that his first work experience related to corrections or corrections agencies was on *this* case, in the spring of 2018 through his work with Markstein. Schumann Dep. at 23. This is not a situation where an expert's many years within a specific field sufficed to qualify someone as competent to opine on the topic. *See Southern States Coop., Inc. v. Melick Aquafeeds, Inc.*, 701 F. Supp. 2d 1348 (M.D. Ga. 2010). Although Schumann noted in his deposition that Markstein has done some work for the South Carolina Department of Corrections and the Maryland Department of Corrections, Schumann could not divulge whether that information was related to recruitment. Rather, he acknowledged that "there was some work that had been done, but it was for branding work for the associations." Schumann Dep. at 106. He offers nothing to explain why such experience makes him qualified to opine on *staffing issues* in a correctional system. Schumann has not written or published anything related to this case or others concerning staffing in correctional departments. In sum, Schumann is not qualified to opine on whether ADOC is working towards a result consistent with the Court's orders, nor does he possess the requisite background or experience that would allow him to opine on particularized findings consistent with the PLRA.

## II. Greg Schumann's Testimony Is Not Reliable.

Even if Schumann were considered qualified under Fed. R. Evid. 702, his proposed opinions in this case are unreliable. That an expert may be qualified by experience does not mean that experience, standing alone, renders reliable any conceivable opinion the expert may express. *United States v. Frazier*, 387 F.3d 1244, 1261 (11th Cir. 2004). In evaluating reliability, courts may consider whether a theory or technique can be or has been tested; whether a theory or technique has been subjected to peer review or publication; whether a theory or technique has gained widespread acceptance within a relevant community of experts; and the known error rate of a technique. *Daubert*, 509 U.S. at 593-94. These factors are not a definitive checklist, but should be understood as non-exclusive, non-dispositive considerations that may shape the trial judge's flexible inquiry under Rule 702. *Morris v. Florida Transformer, Inc.*, 455 F. Supp. 2d 1328, 1331 (M.D. Ala. 2006).

None of the opinions Schumann intends to testify to are based on sufficiently reliable methodology to avoid exclusion under *Daubert*. Schumann first intends to testify that the market is extremely competitive and challenging. The only support he provides for this statement is the low unemployment rates and "how competitive the labor market is in the State of Alabama on top of navigating a pandemic." Schumann Dep. at 184. Schumann does not rely on any data or information in forming this opinion. Schumann next opines that the Department was establishing "some degree of sustained momentum with its recruitment efforts for the period of time leading up to the pandemic," which is quantified by the significant upticks with on-site turnout,

overall lead involvement, and the trajectory of actually hiring of applicants. *Id.* at 127. Although Schumann makes this statement, he admitted during his deposition that he did not review the quarterly staffing reports to evaluate whether ADOC's recent recruitment efforts have been successful. *Id.* at 187-188. While he was allegedly responsible for "trying to get greater volume at the top of the funnel," through advertising and marketing efforts, his conversations have "largely focused on volume of leads" rather than how many posts have been filled, versus how many remain to be filled. The entire extent of Schumann's analysis of ADOC's recent recruitment efforts was to examine the data from the landing page, and to note that there was a dramatic increase in onsite visits in response to Markstein's recruitment efforts. *Id.* at 89-90. As he does not even know the number of applications submitted in either 2018 or 2019, it is unclear on what basis he formed his opinion that the Department established sustained momentum for the period of time leading up to the pandemic.

Schumann also opines that the pandemic created a disruption that continues to be felt, and ADOC "did an admirable job at trying to adapt and adjust quickly," by implementing adjustments and pivots demonstrating that "the Department and its partners were working feverishly and diligently to try to navigate the recruitment ecosystem during [] the pandemic." *Id.* at 128-129. As support, Schumann points to the introduction of an online application process for the Basic Correctional Officers ("BCO"), and the reduction in the amount of time it takes to be hired in that

Department during that time. Schumann fails to explain how such observations constitute a sufficiently reliable methodology. Given that the pandemic caused a significant amount of work to move to being remote, it is unclear how the implementation of an online application process is particularly demonstrative of Schumann's opinion. Lastly, Schumann opines that he remains "cautiously optimistic that the momentum that was being witnessed and seen for the period preceding the pandemic would return." He points to an increase in the volume of "leads" as support for this, however, he fails to explain how this constitutes a reliable methodology, and lacks definition for what constitutes a "lead" in this context. Defendants have simply failed meet their burden to show that his methodology of simply pointing to an increased volume of leads meets any of the considerations mentioned in *Daubert*, or is sufficiently reliable otherwise. *See* 509 U.S. at 593-94.

### III. Greg Schumann's Testimony Will Not Help the Court Resolve the Disputes at Issue.

For expert testimony to help the trier of fact, it must concern matters that are beyond the understanding of the average lay person. Proffered expert testimony generally will not help the trier of fact when it offers nothing more than what lawyers for the parties can argue in closing arguments. *Frazier*, 387 F.3d at 1262-63. Schumann's proffered opinions relate to "recruitment marketing efforts, [] the overall talent market circumstances, and what ADOC has been doing in its efforts to drive applications and drives hires in the correctional officer arena." Schumann Dep. at

116.  Such testimony will be unhelpful to the trier of fact for several reasons. Whether or not ADOC has been working to increase applications and hires is not at issue at the hearing.  Rather, the court expects to be informed as to the current status of correctional staffing in relation to the requirements laid out by the Savages' comprehensive staffing analysis, and whether ADOC is on schedule to achieve a result that the Court has already ordered to ensure the provision of mental health care. On this point, Schumann's testimony is unhelpful.  Schumann admitted that he had not seen the Court's remedial order or the Savages staffing analysis regarding ADOC. Schumann Dep. at 135.  He only stated his general awareness that there was a deadline of some sort in February 2022.  Schumann lacks an in-depth knowledge of any details as to the staffing mandates set by this Court.

In theory, Schumann might provide fact testimony as to ADOC's actions in the way of recruitment, however his lack of awareness of the staffing analysis renders Schumann unable to *opine* as to how well or poorly current staffing compares to what is needed or whether ADOC's efforts will be sufficient toensure those staffing goals are met by the February 2022 deadline.  Ge

Second, this is not a case where the Court needs any introductory content or overview about the issues in this case.  *See Woiesnski v. United Airlines, Inc.*, 383 F. Supp. 3d 1342 (M.D. Fla. 2019) (finding expert opinion helpful to the jury in action arising out of serious injuries passenger incurred while attempting to board flight, where a lay jury could not have been expected to understand difference between

degenerative disk disease and acute compression fracture). A witness purporting to testify as an expert who has only general knowledge of the staffing levels within ADOC is not going to assist the Court in evaluating whether the Department is complying with the Court's very specific remedial order. *See Compton v. Bach*, 374 F. Supp. 3d 1296 (N.D. Ga. 2019) (finding expert's proposed testimony that motorist was not paying attention as he approached intersection would not provide any insight beyond understanding and experience of an average citizen to assist trier of fact). Schumann provides no concrete evidence or facts demonstrating how ADOC is on track to meet the staffing goals set for February 2022. The three areas on which Schumann offers testimony are not actually disciplines, and opinions on those topics do not inform the Court's decision on whether ADOC is complying with this Court's remedial order. His opinions concerning the volume of leads at the top of the funnel is not an opinion for which expert testimony is needed. It is not a technical or scientific topic. The Court is already very familiar with these issues and is therefore well-prepared to determine on its own accord, based on lay witness testimony, whether ADOC's implementation of a marketing team has been effective in working towards the Court's requirement, based on the number of persons who have been hired as a result of these efforts. The Court is already aware of the staffing issues associated with this case and information from someone who is only knowledgeable about lead volume will not assist the Court in evaluating whether ADOC's efforts have actually been successful in recruiting within the Department in terms of hires.

## **CONCLUSION**

For the foregoing reasons, this Court should grant Plaintiffs' motion to exclude the testimony of Greg Schumann.

Dated: May 23, 2021                              Respectfully Submitted,

                                                    /s/ Jasmin Mize*
                                                 One of the Attorneys for Plaintiffs

**SOUTHERN POVERTY LAW CENTER**
Post Office Box 1287
Decatur, GA 30031-1287
Telephone: (404) 230-3167
Facsimile: (404) 221-5857
jasmin.mize@splcenter.org
*Admitted pro hac vice*

Lisa W. Borden
Ashley N. Austin
Jonathan Barry-Blocker
**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, AL 36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
lisawborden@gmail.com
ashley.austin@splcenter.org
jonathan.blocker@splcenter.org

Leslie Faith Jones*
**SOUTHERN POVERTY LAW CENTER**
111 East Capitol Street, Suite 280
Jackson, MS 39201
Telephone: (601) 948-8882
Facsimile: (334) 956-8281
leslie.jones@splcenter.org
*Admitted pro hac vice*

William G. Somerville, III
Patricia Clotfelter
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ PC**
420 20th Street North, Suite 1400
Birmingham, AL 35203
wsomerville@bakerdonelson.com
pclotfelter@bakerdonelson.com

William Van Der Pol, Jr.
Lonnie Williams
Barbara A. Lawrence
Andrea J. Mixson
**ALABAMA DISABILITIES ADVOCACY PROGRAM**
Box 870395
Tuscaloosa, AL 35487
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
wvanderpoljr@adap.ua.edu
lwilliams@adap.ua.edu
blawrence@adap.ua.edu
amixson@adap.ua.edu

Rhonda Brownstein
**ALABAMA DISABILITIES ADVOCACY PROGRAM**
400 South Union Street, Suite 425
Montgomery, AL 36104
Telephone: (205) 579-4976
Facsimile: (334) 240-0996
rbrownstein@adap.ua.edu

Catherine E. Stetson*
Neal Kumar Katyal*
Jo-Ann Tamila Sagar*
Kristina Alekseyeva*
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600

Facsimile: (202) 637-5910
cate.stetson@hoganlovells.com
neal.katyal@hoganlovells.com
jo-ann.sagar@hoganlovells.com
kristina.alekseyeva@hoganlovells.com
*Admitted pro hac vice

Mark Whitburn*
**WHITBURN & PEVSNER, PLLC**
2000 East Lamar Boulevard, Suite #600
Arlington, TX  76006
Telephone: (817) 672-5453
Facsimile: (817) 653-4477
mwhitburn@whitburnpevsner.com
*Admitted pro hac vice

Joshua Toll*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW, 2nd Floor
Washington, DC 20006-4707
Telephone: (202) 227-6138
Fascimile: (202) 626-3737
jtoll@kslaw.com
*Admitted pro hac vice

Evan Diamond*
**KING & SPALDING LLP**
185 Avenue of the Americas, 34th Floor
New York, NY 10036
Telephone: (212) 556-2297
Fascimile: (212) 556-2222
ediamond@kslaw.com
*Admitted pro hac vice

Edward Bedard*
**KING & SPALDING LLP**
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-3127
Fascimile: (404) 572-5100
ebedard@kslaw.com

*Admitted pro hac vice*

Rachel Rubens*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1210
rrubens@kslaw.com
*Admitted pro hac vice*

**ATTORNEYS FOR THE PLAINTIFFS**

                                              /s/ Anil A. Mujumdar
                                          Anil A. Mujumdar
                                          Attorney for Plaintiff
                                          Alabama Disabilities Advocacy Program

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue, Suite 250
Birmingham, AL 35213
Telephone: (205) 590-6986
Facsimile: (205) 809-7899
anil@dagneylaw.com

**ATTORNEY FOR PLAINTIFF ALABAMA DISABILITIES ADVOCACY PROGRAM**

**CERTIFICATE OF SERVICE**

I hereby certify that I have on this 23rd day of May, 2021, served a copy of the foregoing to the following opposing counsel by electronic mail:

David R. Boyd, Esq.
John G. Smith, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL 36101-0078
dboyd@balch.com
jgsmith@balch.com
Steven C. Corhern, Esq.
Balch & Bingham LLP
Post Office Box 306
Birmingham, AL 35201-0306
scorhern@balch.com

Joseph G. Stewart, Jr., Esq.
Stephanie Lynn Dodd Smithee, Esq.
Alabama Department of Corrections
Legal Division
301 South Ripley Street
Montgomery, AL 36104
joseph.stewart@doc.alabama.gov
stephanie.smithee@doc.alabama.gov

Philip Piggott, Esq.
Webster Henry
Two Perimeter Park South
Suite 445 East
Birmingham, AL 35243
ppiggott@websterhenry.com

Justin A. Barkley, Esq.
Wexford Health Sources, Inc.
85-B Spectrum Cove
Alabaster, AL 32007
justin.barkley@wexfordhealth.com

William R. Lunsford, Esq.
Matthew Reeves, Esq.
Stephen C. Rogers, Esq.
Kenneth S. Steely, Esq.
La Kiesha W. Butler, Esq.
Maynard, Cooper & Gale, P.C.
655 Gallatin Street, SW
Huntsville, AL  35801
blunsford@maynardcooper.com
mreeves@maynardcooper.com
srogers@maynardcooper.com
ksteely@maynardcooper.com
lbutler@maynardcooper.com

Luther M. Dorr, Jr., Esq.
Maynard, Cooper & Gale, P.C.
1901 6th Avenue North, Suite 2400
Birmingham, AL  35203
rdorr@maynardcooper.com

Deana Johnson, Esq.
Brett T. Lane, Esq.
MHM Services, Inc.
1447 Peachtree Street, N.E., Suite 500
Atlanta, GA  30309
djohnson@mhm-services.com
btlane@mhm-services.com

/s/ Jasmin Mize
One of the Attorneys for Plaintiff Class