## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **EDWARD BRAGGS, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 2:14-cv-00601-MHT-JA** |
| **v.** | ) | |
| | ) | **District Judge Myron H. Thompson** |
| **JEFFERSON DUNN, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## THE STATE'S CONSOLIDATED RESPONSE TO
## PLAINTIFFS' MOTION IN LIMINE AND DAUBERT MOTION

Defendants JEFFERSON DUNN, in his official capacity as Commissioner of the Alabama Department of Corrections ("ADOC"), and DEBORAH CROOK, in her official capacity as ADOC's Interim Associate Commissioner for Health Services (collectively, the "State"),[1] hereby submit this Consolidated Response in Opposition to Plaintiffs' Motion in Limine to Exclude Certain Evidence from Upcoming PLRA Evidentiary Hearing (Doc. No. 3231, the "Motion in Limine") and Plaintiffs' Daubert Motion to Strike the Testimony of Greg Schumann (Doc. No. 3232, "the Daubert Motion," and, together with the Motion in Limine, "Plaintiffs' Motions").

---

[1] As of February 1, 2021, Ruth Naglich retired from her position as ADOC's Associate Commissioner for Health Services.

## **INTRODUCTION**

Plaintiffs' Motions arise almost exclusively from their total misunderstanding of facts and law, a lack of familiarity with the Court's prior proceedings, and efforts to preclude the State from offering a defense of Plaintiffs' allegations.  Under any scenario, Plaintiffs' Motions lack any legal or factual basis of any kind.  More specifically, the Motions seek to exclude three (3) categories of testimony:  (1) testimony regarding mediation related to the Remedial Orders[2]; (2) testimony from the State's proposed fact witness John Wetzel ("Secretary Wetzel"), the long-standing Secretary of the Pennsylvania Department of Corrections; and (3) testimony from the State's expert witness, Greg Schumann ("Schumann").  The Court should deny Plaintiffs' Motions for at least the following three (3) reasons:

(1)    The State would present evidence *in camera* of the mediation discussions among counsel, if Plaintiffs insist upon pursuing their waiver argument regarding the PLRA's needs-narrowness intrusive requirements, and such evidence is admissible because it does not go to the validity or amount of a disputed claim;

(2)    The State may call Secretary Wetzel as a fact witness, not an undisclosed expert (*though Plaintiff's Motion does fortunately acknowledge that Secretary Wetzel's vast experience in corrections provides him with an unprecedented level of experience and expertise in this arena*); and

(3)    Plaintiffs' objections to Schumann's testimony rest on a fundamental misconception of the nature of that testimony, and, in any event, go to the testimony's weight, not its admissibility.

---

[2] "Remedial Order(s)" has the same meaning as ascribed to that term in the State's Proposed Phase 2A Remedial Order.  (Doc. No. 3215 at 14-15).

Accordingly, the State respectfully requests that the Court deny Plaintiffs' Motions.

## ARGUMENT

### I.   THE COURT SHOULD DENY THE MOTION IN LIMINE.

#### A.   REBUTTAL EVIDENCE REGARDING PLAINTIFFS' "WAIVER" ARGUMENT.

Plaintiffs continue to argue that the State "waived" any ability to argue that the Remedial Orders do not comply with the PLRA's need-narrowness-intrusiveness requirements, or that the State's arguments are subject to estoppel or forfeiture. (Doc. No. 2899 at 21-25; Doc. No. 3220 at 24-32).  As the State previously indicated, "throughout the negotiation process, the State refused to include PLRA findings in any of the Stipulations because it cannot agree to the findings in a piecemeal fashion, and it repeatedly informed Plaintiffs of this fact." (Doc. No. 2908 at 25).  To be clear, the State believes Plaintiffs continuing to offer their waiver argument pertaining to the PLRA's needs-narrowness-intrusiveness requirements is baseless and ignores the multiple prior rulings of this Court.  Nevertheless, the State must maintain the ability to rebut this argument if Plaintiffs raise it during the ongoing evidentiary hearing (the "Evidentiary Hearing").  To this end, the State listed (Retired) United States Magistrate Judge John Ott ("Judge Ott") and Plaintiffs' former counsel C.J. Sandley ("Sandley") as "may call" witnesses who may potentially testify about "[m]ediation related to the Remedial Orders." (Doc. No.

3225 at 14).  The State also listed James Tucker ("Tucker") as a "may call" witness, both as an individual and as the corporate representative of the Alabama Disability Advocacy Program ("ADAP"), and indicated that the topics of Tucker's testimony may include mediation.  (Id. at 6-7).[3]  The State indicated that it would only present testimony regarding mediation *if* Plaintiffs persisted in their argument that the State "waived" any PLRA objections, and, to the extent the State presents such testimony, it would do so *in camera*.  (Id. at 5-6, 14).[4]

In any event, Plaintiffs' "waiver" argument lacks merit.  The PLRA's needs-narrowness-intrusiveness requirement, 18 U.S.C. § 3626(a)(1)(A), constitutes a statutory mandate imposed upon any action involving "[p]rospective relief in any civil action with respect to prison conditions."   The language of the PLRA related to this needs-narrowness-intrusiveness component clearly renders this as a legal issue for resolution by the Court, not a waivable defense to be raised by a correctional agency.  Plaintiffs cite no authority that any party may, by words or actions, waive the PLRA's needs-narrowness-intrusiveness requirement.

The Court's prior opinions further demonstrate the absence of any basis for this argument.  Despite the fact that Plaintiffs raised this argument repeatedly since

---

[3] Plaintiffs do not object to Tucker testifying as ADAP's representative or about Plaintiffs' Proposed Remedial Order or the implementation of the Remedial Orders.

[4] Unless otherwise indicated, pagination references for documents filed with the Court refer to the pagination provided by the Court's CM/ECF system.

August 2020, the Court never accepted it.  Instead, the Court proceeded to enter an Opinion and Order on a Process for Finalizing the Phase 2A Remedial Orders (Doc. No. 3078).  That Opinion and Order recognized that the Remedial Orders did not include PLRA findings and that "it would be inappropriate to enter a final remedy resolving this phase of the litigation without finding that the relief is still necessary in light of the State's now years-long efforts to improve the provision of mental-health care in ADOC facilities." (Id. at 4-5, 24-25).  Indeed, even Plaintiffs recently conceded that "the Court has declined to find waiver in the past." (Doc. No. 3220 at 25).  The "waiver" argument is baseless.

If Plaintiffs persist in relying on their arguments related to waiver, estoppel, and/or forfeiture during the Evidentiary Hearing, the State will consider calling Judge Ott, Sandley, and/or Tucker to support its argument that Plaintiffs knew the State's position regarding PLRA findings throughout the mediation process.  The State will not offer testimony regarding mediation if Plaintiffs do not continue to insist upon this "waiver" argument.  In essence, Plaintiffs wish to "have their cake and eat it too" – they want to argue that the State's conduct during mediation constituted a waiver (or otherwise triggered application of the forfeiture or estoppel doctrines) and then prevent the State from rebutting that argument with testimony about the Parties' conduct during mediation.

Federal Rule of Evidence 408 does not require such a result.  As Plaintiffs correctly observe, the Rule "provides that 'conduct or a statement made during compromise negotiations' is inadmissible '***to prove or disprove the validity or amount of a disputed claim***.'"   (Doc. No. 3231 at 3) (quoting Fed. R. Evid. 408(a)(2)) (emphasis added).  However, Plaintiffs ignore the second part of their quotation from the Rule – that the evidence is inadmissible only "to prove or disprove the validity or amount of a disputed claim."  Plaintiffs also ignore Rule 408's separate provision that "[t]he court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution." Fed. R. Evid. 408(b).  The State would offer the evidence for another purpose – rebutting an argument by Plaintiffs that the State "waived," "forfeited," or should be "estopped" from relying on its PLRA arguments by agreeing to the Remedial Orders.

Finally, the cases cited by Plaintiffs do not support the exclusion of this testimony.  In Blu-J, Inc. v. Kemper C.P.A. Grp., 916 F.2d 637, 642 (11th Cir. 1990) (cited in Doc. No. 3231 at 3, 5), the Court held that the district court properly excluded materials regarding an independent accounting evaluation prepared as part of settlement negotiations.  Thus, the material went directly to the validity of the disputed claim.  Id.  In Reynolds v. Roberts, 202 F.3d 1303, 1317-18 (11th Cir. 2000) (cited in Doc. No. 3231 at 6), the Court held that the district court should not have

considered "statements relating to liability made during settlement talks."  The proposed testimony here does not relate to statements regarding liability.  Instead, the testimony would demonstrate Plaintiffs' knowledge that the State did not waive its PLRA arguments, but actually preserved those arguments throughout the course of the Parties' negotiations.  Considered in the context of Rule 408 in its entirety, the State's proposed testimony is plainly admissible for the limited purpose for which the State proposes to offer it.

### B.   TESTIMONY OF SECRETARY WETZEL.

Plaintiffs incorrectly speculate that the State intends to elicit expert testimony from Secretary Wetzel.  In fact, the State intends to call Secretary Wetzel as a fact witness, and does not anticipate that he will offer opinion testimony unless Plaintiffs elicit such testimony from him.  According to the State's Witness and Exhibit List, Secretary Wetzel will testify regarding "the intersection of correctional operations and the delivery of mental health care." (Doc. No. 3225 at 14-15).  Secretary Wetzel, as the Secretary of Corrections for the State of Pennsylvania, is obviously familiar with the facts surrounding delivery of mental-health care within correctional settings.  Indeed, Secretary Wetzel possesses experience with litigation regarding the provision of mental-health care within correctional settings.  See Disability Rights Network of Pennsylvania v. Wetzel, No. 1:13-CV-00635 (M.D. Pa.). Secretary Wetzel's testimony will offer the Court a unique factual perspective on

correctional mental-health care, and Plaintiffs' Motion in Limine as to Secretary Wetzel rests on the mistaken assumption that the State intends to call him as an expert.

## II.   THE COURT SHOULD DENY PLAINTIFFS' DAUBERT MOTION.

Rule 702 of the Federal Rules of Evidence addresses whether expert testimony is sufficiently reliable to be admissible.  Rule 702 has a "liberal thrust" and is designed to "relax[] the traditional barriers to opinion testimony."  Daubert v. Merrell Dow Pharm. Inc., 509 U.S. 579, 588 (1993) (internal quotation mark omitted).  As a result, "the rejection of expert testimony is the exception rather than the rule."  FED. R. EVID. 702, advisory committee notes, 2000 Amendment. Typically, objections to expert testimony will go to the weight of that testimony, not its admissibility.  Scott Bridge Co. v. Gresham Smith and Partners, Case No. 2:11-CV-1116-WKW-PWG, 2015 WL 5996206, at *4 (M.D. Ala. Oct. 14, 2015); see also Abrams v. Ciba Specialty Chem. Corp., Civil Action No. 08-0068-WS-B, 2010 WL 779276, at *3 (S.D. Ala. Mar. 2, 2010) ("[C]ourts have stressed that the Daubert inquiry is 'a flexible one,' that the Daubert factors are mere guidelines for applying Rule 702, and that 'expert testimony that does not meet most of all of the Daubert factors may sometimes be admissible' based on the particular circumstances involved.") (quoting United States v. Brown, 415 F.3d 1257, 1267-68 (11th Cir. 2005)).

8

As this Court previously recognized:

> Two additional considerations in conducting a <u>Daubert</u> inquiry are relevant here.  First, <u>Daubert</u>'s reliability and relevance inquiry is not supposed to "supplant the adversarial system," meaning that "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." <u>Quiet Tech. DC-8, Inc. v. Hurel-Dubois UK, Ltd.</u>, 326 F.3d 1333, 1341 (11th Cir. 2003) (citing <u>Daubert</u>, 509 U.S. at 596).  Second, the <u>Daubert</u> barriers to admissibility are more relaxed in a bench trial, "where the judge is serving as factfinder," and the court need not be "concerned about dumping a barrage of questionable scientific evidence on a jury." <u>[U.S. v. Brown</u>, 415 F.3d [1257,] 1268 [(11th Cir. 2005)] (internal quotation and citation omitted).

(Doc. No. 1299 at 9).  As the Court also recognized, "inadequacies in [an expert's] methodology [are] appropriately addressed by the adversarial system of cross-examination and presentation of contrary evidence, rather than by precluding the related expert testimony from being presented during trial."  (<u>Id.</u> at 20).

In seeking to exclude Schumann's testimony, Plaintiffs misrepresent the topics of that testimony.  According to Plaintiffs, "Schumann is not qualified to testify as an expert on correctional staffing within the Alabama Department of Corrections."  (Doc. No. 3232 at 4).  The State does not, however, propose to have Schumann testify as an expert on correctional staffing levels or the process for a correctional staffing analysis, which will likely be the subject of separate testimony by experts previously identified in the Court's correctional staffing order (Doc. No.

9

1374).   Instead, as described in the State's Witness and Exhibit List and at his deposition,[5] Schumann expects to offer "expert testimony with regards to recruitment marketing efforts, and the overall talent market circumstances, and what ADOC has been doing in its effort to drive applications and drive hires in the correctional officer arena."  (Schumann Dep. at 116:18-23; Doc. No. 3225 at 12).

First, Plaintiffs fail to recognize Schumann's key role in ADOC's on-going recruitment and retention efforts.   Schumann serves as a "strategic consultant for Markstein."  (Id. at 8:20-21).   As Schumann testified, he has been engaged in a consulting role with ADOC over the past three (3) years.  (Id. at 19:17-22:5).   His engagement began because Warren Averett was "looking for a marketing specialist that could help devise marketing tactics and marketing strategies, particularly in paid efforts to enhance the recruitment efforts." (Id. at 21:21:20-22:1).   Schumann works with ADOC "[t]o provide strategic analysis and strategic recommendations on the paid recruitment efforts that we help architect and make recommendations on."  (Id. at 30:3-6).   Additionally, Schumann possesses key experience and expertise in assisting both correctional agencies and private industry in the identification and retention of qualified candidates (id. at 8:21-10:22), which render his testimony relevant to the Court's analysis of the State's efforts to increase correctional staffing levels.

---

[5] Relevant excerpts from Schumann's deposition are attached hereto as Exhibit A.

When deposed by Plaintiffs' counsel, Schumann testified that he formed five (5) preliminary opinions[6] in advance of this Evidentiary Hearing:

(1)    the "recruitment market in general . . . is as competitive as it has ever been" (id. at 126:11-14);

(2)    ADOC "was, in fact, establishing some degree of sustained momentum with its recruitment efforts for the period of time leading up to the pandemic," with "significant upticks with on-site turnout, overall lead volume, and the trajectory of actually hiring of applicants" (id. at 127:3-10);

(3)    "the pandemic, which arrived in March [2020], created a disruption that continues to be felt to this day" (id. at 127:2-4);

(4)    ADOC "did an admirable job at trying to adapt and adjust quickly, and operate in as nimble a manner as possible so as to not have that momentum . . . come to a grinding halt" (id. at 128:9-13); and

(5)    he "remain[s] cautiously optimistic that the momentum that was being witnessed and seen for the period preceding the pandemic would return" and "we could move towards accelerating that momentum" (id. at 129:9-14).

Consistent with this Court's prior practices, Plaintiffs' attacks on Schumann's methodology and the reliability of his opinions should be addressed through cross-examination, not exclusion of his testimony. For example, Plaintiffs suggest that "it is unclear on what basis he formed his opinion that the Department established sustained momentum for the period of time leading up to the pandemic." (Doc. No.

---

[6] Schumann may provide additional opinions as rebuttal to assertions made by Plaintiffs during the course of the Evidentiary Hearing.

3232 at 7).  To the extent Plaintiffs take issue with Schumann's methodology or the reliability of his proposed opinions, they may cross-examine him and present contrary evidence.  The Court, as the trier of fact, may ultimately determine how much weight to accord to Schumann's testimony.

Finally, Plaintiffs incorrectly argue that Schumann's opinions will not help the Court resolve the issues.  (Doc. No. 3232 at 8-10).  Plaintiffs are simply wrong that "[w]hether or not ADOC has been working to increase applications and hires is not at issue at the hearing."  (Doc. No. 3232 at 9).  ADOC's efforts to increase hires and applications are highly relevant to the issues at the Evidentiary Hearing, including whether a current and ongoing constitutional violation exists and requires remedial relief.  Plaintiffs' arguments in this regard demonstrate their ongoing misunderstanding of the legal standard applicable to the Evidentiary Hearing and any final omnibus remedial order entered by the Court.

The Court based its liability finding on a finding of "deliberate indifference." Braggs v. Dunn, 257 F. Supp. 3d 1171, 1251-52 (M.D. Ala. 2017).  To establish deliberate indifference by the State, Plaintiffs "must make both an objective and a subjective showing."  Swain v. Junior, 961 F.3d 1276, 1285 (11th Cir. 2020) (citing Farmer v. Brennan, 511 U.S. 825, 834 (1994).  The objective component requires Plaintiffs to "demonstrate 'a substantial risk of serious harm.'"  Id. (quoting Farmer, 511 U.S. at 834).  The subjective component requires Plaintiffs to make "three sub-

12

showings: '(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence.'" Id. (quoting Lane v. Philbin, 835 F.3d 1302, 1307 (11th Cir. 2016)). This standard "sets an appropriately high bar," because "[a] plaintiff must prove that the defendant acted with 'a sufficiently culpable state of mind.'" Id. (quoting Farmer, 511 U.S. at 836). "Ordinary malpractice or simple negligence won't do; instead, the plaintiff must show 'subjective recklessness as used in the criminal law.'" Id. at 1285-86 (quoting Farmer, 511 U.S. at 839-40). "Indeed, even where 'prison officials . . . actually knew of a substantial risk to inmate health or safety,' they may nonetheless 'be found free from liability if they responded reasonably to the risk' – and, importantly for purposes of the current evidentiary hearing, 'even if the harm ultimately was not averted.'" Id. at 1286 (quoting Farmer, 511 U.S. at 844). Among other things, Schumann's testimony will establish that the State is acting reasonably with respect to recruiting for correctional staffing, and thus no current and ongoing constitutional violation exists.

## CONCLUSION

For the foregoing reasons, the State respectfully requests that the Court deny Plaintiffs' Motion in Limine and Plaintiffs' Daubert Motion.

Dated: May 28, 2021.

/s/ William R. Lunsford
William R. Lunsford

13

*Attorney for the Commissioner and*
*Associate Commissioner*

William R. Lunsford
Matthew B. Reeves
Stephen C. Rogers
La Keisha Butler
Kenneth Steely
**MAYNARD, COOPER & GALE, PC**
655 Gallatin Street
Huntsville, AL 35801
Telephone: (256) 512-5710
Facsimile: (256) 512-0119
blunsford@maynardcooper.com
mreeves@maynardcooper.com
srogers@maynardcooper.com
lbutler@maynardcooper.com
ksteely@mayanrdcooper.com

Luther M. Dorr, Jr.
**MAYNARD, COOPER & GALE, PC**
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203
Telephone: (205) 254-1178
Facsimile: (205) 714-6438
rdorr@maynardcooper.com

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this the 28th day of May, 2021.

Jonathan Blocker
Ashley Austin
Lisa W. Borden
**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
jonathan.blocker@splcenter.org
ashley.austin@splcenter.org
lisawborden@gmail.com

Jasmin Mize
**SOUTHERN POVERTY LAW CENTER**
Post Office Box 1287
Decatur, GA 30031
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
jasmin.mize@splcenter.org

Leslie F. Jones
**SOUTHERN POVERTY LAW CENTER**
111 East Capitol Street
Suite 280
Jackson, MS 39201
Telephone: (601) 948-8882
Facsimile: (334) 956-8281

William Van Der Pol, Jr.
Lonnie J. Williams
Barbara A. Lawrence
Andrea J. Mixson
**ALABAMA DISABILITIES ADVOCACY PROGRAM**

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue, Suite 250
Birmingham, Alabama 35213
Telephone: (205) 729-8445
Facsimile: (205) 809-7899
anil@dagneylaw.com

Mark Whitburn
**WHITBURN & PEVSNER, PLLC**
2000 East Lamar Boulevard
Suite 600
Arlington, Texas 76006
Telephone: (817) 672-5453
Facsimile: (817) 653-4547

John G. Smith
David R. Boyd
**BALCH & BINGHAM LLP**
Post Office Box 78
Montgomery, AL 36101-0078
Telephone: (334) 834-6500
Facsimile: (866) 316-9461
jgsmith@balch.com
dboyd@balch.com

William G. Somerville III
Patricia Clotfelter
**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**
420 20th Street North
Suite 1400

15

University of Alabama
500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
Telephone: (205) 348-6894
Facsimile: (205) 348-3909
wvanderpoljr@adap.ua.edu
lwilliams@adap.ua.edu
blawrence@adap.ua.edu
amixson@adap.ua.edu

Joshua C. Toll
**KING & SPALDING, LLP**
1700 Pennsylvania Avenue NW
2nd Floor
Washington, DC 20006
Telephone: (202) 227-6138

Evan Diamond
**KING & SPALDING, LLP**
1185 Avenue of Americas
34th Floor
New York, NY 10036
Telephone: (212) 556-2297

Edward A. Bedard
**KING & SPALDING, LLP**
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-3127

Rachel Rubens
**KING & SPALDING, LLP**
50 California Street
Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1210

Birmingham, Alabama 35203
Telephone:  (205) 244-3863
Facsimile:  (205) 488-3863
wsomerville@bakerdonelson.com
pclotfelter@bakerdonelson.com

Neal K. Katyal
Catherine E. Stetson
Jo-Ann T. Sagar
**HOGAN LOVELLS US LLP**
555 13th Street NW
Washington, DC 20004
Telephone: (202) 637-5528
Facsimile: (202) 637-5910

Kristina Alekseyeva
**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, NY 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
kristina.alekseyeva@hoganlovells.com

Justin A. Barkley
**WEXFORD HEALTH SOURCES, INC.**
85-B Spectrum Cove
Alabaster, AL 32007
Telephone: (205) 605-7444
Facsimile: (205) 605-7443
Justin.barkley@wexfordhealth.com

Rhonda Brownstein
**ALABAMA DISABILITIES ADVOCACY PROGRAM**
400 South Union Street
Suite 425
Montgomery, AL 36104
Telephone: (205) 579-4976
Facsimile: (334) 240-0996
rbrownstein@adap.ua.edu

Joseph G. Stewart
Stephanie L. Smithee
**ALABAMA DEPARTMENT OF
CORRECTIONS**
Legal Division
301 South Ripley Street
Montgomery, Alabama 36130
Telephone (334) 353-3884
Facsimile (334) 353-3891
joseph.stewart@doc.alabama.gov
stephanie.smithee@doc.alabama.gov

Deana Johnson
Brett T. Lane
**MHM SERVICES, INC.**
1447 Peachtree Street NE
Suite 500
Atlanta, GA 30309
Telephone: (404) 347-4134
Facsimile: (404) 347-4138
djohnson@mhm-services.com
btlane@mhm-services.com

*/s/ William R. Lunsford*
Of Counsel