# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:14-cv-00601-MHT-JTA |
| | ) | Judge Myron H. Thompson |
| JEFFERSON DUNN, in his official | ) | |
| capacity as Commissioner of the | ) | |
| Alabama Department of Corrections, | ) | |
| et al. | ) | |
| Defendants. | ) | |

## PLAINTIFFS' BRIEF REGARDING BURDEN OF PROOF

## INTRODUCTION

In its order dated December 29, 2020 (Doc. 3078), the Court set an evidentiary hearing to commence on May 24, 2021, for the purpose of finalizing the remedial order for constitutional violations found in the Court's liability opinion by making "need-narrowness-intrusiveness" (NNI) findings with respect to the proposed relief.  *See* Doc. 3078 at 31-33.  That evidentiary hearing is currently in progress, and is about to enter its third week.

Defendants have argued at various points that Plaintiffs bear the burden of proving "current and ongoing violations" in order to obtain long-awaited final entry of remedies.  *See, e.g.,* Doc. 2908 at 30.  The Court has explicitly rejected that contention. *See* Doc. 2954 at 8; Doc. 3078 at 13. As the Court has repeatedly explained, Defendants' contention is erroneous because the Court has found Defendants liable for violating the Eighth Amendment, but has not yet ordered the remedies for the violations.  In this post-liability remedial posture, the Court need not make additional liability findings to make the need-narrowness-intrusiveness findings.  Doc. 2954 at 2-5.  Instead, the task before the Court at present is limited to making "need-narrowness-intrusiveness" findings with respect to the proposed relief.  *Id.*

On Friday, June 4, 2021, the ninth day of the evidentiary hearing, Defendants revisited the tired argument, which the Court has repeatedly rejected,

that Plaintiffs bear the burden in this proceeding of proving "current and ongoing violations." (Rough Tr., June 4, 2021, at 192:6-12). The Court must continue to reject this argument. It is being raised as an effort to again derail the proceedings, as demonstrated by Defendants' threat to file another motion to terminate the existing temporary remedial orders should they not get their way (*Id.* at 195:3-8).

## PROCEDURAL HISTORY

In reponse to the Court's opinions finding Defendants liable for multiple constitutional violations, the parties have engaged in the remedial phase of this case. *See Braggs v. Dunn*, 257 F. Supp. 3d 1171 (M.D. Ala. 2017), and *Braggs v. Dunn*, 367 F. Supp. 3d 1340, 1359 (M.D. Ala. 2019).   In September 2017, the Court severed the remedial phase into discrete issues.  *See* Doc. 1357 (Phase 2A Revised Remedy Scheduling Order on Eighth Amendment Claim) at 7-8; *see also id.* at 3 ("[B]ecause of the enormity and complexity of the remedy issue, it is better not to attack it all at once but rather to break it down and approach it piecemeal[]. . . ."). The Court heard evidence and issued opinions and orders with PLRA findings regarding understaffing and immediate suicide prevention relief.  *Braggs v. Dunn*, 383 F. Supp. 3d 1218, 1251-87 (M.D. Ala. 2019); *Braggs v. Dunn*, No. 2:14-cv-601-MHT, 2018 WL 985759, at \*8-9 (M.D. Ala. Feb. 20, 2018).   The Parties also negotiated and submitted a series of remedial stipulations for the Court to enter as orders.

However, eighteen months after this Court instituted the incremental remedial process, despite having repeatedly agreed to the stipulated remedies,[1] in March 2019, Defendants stated that they "cannot agree that all of the remedial

---

[1] During a hearing on the Stipulations related to hospital-level care and disciplinary sanctions on February 7, 2019, the Court inquired about the existence of any agreement among the Parties concerning the compliance of these Stipulations, along with the prior Stipulations approved by the Court and entered as Remedial Orders, with the PLRA need- narrowness-intrusiveness requirements. (Hrg. Tr. (Rough Draft), Feb. 7, 2019, at 74:21-76:1). Plaintiffs stated that, in their opinion, the Parties' Stipulations regarding hospital-level care and disciplinary sanctions, as well as all of the other Stipulations adopted as Remedial Orders by the Court, satisfied the PLRA need- narrowness-intrusiveness requirements. (Id. at 75:17-76:14). Counsel for the State indicated that the State would need to deliberate further before it could inform the Court whether the Stipulations, including those relating to hospital-level care and disciplinary sanctions, complied with the PLRA. (Id. at 76:2-20). As evident from this exchange, the concept of the State conceding the PLRA need-narrowness- intrusiveness requirements constituted an issue not addressed in the underlying Stipulations, requiring undersigned counsel to confer with the State.

In a February 11, 2019, order, the Court directed the State to inform the Court whether it agreed "that all of the remedial stipulations previously approved and adopted by the court meet the PLRA's 'need-narrowness-intrusiveness' requirements." (Doc. No. 2333 at 1). The State responded:

> At this time, the State cannot agree that all of the remedial stipulations previously approved and adopted meet the "need-narrowness-intrusiveness" requirements contained in the [PLRA]. . . . Any evaluation of the PLRA's need- narrowness-intrusiveness requirements cannot occur until the Court enacts the entire scope of the relief to be granted in this matter.

(Doc. No. 2382 at 1-2). At that time, the State continued to assert that it could not evaluate whether any remedial provision of a Stipulation complied with the PLRA need-narrowness-intrusiveness requirements until the State learned the full scope of remedial relief, including the scope of compliance oversight. (Id. at 1-5).

4

stipulations previously approved and adopted meet the 'need-narrowness-intrusiveness' requirements" of the PLRA.   Doc. 2382 (State's Statement Regarding the PLRA's "Need-Narrowness-Intrusiveness" Requirements) at 1.[2] The Court then set "an evidentiary hearing on whether the parties proposed stipulations comply with the PLRA" for July 8, 2019.   Doc. 2537 at 2.[3] "The hearings were eventually rescheduled to start on September 14, 2020, with the duration of the temporary PLRA findings on the stipulated remedial orders extended to December 30."  Doc. 3078 at 7.

However, shortly before this evidentiary hearing on whether the remedial orders and stipulations satisfy § 3626(a)(1)(A), Defendants signaled their intention to seek termination of remedial orders and stipulations at issue.  Doc. 2908 at 55-57.   At the Court's request, Defendants filed a formal motion to terminate, clarifying their position on the issue.  *See generally,* Doc. 2924. Defendants later withdrew their motion to terminate (Doc. 3004) and the Court entered an Order concluding the Defendants' termination efforts (Doc. 3005).

As discussed further below, prior to the scheduled start of the PLRA hearing on September 14, 2020, the Court resolved the issue of whether the Court needed

---

[2] Defendants also stated that: "Any evaluation of the PLRA's need-narrowness-intrusiveness requirements cannot occur until the Court enacts the entire scope of the relief to be granted in this matter." *Id*. at 2.

[3] The PLRA evidentiary hearing was then rescheduled to begin March 2, 2020 (*see, e.g.*, Doc. 2647 at 4) and reset for April 13, 2020 (Doc. 2720).

to make a finding of "current and ongoing violations" holding that § 3626(a)(1)(A), unlike § 3626(b)(3), contains no statutory requirement that the court find a "current and ongoing violation" of the Eighth Amendment. *See generally*, Doc. 2954.

The Court then solicited proposal from the parties about how to proceed and largely adopted Defendants' own proposal for how the Court should proceed in finalizing the relief. Doc. 3078 at 2. While the Court properly did not require Plaintiffs to prove current and ongoing violations, it did find that it would consider proposed relief in light of "current conditions" in order to ensure that it fulfills its obligation "to find a 'substantial risk of serious injury' before entering injunctive relief" (*id*. at 25), and "to ensure that the relief entered is appropriate in light of current conditions." (*id.* at 28)

## ARGUMENT

### I.   Plaintiffs Do Not Have The Burden Of Proving Current And Ongoing Constitutional Violations In This Proceeding

#### A.   This Court Has Already Ruled That Plaintiffs Need Not Present Evidence Of "Current And Ongoing Violations."

On September 14, 2020, the Court entered an order entitled "Opinion and Order Regarding the 'Current and Ongoing Violation' Issue" (Doc. 2954). The Order was occasioned by "defendants argue[ment] that, although the text of § 3626(a)(1)(A) does not include the 'current and ongoing violation' requirement,

the court is still obligated to make such a finding during the upcoming hearings even if they are conducted under the standard of § 3626(a)(1)(A). See Defs' Pretrial Br. (doc. no. 2908) at 30." Doc. 2954 at 2. Thus, the Court framed the question addressed by the Order as "whether §3626(a)(1)(A) includes a requirement that the court find a "current and ongoing violation" of federal law and that the relief at issue meets the 'need-narrowness-intrusiveness' test as to that ongoing violation." *Id*. The Court's answer to this question was clear: "By its plain terms and under the interpretation of the Eleventh Circuit, § 3626(a)(1)(A) contains no requirement that the court find a current and ongoing violation of federal law." Doc. 2954 at 8. The Court then ordered that "the above understanding of 18 U.S.C. § 3626(a)(1)(A) shall govern the upcoming hearings," *id*., on "various stipulations that have been entered in this case [and their] compl[iance] with the 'need-narrowness-intrusiveness' test established by 18 U.S.C. § 3626(a)(1)(A),'" *id*. at 1. That is the evidentiary hearing over which the Court is currently presiding.

> **B.    The Court Was Correct To Conclude That Plaintiffs Need Not Present Evidence Of "Current And Ongoing Violations."**

The Court also rejected Defendants' argument that the length of the remedial phase of this litigation necessitates a different approach. Doc. 2954 at 8. That argument is completely unmoored from the text of the PLRA and the Eleventh

Circuit's decisions interpreting that statute. The PLRA does not place a limit on the amount of time that can elapse between a finding of liability and the entry of a remedial order. Nor does the Eleventh Circuit. For that reason, this Court equated Defendants' argument with a request for "an exception to the governing statutory text because of the length of time between the liability findings and remedial orders in this case." *Id*. But as the Court acknowledged, it is "not empowered to grant such an exception against the contrary words of Congress and the Eleventh Circuit." *Id*. "By its plain terms and under the interpretation of the Eleventh Circuit, § 3626(a)(1)(A) contains no requirement that the court find a current and ongoing violation of federal law." *Id*.

In sum, the Court has found Defendants in violation of the Eighth Amendment, but the Court has not yet ordered the remedy for that violation. In this post-liability remedial posture, regardless of the time that have passed since the entry of the liability order, the Court need not make additional liability findings as another prerequisite to make the initial, statutorily required need-narrowness-intrusiveness findings. The Court simply must make need-narrowness-intrusiveness findings to conclude this remedial process.

> **C.   The Court's Separate Decision To Consider Evidence Of "Current Conditions" In Crafting The Remedial Order Did Not Alter The Court's Previous Ruling That Plaintiffs Need Not Present Evidence Of "Current And Ongoing Violations."**

In its December 29, 2020 order setting the evidentiary hearing that is now underway, the Court required that the parties present evidence of the "current conditions" in ADOC facilities.  *See* Doc. 3078 at 28.  The Court's request for evidence of "current conditions," however, was neither a reversal nor a modification of the Court's earlier ruling that evidence of a "current and ongoing violation" is unnecessary at this stage of the litigation.  To the contrary, the Court's December 29, 2020 order reiterated the Court's previous ruling that there is no requirement to show current and ongoing violations at this stage of the litigation. *See* Doc. 3078 at 13 (citing the Court's September 14, 2020 order, entitled "Opinion and Order Regarding the 'Current and Ongoing Violation' Issue" (Doc. 2954)).  Instead, the Court's instructions that the parties provide it with evidence of "current conditions"[4] were instead directed to the Court's desire to take a cautious approach to the passage of time and to ensure that the durable permanent relief the present proceeding is intended to finalize is necessary in light of the existing needs

---

[4] During a June 4, 2021, colloquy on this topic, the Court expressed some uncertainty as to whether the burden of proof issue had been resolved. Rough Tr., June 4, 2021, 194:16-195:1. As shown herein, the issue of whether Plaintiffs must demonstrate "current and ongoing violations" has been firmly and repeatedly answered in the negative. Respectfully, what remains unclear is: what is the burden with respect to "current conditions," and by whom is that burden borne? As Plaintiffs noted during this proceeding ( Rough Tr., June 3, 2021, 236:11 – 237:4) while Defendants would have it that Plaintiffs must show that the proposed relief remains necessary under current conditions, it is far more reasonable to hold that Defendants, who violated Plaintiffs' constitutional rights in myriad ways, must show that the proposed relief is no longer needed in light of current conditions.

of people with serious mental health needs in ADOC's major facilities.  *See* Doc. 3078 at 29.  Put another way, this proceeding is designed to determine what remedial framework is needed now, not whether a remedial framework is needed, which the Court already determined in its liability opinion.

II.   **Plaintiffs Will Suffer Substantial Prejudice Should the Court Alter Its Ruling That Plaintiffs Need Not Present Evidence Of "Current And Ongoing Violations" Before Permanent Relief Can Be Entered.**

A.   **Relying On The Court's Ruling That Plaintiffs Need Not Present Evidence Of "Current And Ongoing Violations," Plaintiffs Targeted Their Limited, Available Discovery To Current Conditions and NNI.**

The Court explained in its December 29, 2020 order that while developing their proposed omnibus remedial orders, the parties should conduct discovery to ensure that such orders would be "tailored to the actual needs of people in ADOC custody today."  Doc. 3078 at 29.  The Court anticipated 2-3 months of discovery and recognized that, in addition to the short time period available, discovery would necessarily be limited in light of pandemic restrictions.  *Id.* at 30.  Indeed, although Plaintiffs' expert Dr. Kathryn Burns was eventually able to conduct some site visits and prisoner interviews, they were very limited both in scope (with only four facility visits permitted) and in the amount of time Dr. Burns was permitted to be inside facilities and speak to prisoners (2-3 minute cell front encounters, followed by a small number of follow-up video interviews).  In addition, due to the short

10

time available and objections from Defendants, Plaintiffs' ability to obtain documents was also restricted.  In order to expedite their receipt of documents as much as possible, Plaintiffs were forced to make choices about which types of documents they would insist on and which they would forego, and to limit the volume of documents that would be produced across categories of requests. The number of depositions that could be taken was also limited, and Plaintiffs tailored their deposition inquiries to the Court's instructions to demonstrate current conditions as well as the NNI of the provisions of their proposed remedial order.

Had the Court ordered Plaintiffs to carry the burden of proving current and ongoing violations in this proceeding (and, indeed, had it not expressly held that Plaintiffs were *not* required to do so), Plaintiffs would have conducted their pretrial discovery differently. While the Court has indicated that it will consider the existence of a substantial risk of serious harm based on current conditions in order to enter appropriate injunctive relief, there is no burden on Plaintiffs to demonstrate deliberate indifference on the part of the Defendants, as there would have been if a "current and ongoing violations" standard was extant. Although Plaintiffs believe that current conditions – including the testimonial and documentary evidence the Court has received during this proceeding of the systemic, repeated, unremedied failures that have led to 12 more needless deaths by suicide – coupled with Defendants' reckless representations about significant

progress that clearly does not exist[5] and continued dilatory tactics aimed at preventing the entry of permanent relief, would support such a finding, Plaintiffs did not conduct their discovery with the aim of gathering evidence of deliberate indifference.[6] Thus, the about face in the prevailing burden of proof sought by Defendants near the conclusion of the Plaintiffs' presentation of their evidence would substantially prejudice Plaintiffs.[7]

---

[5] *See, e.g.,* Doc. 2908 (Defs.' Pretrial Br.) at 3 ("ADOC completely performed a litany of requirements in the Remedial Orders years ago."); at 31 ("Plaintiffs possess full knowledge of the State's current compliance with and complete fulfillment of a variety of the terms of the Remedial Orders. Instead of acknowledging the State's progress on these issues, Plaintiffs ignore that progress and focus solely on stale evidence in areas in which no risk of future harm"); and at 50 ("The State hoped Plaintiffs would acknowledge its accomplishments over the years[.]").

[6] This is particularly problematic with regard to Ruth Naglich, who until very recently was an official capacity Defendant in her position as Associate Commissioner for Health Services. As Plaintiffs learned during discovery, Ms. Naglich retired from her position as of February 1, 2021, and has been replaced as a Defendant by Acting Associate Commissioner Deb Crook. The absence of Ms. Naglich and her potential unavailability for the further discovery that could be necessitated by a change in the Court's rulings would create significant prejudice for Plaintiffs.

[7] During the June 4, 2021 colloquy, Defendants' counsel suggested that not requiring Plaintiffs to prove current and ongoing violations would constitute a change in the Court's rulings:

MR. LUNSFORD: Your Honor, candidly, I think that was -- that was our understanding was that evidence was going to be required at this hearing of ongoing circumstances. And if there's a change in that, then certainly, full disclosure, I think our client, particularly after the presentation of evidence that's been presented to date, will likely renew its motion to terminate.

**B.    If The Court Were To Alter Its Ruling That Plaintiffs Need Not Present Evidence Of "Current And Ongoing Violations," The Remedy Of Defendants' Violation Of Plaintiffs' Constitutional Rights Is Likely To Be Further Delayed.**

Prisoners with serious mental health needs have been waiting for four years to receive significant relief from the to remedy the "horrendous" violations of their constitutional rights this Court found in its liability opinion.  After spending many months negotiating and entering into stipulations containing substantive relief, and expressly asking the Court to enter those stipulations as orders, Defendants informed the Court and Plaintiffs that they didn't actually consider that relief to be enforceable because it *might* not meet the need, narrowness and intrusiveness requirements of the PLRA. They argued, and continue to argue, that the Court's remedial orders entered on the basis of those stipulations (at Defendant's own request) were merely preliminary injunctions that had already expired.

On the eve of the trial the Court had previously scheduled to determine whether the remedial orders satisfied the PLRA, Defendants filed a motion to terminate the remedial orders they contend have already expired.   Doc. 2924.  Shortly thereafter, having successfully derailed the scheduled hearing and facing

Rough Tr.,  June 4, 2021, 195:2-8. As Plaintiffs have demonstrated herein, the opposite is true.

the prospect of being forced to allow Plaintiffs to get a glimpse of conditions inside ADOC facilities, Defendants withdrew their motion to terminate. Doc. 3004.

Defendants have now seen a substantial portion of Plaintiffs' presentation of evidence regarding the current conditions at ADOC, and rather than attempting to counter it they are threatening to file another motion to terminate in a bid to stop the Court from completing the hearing and entering its findings.

Defendants repeated efforts since the Court's September 14, 2020, order (Doc. 2954) to revive the "current and ongoing violations" issue seek to exploit the Court's cautious approach to the passage of time and to sow confusion and uncertainty regarding an unambiguous ruling. Defendants do not seek to bring the remedial phase of this case to a close through the entry of durable permanent relief that satisfies the requirements of the PLRA.  Delay is not a means, it is an end.

## CONCLUSION

Finally, the Court is on the cusp of making the findings required to enter durable permanent relief, together with the monitoring that is critical to obtaining any sustained substantial compliance from Defendants.  Defendants' repeated efforts since the Court's September 14, 2020 order (Doc. 2954) to revive the "current and ongoing violations" issue seek to exploit the Court's cautious approach to the passage of time and to sow confusion and uncertainty regarding an unambiguous ruling.  Simply put, Defendants appear to be engaging in their

strategy once again of buying time to prevent the entry of remedial relief.   The

Court should stand by its prior ruling and rebuff the Defendants' effort to further

delay the entry of an order remedying Defendants' constitutional violations.

Dated:  June 6, 2021                        /s/ Jasmin Mize*
                                            One of the Attorneys for Plaintiffs

**SOUTHERN POVERTY LAW CENTER**
Post Office Box 1287
Decatur, GA 30031-1287
Telephone: (404) 230-3167
Facsimile: (404) 221-5857
jasmin.mize@splcenter.org
*Admitted pro hac vice*

Lisa W. Borden
Ashley N. Austin
Jonathan Barry-Blocker
**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, AL 36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
lisawborden@gmail.com
ashley.austin@splcenter.org
jonathan.blocker@splcenter.org

Leslie Faith Jones*
**SOUTHERN POVERTY LAW CENTER**
111 East Capitol Street, Suite 280
Jackson, MS 39201
Telephone: (601) 948-8882
Facsimile: (334) 956-8281
leslie.jones@splcenter.org
*Admitted pro hac vice*

William G. Somerville, III
Patricia Clotfelter
**BAKER, DONELSON, BEARMAN,
CALDWELL & BERKOWITZ PC**
420 20th Street North, Suite 1400
Birmingham, AL 35203
wsomerville@bakerdonelson.com
pclotfelter@bakerdonelson.com

William Van Der Pol, Jr.
Lonnie Williams
Barbara A. Lawrence
Andrea J. Mixson
**ALABAMA DISABILITIES
ADVOCACY PROGRAM**
Box 870395
Tuscaloosa, AL 35487
Telephone: (205) 348-4928
Facsimile: (205) 348-3909

wvanderpoljr@adap.ua.edu
lwilliams@adap.ua.edu
blawrence@adap.ua.edu
amixson@adap.ua.edu
Rhonda Brownstein
**ALABAMA DISABILITIES**
**ADVOCACY PROGRAM**
400 South Union Street, Suite 425
Montgomery, AL 36104
Telephone: (205) 579-4976
Facsimile: (334) 240-0996
rbrownstein@adap.ua.edu

Catherine E. Stetson*
Neal Kumar Katyal*
Jo-Ann Tamila Sagar*
Kristina Alekseyeva*
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
cate.stetson@hoganlovells.com
neal.katyal@hoganlovells.com
jo-ann.sagar@hoganlovells.com
kristina.alekseyeva@hoganlovells.com
*Admitted pro hac vice*

Mark Whitburn*
WHITBURN & PEVSNER, PLLC
2000 East Lamar Boulevard, Suite #600
Arlington, TX 76006
Telephone: (817) 672-5453
Facsimile: (817) 653-4477
mwhitburn@whitburnpevsner.com
*Admitted pro hac vice*

Joshua Toll*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW, 2nd Floor
Washington, DC 20006-4707
Telephone: (202) 227-6138
Fascimile: (202) 626-3737
jtoll@kslaw.com
*Admitted pro hac vice*

Evan Diamond*
**KING & SPALDING LLP**
185 Avenue of the Americas, 34th Floor
New York, NY 10036
Telephone: (212) 556-2297
Fascimile: (212) 556-2222
ediamond@kslaw.com
*Admitted pro hac vice*

Edward Bedard*
**KING & SPALDING LLP**
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-3127
Fascimile: (404) 572-5100
ebedard@kslaw.com
*Admitted pro hac vice*

Rachel Rubens*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1210
rrubens@kslaw.com
*Admitted pro hac vice*

**ATTORNEYS FOR THE PLAINTIFFS**

/s/ Anil A. Mujumdar
Anil A. Mujumdar
Attorney for Plaintiff
Alabama Disabilities Advocacy Program

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue, Suite 250
Birmingham, AL 35213
Telephone: (205) 590-6986
Facsimile: (205) 809-7899
anil@dagneylaw.com
**ATTORNEY FOR PLAINTIFF ALABAMA DISABILITIES ADVOCACY PROGRAM**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 6th day of June, 2021, electronically filed the foregoing with the clerk of court by using the CM/ECF system, which will send a notice of electronic filing to the following:

David R. Boyd, Esq.
John G. Smith, Esq.
Balch & Bingham LLP
Post Office Box 78
Montgomery, AL 36101-0078
dboyd@balch.com
jgsmith@balch.com
Steven C. Corhern, Esq.
Balch & Bingham LLP
Post Office Box 306
Birmingham, AL 35201-0306
scorhern@balch.com

Joseph G. Stewart, Jr., Esq. Luther M. Dorr, Jr., Esq.
Stephanie Lynn Dodd Smithee, Esq.
Alabama Department of Corrections
Legal Division
301 South Ripley Street
Montgomery, AL 36104
joseph.stewart@doc.alabama.gov
stephanie.smithee@doc.alabama.gov

Philip Piggott, Esq.
Webster Henry
Two Perimeter Park South
Suite 445 East
Birmingham, AL 35243
ppiggott@websterhenry.com

Justin A. Barkley, Esq.
Wexford Health Sources, Inc.

William R. Lunsford, Esq.
Matthew Reeves, Esq.
Stephen C. Rogers, Esq.
Kenneth S. Steely, Esq.
La Kiesha W. Butler, Esq.
Maynard, Cooper & Gale, P.C.
655 Gallatin Street, SW
Huntsville, AL 35801
blunsford@maynardcooper.com
mreeves@maynardcooper.com
srogers@maynardcooper.com
ksteely@maynardcooper.com
lbutler@maynardcooper.com

Luther M. Dorr, Jr., Esq.
Maynard, Cooper & Gale, P.C.
1901 6th Avenue North, Suite 2400
Birmingham, AL  35203
rdorr@maynardcooper.com

Deana Johnson, Esq.
Brett T. Lane, Esq.
MHM Services, Inc.
1447 Peachtree Street, N.E., Suite 500
Atlanta, GA 30309
djohnson@mhm-services.com
btlane@mhm-services.com

85-B Spectrum Cove
Alabama, AL 32007
justin.barkley@wexfordhealth.com

/s/ Jasmin Mize
One of the Attorneys for Plaintiffs