```
      IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

         MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


   EDWARD BRAGGS, et al.,        )
                                 )
        Plaintiffs,              )
                                 )      CIVIL ACTION NO.
        v.                       )        2:14cv601-MHT
                                 )            (WO)
   JEFFERSON S. DUNN, in his     )
   official capacity as          )
   Commissioner of               )
   the Alabama Department of     )
   Corrections, et al.,          )
                                 )
        Defendants.              )
```

**PHASE 2A OMNIBUS REMEDIAL OPINION**
**PART III SUPPLEMENT**

The court inadvertently omitted two subsections--one discussing the degree to which the EMT shall consider unexpected circumstances in monitoring the defendants' compliance with the court's omnibus remedial order, and the other discussing the defendants' promulgation of policies--from the third part of its Phase 2A Omnibus Remedial Opinion. These two subsections should have come after the subsection entitled "M. Training" in the section entitled "II. REMEDIAL PROVISIONS AND PLRA

FINDINGS." These two subsections should have been subsections "N." and "O." These omitted subsections now follow:

### N. Unforeseen Circumstances

Informed by the COVID-19 pandemic, the parties each propose provisions as to how, if at all, the remedial order and monitoring should be modified to accommodate unforeseen circumstances. In determining how unforeseen circumstances will affect the monitoring and measurement of compliance with the remedial order, the court need not make PLRA findings. The remedial order satisfies the PLRA's requirements, and this provision to accommodate unforeseen circumstances imposes no remedial obligations on the defendants.

The defendants propose to define "unforeseen circumstances" to mean "a situation in which an event or series of events (such as a natural disaster, fire, medical epidemic, pandemic, or outbreak, and lockdown) make performance under this Phase 2A Remedial Order

inadvisable, impracticable, illegal, impossible, detrimental to the health and/or safety of inmates and/or staff, or detrimental to the public interest." Defs.' Proposed Phase 2A Remedial Order (Doc. 3215) at § 1.38. The plaintiffs agreed that this definition is reasonable, provided that the EMT retains the discretion to monitor how the definition is applied. *See* July 7, 2021, R.D. Trial Tr. at 134-35. The court adopts the defendants' definition of "unforeseen circumstances."

As to how unforeseen circumstances will affect the remedial order, the plaintiffs propose:

> "Remedial orders will not be modified to anticipate unforeseen circumstances, such as COVID-19. However, the EMT can evaluate reasons for not complying with this remedial order as well as ... any attempt to mitigate noncompliance in determining noncompliance."

Pls.' Updated Proposed Omnibus Remedial Order (Doc. 3342) at § 14.1.

The defendants propose separate provisions regarding COVID-19 and other unforeseen circumstances. With respect to COVID-19 specifically, they propose:

3

> "The Court anticipates COVID-19 and potentially other unforeseen circumstances affecting performance of a variety of aspects of this Phase 2A Remedial Order as it affected performance of a variety of aspects of the Remedial Orders. ... Consistent with the process identified in Section 13.2 below, during the development of audit tools related to this Phase 2A Remedial Order, the Compliance Team, in collaboration with OHS and ADOC's Resumption Committee, will evaluate the remedial measures in this Phase 2A Remedial Order affected by COVID-19, the propriety of waiving or adjusting performance of such remedial measures, and the anticipated timeframe for such waiver or adjustment of performance. For example, the Compliance Team may evaluate the impact of COVID-19 on mental-health group activities, out-of-cell time, and other mental-health services (including any activities and services continued by this Phase 2A Remedial Order that the State previously identified as 'unworkable' ...). Along with the audit tools ... the Compliance Team will submit an initial written report to the Court consistent with Section 13.2 below."

Defs.' Proposed Phase 2A Remedial Order (Doc. 3215) at § 13.1. And with respect to unforeseen circumstances generally, they propose:

> "To ensure the durability of this Phase 2A Remedial Order, the Court authorizes the Compliance Team to temporarily waive or adjust performance of one (1) or more remedial measures provided in this Phase 2A Remedial Order. Before waiving or adjusting performance of any remedial measure in this Phase 2A Remedial Order, the Compliance Team, in collaboration with OHS and any other necessary person or entity such as the Alabama Department of Public

4

> Health, must evaluate the unforeseen circumstance and the effect on performance under this Phase 2A Remedial Order.  The Compliance Team will submit a written report to the Court identifying the unforeseen circumstance, the remedial measures affected by the unforeseen circumstance, the reasons for the decision to waive or adjust performance of such remedial measures, and the anticipated timeframe for such waiver or adjustment of performance."

*Id.* at § 13.2.

The parties' proposals are similar in that both would have the EMT take circumstances like COVID-19 into account when measuring compliance.  The court agrees with this approach.  However, the court will not prescribe the manner in which the monitoring team must do so.  Rather, the court will order that, in monitoring the defendants' compliance with the remedial order, the EMT shall consider unforeseen circumstances, their effects on the defendants' ability to comply with the remedial order, and the defendants' efforts to mitigate the effects of those circumstances.  This approach is consistent with the recommendation of the defendants' expert, Dr. Metzner.  *See* June 30, 2021, R.D. Trial Tr. at 195-97 (recommending that the remedial order should remain

5

unchanged and that the EMT should determine whether there is a "valid reason" for noncompliance and whether the defendants have conducted "reasonable mitigation"). This will afford the EMT the discretion to evaluate the defendants' performance in the context of unforeseen circumstances, without moving the goalposts fixed by the remedial order.

To the extent the defendants propose that the EMT should have the authority to waive performance of the court's orders, the court disagrees. Elsewhere in these proceedings, the defendants argued that it would be unlawful for the court to grant the EMT the authority to modify the court's orders, and the court agrees that giving that level of power to the EMT would be inappropriate.

Moreover, COVID-19 and similar conditions do not change what constitutes minimally adequate mental-health care. It may be the case that a failure to provide such care that would be deemed noncompliance under non-pandemic conditions should not be so while a prison

system is adjusting to a pandemic. But the constitutional floor did not shift when the pandemic struck.

## O. Policies

The plaintiffs contend that, if the court's omnibus remedial order is to have any effect, ADOC staff and inmates must know its contents--the staff so that they can follow its dictates, and the inmates so that they can hold the defendants to account if they fail to comply. To that end, they propose provisions requiring ADOC to (1) publish a single, comprehensive set of policies and procedures related to ADOC's provision of mental-health services to its inmate population, *see* Pls.' Updated Proposed Omnibus Remedial Order (Doc. 3342) at § 16.1; (2) update its Inmate Handbook to summarize the court's omnibus remedial order and make a complete copy of the court's order available for review in the law library of each major facility, *see id.* at § 16.2; and (3) require its mental-health vendors to comply with its policies and procedures, *see id.* at § 16.3.

The defendants dispute the necessity of this relief, pointing to the fact that ADOC has previously updated its policies to reflect the terms of the courts' orders as evidence of its "readiness to develop and implement appropriate policies related to the provision of mental-health care without a court order requiring it to do so." Defs.' Post-Trial Br. (Doc. 3367) at 140. In the alternative, they offer a provision requiring ADOC to update its policies and procedures to reflect the terms of the court's omnibus remedial order. *See* Defs.' Proposed Phase 2A Remedial Order (Doc. 3215) at § 16.

While the court agrees with the plaintiffs that ADOC would be prudent to publish a single, comprehensive set of policies and procedures related to its provision of mental-health services, and to summarize at least certain provisions of the court's omnibus remedial order in its Inmate Handbook, and while the court would strongly encourage ADOC to do such, it declines to enmesh itself in the process of ongoing and detailed review of the adequacy of ADOC's published policies and handbooks.

Rather than order the plaintiffs' requested relief, it simply notes that, if the EMT determines that ADOC is failing to inform inmates, its staff, or its mental-health vendor's staff of the contents of the court's omnibus remedial order, and that that failure impedes implementation of the order, it should work with ADOC to resolve the problem, and bring it to the court's attention if necessary.

    DONE, this the 28th day of December, 2021.

                                            /s/ Myron H. Thompson  
                                          **UNITED STATES DISTRICT JUDGE**