In the United States District Court
for the
Middle District of Alabama
Northern Division

| | |
|---|---|
| EDWARD BRAGGS, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| | ) |
| | ) CIVIL ACTION NO. |
| v. | )  2:14cv601-MHT |
| | ) (WO) |
| | ) |
| JOHN Q. HAMM        in his | ) |
| official capacity as | ) |
| Commissioner of | ) |
| the Alabama Department of | ) |
| Corrections, Regions Bank, | ) |
| Alabama Corrections Finance Authority | ) |
| et al. | ) |
| | ) |
| Defendants. | ) |

**Complaint in Intervention**

For a complaint in intervention against the Alabama Department of Corrections, Regions Bank, the Alabama Corrections Finance Authority, and John Hamm, in his official capacity as Commissioner to the Alabama Department of Corrections and as successor to the Jefferson Dunn, Plaintiff states:

*Introduction*

This Court has stated:

> Defendants argue that because the Commissioner and the Associate Commissioner do not have the authority to appropriate more money to their

1

>own budget, they are immune from this lawsuit under the Eleventh Amendment. The Supreme Court has clearly held that the Eleventh Amendment does not bar an order requiring expenditure of state funds if it is ancillary to injunctive relief for an ongoing violation. In <u>Edelman v. Jordan</u>, 415 U.S. 651, 668, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974), the Supreme Court noted that the Eleventh Amendment did not bar suits that had "fiscal consequences to state treasuries" that "were the necessary result of compliance with decrees which by their terms were prospective in nature." The Court in <u>Edelman</u> also observed that having to spend more money from the state treasury because the State needs to conform its conduct to the court order is an "ancillary effect" that is "a permissible and often an inevitable consequence of the principle announced in <u>Ex parte Young</u>." <u>Id.</u> at 668. The Court reiterated this principle in <u>Milliken v. Bradley</u>, 433 U.S. 267, 289, 97 S. Ct. 2749, 53 L. Ed. 2d 745 (1977), upholding a district court's order requiring the State defendants to pay one-half of the additional costs attributable to a remedial education scheme to support school desegregation. In both of these cases, the Supreme Court recognized that the State must pay for ancillary costs of prospective, injunctive relief, regardless of whether the named defendants in their official capacities--who were standing in for the State based on the <u>Ex parte Young</u> fiction--had the ability to appropriate more money to their own budget. <u>See also Lane v. Cent. Ala. Cmty. Coll.</u>, 772 F.3d 1349, 1351 (11th Cir. 2014) ("The Supreme Court has recognized that compliance with the terms of prospective injunctive relief will often necessitate the expenditure of state funds.") (citing <u>Edelman v. Jordan</u>, 415 U.S. 651, 94 S. Ct. 1347, 39 L. Ed. 2d 662 (1974)). In fact, rather than precluding relief, courts have found inadequate funding to be a basis for finding of deliberate indifference. <u>See, e.g., Wellman v. Faulkner</u>, 715 F.2d 269, 273 (7th Cir. 1983).

*Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1266-67 (M.D. Ala. 2017).

This Court has entered an injunction requiring the Alabama Department of Corrections to take actions necessary to discontinue the infliction of cruel and unnecessary punishment on persons such as Plaintiff. Plaintiff brings this complaint to obtain a declaratory judgment and other relief to ensure that that the Alabama Department of Corrections and other necessary and indispensable parties do not take

2

actions that would render that injunction useless by leasing certain properties which may ultimately house persons presently in the custody of the Alabama Department of Corrections, but only if those persons survive the presently unconstitutional conditions, which have grown increasingly lethal since this action commenced.

*Parties*

1. Plaintiff is a man imprisoned in the custody of the Alabama Department of Corrections.

2. Plaintiff suffers from and has had a history of mental illness, but Plaintiff is competent to manage his affairs.

3. John Hamm is the Commissioner of the Alabama Department of Corrections and is the successor to Jefferson Dunn, the man who occupied the office of Commissioner when this action commenced. The remainder of this Complaint in intervention will refer to Mr. Hamm as Commissioner.

4. The Alabama Department of Corrections is an agency of the State of Alabama.

5. The Alabama Corrections Finance Authority is a public corporation organized by an Act of the Alabama legislature for the purpose of financing corrections in Alabama.

6. Regions Bank is a domestic corporation organized under the laws of Alabama.

*Jurisdiction*

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. 1331.

8. This Court has jurisdiction under 28 U.S.C. 1337 over the claims asserted in this Complaint in Intervention.

9. This Court has authority to issue the declaratory relief requested herein under 28 U.S.C. 2201.

*Facts*

10. Plaintiff is currently housed in the St. Clair County Correctional Facility ("St. Clair") near Springville, Alabama. He is serving a mandatory life without parole sentence for a felony murder occurring when he was 16 years old. He has not yet had a *Miller* hearing.

11. St. Clair is chronically short staffed.

12. Plaintiff once cooperated with the Alabama Department of Corrections in its investigation of whether a correctional officer improperly beat an inmate at Donaldson Correctional Facility, and since that time, Plaintiff has been vulnerable to attacks by others, including but not limited to correctional officers who were offended by his cooperation. As a result, Plaintiff must stay in restricted housing while at St. Clair to remain relatively safe from attack.

13. This chronically short-staffed situation means that all inmates are in peril of violence and injuries resulting from violence.

14. Thus, on June 27, 2022, while he himself was in handcuffs, Plaintiff was beaten by a fellow inmate who slipped handcuffs, even though correctional officers were readily at hand. The inmate is a member of a prominent gang, for whom prison life is relatively benign (compared to the experience of Plaintiff) given the influence that some gangs have due to a lack of correctional officers.

15. Plaintiff must stay in restricted housing (commonly known as solitary confinement) because there are so few correctional officers that he is unsafe in the general population.

16. Plaintiff's mental illness and vulnerable circumstances have led him at times to be placed on suicide watch.

17. Plaintiff has often failed to received adequate mental health treatment, and even basic hygiene.

18. Plaintiff acknowledges that some correctional officers at St. Clair are exemplary professionals. Nonetheless, they can hardly protect themselves, much less inmates, including Plaintiff, in their custody, because the officers are so few in number.

19. Plaintiff lives in conditions that constitute cruel and unusual punishment.

20. This Court has ordered the Commissioner to hire more correctional officers and to take other measures that would ameliorate the cruel and unusual punishment inflicted on Plaintiff, as well as on other inmates.

21. However, the Commissioner and the Alabama Department of Corrections have steadfastly refused or have otherwise failed to hire more correctional officers, notwithstanding assurances they would do so.

22. For fiscal years 2022 and 2023, the Alabama legislature has appropriated funds sufficient to hire more correctional officers and to ameliorate other conditions condemned by this Court as cruel and unusual. These appropriations reflect an increase of roughly $30 million *per annum* over amounts otherwise appropriated to the Alabama Department of Corrections.

23. These appropriations are unrestricted and unearmarked, apart from their having been allocated for the use of the Alabama Department of Corrections.

24. Instead of using these appropriations to comply with this Court's injunction, the Alabama Department of Corrections has agreed to pay the money as lease payments due August 15, 2022, and December 15, 2022.

25. These lease payments will be remitted to Regions Bank.

26. Regions Bank has a mortgage on certain properties that the Alabama Department of Corrections anticipates using as prisons, once those prisons are constructed.

6

27. Alabama is a "title theory" state, such that Regions, by virtue of holding the mortgage, is the owner of the properties and will hold the legal title to the prisons located thereon, although the terms of the mortgage are such that Regions will not have the right to terminate the equity of redemption on the properties.

28. The Alabama Corrections Finance Authority has issued bonds to finance the construction of prisons on the property mortgaged to Regions.

29. Regions will be the trustee for the bond issue, such that lease payments will be remitted to Regions or its order, who will cause the money to be distributed to bond holders, net of certain fees and expenses.

29. Plaintiff is a member of the class previously certified by the Court in this case.

30. As noted above, the Court has entered an injunction in this matter.

31. As persons benefitted by the injunction, Plaintiff and other absent class members have a claim to the funds allocated by the Alabama legislature to the Alabama Department of Corrections, which claim is entitled to priority over that of any of the Defendants named herein, such that payment should not be made to the Alabama Corrections Finance Authority, Regions Bank, or any person or entity other than the Alabama Department of Corrections, unless and until the Commissioner and the Alabama Department of Corrections have complied with the terms of any injunction entered in this action.

32. Alabama regularly employs a procedure known as "pro-ration" when budget revenues fall short of scheduled expenditures. In this process, money available for expenditures is reduced so that the State does not run a financial deficit.

33. Present economic prospects are such that Alabama is likely to have pro-ration in the coming months.

34. If the Alabama Department of Corrections or the Alabama Finance Authority pays Regions Bank or its order (or anyone else) $30 million to lease prisons that are as yet unconstructed, then the Alabama Department of Corrections will not have the money necessary to comply with this Court's injunction.

35. Plaintiff is not unsympathetic to the effort of improving the physical plant used by the Alabama Department of Corrections. His own cells have often been filled with biting insects and covered with mildew. Over the course of his incarceration, Plaintiff has been housed in several facilities, all of which needed repair.

36. However, the problems immediately at hand in Alabama prisons are such that they are unlikely to be resolved without compliance with this Court's injunction, regardless whether anyone builds new prisons. While in custody mortality rates have always been uniquely high in Alabama (as compared to other States), they skyrocketed from 2015 to 2019, despite a sharp reduction in the prison

population. Over this same period, the ratio of correctional officers to inmates plummeted, while the number of "serious incidents" greatly increased.

## Count I

37. Plaintiff incorporates by reference paragraphs 1 through 37 of this Complaint in Intervention.

38. There is a real and present controversy between Plaintiff and absent class members, on the one hand, and the Defendants, and each of them, on the other hand.

38. Without a judgment declaring that the interests of Plaintiff and other absent class members are prior in right to the Alabama Corrections Finance Authority and Regions Bank, as trustee of the bond issue and holder of the legal title to the property on which prison are being constructed, the interests of the Plaintiff and other absent class members will not only be frustrated, but thwarted altogether, insofar as compliance with this Court's injunction is concerned.

WHEREFORE, Plaintiff respectfully requests this Court to enter a judgment declaring that Plaintiff and other absent class members in this action have a legal and equitable interest in money allocated to the Alabama Department of Corrections, which interest is prior in right to that claimed by the Alabama Corrections Finance Authority, Regions Bank, or any other person or legal entity, including the

Commissioner, until such time as the Commissioner and others subject to this Court's injunction comply with this Court's injunction.

                                  Respectfully submitted,

                                  *Frank Ozment*
                                  (ASB-7203-N73J)

**Frank Ozment Attorney at Law, LLC**
501 217 Country Club Park
Mountain Brook, Alabama 35213