**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **EDWARD BRAGGS, *et al.*,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) **Case No. 2:14-cv-00601-MHT-JA** |
| **v.** | ) |
| | ) **District Judge Myron H. Thompson** |
| **JOHN HAMM, *et al.*,** | ) |
| | ) |
| **Defendants.** | ) |

## THE STATE'S RESPONSE TO TROY CONNELL'S MOTION FOR LEAVE TO INTERVENE AND REQUEST FOR JUDICIAL NOTICE

Defendants John Hamm ("Commissioner Hamm"), in his official capacity as Commissioner of the Alabama Department of Corrections ("ADOC"), and Deborah Crook ("Deputy Commissioner Crook" and, collectively with Commissioner Hamm, the "State"), in her official capacity as ADOC's Deputy Commissioner, Office of Health Services, hereby submit this response to the Motion for Leave to Intervene ("Motion" doc. 3634-1), Request for Judicial Notice (doc. 3655) and Notice of Filing Sworn Declarations in Support of Motion for Leave to Intervene and Further Request for Judicial Notice (doc. 3659) filed by putative intervenor, Troy Connell ("Connell").[1]

---

[1] The State, in submitting this response to the Motion, expressly preserves any and all objections and all available legal and equitable arguments in response to the Court's Phase 2A Omnibus Remedial Opinion (docs. 3461, 3462, 3463, 3465), Phase 2A Omnibus Remedial Order (doc. 3464, the "Remedial Order"), any other Phase 2A remedial orders, and the Court's liability opinions and

## INTRODUCTION AND BACKGROUND

Premised on a faulty legal theory, Connell seeks permission from this Court to intervene and to empower him to effectively veto the State's use of public funds. Connell cannot and does not identify any alleged or actual noncompliance with any provision of the Remedial Order. In fact, the State and Plaintiffs continue to work to meet the requirements and deadlines contained in the Remedial Order—and actively mediate unresolved aspects of or disputes concerning Phases 1 through 2A.

Waiting more than six (6) years after certifying the Phase 2A class, more than five (5) years following the entry of the Liability Opinion (doc. 1285), and more than six (6) months following the Remedial Order (doc. 3464), Connell untimely seeks declaratory relief establishing that he holds a priority claim over funds appropriated to ADOC. (Doc. 3634-1 at ¶ 5). "Intervention of right is only available if the interest asserted is 'direct, substantial, [and] legally protectable.'" Huff v. Commissioner of IRS, 743 F.3d 790, 796 (11th Cir. 2014) (quoting Athens Lumber Co. Inc. v. Fed. Election Comm'n, 690 F.2d 1364, 1366 (11th Cir. 1982)). The purported "interest" identified by Connell relates to his fictional claim to ADOC funds and the pure

---

orders in this action, including without limitation, the Court's Liability Opinion and Order as to Phase 2A Eighth Amendment Claim (doc. 1285, the "Liability Opinion") and Phase 2A Supplemental Liability Opinion and Order on Periodic Mental-Health Evaluations of Prisoners in Segregation (doc. 2332). Nothing contained in this filing shall be construed as an admission by the State, a waiver of any objection to any opinion or order in this action, or a waiver of the State's pending appeal related to Phase 2A (see doc. 3488). Nothing in this filing shall be construed as an admission of any kind by the State that ADOC's current or historical staffing or provision of mental-health care is or was unconstitutional or deficient in any way.

speculation the State will lack sufficient funds to comply with the Remedial Order in the future.  (See Doc. 3634-1 at ¶ 5; Doc. 3634-2 at ¶¶ 32, 33, 34, 38).  Such speculation over future events cannot constitute any "direct, substantial and legally protectable" interest in funds appropriated to ADOC.

This Court should deny Connell's Motion on the following grounds:

(1) Connell does not hold a direct, substantial and legally protectable interest in funds appropriated to ADOC to construct new prisons;

(2) Connell failed to file a timely motion to intervene;

(3) Plaintiffs' interest and Connell's interest in compliance with the Remedial Order align so that his interest remains protected;

(4) Plaintiffs' pursuit of compliance with the Remedial Order will not impede Connell's interest; and

(5) Connell provides no legitimate bases for the Court to grant permission to intervene.

Based on Connell's lack of any legitimate, legally protectable interest in this action, his failure to identify the appropriated funds as being subject to this action, his untimely motion to intervene, and the current, adequate representation of his interests by the existing parties, this Court should deny his Motion.

Additionally, Connell asks this Court to take judicial notice of a bond issuing statement and a response to a motion for summary judgment filed in a separate case. Connell fails to request this Court to take judicial notice of "facts" and instead

3

requests the Court to take notice of Connell's *interpretation* of documents.  Because

Connell exceeds the limits of Federal Rule of Evidence 201, the Court should deny

Connell's requests for judicial notice.

## LEGAL STANDARD

Connell seeks to intervene as a right under Rule 24(a) of the Federal Rules of

Civil Procedure.  Because Connell makes no allegation of "an unconditional right

by a federal statute," he must seek intervention under Rule 24(a)(2), which limits

intervention to one who "claims an interest relating to the property or transaction

that is the subject of the action, and is so situated that disposing of the action may as

a practical matter impair or impede the movant's ability to protect its interest, unless

existing parties adequately represent that interest."  Fed. R. Civ. P. 24(a)(2).  The

Eleventh Circuit has long held that an intervention as a right requires a third party to

show:

> (1) his application to intervene is timely; (2) he has an
> interest relating to the property or transaction which is the
> subject of the action; (3) he is so situated that disposition
> of the action, as a practical matter, may impede or impair
> his ability to protect that interest; and (4) his interest is
> represented inadequately by the existing parties to the suit.

Huff, 743 F.3d at 795 (quoting Fox v. Tyson Foods, Inc., 519 F.3d 1298, 1302-03

(11th Cir. 2008) (quoting Chiles v. Thornburgh, 865 F.2d 1197, 1213 (11th Cir.

1989)).  An intervenor "bear[s] the burden of proof to establish all four bases for

intervention as a matter of right."  Burke v. Ocwen Financial Corp., 833 F. App'x

4

288, 291 (11th Cir. 2020) (citing Chiles, 865 F.2d at 1213). Connell fails to establish any of the four (4) requirements, much less all of them, and the Court should deny his motion to intervene under Rule 24(a)(2).

Additionally, Connell seeks to intervene under Rule 24(b) under which "the court *may* permit anyone to intervene who … has a claim … that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b)(2) (emphasis added). "Generally, 'permissive intervention under Rule 24(b) is appropriate where a party's claim or defense and the main action have a question of law or fact in common and the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties.'" Sussman v. Secretary, Fla. Dep't of Corrs., Case No. 20-14152, 2022 WL 53608, \*1 (11th Cir. Jan. 6, 2022) (quoting Mt. Hawley Ins. Co. v. Sandy Lake Props., Inc., 425 F.3d 1308, 1312 (11th Cir. 2005)). Further, a party seeking permissive intervention "must show that [] his application to intervene is timely…." Chiles, 865 F.2d at 1213. Permissive intervention "is wholly discretionary with the court," and "even though there is a common question of law or fact, or the requirements of Rule 24(b) are otherwise satisfied, the court may refuse to allow intervention." Sussman, 2022 WL 53608, \*1 (quoting Worlds v. Dep't of Health & Rehab. Servs., 929 F.2d 591, 595 (11th Cir. 1991)). Connell failed to timely intervene and failed to establish any common questions of law or fact, and, as such, the Court should deny his request for permissive intervention.

5

## ARGUMENT

## I.   CONNELL DOES NOT POSSESS A DIRECT, SUBSTANTIAL, LEGALLY PROTECTABLE INTEREST IN THIS PROCEEDING.

In order to intervene as a right, Connell must hold a "direct, substantial [and] legally protectable interest in the proceeding.' Huff, 743 F.3d at 796. "A legally protectable interest 'is something more than an economic interest' … 'one which the substantive law recognizes as belonging to or being owned by the applicant.'" Mt. Hawley Ins. Co. v. Sandy Lake Properties, Inc., 425 F.3d 1308, 1311 (11th Cir. 2005) (quoting United States v. South Fla. Water Mgmt. Dist., 922 F.2d 704, 710 (11th Cir. 1991). Connell's speculative interest in current or future State funds fails to establish a legally protectable interest. Further, no substantive law exists recognizing these funds as "belonging to or being owned by" Connell, or any other class member.

### A.   CONNELL'S SPECULATIVE INTEREST IN AN ALLEGED FUTURE EVENT OF NONCOMPLIANCE AND PRO-RATION CANNOT SUPPORT HIS MOTION TO INTERVENE.

Connell "claims an interest in having the defendants in this action comply with this Court's order, and the ability of the defendants to comply will be jeopardized if they spend money available to comply with this Court's order on leases for new prisons." (Doc. 3634-1 at ¶ 5). In short, he claims the injunction in this action creates in each class member priority over funds appropriated to ADOC. Further, he argues that due to "[p]resent economic prospects … Alabama *is likely* to

6

have pro-ration" which may result in the State not holding sufficient funds to comply with the injunction. (Doc. 3634-2 at ¶¶ 33, 34) (emphasis added). Based on this speculation, Connell seeks to establish that his alleged interest in this action, i.e. an order establishing priority over state funds to the benefit of the class members, constitutes a direct, substantial and legally protectable interest providing him the power to direct, or at least effectively veto, how the State spends its allocated funds. Connell's speculative attempt fails to establish the direct, substantial, and legally protectable interest required, and, as such, his Motion fails.

In order to establish a legally protectable interest, Connell must establish an interest "which the substantive law recognizes as belonging to or being owned by the applicant." Mt. Hawley Ins. Co., 425 F.3d at 1311. "Interests that are contingent upon some future events and which are 'purely a matter of speculation' are not 'the kind of protectable interest … necessary to support intervention as of right.'" Laube v. Campbell, 215 F.R.D 655, 657 (M.D. Ala. 2003) (quoting ManaSota-88, Inc. v. Tidwell, 896 F.2d. 1318, 1322 (11th Cir. 1990)); see Mt. Hawley Ins. Co., 425 F.3d at 1311 (district court did not err in denying motion to intervene where intervenor's interest was "purely speculative" because it was contingent upon prevailing in a separate action); see also Ace American Ins. Co. v. Paradise Divers, Inc., 216 F.R.D. 537, 539, (S.D. Fla. 2003) (intervention denied based on speculative interest in case due to outcome of separate action); Meadowfield Apartments, Ltd. v. U.S., 261 F.

7

App'x 195, 196 (11th Cir. 2008) (allegations of impairment of "future rights" "too speculative to support intervention").  For example, in Laube, a group of correctional officers sought to intervene in an action concerning conditions at Tutwiler Prison for Women.  The officers argued that they could "be exposed to civil liability because of current conditions at Tutwiler."  215 F.R.D. at 657.  This Court denied the motion to intervene, holding that the officers' stated interest depended "on the occurrence of a long sequence of events before it could become colorable."  Id.  The same reasoning applies to Connell's alleged interest here.

Connell does not identify an interest created in State funds by federal or Alabama law.  Certainly, no federal or Alabama law recognizes a security interest or other entitlement to current or future monies from Alabama's general fund allocated to ADOC or its officials.  Instead, Connell's only stated interest in this action rests on a speculation about the State's ability to comply with the Court's Remedial Order based on a lack of sufficient funds at some point in the future.  Connell's abject speculation (or purely speculative interest) does not remotely qualify as the type of "direct, substantial and legally protectable interest" required.  As such, Connell's request to intervene should be denied.

### B.   CONNELL'S CLAIM TO A PRIORITY INTEREST OVER STATE FUNDS DOES NOT ESTABLISH A LEGALLY PROTECTABLE INTEREST.

Connell's alleged interest in State funds arising from the Remedial Order has never been recognized by a court in Alabama.  Connell utterly failed to identify any

applicable substantive Alabama law to support his absurd position stated below:

> "As persons benefitted by the injunction, Plaintiff and
> other absent class members have a claim to the funds
> allocated by the Alabama legislature to the Alabama
> Department of Corrections, which claim is entitled to
> priority over that of any of the Defendants named herein,
> such that payment should not be made to the Alabama
> Corrections Finance Authority, Regions Bank, or any
> person or entity other than the Alabama Department of
> Corrections, unless and until the Commissioner and the
> Alabama Department of Corrections have complied with
> the terms of any injunction entered in this action."

(Doc. 3634-2 at ¶ 31).  Connell's only attempt to justify his position is contained in

the "Request for Judicial Notice" where Connell points to the definition of "claim"

in the "Alabama Uniform Voidable Transfer Act," Ala. Code § 8-9B-2(3).  Connell

states the Code section "recogniz[es] that an interest under an order in equity is a

claim for purposes of voiding certain transfers and other relief."  (Doc. 3655 at ¶3).

Connell does not allege a current violation of the Remedial Order, but seeks to

preempt the State from utilizing funds as the State determines necessary to operate

prisons both now and in the future.  Connell cannot establish a legal interest in State

funds resulting from the Remedial Order, and, as a result, his request to intervene

fails.

Connell's reliance on the definition of "claim" in Section 8-9B-2(3) is

misplaced.  Section 8-9B-2(3) does not support his assertion of an interest in the

State's appropriated funds.  Section 8-9-B-2(3) states, "Claim, except as used in

9

'claim for relief,' ***means a right to payment***, whether or not the right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured and specifically shall include the nonpayment of child support pursuant to a court order."  (Emphasis added).  See A.P. Props. V. Goshinshy, 714 N.E.2d 519, 528-529 (Ill. 1999) (discussing the Uniform Fraudulent Transfer Act, "the definition of a claim is expansive, [but] creditor must demonstrate the debtor owes or potentially owes a 'payment' to the creditor."); see also U.S. v. ILCO, Inc., 48 B.R. 1016, 1024 (N.D. Ala. 1985) (quoting Penn Terra Ltd. v. Dept. of Environmental Resources, 733 F.2d 276, 278 (3rd Cir. 1984) (courts "focus on the 'nature of the injuries which the challenged remedy is intended to redress'" to determine whether an injunction serves as an equitable remedy or money judgment).[2]  The Remedial Order requires performance of future acts, it does not create any "right to payment" to Connell, Plaintiffs, or any other class member.  Connell points to no other support for this expansive interpretation that a class member benefiting from an order in an injunctive action, i.e. order to perform specific tasks, provides class members a priority lien over all the finances of a defendant.  Connell's legal theory fails and, therefore, his Motion

---

[2] Alabama adopted the Uniform Fraudulent Transfer Act in 1989, "to make uniform the law with respect to the subject of this chapter among states enacting it."  Ala. Code § 8-9A-11.  The definition of "claim" requiring a "right to payment" in § 8-9A-1(3) of the Alabama Fraudulent Transfer Act remains the same in in § 8-9B-2(3) of the Alabama Uniform Voidable Transactions Act.

fails to assert a legally protectable interest and should be denied.

## C.   CONNELL'S INTERPRETATION OF HIS RIGHTS UNDER THE REMEDIAL ORDER WOULD VIOLATE THE PRISON LITIGATION REFORM ACT.

Connell's reinterpretation of the expansiveness and intrusiveness of the Remedial Order to restrict the State from engaging in any other activities deemed by class members non-responsive to the Remedial Order would violate the needs-narrowness-intrusiveness requirements of the "Prison Litigation Reform Act" ("PLRA").  The PLRA provides remedies available to courts with respect to prison conditions, and requires a court to find "that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right."  18 U.S.C. § 3626(a)(1)(A).  This "'require[s] particularized findings that each requirement imposed by the preliminary injunction satisfies each of the need-narrowness-intrusiveness criteria.'"  Hoffer v. Secretary, Fla. Dep't of Corrs., 973 F.3d 1263, 1278 (11th Cir. 2020) (quoting United States v. Secretary, Fla, Dep't of Corrs., 778 F.3d 1223, 1228 (11th Cir. 2015)).  Connell's attempted reinterpretation greatly expands the scope of the Remedial Order, and, if true, would require the Court to make new findings of the needs-narrowness-intrusiveness of the Remedial Order.

In the Phase 2A Omnibus Remedial Opinion Part III, this Court explained each finding and provided an explanation for its determination of the scope of the ordered provision and the Court's understanding of how the provision met the needs-

narrowness-intrusiveness requirements of the PLRA. (Doc. 3463).[3] At no point in the Court's 375-page opinion did the Court suggest the Remedial Order provided Plaintiffs or class members a claim over State funds or the right or ability to direct the State's use of its funds. Specifically, the Court stated "that the provisions it enters today are necessary, narrowly tailored, and ***the least intrusive*** to correct ADOC's systemic violations …." (Doc. 3463 at 371) (emphasis added). Connell's misguided interpretation of an inapplicable statute in an attempt to expand the Court's Remedial Order goes beyond the confines of the PLRA. Because Connell fails to assert a legally protectable interest, his Motion is due to be denied.

### D. CONNELL'S RELIANCE ON THE DECLARATIONS OF SHANNON DABBS FAILS TO ESTABLISH HIS INTEREST IN THIS CASE.

Connell seeks to rely upon two declarations submitted by Shannon Dabbs to support his Motion.[4] (Docs. 3659-1, 3659-2). As reported by Dabbs, she served as a "Mental Health Data Manager" from January 2019 to February 2022. (Doc. 3659-1 at 1). Dabbs' duties concerned "compil[ing] reports showing how many appointments for mental health treatment were missed each day." (Doc. 3659-2).

---

[3] The State continues to maintain on appeal that the Remedial Order fails to comply with the PLRA, and does not concede that the Court's findings in this respect were correct or appropriate.

[4] Dabbs' declarations fail meet the requirements of Rule 56(e), Federal Rules of Civil Procedure, in that Dabbs fails to state the information provided in the declarations come from personal knowledge. Similarly, Dabbs' declarations violate Rule 602, Federal Rules of Evidence, because she lacks personal knowledge of the applicable subject matters. As such, Dabbs' declarations are due to be stricken.

Dabbs worked in Wexford Health Sources Incorporated's ("Wexford") office in Columbiana, Alabama, and did not work inside any ADOC correctional facility. (Doc. 3659-1 at 1).  Further, Dabbs' access to information consisted of "data collected by Wexford … for patients who were inmates in the custody of the [ADOC]."  (Doc. 3659-2).  Dabbs does not allege to have access to inmate medical or mental-health files.  Further, Dabbs holds no experience in providing mental-health care or managing mental-health care.  Indeed, Dabbs lacks any knowledge of the requirements of the Remedial Order, Wexford policies concerning the administration of mental-health care, contractual requirements between Wexford and ADOC, or any other facet of Wexford's requirements or compliance with administering mental-health care in ADOC facilities.  (Id.).  Instead, Dabbs served Wexford as a data entry clerk, nothing more.

Dabbs' declarations fail to provide any evidence concerning Connell's Motion. By Dabbs' own admission, she quit working for Wexford in February 2022. (Doc. 3659-1 at 1).  The Remedial Order, entered on December 27, 2021, did not become effective until March 9, 2022.  (Doc. 3667 at 2).  As such, none of the information contained in her declarations relates to ADOC's compliance with the Remedial Order.  Further, Dabbs' declarations fail to relate in any way to Connell's interest in asserting priority over State-appropriated funds.  Based on Dabbs' lack of information concerning the State's compliance with the Remedial Order, the Court

13

should disregard her declarations.  Because Connell provides no legally protectable interest, his Motion should be denied.

## II.   CONNELL FAILED TO TIMELY INTERVENE PRIOR TO ENTRY OF THE LIABILITY FINDING OR ENTRY OF THE REMEDIAL ORDER.

Connell made no effort to intervene in 2016 after class certification, when the Court certified a "mental-health care Eighth Amendment plaintiff class [] defined and certified as consisting of 'all persons with a serious mental-health disorder or illness who are now, or will in the future be, subject to [the State's] mental-health care policies and practices in ADOC facilities…." (Doc. 1014, p. 2).  Similarly, Connell did not seek to intervene before or immediately after the Court entered the Liability Opinion on June 27, 2017.  (Doc. 1285).  Moreover, Connell did not seek to intervene with the enactment of Act 2021-546 on October 1, 2021, codifying the State's intent to construct new prisons and renovate other prisons.  Connell further neglected to intervene before or immediately after the Court entered the Remedial Order.  Connell did not seek to intervene until the State "and others publicly formally finalized their plans to spend money on lease payments…." (Doc. 3634-1 at ¶ 7).  Connell's intentional delay prejudices the State by attempting to interfere with its efforts to comply with the Remedial Order.  As such, Connell's Motion should be denied as untimely.

Both Rule 24(a)(2) and 24(b)(2) require the putative intervenor to timely seek intervention.  Fed. R. Civ. P. 24.  "A timeliness analysis concerns not only the

chronology leading up to the motion for intervention, but also 'all the circumstances'…." Dillard v. City of Foley, 166 F.R.D 503, 505 (M.D. Ala. 1996). Further, courts review motions to intervene post judgment with "'a jaundice eye' … because '[i]nterventions after judgment have a strong tendency to prejudice existing parties to the litigation or to interfere substantially with the orderly process of the court.'" Board of Trs. of the Univ. of Ala. v. Houndstooth Mafia Enterprises, LLC, 163 F. Supp. 3d 1150, 1154 (N.D. Ala. 2016) (quoting United States v. U.S. Steel Corp., 548 F.2d 1232, 1235 (5th Cir. 1977)). When "evaluating timeliness, [courts] look to:

> [t]he length of time during which the would-be intervenor actually knew or reasonably should have known of his interest in the case before he petitioned for leave to intervene[;] 2. The extent of the prejudice that the existing parties to the litigation may suffer as a result of the would-be intervenor's failure to apply for intervention as soon as he actually knew or reasonably should have known of his interest in the case[;] 3. The extent of the prejudice that the would-be intervenor may suffer if his petition for leave to intervene is denied[;] and 4. The existence of unusual circumstances militating either for or against a determination that the application is timely."

Burke v. Ocwen Financial Corp., 833 F. App'x 288, 291 (11th Cir. 2020) (quoting Salvors, Inc. v. Unidentified Wrecked & Abandoned Vessel, 861 F.3d 1278, 1294 (11th Cir. 2017)). None of the factors support finding Connell's Motion timely.

Connell delayed over six (6) years from class certification, more than five (5) years from the State initially seeking to build new prisons, and more than six (6)

months following the entry of the Remedial Order to seek to intervene.  See Dillard, 166 F.R.D at 505 (motion to intervene denied as untimely where intervenors did not seek to intervene when the merits of case were being considered, waiting three (3) months in to seek to intervene ).  Allowing Connell to intervene at this late date will disrupt the Parties' efforts to comply with the Remedial Order in initiating monitoring.  This delay alone should render his request denied.

Prejudice resulting from a putative intervenor's delay to the existing parties remains "'[t]he most important consideration in determining timeliness … In fact, this may well be the only significant consideration when the proposed intervenor seeks intervention of right.'"  Commissioner, Ala. Dep't Corrs. v. Advance Local Media, LLC, 918 F.3d 1161, 1171 (11th Cir. 2020) (quoting McDonald v. E. J. Lavino Co., 430 F.2d 1065, 1073 (5th Cir. 1970).  Connell's intervention will prejudice the existing parties by causing delay and requiring renewed litigation over the needs-narrowness-intrusiveness of the Remedial Order.  Additionally, the State will be prejudiced by Connell's action creating a cloud over the State's appropriated funds.  Renewed litigation of this action will ultimately lead to further delays in monitoring of the Remedial Order, which will further prejudice Plaintiffs and all class members, as well as the State in seeking termination of the Remedial Order. Based on the substantial prejudice created by Connell seeking intervention at this late date, his Motion should be denied as untimely.

16

Additionally, Connell will suffer no prejudice if not allowed to intervene. As stated below, Plaintiffs adequately represent Connell's interest in compliance with the Remedial Order, and the Court retains sufficient authority to enter orders if Plaintiffs bring challenges based on the State's compliance. Further, if Connell believes the State's transfer of appropriated funds to construct a new prison violates Ala. Code § 8-9B-1, Connell may attempt to assert this claim in state court. Based on Connell's delay and the lack of prejudice to him from a denial of intervention, his Motion should be denied as untimely.

Finally, an additional circumstance counsels against intervention. Currently, the delay following the entry of the order establishing the External Monitoring Team ("EMT") in September 2020 (doc. 2915) resulted in the loss of two (2) members of the EMT after the entry of the Remedial Order. These losses caused significant delays for the Parties to research, interview, and identify willing candidates to serve as members of the EMT. Additional delays only increase the chances of more unintended disruptions to the Parties' abilities to finalize and begin full monitoring of the Remedial Order. Connell's Motion, which serves only to harass and cause delay, creates the potential for further unintended disruptions and delays in monitoring. As such, the unusual circumstance concerning the EMT militate against intervention.

Connell's failure to timely intervene in this action—both as a right under Rule

17

24(a)(2) and with permission under Rule 24(b)(2)–prejudices the existing parties. Simply, even assuming Connell had a valid theory to intervene (which he does not possess), Connell's delay in filing the Motion is fatal.  Connell's Motion is therefore due to be denied.

## III.   PLAINTIFFS ADEQUATELY REPRESENT CONNELL'S INTERESTS IN THE STATE'S COMPLIANCE WITH THE REMEDIAL ORDER.

To intervene as a right, Connell must also show that "his interest is represented inadequately by the existing parties to the suit."  Huff, 743 F.3d at 795.  Even if the Court determines that Connell's interest in this action concerns the broad goal of compliance with the Remedial Order, as opposed to Connell's stated narrow goal of asserting a priority interest over state funds, Connell's Motion remains deficient because Plaintiffs adequately pursue the same interest.  "When two parties are similarly situated and have the same objective, the proposed intervenor's right is adequately represented."  Daker v. Owens, 806 F. App'x 881, 883 (11th Cir. 2020) (citing Athens Lumber, 690 F.2d at 1366).  Connell, as class member to this action, holds the same broad objective as Plaintiffs—the State's compliance with the Remedial Order.  As such, Plaintiffs' actions in pursuing compliance adequately protects Connell.

In Daker v. Owens, the Eleventh Circuit denied an inmate's motion to intervene in another inmate's pending litigation finding "there is no distinction between Daker and [plaintiff]'s interest in the outcome of the case that entitles Daker

18

to intervene as a matter of right." Daker, 806 F. App'x at 883.  Daker argued plaintiff failed to adequately represent his interest because "the inmates employ different litigation strategies…."  Id.  The court found "that, because Daker's and [plaintiff]'s interest are perfectly aligned, Daker's interest in the outcome of the case … will be adequately represented by [plaintiff] notwithstanding any differences in litigation strategies each party may employ."  Id.   Connell seeks to intervene under substantially similar circumstances as Daker.

Similar to Daker, Connell seeks to intervene to employ a different litigation strategy, i.e. seeking to impose a priority over state funds appropriated to ADOC. Connell, also similar to Daker, agrees Plaintiffs adequately protected his interest in this litigation stating, "Edward Bragg has done a great work by obtaining an injunction from this Court."  (Doc. 3634-1 at ¶ 6).  Connell's only stated purpose for intervening concerns employing a separate litigation strategy to assert priority over state funds appropriated to ADOC "until existing class representatives take such measures as may be necessary to do so."  (Doc. 3655 at ¶ 3).  Because Connell's objective of compliance with the Remedial Order remains identical to Plaintiffs' objective, and the only difference appears to be litigation strategy, Connell cannot establish that Plaintiffs fail to adequately represent his interest.  See Chiles, 865 F.2d at 1215 (court denied intervention of homeowners association where interest with plaintiff were "identical" and there was no indication the representation would be

19

inadequate); see also Athens Lumber, 690 F.2d at 1366 (where proposed intervenor and plaintiff hold the same interest, the court can presume plaintiff adequately represents intervenor's interest). Because Plaintiffs adequately represent Connell's interest, Connell's Motion is due to be denied.

## IV. PLAINTIFFS' PURSUIT OF COMPLIANCE WILL NOT IMPEDE CONNELL'S INTEREST.

To establish a right to intervene, Connell must establish that "he is so situated that disposition of the action, as a practical matter, may impede or impair his ability to protect that interest." Huff, 743 F.3d at 795. The Court entered its Remedial Order in December 2021. (Doc. 3464). As stated above, Plaintiffs' interest in the State achieving compliance with the Remedial Order remains identical to Connell's interest. Connell provides no basis for the Court to conclude that any difference in interests exists between him and Plaintiffs in this regard. As such, disposition of this action—substantial compliance—will not impede Connell's interest in compliance with the Remedial Order.

Connell's alleged interest in pursuing a priority claim over funds appropriated to ADOC differs from Plaintiffs only in litigation strategy concerning compliance with the Remedial Order. This "interest," however, does not require intervention. If Connell's theory holds true (it does not) that he, as a class member to the injunction, holds a superior claim to funds appropriated to ADOC by the Alabama legislature, he can pursue that claim through a separate action. See E.E.O.C. v.

DiMare Ruskin, Inc., 2011WL5974847, *3 (M.D. Fla. May 31, 2011) (denying intervention as a right will not impede intervenor's "ability to protect his interests, as he may seek an individual civil action outside this litigation"). Plaintiffs pursuit of compliance in this action will not impede or impair Connell's alleged interest in compliance with the Remedial Order or his interest in seeking priority over state funds. As such, Connell's Motion under Rule 24(a) is due to be denied.

## V. CONNELL FAILED TO ESTABLISH A COMMON QUESTION OF LAW OR FACT FOR PERMISSIVE INTERVENTION.

Connell's last hope to intervene falls to permissive intervention under Rule 24(b)(2). "The decision to allow permissive intervention [] lies within the discretion of the district court." Athens Lumber, 690 F.2d at 1366 (citing Brotherhood of R.R. Trainmen v. Baltimore & Ohio R.R., 331 U.S. 519, 524 (1947)). For permissive intervention, Connell must establish that he timely moved to intervene, that his claim asserts a "question of law or fact in common" with Plaintiffs, and "the intervention will not unduly prejudice or delay the adjudication of the rights of the original parties." Mt. Hawley Ins. Co., 425 F.3d at 1312. Connell fails to meet these requirements. Further, Connell maintains the ability to assert a separate state law action to pursue his claim.[5]

---

[5] Additionally, ADOC inmates recently filed two (2) actions challenging the State's construction of new prisons and/or the use of the American Rescue Plan Act funds. These cases appear to include the same funds over which Connell seeks to assert priority. See Raymond Bosarge v. United States Department of Treasury, Case No. 2:22-cv-00407 (M.D. Ala. July 11, 2022); and

As discussed above, Connell ignored multiple events in this action to intervene. This failure alone condemns his request for permissive intervention. Additionally, weighing against intervention concerns the prejudice to current Parties from the inevitable delay associated with his intervention. See Athens Lumber, 690 F.2 at 1367 (finding "introduction of additional parties inevitably delays proceedings"). Delay resulting from Connell's intervention will prejudice the Parties and, as such, his request for permissive intervention should be denied.

Connell's request for permissive intervene also fails because he seeks to assert a new cause of action, a declaratory judgment to confirm a priority claim over state funds appropriated to ADOC. This cause of action does not hold a common question of law or fact with the current action. See Sterling, 817 F. App'x at 898 (district court correctly denied intervention where putative intervenor had little in common with pending action). Based on Connell's proposed complaint not containing common questions of law or fact, Connell's request of permissive intervention should be denied.

## VI.   THE COURT SHOULD DENY CONNELL'S "REQUEST FOR JUDICIAL NOTICE."

In support of his Motion, Connell asks the Court to take judicial notice of the Preliminary Offering Statement for the issuance of Series 2022A Bonds by the

---

Caywon Kincaid #231631 v. United States Department of Treasury, Case No. 2:22-cv-00409 (M.D. Ala. July 13, 2022).

Alabama Corrections Institution Finance Authority, along with its attached exhibits (the "Offering Statement") (docs. 3655, 3655-1), and a response in opposition to a motion for summary judgment filed in Tracey Grissom v. Corizon, Doc. 135, Case No. 2:19-cv-00420 (M.D. Ala. March 21, 2022) ("Grissom Response"). (Doc. 3659 at 2). For the reasons set forth above, Connell asserted no legally protectable interest in this matter, and the Court should therefore deny his Request for Judicial Notice as moot.

Moreover, both the Offering Statement and the Grissom Response fail to qualify under Federal Rule of Evidence 201 as the type of documents of which the Court may take judicial notice, at least for the purpose for which Connell seeks to use them. The Eleventh Circuit "caution[s] that 'the taking of judicial notice of facts is, as a matter of evidence law, a highly limited process [because] judicial notice bypasses the safeguards which are involved with the usual process of proving facts by competent evidence in district court.'" Paez v. Secretary, Fla. Dep't of Corrs., 947 F.3d 649, 652 (11th Cir. 2020) (quoting Shahar v. Bowers, 120 F.3d 211, 214 (11th Cir. 1997)). As to the Offering Statement, according to Connell, "the documents do not appear expressly to subordinate the claims and/or security interests of anyone to the claims and/or security interests, if any, of the plaintiff class." (Id. at 4). Connell therefore concludes that the Offering Statement and its exhibits "demonstrate that, absent intervention, Connell's interests and those of other

23

absent class members will be impaired." (Id.). But this is not the type of "fact" a court may take judicial notice. Fed. R. Evid. 201(b).

Even if the Court could take judicial notice of the Offering Statement itself, it cannot take judicial notice of *Connell's interpretation* of the Offering Statement. Under Federal Rule of Evidence 201, the Court may take judicial notice of "a fact that is not subject to reasonable dispute because it . . . can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned." While the *contents* of the POS may "be accurately and readily determined," Connell's *interpretation* of those contents cannot qualify as "a fact that is not subject to reasonable dispute." See, e.g., Bryant v. Avado Brands, Inc., 187 F.3d 1271, 1278 (11th Cir. 1999) (in action alleging securities fraud, on motion to dismiss, court could take judicial notice of documents filed with Securities and Exchange Commission "for the purpose of determining what statements the documents contain and not to prove the truth of the documents' contents"). Thus, Connell's request for judicial notice regarding the Offering Statement remains inappropriate.

Finally, even if the Court did consider the Offering Statement, its contents actually confirm Connell's lack of any legally protectable interest. As Connell concedes, the Offering Statement, as well as the lease agreement attached to the Offering Statement, provide "that ADOC shall not have an obligation to pay under the lease described in the Offering Statement, if the payment would 'adversely

impact' the ability of the ADOC to comply with court orders."  (Doc. 3655 at 3).  In

fact, the lease agreement provides:

> To the extent permitted by law, ADOC shall, prior to the
> satisfaction of its other obligations, prioritize and apply all
> funds appropriated by the State Legislature for the benefit
> of the Issuer, as well as such other funds lawfully available
> to ADOC, to satisfy ADOC's obligations under this Lease
> Agreement, except to the extent that such prioritization
> would adversely impact ADOC's ability to comply with
> (i) ADOC's federal and state constitutional and/or
> statutory obligations and/or obligations arising out of
> common law; (ii) court orders or consent decrees; and/or
> (iii) settlement agreements entered into by ADOC in
> response to allegations or claims relating to its
> constitutional and/or statutory obligations and/or
> obligations arising out of common law.

(Doc. 3655-1 at 201).  Thus, to the extent the Court considers the Offering Statement

and its exhibits, the documents make clear that ADOC's obligations thereunder

remain secondary to its obligations to comply with court orders, including the

Remedial Order.  Accordingly, even if the Court grants Connell's Motion for

Judicial Notice, it should deny the Motion to Intervene because Connell possesses

no legally protectable interest in this matter.

Connell's request for judicial notice of the Grissom Response fails for the

same reasons as his attempt to have the Court take judicial notice of the Offering

Statement.  Connell asks this Court to take notice, not of a "fact," but of an

interpretation or argument presented before another court.  Rule 201 will not extend

to such lengths.

"[T]he kinds of things courts ordinarily take judicial notice are (1) scientific facts: for instance when does the sun rise or set; (2) mattes of geography: for instance, what are the boundaries of a state; or (3) matters of political history: for instance, who was the president in 1958." Shahar, 120 F.3d at 214.  Plaintiff's counsel seeks the Court to take judicial notice of a response to a summary judgment motion to determine "whether the absentee class members in this action should reasonably expect any improvement in health care after Corizon returns."  (Doc. 3659 at 2.).  See Kerruish v. Essex Holdings, Inc., 777 F. App'x 285, 293 (11th Cir. 2019) (rejecting request to take judicial notice of statements made by a party in a separate action).  Connell does not seek judicial notice of the "fact" that plaintiff in the Grissom action filed a response.  Instead, he seeks judicial notice of the allegations and arguments of counsel made in the Grissom Response to find what Connell may "reasonably expect" to result from a future event.  Such a request greatly exceeds the limitations of Rule 201 to judicial notice of "facts."  See also United States v. Smith, 918 F.2d 1551, 1562 (11th Cir. 1990) ("[S]statements and arguments of counsel are not evidence.").  Connell's request does not come close to meeting the stringent requirements of Rule 201.  As such, Connell's request for judicial notice of the Grissom Response should be denied.

## CONCLUSION

For the foregoing reasons, the State respectfully requests that this Court issue

26

an Order denying Connell's Motion for failure to satisfy the requirements of Rule

24(a) or 24(b), and denying Connell's request for the Court to take judicial notice of

the POS and the Grissom Report.

Dated:  July 29, 2022.

*/s/ William R. Lunsford*
*Attorney for the State*

William R. Lunsford
Matthew B. Reeves
La Keisha Butler
Kenneth S. Steely
**MAYNARD, COOPER & GALE, PC**
655 Gallatin Street
Huntsville, AL 35801
Telephone: (256) 512-5710
Facsimile: (256) 512-0119
blunsford@maynardcooper.com
mreeves@maynardcooper.com
lbutler@maynardcooper.com
ksteely@maynardcooper.com

Luther M. Dorr, Jr.
**MAYNARD, COOPER & GALE, PC**
1901 Sixth Avenue North
2400 Regions Harbert Plaza
Birmingham, AL 35203
Telephone: (205) 254-1178
Facsimile: (205) 714-6438
rdorr@maynardcooper.com

Stephanie L. Smithee
**ALABAMA DEPARTMENT OF CORRECTIONS**
Legal Division
301 South Ripley Street
Montgomery, Alabama 36130

Telephone (334) 353-3884
Facsimile (334) 353-3891
stephanie.smithee@doc.alabama.gov

Anne A. Hill
Deputy Attorney General
**STATE OF ALABAMA**
**OFFICE OF THE ATTORNEY GENERAL**
501 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 242-7491
Facsimile: (334) 353-8400
Anne.Hill@AlabamaAG.gov

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 29th day of July, 2022.

Ashley N. Light
Lisa W. Borden
Susanne Cordner
**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, Alabama 36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
ashley.light@splcenter.org
lisawborden@gmail.com

Leslie F. Jones
**SOUTHERN POVERTY LAW CENTER**
111 East Capitol Street
Suite 280
Jackson, MS 39201
Telephone: (601) 948-8882
Facsimile: (334) 956-8281

Bruce Hamilton
**SOUTHERN POVERTY LAW CENTER**
201 St. Charles Avenue
Suite 2000
New Orleans, LA 70170
Telephone: (504) 352-4398
Facsimile: (504) 486-8947

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue, Suite 250
Birmingham, Alabama 35213
Telephone: (205) 729-8445
Facsimile: (205) 809-7899
anil@dagneylaw.com

William Van Der Pol, Jr.
Lonnie Williams
Barbara A. Lawrence
Andrea J. Mixson
**ALABAMA DISABILITIES ADVOCACY PROGRAM**
University of Alabama
500 Martha Parham West
Box 870395
Tuscaloosa, Alabama 35487-0395
Telephone: (205) 348-6894
Facsimile: (205) 348-3909
wvanderpoljr@adap.ua.edu
blawrence@adap.ua.edu
lwilliams@adap.ua.edu
amixson@adap.ua.edu

William G. Somerville III
Patricia Clotfelter
**BAKER DONELSON BEARMAN CALDWELL & BERKOWITZ, PC**
420 20th Street North
Suite 1400
Birmingham, Alabama 35203
Telephone:  (205) 244-3863
Facsimile:  (205) 488-3863
wsomerville@bakerdonelson.com
pclotfelter@bakerdonelson.com

Deana Johnson
Brett T. Lane
**MHM SERVICES, INC.**
1447 Peachtree Street NE
Suite 500

Neal K. Katyal
Catherine E. Stetson
Jo-Ann Tamila Sagar
**HOGAN LOVELLS US LLP**
555 13th Street NW
Washington, DC 20004
Telephone: (202) 637-5528
Facsimile: (202) 637-5910

Edward A. Bedard
**KING & SPALDING, LLP**
1180 Peachtree Street NE
Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-3127

Rachel Rubens
**KING & SPALDING, LLP**
50 California Street
Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1210

Atlanta, GA 30309
Telephone: (404) 347-4134
Facsimile: (404) 347-4138
djohnson@mhm-services.com
btlane@mhm-services.com

Joshua C. Toll
**KING & SPALDING, LLP**
1700 Pennsylvania Avenue NW
2nd Floor
Washington, DC 20006
Telephone: (202) 227-6138

Evan Diamond
**KING & SPALDING, LLP**
1185 Avenue of Americas
34th Floor
New York, NY 10036
Telephone: (212) 556-2297

Frank Ozment
**FRANK OZMENT ATTORNEY AT LAW, LLC**
501 217 Country Club Park
Mountain Brook, Alabama 35213
*Counsel for Troy Connell*

*/s/ William R. Lunsford*
Of Counsel