## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| **EDWARD BRAGGS, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| | ) | |
| | ) | **CIVIL ACTION NO.** |
| **v.** | ) | **2:14cv601-MHT** |
| | ) | **(WO)** |
| | ) | |
| **JOHN Q. HAMM in his official capacity** | ) | |
| **as Commissioner of the Alabama** | ) | |
| **Department of Corrections,** | ) | |
| **Regions Bank, Alabama Corrections** | ) | |
| **Finance Authority, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## TROY CONNELL'S REPLY TO THE STATE'S RESPONSE TO CONNELL'S MOTION FOR LEAVE TO INTERVENE AND REQUEST FOR JUDICIAL NOTICE

Troy Connell hereby replies to the response made by John Hamm in opposition to Connell's motion for leave to intervene.

### I.    Introduction

Troy Connell moved this Court for leave to intervene (Docs. 3633, 3634, 3634-1, 3634-1) to obtain a judgment declaring that the interests of absent class members under remedial orders entered by this Court are prior in right to the interests of the parties named as defendants in his proffered complaint in intervention. As a

1

mentally ill inmate in custody of the Alabama Department of Corrections ("ADOC"), Connell has rights under the order entered by this Court.

The motion to intervene was timely, because there was no reason to expect that the intervention-defendants would claim priority over Connell's interest until the week before he moved for leave to intervene, when the Alabama Construction Finance Authority published its Preliminary Official Statement in connection with certain bonds. Before, there was no reason to believe that the intervenor-defendants threatened Connell's interests or that, with respect to them, Connell's interests were inadequately represented.

The declaratory judgment requested by Connell would not implicate the Prison Litigation Reform Act, 42 U.S.C. 1997e. He is not asking the Court to broaden or otherwise revise the judgments previously entered by this Court. To the contrary, Connell asks this Court to vindicate its own judgment, which already complies with the PLRA. That request lies at the heart of Article III. Construing the PLRA to bar the relief Connell seeks here would mean that legislation unconstitutionally impinged on separation of powers.

Hamm implies that a claim under the Uniform Fraudulent Transfers Act is the proper remedy for Connell. Connell is here trying to establish priority of the lien that this Court's judgment. If Connell has a claim under the Act, it would not prevent him from seeking the relief he requests here.

## II.    Argument

**A.    Connell has a legal interest under the judgment entered in this action.**

The remedial order most recently entered by this Court is a judgment under Federal Rule of Civil Procedure 54(a). In pertinent part, Rule 54 (a) states: "'Judgment' as used in these rules includes a decree and any order from which an appeal lies." Fed.R.Civ.P. 54(a).  The State has taken an appeal from the remedial order and, we respectfully submit, cannot plausibly maintain that the order is not a judgment.

Under Alabama law, a judgment creates a legal obligation.  *Helms v. Helms' Kennels, Inc.,* 646 So. 2d 1343 (Ala. 1994).  Thus, when this Court entered its remedial order, the result was not merely another data point for Hamm to consider in the discharge of his duties. Rather, judgment gave the judgment holder(s) rights against Hamm (in his official capacity). *Id.*

Hamm is wrong to suggest that Connell suffers no mental illness. Since Connell's incarceration at the age of 16, he has been the victim of extraordinary violence, some of which has been perpetrated by correctional officers upset with his cooperation with law enforcement investigations of other correctional officers. He has been confined almost continuously in restricted housing (solitary confinement) at St. Clair County Correctional Facility, which has itself been the subject of litigation pressed by the Equal Justice Institute. He has been confined in what have

3

been characterized as suicide prevention cells.  It is expected that, if it is necessary to prove the point, discovery would show that he has been on the lists of inmates characterized by the Alabama Department of Corrections as mentally ill.  Connell is an absent class member and is a beneficiary of this Court's order.

**B.    Connell's motion for leave to intervene was timely.**

The week before Connell sought leave to intervene, the Alabama Corrections Finance Authority published its preliminary official statement in connection with its hope to issue $750 million of bonds to finance the construction of two new prisons, only one of which was described as having any special features to serve inmates with mental illness. It was then that it became apparent that Hamm, in his official capacity, intended to prefer the claims of new creditors over the plaintiff class who had obtained a judgment against him in this action.  Indeed, it was not until then that it was apparent that ADOC would have any money, over and above that required for ordinary operations, to which this Court's judgment could attach. See 2022 Al. ALS 270, 2022 Ala. Acts 270, 2022 Al. Pub. Act 270, 2022 Al. SB 106 (providing that ADOC would receive a substantial appropriation, but only if the Alabama Corrections Finance Authority became indebted).   Thus, it was then that it became necessary for Connell to intervene to establish priority of the claims of the Plaintiff class.

Contrary to Hamm's suggestion, Connell was not obligated to intervene when the Alabama legislature voted to approve new prisons. Connell does not oppose new prisons in principle. Connell wants the rights afforded him under the judgment entered by this Court, which is to say, a facility staffed by enough correctional officers to avoid cruel and unusual punishment.

## C. Connell's interests are not adequately represented with respect to the relief associated with his request for intervention.

Connell's motion to intervene implies nothing about whether existing parties adequately presented him before this Court entered its judgment, much less before ADOC had any prospects of receiving funds making compliance with that judgment possible.  However, with respect to the relief that his complaint in intervention seeks, Connell's interests are not presently being adequately addressed or represented by the named plaintiffs in this suit.  When one holds a judgment against an entity that faces competing claims, the question arises whether the judgment takes priority over the other claims, which may attach by any number of other means, including but not limited to mortgages.[1]  It is important for a judgment holder to take such measures as are available to establish priority over other claims.  *See Helms v. Helms' Kennels, Inc.,* 646 So. 2d 1343 (Ala. 1994) (one judgment holder obtaining priority over

---

[1]     The Preliminary Official Statement provides that the bond trustee will take a mortgage without the power of foreclosure on property that will be leased to ADOC.  One purpose behind such a mortgage would be to prime creditors whose interests arise after recordation.

another by filing a certificate of judgment, even though both judgments were entered in the same action on the same paper filed the same day ).

Alabama has not made unconditional appropriations to hire more correctional officers at the Alabama Department of Corrections.  2022 Al. ALS 270, 2022 Ala. Acts 270, 2022 Al. Pub. Act 270, 2022 Al. SB 106; 2021 Al. ALS 479, 2021 Ala. Acts 479 , 2021 Al. Pub. Act 479 , 2021 Al. HB 309. Instead, ADOC will get money to hire more correctional officers (which will necessarily require increasing the pay of senior correctional officers, because the amount allowable as pay for new officers is a function of the pay made to senior officers under the existing compensation scheme) only if ADOC manages to dispose of property. *Id.*   However, the legislature has unconditionally appropriated money to ADOC, if the Alabama Corrections Finance Authority is obligated to make payments on bonds authorized under Act 2021-546. Absent such indebtedness, the appropriation reverts to the Alabama Trust Fund Board of Trustees. 2022 Al. ALS 270, 2022 Ala. Acts 270, 2022 Al. Pub. Act 270, 2022 Al. SB 106.[2]  Since Connell moved for leave to intervene, the Authority has incurred that indebtedness, such that ADOC is now statutorily entitled to the appropriation.

---

[22]     Thus, it appears that State has unconditionally made funding available to ADOC to pay the debt voluntarily incurred by a third party, but has made funding available to achieve compliance with this Court's order only if ADOC can sell property.

In other words, the ADOC could expect to receive money that can be used to comply with this Court's remedial orders, but only if the Authority voluntarily incurred a debt. The Authority incurred the debt, so ADOC can expect to receive money. The question arises who has the superior rights to that money, especially if the ADOC persists in cruelly and unusually punishing inmates by refusing to hire enough correctional officers to make the provision of mental health care possible. It is Connell's position that the rights under judgments entered by this Court are superior to those rights extended to the intervenor-defendants, all of whom had ample, actual notice of the judgment in this action.   Of course, if Hamm complies with the order, the question is moot. But, if he does not, it may be too late by that time to establish priority over the interests of the intervenor-defendants (although Connell does not concede that other perfected interests of the intervenor-defendants could prime the interests arising under the judgment, given the equities of this matter) or others.

The plaintiff class must act to increase the likelihood of priority over other competing interests. In *Grupo Mexicano De Desarrollo v. All. Bond Fund*, 527 U.S. 308, 323 n.6, 119 S. Ct. 1961, 1970 (1999), the Supreme Court wrote:

> As we stated in *Adler* v. *Fenton*, 65 U.S. 407, 24 HOW 407, 411-412, 16 L. Ed. 696 (1861): "'Our laws determine with accuracy the time and manner in which the property of a debtor ceases to be subject to his disposition, and becomes subject to the rights of his creditor. A creditor acquires a lien upon the lands of his debtor by a judgment; and upon the personal goods of the debtor, by the delivery of an execution to the sheriff. It is only by these liens

7

that a creditor has any vested or specific right in the property of his debtor. Before these liens are acquired, the debtor has full dominion over his property; he may convert one species of property into another, and he may alienate to a purchaser. The rights of the debtor, and those of a creditor, are thus defined by positive rules; and the points at which the power of the debtor ceases, and the right of the creditor commences, are clearly established. These regulat. ions cannot be contravened or varied by any interposition of equity'" (quoting *Moran* v. *Dawes*, 1 Hopk. Ch. 365, 367 (N. Y. 1825)).

By statute, Alabama has altered the rule whereby a judgment attaches the personal goods of a judgment debtor. Filing a certificate of judgment, rather than placing the judgment in the hands of the Sheriff, attaches a lien. Ala. Code § 6-9-211.  Of course, that remedy and others are available in U.S. District Court for judgments entered by that court. Fed R. Civ P. 64(a).   Without such actions, there remains the serious risk that a defendant facing a judgment will prefer to pay creditors who have no judgment but who, for example, may have purchased relatively high yield bonds issued by the Authority.

Real property owned by a public corporation and used for a public purpose is generally exempt from execution. *WM Mobile Bay Envtl. Ctr. v. City of Mobile Solid Waste Auth.*, No. 1190978, 2021 Ala. LEXIS 132 (Dec. 17, 2021). Thus, receivers and writs of sequestration are the primary means of enforcing judgments against those whose property is so used. *Id.*   However, the mere fact that a receiver is appointed or a writ of sequestration is issued may not, by itself, prime other creditors. *Talladega Mercantile Co. v. Jenifer Iron Co.*, 102 Ala. 259, 14 So. 743 (1893).

Once Connell is allowed to intervene, he anticipates taking such measures as will improve or assure priority of rights arising under the judgments entered by this Court. Such measures can include filing certificates of judgment. Hamm implies that Connell presently seeks to seize money allocated to Hamm. Connell has not applied for a writ under Federal Rules of Civil Procedure 64 or 70. For that matter, as far as Connell knows, no named plaintiff has sought such writs. Until Connell or one of the currently named plaintiffs seeks such a writ, and perhaps not before the writ is returned without sufficient assets, considerations that Hamm may have regarding the consequences of the writs are premature.

Hamm errs by suggesting the Prison Litigation Reform Act prohibits Connell from obtaining the relief sought by the complaint in intervention.  While the Prison Litigation Reform Act does not violate the separation of powers doctrine merely because the PLRA restricts equitable relief in some instances, *Miller v. French*, 530 U.S. 327, 120 S. Ct. 2246 (2000), no court has recognized that the PLRA can impinge on the enforceability of an otherwise lawful judgment, itself compliant with the PLRA, without violating the separation of powers clause.

It is axiomatic that the entry, interpretation, and enforcement of a judgment is a judicial function, reserved for the judicial branch under Article III.  This remains true even in bankruptcy, where Congress has, under Article I, express authority for regulating the subject matter. *See, e.g.,* Stern v. Marshall, 564 U.S. 462, 131 S. Ct.

9

2594 (2011).  We respectfully submit that one need not reach Hamm's arguments regarding the PLRA, but, if they must be addressed, they should be rejected.

**D.    The Court may take judicial notice of the preliminary offering statement and attachments.**

Connell requested the Court to take judicial notice of the Preliminary Official Statement and its attachments.  Out of an abundance of caution, Connell explained why these documents are relevant, although that explanation is not literally required by the Federal Rules of Evidence. Hamm argues at some length that the Court cannot take judicial notice of Connell's explanations. Connell agrees: explanations of legal relevance are not facts that may be judicially noticed, but are rather reasons for taking notice of facts.

That being said, Connell stands by those explanations. They may be briefly summarized as follows. The fact that Alabama Corrections Finance Authority has warned bondholders that they may go unpaid if payment would jeopardize compliance with judicial orders hardly amounts to a promise that Alabama Department of Corrections will spend to comply with this Court's judgments before paying rent to the Authority. The warning merely means bondholders may not get paid. Given that the ADOC has for years openly inflicted cruel and unusual punishment on mentally ill inmates, the notion that the ADOC will devote itself to compliance with court orders at the expense of bondholders ought to strike one as

implausible, unless measures are taken now to establish the priority of the class's interests in those assets.  The motion for leave to intervene is such a measure.

## III.   Conclusion

The Court has entered a judgment against Hamm, and that judgment confers rights on the plaintiff class to which Connell belongs. As soon as Connell became aware that Hamm intended to favor those who were then only his prospective creditors, Connell sought leave to intervene. His interests were not adequately protected because existing class representatives had not taken the steps necessary to establish the priority of the claims of the class over those of as the intervenor-defendants.  Connell believes they still have not done so.  Thus, Connell is entitled to intervene to assure that priority.   In the event that the day comes when enforcement of the judgment is necessary, it may well be an unfruitful one, unless Connell can intervene and obtain the relief he has requested.

Respectfully submitted,

/s/ *Frank Ozment*
(ASB-7203-N73J)

Frank Ozment Attorney At Law, LLC
501 217 Country Club Park
Mountain Brook, AL 35213

*Certificate of Service*

I hereby certify that I have filed this reply by means of this Court's electronic filing system on August 5, 2022, which system causes a copy of this memorandum to be served contemporaneously on all counsel of record.

/s/ *Frank Ozment*_____