# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF ALABAMA
## NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:14-cv-00601-MHT-JTA |
| JOHN Q. HAMM, in his official | ) | Judge Myron H. Thompson |
| capacity as Commissioner of the | ) | |
| Alabama Department of Corrections, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

## PLAINTIFFS' RESPONSE TO THE STATE'S RESPONSE TO ORDER TO SUBMIT A PLAN AND PROCEDURE TO ABATE CONCERNS OF HIGH TEMPERATURES IN MENTAL HEALTH UNITS

Ignoring this Court's Order, Defendants did not "devise a plan and procedures to address the serious risk posed by high temperatures in the mental-health units," (Doc. 3464 at 38), or "address . . . how it happened that Tommy Lee Rutledge's cell reached 104 degrees . . . and how the ADOC will prevent that from ever occurring again." *Id.* Instead, in the State's Response to Order to Submit a Plan and Procedure to Abate Concerns of High Temperatures in Mental Health Units ("State's Response"), Defendants incredibly claim that the "State does not possess the present ability to comply with Section 11.3 . . . identifying the cause of the increase in temperature of Tommy Lee Rutledge's cell." Doc. 3620 at 2. And, instead of devising a plan, Defendants assert that Administrative Regulation 619 is sufficient

1

to address concerns raised by high temperatures. *See id.* at 7. If that were so, the tragic events leading to Tommy Lee Rutledge's death would not have been possible. The State's Response does not adequately address the risk of high temperatures for individuals detained in the mental-health units.

## I.  THE STATE'S RESPONSE IGNORES THE COURT'S ORDER

### A. The Wrongful Death Lawsuit Does Not Preclude Defendants from Complying with the Court's Order

First, Defendants refer to the wrongful death lawsuit filed by a representative of Mr. Rutledge's estate, arguing that "based upon the pending litigation, certain information that directly relates to the ADOC's officials' and staff members' defenses remains protected by attorney-client privilege and the work-product doctrine." Doc. 3620 at 3-4. This attempt to avoid responding to the Court's order is nonsensical. *See Attorney-Client Privilege*, BLACK'S LAW DICTIONARY (11th ed. 2019) (defining attorney-client privilege as "[t]he clients right to refuse to disclose and to prevent any other person from disclosing confidential communications between the client and the attorney"); *Work-Product Rule*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The rule providing for qualified immunity of an attorney's work product from discovery or other compelled disclosure."). The Court ordered ADOC to provide factual information about the cause of Mr. Rutledge's death, not attorney-client communications.

2

Moreover, in the wrongful death lawsuit, *Rutledge v. Sansing*, *et. al.*, plaintiff LaVentra Denice Rutledge—the Administratrix of Mr. Rutledge's estate—is suing eight people in their individual capacities: Corrections Officers Christie Sansing, Cory Eller, J. Rodgers, C. Dean, and G. Griffin; Lieutenant Tim Pope; and Wardens Phyllis Morgan and Kenneth Peters. Ex. A (Second Amended Complaint (Doc. 57), *Rutledge v. Sansing*, *et. al.*, No. 2:21-CV-226-RDP (N.D. Ala. June 16, 2022)) at 3-4. None of the named defendants in *Rutledge* is a defendant in this case, and the defendants in this case are sued in their official capacities. *See* Doc. 805 at 24-25. Defendants here are not a party to *Rutledge* and cannot use privilege and work-product doctrines to disregard the Court's order.

If Defendants had concerns about publicly filing information responsive to the Court's order, they could have moved to file the State's Response under seal. Alternatively, Defendants could have requested an in-camera review for the Court to determine what, if any, information is protected. Plaintiffs request this Court— once again—order Defendants to "address, specifically, how it happened that Tommy Lee Rutledge's cell reached 104 degrees . . . and how the ADOC will prevent that from ever occurring again." Doc. 3464 at 38.[1]

---

[1] If this Court prefers, Plaintiffs are prepared and willing to conduct limited discovery surrounding Mr. Rutledge's death and the operation of the HVAC unit at Donaldson Correctional Facility at that time.

**B. The Results of the ADOC Internal Investigation Should be Released to the Court**

ADOC Intelligence and Investigations Investigator Hooper originally contacted the Jefferson County Coroner's Medical Examiner's Office regarding Mr. Rutledge's death at the William E. Donaldson Correctional Facility ("Donaldson"). Ex. B (Ex. A to Second Amended Complaint in *Rutledge*, Mr. Rutledge's Autopsy) at 11.[2] Investigator Hooper also provided preliminary information to Deputy Coroner Phillip Russell. *Id.* In January 2021, ADOC referred a reporter to an "ongoing" investigation into Mr. Rutledge's death.[3] Although these references indicate that ADOC Intelligence and Investigations is or was investigating Mr. Rutledge's death, Defendants omitted the results of this investigation or any mention of an investigation from the State's Response. *See generally* Doc. 3620. The investigation into Mr. Rutledge's death would provide information integral to determining "how it happened that Tommy Lee Rutledge's cell reached 104 degrees." Doc. 3464 at 38.[4] If the investigation is not yet complete, that lack of

---

[2] Exhibit B is also Plaintiffs' Exhibit 3307 from the Remedial Trial.

[3] *See* Melissa Brown, <u>*He died in a 101-degree Alabama prison cell with a 109 body temperature. Officials have no answers*</u>, Montgomery Adviser (Jan. 29, 2021, 5:01 AM), available at: https://www.montgomeryadvertiser.com/story/news/2021/01/29/alabama-prisoner-dies-heat-cell-donaldson-prison-tommy-lee-rutledge/4292216001/ (last checked August 5, 2022).

[4] According to the autopsy, Investigator Hooper told the deputy coroner that Mr. Rutledge's cell "was approx.. 101 degrees to 104 degrees." <u>Ex. B</u> at 11.

timeliness raises even more concerns regarding Defendants' hesitance to fully

acknowledge the problems of high temperatures in mental-health units.

### C. The Temperature Logs, Duty Post Logs, and Email Communications Do Not Show that Mr. Rutledge's Death was Isolated

Defendants point to the temperature logs, duty post logs, and some email

communications about the boiler at Donaldson to frame Mr. Rutledge's death as "an

isolated and unforeseeable incident." Doc. 3620 at 4-5. While Defendants accurately

list some temperatures on T unit on December 7, 2020, the following issues with the

provided temperature logs are not acknowledged: correctional officers failing to

initial next to temperatures; seemingly random selection of cells for temperature

checks; large gaps in time when it appears that correctional officers did not check

the temperature; and the apparent inaccuracy of these temperature checks

considering the high temperature in Mr. Rutledge's cell at the time of his death. *See

generally* Doc. 3620-1. Confusingly, though it is not reflected on the temperature

logs, Lieutenant Pope reported that the temperature of Mr. Rutledge's cell and the

surrounding cells was from 101 to 104 degrees. Ex. C (Ex. D to Second Amended

Complaint in *Rutledge*, Mr. Rutledge's Death Information) at 3.  Taken at face value,

that means that at least two additional individuals in adjoining cells were subjected

to the same conditions as Mr. Rutledge, and only by happenstance were there not

additional fatalities.

Similarly, Defendants' statements that the duty post logs do not demonstrate increased heat fall flat. Doc. 3620 at 4. At 8:05 p.m. the log reflects, "Ofc Dean conduct living & breathing check. All 96 units alive & well." Doc. 3620-2 at 3. By contrast, CPR was started at 8:25 p.m., Ex. C at 3, and Mr. Rutledge was removed from his unit, with the note "deceased," at 8:35 p.m. Doc. 3620-2 at 3.[5] The deputy coroner reported that Investigator Hooper indicated Mr. Rutledge "was last seen in his cell alive … at approx. 1800 hours on December 7, 2020 by another inmate known as a runner for the prison … the same inmate … found the decedent unresponsive 2000 hours." Ex. B at 11. This timeline challenges the purported accuracy of the duty logs.[6]

Finally, Defendants present some emails regarding boiler maintenance, relating that "these communications do not indicate mechanical failures resulting in high temperatures in Mr. Rutledge's housing unit." Doc. 3620 at 4-5. These communications, however; show that there were mechanical problems with the boilers, (*see generally* Doc. 3620-3), potentially contributing to high temperatures.

---

[5] It seems implausible that a properly conducted security check could have occurred at 8:05 p.m. and nothing was found amiss, when 15 minutes later Rutledge was discovered unresponsive by a runner. *See* Ex. D (Ex. C to Second Amended Complaint, the Duty Officer Report) at 3.  The validity of the security check is particularly suspect since Mr. Rutledge was discovered, as ADOC Investigator Hooper described to the deputy coroner, "found in his cell sitting near the window of his cell with his head/face facing out the window believed attempting to breath/obtain cool/cold air." Ex. B at 11.

[6] The Duty Officer Report, Ex. D, presents yet another timeline.

While "ADOC did not identify any record of another inmate succumbing to hyperthermia in a mental health unit during non-summer months in the decade before December 7, 2020, or since December 7, 2020," (Doc. 3620 at 5), the Second Amended Complaint in *Rutledge* contains allegations that contradict the State's Response. The *Rutledge* Second Amended Complaint states:

> On Tuesday, December 8, 2018, Deborah Crook, the Director of Mental Health Services at Donaldson, sent an email stating as follows: "Inmate death last night - Initial Core temperature 109.7 - repeated around 40 minutes post mortem 108.1 Inmate house in Donaldson RTU in T-13. He was on psychotropic (mental health) medication and a Extremely high post mortem temperature is recognized as a sign of neuroleptic syndrome which could have led to his death. The HSA has contacted the institution to check the heat temperature of the cells in T unit. It has been several years ago, but we had a major dysfunction of the boiler at Donaldson in T housing dorm, which lead [sic] to a fatal case."

Ex. A at 17. While Plaintiffs do not have independent knowledge of this death, this similar allegation indicates that Mr. Rutledge's death was not "an isolated and unforeseeable incident." Doc. 3620 at 5.

## II.   ADMINISTRATIVE REGULATION 619 IS INADEQUATE TO ADDRESS THE RISK OF HIGH TEMPERATURE

Defendants' plan to "address the serious risk posed by high temperatures in the mental-health units," (Doc. 3464 at 38), is simply a recitation of Administrative

Regulation 619. *See* 3620 at 5-7. This plan is inadequate to protect individuals who are detained in Defendants' facilities.[7]

Administrative Regulation 619 was issued on August 24, 2020. Doc. 3620-4 at 2. Mr. Rutledge passed away on December 7, 2020, (Ex. B at 3), after Defendants implemented this regulation. His death demonstrates its ineffectiveness.

The regulation states: "Correctional Officers will … monitor all cell and dormitory temperatures at least three times daily when the outside temperature reaches 85 degrees Fahrenheit." 3620-4 at 4.  Such precautions should not be linked to outside temperature. While the regulation states that correctional officers will "notify the Shift Commander and Warden; use fans to increase ventilation; offer and provide fluids and ice on request; and allow additional showers to provide cooling," if a housing area temperature hits 85 degrees, it is unclear how housing area temperature will be consistently evaluated if the indoor temperature is assessed based on the outdoor temperature. *Id.* (cleaned up).

Defendants claim that "all mental-health treatment units are air conditioned." Doc. 2880 at 5-6. If that were the case, it is unclear why Defendants could not take

---

[7] The fact that Mr. Rutledge's cell reached 101-104 degrees undetected, Ex. C at 3, shows just how untenable Defendants' position is that their Administrative Regulation on monitoring the temperature in mental-health units is sufficient to ensure that this will never happen in the future.

steps and create a plan to appropriately regulate the temperature in mental-health

units, or why the indoor temperature would ever rise to 85 degrees.

Administrative Regulation 619 does not provide for sufficient monitoring of

cell temperature. As the Court discussed in relation to an earlier version of

Administrative Regulation 619,

> the defendants have provided no information of how ADOC will
> reliably determine when *a particular cell* exceeds 90 degrees and no
> information of how ADOC will determine, should a cell exceed 90
> degrees, whether the measures it has taken have been adequate to
> prevent *a particular patient's* overheating, for, depending on how
> extreme the weather conditions are, the measures may or may not be
> adequate       to       redress       the       above-90-degree       temperature.

Phase 2A Inpatient Treatment Remedial Opinion and Order*, Braggs v. Dunn*,

No. 2:14cv601-MHT, 2020 WL 2789880, *14-15 (M.D. Ala. May 29, 2020)

(Thompson, J.). These same concerns remain regarding this version of

Administrative Regulation 619.

Administrative Regulation 619 discusses the responsibility of facility

wardens in "ensuring that correctional staff understand and implement their

responsibilities to address heat-related health concerns." 3620-4 at 3. It also

mentions that "each facility Mental Health Site Administrator … is

responsible for ensuring that clinical and security staff receive an annual

update on how to monitor … as well as, how to intervene to prevent or respond

to heat-related health problems." *Id.* at 4. Plaintiffs do not have any information regarding whether this training is actually conducted.

## III.   CONCLUSION

Plaintiffs remain concerned by Defendants' lack of efforts to address the ongoing risk of high temperatures. The State's Response avoided the Court's question as to the cause of Mr. Rutledge's death. Administrative Regulation 619, already in place at the time of Mr. Rutledge's death, is inadequate.

Dated: August 5, 2022                    Respectfully Submitted,

                                         */s/ Ashley N. Light*
                                         Ashley N. Light
                                         AL. Bar No. 1059F69L
                                         One of the Attorneys for Plaintiffs

Ashley N. Light
Lisa W. Borden
Susanne Cordner*
**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, AL 36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
ashley.light@splcenter.org
lisa.borden@splcenter.org
susanne.cordner@splcenter.org
*Admitted pro hac vice*

Leslie Faith Jones*
**SOUTHERN POVERTY LAW CENTER**

111 East Capitol Street, Suite 280
Jackson, MS 39201
Telephone: (601) 948-8882
Facsimile: (334) 956-8281
leslie.jones@splcenter.org
*Admitted pro hac vice*

Bruce Hamilton*
**SOUTHERN POVERTY LAW CENTER**
201 St. Charles Avenue
Suite 2000
New Orleans, LA 70170
Telephone: (504) 352-4398
Facsimile: (504) 809-7899
*Admitted pro hac vice*

William G. Somerville, III
Patricia Clotfelter
**BAKER,   DONELSON,   BEARMAN,
CALDWELL & BERKOWITZ  PC**
420 20th Street North, Suite 1400
Birmingham, AL 35203
wsomerville@bakerdonelson.com
pclotfelter@bakerdonelson.com

William Van Der Pol, Jr.
Lonnie Williams
Barbara A. Lawrence
Andrea J. Mixson
**ALABAMA DISABILITIES
ADVOCACY PROGRAM**
University of Alabama
500 Martha Parham West
Box 870395
Tuscaloosa, AL  35487
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
wvanderpoljr@adap.ua.edu
lwilliams@adap.ua.edu
blawrence@adap.ua.edu
amixson@adap.ua.edu

11

Catherine E. Stetson*
Neal K. Katyal*
Jo-Ann T. Sagar*
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
cate.stetson@hoganlovells.com
neal.katyal@hoganlovells.com
jo-ann.sagar@hoganlovells.com
*Admitted pro hac vice*

Mark Whitburn*
**WHITBURN & PEVSNER, PLLC**
2000 East Lamar Boulevard, Suite #600
Arlington, TX  76006
Telephone: (817) 672-5453
Facsimile: (817) 653-4477
mwhitburn@whitburnpevsner.com
*Admitted pro hac vice*

Joshua C. Toll*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW, 2nd Floor
Washington, DC 20006-4707
Telephone: (202) 227-6138
Fascimile: (202) 626-3737
jtoll@kslaw.com
*Admitted pro hac vice*

Evan Diamond*
**KING & SPALDING LLP**
185 Avenue of the Americas, 34th Floor
New York, NY 10036
Telephone: (212) 556-2297
Fascimile: (212) 556-2222
ediamond@kslaw.com
*Admitted pro hac vice*

Edward A. Bedard*
**KING & SPALDING LLP**
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-3127
Fascimile: (404) 572-5100
ebedard@kslaw.com
*Admitted pro hac vice*

Rachel Rubens*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1210
rrubens@kslaw.com
*Admitted pro hac vice*
**ATTORNEYS FOR THE PLAINTIFFS**

*/s/ Anil A. Mujumdar*
Anil A. Mujumdar
AL. Bar No. 2004-L65M
Attorney for Plaintiff Alabama Disabilities
Advocacy Program

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue, Suite 250
Birmingham, AL 35213
Telephone: (205) 590-6986
Facsimile: (205) 809-7899
anil@dagneylaw.com

**ATTORNEY FOR PLAINTIFF ALABAMA DISABILITIES ADVOCACY PROGRAM**

## CERTIFICATE OF SERVICE

I hereby certify that I have on this 5th day of August, 2022  electronically filed the foregoing with the clerk of court by using the CM/ECF  system, which will send a notice of electronic filing to the following:

Anne A. Hill
Deputy Attorney General
State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36104
Anne.Hill@AlabamaAG.gov

William R. Lunsford, Esq.
Matthew Reeves, Esq.
Kenneth S. Steely, Esq.
La Keisha W. Butler, Esq.
Maynard, Cooper & Gale, P.C.
655 Gallatin Street, SW
Huntsville, AL  35801
blunsford@maynardcooper.com
mreeves@maynardcooper.com
ksteely@maynardcooper.com
lbutler@maynardcooper.com

Stephanie L. Smithee, Esq.
Alabama Department of Corrections
Legal Division
301 South Ripley Street
Montgomery, AL 36104
stephanie.smithee@doc.alabama.gov

Luther M. Dorr, Jr., Esq.
Maynard, Cooper & Gale, P.C.
1901 6th Avenue North, Suite 2400
Birmingham, AL 35203
rdorr@maynardcooper.com

Philip Piggott, Esq.
Webster Henry
Two Perimeter Park South
Suite 445 East
Birmingham, AL  35243
ppiggott@websterhenry.com

Deana Johnson, Esq.
Brett T. Lane, Esq.
MHM Services, Inc.
1447 Peachtree Street, N.E., Suite 500
Atlanta, GA  30309
djohnson@mhm-services.com
btlane@mhm-services.com

 /s/ *Ashley N. Light*
One of the Attorneys for Plaintiffs