**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| EDWARD BRAGGS, et al. | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. |
| | ) | 2:14-cv-00601-MHT-JTA |
| JOHN Q. HAMM, in his official | ) | Judge Myron H. Thompson |
| capacity as Commissioner of the | ) | |
| Alabama Department of Corrections, | ) | |
| et al. | ) | |
| | ) | |
| Defendants. | ) | |

**PLAINTIFFS' ANALYSIS OF QUARTERLY STAFFING REPORTS
[REDACTED]**

Pursuant to this Court's July 19, 2022 Phase 2A Revised Remedy Scheduling

Order on the Eighth Amendment Claim (Doc. 3664, the "Order"), Plaintiffs hereby

submit their report on what the most recent quarterly correctional staffing reports to

the Court reflect and would respectfully show the Court as follows:

**I.      CORRECTIONAL STAFFING IS KEY TO REMEDYING
        THE CONSTITUTIONAL VIOLATIONS**

This Court explained in Part I of its December 27, 2021 Phase 2A Omnibus

Remedial Opinion (the "ORO") that the "common thread among [the at least 27

suicides of inmates in ADOC custody since the liability trial] is ADOC's lack of

correctional staff." ORO, I:6.[1]  The Court further noted that "[t]his deficiency in correctional staff is nearly unchanged in its severity and impact since the court's liability opinion four years ago." *Id.*

This Court further found that, as a result of severe deficiencies in correctional staffing, prisoners (1) "do not receive adequate treatment and out-of-cell time," (2) "are robbed of opportunities for confidential counseling sessions," and (3) "decompensate, unmonitored, in restrictive housing units, and . . . are left to fend for themselves in the culture of violence, easy access to drugs, and extortion that has taken root in ADOC facilities in the absence of an adequate security presence." ORO, I:7.  In light of its key role, this Court made clear almost immediately after issuing its 2017 Liability Opinion that correctional staffing "must be addressed at the outset" and "fully remedied before almost anything else can be fully remedied." *Id.* (citing Phase 2A Revised Remedy Scheduling Order on Eighth Amendment Claim (Doc. 1357) at 4).

Nevertheless, as shown below, an analysis of Defendants' Quarterly Staffing Reports demonstrates that Defendants have failed even to begin to address the severe correctional staffing deficiency that is "nearly unchanged in its severity and impact since the court's liability opinion four years ago." In fact, correctional staffing

---

[1] Citations to the Omnibus Remedial Opinion in this Plaintiffs' Analysis of Quarterly Staffing Reports include the part number followed by the page number.

numbers declined during the Summer 2021 Omnibus Remedial Hearing on which this Court based the findings in its December 2021 Phase 2A Omnibus Remedial Opinion and it has declined further every single quarter since that hearing. Far from remedying the correctional staffing shortages that lie at the root of the many other constitutional deficiencies plaguing Alabama's prison system, Defendants are permitting those staffing shortages and the resultant unconstitutional conditions to deteriorate ever further. Plaintiffs thus re-urge this Court to impose mandatory correctional staffing benchmarks and to require Defendants to take other appropriate emergency action to prevent further deepening of the crisis.

## II.    CORRECTIONAL STAFFING TRENDS

The Omnibus Remedial Hearing on which this Court based its findings in the December 2021 Phase 2A Omnibus Remedial Order took place between May 24, 2021, and July 9, 2021. As this Court found, the evidence presented during this remedial hearing established the critical need to address severe correctional staffing shortages as a precursor to remedying the many constitutional violations found during the 2017 Liability Trial. As demonstrated below, these correctional staffing deficiencies worsened between March 31, 2021, (the end of the quarter immediately preceding the Omnibus Remedial Hearing) and September 30, 2021, (the end of the quarter immediately following the Omnibus Remedial Hearing) and have further declined every quarter since then. This Court has extended the deadlines for

Defendants to meet even their minimum staffing needs. Instead of taking advantage of that extension to address the staffing shortages energetically, Defendants slip ever further behind. Defendants' own Quarterly Staffing Reports show that, without further orders from this Court, Defendants will not only fail to achieve their minimum staffing needs by the new deadlines but will be even further away from meeting those needs than they are now. Meanwhile, suicides within ADOC will continue to grow.

As reflected in the Total ADOC Correctional Staff chart below, the most recent Quarterly Staffing Report, dated June 1, 2022, (Doc. 3625-1, filed under seal), showed actual correctional staff as of March 31, 2022, █████████████████

███████████████████████████. This March 31, 2022 number

███████████████████████████ from the number reported in the previous Quarterly Staffing Report, dated March 1, 2022, (Doc. 3618-1, filed under seal) which showed actual correctional staff as of December 31, 2021 of 1,579 (1,374 Actual – 65 CCO Actual + 270).  This December 31, 2021 number, in turn, showed a 4.7% reduction (of 77.5 correctional staff) from the number reported in the previous Quarterly Staffing Report, dated December 1, 2021, (Doc. 3551-1) which showed actual correctional staff as of September 30, 2021 of 1656.5 (1,465.5 Actual – 72 CCO Actual + 263 Actual Correctional Supervisors).  The September 30, 2021 correctional staff number itself showed a 5.9% reduction (of 104.5

4

correctional staff) from the number reported in the previous Quarterly Staffing Report, dated September 1, 2021, (Doc. 3443-1) which showed actual correctional staff as of June 30, 2021 of 1,761 (1,566 Actual – 76 CCO Actual + 271 Actual Correctional Supervisors).  Likewise, the June 30, 2021 correctional staff number showed a 3.8% reduction (of 69.5 correctional staff) from the number reported in the previous Quarterly Staffing Report, dated June 1, 2021, (Doc. 3406-1) which showed actual correctional staff as of March 31, 2021 of 1,830.5 (1,645.5 Actual – 90 CCO Actual + 275 Actual Correctional Supervisors).

Thus, between March 31, 2021 (the end of the quarter preceding the Omnibus Remedial Hearing, which began on May 24, 2021) and March 31, 2022 (the end of the last quarter reported), there was a ████████████████████████ with reductions reflected in each Quarterly Staffing Report in that time period. The Court's findings based on evidence presented at the Omnibus Remedial Hearing about severe correctional shortages, discussed above, were thus based on correctional staffing levels significantly higher than they are now.[2]

---

[2] Not only are correctional staff levels substantially lower now than they were at the time of the Omnibus Remedial Hearing, but they are substantially lower than they were when this Court entered its Omnibus Remedial Order on December 27, 2021. As discussed above, as of December 31, 2021, actual correctional staff as of December 31, 2021 totaled 1,579. ████████████████████████████ ████████████████████████████  In its Opinion, this Court had warned that "[a]t the present pace of improvement . . . ADOC is on track to achieve sufficient staffing to safely conduct normal operations sometime in mid-2037." ORO, II:69. In fact,



In Part II of its Phase 2A Omnibus Remedial Opinion, at pages 33-61, this Court focused on six recent suicides in Defendants' prison system: Laramie Avery; Jaquel Alexander; Casey Murphree; Charles Braggs; Gary Campbell; and Tommy McConathy. These six prisoners committed suicide in four different facilities: Bullock; Donaldson; Limestone; and St. Clair. Not only has correctional staffing declined precipitously across the prison system generally, but each of these four critical facilities has seen a decline in staffing over the same period.

In Bullock, Laramie Avery (ORO II:33), Casey Murphree (ORO II:44), and Tommy McConathy (ORO II:56) were among the six recent suicides noted by the Court in its Omnibus Remedial Opinion. The Court also noted that Bullock had a

_____

ADOC is showing no improvement whatsoever, but rather the reverse, meaning that, without judicially mandated and enforced benchmarks, it cannot expect to reach sufficient staffing levels at any foreseeable point in the future, no matter how distant.

"unique history in this litigation" (ORO II:56-7) as the site of Jamie Wallace's suicide years before.[3]  As reflected in the Bullock Correctional Staff Chart below, the Quarterly Staffing Report reflecting correctional staff as of March 31, 2021 showed 114.5 such staff (118.5 Actual – 20 CCO Actual +16 Actual Correctional Supervisors).  The Quarterly Staffing Report reflecting correctional staff as of ██████

██████████████████████████████████████████████████

████████████████████████████████████████ [4]

---

[3] Charles Hall also committed suicide in Bullock on July 15, 2021, immediately after the Omnibus Remedial Hearing, as evidenced by Defendants' August 4, 2021, Report Regarding Recent Inmate Deaths. Doc. 3387-1.

[4] Avery and Murphree committed suicide on April 14, 2020, and May 18, 2020, respectively. As of June 30, 2020, Bullock had a correctional staff number of 115 (115 Actual – 22 CCO Actual + 22 Actual Correctional Supervisors), a number higher than the March 31, 2021 number of 114.5. *See* Doc. 3068-1. Tommy McConathy committed suicide on March 2, 2021. This Court found that Mr. McConathy "was raped in the Bullock RTU, where duty post logs show that the entire dormitory was at times staffed by a single correctional cubicle officer in the control room and no one on the dormitory floor." ORO II:75. As indicated above, correctional staffing has declined by ████ at Bullock since March 31, 2021—four weeks after Mr. McConathy's death there.



In Donaldson, Jaquel Alexander (ORO II:36) was among the six recent suicides noted by the Court in its Phase 2A Omnibus Remedial Opinion.[5]   As reflected in the Donaldson Correctional Staff chart below, the Quarterly Staffing Report reflecting correctional staff as of March 31, 2021, showed 165.5 such staff (142.5 Actual – 6 CCO Actual + 29 Actual Correctional Supervisors).  The Quarterly Staffing Report reflecting correctional staff as of March 31, 2022, █████████

████████████████████████████████████████████████████████

█████████████████████████████████████████████[6]

---

[5] Also, Marco Tolbert committed suicide on September 26, 2019, at Donaldson. May 24, 2021 Final Tran. 14:18-24.

[6] Jaquel Alexander committed suicide on May 17, 2020. As of June 30, 2020, Donaldson had a correctional staff number of 171.5 (149.5 Actual – 7 CCO Actual + 29 Actual Correctional Supervisors), a number higher than the March 31, 2021, number of 165.5. *See* Doc. 3068-1.



In Limestone, Gary Campbell (ORO II:52) was among the six recent suicides noted by the Court in its Omnibus Remedial Opinion.[7] As reflected in the Limestone Correctional Staff report below, the Quarterly Staffing Report reflecting correctional staff as of March 31, 2021, showed 212.5 such staff (184.5 Actual – 3 CCO Actual + 31 Actual Correctional Supervisors). The Quarterly Staffing Report reflecting correctional staff as of March 31, 2022, ████████████████████████████████████

████████████████████████████████████████████████

███████████████████████.[8]

---

[7] Danny Tucker also committed suicide at Limestone on March 25, 2021, just before the March 31, 2021 date discussed below. May 24, 2021 Final Tran. 180:17-24.
[8] Gary Campbell committed suicide on November 27, 2020. As of December 31, 2020, Limestone had a correctional staff number of 215.5 (185.5 Actual – 4 CCO Actual + 34 Actual Correctional Supervisors), a number higher than the March 31, 2021 number of 212.5. *See* Doc. 3316-1.



In St. Clair, Charles Braggs (ORO II:48) was among the six recent suicides noted by the Court in its Omnibus Remedial Opinion. As the Court noted, lack of correctional staff was the reason specifically given for a string of missed mental-health rounds in the more than two months prior to Mr. Braggs's death (ORO II:50), such that Mr. Braggs had routinely had out-of-cell time canceled for lack of correctional staff. ORO II:51-2. As at Bullock, Donaldson, and Limestone, the correctional staffing situation worsened at St. Clair through and after the Omnibus Remedial Hearing. As reflected in the St. Clair Correctional Staff chart below, the Quarterly Staffing Report reflecting correctional staff as of March 31, 2021, showed 154 such staff (133 Actual – 1 CCO Actual + 22 Actual Correctional Supervisors). The Quarterly Staffing Report reflecting correctional staff as of March 31, 2022,

showed ███████████████████████████████████████████

███████████████████████████████████████.[9]



## III.   THE WIDENING GAP WITH RESPECT TO CRITICAL MINIMUM STAFFING REQUIREMENTS

As noted above, this Court has recognized consistently since its Liability Opinion in 2017 that adequate correctional staffing is critical to remedying the constitutional violations it has found. Citing Defendants' staffing expert, Margaret Savage, this Court recognized that the "mandatory posts," which "comprise the vast

---

[9] Charles Braggs committed suicide on July 27, 2020. As of June 30, 2020, St. Clair had a correctional staff number of 137 (120 Actual – 4 CCO Actual + 21 Actual Correctional Supervisors) (Doc. 3068-1), a number slightly lower than the March 31, 2021 number.

majority of the 3,826 positions recommended by the Savages, are those that 'cannot be left unfulfilled without jeopardizing safety and security.'"   ORO II:66. Those mandatory posts "would match the numbers of another designation—'critical minimum' posts—which are those positions that, if they are not staffed at a particular time, should cause a facility to 'immediately lock down and make sure that everything is safe, because you've reached a critical level.'"   *Id*.  The 3,826 posts the Court referenced are reflected in the Quarterly Staffing Reports.  *See, e.g.*, Doc. 3625-1 ███████████████████████████████████████████████ ████████████████████████████ ).

As of March 31, 2022, the actual correctional staffing number ████████ ████████████████████████████████████████████████ .  When the "vast majority" of the 3,826 assigned posts must be filled to avoid reaching a "critical level," the fact ███████████████████ assigned post number positions are actually filled shows the depth of the crisis that has left the Alabama prison system bereft of

the mechanisms necessary to provide constitutionally adequate conditions.[10] With

each quarter of steadily descending staffing numbers, this crisis deepens further.[11]

## IV.    ADOC IS ABLE TO FILL LESS THAN 50% OF THE MANDATORY POSTS IN THE MAJOR FACILITES

Any significant analysis of ADOC's Correctional Officer understaffing must

consider not only the gross number of vacancies, but also whether those vacancies

directly affect the safe operation of the facility and allow sufficient access to mental

health care. ██████████████████████████████████████████

███████████████████████████████████████████ *See*

June 15, 2021. R.D. Hr'g Tr., at 68:3-12. ████████████████████

██████████████████    *Id.* at 68:10-12. ███████████████████

███████████████████████████████████████████

███████████████████████████████████████████

*Id.* at 116:16-19, 117:4-12; *see also* Doc. 1813-1, at 101 (████████████████

███████████████████████████████████████████

---

[10] At Bullock, the March 31, 2022 numbers show that ███████████████
of assigned posts were filled. At Donaldson, the numbers on that date
██████████████ of assigned posts were filled. At Limestone, the numbers on that
date show that ██████████████████ of assigned posts were filled. At St. Clair,
the numbers on that date show that ██████████████ of assigned posts were
filled.

[11] It is worth noting as well that the number of correctional staff with ADOC in
excess of 12 months, including correctional supervisors has decreased from 1531.5
as of March 31, 2021, to ████████████. Thus, losses are thinning the
ranks of staff with experience as well as total staffing numbers.

██████ ). ███████████████████████████████████ (15, 2021. R.D. Hr'g

Tr., at 68:3-12), ███████████████████████████████████████

███████████████████

In the Savages' 2018 Staffing Report and during her testimony at the Omnibus

Remedial Hearing, ███████████████████████████████████

███████████████████████████ June 15, 2021 R.D. Hr'g Tr.,

at 90:24-91:1, 101:13-108:5, 110:16-115:8; *see also* Doc. 1813-1, at 17 ████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ ). ███████████████████████

████████████████████████████████████████████

████ June 17, 2021. R.D. Hr'g Tr., at 27:10-29:2. ██████████████

████████████████████████████████████████████

████████████████████████████████████████████

███████████████████

███████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ *See* Table 1, *infra* at 17-18.

████████████████████████████████████████████

14

███████████████████████████████████████████████████

████████████████████████████████████████████

ADOC cannot come close to manning all M posts at any facility other than Hamilton Aged and Infirmed, a prison with only 262 inmates as of May 2022 (*see* ADOC Monthly Statistical Report for May 2022, at 3, *available at* http://www.doc.state.al.us/docs/MonthlyRpts/May%202022.pdf (last visited Aug. 5, 2022)), or approximately 1.5% of the total inmate population. Put differently, ADOC is so woefully understaffed that 98.5% of the incarcerated population lives in a facility which is unable to operate safely, provide regular access to mental health care, and should be under a constant state of being in lockdown. *Cf.* ORO II:66.

This is not a new phenomenon for ADOC. A review of the Quarterly Staffing Reports all the way back to their inception shows this reality. Even considering the highest staffing numbers shown in a quarterly report, the discrepancy between the actual number of officers needed and the number available is a mammoth cavern. At no time during this period did ADOC have any facility (except for Hamilton) reach a staffing level near 80%. In more than half of facilities, less than one half of the officers (COs, BCOs, and Supervisors, but not CCOs) ███████████████████



[12]



| ███ | | | | | | |
|---|---|---|---|---|---|---|
| | ███ | ███ | ██ | ███ | ██ | ████ |
| █ | ██ | ██ | ██ | ██ | █ | ██ |
| ██ | ██ | ██ | ██ | ██ | █ | ██ |
| ███ | ██ | █ | ██ | ██ | █ | ██ |
| ███ | ██ | ██ | ██ | ██ | | ██ |
| ██ | ██ | █ | ██ | ██ | █ | ██ |
| ██ | █ | █ | ██ | ██ | █ | ██ |
| ███ | █ | █ | ██ | ██ | █ | ██ |
| ██ | ██ | █ | ██ | ██ | | ██ |
| █ | ██ | ██ | ██ | ██ | ██ | ██ |
| ███ | ██ | █ | ██ | ██ | ██ | ██ |
| ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | ██ | ██ | ██ | ██ | ██ |
| ██ | ██ | ██ | ██ | ██ | █ | ██ |
| ███ | ██ | ██ | ██ | ██ | █ | |
| ███ | | | | | | ██ |
| ███ | ██ | | ██ | ██ | █ | ██ |
| ███ | ██ | | ██ | ██ | █ | ██ |
| ███ | | | | | | |



## V.    INSUFFICIENCY OF DEFENDANTS' EXCUSES

Defendants can no longer substitute their standard excuses for performance. Defendants have continuously pointed to COVID-19 and other circumstances as somehow obviating the need for it to provide constitutionally adequate conditions of confinement.  In fact, as regard to COVID-19, ADOC has posted on its website that "[d]ue to the continued, steady decline in new COVID-19 cases, ADOC is evolving its reporting process again."[13]   If there were a correlation between correctional staffing and COVID-19, one would expect a steady decline in COVID-19 to result in a steady increase in staffing levels.  Instead, both have been in steady decline.

Defendants may also not shirk their constitutional responsibilities with general complaints about recruiting difficulties. Defendants must take whatever steps are necessary to attract the levels of staff required to provide constitutionally adequate conditions of confinement.  They have so far declined to do so.

---

[13] *See* doc.alabama.gov/COVID19Communication (last reviewed on Aug. 5, 2022).

Defendants have also pointed to low unemployment rates as a reason they cannot adequately staff their prisons. However, the Eighth Amendment to the Constitution contains no qualifying language limiting its applicability only to when convenient labor or economic conditions prevail.  In fact, it contains no qualifying language at all.

Consequently, this Court should impose mandatory staffing benchmarks to ensure that Defendants conform their approach to their constitutional obligations.

Dated: August 5, 2022                        Respectfully Submitted,

                                             */s/ Ashley N. Light*
                                             Ashley N. Light
                                             AL. Bar No. 1059F69L
                                             One of the Attorneys for Plaintiffs

Ashley N. Light
Lisa W. Borden
Susanne Cordner*
**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, AL 36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
ashley.light@splcenter.org
lisa.borden@splcenter.org
susanne.cordner@splcenter.org
*Admitted pro hac vice*

Leslie Faith Jones*
**SOUTHERN POVERTY LAW CENTER**
111 East Capitol Street, Suite 280
Jackson, MS 39201

Telephone: (601) 948-8882
Facsimile: (334) 956-8281
leslie.jones@splcenter.org
*Admitted pro hac vice*

Bruce Hamilton*
**SOUTHERN POVERTY LAW CENTER**
201 St. Charles Avenue
Suite 2000
New Orleans, LA 70170
Telephone: (504) 352-4398
Facsimile: (504) 809-7899
*Admitted pro hac vice*

William G. Somerville, III
Patricia Clotfelter
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ PC**
420 20th Street North, Suite 1400
Birmingham, AL 35203
wsomerville@bakerdonelson.com
pclotfelter@bakerdonelson.com

William Van Der Pol, Jr.
Lonnie Williams
Barbara A. Lawrence
Andrea J. Mixson
**ALABAMA DISABILITIES ADVOCACY PROGRAM**
University of Alabama
500 Martha Parham West
Box 870395
Tuscaloosa, AL  35487
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
wvanderpoljr@adap.ua.edu
lwilliams@adap.ua.edu
blawrence@adap.ua.edu
amixson@adap.ua.edu

Catherine E. Stetson*

20

Neal K. Katyal*
Jo-Ann T. Sagar*
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
cate.stetson@hoganlovells.com
neal.katyal@hoganlovells.com
jo-ann.sagar@hoganlovells.com
*Admitted pro hac vice*

Mark Whitburn*
**WHITBURN & PEVSNER, PLLC**
2000 East Lamar Boulevard, Suite #600
Arlington, TX  76006
Telephone: (817) 672-5453
Facsimile: (817) 653-4477
mwhitburn@whitburnpevsner.com
*Admitted pro hac vice*

Joshua C. Toll*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW, 2nd Floor
Washington, DC 20006-4707
Telephone: (202) 227-6138
Fascimile: (202) 626-3737
jtoll@kslaw.com
*Admitted pro hac vice*

Evan Diamond*
**KING & SPALDING LLP**
185 Avenue of the Americas, 34th Floor
New York, NY 10036
Telephone: (212) 556-2297
Fascimile: (212) 556-2222
ediamond@kslaw.com
*Admitted pro hac vice*

Edward A. Bedard*
**KING & SPALDING LLP**

1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-3127
Fascimile: (404) 572-5100
ebedard@kslaw.com
*Admitted pro hac vice*

Rachel Rubens*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1210
rrubens@kslaw.com
*Admitted pro hac vice*
**ATTORNEYS FOR THE PLAINTIFFS**

/s/ Anil A. Mujumdar
Anil A. Mujumdar
AL. Bar No. 2004-L65M
Attorney for Plaintiff Alabama Disabilities
Advocacy Program

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue, Suite 250
Birmingham, AL 35213
Telephone: (205) 590-6986
Facsimile: (205) 809-7899
anil@dagneylaw.com

**ATTORNEY FOR PLAINTIFF ALABAMA DISABILITIES ADVOCACY PROGRAM**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have on this 5th day of August, 2022  electronically filed the foregoing with the clerk of court by using the CM/ECF  system, which will send a notice of electronic filing to the following:

Anne A. Hill
Deputy Attorney General
State of Alabama
Office of the Attorney General
501 Washington Avenue
Montgomery, Alabama 36104
Anne.Hill@AlabamaAG.gov

William R. Lunsford, Esq.
Matthew Reeves, Esq.
Kenneth S. Steely, Esq.
La Keisha W. Butler, Esq.
Maynard, Cooper & Gale, P.C.
655 Gallatin Street, SW
Huntsville, AL  35801
blunsford@maynardcooper.com
mreeves@maynardcooper.com
ksteely@maynardcooper.com
lbutler@maynardcooper.com

Stephanie L. Smithee, Esq.
Alabama Department of Corrections
Legal Division
301 South Ripley Street
Montgomery, AL 36104
stephanie.smithee@doc.alabama.gov

Luther M. Dorr, Jr., Esq.
Maynard, Cooper & Gale, P.C.
1901 6th Avenue North, Suite 2400
Birmingham, AL 35203
rdorr@maynardcooper.com

Philip Piggott, Esq.
Webster Henry
Two Perimeter Park South
Suite 445 East
Birmingham, AL  35243
ppiggott@websterhenry.com

Deana Johnson, Esq.
Brett T. Lane, Esq.
MHM Services, Inc.
1447 Peachtree Street, N.E., Suite 500
Atlanta, GA  30309
djohnson@mhm-services.com
btlane@mhm-services.com

 */s/ Ashley N. Light*
One of the Attorneys for Plaintiffs