IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | |
|---|---|
| EDWARD BRAGGS, et al., ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. |
| v. ) | 2:14cv601-MHT |
| ) | (WO) |
| JOHN HAMM, in his ) | |
| official capacity as ) | |
| Commissioner of ) | |
| the Alabama Department of ) | |
| Corrections, et al., ) | |
| ) | |
| Defendants. ) | |

ORDER ON THE STATUS OF THE EMT AND THE EMT'S
PRE-MONITORING PHASE TIMELINE

In September 2020, the court entered its Phase 2A opinion and order adopting the monitoring scheme to be implemented as to the Eighth Amendment remedy in this case. *See Braggs v. Dunn*, 483 F. Supp. 3d 1136 (M.D. Ala. 2020) (Thompson, J.) (Doc. 2915). In doing so, the court "adopt[ed] in large part the defendants' plan--substantial portions to which the plaintiffs ... agreed--with some alterations." *Id.* at 1140. The cornerstone of this monitoring scheme is the external

monitoring team (EMT) that will draw on its members' expertise to determine many of the details of monitoring and to assist in developing ADOC's capacity for sustainable internal monitoring and oversight.

Monitoring takes form in three phases: "In the first phase, the EMT will assess and monitor ADOC's compliance with the court's remedial orders; next, the EMT, as part of its monitoring, will train the ADOC, through its [Internal Monitoring Team (IMT)], how to monitor itself; and, finally, ADOC, through its IMT, will monitor itself." *Id.* at 1141.  The second phase is to begin automatically a year after Phase 1, and the third phase--that is, when the EMT will "handoff" monitoring to the IMT so that the IMT can assume responsibility for monitoring--will begin upon court's determination that the "IMT is sufficiently competent that monitoring by the EMT is no longer necessary."[1]  *Id.* at 1162.

---

1. Of course, in phase three, monitoring by the court will continue, albeit by way of the IMT, until monitoring is no longer needed.  *Id.* at 1162.

Ultimately, the goal of these three phases, and the hybrid monitoring framework generally, is not just to conduct monitoring of ADOC but eventually to ensure adequate monitoring *by* ADOC and build ADOC's internal capacity to sustain compliance over the long term and thereby bring to an end the history of repeated litigation ADOC has confronted since the 1970s.

While it took some time, the EMT was recently established. It consists of four members: (1) Dr. Elizabeth Falcon in the role of psychologist and the administrative head of the team; (2) Dr. Raymond Reeves, Jr., in the role of the psychiatrist; (3) Rick Raemisch as the correctional administrator; and (4) Karen Rea in the role of nurse. Each of the four members have been assigned corresponding points of contact with the ADOC. *See* Joint Status Report (Doc. 3838). The court met with all the members of the EMT for the first time on May 5, 2023.

So far, the recently finalized EMT has been in what it calls the "pre-monitoring phase," wherein it is

3

touring facilities, gathering information, and developing performance measures and auditing tools necessary to begin assessing and monitoring ADOC's compliance. *See* Supplemental Joint Report (Doc. 3918) at 2 (outlining all "pre-monitoring activities"); *see also Braggs*, 483 F. Supp. 3d at 1149-52. On February 9, 2023, the parties notified the court that the EMT represented that it anticipated completing all pre-monitoring activities (and thereby begin the first phase of monitoring) under the following timeline:

- **By July 1, 2023: EMT Provides Performance Measures to the Parties**
- By August 1, 2023: Parties Finalize Performance Measures
- By October 1, 2023: EMT Provides Audit Tools to the Parties
- By November 1, 2023: Parties Finalize Audit Tools

Supplemental Joint Report (Doc. 3918) at 2.

Under this timeline, the EMT anticipates that it will begin monitoring by November 1, 2023--over three years after the court entered the Monitoring Opinion. Moreover, the EMT represented that it anticipates phase three--that is, the handoff of monitoring to the IMT--to begin roughly 16 to 18 months after November 1, 2023, or in the spring of 2025.[2]  *Id.* at 3.  While the anticipated pre-monitoring deadlines are not binding, and may be modified by the EMT, and given the delay in establishing the EMT, the court finds it necessary to be regularly updated on the progress of the EMT, especially as it relates to when monitoring will begin in full.

Accordingly, it is ORDERED that:

(1) The parties should be prepared to discuss the status of the EMT at the status conference on July 14, 2023, at 9:00 a.m.

(2) The parties shall by 5:00 p.m. on August 3, October 3, and November 3, 2023, jointly file reports

---

2. It is the court's understanding that the EMT intends to begin Phase 1 and Phase 2 of monitoring somewhat concurrently.

addressing the status of the EMT's pre-monitoring phase timeline, including whether the most recent pre-monitoring deadline has been met, and if not, why not.

DONE, this the 12th day of July, 2023.

                          /s/ Myron H. Thompson
                        UNITED STATES DISTRICT JUDGE