IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:14cv601-MHT |
| | ) | (WO) |
| JOHN HAMM, in his | ) | |
| official capacity as | ) | |
| Commissioner of | ) | |
| the Alabama Department of | ) | |
| Corrections, et al., | ) | |
| | ) | |
| Defendants. | ) | |

ORDER AS TO THE QUARTERLY CORRECTIONAL STAFFING REPORTS

For the past several years, the parties have been
filing Quarterly Correctional Staffing Reports every
March 1, June 1, September 1, and December 1 of each
year.  These reports have contained a spreadsheet of
correctional staffing data based on the operative
correctional staffing analysis at the time and the actual
number of staff working at a given facility during a
given quarter.  *See* First Quarter Correctional Staffing
Report (Doc. 3973).  The spreadsheets had data as to each
facility and they aggregated that data into totals.

Based on the court's review of the reports, the filings of the parties, and the representation of the parties made on the record at the triannual status conference on July 14, 2023, the court is concerned about the adequacy of these reports. Specifically, (1) the quarterly reports do not delineate between mandatory and essential staff in their total aggregates; (2) they compare "assigned" full-time equivalents (FTEs), as provided by the appropriate correctional staffing analysis, with "actual" employees, which may create a misleading "vacancy rate," given that one employee may fill less, or more, FTEs during any given quarter; and (3) relatedly, the reports do not contemplate the roll of overtime in filling the "assigned" FTEs. *See* First Quarter Correctional Staffing Report (Doc. 3973). All of which may pose issues for the accuracy of the reports if and when compliance with correctional staffing is remotely a close call.

Nonetheless, the parties represented to the court at the hearing on July 14, 2023, that the adequacy and formatting of the quarterly reports are being evaluated

2

by the External Monitoring Team.  Moreover, the parties indicated that the EMT's forthcoming "performance measures," which is the first component of the EMT's "pre-monitoring phase," will shed some light on the issues pertaining to the quarterly reports.  *See* Order on the Status of the EMT (Doc. 3988).  Given that the EMT is evaluating the reports, and that the soon-to-be-finalized performance measures will hopefully touch on this issue, the court finds that it should wait until those performance measures are finalized before taking any substantive action as to the adequacy of the formatting of the quarterly correctional staffing reports.

In the meantime, the court finds it necessary to enter a standing order requiring quarterly "trends reports" to follow the staffing reports.  While the defendants have been filing the quarterly staffing reports, the parties have never been required to file regular reports that clearly indicate what the data in the reports reflect.  Going forward, they should--both as a matter of establishing a clean record and to aid all

parties in clearly seeing what is reflected in the forthcoming reports' many columns, rows, and numbers. The July 1, 2025, correctional-staffing deadline looms. The quarterly reports are the parties' best way of tracking compliance with that deadline. As outlined above, the reports may at present have issues; however, no matter the formatting of the reports, the court would like clear statements from the parties as to what they reflect.

Accordingly, it is ORDERED that:

(1) The parties should file a status report on August 3, 2023, at to the EMT's progress on evaluating the adequacy of the quarterly correctional staffing reports, including whether the EMT's performance measures touch on this issue.

(2) The parties should be prepared to discuss the above report, and the adequacy of the formatting of the correctional staffing reports generally, at a status hearing now set for August 9, 2023, at 8:30 a.m.

**4**

(3) **Within seven days of the filing of each new quarterly correctional staffing report, the parties are to file a joint "Correctional Staffing Trends" report that: (a) summarizes the data in that report; (b) states the net increase or decrease in total staffing relative to the prior report in both raw numbers and as a percentage; (c) states whether the report reflects a rate of progression that places the ADOC on track to meet the forthcoming July 1, 2025, correctional-staffing deadline, (d) states any other retrospective trends and prognosis the report indicates; and (e) brings to the court's attention any other information revealed by the report.   This order applies to the quarterly correctional staffing reports under the current formatting and all, if any, future formatting.**

**DONE, this the 17th day of July, 2023.**

**/s/ Myron H. Thompson**
**UNITED STATES DISTRICT JUDGE**

5