**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **EDWARD BRAGGS, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 2:14-cv-00601-MHT** |
| **v.** | ) | |
| | ) | **District Judge Myron H. Thompson** |
| **JOHN HAMM, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

**JOINT STATEMENT ON CORRECTIONAL
STAFFING RECRUITING AND RETENTION**

Plaintiffs and Defendants JOHN HAMM ("Commissioner Hamm"), in his official capacity as Commissioner of the Alabama Department of Corrections ("ADOC"), and DEBORAH CROOK, in her official capacity as Deputy Commissioner of the Office of Health Services ("Deputy Commissioner" and, collectively with Commissioner Hamm and Plaintiffs, the "Parties"), hereby submit this Joint Statement on Correctional Staffing Recruiting and Retention in response to the Order on Mediation of Plans to Address Correctional Staffing Levels and the Revised Remedy Scheduling Order on Phase 1 and Phase 2A ADA Claims and Phase 2A Eighth Amendment Claim. (Doc. 3764; Doc. 4055 at 7-8, cell III.B.4).[1]

---

[1] The State expressly preserves any and all objections and all available legal and equitable arguments in response to the Court's Phase 2A Omnibus Remedial Opinion (Docs. 3461, 3462, 3463, 3465), Phase 2A Omnibus Remedial Order (Doc. 3464), any other Phase 2A remedial orders, and the Court's liability opinions and orders in this action, including without limitation, the Court's Liability Opinion and Order as to Phase 2A Eighth Amendment Claim (Doc. 1285) and Phase 2A

## I.   PROCEDURAL HISTORY.

The Order on Mediation of Plans to Address Correctional Staffing Levels required, "First, the defendant shall formally propose, and the parties shall attempt to develop jointly, a plan to increase ADOC's correctional-staffing levels." (Doc. 3764 at 4). The Parties suggested, and the Court agreed to include in the development of this plan, the External Monitoring Team ("EMT"), or "...at least Rick Raemisch, whom the parties unanimously selected to serve as the EMT's correctional administrator." (Id. at 5). Ultimately, the Court ordered the Parties to "... file with the court a joint proposal ... regarding the development of a plan to address ADOC's correctional staffing levels and a method to assess and reassess over time the effectiveness of the steps taken pursuant to that plan." (Id. at 8).

On August 30, 2022, the Parties met with Rick Raemisch ("Raemisch"), and he agreed to assist the Parties in developing a plan regarding correctional staffing recruiting and retention. The Parties jointly proposed mediating the issue of correctional staffing before Judge Ott, with the assistance of Raemisch. (Doc. 3794).

---

Supplemental Liability Opinion and Order on Periodic Mental-Health Evaluations of Prisoners in Segregation (Doc. 2332). Nothing contained in this filing shall be construed as an admission by the State, a waiver of any objection to any opinion or order in this action, a waiver of the State's pending appeal related to Phase 2A (see doc. 3488), or an agreement to adopting this "proposal" as an order and/or monitoring it. Similarly, nothing in this filing shall be construed as waiving or otherwise satisfying the need-narrowness-intrusiveness requirements of the Prison Litigation Reform Act ("PLRA"). 18 U.S.C. § 3262(a)(1). Further, nothing in this filing shall be construed as an admission of any kind by the State that ADOC's current or historical staffing or provision of mental-health care is or was unconstitutional or deficient in any way.

The Court agreed with the joint proposal and entered an order requiring the Parties to submit updates every twenty-one (21) days.  (Doc. 3795).

To assist with developing a proposal for correctional staffing recruiting and retention, ADOC provided Raemisch documents and facilitated interviews with staff and ADOC's consultants regarding recruitment and retention.  Additionally, ADOC facilitated site visits for Raemisch to Donaldson and Kilby in October 2022 (Doc. 3827), Limestone in April 2023, and Donaldson, Tutwiler, Bullock, and Kilby in May 2023.

## II.    RAEMISCH'S RECOMMENDATIONS FOR CORRECTIONAL STAFFING.

Raemisch provided the Parties recommendations regarding correctional staffing on August 22, 2023.  Raemisch offered thirty-four (34) recommendations, grouped across five (5) subcategories below:

1)    Marketing Initiatives:

a.    Advertise on social media;

b.    Update ADOC's website with "more emphasis . . . given [to] why someone would want to work for" ADOC, including interviews of current or retired correctional staff;

c.    Develop marketing items to hand out to potential applicants;

d.    Advertise on "billboards, Radio, particularly sports radio, and television commercials, local magazine, and newspaper advertisements," emphasizing the pay raise and "why it is a great career"; and

3

e. Direct mail post cards to all residents located in the postal zone of each institution.

2) Recruiting Initiatives:

a. Create a recruitment team at every facility to include a veteran correctional officer and a supervisor;

b. Facility recruitment teams should be responsible for recruiting around their facilities;

c. Each recruitment team should have a van with the Department logo to be used in recruitment efforts. Can also be used in parades and county fairs;

d. Have recruitment teams form partnerships with local high schools, colleges, and technical schools;

e. Have recruitment teams attend job fairs using ADOC booths with marketing material;

f. Form partnerships with veteran affairs offices and the National Guard;

g. Target retired local law enforcement; and

h. Contact recent retirees and departures regarding the new pay increase.

3) Strategic Initiatives:

a. Experiment with different shift hours. For example, ten-hour shifts;

b. Create four-hour shifts for retired officers, law enforcement or veterans to conduct security checks;

c. Look for ways to speed up the hiring process (offer a position within one week or less);

4

      d.     Explore retention bonuses, wellness programs, family events, and small gifts for deserving employees;

      e.     Request ideas for more employee recognition and support from veteran employees;

      f.     Investigate if an abbreviated academy can be adopted for certain posts or tasks;

      g.     Review technology solutions for freeing up the workforce;

      h.     Investigate if honor dorms can be established that do not require continuous staffing;

      i.     Develop internships to interest students in having a career in corrections; and

      j.     Create mobile units and advertise for these positions.

4) Training Initiatives and New Employee Onboarding:

      a.     Develop training for new supervisors on how to effectively lead, work with, and assist the workforce;

      b.     Review development of additional training on professionally interacting with the incarcerated population;

      c.     Have line supervisors meet with and mentor employees;

      d.     Assign mentors to new employees for the first several months; and

      e.     Interview new employees about whether their needs are being met.

5) Policy Creation and Implementation:

a.  Implement sign-on bonuses and bonuses for current employees who refer new employees;

b.  Consider allowing officers to carry cell phones;

c.  Consider housing assistance for officers;

d.  Explore paying correctional officers a higher rate if the vacancy rate increases beyond a certain percentage; and

e.  Create a committee to review all department policies to look for ways to increase efficiencies.

## II.  ADOC's ONGOING INITIATIVES TO INCREASE CORRECTIONAL STAFFING.

In March 2023, ADOC increased the starting salary for new officers to $50,712.00 at minimum custody facilities, $53,244.80 at medium custody facilities, and $55,855.20 at maximum custody facilities.[2]  Additionally, ADOC offered a 27% available pay increase after eighteen (18) months.  In the first quarter after the pay raise, ADOC enjoyed its first net gain of correctional staff during a quarter since the First Quarter of 2021.  From April 1, 2023, through June 30, 2023, ADOC experienced a net gain of fifty-one (51) officers from the First Quarter of 2023.

ADOC continues to actively employ methods to recruit and retain correctional staff.  Many of ADOC's efforts align with Raemisch's recommendations.  These actions include marketing efforts to drive recruitment, analyzing available information to strategically implement useful policies, and exploring new training

---

[2] As of September 1, 2023, the starting salaries for COTs increased to $51,727.20 for minimum custody facilities, $54,290.40 for medium custody facilities, and $56,971.20 for maximum custody facilities.

initiatives to increase retention capabilities. ADOC addresses each of Raemisch's recommendations below, the overwhelming majority of which ADOC currently employs.

### A. ADOC ACTIVELY ENGAGES IN MARKETING EFFORTS TO REACH POTENTIAL RECRUITS.

Raemisch issued five (5) recommendations in the category of "Marketing Efforts." ADOC engages in efforts responsive to all five (5) of Raemisch's recommendations, including utilizing social media and digital advertising. To enhance its digital advertising efforts, ADOC will launch targeted social and digital media campaigns, both in-state and out-of-state, beginning in Fiscal Year 2024 ("FY2024"). These targeted media campaigns will deploy geographic-centric ad placements near law enforcement offices across various social media sites, including YouTube, directed towards ideal correctional officer candidates.

In addition to digital advertising, ADOC continues to engage in the development and distribution of marketing materials and utilizing its website as a platform for recruiting. These efforts include the development and release of videos utilizing current staff for the purpose of informing applicants of "why someone would want to work for ADOC." ADOC developed and distributed three hundred (300) recruiting bags to staff containing handouts and other marketing material to assist in generating referrals. Additionally, ADOC includes in its marketing materials links to ADOCjobs.us, which takes candidates directly to an electronic

application which provides data to ADOC's application tracking system ("ATS") designed to streamline the application process and reduce time between applying and sending an offer letter.

Further, ADOC continuously utilizes billboard and radio advertising to reach potential candidates. ADOC has more than twelve (12) digital billboards in high-traffic areas across the state advertising ADOC's pay raise and great career focus offered by ADOC. ADOC even launched partnerships with minor-league baseball teams, including the Trash Pandas in Huntsville, to display the pay increase advertisements on their screens and various other places around the stadiums.

Although ADOC has not conducted mailing efforts to *all* residents located in postal zones of each institution, as recommended by Raemisch, ADOC does conduct mailing campaigns. For example, ADOC mailed out material highlighting the large pay increase to all correctional officers who recently left ADOC service.

As mentioned above, ADOC's marketing efforts, combined with the large salary increase, show positive trends. ADOC's correctional staffing levels increased by more than fifty (50) officers during the Second Quarter of 2023. ADOC's current marketing initiatives appear to be working and remain aligned with Raemisch's recommendations.

## B.    RECRUITING INITIATIVES.

Raemisch identified eight (8) recruiting recommendations.  ADOC's current recruiting initiatives address all eight (8) of Raemisch's recommendations.  ADOC created regional recruitment teams focused on hiring Correction Officer Trainees ("COT") and facility recruiting teams focused on hiring Correctional Security Guards ("CSG", formerly referred to as Basic Correctional Officers ("BCO")).  These teams seek community and regional partnerships and focus on recruiting qualified applicants.  To assist the teams with recruitment, ADOC acquired two (2) vans and had the vehicles wrapped with ADOC graphics.  ADOC also targets high schools by developing marketing material specific for high school recruiting and works with the Alabama State Department of Education to identify points of contact at targeted high schools for distribution of the materials and opportunities to address the students.  Further, ADOC recruiting personnel work with community colleges and universities to provide prospective recruits with information regarding the benefits of working for ADOC.

ADOC's Administrative Services Division created regional recruitment teams, assigned them specific facilities, and directed their focus to hiring COTs.  ADOC assigned a captain to organize and supervise the operations of these teams, and the captain reports to the Administrative Service Division.  Additionally, the captain participates in weekly conferences with ADOC leadership and staffing

9

consultants to address any concerns, issues or needs of the recruiting teams. Further, these teams identify and partner with universities, community colleges, and high schools in their regions. The regional teams also attend job fairs and community events in their regions, setting up booths and distributing marketing material.

At the facility level, each facility assigned points of contact to lead recruitment efforts for CSGs. ADOC granted wardens authority to hire CSGs to expedite the process and allow wardens to fill the needs of their facilities. By creating facility recruiting teams, ADOC expanded its capability to reach more potential candidates in a shorter period of time.

To further increase recruiting efforts and decrease the number of days in completing the hiring process, ADOC dramatically increased the number of hiring events across the state. In 2022, the ADOC held nineteen (19) hiring events. As of October 17, 2023, ADOC conducted 36 hiring events, with twenty-one (21) more events scheduled before the end of 2023. The increased hiring events, coupled with the ATS, increased ADOC's ability to reach and onboard potential candidates.

To recruit military veterans, ADOC developed a partnership with the Veterans Administration and a partnership with Fort Hayes, the United States Army base located in Columbus, Georgia. This partnership allows ADOC access to military personnel preparing to leave active duty, providing an opportunity to ADOC to promote the benefits of a career in corrections. In addition to veterans, ADOC

actively targets active and retired local law enforcement. Specifically, as mentioned above, ADOC conducted a direct mail campaign highlighting the large pay increase to all correctional officers who recently left ADOC service, and ADOC plans to conduct digital advertising directed at locations around law enforcement offices both in state and in neighboring states.

ADOC deploys multiple tactics to identify and recruit potential candidates for COT and CSG positions. These tactics align with the recommendations provided by Raemisch.

### C.    STRATEGIC INITIATIVES.

Raemisch offered ten (10) recommendations ADOC identifies as strategic initiatives. These strategic initiatives focus on shift hours, employee wellness, training, use of technology, youth outreach, and retention efforts. ADOC currently employs, or has previously employed, most of Raemisch's recommendations.

### 1.    FACILITY SHIFT HOURS AND PART-TIME ASSISTANCE.

Raemisch recommended ADOC experiment with different shift hours and offer four-hour shifts for retired officers, law enforcement or veterans. As provided in ADOC's current staffing analysis, some ADOC facilities operate on 8-hour shifts, while the others operate on 12-hour shifts. ADOC's staffing analysis does not include staffing for 4 or 10-hour shifts. However, ADOC developed an opportunity for retired law enforcement and others to provide part-time assistance. ADOC

11

provides opportunities for retired ADOC officers to work part-time through the retired employees program. In 2023, the State increased the cap from $39,000 per year to $57,000 per year for APOSTC certified retired officers to increase the number of hours per year these officers can work. These retirees fill posts including towers, other forms of perimeter security, restrictive housing unit ("RHU") checks, and other vital functions that assist with correctional facility operations. Additionally, ADOC entered into a contract with two (2) staffing vendors to provide qualified staff to work non-contact posts at the major facilities. This allows ADOC to move APOSTC certified staff to posts engaged in active supervision of inmates.

### 2.    DECREASING THE TIME TO HIRE.

Another recommendation from Raemisch concerned speeding up the time for hiring and offering positions within a week or less. ADOC currently implements several initiatives that address this recommendation. ADOC recently implemented the ATS, which digitized the application process and provides ADOC a method for electronically tracking the hiring process. Additionally, ADOC conducts weekly meetings with key personnel, including the Deputy Commissioner for Administrative Services, to identify areas for improving efficiency in the hiring process. ADOC also provides qualifying applicants with contingent offers pending completion of all required hiring steps. While the ATS remains in the early stages of operation, it appears to have assisted ADOC in achieving a time-to-fill rate of less

12

than thirty (30) days and considerably below the national average of more than forty (40) days. Additionally, ADOC granted wardens the authority to directly hire CSGs. As a result, each facility created interview teams to meet with and hire qualified applicants. This adjustment greatly increases the time for hire by allowing interested applicants to apply and interview directly at the facility.

### 3. REDUCING DAYS IN THE ACADEMY.

Also, in line with Raemisch's recommendations, ADOC previously reduced the length of the training academy from 480 hours to 400 hours for COTs, reducing the time in the academy by two (2) weeks. Further, ADOC established the CSG position to fill certain posts that do not require the use of firearms at all facilities. ADOC provides training for the CSG officers through a six (6) week course.

### 4. ADOC'S USE OF TECHNOLOGY.

In line with Raemisch's recommendations to use technology, ADOC continues to improve the use of cameras throughout the major facilities and deployed new technology to assist officers with efficiently completing security checks. ADOC installed new camera systems in the major facilities. These systems provide facility leadership with access to these cameras from a central location, as well as allowing individuals offsite, including LESD staff, to review the camera footage. Further, to create greater efficiency and accountability, ADOC installed a "pipe system" in all celled housing. The pipe system allows officers to record security

checks electronically by touching a pipe designated to the officer to a tab by the cell. This decreases employees' manual logging requirements, increases reporting accuracy, and frees up staff to accomplish other tasks.

## 5.   EMPLOYEE RECOGNITION AND RETENTION.

In an effort to show appreciation to veteran staff, ADOC executive leadership implemented an "Awards Patrol" in early 2023 to recognize deserving employees and personally thank them for their service.  Leadership traveled to all major facilities to present awards to veteran staff and provide an opportunity for staff to communicate directly with leadership concerning issues at their facilities and identify new ways for employee recognition and new employee support from veteran employees.  Additionally, ADOC developed a program to assign new officers to the veteran officers who serve as field training officers ("FTO").  ADOC deployed the FTO program to all major facilities in 2023 and continues to evaluate the effectiveness of this program and whether changes need to be implemented to the current structure.

While ADOC does not currently offer retention bonuses, the State's historic pay increase for correctional officers included across-the-board pay increases for almost every officer.  The State will continue to monitor the effectiveness of the pay increases to determine if any additional incentives need to be considered.

14

**D.    TRAINING INITIATIVES AND NEW EMPLOYEE ONBOARDING.**

Raemisch provided five (5) recommendations concerning training and new employee onboarding and guidance.  These recommendations concern training for new supervisors, training on inmate interactions, supervisor mentorship for new staff, and interactive feedback from new employees regarding their needs.  Again, ADOC implemented actions that address all of Raemisch's recommendations.

As stated above, ADOC assigns each officer a mentor for their first several months with the Department through the FTO program.  This program assists new officers with acclimating to the correctional setting, provides support to develop valuable skills and techniques, and allows them to seek guidance from their mentors with any concerns.  This program began agency-wide in 2023.  Further, while ADOC currently provides officers training on communication and interaction with the incarcerated population, in 2023 the Department began exploring options for training new supervisors.  The training and implementation of this training remains in development.

To receive feedback from new and existing officers, ADOC utilizes a software system that provides a mechanism for ADOC leadership to communicate important information directly to officers, and the ability for the officers to provide feedback to leadership.  In order to communicate directly with new officers, ADOC will explore integrating the communication system with the ATS system.   This

15

integration will provide ADOC the opportunity to interview new officers about the hiring and onboarding process to assist with identifying and correcting concerns.

Based on ADOC's deployment of the communication system, FTO program, and training initiatives, ADOC's actions comply with Raemisch's recommendations concerning training and new officer onboarding.

### E.   POLICY CREATION AND IMPLEMENTATION.

ADOC's policy initiatives largely overlap with Raemisch's recommendations for policy creation and implementation.  These recommendations included policies directed towards officer incentives (personal cell phones, housing, higher pay for higher vacancy rates, and sign-on bonuses and bonuses for employee referrals) and policy reviews and updates.  Again, ADOC implemented initiatives that meet or appear equivalent to some of Raemisch's recommendations.

The 2023 pay raise contains incentives for officers to join and stay with ADOC.  As part of the 2019 pay increase, ADOC issued sign-on bonuses to new employees.  This initiative failed to deliver lasting results.  Rather than follow past precedent, the State implemented a significant pay raise, increasing the starting pay for officers and providing a path for significant pay raises within short time periods. Under the current pay structure, a new officer may achieve pay raises over eighteen (18) months that provide for an annual salary of more than $75,000, depending on whether they are at a minimum, medium, or maximum facility.  By providing high

16

salaries for officers working in maximum and medium security facilities, ADOC provides a direct incentive for officers to seek assignments to facilities with higher needs.[3] ADOC strongly feels the opportunity to earn a raise provides a higher possibility for retention by providing steady increases that last rather than a one-time sign on bonus. As for additional incentives recommended by Raemisch including the use of personal cell phones, bonuses for employee referrals, and housing assistance, ADOC does not currently have plans or funds necessary to provide these incentives. Cell phones create a significant security risk inside the facilities and ADOC's current focus remains on removing access to these devices. ADOC does not currently have plans to evaluate security staff's use of personal cell phones while on post. Additionally, based on the expenditure of funds necessary for the substantial pay raise for ADOC security staff, the increased recruiting resulting from the pay raise, and logistical reasons such as lack of sufficient state-owned property near major facilities, the State does not currently have plans for or funds necessary to provide a housing assistance incentive for security staff.

Raemisch also recommended the creation of a committee to review all ADOC policies to seek opportunities to increase efficiencies. ADOC maintains a standing

---

[3] According to the September 1, 2023, Quarterly Correctional Staffing report, Ventress, Bullock, Bibb, Fountain, and Donaldson currently have the highest vacancy rates. (Doc. 4023). Fountain and Donaldson fall into the maximum-security facilities, while Bullock and Bibb hold classification as medium-security facilities.

policy requiring a committee to conduct annual reviews and make recommendations on changes for all administrative regulations. The policy reviews include subject matter experts, legal, and ADOC leadership review.

Along with the historic pay raise, ADOC continues to take action to recruit and retain officers. These actions resulted in reversing the decline in officers at ADOC's major facilities, producing the first positive quarterly net-gain since the first quarter of 2021.

**IV. ADOC'S PATH TOWARDS MEETING CORRECTIONAL STAFFING BENCHMARKS.**

The State's Position: The entirety of this Section IV (other than this singular paragraph) constitute the disputed statements of Plaintiffs who insisted upon inclusion of the below statements in this "Joint" filing. However, the State maintains its long-standing position regarding aspirational benchmarks and prognostications related to the recruitment of new employees and retention of existing employees. The State's progress in increasing its correctional staffing continues to depend upon a myriad of factors – most of which fall entirely out of the scope of the State's control. For these reasons, the State continues to believe that its comprehensive and innovative efforts to recruit and retain staff belie any suggestion of deliberate indifference or otherwise non-compliance with any order.

Plaintiffs' Position: ADOC is unlikely "to fill all mandatory and essential posts by July 1, 2025," despite its efforts to recruit and retain correctional staff.[4] The Court's Remedial Order required the State to develop "realistic benchmarks for the level of correctional staffing ADOC will attain by December 31, 2022, 2023, and 2024." (Id., §2.1.5). The Remedial Order further required that benchmarks "must put ADOC on track to fill all mandatory and essential posts by July 1, 2025." (Id.).

A month prior to the deadline for the first benchmarks, ADOC filed an unopposed motion to extend the deadline from December 1, 2022, to January 20, 2023. (Doc. 3857). In January of 2023, ADOC set a benchmark of 198 correctional staff by December 31, 2023, and 694 correctional staff by December 31, 2024. (Doc. 3901 at 6). ADOC reported that these numbers were based on a staffing level of 1,392.5 correctional staff in September 2022. (Id. at 5).

In June 2023, ADOC reported that its staffing level at the end of the first quarter for 2023 was 1,258.5. That report showed a decrease of 134 correctional staff since September 2022. Considering that decrease, ADOC needs to hire 332 correctional staff by the end of 2023 to meet its own benchmark. Despite a recent positive trend, by its own admission, ADOC gained more than 50 officers in the second quarter of 2023. (See supra II.A.). That requires ADOC to hire 282 officers

---

[4] Plaintiffs previously flagged this concern for the Court during status conferences and in Plaintiff's Response to Order for State to Submit Realistic Benchmarks for Correctional Staffing Levels. (Doc. 3906).

19

in the final two quarters of this year. ADOC would have to increase the numbers that it attained in the second quarter by more than fivefold to meet this benchmark. Even if ADOC somehow reaches its benchmark for 2023, the benchmark for 2024 is far greater. To reach the 2024 benchmark, ADOC needs to maintain its current staff and gain nearly 175 correctional staff per quarter in 2024. In the final seven months from January to July 2025, ADOC would still need an additional 1,665 officers (or 832.5 officers per quarter).

According to the updated 2023 Staffing Analysis, ADOC needs to fill 3,197.31 correctional officer full-time equivalents (FTE) and 490.74 command FTEs, for a total of 3,688.05 FTEs. (Doc. 3928-1 at 50) to satisfy this Court's mandate in the Remedial Order. Plaintiffs do not believe that ADOC is on track to meet that mandate. Although the benchmarks are not enforceable, they are "meant as a means of measuring ADOC's progress towards filling its mandatory and essential posts by 2025, so that the court and the parties can determine if ADOC is falling behind and take appropriate action immediately." *Braggs v. Dunn*, 562 F. Supp. 3d 1178, 1260-61 (M.D. Ala. 2021) (Thompson, J.). As the Court made clear, it hopes to "decrease the chances that, come four years from the omnibus remedial hearings, [the parties] will have to scramble to ensure that ADOC complies with the court's correctional staffing order or, worse, to extend the deadline for doing so by another four years." (Id.). Unfortunately, nearly two years after the Remedial Order,

20

Plaintiffs reasonably fear that ADOC's current progress and trajectory will undoubtedly result in a "scramble" or request for a significant extension. Such an outcome is likely, despite ADOC's current efforts to recruit and retain staff.

/s/ William R. Lunsford
*Attorney for the State*

William R. Lunsford
Matthew B. Reeves
Kenneth S. Steely
Clifford Z. Stafford*
**Butler Snow LLP**
200 West Side Square
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
matt.reeves@butlersnow.com
kenneth.steely@butlersnow.com
zane.stafford@butlersnow.com
*Admitted pro hac vice*

Philip Piggott, Esq.
**WEBSTER HENRY**
Two Perimeter Park South
Suite 445 East
Birmingham, AL  35243
ppiggott@websterhenry.com

Deana Johnson, Esq.
Brett T. Lane, Esq.
**MHM SERVICES, INC.**

21

1447 Peachtree Street, N.E., Suite 500
Atlanta, GA  30309
djohnson@mhm-services.com
btlane@mhm-services.com


**ATTORNEYS FOR THE DEFENDANTS**


                                        /s/ Ashley N. Light
                                        Ashley N. Light


Ashley N. Light
Lisa W. Borden
Latasha M. McCrary
**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, AL 36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
ashley.austin@splcenter.org
lisa.borden@splcenter.org

Leslie Faith Jones*
**SOUTHERN POVERTY LAW CENTER**
111 East Capitol Street, Suite 280
Jackson, MS 39201
Telephone: (601) 948-8882
Facsimile: (334) 956-8281
leslie.jones@splcenter.org
*Admitted pro hac vice*

William G. Somerville, III
Patricia Clotfelter
**BAKER, DONELSON, BEARMAN, CALDWELL & BERKOWITZ  PC**
420 20th Street North, Suite 1400
Birmingham, AL 35203
wsomerville@bakerdonelson.com

22

pclotfelter@bakerdonelson.com

William Van Der Pol, Jr.
Lonnie Williams
Barbara A. Lawrence
Andrea J. Mixson
**ALABAMA DISABILITIES
ADVOCACY PROGRAM**
University of Alabama
500 Martha Parham West
Box 870395
Tuscaloosa, AL  35487
Telephone: (205) 348-4928
Facsimile: (205) 348-3909
wvanderpoljr@adap.ua.edu
lwilliams@adap.ua.edu
blawrence@adap.ua.edu
amixson@adap.ua.edu


Catherine E. Stetson*
Neal K. Katyal*
Jo-Ann T. Sagar*
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
cate.stetson@hoganlovells.com
neal.katyal@hoganlovells.com
jo-ann.sagar@hoganlovells.com
*Admitted pro hac vice*

Mark Whitburn*
**WHITBURN & PEVSNER, PLLC**
2000 East Lamar Boulevard, Suite #600
Arlington, TX  76006
Telephone: (817) 672-5453
Facsimile: (817) 653-4477
mwhitburn@whitburnpevsner.com
*Admitted pro hac vice*

Joshua C. Toll*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW, 2nd Floor
Washington, DC 20006-4707
Telephone: (202) 227-6138
Facsimile: (202) 626-3737
jtoll@kslaw.com
*Admitted pro hac vice*

Evan Diamond*
**KING & SPALDING LLP**
185 Avenue of the Americas, 34th Floor
New York, NY 10036
Telephone: (212) 556-2297
Facsimile: (212) 556-2222
ediamond@kslaw.com
*Admitted pro hac vice*

Edward A. Bedard*
**KING & SPALDING LLP**
1180 Peachtree Street NE, Suite 1600
Atlanta, GA 30309
Telephone: (404) 572-3127
Facsimile: (404) 572-5100
ebedard@kslaw.com
*Admitted pro hac vice*

Rachel Rubens*
**KING & SPALDING LLP**
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1210
rrubens@kslaw.com
*Admitted pro hac vice*

**ATTORNEYS FOR THE PLAINTIFFS**

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**

24

2170 Highland Avenue, Suite 250
Birmingham, AL 35213
Telephone: (205) 590-6986
Facsimile: (205) 809-7899
anil@dagneylaw.com

**ATTORNEY FOR PLAINTIFF ALABAMA DISABILITIES ADVOCACY PROGRAM**
83857760.v3