**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **EDWARD BRAGGS, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 2:14-cv-00601-MHT** |
| **v.** | ) | |
| | ) | |
| **JOHN HAMM, *et al.*,** | ) | **District Judge Myron H. Thompson** |
| | ) | |
| **Defendants.** | ) | |

**THE STATE'S REPORT ON THE
STATUS OF THE PHASE 1 ADA CONSENT DECREE**

John Hamm ("Commissioner Hamm"), in his official capacity as Commissioner of the Alabama Department of Corrections ("ADOC"), and Deborah Crook ("Deputy Commissioner Crook" and, collectively with Commissioner Hamm, the "State"), in her official capacity as ADOC's Deputy Commissioner, Office of Health Services, hereby submit this status report for the February 19, 2026, status conference as directed by the Court's September 24, 2025 order (the "Order," Doc. 4411). This report provides the status of Phase 1 of the ADA Consent Decree (the "Consent Decree," Doc. 728), the status of the revised ADA Transition Plan, and the status of Birmingham Work Release.

**I.    PROCEDURAL BACKGROUND.**

The Court entered the "Consent Decree Concerning Claims Arising Under the Americans with Disabilities Act and §504 of the Rehabilitation Act of 1973 and

Resolving the Phase 1 Trial of These Proceedings" on August 9, 2016.  (Doc. 728).

On May 20, 2019, the Parties completed the original ADA Transition Plan with the

assistance of the Court appointed Americans with Disabilities Act ("ADA")

Consultant, Gina Hilberry (the "ADA Consultant").  The Parties agreed upon an

initial implementation schedule that included three phases for implementing

alterations on September 5, 2019.  (Doc. 2605).  On October 11, 2019, the Parties

filed a "Joint Statement regarding Phase 1 ADA Alterations," providing ADOC

would complete all ADA alterations by November 1, 2027, and that monitoring

would extend through November 1, 2028.[1]  (The "Joint Statement," Doc. 2629).

Recognizing that the construction of new facilities would represent a change to the

initial implementation of the Consent Decree, the Joint Statement explained, "if new

correctional facilities are constructed, then the Parties agree that the 'default

agreement' (i.e., the ADA Consultant's Report ["Transition Plan"]) will be void and

inapplicable to resolution of the dispute."  (Id. at 5).  With the assistance of the ADA

Consultant, the Parties filed the initial "Transition Plan" under seal on October 17,

2019, identifying areas in facilities for remediation.  (Doc. 2635).

On February 5, 2020, the Parties filed a Joint Motion to Amend the Phase 1

---

[1] The Statement provided that ADOC may seek termination of monitoring and Court supervision under Phase 1 Consent Decree following the latter of twelve months after completion of all ADA alterations at all facilities or twelve months after all newly constructed facilities are completed and housing at least 80% of their design capacity.  (Doc. 2629 at 3).

ADA Consent Decree and extend the deadlines regarding the proposed modifications in order to provide appropriate notice and comment forms to Plaintiffs. (Doc. 2748). The amendment included removing remediation of death row cells and two cells in the S Unit at Donaldson Correctional Facility ("Donaldson"); assignment of correctional staff to provide rescue assistance; the addition of shower chairs for death row inmates at Holman Correctional Facility ("Holman"); and collaboration between ADOC and the ADA Consultant to develop a plan for Holman death row, if required, pursuant to Phase 2 or Phase 3 of remediations. (Id. at 3).

Additionally, the Parties filed the "Updated Joint Summary of ADA Modifications" on February 7, 2020, clarifying proposed modifications to the Consent Decree. (Doc. 2752). The proposed modifications included identifying three phases for completion of ADA alterations, with the first phase including the "Expedited List" by June 1, 2021; alterations at Birmingham Women's Community Based Facility and Community Work Center ("Birmingham Work Release") and Frank Lee Community Based Facility / Community Work Center ("Frank Lee") by January 1, 2023; and specific work at Donaldson by May 31, 2023. (Id. at 2-5). The Updated Joint Summary of ADA Modifications also included the State, as part of Phase 2, designating three additional facilities for alterations by September 1, 2020, with completion of remediations by November 1, 2027. Phase 3 contemplated the

Parties designating additional facilities for remediations by September 1, 2021, with completion of remediations by November 1, 2027. (Id. at 2-3). The Parties again pointed to the impact of the State entering into a contract for new construction, stating "[n]otwithstanding anything in the foregoing paragraph to the contrary, if and when ADOC executes a contract for the construction of the first new Alabama prison, then the Parties will appropriately and necessarily revisit the scope of work contemplated by the ADA Alterations and reevaluate the schedule, need, and/or priority for such ADA Alterations." (Id. at 3-4). The Court approved the Parties' proposed modifications on May 12, 2020. (Doc. 2817).

The State notified the Court on April 29, 2022, that the State executed a contract for the construction of a new Alabama prison in Elmore County, Alabama.[2] (Doc. 3562 at 3). Further, the State confirmed the initiation of discussions with Plaintiffs regarding revisiting the scope of work contemplated by the ADA Alterations. (Id.). The Parties, as required under the Consent Decree, sought the assistance of the Honorable John Ott ("Judge Ott") to assist with resolving proposed modifications of the Consent Decree and Transition Plan based on the execution of the contract to build a new facility in Elmore County, Alabama, later named the

---

[2] The State originally executed a contract for the construction of new facilities on February 1, 2021. The State notified ADAP of the contract and sought to revisit the scope of work contemplated by the ADA Alterations and reevaluate the schedule need and priority of such ADA Alterations. As such, the February 1, 2021, contract triggered the requirement to reevaluate the ADA Alterations.

Governor Kay Ivey Correctional Complex ("GKICC"). (See Doc. 728 at 71). The Court ordered the Parties to file the proposed revised ADA Transition Plan by January 26, 2024. (Doc. 4055 at 3, cell II.A.7.). The Parties requested, and the Court granted, an extension to February 26, 2024, to file the proposed revised ADA Transition Plan. (Doc. 4119 at 3, cell II.A.7.). The Parties subsequently agreed to a new timeframe for the ADA Consultant to finalize the revised ADA Transition Plan. (Doc. 4137). The newly proposed timeframe included:

- **March 31, 2024**: Revisions to Section II – ADOC Program Summary.

- **April 30, 2024**: Revisions to Section V – Inaccessible Features at Community Work Centers and Work Release Facilities.

- **May 31, 2024**: Revisions to Section IV – Expedited Work Package, including Birmingham Work Release and Donaldson.

- **July 31, 2024**: Revision to Section IV – Inaccessible Features at Correctional Facilities.

- **September 30, 2024**: Development of calendar for all work.

- **October 31, 2024**: Submit Revised Transition Plan.

(Doc. 4137 at 7).

Following the joint agreement of the above timeframe to revise the ADA Transition Plan, the ADA Consultant provided the Parties with draft revisions of the ADA Transition Plan on October 13, 2024, when the ADA Consultant provided the parties with the draft revised ADA Transition Plan in its entirety. Due to the passage of time in the preparation of the draft ADA Transition Plan, the Court extended the

5

deadline to file the finalized version of the revised ADA Transition Plan to January 31, 2025.  (Doc. 4258 at 3).

While the Parties waited for the revised ADA Transition Plan, the Parties, along with the ADA Consultant, conducted ADA site inspections of Hamilton Aged and Infirmed and North Alabama Community Work Center.  Following these visits, the ADA Consultant recommended additional changes for the State to implement. Further, on November 13, 2024, the Alabama Corrections Institutions Finance Authority ("ACIFA"), in accordance with the enabling legislation for a second new men's facility designed to house 4,000 male inmates in Escambia County, Alabama, executed a contract for the design of a second new men's facility in Escambia County (the new facility referred to herein as "Escambia").

Between May 2025 and July 2025, the State requested that the ADA Consultant provide a systemwide estimate of ADA accessible bed needs, including the capacity of the two new men's facilities, from the ADA Consultant.  On July 1, 2025, the ADA Consultant advised that she estimated that ADOC requires a total of 708 ADA accessible beds.  Thereafter, the State provided the ADA Consultant updated drawings and further information regarding the construction status of the GKICC as well as the current architectural drawings of Escambia.  The October 13, 2024, iteration of the ADA Transition Plan did not account for the additional ADA accessible bed space at GKICC and Escambia.  Therefore, the State requested the

ADOC Consultant reconsider the estimated number of ADA accessible beds in light of the information regarding the new facilities.

The State continues mediation efforts and collaboration with the ADA Consultant to finalize the ADA Transition Plan. On November 5, 2025, and December 19, 2025, the State and the ADA Consultant met to discuss the ADA Transition Plan. In a recent meeting conducted on January 16, 2026, Judge Ott, the State, Plaintiffs' counsel, and the ADA Consultant also discussed updates regarding the ADA Transition Plan, including updates on the bed tabulations for GKICC and Escambia.

The State continues its work with Plaintiffs and the ADA Consultant regarding the final updated bed estimates, which takes into consideration the ADA accessible beds at GKICC and Escambia. Once received, the State will continue to work with Plaintiffs and the ADA Consultant to regarding the ADA Transition Plan and reevaluate the potential scope of work, schedule need, and priority of any remaining remediations at existing ADOC facilities, if any. Therefore, the State awaits the ADA Consultant's revised ADA Transition Plan, which considers GKICC and Escambia.

## II. CONSTRUCTION CONTINUES ON THE GOVERNOR KAY IVEY CORRECTIONAL COMPLEX AND ESCAMBIA.

Construction of the GKICC continues to progress under the design-build agreement, the terms of which allow flexibility over the course of the project for the

adjustment of cost and schedule upon approval of ACIFA.  On November 5, 2025, ACIFA approved a Modification to the Design-Build Agreement, modifying the construction scope to add certain infrastructure for enhanced emergency communications and electronic key cabinets, adjust certain commercial terms between the parties, establish waiver of certain Claims, and, in consideration of these benefits to the State, extend the final completion date to October 15, 2026.  In completing this construction, the State continues to expend a significant amount of their legislatively allocated funding to complete this facility by the deadline. Further, the State verified GKICC's ADA compliance with the ADA Consultant during the design phase.  As such, the GKICC will become the centralized and specialized hub for medical care provided by the State to inmates while also offering approximately 898 beds suitable for those who require ADA accommodations.  Most inmates requiring specialty medical and mental health beds located throughout ADOC will relocate to GKICC to receive the care necessary.

On November 13, 2024, ACIFA approved a resolution approving the procurement of design contracts for Escambia and authorized the execution of a Comprehensive Design Services Contract relating to the construction of Escambia. Governor Ivey subsequently executed the Design Services Contract.  Design of approximately 2,000 beds for the Escambia Facility is ongoing pursuant to the Design Services Contract.  The State expects the first approximately 2,000 beds

8

being designed for construction of the Escambia Facility to add an additional 304 ADA accessible beds. On July 16, 2025, the State provided the ADA Consultant with architectural drawings of the current design of Escambia for her evaluation. Currently, the State awaits the ADA Consultant's feedback. However, the number of beds at the two new facilities indicate that ADOC will exceed the ADA Consultant's recommendation of 708 ADA accessible beds.

## III.   THE STATUS OF THE ADA TRANSITION PLAN.

On October 13, 2024, the ADA Consultant provided a revised ADA Transition Plan, including a revised scope of work for ADOC's major facilities. The revised ADA Transition Plan, consisted of over 700 pages of proposed ADA remediations throughout the system, covering twenty-one facilities. The State sought and received an extension to file the revised ADA Transition Plan by January 31, 2025. (Supra at 5). After receiving the draft revised ADA Transition Plan on October 13, 2024, the State entered into the contract regarding the design of Escambia, and the State requested the ADA Consultant to reevaluate the draft revised ADA Transition Plan in light of the design and initiatives undertaken for Escambia. The Parties, with the assistance of Judge Ott, continue to work with the ADA Consultant to review the draft revised ADA Transition Plan in light of the construction of the two new ADOC facilities.

During a meeting held on June 26, 2025, between the Parties and the ADA

Consultant, the ADA Consultant confirmed she would review the expedited work completed at Holman and Birmingham Work Release. The State confirmed and the ADA Consultant approved the construction of an outdoor recreation area for the restrictive housing unit at Holman, and completion of requested remediations at Birmingham Work Release. The State continues to work with the ADA Consultant to finalize the revised ADA Transition Plan that will account for the currently available ADA accessible beds and the beds included at the new facilities.

IV.    THE STATUS OF BIRMINGHAM WORK RELEASE.

Pending finalization of the plans for remediation of the Birmingham Women's Community Based Facility and Community Work Center ("Birmingham Work Release"), the State confirmed to Plaintiffs the State's intention to relocate the Community Work Center from its current location in Birmingham. (Doc. 4091 at 2). On February 7, 2024, the Parties filed a joint status report confirming the State intended to relocate Birmingham Work Release to a property near the city of Birmingham, and that ADOC identified a viable property and began working to acquire the property. (Doc. 4123). During the process of acquiring the property, the current tenants reversed their position and decided against allowing ADOC to re-locate Birmingham Work Release to their location, requiring the State to begin the search for a new location anew. Given the State's desire to relocate the facility, the State expanded the search for amenable locations statewide and identified thirteen

10

potential locations.  Since December 20, 2023, the State toured eleven of these potential properties.  Of these properties, the State decided against those facilities for a variety of reasons, including, for example: (i) the cost of the facility (as to the purchase priced and/or the cost of renovations), (ii) the layout and physical features of the facility, (iii) the scope of necessary renovations to the facility, (iv) the proximity of the facility to working opportunities for inmates, and (v) zoning considerations.

Due to Birmingham Work Release not relocating as planned, ADAP conducted a site inspection of Birmingham Work Release on June 20, 2024.  During this visit, ADAP assessed the facility and conducted interviews with several inmates.  ADAP identified areas for potential remediation to allow temporary operation of the Facility pending relocation.  Further, ADOC's Director of Facilities Management, Jenny Abbott, conducted a virtual walkthrough of Birmingham Work Release with the ADA Consultant on November 20, 2024, to ensure the ongoing remediations at the facility meet ADA requirements.  The ADA Consultant approved many of the recommendations and provided additional minor remediations for the State to complete.  On May 13, 2025, ADOC conducted an additional virtual walkthrough at Birmingham Work Release after the completion of the remediations, and the ADA Consultant approved of the adjustments made to the facility.  While the State still intends to relocate Birmingham Work Release, none of the previously identified

11

locations proved viable.  The State may proceed with relocating Birmingham Work Release if a suitable location is found, and in the meantime, operate the facility with the remediations the ADA Consultant approved.

## V.     CONCLUSION

The State continues to advance ADA accessibility through its efforts to construct new facilities.  As mediation remains ongoing, the State will continue to work with the ADA Consultant, Judge Ott, and Plaintiffs to finalize a revised ADA Transition Plan.

Date: February 5, 2026

/s/ Daniel J. Chism
Daniel J. Chism
*Attorney for the State*

William R. Lunsford
Kenneth S. Steely
Daniel J. Chism
Lynette E. Potter
Megan M. Everett
**BUTLER SNOW LLP**

200 West Side Square Suite 100
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
kenneth.steely@butlersnow.com
daniel.chism@butlersnow.com
lynette.potter@butlersnow.com
megan.everett@butlersnow.com

12

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, on this 5th day of February 2026:

Lisa W. Borden
Latasha L. McCrary
**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, AL 36104
Telephone: (334) 956-8200
lisa.borden@splcenter.org
latasha.mccrary@splcenter.org

Deana Johnson (*Pro Hac Vice*)
Brett T. Lane
**MHM SERVICES, INC.**
1447 Peachtree Street NE, Suite 500
Atlanta, GA 30309
Telephone: (404) 347-4134
djohnson@mhm-services.com
btlane@mhm-services.com

Emily B. Lubin (*Pro Hac Vice*)
Julia T. Mudd (*Pro Hac Vice*)
**SOUTHERN POVERTY LAW CENTER**
201 St. Charles Ave. Suite 2000
New Orleans, LA 70170
Telephone: (504) 401-2291
Emily.Lubin@splcenter.org
Julia.Mudd@splcenter.org

Joshua C. Toll (*Pro Hac Vice*)
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
Telephone: (202) 737-8616
jtoll@kslaw.com

Andrew G. Udelsman (*Pro Hac Vice*)
**SOUTHERN POVERTY LAW CENTER**
2 South Biscayne Boulevard
Suite 3750
Miami, FL 33131
Telephone: (786) 742-9397
Andrew.udelsman@splcenter.org

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue
Suite 250
Birmingham, AL 35213
Telephone: (205) 410-1185
anil@dagneylaw.com

13

Catherine E. Stetson (*Pro Hac Vice*)
Neal K. Katyal (*Pro Hac Vice*)
Jo-Ann T. Sagar (*Pro Hac Vice*)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street
Washington, DC 20004
Telephone: (202) 637-5600
cate.stetson@hoganlovells.com
neal.katyal@hoganlovells.com
jo-ann.sagar@hoganlovells.com

Lonnie J. Williams
Barbara A. Lawrence
Andrea J. Mixson
Larry G. Canada
**ALABAMA DISABILITIES ADVOCACY PROGRAM**
2008 12th Street
Tuscaloosa, AL 35401
Telephone: (205) 348-6894
lwilliams@adap.ua.edu
blawrence@adap.ua.edu
amixson@adap.ua.edu
lcanada@adap.ua.edu

*/s/ Daniel J. Chism*
Of Counsel