**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | |
|---|---|
| **EDWARD BRAGGS,** *et al.*, | ) |
| | ) |
| **Plaintiffs,** | ) |
| | )    **Case No. 2:14-cv-00601-MHT** |
| **v.** | ) |
| | )    **District Judge Myron H. Thompson** |
| **JOHN HAMM,** *et al.*, | ) |
| | ) |
| **Defendants.** | ) |

**THE STATE'S STATUS REPORT ON IMPLEMENTATION OF
THE PHASE 2A OMNIBUS REMEDIAL OPINIONS AND ORDER**

John Hamm ("Commissioner Hamm"), in his official capacity as

Commissioner of the Alabama Department of Corrections ("ADOC"), and Deborah

Crook ("Deputy Commissioner Crook" and, collectively with Commissioner

Hamm, the "State"), in her official capacity as ADOC's Deputy Commissioner,

Office of Health Services, hereby submit this status report for the February 19, 2026,

status conference as directed by the Court's September 24, 2025, Order.[1]  (Doc.

---

[1] The State submits this filing in response to the Court's directive.  (Doc. 4411).  In doing so, the State expressly preserves any and all objections and all available legal and equitable arguments in response to the Court's Phase 2A Omnibus Remedial Opinion (Docs. 3461, 3462, 3463, 3465), Phase 2A Omnibus Remedial Order (Doc. 3464), any other Phase 2A remedial orders, and the Court's liability opinions and orders in this action, including without limitation, the Court's Liability Opinion and Order as to Phase 2A Eighth Amendment Claim (Doc. 1285) and Phase 2A Supplemental Liability Opinion and Order on Periodic Mental-Health Evaluations of Prisoners in Segregation (Doc. 2332).  Nothing contained in this filing shall be construed as an admission by the State, a waiver of any objection to any opinion or order in this action, or a waiver of the State's pending appeal related to Phase 2A (see Doc. 3488).  Nothing in this filing shall be construed as an admission of any kind by the State that ADOC's current or historical staffing or provision of mental-

1

4411).

## I.    STATUS OF THE REMEDIAL ORDER.

This Status Report provides updated information developed since the filing of "The State's Status Report on Implementation of the Phase 2 Omnibus Remedial Opinions and Order" on November 6, 2025.  (Doc. 4429).  The Court issued the Phase 2A Omnibus Remedial Order (the "Remedial Order," Doc. 3464) on December 27, 2021, establishing certain obligations and deadlines for the State to implement.   As of the date of this Report, the Remedial Order remains on appeal to the Eleventh Circuit Court of Appeals, Docket Number 22-10292-E.

## II.    THE STATE'S PROGRESS IN COMPLIANCE WITH THE REMEDIAL ORDER.

The State continues to meet and/or exceed constitutional standards for operations and mental health care at the prisons subject to the Remedial Order.  The State and Plaintiffs (collectively, the "Parties") await the Court's decision on the proposals of the External Monitoring Team ("EMT") and the Parties' respective objections and concerns related to the EMT's proposals.

---

health care is or was unconstitutional or deficient in any way.  Moreover, the State contends the Phase 2A Omnibus Remedial Order expired by operation of law (see 18 U.S.C. § 3626(a)(2)), and all interim Phase 2A remedial orders similarly expired by operation of law and/or were vacated.  This issue remains on appeal before the United States Court of Appeals for the Eleventh Circuit.  The State intends to continue working in good faith with Plaintiffs and this Court until it receives a ruling vacating the Phase 2A Remedial Order or otherwise declaring it inoperative.

A.    THE ACTIVITIES OF THE EMT.

The EMT began its work in October 2022, holding its first meeting on October 17, 2022. The EMT consists of four members: (1) Dr. Elizabeth Falcon in the role of psychologist; (2) Dr. Raymond Reeves Jr., in the role of the psychiatrist; (3) Rick Raemisch as the correctional administrator; and (4) Karen Rea in the role of the nurse.  (Doc. 3988 at 3).  The EMT appointed Dr. Elizabeth Falcon to serve as the team's administrative head.  From that point forward, the EMT regularly met with the Parties in an attempt to develop performance measures and create monitoring tools to monitor the relevant ADOC facilities.  Consistent with the terms of the Remedial Order, ADOC also identified the members of the Internal Monitoring Team ("IMT"), and the State facilitated meetings between the EMT and the IMT to coordinate efforts.

On September 12, 2023, the EMT provided a revised set of proposed performance measures, and, on November 4, 2023, the Parties received the corresponding, proposed audit tools.  The Parties submitted objections to the performance measures and audit tools to the EMT on April 8, 2024, in which the Parties outlined a multitude of concerns with the EMT's proposals.  The Parties worked with the EMT and United States Magistrate Judge (retired) John Ott, and the EMT submitted their last version of proposed performance measures and audit tools on December 20, 2024.

3

In response to the State's objections, the EMT proposed an increase to the annual monitoring budget from $1,400,000 to $8,430,600 to an additional four psychiatrists, four psychologists, four nurses, and four correctional professionals. The EMT asserted these additional staff would be necessary to conduct monitoring under the current performance measures and audit tools.[2]

On January 10, 2025, the Parties filed remaining objections to the finalized proposed performance measures and audit tools. (Doc. 4289-2; Doc. 4289-3; Doc. 4290). On January 10, 2025, the Parties also submitted proposals as to how the Court should resolve objections to the performance measures and audit tools. (Doc. 4288; Doc. 4289-1). Both Parties proposed a hearing to resolve remaining objections to the performance measures and audit tools. (Doc. 4288; Doc. 4289-1).

After the triannual status conference held on January 24, 2025, the Court ordered the Parties to participate in mediation with the EMT to try and reach a resolution concerning the objections. The Parties participated in multiple mediation sessions over the course of several weeks regarding the EMT's proposed performance measures and the number of charts and documentation the EMT request

---

[2] The State objects to the EMT's monumental request for additional resources for multiple reasons, including the EMT's clear failure to adhere to the mandates of the Prison Litigation Reform Act, 18 U.S.C. § 3626. The EMT seeks an approximately 402 percent increase in the annual monitoring budget. This represents a material and unreasonable change in circumstances and, if ordered, mandates additional PLRA findings. Regardless, this substantial increase in monetary demands of the EMT would result in a substantial hardship on the State to fund the EMT at that level, compromising the State's funding of ADOC operations and improvements, such as the ADA alterations contemplated in Phase I of this action.

for each.  Although the Parties and the EMT resolved and clarified some of the issues regarding to the proposed performance measures, many remain unresolved. Therefore, the Parties submitted their objections to the EMT's proposed performance measures and audit tools on June 28, 2025, as well as their proposed procedures for resolving the remaining objections.  (Doc. 4374).   The State's objections centered around five key issues:

1.   The EMT's proposed performance measures and audit tools require unduly burdensome document production exceeding the scope of the Remedial Order and in violation of the Prison Litigation Reform Act ("PLRA");

2.   The EMT's compliance levels exceed substantial compliance in violation of the PLRA and the Monitoring Order;

3.   The EMT exceeded its authority under the Monitoring Order in its proposed schedule and procedure for transferring monitoring to the Internal Monitoring Team ("IMT");

4.   The EMT's proposed performance measures and audit tools require monitoring of issues outside the scope of the Remedial Order provisions; and

5.   The EMT's proposed performance measures and audit tools fail to define with particularity the documents required to assess compliance and how specifically the EMT will measure compliance.

(Id. at 3-4).  The State proposed an evidentiary hearing allowing the Parties to examine the EMT members, submit pre-hearing briefing, followed by responses, and

post-hearing briefing. (Id. at 15). Plaintiffs proposed "any unresolved issues be addressed through briefing or a narrow hearing that focuses solely on issues relating to how the EMT interpreted or potentially misinterpreted the court's remedial order." (Doc. 4375 at 5). The Court held a status conference on July 18, 2025, to confirm that the Court receipt of documents necessary to make a decision pertaining to the proposed performance measures and applicable objections. On August 29, 2025, the Court held a status conference to discuss the Parties' pending objections. The Court indicated it would prioritize an opinion on the implementation of the EMT, followed by an opinion concerning ADA, and a third opinion concerning correctional staffing. The Court cancelled the subsequent status conference scheduled for November 20, 2025, noting, "the court review[ed] the status reports filed by the parties and recognize[d] that the parties are waiting for further guidance and decisions from the court." (Doc. 4433 at 1).

**B.    THE STATE'S CONTINUED EFFORTS REGARDING STAFFING.**

**1.    ADOC continues to increase the number of correctional staff and mental health staff within its facilities.**

In compliance with Section 2.1.1 of the Remedial Order, ADOC created the Resource Planning Unit ("RPU") and adopted Administrative Regulation 238 ("AR 238") regarding conducting and maintaining a staffing analysis. Pursuant to Section 2.1.2 of the Remedial Order, the State filed the RPU's 2022 Staffing Analysis on

6

November 1, 2022.  (Doc. 3849).[3]  In compliance with Section 2.1.5 of the Remedial Order, the State submitted non-enforceable "realistic benchmarks for the level of correctional staffing" for the State to achieve by December 31, 2023, and 2024.  (Doc. 3901).  As required by AR 238, the RPU Coordinator facilitated a review to update ADOC's staffing analysis at regular intervals of no greater than two years.  The State confirmed review of the 2022 Staffing Analysis on December 1, 2023.  (Doc. 4097).  Additionally, the Parties filed the Joint Status Report on the Ongoing Process to Update the Staffing Analysis on June 28, 2024, updating the Court on the status of the State's updated staffing analysis.  (Doc. 4195).  ADOC completed the updated staffing analysis in November 2024.

The State filed the 2025 third quarter Quarterly Staffing Report on January 12, 2026.  (Doc. 4451-1, the "Third Quarter Correctional 2025 Report").  The data showed continued progress for correctional staffing.  From the second quarter of 2025 to the third quarter of 2025, ADOC increased total correctional staff[4] by 3.70%.  (Id.).  The Second Quarter 2025 Report showed ADOC employed 424 Correctional Officer Trainees ("COT"), and during the second quarter of 2025, ADOC added

---

[3] Plaintiffs raised concerns regarding the 2022 Staffing Analysis (Doc. 3880), and the Parties filed a Joint Report (Doc. 3927) and an updated 2022 Staffing Analysis (Doc. 3928) on February 24, 2023.

[4] Correctional Staffing includes Correctional Cubicle Operators, Correctional Security Guards, Senior Correctional Security Guards, Correctional Officers, Correctional Officer Trainees, Part Time, and Senior Correctional Officers.

twenty-five COTs for a total of 449 COTs.  (Doc. 4404-1; Doc. 4451-1).   The table below details the increase in staff at eight major facilities between the second quarter of 2025 and the third quarter of 2025, illustrating ADOC's dedication to increasing staff.  (Id. at 4-5).

*Table 1*

| Correctional Facility | Quarter 2 | Quarter 3 | Increase in Staff |
|:---:|:---:|:---:|:---:|
| Donaldson | 167.5 | 175.5 | 8 |
| Easterling | 65 | 70.5 | 5.5 |
| Fountain | 109 | 123 | 14 |
| Holman | 73 | 90 | 17 |
| Limestone | 219 | 238 | 19 |
| St. Clair | 197 | 204 | 7 |
| Staton | 138 | 155 | 17 |
| Tutwiler | 124 | 150 | 26 |

Since March 2023, ADOC added 502 additional correctional staff at the major facilities, which resulted in a 28% increase in system-wide correctional staffing. (Doc. 4403-1; Doc. 3973-1).   On December 11, 2025, 136 correctional officers graduated from the Academy Peace Officers' Standards and Training Commission ("APOSTC"), adding 473 correctional officers during the 2025 calendar year.[5] Overall, ADOC continues to make meaningful progress in increasing correctional staffing across its facilities.

---

[5] https://doc.alabama.gov/NewsRelease.aspx?article=ADOC+SETS+RECORD+IN+2025+FOR+ GRADUATING+OFFICERS%0D%0AACADEMY+CLASS+2025- 04+TO+GRADUATE+136+CORRECTIONAL+OFFICERS+%E2%80%94+TOTAL+473+FO R+2025

The State filed the 2025 third quarter Quarterly Staffing Report on December 1, 2025.  (Doc. 4438-1, the "Third Quarter Mental Health 2025 Report").  During the third quarter of 2025, mental health staff provided a total of 175,033.65 hours of mental health services.  (Doc. 4442 at 3).  This results in a slight decrease of 1,101.60 hours compared to the second quarter of 2025.  (Id.). Specifically, the below table shows mental health clinical positions[6] provided 84,294.35 hours of mental health hours for the third quarter of 2025.  (Id.).

*Table 2*

| POSITION | HOURS |
| --- | --- |
| Psychiatrist | 6,642.35 |
| Psychologist | 2,936 |
| CRNP | 6,988.65 |
| Registered Nurse (RN) | 13,969.06 |
| Licensed Practical Nurse (LPN) | 21,542.34 |
| Mental Health Professional (MHP) | 32,215.95 |

For the third quarter of 2025, the State exceeded the Remedial Order's adjusted Full-Time Equivalent ("FTE") hours[7] requirement, providing 97.17% of the required hours.  (Id. at 8).  Additionally, during the second quarter of 2025, YesCare Corp.[8] ("YesCare") hired thirty-seven mental health employees and for the third quarter

---

[6] Mental health clinical positions include the positions of Psychiatrist, Psychologist, Certified Registered Nurse Practitioner, Registered Nurse, Licensed Practical Nurse, and Mental Health Professional.

[7] A Full-Time Equivalent is a standardized staffing measure that converts total hours worked into the number of full-time employees.  One FTE equals the organization's full-time schedule.

[8] ADOC entered a contract for comprehensive healthcare services with YesCare effective on April 1, 2023.

2025, YesCare hired thirty-two employees.  (Id. at 10).  YesCare continues its efforts to recruit and retain mental health personnel by offering robust sign-on and retention bonuses as well as tuition reimbursement.  (Id.).  These actions demonstrate ADOC's good-faith efforts and demonstrates its ongoing compliance with the Court's Remedial Order.

### 2. ADOC continues to invest in a diverse and innovative series of recruiting and retention activities and initiatives for Correctional Staff.

In March 2023, ADOC increased the starting salary for new correctional officers to $50,712.00 at minimum custody facilities, $53,244.80 at medium custody facilities, and $55,855.20 at maximum custody facilities.  As of September 1, 2023, the starting salaries for COTs increased to $51,727.20 for minimum custody facilities, $54,290.40 for medium custody facilities, and $56,971.20 for maximum custody facilities.  Additionally, ADOC offered a 27% available pay increase after eighteen months for qualifying correctional officers.  ADOC also substantially increased the number of hiring events it holds across the state.

Over the last three years, ADOC continued to increase the number of hiring events across Alabama.  In 2022, ADOC held nineteen hiring events.  In 2023, ADOC held ninety-four hiring events and in 2024, ADOC held 125 hiring events.  Further, ADOC held 127 hiring events for 2025.  (Doc. 4451 at 8).  These hiring events provide potential applicants with greater access to hiring information and

10

opportunities to complete applications and requirements for becoming a correctional officer trainee.  In addition to increasing the number of hiring events, ADOC began the ACTIVATE Career Readiness Program, a pilot project in partnership with the Alabama Community College system.  ACTIVATE provides the no-cost six-week program to assist individuals facing physical and educational barriers to meet the requirements to become correctional officers.  The first ACTIVATE class graduated twenty-three students, all of whom qualified to attend the Academy in 2024.[9] Moreover, seventy-five students graduated from ACTIVATE so far this year.  As a result of the increased hiring events and innovative programs like ACTIVATE, ADOC experienced increased Academy class sizes, a record-breaking graduating class, and an increase in the number of officers in ADOC facilities.  (Doc. 4360-1). All these efforts demonstrate ADOC's continued commitment and efforts to increase staffing in general at all facilities.

In addition to increasing correctional staff, ADOC continued to utilize overtime assignments to fill posts at the facilities.  To provide additional support, in August 2023, ADOC began contracting with private companies to supply security

---

[9] See Alabama Department of Corrections and Alabama Community College System Celebrate Inaugural Graduation of Activate Career Readiness Program at https://doc.alabama.gov/NewsRelease.aspx?article=ALABAMA+DEPARTMENT+OF+CORRECTIONS+AND+ALABAMA+COMMUNITY+COLLEGE+SYSTEM+CELEBRATE+INAUGURAL+GRADUATION+OF+ACTIVATE+CAREER+READINESS+PROGRAM#:~:text=ACTIVATE%2C%20a%20joint%20initiative%20between,necessary%20to%20join%20the%20profession.

staff to the major facilities to assist with staffing posts identified as not requiring direct contact with inmates ("non-contact posts"). Supplementing staff with contract staff in non-contact posts allows ADOC to assign correctional officers to posts requiring more direct contact with the inmate population. As of January 2026, the companies supplied 160 non-contact officers to the major facilities. The quarterly staffing reports do not reflect the use of overtime or contracted security staff.

The State continues to deploy reasonable and authorized efforts to increase correctional staffing levels and supervision within the relevant Facilities and continues to show progress in correctional staffing at all relevant Facilities.

## A.    THE OPERATION OF RESTRICTIVE HOUSING UNITS.

The Remedial Order sets out certain mandates for the State to comply with regarding the operation of Restrictive Housing Units ("RHU"). These include (1) documenting of exceptional circumstances, (2) screening for serious mental illness, (3) conducting mental-health rounds, (4) conducting mental health assessments, (5) providing out-of-cell time, and (6) performing security checks. (Doc. 3464 at 8-6). To assist with creating a proposal that "will allow ADOC's RHUs with the exception of the RHU at Tutwiler to function safely with the correctional staff that ADOC currently employs," the Parties consulted with EMT member Rick Raemisch. (Doc. 3464, § 2.1.7.3).

Mr. Raemisch provided the Parties with his RHU Proposal on July 14, 2023. The Parties filed the Joint Statement on Restrictive Housing Unit Operations on October 27, 2023. (Doc. 4061). The State highlighted the following objectives:

    (1)    Centralizing RHUs under a single Regional Director;

    (2)    Creating RHU Teams at certain facilities;

    (3)    Making expansion plans for the Preventative Housing Reintegration Units ("PHRU"); and

    (4)    Increasing staffing at all major facilities through recruiting efforts and the State's historical pay raise.

(Id. at 4-10). Plaintiffs recognized the implementation of some of Raemisch's recommendations. (Doc. 4061 at 12). For example, ADOC established RHU Teams at Limestone, St. Clair, and Donaldson to oversee the completion of routine activities in the RHUs. (Doc. 4061 at 6). In addition, ADOC created PHRUs at both Limestone and St. Clair, which reduce the RHU population by 12% and bring the total number of PHRU beds to 124. (Id. at 8). ADOC also maintains ongoing recruitment and retention efforts to support increased RHU staffing.

The Parties attended the November 3, 2023, conference, where Plaintiffs requested the State produce a status report on the RHUs. The Parties developed the RHU Report's format and filed the Joint Notice of Filing Proposed Restrictive Housing Unit Report on November 17, 2023. (Doc. 4075). The Court approved the RHU plan on November 21, 2023, ordering the State to file monthly RHU reports.

(Doc. 4082). The State filed monthly RHU Reports for the months of December 2023 through December 2025. (Doc. 4112; Doc. 4126; Doc. 4152; Doc. 4165; Doc. 4178; Doc. 4190; Doc. 4199; Doc. 4216; Doc. 4230; Doc. 4237; Doc. 4260; Doc. 4276; Doc. 4292; Doc. 4319; Doc. 4333; Doc. 4344; Doc. 4352; Doc. 4368; Doc. 4381; Doc. 4393; Doc. 4408; Doc. 4419; Doc. 4444; and Doc. 4452). The Parties filed the Joint Statements Regarding Monthly Restrictive Housing Unit Trends Report for December 2023 through December 2025. (Doc. 4115; Doc. 4134; Doc. 4157; Doc. 4168; Doc. 4181; Doc. 4190; Doc. 4201; Doc. 4220; Doc. 4232; Doc. 4242; Doc. 4264; Doc. 4284; Doc. 4297; Doc. 4322; Doc. 4339; Doc. 4346; Doc. 4354; Doc. 4370; Doc. 4385; Doc. 4395; Doc. 4410; Doc. 4423; Doc. 4446; and Doc. 4455). The State provided these filings to the EMT.

The latest Joint Statements Regarding RHU Trends Report reflects ADOC's continued systemwide management efforts RHU operations. The Monthly Restrictive Housing report for the month of December 2025 ("December 2025 Report") indicates 859 of the beds in RHU held inmates. (Doc. 4452-1 at 3). Of the 859 inmates housed in RHU, 140 inmates designated SMI remained in RHU on December 31, 2025. (Id.). Of those 140, forty-three requested placements in RHU. (Id. at 18). Further, the December 2025 Report shows 317 inmates with fewer than thirty days in RHU on December 31, 2025, suggesting at least 317 inmates entered RHU during the month of December 2025. (Id. at 3). Thus, ADOC continues to

14

receive, process, and move SMI inmates through RHUs at the relevant Facilities, while also monitoring inmates' mental health status.

## III.    CONCLUSION

ADOC continues to provide constitutionally adequate conditions and mental health care.  These on-going efforts emphasize ADOC's focus on measurable results that improve safety and increase access to care. ADOC recruits, trains, and retains correctional staff, which improves post coverage to reduce overtime strain and support consistent operations. ADOC and its provider deliver substantial mental-health service hours and staff key clinical positions to meet the Remedial Order's adjusted FTE-hour expectations. Additionally, ADOC also operates RHUs under the framework the Court approved, assigns RHU Teams, expands PHRU capacity, evaluates and monitors inmates with serious mental illness, and reports monthly trends to the Court and the EMT.  These actions demonstrate ADOC's good-faith compliance efforts and sustained progress toward the Remedial Order's objectives.

Dated: February 5, 2026.

/s/ Megan M. Everett
Megan M. Everett
*One of the Attorneys for the State*

William R. Lunsford
Kenneth S. Steely
Daniel J. Chism
Lynette E. Potter
Megan M. Everett

**BUTLER SNOW LLP**
200 West Side Square
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
kenneth.steely@butlersnow.com
daniel.chism@butlersnow.com
lynette.potter@butlersnow.com
megan.everett@butlersnow.com

16

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing has been served upon all attorneys of record in this matter, including without limitation the following, by the Court's CM/ECF system on this 5th day of February 2026:

Lisa W. Borden
Latasha L. McCrary
**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, AL 36104
Telephone: (334) 956-8200
lisa.borden@splcenter.org
latasha.mccrary@splcenter.org

Deana Johnson (*Pro Hac Vice*)
Brett T. Lane
**MHM SERVICES, INC.**
1447 Peachtree Street NE
Suite 500
Atlanta, GA 30309
Telephone: (404) 347-4134
djohnson@mhm-services.com
btlane@mhm-services.com

Emily B. Lubin (*Pro Hac Vice*)
Julia T. Mudd (*Pro Hac Vice*)
**SOUTHERN POVERTY LAW CENTER**
201 St. Charles Ave. Suite 2000
New Orleans, LA 70170
Telephone: (504) 401-2291
Emily.Lubin@splcenter.org
Julia.Mudd@splcenter.org

Joshua C. Toll (*Pro Hac Vice*)
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW
Suite 900
Washington, DC 20006
Telephone: (202) 737-8616
jtoll@kslaw.com

Andrew G. Udelsman (*Pro Hac Vice*)
**SOUTHERN POVERTY LAW CENTER**
2 South Biscayne Boulevard
Suite 3750
Miami, FL 33131
Telephone: (786) 742-9397
Andrew.udelsman@splcenter.org

Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue
Suite 250
Birmingham, AL 35213
Telephone: (205) 410-1185
anil@dagneylaw.com

17

Catherine E. Stetson (*Pro Hac Vice*)
Neal K. Katyal (*Pro Hac Vice*)
Jo-Ann T. Sagar (*Pro Hac Vice*)
**HOGAN LOVELLS US LLP**
555 Thirteenth Street
Washington, DC 20004
Telephone: (202) 637-5600
cate.stetson@hoganlovells.com
neal.katyal@hoganlovells.com
jo-ann.sagar@hoganlovells.com

Lonnie J. Williams
Barbara A. Lawrence
Andrea J. Mixson
Larry G. Canada
**ALABAMA DISABILITIES
ADVOCACY PROGRAM**
2008 12th Street
Tuscaloosa, AL 35401
Telephone: (205) 348-6894
lwilliams@adap.ua.edu
blawrence@adap.ua.edu
amixson@adap.ua.edu
lcanada@adap.ua.edu

*/s/ Megan M. Everett*
Of Counsel

18