**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **EDWARD BRAGGS, *et al.*,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | **Case No. 2:14-cv-00601-MHT** |
| **v.** | ) | |
| | ) | **District Judge Myron H. Thompson** |
| **JOHN HAMM, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## JOINT STATEMENT ON CORRECTIONAL STAFFING TRENDS

Plaintiffs and Defendants John Hamm ("Commissioner Hamm"), in his

official capacity as Commissioner of the Alabama Department of Corrections

("ADOC"), and Deborah Crook, in her official capacity as Deputy Commissioner of

the Office of Health Services ("Deputy Commissioner Crook," and, collectively with

Commissioner Hamm, the "State," and, collectively with Plaintiffs, the "Parties"),

hereby submit this Joint Status Report on Correctional Staffing Trends, regarding (i)

the data in the First Quarter 2026 Correctional Staffing Report; (ii) the net increase

in total staffing relative to the Fourth Quarter 2025 Correctional Staffing Report in

both raw numbers and as a percentage; (iii) whether the First Quarter 2026

Correctional Staffing Report reflects a progression that places ADOC on track to

meet the July 1, 2025, correctional staffing deadline; (iv) other retrospective trends

and prognosis the report indicates; and (v) other information revealed by the First Quarter 2026 Correctional Staffing Report.  Docs. 3994 & 4258 at 7, cell III.B.2.[1]

## I.    THE DATA IN THE FIRST QUARTER 2026 CORRECTIONAL STAFFING REPORT.

### A.    THE STATE'S POSITION.

The State filed, under seal, the January 1, 2026, to March 31, 2026, Quarterly Staffing Report on June 1, 2026.  (Doc. 4506-1, the "First Quarter 2026 Report").  The data during the first quarter of 2026 indicates continuing increases in correctional staffing across ADOC facilities.[2]  Between the fourth quarter of 2025 and the first quarter of 2026, ADOC expanded its correctional staff (excluding

---

[1] The State submits this filing in response to the Court's order.    (Docs. 3994 & 4281 at 6, cell III.B.2).    In doing so, the State expressly preserves any and all objections and all available legal and  equitable arguments in response to the Court's Phase 2A Omnibus Remedial Opinion (Docs. 3461, 3462, 3463, 3465), Phase 2A Omnibus Remedial Order (Doc. 3464), any other Phase 2A remedial orders, and the Court's Liability Opinion and Order as to Phase 2A Eighth Amendment Claim (Doc. 1285) and Phase 2A Supplemental Liability Opinion and Order on Periodic Mental-Health Evaluations of Prisoners in Segregation (Doc. 2332).    Nothing contained in this filing shall be construed as an admission by the State, a waiver of any objection to any opinion or order in this action, or a waiver of the State's pending appeal related to Phase 2A (see Doc. 3488). Nothing in this filing shall be construed as an admission of any kind by the State that ADOC's current or historical staffing or provision of mental-health care is or was unconstitutional or deficient in any way.  Moreover, the State contends the Phase 2A Omnibus Remedial Order expired by operation of law (see 18 U.S.C. § 3626(a)(2)), and all interim Phase 2A remedial orders similarly expired by operation of law and/or were vacated.  This issue remains on appeal before the United States Court of Appeals for the Eleventh Circuit.  Braggs v. Commissioner, Alabama Department of Corrections et. al., Nos. 22-10292, 22-10294, in the United States Court of Appeals for the Eleventh Circuit.  The State intends to continue working in good faith with Plaintiffs and this Court until it receives a ruling vacating the Phase 2A Remedial Order or otherwise declaring it inoperative.

[2] The State will refer to increases and decrease in staffing at the major facilities without providing specific numbers, as the January 2026 to March 2026 Quarterly Correctional Staffing Report remains under seal.

supervisors) by 2.01% and increased total correctional staff (including supervisors) by 1.39%. (Id.). The vacancy rate for statewide correctional staffing at ADOC's fourteen major facilities also dropped by 0.7%, reducing the overall vacancy rate to 45.6% for the first quarter of 2026.[3] (Id.). ADOC increased total staffing from 1,975.5 to 2,003 from January 1, 2026, to March 31, 2026. (Id.). This continues twelve consecutive quarters of growth and represents the highest staffing number since reporting began in 2018.

During the first quarter of 2026, security staff numbers grew at many of ADOC's fourteen major facilities. (Id.). As shown below in *Table 1*, three facilities increased security staff by nine or more. (Id.). Notably, Limestone Correctional Facility ("Limestone") increased security staff by twelve and one-half, Donaldson Correctional Facility ("Donaldson") increased security staff by nine, and Easterling Correctional Facility ("Easterling") increased security staff by nine. (Id.).

---

[3] For the sake of clarification, ADOC reports its vacancy rate on a "statewide" basis across the specific prisons consistent with the Parties' 2018 agreement on these reports in the format and with the content previously approved by the External Monitoring Team. The vacancy rate listed in the "Quarterly Correctional Staffing Report[s]" does *not* report or reflect the vacancy rate for "mandatory and essential posts." Moreover, as articulated previously by the State, the "Quarterly Correctional Staffing Report[s]," as ordered by the Court in February 2018 in the "Phase 2A Understaffing Remedial Order," Doc. 1657 (i.e. prior to the Omnibus Remedial Order and other key events), fails to account for additional security staff working in the relevant institutions and inappropriately the complete elimination of all overtime for security staff. Notably, the Omnibus Remedial Order as it pertains to "fill[ing]… mandatory and essential post" does not prohibit the State from assigning correctional staff working overtime to such posts. As such, the State expressly reserves all of its objections with respect to the methodology of measurement and/or the reported measurement of historic and/or current correctional staffing levels within the relevant institutions.

*Table 1*

| Correctional Facility | Quarter 4 2025 | Quarter 1 2026 | Increase in Staff |
|---|---|---|---|
| Donaldson | 192.5 | 201.5 | 9 |
| Easterling | 74.5 | 83.5 | 9 |
| Holman | 95 | 97.5 | 2.5 |
| Kilby | 186.5 | 192 | 5.5 |
| Limestone | 251.5 | 264 | 12.5 |
| St. Clair | 213 | 216 | 3 |
| Tutwiler | 150.5 | 151 | .5 |

As noted in the Fourth Quarter 2025 Report, ADOC employed 464 Correctional Officer Trainees ("COT"), and during the first quarter of 2026, ADOC employed 426 COTs. (Id.). During the first quarter of 2025, ADOC graduated the largest graduating class on record, graduating 144 Correctional Officers on April 3, 2025.[4] Ninety-two Correctional Officers graduated on June 18, 2025, 101 Correctional Officers graduated on September 11, 2025, and 136 Correctional Officers graduated on December 11, 2025.[5] In total, ADOC graduated 473 Correctional Officers in 2025, the highest number of graduates in a single calendar year in ADOC's history. ADOC's first graduating class of 2026 occurred in April 2026, graduating 132

---

[4] See ADOC Graduating Largest Correctional Officer Class on Record at https://doc.alabama.gov/NewsRelease.aspx?article=ADOC+GRADUATING+LARGEST+CORRECTIONAL+OFFICER+CLASS+ON+RECORD#:~:text=MONTGOMERY%2C%20Ala.,increased%20graduating%20officers%20since%202023.

[5] See ADOC Sets Record in 2025 for Graduating Officers Academy Class 2025-04 to Graduate 136 Correctional Officers – Total 473 for 2025 at https://doc.alabama.gov/NewsRelease.aspx?article=ADOC+SETS+RECORD+IN+2025+FOR+GRADUATING+OFFICERS%0D%0AACADEMY+CLASS+2025-04+TO+GRADUATE+136+CORRECTIONAL+OFFICERS+%E2%80%94+TOTAL+473+FOR+2025#:~:text=ADOC%20SETS%20RECORD%20IN%202025,MONTGOMERY%2C%20Ala.

Correctional Officers and beginning the year with continued growth.[6] Including first quarter 2026, ADOC increased correctional staffing for twelve consecutive quarters. (Doc. 4506-1). These sustained gains demonstrate ADOC's ongoing and consistent investment in expanding and strengthening its correctional workforce.

### B.    PLAINTIFFS' POSITION.

This lawsuit was filed on June 17, 2014 (Doc. 1). In June 2017, the Court issued its liability opinion (Doc. 1285). Shortly after issuing the liability opinion, the Court advised Defendants that understaffing "must be addressed at the outset" and "fully remedied before almost anything else can be fully remedied." Phase 2A Revised Remedy Scheduling Order on Eighth Amendment Claim (Doc. 1357) at 4. Today, after more than a decade, little progress has been made, and plaintiffs still await relief.

ADOC is critically understaffed. On June 1, 2026, defendants reported that, at the end of the first quarter of 2026, ADOC had a vacancy rate of 45.6%. That rate is inflated. ADOC's report includes correctional cubicle operators ("CCOs"), correctional security guards ("CSGs"), and part-time staff, totaling 458 positions. None of these positions count toward the required positions in the staffing

---

[6] See Gov. Ivey Hosts First ADOC Graduating Class of 2026, WSFA 12 NEWS (Apr. 20, 2026), https://www.wsfa.com/2026/04/21/gov-ivey-hosts-first-adoc-graduating-class-2026/.

analysis.[7]   Without these positions, the accurate vacancy rate is 58 percent. The vacancy rates for each male mental health hub exceed 50 percent.

|  | Actual Vacancy Rate | ADOC's Reported Vacancy Rate |
|---|---|---|
| Kilby | 51.4% | 40.2% |
| Donaldson | 60.3% | 50.6% |
| Bullock | 80.4% | 70.5% |

ADOC's mental health hubs house the most vulnerable of ADOC's population, as it relates to mental illness.  These are facilities where individuals have acute mental health concerns and are more likely to require transportation for treatment or experience mental health crises.  ADOC's mental health hubs must be adequately staffed. Bullocks' staffing deficiencies are extremely alarming.  ADOC reported 95 correctional staff (across all shifts) overseeing a population of 1,479 individuals.[8] Only 63 of these positions meet the staffing analysis criteria.  Bullock, which houses individuals in both the Stabilization Unit ("SU") and Residential Treatment Unit ("RTU"), should have a total of 322.17 officers.[9]

---

[7] 2022 Correctional Staffing Analysis Report, (Doc. 3928, Exh. A, filed under seal) at 12.

[8]  Alabama Dep't of Corr., ADOC Monthly Statistical Report 3 (Mar. 2026), https://doc.alabama.gov/docs/MonthlyRpts/March%202026.pdf.

[9] The SU "provides the highest level of intensive mental health services within the ADOC for inmates who either are experiencing severe psychiatric symptoms or remain at acute risk of harming themselves." ADOC Administrative Regulation 602, https://doc.alabama.gov/docs/AdminRegs/AR602.pdf at 15 (last visited Mar. 9, 2026). The RTU

**Altogether, ADOC has a shortage of 2,136 officers.**  This number excludes CCOs, CSGs, and part-time officers—positions that do not count per the staffing analysis.  Of positions that satisfy the staffing analysis, nearly 30 percent of ADOC's officers are in training.  Finally, 40 percent of ADOC's reported staff have been employed for less than 12 months.[10]

## II.    THE NET CHANGE IN TOTAL CORRECTIONAL STAFFING FROM THE FOURTH QUARTER 2025 REPORT.

### A.    THE STATE'S POSITION.

In March 2023, ADOC obtained approval to increase the starting salary for new officers to $50,712.00 at minimum custody facilities, $53,244.80 at medium custody facilities, and $55,855.20 at maximum custody facilities.  Effective September 1, 2023, ADOC secured additional authority to raise those starting salaries again to $51,727.20, $54,290.40, and $56,971.20 respectively. Additionally, correctional officers are eligible for a 27% pay increase after eighteen months with ADOC, resulting in potential annual earnings of up to $65,693.54 for

---

is a "specialized housing placement for treating inmates with serious mental illness who are at risk for psychiatric deterioration in a less-restrictive setting." Id. at 13.

[10] Length of employment is important for understanding staff training. ADOC provides annual training for security staff. The training should include training on mental health services.  Alabama Dep't of Corr., ADOC Administrative Regulation 608, https://doc.alabama.gov/docs/AdminRegs/AR608.pdf at 7 (last visited Mar. 9, 2026). Theoretically, an employee with more years of training should receive more training on mental health.

minimum custody facilities, $68,948.80 for medium custody facilities, and $72,353.42 at maximum custody facilities. (Doc. 4088 at 8).

Between 2019 to 2023, state correctional systems nationwide experienced an aggregate staffing decline of approximately twelve percent.[11] Since Fiscal Year 2023, ADOC invested $9,746,568 in recruitment and retention bonuses with approximately 660 employees eligible to receive up to an additional $1,800,000 in bonus compensation.[12] Following implementation of the approved compensation increases in April 2023, Correctional Officer resignations declined by an average of four percent per year, and voluntary turnover among COTs dropped by more than five percent per year.[13] ADOC's overall Correctional Officer turnover rate also remains lower than that of comparable states. For example, annual turnover rates for correctional officers in Florida, Georgia, Mississippi, Tennessee, and South Carolina exceed 35%, while Alabama's average annual turnover rate remains below 25% and fell to a low of 13.6% in Fiscal Year 2023.[14]

In 2023, ADOC collaborated with Rick Raemisch ("Raemisch") to identify strategies for increasing correctional staffing levels. On October 27, 2023, the

---

[11] See "A Study of the Correctional Officer Recruitment and Retention Efforts" Alabama Commission on the Evaluation of Services at https://evidence.alabama.gov/publications/correctional-officer-recruitment-retention-efforts/.

[12] Id.

[13] Id.

[14] Id.

Parties filed the Joint Statement on Correctional Staffing Recruiting and Retention outlining Raemisch's recommendations.   (Doc. 4062).   ADOC subsequently described the measures implemented in accordance with those recommendations, including retaining recruiting and retention consultants, participating in job fairs, hosting state-wide recruiting events, launching targeted digital marketing campaigns, and conducting weekly hiring events at four regional locations.  ADOC also established regional recruitment teams focused on hiring COTs and Correctional Security Guards ("CSGs").  (Doc. 4062 at 9).  ADOC held ninety-four total hiring events in 2023, compared to nineteen in 2022.  (Doc. 4182).  These efforts corresponded with a substantial increase in hiring activity.  In 2024, ADOC held 125 hiring events across the state in various locations.  In 2025, ADOC conducted 127 hiring events, and from the 2025 hiring events, ADOC hired 462 applicants.  During the first quarter of 2026, ADOC held nineteen hiring events, with a total turnout of 775 attendees.  These hiring events underscore ADOC's sustained commitment and dedication to recruiting and strengthening its workforce.

ADOC's combined recruiting initiatives and compensation increases yielded measurable results during the first quarter of 2026.  The April to June 2023 Quarterly Correctional Staffing Report dated September 1, 2023 ("Second Quarter 2023 Report"), documented ADOC's first net gain in correctional staff since the first quarter of 2021. (Doc. 4094-1).  The July to September 2023 Quarterly Correctional

9

Staffing report, filed December 1, 2023 ("Third Quarter 2023 Report"), showed a net gain of thirty-nine and one-half correctional staff over the second quarter of 2023. (Doc. 4141-1). ADOC achieved another net gain of forty-four correctional staff in the fourth quarter of 2023, as reflected in the October to December 2023 Quarterly Correctional Staffing Report filed on March 1, 2024 ("Fourth Quarter 2023 Report"). (Doc. 4183-1).

ADOC continued its positive trajectory throughout 2024 and 2025, achieving steady and sustained gains in correctional staffing. From January to March 2024, ADOC recorded a net gain of eighty-six and one-half correctional staff, as reflected in the First Quarterly Correctional Staffing Report filed on June 3, 2024 ("First Quarter 2024 Report"). (Doc. 4223-1). In the April to June 2024 Quarterly Correctional Staffing report filed on September 3, 2024 ("Second Quarter 2024 Report"), ADOC reported another net gain of sixty-five and one-half correctional staff. (Doc. 4266-1). This positive trend continued with a net gain of nineteen and one-half correctional staff as reported in the Third Quarter 2024 Report. (Doc. 4324-1). During the Fourth Quarter of 2024, ADOC increased correctional staffing by twenty-three and one-half correctional staff. (Doc. 4401-1).

The First Quarter 2025 Report reflects a net gain of thirty-six and one-half correctional staff. (Doc. 4360-1). ADOC then recorded a substantial increase of 136 correctional staff in the second quarter of 2025, followed by a further gain of

10

sixty-nine in the third quarter of 2025. (Doc. 4451-1). During the fourth quarter of 2025, ADOC added 113 correctional staff. (Doc. 4471-1). And lastly, ADOC added twenty-seven and a half correctional staff during the first quarter of 2026. (Doc. 4506-1). In total, these increases amount to a net gain of more than 707 correctional staff since the first quarter of 2023 and capping off twelve consecutive quarters of growth in ADOC's correctional staffing levels. (Id.).

Although Plaintiffs acknowledge that ADOC steadily increased the number of correctional officers to its staffing ranks throughout 2025 and into 2026, Plaintiffs continue to discount both the extensive steps ADOC undertakes to strengthen correctional staffing, and the tangible outcomes of ADOC's efforts, as reflected in the reported staffing data. During the first quarter of 2026, ADOC increased correctional staff in the following positions: Correctional Officers ("CO") increased by fifty-nine and Sr. Correctional Officers ("Sr. CO") increased by twenty-five. ADOC experienced a slight decrease in Correctional Cubicle Officers ("CCO") by four and Sr. Correctional Security Guard ("Sr. CSG") by one. Despite these limited reductions, the net increase in correctional staffing during the first quarter of 2026 demonstrates the continued effectiveness of ADOC's statewide recruitment and retention efforts.

## B.    PLAINTIFFS' POSITION.

At the end of the first quarter, defendants reported 27.5 more staff than in the previous quarter.   The turnover rate increased from 4.6% to 5.7%, with ADOC losing six (6) long-term supervisors.

## III.    ADOC'S PROGRESSION TOWARDS THE JULY 1, 2025, CORRECTIONAL STAFFING DEADLINE.

### A.    THE STATE'S POSITION.

As of March 31, 2026, ADOC employed 2,003 correctional staff at its major facilities, an increase of 564.5 officers since March 31, 2023.[15]   As discussed above, ADOC achieved twelve consecutive quarters of positive growth in its correctional staffing levels and continues its efforts to increase its correctional workforce.

ADOC continues to develop and refine its recruitment and retention initiatives through regular meetings with key personnel, including the Deputy Commissioner for Administrative Services and staffing consultants, to identify opportunities to improve hiring efficiency and bolster employee retention.   ADOC extends contingent offers to qualified applicants pending completion of all required pre-employment steps and completes the hiring process for a new COT in an average of thirty-five and a half days—well below the national average of forty-four days.

---

[15] These numbers do not include Private Security Guards ("PSG") contracted by ADOC to work non-contact posts at the major facilities, or posts filled by overtime.

12

In 2024, ADOC implemented a Field Training Officer ("FTO") Program to support COTs as they prepare for and complete the ADOC training academy.  By the fourth quarter 2025, ADOC filled all FTO positions and assigned all COTs a Field Training Sergeant ("FTS") to guide COTs from their start date through completion of the training academy.  ADOC also launched the ACTIVATE career readiness program in 2024 and graduated twenty-three students in the inaugural class.[16]  The ACTIVATE program represents a joint initiative between ADOC and the Alabama Community College System that provides a no-cost preparation course to prepare applicants for a career as a correctional officer.[17]  The ACTIVATE program assists prospective correctional officers who need additional physical conditioning or academic preparation to successfully complete academy requirements and meet ADOC's professional standards.[18]  ADOC partnered with Jefferson State Community College in Birmingham, Alabama, and Reid State Technical College in Evergreen, Alabama, to offer the six-week program. [19]  During

---

[16] See Alabama Department of Corrections and Alabama Community College System Celebrate Inaugural Graduation of Activate Career Readiness Program at https://doc.alabama.gov/NewsRelease.aspx?article=ALABAMA+DEPARTMENT+OF+CORRECTIONS+AND+ALABAMA+COMMUNITY+COLLEGE+SYSTEM+CELEBRATE+INAUGURAL+GRADUATION+OF+ACTIVATE+CAREER+READINESS+PROGRAM#:~:text=ACTIVATE%2C%20a%20joint%20initiative%20between,necessary%20to%20join%20the%20profession.

[17] Id.

[18] Id.

[19] Id.

the first quarter of 2026, ADOC hired twenty-one COs through the ACTIVATE program.

Plaintiffs' conclusory assertion that ADOC fails to "adequately staff its facilities" ignores the manner in which correctional staff are deployed across ADOC facilities. Plaintiffs' analysis depends solely on aggregate staffing figures and generalized allegations without addressing how ADOC utilizes correctional staff in practice. Contrary to Plaintiffs' assertions, ADOC continues to deploy sufficient staff to maintain the safe and secure operation of its facilities. Importantly, the Remedial Order requires ADOC to "fill all mandatory and essential posts," rather than maintain a specified number of correctional staff. (Doc. 3464 at § 2.1.4). In accordance with that requirement, ADOC continues to utilize overtime for correctional staff and PSGs to supplement staffing at major facilities and to cover mandatory and essential posts. As of March 31, 2026, ADOC deployed forty-three PSGs across facilities statewide. ADOC also continues to aggressively recruit, hire, and retain new correctional staff through ongoing compensation increases, improvements to the hiring process, and the strategic utilization of contract staff. Collectively, these efforts reflect the continued positive progress of ADOC's staffing initiatives.

14

### B.    PLAINTIFFS' POSITION.

July 1, 2026, marks one year past the Court's deadline for ADOC to fill all mandatory and essential posts. Defendants are in clear violation of the Court's order. At the end of this first quarter, the defendants need more than 2,000 officers to satisfy the staffing levels set forth in the staffing analysis. Even if the Court considered CCOs, CSGs, and part-time staff, the defendants would still need more than 1,600 officers to comply. As this Court is aware, ADOC's failure to adequately staff its facilities "hinders the delivery of mental-health care and poses a substantial risk of harm to prisoners who need mental-health care." Doc. 1285 at 59-60. Class members assert that the lack of correctional staff continues to affect their ability to seek care and to obtain out-of-cell time. For example, in Donaldson's Residential Treatment Unit ("RTU"), a class member reported that officers rarely take him out of his cell for recreation or therapy. In Donaldson's RHU, another class member reported that he frequently asks to speak to mental health staff but is denied. Additionally, suicides continue to occur. For 2023, ADOC's Quarterly Reports show that suicides occurred every month except May.[20] In some months, there were multiple suicides. For 2024, ADOC reported one suicide in January, three in March, and one in November. For 2025, there was one suicide in February and two in

---

[20] ADOC's Quarterly Reports can be found at https://doc.alabama.gov/StatReports.aspx.

15

December.  There was another suicide in February 2026.  Death investigations for 2025 and 2026 remain open.

## IV.    OTHER RETROSPECTIVE TRENDS AND PROGNOSIS IN THE FIRST QUARTER 2026 CORRECTIONAL STAFFING REPORT.

### A.    THE STATE'S POSITION.

Other retrospective trends further demonstrate positive outcomes from ADOC.  Compared to the Fourth Quarter 2025 Report, Limestone experienced the largest net increase by adding twelve and one-half new correctional staff. Donaldson, Easterling, and Kilby also recorded increases of correctional staff, by nine, nine, and five and one-half, respectively.  ADOC also continues to maintain a strong pipeline of COTs, with 426 COTs currently employed.  The increase in trainees reflects both the continued success of ADOC's recruiting efforts and the effective conversion of applicants into ADOC employees.

## V.    OTHER REVEALED INFORMATION BY THE FIRST QUARTER 2026 CORRECTIONAL STAFFING REPORT.

### A.    THE STATE'S POSITION.

The First Quarter 2026 Report reflects the efforts and investments ADOC, and the State made to increase correctional staffing.  ADOC enhanced its recruitment and retention initiatives by obtaining additional guidance from recruiting and retention consultants, while the State implemented unprecedented compensation increases for correctional staff.  Together, these coordinated actions demonstrate the

16

State's ongoing commitment to increasing the correctional workforce. The First Quarter 2026 Report further confirms the effectiveness of these initiatives. In the twelve quarters following the most recent pay increases, ADOC achieved improvements across nearly every key staffing metric, including increases in correctional officer staffing levels and corresponding declines in vacancy rates.

ADOC remains committed to developing reliable methods for tracking and reporting contract staff hours and correctional staff overtime hours for inclusion in its quarterly reports. Contract personnel support critical facility operations by serving in non-contact posts and assisting with inmate transports, hospital details, and other essential functions. Although the State does not include PSGs in the quarterly reports, the use of PSGs expands the overall post coverage by enabling correctional staff to fill more mandatory and critical posts.

Plaintiffs raise concerns regarding a projected future increase in the inmate population based upon estimates prepared by the Alabama Sentencing Commission. In doing so, however, Plaintiffs disregard the State's proactive efforts to evaluate and plan for potential population trends, efforts that should be viewed as responsible planning rather than grounds for criticism. Moreover, neither Plaintiffs nor the Sentencing Commission can predict with certainty the *actual* inmate population four years into the future, particularly considering the evolving legislative landscape and the many variables that may influence prison population levels in 2026, 2030, and

17

beyond.  For example, the impact of occupancy at newly constructed facilities on ADOC's overall staffing needs remain uncertain, including both the timing and extent of any such impact.

Plaintiffs' reliance on projected future population estimates likewise ignores the governing requirements imposed by the Remedial Order, which ADOC continues to comply with in good faith through the efforts described above.  The Remedial Order provides that, "ADOC must fill all mandatory and essential posts at the level indicated in the most recent staffing analysis at that time."  Doc. 3464 at 3. It does not require ADOC to maintain staffing levels based on speculative future projections.    In accordance with the Remedial Order, ADOC conducts a comprehensive staffing analysis every two years, specifically considering changes in available inmate beds and corresponding facility-specific staffing needs.  The Remedial Order therefore already provides a structured mechanism for addressing any future need for additional correctional staff should circumstances warrant.

Moreover, the Prison Litigation Reform Act ("PLRA") limits any prospective relief to correct a "current and ongoing violation." See 18 U.S.C § 3626(b)(3).  The PLRA does not permit relief based on speculation regarding future circumstances or projected population shifts.  Rather, relief must be supported by evidence of present conditions.  By emphasizing hypothetical future projections instead of current conditions, Plaintiffs disregard both the governing legal standard and the substantial

18

evidence demonstrating ongoing progress. As detailed in the First Quarter 2026 Report, ADOC continues to achieve measurable staffing improvements while maintaining a sustained institutional commitment to strengthening correctional operations throughout its facilities.

### B.   PLAINTIFFS' POSITION.

This quarter's report once again shows that ADOC is far from addressing correctional understaffing issues that directly impact the provision of mental health care within its facilities. The real implications of these deficiencies extend far beyond statistical data and rest in the lives of incarcerated individuals throughout ADOC. The outcome for plaintiffs with serious mental health needs is clear. There are still not enough officers to perform critical functions such as conducting thorough mental health rounds, transporting and supervising inmates during mental health appointments and programs, and ensuring adequate out-of-cell time.

Although Defendants project the construction of two new prisons in Elmore and Escambia counties, Defendants have not presented any information to Plaintiffs or the Court demonstrating that the new facilities will necessitate fewer correctional staff. According to the state legislature, the new prisons will replace (not decrease) existing beds, leaving a need for similar correctional staff.[21] Furthermore, the two

---

[21] Mike Cason, Bill to Let Alabama Borrow Another $500 Million for Prison Construction Advances, AL.COM (Feb. 18, 2024), https://www.al.com/news/2025/02/bill-to-let-alabama-borrow-another-500-million-for-prison-construction-advances.html.

facilities combined will only house 8,000 individuals, less than half of ADOC's total in-house population (21,214).[22] The remaining 13,000 individuals will remain at other facilities that require the same staffing needs. Moreover, Elmore's prison will not open until October 2026, if it is completed by then. Assuming there are no delays, Escambia's projected completion date for Phase One is January 2029.[23] In the meantime, the need for more than 2,000 correctional officers remains.

Moreover, Alabama's Sentencing Commission forecasts that the state prison population may increase by 33% within four years. "The commission, working with Applied Research Services, a research firm that studies criminal justice, estimated the population in custody of Alabama Department of Corrections could grow from 21,753 to between 24,000 and 28,00 inmates."[24] Such a dramatic increase will necessitate more staff. After over ten years of litigation, ADOC has demonstrated that it cannot meet the staff levels already mandated and should not be expected to secure the additional officers required to support such an increase.

---

[22] Alabama Dep't of Corr., ADOC Monthly Statistical Report 3 (Mar. 2026), https://doc.alabama.gov/docs/MonthlyRpts/March%202026.pdf. The in-house population varies from month-to-month but has been consistently more than 20,000 individuals for at least a year.
[23] Alexander Willis, Funding for Alabama's Second 4,000-Bed Prison 60% Secured, Leaders Say, ALABAMA DAILY NEWS (Jan. 22, 2025), https://aldailynews.com/funding-for-alabamas-second-4000-bed-prison-60-secured-leaders-say/.
[24] Ralph Chapoca, Alabama state prison population could rise by a third by 2030, ALABAMA REFLECTOR (Sept. 29, 2025), https://alabamareflector.com/2025/09/29/alabama-state-prison-population-could-rise-by-a-third-by-2030/.

Finally, it is important to note that ADOC will partially fund its new prisons by diverting funds set aside for hiring correctional officers, leaving less money to staff them.[25]   When discussing how the state will fund its second new prison, Alabama Senator Greg Albritton revealed, "We have been able, in our fat years, to capture monies in accounts, mostly conditionals and such; for example, we have been trying to hire people (for the Alabama Department of Corrections), and we haven't been able to…But every year we've been setting aside $40-$50 million to fund hiring new people. So we've been putting that away for the intention of hiring. Well, we haven't been able to hire any folks, so I'm not going to let that sit there, so we scraped that in[to]" the construction budget.[26]   This statement suggests that, with funds redirected from hiring to construction, ADOC will not be able to adequately staff its facilities any time soon.

---

[25] Alexander Willis, Funding for Alabama's Second 4,000-Bed Prison 60% Secured, Leaders Say, ALABAMA DAILY NEWS (Jan. 22, 2025), https://aldailynews.com/funding-for-alabamas-second-4000-bed-prison-60-secured-leaders-say/.
[26] Id.

Dated: June 8, 2026.

/s/ William R. Lunsford
William R. Lunsford

*One of the attorneys for the State*

William R. Lunsford
Kenneth S. Steely
Daniel J. Chism
Lynette E. Potter
Megan M. Everett
**BUTLER SNOW LLP**
200 West Side Square
Huntsville, AL 35801
Telephone: (256) 936-5650
Facsimile: (256) 936-5651
bill.lunsford@butlersnow.com
kenneth.steely@butlersnow.com
daniel.chism@butlersnow.com
lynette.potter@butlersnow.com
megan.everett@butlersnow.com

**ATTORNEYS FOR THE STATE**

/s/ Latasha McCrary Dejarnett
Latasha McCrary Dejarnett

*One of the attorneys for the Plaintiffs*

Lisa W. Borden
Latasha L. McCrary Dejarnett
**SOUTHERN POVERTY LAW CENTER**
400 Washington Avenue
Montgomery, AL 36104
Telephone: (334) 956-8200
Facsimile: (334) 956-8481
lisa.borden@splcenter.org
latasha.dejarnett@splcenter.org

22

Emily B. Lubin*
Julia T. Mudd*
**SOUTHERN POVERTY LAW CENTER**
201 St. Charles Ave. Suite 2000
New Orleans, LA 70170
Telephone: (504) 401-2291
Emily.Lubin@splcenter.org
Julia.Mudd@splcenter.org
*Admitted pro hac vice*

Andrew Udelsman*
**SOUTHERN POVERTY LAW CENTER**
2 South Biscayne Blvd.
Suite 3750
Miami, FL 33131
Telephone: (786) 742-9397
Andrew.udelsman@splcenter.org
*Admitted pro hac vice*

Lonnie J. Williams
Barbara A. Lawrence
Andrea J. Mixson
Larry G. Canada
**ALABAMA DISABILITIES
ADVOCACY PROGRAM**
2008 12th Street
Tuscaloosa, AL 35401
Telephone: (205) 348-6894
lcanada@adap.ua.edu
lwilliams@adap.ua.edu
blawrence@adap.ua.edu
amixson@adap.ua.edu

Catherine E. Stetson*
Neal K. Katyal*
Jo-Ann T. Sagar*
**HOGAN LOVELLS US LLP**
555 Thirteenth Street, NW
Washington, DC 20004

23

Telephone: (202) 637-5600
Facsimile: (202) 637-5910
cate.stetson@hoganlovells.com
neal.katyal@hoganlovells.com
jo-ann.sagar@hoganlovells.com
*Admitted pro hac vice*

Joshua C. Toll*
**KING & SPALDING LLP**
1700 Pennsylvania Avenue NW, 2nd
Floor
Washington, DC 20006-4707
Telephone: (202) 227-6138
Facsimile: (202) 626-3737
jtoll@kslaw.com
*Admitted pro hac vice*

Deana Johnson*
Brett T. Lane
**MHM Services, Inc.**
1447 Peachtree Street NE
Suite 500
Atlanta, GA 30309
Telephone: (404) 347-4134
djohnson@mhm-services.com
btlane@mhm-services.com
*Admitted pro hac vice*

**ATTORNEYS FOR THE
PLAINTIFFS**


Anil A. Mujumdar
**DAGNEY JOHNSON LAW GROUP**
2170 Highland Avenue, Suite 250
Birmingham, AL 35213
Telephone: (205) 590-6986
Facsimile: (205) 809-7899
anil@dagneylaw.com

24

25

**ATTORNEY FOR PLAINTIFF
ALABAMA DISABILITIES
ADVOCACY PROGRAM**