IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:14cv601-MHT |
| | ) | (WO) |
| COMMISSIONER OF THE ALABAMA DEPARTMENT OF CORRECTIONS, in his/her official capacity, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## PHASE 2A ORDER REGARDING EFFECT OF APPELLATE RULING ON MONITORING

This order provides guidance to the parties and to the external monitoring team (EMT) regarding the impact on ‘monitoring’ of the United States Court of Appeals for the Eleventh Circuit’s reversal of three limited aspects of the remedial scheme imposed by this court. *See Dunn v. Comm’r, Ala. Dep’t of Corr.*, 179 F.4th 1277 (11th Cir. 2026). This order stays monitoring of affected provisions’ associated performance measures

and audit tools. The court does not address 'modification' of the relevant provisions at this time and reserves judgment on any broader implications of the Eleventh Circuit's ruling on the remedial scheme.

The circuit declined to stay any provisions of the Omnibus Remedial Order while the appeal was pending, and most of the remedial scheme remains unaffected. *See* District Court Copy of Circuit Order Denying Stay (Doc. 3537) at 2. It is imperative that monitoring of the remaining remedial provisions proceed without further delay. As this court recently emphasized, monitoring is key to bringing more than a decade of litigation to a close. *See Braggs v. Lovelace (Objections Opinion)*, No. 2:14CV601-MHT, 2026 WL 2839260, at *2 (M.D. Ala. Sept. 22, 2026) (Doc. 4603) at 7.

# I. BACKGROUND

On June 25, 2026, the Eleventh Circuit ruled on the appeal and cross-appeal in this case. *See generally Dunn*, 179 F.4th 1277. The appeals court affirmed in whole the Liability Opinion, which finds that the Alabama Department of Corrections (ADOC) provision of inadequate mental-health care violates the Eighth Amendment. *See generally Braggs v. Dunn (Liability Opinion)*, 257 F. Supp. 3d 1171, 1267 (M.D. Ala. 2017) (Thompson, J.), *aff'd sub nom. Dunn*, 179 F.4th at 1314. It also affirmed the Monitoring Opinion, which establishes that ADOC operations require monitoring to ensure compliance with the Omnibus Remedial Order. *See Braggs v. Dunn (Monitoring Opinion)*, 483 F. Supp. 3d 1136, 1140 (M.D. Ala 2020) (Thompson, J.), *aff'd sub nom. Dunn*, 179 F.4th 1277.

Finally, the Eleventh Circuit affirmed the Omnibus Remedial Opinion and Order, except for three limited aspects of the relief. The remedial opinion includes

comprehensive findings about the factors that contribute to ADOC's systemically inadequate mental-health care. *See Braggs v. Dunn (Omnibus Remedial Opinion and Order)*, 562 F. Supp. 3d 1178 (M.D. Ala. 2021) (Thompson, J.), *aff'd in part and rev'd in part sub nom. Dunn*, 179 F.4th 1277. The order contains the remedial provisions that constitute prospective relief. *See id.* at 1257. These provisions fall under the Prison Litigation Reform Act (PLRA), which dictates that district courts "shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right." 18 U.S.C. § 3626(a)(1)(A). This provision is colloquially known as the 'need-narrowness-intrusiveness' requirement.

The circuit found that this court exceeded the PLRA by awarding greater relief than necessary to correct

the Eighth Amendment violations in three discrete ways: (1) requiring ADOC to fill all 'mandatory and essential' posts at the level indicated in the most recent staffing analysis; (2) requiring ADOC to suicide-proof all stabilization units, restricted housing units, and suicide-watch cells according to the Lindsay M. Hayes Checklist for suicide prevention; and (3) failing to exempt the Julia Tutwiler Prison for Women from the remedial provisions regarding "monitoring, mental healthcare in segregation, the number of crisis cells, residential treatment units, and suicide-watch placements." *Dunn*, 179 F.4th at 1320. The Eleventh Circuit directed this court on remand to "modify the injunctive relief consistent with [its] opinion." *Id.* at 1323.

## II. AFFECTED REMEDIAL PROVISIONS

The court addresses the three areas of relief reversed by the Eleventh Circuit separately. This

court stays the monitoring of a narrow set of provisions related to the 'mandatory and essential' staffing requirements and to the requirement to suicide proof cells according to the Lindsay M. Hayes Checklist. With regard to monitoring of Tutwiler, the court issues a more expansive stay of monitoring.

### A. 'Mandatory and Essential Posts'

The court begins with the 'mandatory and essential' staffing requirement. On appeal, the Eleventh Circuit found that the requirement to "fill all mandatory and essential [correctional staffing] posts" by July 1, 2025, "exceeds the requirements of the PLRA." *Dunn*, 179 F.4th at 1316.

'Mandatory and essential' staff were identified in the staffing analysis completed by Margaret and Merle Savage and meant to reflect the staff required to ensure that ADOC prisons could safely operate in non-lockdown status. *See Omnibus Remedial Opinion and Order*, 562 F. Supp. 3d at 1223. The Eleventh Circuit

reasoned that because "essential posts are those that are needed for normal operations" and because "normal operations include recreation activities and vocational and educational systems," the requirement goes further than necessary to correct the inadequate provision of mental-health care. *Dunn*, 179 F.4th at 1316. (internal quotation marks omitted). Simultaneously, the circuit court found no clear error in this court's "extensive factual findings" that understaffing is one of the factors that led to incarcerated people being "effectively denied access to adequate medical care." *Id.* at 1314 (quoting *Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991)). Any modified relief must thus strike a careful balance between addressing "systemic deficiencies" and being narrowly tailored to ensure the provision of constitutionally adequate mental-health care. *Id.* at 1314, 1316.

**The parties agree that the Eleventh Circuit's decision impacts the following provisions from the Omnibus Remedial Order:**

- **2.1.4 - By July 1, 2025, ADOC must fill all mandatory and essential posts at the level indicated in the most recent staffing analysis at that time.**
- **2.1.5 – By May 2, 2022, the defendants must develop in collaboration with the Savages, and submit to the court, realistic benchmarks for the level of correctional staffing ADOC will attain by December 31 of 2022, 2023, and 2024. These benchmarks must prioritize filling mandatory posts and staffing the mental health hubs and intake facilities, and must put ADOC on track to fill all mandatory and essential posts by July 1, 2025.**

**Omnibus Remedial Order (Doc. 3464) at 3-4. The parties disagree about whether the Eleventh Circuit's decision also impacts the following provision:**

> **2.1.6 – ADOC must submit correctional staffing reports to the court and the EMT on at least a quarterly basis. It may work with the EMT to develop the format of these reports. However, until ADOC and the EMT have finalized a new report format or else concluded that the existing report format is adequate, ADOC shall continue to provide mental-health staffing reports according to the format currently in place.**

*Id.* at 4. The defendants argue that provision 2.1.6 is affected because it "exists solely to facilitate monitoring of the correctional staffing obligations in section 2.1.4 that the Eleventh Circuit reversed." Defs.' Pre-Arg. Br. (Doc. 4538) at 7. The plaintiffs disagree. They contend that the reporting requirement is based on the court's findings about how system-wide understaffing contributes to inadequate mental-health care. *See* Pl.'s Resp. to Defs.' Pre-Argument Br. (Doc. 4547) at 3-4.

The court agrees with the plaintiffs. The correctional staffing reports show the total number of staff across all ADOC facilities, not how many staff members are hired for specific "mandatory" or "essential" posts. As such, the reports facilitate tracking the "systemic deficiencies" in understaffing that form the backbone of the court's relief. *Dunn*, 179 F.4th at 1314. The staffing reports also

illuminate any successful mitigation of systemic deficiencies by ADOC.

While the requirement to fill 'mandatory and essential' posts exceeded PLRA's need-arrowness-intrusiveness requirement, this remains a case that involves institutional and system-wide Eighth Amendment claims and staffing inadequacies "permeate each of the ... identified contributing factors of inadequate mental-health care." *Liability Opinion*, 257 F. Supp. 3d at 1268.

Because the staffing reports described in provision 2.1.6 do not target the reversed 'mandatory and essential' posts requirement, both implementation and monitoring of that provision shall proceed. Only the EMT's monitoring of the performance measures and audit tools associated with remedial provisions 2.1.4 and 2.1.5 are stayed.

### B. Hayes Checklist

The Eleventh Circuit also ruled that "the district court's mandate that [A]DOC suicide-proof all stabilization units, restricted housing units, and suicide-watch cells according to the Hayes Checklist ... goes too far." *Dunn*, 179 F.4th at 1316. The Lindsay M. Hayes Checklist for the "Suicide Resistant" Design of Correctional Facilities (Doc. 3206-5) is "a set of best practices for suicide-proofing a cell." *Id.* (internal quotations omitted). However, because "the Eighth Amendment does not guarantee best practices," conformity with the Hayes Checklist for cells across the three units "even if they [are] not used to house potentially suicidal inmates," is not constitutionally required. *Id.*

The parties agree that the following provisions of the Omnibus Remedial Order are affected by the Eleventh Circuit's ruling:

- 2.1.7.1 – ADOC must check SU, suicide watch, and RHU cells for suicide resistance whenever such cells receive new occupants.[1]

- 2.1.7.2 – ADOC must conduct a thorough check of all SU, suicide watch and RHU cells at least once per quarter to verify that they satisfy every element of Lindsey M. Hayes' Checklist. The checks must be documented.

- 3.7.3 – Within six months of the effective date, all cells in the RHUs must comply with the conditions set forth in the checklist developed by Lindsey M. Hayes.

- 10.3.1 – All suicide watch and stabilization unit cells in ADOC major facilities must be suicide-resistant. On a quarterly basis during the term of this order, all suicide watch cells in ADOC major facilities must be physically inspected to determine whether they remain suicide-resistant.[2]

- 10.3.1.1 – Cells shall be deemed suicide-resistant if they meet the requirements set forth in Lindsay M. Hayes' Checklist of the

---

1. Even though the Hayes Checklist is not named in provision 2.1.7.1, the parties agree that it incorporates the checklist.

2. The parties agree that monitoring of this provision is affected because the corresponding performance measure requires compliance with the Hayes Checklist.

"Suicide Resistant" Design of Correctional Facilities.

*See Omnibus Remedial Order* (Doc. 3464) at 5, 16, and 29-30.

The court stays monitoring of the performance measures and audit tools related to provisions 2.1.7.1, 2.1.7.2, 3.7.3, 10.3.1, and 10.3.1.1.

### C. Julia Tutwiler Prison for Women

Lastly, the Eleventh Circuit held that certain remedial provisions should not apply to the Julia Tutwiler Prison for Women because this court's findings for Tutwiler were more limited than those for other facilities. The record showed, according to the circuit, that while Tutwiler has issues with "inadequate identification and classification of mental-health needs, inadequate screening for suicide risk, and inadequate psychotherapy," the women's prison does not suffer from the same deficiencies as the male facilities when it comes to "number of crisis cells,

suicide-watch placements, segregation placements, and treatment and monitoring available in segregation." *Dunn*, 179 F.4th at 1320. The Eleventh Circuit "set aside the remedial provisions about monitoring, mental healthcare in segregation, the number of crisis cells, residential treatment units, and suicide-watch placements" as applied to Tutwiler. *Id.*

The parties disagree about what this ruling means. Specifically, they disagree about the extent to which Tutwiler should be exempted from external monitoring. The defendants argue that *all* monitoring of Tutwiler was set aside. *See* Defs.' Br. on Tutwiler (Doc. 4578) at 4. And they go one step further, arguing that because monitoring was set aside and monitoring functions only to enforce the remedial order, by implication Tutwiler must also be excised entirely from the remedial order. *See id.* at 5. The plaintiffs argue that the Eleventh Circuit set aside only a portion of the relief related to Tutwiler;

specifically, remedial provisions about "monitoring [of inmates in segregation], mental healthcare in segregation, the number of crisis cells, residential treatment units, and suicide-watch placements." Pls.' Br. on Tutwiler (Doc. 4577) at 2. The plaintiffs believe that the ruling covers remedial provisions 3.1.1, 3.2.1, 3.2.2, 3.2.3, 3.4.1, 3.4.2, 3.4.3, 3.4.4, 3.6.1, 3.6.2, 3.6.3, 9.2, and 10.2. The defendants counter (assuming arguendo that monitoring is permitted) that the list is much longer.

The court will stay all monitoring, performance measures, and audit tools related to Tutwiler while it determines which remedial provisions and associated performance measures are "necessary to correct the constitutional violation at issue" for Tutwiler. *See Dunn*, 179 F.4th at 1320.

***

Accordingly, it is ORDERED that:

(1) Pursuant to the Eleventh Circuit's reversal of remedial provisions regarding 'mandatory and essential' posts and the suicide proofing of all stabilization units, restricted housing units, and suicide watch cells according to the Hayes Checklist, the court stays monitoring of the performance measures and audit tools associated with remedial provisions: 2.1.4, 2.1.5, 2.1.7.1, 2.1.7.2, 3.7.3, 10.3.1, and 10.3.1.1.

(2) Pursuant to the Eleventh Circuit's ruling on remedial provisions about "monitoring, mental healthcare in segregation, the number of crisis cells, residential treatment units, and suicide-watch placements," *Dunn v. Comm'r, Ala. Dep't of Corr.*, 179 F.4th 1277, 1320 (11th Cir. 2026), at the Julia Tutwiler Prison for Women, all monitoring of Tutwiler is stayed.

DONE, this the 2nd day of November, 2026.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE