IN THE DISTRICT COURT OF THE UNITED STATES FOR THE
MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

| | | |
|---|---|---|
| EDWARD BRAGGS, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | CIVIL ACTION NO. |
| v. | ) | 2:14cv601-MHT |
| | ) | (WO) |
| COMMISSIONER OF THE ALABAMA DEPARTMENT OF CORRECTIONS, in his/her official capacity, et al., | ) | |
| | ) | |
| Defendants. | ) | |

PHASE 2A OPINION AND ORDER REGARDING
FUNDING OF EXTERNAL MONITORING TEAM

This matter is before the court on an issue related to monitoring: the anticipated request to increase the budget of the External Monitoring Team (EMT). The court ordered the parties to submit a joint proposed order directing the EMT to submit a formal funding request to the court, which it did. *See* Order (Doc. 4550); *see also* Joint Proposed Order (Doc. 4584). Based on

representations and submissions of the parties, the court adopts a modified version of the joint proposed order directing the EMT to submit a budget justifying the scope of its request.

This case is a long-standing class-action lawsuit about mental-health care in Alabama's prisons. Not only are the problems at the heart of this litigation longstanding, it has been almost a decade since this court found that the Alabama Department of Corrections (ADOC) was providing "horrendously inadequate" mental-health care to prisoners, in violation of the Eighth Amendment. *Braggs v. Dunn*, 257 F. Supp. 3d 1171, 1267 (M.D. Ala. 2017) (Thompson, J.), *aff'd in part and rev'd in part sub nom. Dunn v. Comm'r, Ala. Dep't of Corr.*, 179 F.4th 1277, 1314 (11th Cir. 2026).

To bring ADOC into long-term constitutional compliance, the court ordered a hybrid monitoring scheme divided into three phases. *See Braggs v. Dunn*, 483 F.

Supp. 3d 1136, 1142 (M.D. Ala. 2020) (Thompson, J.), *aff'd sub nom. Dunn*, 179 F.4th 1277. In phase one, the EMT will assess and monitor ADOC's compliance with the court's remedial orders. *See id.* In phase two, the EMT will begin training the internal monitoring team (IMT). *See id.* Finally, in phase three, the IMT will take on the role of monitoring ADOC itself. *See id.* This model will "facilitate a more effective, less intrusive process and avoid an indeterminate period of external monitoring." *Id.* at 1141. Across these phases, monitoring will consist of "five essential components": "document review," "observation," "feedback," "consultation," and "handoff to ADOC." *Id.* at 1142, 1153-63.

To truly comprehend the complexity of the EMT's role, it is necessary to highlight the deeply entrenched nature of the Eighth Amendment violations in this case, the iterative nature of the monitoring scheme, and the scale

of the ADOC system. The EMT is tasked with monitoring at least 14 facilities that collectively house more than 19,000 people, including thousands of people who are on the mental-health caseload. *See Braggs*, 257 F. Supp. 3d at 1181. This is no small task. Bringing even one ADOC facility into constitutional compliance will require herculean effort by the monitoring team. And because the constitutional violations in this case occur "at an institutional and system-wide level," that effort must be interrelated and systemwide. *Dunn v. Comm'r, Ala. Dep't of Corr.*, 179 F.4th 1277, 1312 (11th Cir. 2026).

Further, because the eventual goal of the monitoring scheme is to ensure that ADOC can self-monitor, the EMT must fill three distinct yet equally critical roles that go beyond those expected of a traditional monitor.

First, in its oversight role, the EMT must carry out three of the five essential components of monitoring: "document review," "observation" (that is, "site

visits"), and "feedback." *See Braggs*, 483 F. Supp. 3d at 1154-60. With "feedback," the EMT is "to inform the court and parties of [ADOC's] compliance with remedial orders and the Constitution" and "may ... advise [ADOC} on best practices, policy, and more." *Id.* at 1158. The EMT will, therefore, gather and analyze information related to deficiencies in the provision of mental-health care across ADOC facilities, work collaboratively with ADOC to help it cure these deficiencies, and, ultimately, distill this information to the court so it can "assess whether ADOC has made sufficient progress in curing the long-standing constitutional defects at the heart of this litigation." *Braggs v. Lovelace*, __ F.Supp.3d __, __, 2026 WL 2839260, *3 (M.D. Ala. 2026) (Thompson, J).

Second, "in its role as teacher, the EMT must 'ensure that the IMT not only receives the necessary training, but also that it is capable of executing the work of monitoring in accordance with that training.'" *Id. at*

*3 (citing *Braggs*, 483 F. Supp. 3d at 1161). This role encompasses two of the "essential components" of monitoring: "consultation" and "handoff to ADOC." *See Braggs*, 483 F. Supp. 3d at 1160-63. "'Consultation' refers to the EMT's actions to teach the defendants how to self-monitor." *Id.* at 1160. "The consultation element of monitoring is particularly critical in light of the admission of the defendants that ADOC lacks the 'training' to self-monitor." *Id.* at 1161. As with oversight, this charge is immense. Therefore, the EMT must have the resources to develop comprehensive training materials, conduct the training itself, and supervise the IMT as it begins monitoring.

"Handoff to ADOC" means the handoff to ADOC "to monitor itself going forward." *Id.* at 1142. It "involves two central issues": the "transfer [of] primary monitoring" from the EMT to the IMT and the termination of court monitoring itself. *Id.* at 1161. The court

discussed these two issues at length in its monitoring opinion. *Id.* at 1161-67.

Third, in its role as expert, the EMT will perform additional work on discrete projects. This includes developing, in consultation with ADOC, the formatting of reports and matrices. It also includes addressing real-world challenges as they arise. *See, e.g.*, *Braggs v. Dunn*, 562 F. Supp. 3d 1178, 1268 (2021) (Thompson, J.), *aff'd in part and rev'd in part sub nom. Dunn*, 179 F.4th 1277. Finding concrete solutions to unforeseen problems, innovating, and adapting may seem minor in isolation. But given the scope and scale of the EMT's two other roles, it is essential that the EMT has the resources to ensure these additional tasks do not fall by the wayside. Although the court did not explicitly name this function when enumerating some of the essential components of monitoring in the monitoring opinion, *see Braggs*, 483 F. Supp. 3d at 1153-63, it has already and

will continue, nonetheless, to turn to the EMT for its unique expertise as issues inevitably arise throughout the monitoring period. *See, e.g.*, Revised Remedy Scheduling Order on Phase 1 ADA Claims and Phase 2A Eighth Amendment Claim (Doc. 4644) at 8, cell II.D.4, 9-10, cell II.E.4 (parties and court relying on EMT to evaluate adequacy of correctional and mental-health staffing reports and recommend revisions); *id.* at 10, cell II.E.5 (parties and court relying on EMT to review mental-health-staffing ratios and recommend revisions); *id.* at 13, cell II.G.1 (parties and court relying on EMT to help ADOC annually reassess accuracy of total estimated number of inmates on mental-health caseload and percentage requiring inpatient treatment).

In sum, the EMT must have the resources and personnel to be effective in each of its three roles. The EMT's budget for the remedial scheme will necessarily reflect this need.

Because monitoring has not yet begun, there are currently only four members on the EMT. It has an annual operating budget of $ 1,400,000. The court explicitly left it to the EMT, as the expert, to determine whether, when, and how many additional members or support staff would be necessary to carry out the remedial order once monitoring finally begins. *See Braggs*, 483 F. Supp. 3d at 1145. The EMT was directed to "ask the court to appoint additional members, either on an ad hoc or permanent basis." *Id.* Nevertheless, the EMT is, by no means, handed a blank check. But with monitoring set to begin soon, it is essential that the EMT receive the funding it needs to carry out its mandate.

***

Accordingly, it is ORDERED that:

(1) Within 21 days of this order, the EMT may submit to the court a single written request identifying all additional personnel, resources, and funding it requests ("the Request") in accordance with the following:

A. *Definitions and scope.* The Request shall not incorporate informal communications, estimates, or presentations shared or exchanged during mediation. For purposes of this order:

i. "*Requested Personnel*" includes every person or position beyond the four currently appointed EMT members whose work would be funded through the EMT budget or otherwise paid by the State, regardless of whether the EMT describes the person as an additional EMT member, support staff member, employee, independent contractor, subcontractor, consultant, data specialist, administrative employee, or by another title.

ii. "*Requested Funding*" includes all compensation and associated costs not included in the EMT's current estimated budget, (Doc. 4460) at 4, including increased hours or rates for current EMT members; salaries; professional fees; payroll taxes; benefits; travel time; transportation, lodging, and meals; equipment; software; office or records-storage costs; recruitment costs; training; administrative charges; overhead; and any other direct or indirect expense.

iii. The Request shall distinguish between:

1. additional court-appointed EMT members;

2. support personnel working under an existing EMT member's supervision; and

3. any other contractor, employee, or service provider. The Request shall identify the legal and administrative mechanism by

which the EMT proposes to retain, supervise, compensate, and terminate each person.

B. *Required organization and level of detail.* The EMT shall address each additional Requested Personnel or Requested Funding separately.

i. The Request shall begin with a summary table listing, for every Requested Personnel or position: name (if known); title and discipline; supervisor; proposed start date and duration; projected hours; hourly rate or salary; projected expenses; first-year cost; recurring annual cost; and not-to-exceed amount.

ii. If any required information remains unavailable, the EMT shall identify the missing information and explain why the missing information could not be obtained before filing the Request.

C. *Current scope of monitoring.* In its Phase 2A

Opinion Regarding the Effect of the Appellate Ruling on Monitoring (Doc. 4635), the court stayed a subset of provisions related to *monitoring*. The request should reflect this stay. Counsel are directed to provide the EMT a copy of the stay opinion. Also, the court is aware that, considering the upcoming evidentiary hearings on these stayed provisions, it may be necessary to modify the request.

D. *Justification and Explanation of Additional Needs.* The EMT shall provide a detailed, written justification or explanation as to why each Requested Personnel is needed and how the EMT arrived at its conclusions. The EMT shall also:

i. Identify any workload, staffing, timing, or cost assumption underlying the existing four-member monitoring structure that proved impracticable and explain why;

ii. State the cause for the Request;

iii. Identify each monitoring task that the EMT cannot timely or adequately perform with its present composition and budget; and

iv. State whether the asserted need for Requested Personnel or Requested Funding is temporary, recurring, or permanent and identify the event or objective criterion that would end the need.

E. *Position-specific justification.* For every Requested Personnel, the EMT shall provide:

i. The exact title, discipline, employment or contracting status, reporting line, supervisor, and whether the position would be ad hoc, temporary, part-time, full-time, or permanent;

ii. A task-by-task description of the proposed responsibilities and deliverables (e.g., remedial provisions, performance measures, facilities, site visits, and report sections to which each task

relates);

iii. The projected hours for each task by week, month, and year; anticipated site visits; travel hours; meeting hours; review hours; report-writing hours; and administrative hours;

iv. The work that would not be completed, or would be materially delayed, if the position were not approved;

v. An explanation of why the assigned duties cannot be performed by a current EMT member, reassigned among current members, combined with the duties of another Requested Personnel, performed on an ad hoc basis, automated, sampled, or otherwise accomplished through a less costly or less intrusive method;

vi. Measures to be taken by the EMT to prevent duplication among current members and Requested Personnel; and

vii. Steps to be taken by the EMT to prevent inconsistency in monitoring activities, standards and reporting.

F. *Compensation and complete cost.* For each Requested Personnel, the EMT shall provide:

i. The exact hourly rate, salary, or other compensation formula (e.g. billing increment; minimum charge; rate for travel time; overtime or premium rate; cancellation charge; annual escalation; and all other compensation terms);

ii. All projected expenses and indirect costs (e.g. payroll taxes, benefits, insurance, recruitment, equipment, software, office space, records storage, training, transportation, lodging, meals, administrative charges, and overhead, together with any markup);

iii. The expected first-year cost, recurring annual cost, maximum annual cost, and total

projected cost through the anticipated end of monitoring or, if no end date can be estimated, for the next three years;

iv. The assumptions and formulas used to calculate hours, utilization, expenses, and totals; and

v. Whether there is flexibility in the proposed rate and if it is subject to negotiation.

G. *Line-item budget.* The EMT shall attach a current line-item budget (including the Requested Personnel and Requested Funding) ("Budget"). On the date of filing, the EMT shall provide the parties the Budget in native spreadsheet format with formulas intact.

H. *Alternatives.* The EMT shall analyze reasonable alternatives to the full Request and describe all alternative methods that the EMT considered to perform monitoring more efficiently to

avoid or reduce the need for additional Requested Personnel or Requested Funding. The Request shall identify the estimated cost, expected effect on timeliness and quality, and the reason the EMT ultimately rejected each alternative method considered. At a minimum, the EMT shall describe alternative methods of monitoring considered that fall under the following categories:

i. Coordination of facility visits and interviews across disciplines;

ii. Remote review, sampling, chart-sharing, targeted document review, and other methods of reducing travel or duplicative file review;

iii. Standardized data requests, audit tools, report templates, workpapers, and internal review procedures;

iv. Reallocation of tasks among current EMT members, use of shared administrative support, and

elimination or consolidation of overlapping work;

v. Use of information already produced by ADOC, its contractors, or other sources rather than duplicating collection or analysis;

vi. Technology, software, scheduling practices, and project-management tools; and

vii. Requests made to the parties or the court for process changes, access, data, scheduling, or other assistance that could reduce workload or cost.

viii. The EMT shall also:

1. Identify the minimum Requested Personnel and funding that the EMT contends would materially address the need; and

2. Propose any phased approval, hours cap, budget cap, reporting requirement, or sunset provision that would permit the court to test the asserted need before authorizing

a recurring expansion.

I. *Supporting materials and certification.* The EMT shall attach the materials on which it relies. Additionally, each current EMT member shall sign the Request and confirm if they are in agreement.

J. *No interim authority.* Nothing in this order authorizes the retention of any additional EMT members at this time.

K. *Responses.* The Court will review the EMT's Request and determine whether any additional filings or a hearing is necessary.

L. *Procedure for filing.* The EMT may provide the Request to the parties contemporaneously by the deadline established above. The parties will jointly file the EMT's Request with the court.

DONE, this the 25th day of November, 2026.

/s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE